# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

The Evolutionary Level Above Human, Inc.
d/b/a The Telah Foundation,
  an Arizona nonprofit corporation,
Civil Action No. 3:22-cv-00395
            Plaintiff,

  v.

Steven Robert Havel;
Cathy JoAnn Weaver;
 Jason Bartel,

          Defendants.

2022 JUL 26 PM 2:38

## <u>ANSWERS, DEFENSES AND DEMAND FOR JURY TRIAL AND COUNTERCLAIM</u>

Defendant Cathy Weaver responds to Plaintiffs, The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation (the "Foundation") Complaint as follows:

## JURISDICTION AND VENUE

1.  This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act (15 U.S.C. § 1051, *et seq.*) and the Copyright Act (17 U.S.C. § 101, *et seq.*), and pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b).

    **ANSWER: Defendant admits this Court has subject matter jurisdiction over claims brought under the Lanham Act, Copyright Act and pursuant to 28 U.S.C 1331 and 1338. However, Defendant denies committing any violation of the above due to Plaintiffs not providing proof of claims of Copyright prior to this current lawsuit.**

2. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, since there is complete diversity.  The Foundation is an Arizona nonprofit corporation, no defendant is a citizen of the state of Arizona, and the matter in controversy is over $75,000.

   **ANSWER: Defendant admits this Court has diversity jurisdiction and that The TELAH Foundation, hereafter to be referred to as Mark and Sarah King, is an Arizona nonprofit corporation and that I, Cathy Weaver am not a citizen of Arizona, however defendant denies any knowledge of Jason Bartels' residency and also denies that this matter is over $75,000 or any implication that Plaintiffs are entitled to any relief under any of their claims.**

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)–(c), and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants is engaged in actions which directly targets and harms the Foundation.

   **ANSWER: Defendant admits this Court is the proper venue and that this court has personal jurisdiction.  However Defendant denies being engaged in actions which targets or harms Mark & Sarah King or their foundation.**

## PARTIES

4. Plaintiff, The Evolutionary Level Above Human, or Telah Foundation, Inc. (the "Foundation") is an Arizona 501(C)(3), Nonprofit Corporation with its principal place of business located at P.O. Box 25098, Scottsdale, AZ 85255.

   **ANSWER: Defendant is without sufficient information to admit or deny and requests that the TELAH Foundation be hereafter referred to as Mark & Sarah King.**

5. Upon information and belief, Defendants Steven Robert Havel (a/k/a Sawyer, Swyody, and Swy) and Cathy Joann Weaver are currently believed to be residing at 111 Campbell St. Mishawaka, IN 46544.

**ANSWER: Defendant denies residing at 111 Campbell St Mishawaka, IN 46544 as Plaintiff making defendants residence known has resulted in Defendant moving. Defendant has updated the Court with a mailbox address.**

6. Upon information and belief, Defendant Jason Bartel (a/k/a Crlody, Carlan, and Crl) is currently residing at in Madison, WI.

   **ANSWER: Defendant is without sufficient information to admit or deny the allegation contained in paragraph 6 of Plaintiff's complaint.**

7. Steven Havel, Cathy Weaver, and Jason Bartel are collectively referred to herein as the Defendants.

   **ANSWER: Defendant Cathy Weaver admits to being a defendant alongside Stephen Havel who's name has been spelled incorrectly throughout the entire complaint, however Defendant denies any collective referring to Jason Bartel as co-defendant as Defendant has no relationship with Jason Bartel.**

## INTRODUCTION

8. In 1994 the directors of the Foundation renewed a long-standing relationship with a group known as "Total Overcomers Anonymous", "TOA", or "Heaven's Gate" (the "Group"). Three years later, in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County.

   **ANSWER: DENIED**

9. Prior to being able to obtain all of the property in the storage locker, the locker was seized by officials from San Diego County.

   **ANSWER: Defendant admits that due to Plaintiff's negligence the items from the storage locker were seized by San Diego County.**

3

10. From 1997–1999 the Foundation was involved in litigation with San Diego County (who represented both the County and the estates of members in the Group) over ownership of the Property. That litigation ended with the entry of a consent decree in 1999, which conveyed to the Foundation not only a large amount of physical property, but also all of the intellectual property rights belonging to the Group.

**ANSWER: DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof.**

11. A second lawsuit, filed in 1998 also ended in a 1999 consent decree which likewise confirmed the Foundation's ownership of, *inter alia,* the intellectual property of the Group.

**ANSWER: DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof.**

12. The Foundation has been the owner of the Property from 1997 to the present.
**ANSWER: DENIED**

13. Included in the Property transferred to the Foundation is a number of audio cassettes, audiovisual works, fabric designs, lithographic prints, and literary works.

**ANSWER: DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof.**

14. In particular, the Property transferred included the intellectual property rights to hundreds of audio cassettes and video tapes which the County of San Diego and the estates represented by the County of San Diego, transferred to the Foundation.

**ANSWER: DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof.**

15. The hundreds of audio cassettes (hereafter the "Audio Works") were registered (by the Foundation) with the United States Copyright Office on October 27, 1997 as Reg. No. SRu00298530.

**ANSWER: Defendant denies the validity of the copyright registration and the exact numbered audio works copyrighted. Plaintiff has stated there are 1061 Audio Works yet only 486 Audio Works have been registered according to the copyright registration provided by Plaintiffs.**

16. A true and correct copy of the Audio Works registration is attached hereto as Exhibit A.

**ANSWER: Defendant admits a copy of the Audio Works registration is attached. However, Defendant denies the validity of the copyright registration and the circumstances under which the Audio Works were copyrighted.**

17. The video tapes (hereafter the "Video Works") were registered (by the Foundation) with the United States Copyright Office on September 22, 1997 as Reg. Nos. PA0000867224.

**ANSWER: Defendant denies the validity of the Video Works copyright registration and the circumstances under which the Video Works were copyrighted.**

18. A true and correct copy of the Video Works registrations are attached hereto as Exhibit B.

**ANSWER:  Defendant admits a copy of the Video Works registration is attached. However Defendant denies the validity of the copyright registration and the circumstances under which the copyright was obtained.**

19. The Foundation is also the owner of trademarks related to the Group.

**ANSWER: Defendant denies the ownership and the validity of the trademarks obtained by Mark & Sarah King and the circumstances under which the trademarks were obtained.**

20. The Trademarks (hereafter the "Trademarks") were registered (by the Foundation) with the United States Trademark Office on July 27, 2010, July 13, 2010, and February 28, 2017 as Trademark Reg. Nos. 3824482, 3816596 and 5,148,959.

**ANSWER: Defendant denies the validity of the trademarks obtained by Mark & Sarah King and the circumstances they obtained them under.**

21. A true and correct copy of the Trademarks registrations are attached hereto as Exhibit C–E.

**ANSWER: Defendant admits a copy of the Trademarks registrations is attached. However, Defendant denies the validity of the registrations and the circumstances under which the registrations were obtained.**

22. The lithographic prints include artwork (hereafter the "Visual Work") which was registered by the Foundation as VA000877834 entitled "The C.B.E. (Celestial Being Entity)."

**ANSWER: Defendant denies the validity of the registered Visual Work and the circumstances under which the registrations were obtained.**

23. A true and correct copy of the Art Work is attached hereto as Exhibit F.

**ANSWER: Defendant admits a copy of the art work is attached.**

24. The literary works include a book owned by the Foundation and registered as TXu 000817732 entitled "How and when 'Heaven's gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials" (the "Literary Work").

**ANSWER: Defendant denies that Mark & Sarah King referred to as the Foundation own the book and Defendant denies the validity of the registration and the circumstances under which the registration was obtained.**

25. A true and correct copy of the registration for the Literary Work is attached hereto as Exhibit G.

**ANSWER: Defendant admits a copy of the registration for the Literary Work is attached however Defendant denies the validity of the registration and the circumstances under which the registration was obtained.**

## DEFENDANTS' UNLAWFUL CONDUCT

26. Defendants have knowingly and willfully have illegally acquired, transported and disseminated copies of the audio tapes and other intellectual property belonging to the Foundation.

**ANSWER: DENIED**

27. On or about May 1, 2021 the Foundation first learned that Defendant, Jason Bartel had put the Foundation's registered copyrighted Audio Works and Video Works on a free online file sharing and storage site called "4Shared.com."

**ANSWER: Defendant can neither admit nor deny as Defendant has no relationship with Jason Bartel.**

28. Over the summer of 2021, the Foundation sent Digital Millennium Copyright Act (DMCA) takedown notices to 4Shared to get those illegally posted Audio and Video Works taken off the site.

**ANSWER: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.**

29. On or about June 20, 2021 Defendant Bartel announced that more stolen audio tapes were on being sent to him by Co-Defendant Havel and that Defendant Bartel would post those additional tapes for free download on the 4Shared website.

**ANSWER: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.**

30. On or about June 30, after receiving additional tapes from Co-Defendant Havel, Defendant Bartel put up the entirety of the Audio Works on his Wordpress blog for free download.

**ANSWER: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.**

31. On or about July 9, 2021, Defendant Bartel announced on Wordpress that 15 gigabytes of the Audio Works and Video Works had been uploaded to either Google Drive or to the 4Shared and were available for download.

**ANSWER: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.**

32. The uploading of this material to 4Shared or Google Drive, and the subsequent availability for download, was done without the permission or authorization of the Foundation.

**ANSWER: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.**

33. On or about July 9, 2021, Defendant Bartel thanked Co-Defendant Havel for assisting him in obtaining the Audio Works and helping him make the Audio Works available for download.

**ANSWER: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.**

34. Upon information and belief, Defendants Havel and Weaver knowingly intend to infringe the Foundation's copyrights in the Audio Works and to take active steps to continue infringing, despite their knowing infringement.

**ANSWER: Defendant denies this allegation as Defendant repeatedly asked Mark & Sarah King to provide proof of their copyrights and Plaintiff's refused to do so.**

35. For example, on or about July 12, 2021, Defendant Havel posted to his website a log of the Audio Works with the following commentary:

> So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in mulitple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them.

**ANSWER: Defendant can neither admit nor deny this allegation as it does not pertain to Defendant.**

36. A true and correct copy of this post is attached hereto as Exhibit H.

**ANSWER: Defendant can neither admit nor deny this allegation as it does not pertain to Defendant.**

37. Through use of the DMCA, the Foundation was able to, over a month later, get the materials taken down and on or about August 29, 2021, Defendant Bartel announced on Wordpress that the 4Shared archive of the Audio Works and Video Works had been taken down due to "Copyright Infringement action by the legal owners, the Telah Foundation."

**ANSWER: Defendant can neither admit nor deny this allegation as it does not pertain to Defendant.**

38. On information and belief, in September 2021 Defendant Cathy Weaver met up with Defendant Steven Havel with the intentions of continuing to engage in copyright infringement and to make the Audio and Video Works available for free download on the internet.

**ANSWER: DENIED**

39. On information and belief, in October and November, 2021, at various locations, Defendants Havel and Weaver live streamed discussions on the internet providing instructions to others regarding how individuals could obtain copies of the Audio and Video Works owned by the Foundation.

    **ANSWER: Defendant denies this allegation and states that the Video Works have been available for over 9 years on YouTube for anyone to search and access, the public doesn't need Defendant to tell them as it is readily available and at no cost to the public. Indeed the Plaintiff's have posted the Video Works on their Vimeo site free of charge for the public to access.**

40. Defendants Havel and Weaver have also repeatedly engaged in public performances of the Audio Works, streaming them directly over their YouTube channel, and advertising this infringement via their twitter account:

 **Sawyer 4DoTi** @Sawyerdoti · Sep 7, 2021 ···
I plan to livestream by 1am ET on youtube.com/3spm I plan to play a tape of DO from 1987 while he was grappling with whether TI wanted him to go public again and if so how.



youtube.com
3spm
Showing how TI and DO's Teachings are Beyond Human in All ways

♡  ↻  ♡ 1  ⤴

 **Sawyer 4DoTi** @Sawyerdoti · Sep 2, 2021 ···
I plan to do a livestream and play an audio tape of DO talking asap on



youtube.com
3spm
Showing how TI and DO's Teachings are Beyond Human in All ways

♡  ↻  ♡ 1  ⤴

 **Sawyer 4DoTi** @Sawyerdoti · Aug 21, 2021 ···
I plan to livestream and mostly play a audio tape of DO talking about how negativity is a computer virus on

youtube.com
3spm
Showing how TI and DO's Teachings are Beyond Human in All ways

♡  ↻  ♡ 1  ⤴

**ANSWER: Defendant admits participating in Stephen Havel's livestreams, but Defendant denies all other allegations in Paragraph 40.**

11

41. Upon information and belief, Defendants Havel and Weaver sent copies of the Audio and Video Works to a third-party during the summer and fall of 2021 to make sure they were transferred into another country, in order to prevent the Foundation from enforcing its Copyrights.

**ANSWER: Defendant denies this allegation as Defendant has not been involved in sending Audios to anyone nor does Defendant possess any copies of the audios.**

42. Upon information and belief, Defendants Havel and Weaver's decision to provide CoDefendant Bartel with copies of the Audio and Video Works was also, in part, done to prevent the Foundation from enforcing its Copyrights.

**ANSWER: Defendant denies this allegation as Defendant did not send any audios to Bartel and has no relationship with Bartel.**

43. Indeed, Defendants Havel and Weaver repeatedly stated in YouTube videos that they continue to want to disseminate the copyrighted material and that the Foundation is "not going to stop us."

**ANSWER: Defendant admits to making statements in a YouTube video that Defendant does wish to share the information with the public. Defendant denies the validity of Mark & Sarah Kings the Plaintiffs copyrighting of the material, the circumstances under which they obtained the copyrights and the ownership they claim over the material.**

44. At the same time Defendant Havel expressly concedes that the Foundation owns the Property at issue in this case.

**ANSWER: DENIED.**

45. Upon information and belief, Co-Defendants Steven Havel, Cathy Weaver, and Jason Bartel are all working in a conspiracy to disseminate the Audio Works and/or Video Works in a manner that violates the Foundation's United States copyrights and in a manner designed to thwart the Foundation's ability to assert and enforce its copyrights.

**ANSWER: DENIED**

46. Upon information and belief, at the time of filing, each of the Co-Defendants are still engaged in the conspiracy to commit further infringement of the Foundation's copyrights and will continue to illegally copy and disseminate the property of the Foundation in violation of the Foundation's copyrights unless enjoined by this Court.

**ANSWER: DENIED**

47. Further, upon information and belief Co-Defendants Steven Havel and Cathy Weaver have prepared and are preparing a number of derivative works of copyrights owned by the Foundation in violation of the Foundation's copyrights.

**ANSWER: DENIED**

48. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating an audio book version of a the Literary Work owned.

**ANSWER: Defendant admits recording some chapters from the Literary Work however Defendant claims Fair Use as the Literary Work is in the Public Domain and Plaintiffs offer the Literary Work free of charge via download on the website they maintain. Defendant has also marked the channel in question as private upon learning of this lawsuit so it is no longer accessible by the public.**

13

49. Co-Defendants Steven Havel and Cathy Weaver are also engaging in public performances of
the Literary Work and recording them and disseminating the public performances through
Co-Defendants Steven Havel and Cathy Weaver's YouTube channel:
https://www.youtube.com/3spm, and advertising such performances on their twitter account:


Sawyer 4DoTi
@Sawyerdoti
...

we plan to livestream asap on youtube.com/3spm . Our
plan is to do a reading of the document in the Heavens
Gate book, entitled Incarnating and Discarnating in
addition to other discussion.


youtube.com
3spm
Showing how TI and DO's Teachings are Beyond Human in All ways

7:15 PM · Jan 25, 2022 · Twitter Web App

**ANSWER: Defendant admits reading sections of the Literary Work on Stephen
Havel's Livestream however such use is permitted under the Fair Use Act.**

50. Over the past few months this behavior has escalated exponentially, with Co-Defendants
Steven Havel and Cathy Weaver posting now fewer than thirteen recordings containing the
Foundation's copyrighted Audio Works and other material.

**ANSWER: Defendant is without sufficient information to admit or deny the allegations
contained in paragraph 50 of Plaintiff's Complaint.**

51. This includes the following YouTube videos and Audio Works:

Tape No. 149 - Broadcast on YouTube 3spm channel on 11/08/2021
Tape No. 263 - Broadcast on YouTube 3spm channel on 11/08/2021
Tape No. 004 - Broadcast on YouTube 3spm channel on 11/08/2021
Tape No. 030 - Broadcast on YouTube 3spm channel on 3/26/22

Tape No. 161 - Broadcast on YouTube 3spm channel on 4/08/22
Tape No. 156 - Broadcast on YouTube 3spm channel on 4/12/22
Tape No. 011 - Broadcast on YouTube 3spm channel on 4/13/22
Tape No. 054 - Broadcast on YouTube 3spm channel on 4/14/22
Tape No. 052 - Broadcast on YouTube 3spm channel on 4/17/22
Tape No. 050 - Broadcast on YouTube 3spm channel on 4/18/22
Tape No. 200 - Broadcast on YouTube 3spm channel on 4/19/22
Tape No. 201 - Broadcast on YouTube 3spm channel on 4/20/22
Tape No. 202 - Broadcast on YouTube 3spm channel on 4/21/22
Tape No. 203 - Broadcast on YouTube 3spm channel on 4/26/22
Tape No. 204 - Broadcast on YouTube 3spm channel on 4/27/22

**ANSWER: Defendant is without sufficient information to admit or deny the allegations contained in paragraph 51 of Plaintiff's Complaint. However Defendant does know that the 3 broadcasts listed as 11/08/2021 are incorrect as we have never done 3 broadcasts in one day.**

52. In addition, Co-Defendants Steven Havel and Cathy Weaver have advertised and plan to sell or have sold t-shirts containing the Foundation's Trademarks including the trademarked design and word marks.

**ANSWER: Defendant questions the validity of Mark & Sarah Kings trademarks and the circumstances under which they obtained them and therefore denies the allegations contained in paragraph 52 of the Plaintiffs Complaint.**

53. The sales of material containing the Foundation's Trademarks is likely to cause confusion that these t-shirts are affiliated with the Foundation.

**AMSWER: DENIED.**

54. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images owned by the including "The C.B.E. (Celestial Being Entity)" and routinely use this image in on their YouTube channel and on t-shirts being sold by Co-Defendants Steven Havel and Cathy Weaver.

**ANSWER: DENIED.**

55. The creation of such derivative works and use in videos and on t-shirts constitutes copyright infringement of the Foundation's copyrights in its Art Work.

ANSWER: Defendant questions the validity of Mark & Sarah Kings copyrights and the circumstances under which they obtained them and therefore denies the allegations contained in paragraph 55 of the Plaintiffs Complaint.

## COUNT I INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. SRU00298530

56. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

ANSWER: As are the Answers thereto.

57. Defendants' conduct infringes upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

ANSWER: Defendant is without sufficient information to admit or deny any allegation in paragraph 57 of Plaintiff's Complaint.

58. The Audio Works, recorded at the U.S. Copyright Office as Copyright Registration No. SRu00298530 are owned by the Foundation and have been owned by the Foundation continuously since 1997.

ANSWER: Defendant questions the validity of the Copyright registration of the Audio Works and also questions the exact numbered tapes that Plaintiff's have alleged to have copyrighted and the circumstances under which the Audio Works were copyrighted under.

59. Each Defendant knew or had constructive knowledge that the reproduction and distribution of the Audio Works without the consent of the Foundation constituted copyright infringement.

**ANSWER: Defendant questions the validity of the copyright registration and the circumstances under which the copyrights were obtained and therefore denies the allegations in paragraph 59 of the Plaintiff's Complaint.**

60. Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: DENIED**

61. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER: Defendant states that upon information and belief Mark & Sarah King have suffered no economic losses and Mark & Sarah King have no reputation in the public sphere to lose.  Defendant denies there are damages to Mark & Sarah King and Plaintiff's are not entitled to any alleged economic damages. Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims.**

62. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims.**

63. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims. Defendant denies the allegations contained in paragraph 63 of the Plaintiff's complaint.**

64. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims. Defendant denies the allegations contained in paragraph 63 of the Plaintiff's complaint.**

## COUNT II INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. PA0000867224

65. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

66. Defendants' conduct infringes upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER: Defendant questions the validity of the Plaintiff's copyright registrations and the circumstances under which they obtained them and therefore denies the allegations in paragraph 66 of the Plaintiff's Complaint.**

67. The Video Works, recorded at the U.S. Copyright Office as Copyright Registration No. PA0000867224 are owned by the Foundation and have been owned by the Foundation continuously since 1997.

    **ANSWER: Defendant denies the validity of the copyright registration and is without sufficient information to admit or deny the remaining allegations in paragraph 67 of the Plaintiffs Complaint.**

68. Each Defendant knew or had constructive knowledge that the reproduction and distribution of the Video Works without the consent of the Foundation constituted copyright infringement.

    **ANSWER: DENIED**

69. Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

    **ANSWER: DENIED**

70. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

    **ANSWER: DENIED**

71. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER: DENIED**

72. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: DENIED**

73. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyright and ordering that each Defendant destroy all copies of Copyrighted Video Works made in violation of the Foundation's copyrights.

**ANSWER: DENIED**

## COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732

74. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWERS: As are the Answers thereto.**

75. Defendants' conduct infringes upon the Foundation's exclusive rights of creating derivative works that are protected under the Copyright Act.

**ANSWER: DENIED**

76. The Literary Work entitled "How and when 'Heaven's Gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials", recorded at the U.S. Copyright Office as Copyright Registration No. TXu000817732 (the "Literary Work") is owned by the Foundation and has been owned by the Foundation continuously since 1997. **ANSWER: Defendant questions the validity of the copyright registration and the circumstances under which they were obtained and therefore denies the allegations in paragraph 76 of Plaintiffs Complaint.**

77. Defendants Weaver and Havel know that the creation of a derivative work, such as an audio version, of the Literary Work without the consent of the Foundation constitutes copyright infringement.

    **ANSWER: DENIED as Defendant questions the validity of the copyright registration and the circumstances under which they were obtained.**

78. Defendants Weaver and Havel know that the public performance and the recording of public performances (and subsequent dissemination of such) of the Literary Work without the consent of the Foundation constitutes copyright infringement.
    **ANSWER: DENIED**

79. Defendants' conduct in creating a derivative work and publicly performing and distributing copyrighted works is willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.
    **ANSWER: DENIED**

80. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The

Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER: DENIED. Defendant has no economic losses and has no reputation in the public sphere. Defendant denies there are any damages to Mark & Sarah King and Plaintiff's alleged economic and reputational damages. Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims.**

81. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER: DENIED. Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims.**

82. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: DENIED. Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims.**

83. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER: DENIED.**

## COUNT IV INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO.
## VA000877834

84. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

85. Defendants' conduct infringes upon the Foundation's exclusive rights of creating derivative works that are protected under the Copyright Act.

**ANSWER: DENIED**

86. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images registered as VA000877834 entitled "The C.B.E. (Celestial Being Entity)" (the "Visual Work") which is owned by the Foundation and has been owned by the Foundation continuously since 1997.

**ANSWER: DENIED. Defendant has created no plush doll.**

87. Defendants Weaver and Havel know that the creation of a derivative work, such as an these commercial dolls, of the Visual Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER: DENIED**

88. Defendants' conduct in creating a derivative work is willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: DENIED**

89. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER: DENIED**

90. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER: DENIED**

91. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: DENIED. Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims.**

92. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER: DENIED**

## COUNT V CONTRIBUTORY INFRINGEMENT BY HAVEL AND WEAVER

93. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

   **ANSWER: As are the Answers thereto.**

94. Defendants' conduct constitutes contributory infringement upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

   **ANSWER: DENIED.  Defendant questions the validity of Mark & Sarah's copyrights and the circumstances they obtained them under.**

95. In particular, with respect to Defendant Bartel's direct infringement, through posting the Foundation's copyrighted material on the 4Shared website, Defendants Havel and Weaver actively induced, caused, and materially contributed to that infringement by sending him stolen copies of the Audio and Video Works that were in the possession of Defendants Havel and Weaver.

   **ANSWER: DENIED.  Defendant has no relationship with Bartel and denies sending Bartel any Audio and Video Works.**

96. Defendants Havel and Weaver sent the stolen copies of the Audio and Video Works to Defendant Bartel knowing that he would be copying and redistributing the Foundation's copyrighted material.

   **ANSWER: DENIED. Defendant has no relationship with Bartel and denies sending Bartel any Audio and Video Works.**

97. Defendants Havel and Weaver's conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

   **ANSWER: DENIED**

98. The Foundation has been damaged by Defendants Havel and Weaver's conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER: DENIED**

99. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages. 100.

As Defendants Havel and Weaver's infringement was intentional and willful and as Defendants Havel and Weaver's conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: DENIED. Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims.**

101. The conduct of each Defendants Havel and Weaver is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting Defendants Havel and Weaver from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio and Video Works made in violation of the Foundation's copyrights.

**ANSWER: DENIED**

## COUNT VI CONSPIRACY TO COMMIT COPYRIGHT INFRINGEMENT

102. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

103.    As described above, each Defendant engaged in a concerted action with other Defendants to reproduce and distribute the Foundation's Audio and Video Works by sending each other stolen copies of these works and then uploading these Works to the internet to be downloaded by anyone.

**ANSWER: DENIED. Defendant has no copies of the Audio and Video Works.**

104.    By so doing, the Defendants constructively agreed to engage in the unlawful reproduction and distribution of Foundation's copyrighted works.

**ANSWER: DENIED**

105.    In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by copying the Works to distribute amongst each other and to distribute over the internet and were willful participants in this joint activity.

**ANSWER: DENIED**

106.    As a proximate result of this conspiracy, the Foundation has been damaged, as is more fully alleged in Counts I–IV, above.

**ANSWER: DENIED**

## COUNT VII FEDERAL TRADEMARK INFRINGEMENT

107.    The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

108.    The Foundation is the owner of all rights in the Trademarks.

**ANSWER: DENIED. Defendant questions the validity of the trademarks and the circumstances under which the Plaintiff's obtained them.**

109.   Defendants Havel and Weaver have used the Trademarks in connection with their YouTube channel and in connection with selling T-Shirts in a manner that is likely to cause confusion, to cause mistake, or to deceive, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

   **ANSWER: DENIED**

110.   The use by Havel and Weaver is unauthorized, is likely to continue, and is likely to cause substantial injury to the public and to the Foundation, and the Foundation is entitled to injunctive relief and its attorneys fees and costs under the Lanham Act.

   **ANSWER: DENIED**

111.   Havel and Weaver's infringement of the Trademarks, as aforesaid has caused and is likely to continue to cause irreparable harm to the Foundation.  Unless restrained and enjoined by this Court, Havel and Weaver will persist in their infringement, thereby causing the Foundation further irreparable harm.

   **ANSWER: DENIED**

112.   The Foundation is entitled to, among other relief, injunctive relief and an award of actual damages, Havel and Weaver's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under sections 34, 35, 43 of the Lanham Act, 15 U.S.C. § 1116, 1117, 1125 together with prejudgment and post-judgment interest.

   **ANSWER: DENIED. Defendant denies any implication that the Plaintiff's are entitled to any relief under any of their claims.**

113.   The Foundation has no adequate remedy at law.

   **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the allegation contained in paragraph 113 and therefore deny the same.**

28

## DEMAND FOR JURY TRIAL

The Foundation requests a trial by jury on all issues so triable.

**ANSWER: Defendant also requests a trial by jury of all issues so triable.**

## PRAYER FOR RELIEF

WHEREFORE, the Foundation prays for judgment against the Defendants, and each of them, as follows:

A. For entry of a preliminary injunctions, temporary restraining orders, and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing the Foundation's rights in the Video and Audio Works, the Literary Work, and the Visual Work including without limitation by using the internet to reproduce or copy the Video and Audio Works, to distribute the Video and Audio Works, or to make the Video and Audio Works available for distribution to the public, or to publicly perform the Video and Audio Works or the Literary Work, or to create derivative works of the Literary Work or the Visual Work except pursuant to a lawful license or with the express authority of the Foundation. Each Defendant also shall destroy all copies of the Video and Audio Works that Defendant have in their possession, any and derivative of the Literary Work or Visual Work created, and shall destroy all copies of those downloaded audiovisual works transferred onto any physical medium or device in each Defendant's possession, custody, or control;

B. For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Foundation;

C.  For an order of impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of the Foundation's Video and Audio works, Literary Work, Visual Work, or derivatives thereof, photographs or other materials that are in Defendants' possession or under their control;

D.  For actual damages and profits of Defendants along with the costs of this action, pursuant to 15 U.S.C. § 1117;

E.  A trebling of all damages pursuant to 15 U.S.C. § 1117;

F.  A finding that this case is exceptional under 15 U.S.C. § 1117 and an award of attorneys fees;

G.  For an order that Defendants are jointly and severally liable to the Foundation in the full amount of the Judgment on the basis of a common law claim for civil conspiracy to commit copyright infringement;

H.  For an award of compensatory damages in favor of the Foundation and against Defendants, jointly and severally, in an amount to be determined at trial;

I.  For the Foundation's costs;

J.  For the Foundation's reasonable attorneys' fees;

K.  An award of pre- and post-judgment interest on each and every monetary award; and

L.  For such other and further relief as the Court deems proper.

**RESPONSE: Defendant denies any allegations or premises contained in the numbered paragraphs entitled "Prayer for Relief" and deny that Plaintiff's are entitled to any relief from this Court. Defendant specifically denies the requested relief would make this an "exceptional case" for which it should be awarded its reasonable attorney's fees pursuant to 15 U.S.C. 1117(a). Defendant also specifically denies the Plaintiff's request for injunctive relief.**

**Wherefore Defendant respectfully request the Court to enter judgment in favor of the Defendant and against the Plaintiff's on Plaintiff's Complaint and awarding to Defendant its cost and expenses and reasonable damages in this action and such other relief as the Court may deem just in the premises.**

Here follows the Defendant, Cathy Weaver's Defense. Defendant identifies the following affirmative defenses upon which Cathy Weaver may rely at the time of the trial. Cathy Weaver, Defendant respectfully asks this Court that she be able to reserve the right to amend, supplement, restate and/or withdraw any of these defenses or to assert additional defenses. Furthermore by characterizing the following as defenses, Cathy Weaver the Defendant does not admit that she bears the burden of proof on any of the issues raised by the following defenses.

## Affirmative Defenses to the Allegations of the Complaint Based Upon Conduct of the Parties:

### Background of the Events Between the Parties Leading to the Lawsuit

114.    Throughout the years 2018, 2019, 2020 Defendant had become interested in the information left behind by the group Heaven's Gate and had done extensive research learning about their beliefs and behaviors. This research led Defendant to Co-Defendant Stephen Havel a.k.a. Sawyer, to his YouTube channel and also his Facebook page.

115.    On April 13, 2020 Defendant Cathy Weaver emailed rep@heavensgate.com and asked for access to the Audio Works as Defendant wished to study them. Defendant learned via the responding email that Mark & Sarah King, the Plaintiff's were the former class members manning the Heavens Gate website and also sending out on a tape-by-tape basis the Audio Works. See Exhibit 1.

116.    While researching the group and engaging with both Sawyer, Mark & Sarah King, the Plaintiffs and Jason Bartel a.k.a. Crlody (very briefly) Defendant learned of an ongoing dispute between all parties concerning the distribution and dissemination of the works left behind by the group. This dispute had been ongoing for decades.

117.     Defendant began planning a trip in late August 2021 to meet with Sawyer the Co-Defendant and another researcher of the Heaven's Gate group.  Plaintiff has stated the false allegation in paragraph 38 in their complaint that Defendant met up with Sawyer to infringe on their copyrights and that couldn't be further from the truth. Defendant can provide additional pages from her journal if this Court would like to see further proof of the reason for the Defendants visit to the Co-Defendant Sawyer and the events that transpired during and after that visit.  See Exhibit 2

118.     Before Defendant went to visit with the Co-Defendant, Sawyer, Defendant was watching on her cell phone Co-Defendant Stephen Havel a.k.a Sawyers YouTube channel livestream on September 3rd 2021 that Mark King, the Plaintiff joined in on.  Defendant engaged Mark King in a lengthy discussion about the dissemination of the group's materials. Mark King stated many lies in that livestream and Sawyer was quick to take him to task about his lies.  Defendant also questioned Mark King's retelling of the leader of the group Do and the classes instructions to other members left behind and Plaintiff's and how they were to disseminate their information. Mark King, the Plaintiff stated in that livestream that he would upload all the Audio Works to the public site Vimeo by March 25th, 2022, as long as Sawyer agreed to stop playing the Audio Works on his livestream. After much arguing Sawyer agreed to do so.  That livestream has since been marked private and is not viewable by the public but if allowed we will play the relevant parts in this Court. See Exhibit 3

119.     On September 4th, 2021, the Plaintiff, Mark King initiated an email conversation with the Defendant, Cathy Weaver that transpired over the months of September and October with both parties trying to come to a mutual understanding of each other and each other's goals as it related to dissemination of the Heaven's Gate groups materials.  Defendant initiated the process of trying to mediate a face-to-face meeting between the Co-Defendant Sawyer and the Plaintiff's so they could come to an agreement in regards to the task put forth by Do, the leader of the Heaven's Gate group to disseminate the materials the group left behind. The Plaintiff's allegation that the Defendant was indifferent that has been stated several times in the

Plaintiff's Complaint is a false misrepresentation presented to this Court. Defendant asked repeatedly to see proof of the Plaintiff's claims of Copyright and Trademarks and also proof that Do and the group had given them all their materials and Plaintiff repeatedly declined to do so. As a result of the Plaintiff not providing proof Defendant did not know exactly what materials, if any, were in fact Copyrighted or Trademarked by the Plaintiff's. See Exhibit 4

120.    Plaintiff has stated that the Defendant was involved in a conspiracy with Co-Defendant Jason Bartel and that couldn't be further from the truth. In fact Defendant has no relationship with Jason Bartel and only a few emails exchanged between the two as Jason Bartel has been antagonistic towards the other Co-Defendant Stephen Havel, a.k.a. Sawyer who Defendant does have a relationship with.  See Exhibit 5

121.    On October 20th, 2021 Defendant emailed Mark & Sarah, the Plaintiff's and based on their prior negative responses of working with Sawyer, Defendant asked to have permission to disseminate the materials herself without Sawyer.  This proves that Defendant was not indifferent and not intentional in Plaintiff's allegations of inflicting harm on their foundation or using their alleged Copyrighted and Trademarked materials. See Exhibit 6

122.    Defendant Cathy Weaver and Co-Defendant Stephen Havel, Sawyer had begun a physical relationship after meeting back in September 2021 and at the end of October and throughout the month of November embarked on a road trip to discuss with like minded people Ti and Do, the leaders of the Heaven's Gate group and the materials and instructions they and the group had left behind.  On that road trip Defendant Cathy Weaver was in contact with the Plaintiff's trying to still set up a face-to-face meeting and get all differences resolved via text messages and emails.  See Exhibit 7

123.    Defendant was finally successful in getting the Plaintiff's to agree and to set up a face-to-face meeting at which they, the Plaintiff's wished to have

the Defendants Cathy Weaver and Stephen Havel sign a "simple licensure agreement" to that end Defendant Cathy Weaver worked out an agreement stating what materials she and Co-Defendant Havel wished to disseminate and what that would consist of. Plaintiffs via email acknowledged receipt of the agreement as did their attorney. See Exhibit 8

124.     On November 17th, 2021, Defendant Cathy Weaver and Co-Defendant Stephen Havel met with the Plaintiff's Mark and Sarah King and also their attorney was present which the Plaintiff's had not made clear was going to be present to the Defendants. At that meeting Defendants were presented with a "Legal Agreement between the TELAH Foundation and Stephen Havel A.K.A. Sawyer and Cathy Weaver and to provide a settlement of the Cease and Desist of 11/17/2021". Defendants were taken aback by being tricked into a meeting that they thought was going to be signing a "simple licensure agreement" to being served with a Cease and Desist. See Exhibit 9. The Cease and Desist consisted of several statements the Defendants had been previously unaware of. Defendants asked verbally for proof of the statements of consent decrees the Plaintiff's claimed they had and were told by the Plaintiff's that they didn't need to provide that to Defendants that we just needed to take them at their word.

125.     At the meeting on November 17, 2021 Defendants only had two hours with the Plaintiff's and their attorney and several statements were made by all parties. The Legal Agreement presented to the Defendants was over 13 pages long and Defendants did not sign it at that meeting, instead they took it back to their hotel room and carefully looked it over. Meanwhile throughout this time Defendant Cathy Weaver was participating in livestreaming with Co-Defendant Sawyer on his YouTube channel and discussing what was taking place once it became clear that the Plaintiff's were making outrageous demands Sawyer began playing audio tapes again. The Plaintiff claiming in paragraph 51 that Defendants livestreamed 3 separate shows on 11/08/2021 is a false misrepresentation to this Court and a downright lie. Co-Defendant Stephen Havel has proof of the exact dates of those livestreams, and they occurred after the meeting on 11/17/2021. Indeed an email from the Plaintiff's lists the dates of those livestreams as

11/20, 11/21 and 11/23 respectively. Please see Exhibit 10. Also in Exhibit 10 string of emails on December 3rd, 2021 Plaintiff's admit to having the meeting we held with them recorded even though Defendant Cathy Weaver and Co-Defendant Stephen Havel were not informed of such. See Exhibit 10

126. Defendant Cathy Weaver emailed the Plaintiff's an annotated version of their legal agreement stating the major grievances with it and Plaintiff confirmed receipt of such. Please see Exhibit 11 and refer to Exhibit 10 string of emails for receipt confirmation of annotated legal agreement.

127. After much back and forth between Defendant and Plaintiff's no reasonable agreement could be reached and Plaintiff's severed communications with an email stating "See you in Court". See Exhibit 10

128. Defendant Cathy Weaver and Co-Defendant Stephen Havel, Sawyer, had no proof of the Plaintiff's claims of Copyright, Trademarks or consent decrees despite repeatedly asking for such and therefor proceeded with the task set forth by Do, the leader of the Heaven's Gate group to disseminate their information by anyone who feels called to do so. There are numerous audio recordings of the meetings Do held with the class, titled in the Plaintiff's Complaint as the Audio Works and literally hundreds of times Do speaks of what he wishes to happen with their information upon their exit from this world. With this Courts permission we would like to be able to submit those recordings to prove Do and the groups specific wishes in regards to their materials. Co-Defendant Stephen Havel is providing extensive proof in his defense of the classes wishes and as he was in the group for 19 years and sitting there while most of the Audio Works and Video Works were recorded, Defendant feels he is well versed in such. The Literary Work also contains numerous details on what the groups mission was and their desire to get their information out to the public. We would like to submit those references as well with this Courts permission. Indeed the Video Works, entitled Beyond Human The Last Call sessions 1-12 also discuss what Do and the group wanted in getting their information out to the public and were broadcast for all the world to see in 1992 on satellite T.V as were Last Chance to Evacuate Planet Earth broadcast in 1996, Planet Earth

About to be Recycled broadcast in 1996 and Do's Final Exit broadcast in 1997. We ask this Court to allow us permission to submit those statements as evidence as well. All of those Video Works have been uploaded numerous times by numerous individuals over the years and are available to the public at no charge and have been for years without the Plaintiff's going after any of these sites to have the content removed. Defendant has provided just a small portion of them here as they are too numerous to document all of them. See Exhibit 12. Indeed there are numerous individuals offering the Audio Works and the Video Works for hundreds of dollars but yet the Plaintiff's have brought no action to stop them or harass them as they have done with the Defendant Cathy Weaver and the Co-Defendant Stephen Havel who have only provided the live streams of the Audio Works for free and with over 2 hours of commentary in several instances. Defendant claims Fair Use in participating in those Audio Works being played on Co-Defendant Stephen Havel's livestreams. In fact the Plaintiff's had their attorney issue strikes against Co-Defendant Stephen Havel's YouTube channel in an effort to have the channel that Co-Defendant had spent over 8 years building up removed from YouTube, despite saying in the meeting that they would take no such action against Co-Defendant Havel. YouTube sided with Co-Defendant Havel in those instances and accepted the Fair Usage of those Audio Works and let the channel and those videos remain.

129.    Defendants repeated attempts to gain proof from the Plaintiff's to no avail of their alleged Copyrights and Trademarks resulted in Defendant moving ahead with the brief selling of T-Shirts that contained derivatives of the alleged Copyrighted material. Defendant sold a total of 5 shirts containing a derivative of the Plaintiff's alleged Copyrighted logo and 4 shirts containing a derivative of the alleged Trademarked image of the E.B.E. for a total of 9 shirts sold. Upon finally receiving proof of the Plaintiff's alleged Copyrights and Trademarks via this lawsuit the Defendant immediately pulled all advertising and cancelled the one standing order Defendant had for a t-shirt containing the alleged Copyrighted logo. The Defendant is not an Intellectual Property Rights attorney and doesn't understand the verbiage of the Copyrighted logo which states that the logo be used in Video, does that not make it Fair Use to use on a shirt? Regardless Defendant has stopped selling the alleged Copyrighted logo and

Trademarked image on t-shirts even though Defendant questions the validity of the Plaintiff's copyrights and the manner in which they were granted them.

130.    On April 6, 2022 Defendant initiated an email making another attempt to resolve our grievances and have another face-to-face meeting this time with no lawyers present and just Defendant Cathy Weaver and Co-Defendant Stephen Havel with the Plaintiff's Mark and Sarah King. They were in the class together for 12 years and Defendant felt if we could all just sit down and talk things could be worked out. Unfortunately after a meeting was agreed too Defendant had to cancel a face-to-face meeting as finances did not allow a trip to Phoenix from South Bend, nor could Defendant afford to take such amount of time off from work as that would have necessitated. See Exhibit 13.

131.    Plaintiffs Mark and Sarah King upon learning of Defendant not able to afford a trip to Phoenix proceeded with this lawsuit and in the Plaintiffs Complaint decided to include Defendant Cathy Weaver and Co-Defendant Stephen Havel's residential address. Defendant had just worked out with the property management company a renewal of the lease for another year and was about to sign it, however due to the disclosing of Defendants address Defendant felt it necessary to move as soon as possible. This resulted in Defendant having to secure a residence in her soon to be 18 year old's name and paying the property owner of that residence 6 months in advance so they would agree to such terms and also because the rental market is so sparse here and the property owner stated he had over 50 potential applicants in just 2 days of posting the property. Co-Defendant Stephen Havel had to take out a loan to pay for this. Defendant Cathy Weaver and Co-Defendant Stephen Havel will now be living out of a vehicle and having a post mailbox so we can not be found by the media or those curious or those who may wish to do us harm due to the controversy of the Heaven's Gate group and our belief and support of them. Co-Defendant Stephen Havel reached out to Mark and Sarah via email to plead with them to remove our address from the proceedings and was ignored. See Exhibit 14

132.    Defendant has stopped all alleged infringement upon learning of the lawsuit via Pacer so is no longer in non-compliance with the Plaintiff's demands.

133.    Defendant calls into question the manner in which she was served with the Process Server providing an incomplete copy of the exhibits and the ink clearly running out making some of the sentences unreadable, if not for obtaining from Pacer the entire complaint and exhibits Defendant would not have a true copy of this lawsuit.  In addition the Process Server served Defendant on June 2nd 2021 and didn't get around to filing such serving until over 30 days later potentially making Defendant miss a key filing of a motion/answer to the summons.

Here in concludes the Affirmative Defenses of the Defendant Cathy Weaver.

# COUNTERCLAIM

Defendant Cathy Weaver identifies the following Counterclaim upon which Defendant may rely at the time of trial.  Defendant respectfully asks to

reserve the right, however, to amend, supplement, restate any of these Counterclaims or to assert additional information to support this Counterclaim.

In support of Defendant, Cathy Weaver and Co-Defendant Stephen Havel's counterclaim against the Plaintiff's The TELAH Foundation hereafter to be referred to as Mark and Sarah King and collectively referred to as Counter Defendants. The Defendant Cathy Weaver and Co-Defendant Stephen Havel to be referred to as Counter Plaintiff's hereby assert the following:

134.    The Heaven's Gate group, then referred to as T.O.A. Total Overcomers Anonymous had copyrighted the Beyond Human Series 1-12 in 1992, they are the original owners and creators of the Video Works and had them under copyright. The Counter Defendants knew this information but still proceeded to obtain invalid copyright registrations of the Video Works, despite them not being in the group or being involved in the creation of the Video Works. The Counter Defendants when filing their application for the copyright of the Video Works misrepresented information by stating that there were no prior copyrights of the Video Works. It is clearly marked on the masters of the Beyond Human Series 1-12 that T.O.A had copyrighted them.

135.    Rkkody otherwise known as Chuck Humphrey and Right to Know also had instructions, in the form of a letter received via fed ex package, from Do, the leader of the Heaven's Gate group to assist with obtaining all the contents of the storage locker and to divide the articles of value to those who wished to take on the task of disseminating the groups left behind information. Rkkody did so and had a box of 200+ of the 1061 Audio Works in the form of cassette tapes which he proceeded to digitize onto CD Rom's. Rkkody obtained a copyright for those 200+ CD Rom's containing the digitized Audio Works. The Counter Defendants Mark and Sarah doing business as the TELAH Foundation also around the same time copyrighted 486 of the Audio Works in the form of cassette tapes. This has caused much confusion as to who exactly has copyright of the Audio Works. Do the leader of the Heaven's Gate group expressed in several of the Audio Works that he wished all of the Audio Works to be disseminated and shared with the public upon the groups exit.

136.   The Literary Work was copyrighted by the group who were the original creators and owner of the Literary Work before their exit under a common law copyright to be re-produced upon anyone desiring to do so as long as it was not for commercial purposes and not altered in anyway. Counter Defendants who had no hand in creating the Literary Work obtained an entirely different copyright and instead used that in the Literary Work directly against the wishes of the group and Do.

137.   Upon information and belief Do, the leader of the group and the group members did not wish for any of their works to be placed under copyright or trademark registrations that would restrict their usage or viewing by the public, quite the opposite they wished for their materials to be shared and disseminated to the public in all their entirety and with the only restriction being that it could not be altered or used for commercial purposes.  Counter Defendants have gone directly against Do and the groups wishes in their handling of the intellectual property left behind by the group.  Counter Defendants with no proof despite repeated requests alleged that two separate judges had awarded them sole ownership of all the groups materials.  Sole ownership does not constitute copyrights or trademarks of all the material. Counter Defendant in the desire to control all of the material obtained the copyright and trademark registrations to do with as they see fit, not as Do, the leader of the group and the members of the group wished and expressly stated throughout the Audio, Video and Literary Works.

138.   Counter Defendants have stated that they received fed ex packages, faxes, emails and telephone calls that other members of the group left behind with the task of disseminating their materials did not.  Counter Plaintiff's respectfully ask the Judge to order those fed ex packages, faxes, emails and telephone call logs to be made public to once and for all answer the question of the Counter Defendants actions in suppressing the Audio, Video and Visual Works that were left behind in storage by the group.

139.   Counter Plaintiffs respectfully request a declaratory judgement action for invalidity, unenforceability, and if applicable, cancellation of the asserted trademark and copyright registrations for the reasons stated above.

140.   Lawful "use in commerce" is required for registration of a mark under the Lanham Act. If the registrant's use is not lawful, it is not entitled to federal trademark registration and, if registration has erroneously been granted by the Trademark Office, it cannot be asserted as the basis for enforcement of rights. Such a registration is subject to cancellation. Upon information and belief the registration of the E.B.E Visual Work is not presently on sale nor has it ever been by the registrants. These registrations are abandoned and are therefore invalid and unenforceable, as is the registration for the Audio Works as they have never been for sale by registrants.

141.   15 U.S.C. 1119 grants district courts the power to order the cancellation of any registration in whole or in part. The Counter Defendants registration of the Audio Works, Video Works and Visual Works should be cancelled pursuant to 15 U.S.C. 1064 on the grounds of abandonment, fraud on the Trademark Office and the above statements.

WHEREFORE, Counter Plaintiffs pray that after due proceedings be had, there be judgment rendered in their favor against The TELAH Foundation, otherwise known as Mark and Sarah King.
Counter Plaintiff's respectfully requests the following further relief of this Court:

a.  A declaration and order declaring the TELAH Foundations copyright and trademark registrations invalid and unenforceable;

b.  If applicable a declaration and order cancelling the registrations of the TELAH Foundation in whole or in part and directing the Director of the United states Patent and Trademark Office to correct the Principal Register of copyrights and trademarks.

c. A declaration and order declaring the Counter Plaintiffs equal ownership and equal rights to ALL the Intellectual Property left behind and allegedly awarded to the Counter Defendants.

d. If an attorney is granted by this Court or Counter Plaintiffs obtain an attorney on a contingency basis an award of reasonable attorney's fees;

e. An award of damages, interest and costs; and

f. Such other and further relief as this Court shall find due under the law or in equity.

_Cathy Weaver_ 7/26/2022
Cathy Weaver
5776 Grape Rd.
Suite 51
PMB# 121
Mishawaka, IN. 46545
Sawcat575@gmail.com
Defendant