**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

The Evolutionary Level Above Human,
Inc.  d/b/a The Telah Foundation,
an Arizona nonprofit corporation,
Civil Action No. 3:22-cv-00395
    Plaintiff,
       v.

Steven Robert Havel;
Cathy JoAnn Weaver;
Jason Bartel,

    Defendants.


## ANSWERS, DEFENSES AND DEMAND FOR JURY TRIAL AND COUNTERCLAIM

Defendant Jason Bartel responds to Plaintiffs, hereafter to be referred to as Plaintiffs or

Mark and Sarah King, Complaint as follows:

## JURISDICTION AND VENUE

1.  This Court has original subject matter jurisdiction over the claims in this action pursuant to

the provisions of the Lanham Act (15 U.S.C. § 1051, *et seq.*) and the Copyright Act (17

U.S.C. § 101, *et seq.*), and pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b).

**ANSWER: Defendant admits this Court has subject matter jurisdiction over claims**

**brought under the Lanham Act, Copyright Act and pursuant to 28 U.S.C 1331 and**

**1338.  However, Defendant denies committing any violation of the above due to**

**Plaintiffs not providing any proof that the Heaven's Gate Group, hereafter the Group,**

**wanted the Group's Intellectual Property to be copyrighted by Plaintiffs nor have**

**Mark and Sarah King provided proof that the Group legally and/or legitimately**

transferred all Physical and Intellectual Property, hereafter the Property, to Mark and Sarah King.

2.     This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, since there is complete diversity.  The Foundation is an Arizona nonprofit corporation, no defendant is a citizen of the state of Arizona, and the matter in controversy is over $75,000.

**ANSWER:  Defendant admits this Court has diversity jurisdiction. Defendant believes that Plaintiffs are trying to mislead Defendant as terms nonprofit and corporation are not capitalized when describing alleged Foundation in paragraph 2 therefore terms nonprofit and corporation do not apply to an Incorporated  Nonprofit Foundation in Arizona. Defendant requests that Mark and Sarah King clarify whether or not alleged Foundation described in paragraph 2 is Incorporated in Arizona.  I, Jason Bartel, am not a citizen of Arizona, however defendant denies any knowledge of Cathy Weaver's and Steven Havel's residency and also denies that this matter is over $75,000 or any implication that Plaintiffs are entitled to any relief for any of Plaintiff's claims as Mark and Sarah King have not produced proof of a legal and/or legitimate transfer of Property from the Group therefore until such time as a legal and/or legitimate transfer of Property from the Group to Mark and Sarah King is produced Plaintiffs have no cause to continue with this Civil Action.**

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)–(c), and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants is engaged in actions which directly targets and harms the Foundation.

**ANSWER: Defendant admits this Court is the proper venue and that this court has personal jurisdiction. However, Defendant denies being engaged in actions which directly targets or harms Plaintiffs or the alleged Foundation, an Arizona nonprofit corporation.**

## PARTIES

4.     Plaintiff, The Evolutionary Level Above Human, or Telah Foundation, Inc. (the "Foundation") is an Arizona 501(C)(3), Nonprofit Corporation with its principal place of business located at P.O. Box 25098, Scottsdale, AZ 85255.

**ANSWER: Defendant requests hereafter to refer to Plaintiffs as Plaintiffs or Mark and Sarah King. Defendant is without sufficient information to admit or deny if Telah Foundation, Inc. is a Nonprofit Corporation with its principal place of business at P.O. Box 25098, Scottsdale, AZ 85255 as Plaintiffs provided no Street address. Defendant requests that The Evolutionary Level Above Human, or Telah Foundation, Inc., a Nonprofit Corporation, be hereafter referred to as the Foundation. If the TELAH Foundation, Inc. that is a Nonprofit Corporation in paragraph 4 of Plaintiff's Complaint is a distinct legal person from the alleged Foundation in Paragraph 2 of Mark and Sarah King's Complaint that is a nonprofit corporation Defendant requests hereafter to refer to the nonprofit corporation and Nonprofit Corporation as the Foundation.**

5.　　Upon information and belief, Defendants Steven Robert Havel (a/k/a Sawyer, Swyody, and

Swy) and Cathy Joann Weaver are currently believed to be residing at 111 Campbell St.

Mishawaka, IN 46544.

**ANSWER: Defendant denies any knowledge of Cathy Weaver and Steven Havel's residence.**

6.　　Upon information and belief, Defendant Jason Bartel (a/k/a Crlody, Carlan, and Crl) is

currently residing at in Madison, WI.

**ANSWER: Defendant Jason Bartel  is currently residing in Madison, WI .**

7.　　Steven Havel, Cathy Weaver, and Jason Bartel are collectively referred to herein as the

Defendants.

**ANSWER: Defendant Jason Bartel admits to being a defendant alongside Steven Havel and Cathy Weaver, however Defendant denies any collective referring to Cathy Weaver and Steven Havel as co-defendants as Defendant has no relationship with Cathy Weaver**

**and Steven Havel.**

## INTRODUCTION

8.　　In 1994 the directors of the Foundation renewed a long-standing relationship with a

group known as "Total Overcomers Anonymous", "TOA", or "Heaven's Gate" (the "Group").

Three years later, in 1997, all the physical property and intellectual property belonging to the

Group (collectively the "Property") was transferred to representatives of the Foundation or

was placed, to be obtained, from a storage locker in San Diego County.

**ANSWER:** Defendant strongly believes Plaintiffs Mark and Sarah King are misleading the Court as the Foundation was incorporated on September 23rd, 1997 ( Exhibit One ) therefore no directors of the Foundation allegedly renewed a long-standing relationship with the Group in 1994. On March 25th, 1997 several ex-members of the Group received Federal Express packages after the Group ended containing letters from the Group, including Mark and Sarah King ( Exhibit Two A ). On or before March 25th, 1997 is the acknowledged end of the Group therefore none of the Group's Property was transferred to the Foundation or any of the Foundation's representatives in 1997 as the Foundation was not incorporated until September 23rd, 1997 by Mark and Sarah King.

Defendant strongly believes that all claims henceforth by the Plaintiffs in this Civil Action are null and void as Mark and Sarah King seem to have tried to obscure an illegal and/or illegitimate Property transfer from the Court and used that illegal and/or illegitimate Property transfer to illegally and/or illegitimately claim ownership of the Group's Property in 1997 with the creation of the Foundation and Plaintiffs have been using the Foundation to obscure this illegal and/or illegitimate transfer of Property from the public, ex-members of the Group and the Federal Court System therefore all of the Foundation's claims of ownership of the Group's Property are null and void and any Consent Decrees issued to Plaintiffs since Plaintiffs incorporated the Foundation on September 23rd, 1997 are also null and void therefore all Copyrights of the Foundation are null and void. Defendant denies henceforth all claims by Mark and Sarah King in this Civil Action as they are contingent upon ownership of the Group's Property which has been demonstrated to be fraudulently obtained using Plaintiff's Foundation.

9.     Prior to being able to obtain all of the property in the storage locker, the locker was seized by officials from San Diego County.

> **ANSWER: Defendant admits that the locker was seized by officials from San Diego County and denies that the Plaintiffs did go to the storage locker and that Chuck Humphrey and Wayne Parker retrieved 486 audio tapes and Beyond Human video tapes and materials for reproducing the Group's book from said locker prior to the seizure by San Diego County officials as Chuck Humphrey told Defendant in 1997.**

10.     From 1997–1999 the Foundation was involved in litigation with San Diego County (who represented both the County and the estates of members in the Group) over ownership of the Property.  That litigation ended with the entry of a consent decree in 1999, which conveyed to the Foundation not only a large amount of physical property, but also all of the intellectual property rights belonging to the Group.

> **ANSWER: Defendant is aware of the litigation in that the Plaintiffs were initially ruled to have filed a frivolous petition by a San Diego County Judge  in 1999 ( Exhibit and that Plaintiffs attempted to obtain physical property of the Group that had been in the Rancho Santa Fe residence, hereafter the Residence. Defendant has copies of letters from the Group to their landlord and to the Plaintiffs stating that the physical property in the Residence was for the landlord if authorities would allow it or for estate purposes if seized by the authorities. ( Exhibit  Two a and I ) Defendant has no knowledge of the consent decree and what was or was not conveyed to Plaintiffs in said decree and Defendant considers the consent decree to be null and void due to Plaintiff's illegal**

and/or illegitimate transfer of the Group's Property to Mark and Sarah King's Foundation. Defendant is aware that Plaintiffs paid $2,000 to San Diego County after threatening to appeal the initial decision of filing a frivolous petition but Defendant is not aware what Plaintiffs received for said payment and denies that all of the intellectual property rights belonging to the Group are rightfully the Plaintiffs based on Plaintiffs demonstrably fraudulent claims of Property transfer from the Group in 1997.

11.      A second lawsuit, filed in 1998 also ended in a 1999 consent decree which likewise confirmed the Foundation's ownership of, *inter alia,* the intellectual property of the Group.

   **ANSWER:Defendant is not aware of this consent decree and what ownership it may or may not have conferred and maintains his denial that all of the intellectual property rights belonging to the Group are rightfully the Plaintiffs due to the illegal and/or illegitimate transfer of Property to Plaintiffs in 1997.**

12.      The Foundation has been the owner of the Property from 1997 to the present.
13.

   **ANSWER: Defendant denies that the Plaintiffs have been the owner of the Property since 1997 as Plaintiffs  obtained the Property fraudulently in 1997 when the Plaintiffs Incorporated the TELAH Foundation six months after the Group was gone in order that Plaintiffs could illegally and/or illegitimately seize the Group's Property. The Plaintiffs used the "employer for hire" designation to aid Plaintiffs in copyrighting much of the Group's Property which is contrary to the Group's intentions in the Group's**

letters to Plaintiffs and other former members of the Group and is contrary to the Common Law Copyright that the Group placed on the First Edition of their book, How and When Heaven's Gate May Be Entered ( Exhibit

14.    Included in the Property transferred to the Foundation is a number of audio cassettes, audiovisual works, fabric designs, lithographic prints, and literary works.

**ANSWER:  DENIED as Defendant has asked the Plaintiffs for proof from the Group of such a claim that the Property was legally transferred to Mark and Sarah King and Plaintiffs have not provided any.**

15.    In particular, the Property transferred included the intellectual property rights to hundreds of audio cassettes and video tapes which the County of San Diego and the estates represented by the County of San Diego, transferred to the Foundation.

**ANSWER: DENIED as Plaintiff copyrighted 486 audio tapes, several video tapes, the Group's book and other items in September of 1997 prior to the County of San Diego's rulings on the Group's estate. Defendant is not aware of what Property San Diego County transferred to the Plaintiffs as the Plaintiffs have not been forthcoming in revealing that information and Defendant believes that Plaintiff's fraudulent claims of Property transfer from the Group in 1997 call into question any alleged Property transfers from San Diego County to the Plaintiffs.**

16.    The hundreds of audio cassettes (hereafter the "Audio Works") were registered (by the

Foundation) with the United States Copyright Office on October 27, 1997 as Reg. No. SRu00298530.

**ANSWER: Defendant denies the validity of the copyright registration and the exact numbered audio works copyrighted. Defendant was provided with 929 audio works in 2021 by Defendant Havel yet only 486 Audio Works have been registered according to the copyright registration provided by Plaintiffs. Defendant further denies the copyright registration claim based on Plaintiffs fraudulent claims of a legal transfer of the Group's Property to Mark and Sarah King.**

17.     A true and correct copy of the Audio Works registration is attached hereto as Exhibit A.

**ANSWER: Defendant admits a copy of the Audio Works registration is attached. However, Defendant denies the validity of the copyright registration and the circumstances under which the Audio Works were copyrighted as the Group held no copyrights and the Plaintiffs have provided no proof that the Group wanted them to copyright any of their Property nor have Mark and Sarah King provided any proof of a**

**legitimate transfer of Property from the Group to Plaintiffs.**

18.     The video tapes (hereafter the "Video Works") were registered (by the Foundation) with the

United States Copyright Office on September 22, 1997 as Reg. Nos. PA0000867224.

**ANSWER:  Defendant denies the validity of the Video Works copyright registration and**

**the circumstances under which the Video Works were copyrighted as many of the copyrighted Video Works were given to Chuck Humphrey, Francisco Falcon and others**

**by the Group to be disseminated. Furthermore, Plaintiffs have not provided a legitimate**

transfer of Property from the Group to Mark and Sarah King.

19.     A true and correct copy of the Video Works registrations are attached hereto as Exhibit B.

**ANSWER: Defendant admits a copy of the Video Works registration is attached. However Defendant denies the validity of the copyright registration and the circumstances under which the copyright was obtained as Plaintiffs have not provided a legal and/or legitimate transfer of Property from the Group to Mark and Sarah King.**

20.     The Foundation is also the owner of the trademarks related to the Group.

**ANSWER: Defendant denies the ownership and the validity of the Trademarks obtained by the Plaintiffs and the circumstances under which the trademarks were obtained as the Group held no Trademarks nor have the Plaintiffs offered any proof that the Group wanted them to file a Trademark Registration much less have Plaintiffs provided any proof of a legal and/or legitimate transfer of Property from the Group to Mark and Sarah King.**

21.     The Trademarks (hereafter the "Trademarks") were registered (by the Foundation) with the United States Trademark Office on July 27, 2010, July 13, 2010, and February 28, 2017 as Trademark Reg. Nos. 3824482, 3816596 and 5,148,959.

**ANSWER: Defendant denies the validity of the Trademarks obtained by the Plaintiffs and the circumstances they obtained them under as Plaintiffs have provided no proof of legal and/or legitimate transfer of Property .**

22.    A true and correct copy of the Trademarks registrations are attached hereto as Exhibit C–E.

**ANSWER: Defendant admits a copy of the Trademarks registrations is attached.**

**However, Defendant denies the validity of the registrations and the circumstances under**

**which the registrations were obtained.**

23.    The lithographic prints include artwork (hereafter the "Visual Work") which was registered by the Foundation as VA000877834 entitled "The C.B.E. (Celestial Being Entity)."

**ANSWER: Defendant denies the validity of the registered Visual Work and the**

**circumstances under which the registrations were obtained.**

24.    A true and correct copy of the Art Work is attached hereto as Exhibit F.

**ANSWER: Defendant admits a copy of the art work is attached.**

25.    The literary works include a book owned by the Foundation and registered as TXu 000817732 entitled "How and when 'Heaven's gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials" (the "Literary Work").

**ANSWER: Defendant denies that the Plaintiffs own the book and Defendant denies the**

**validity of the registration and the circumstances under which the registration was**

**obtained as the Group had placed a Common Law Copyright on said book and did not**

**instruct the Plaintiffs to place a copyright in the name of the Foundation on the Group's**

book nor have Plaintiffs provided a legal and/or legitimate transfer of Property from

the Group to Mark and Sarah King.

26.    A true and correct copy of the registration for the Literary Work is attached hereto as

Exhibit G.

**ANSWER: Defendant admits a copy of the registration for the Literary Work is**

**attached however Defendant denies the validity of the registration and the**

**circumstances under which the registration was obtained.**

## DEFENDANTS' UNLAWFUL CONDUCT

26.    Defendants have knowingly and willfully have illegally acquired, transported and

disseminated copies of the audio tapes and other intellectual property belonging to the

Foundation.

**ANSWER:  Defendant denies that he has illegally acquired and disseminated any of the**

**Group's audio tapes as the Plaintiff's claim of legal and /or legitimate Property transfer**

**from the Group are fraudulent as the Group did not exist when the alleged Property**

**transfer to Mark and Sarah occurred.**

27.    On or about May 1, 2021 the Foundation first learned that Defendant, Jason Bartel had

put the Foundation's registered copyrighted Audio Works and Video Works on a free online file

sharing and storage site called "4Shared.com."

**ANSWER: Defendant admits to placing numerous video tapes as well as 224 audio**

**tapes produced by the Group on 4shared.com in 2009. ( Exhibit**

28.     Over the summer of 2021, the Foundation sent Digital Millennium Copyright Act

(DMCA) takedown notices to 4Shared to get those illegally posted Audio and Video Works

taken off

    the site.

    **ANSWER: Defendant is aware that the Plaintiffs had copyright strikes placed on his**

    **4shared account after Defendant placed numerous additional audio works on the**

    **account beginning on July 3rd, 2021 which were provided by Steven Havel via**

    **Franacisco Falcon ( aka JHN hereafter JHN ) that were produced by the Group.**

    **However Defendant denies the Audio and Video Works were posted illegally as**

    **Defendant denies the validity of the copyright claims and Plaintiffs alleged ownership**

    **of**

    **the property.**

29.     On or about June 20, 2021 Defendant Bartel announced that more stolen audio tapes were

on being sent to him by Co-Defendant Havel and that Defendant Bartel would post those

additional tapes for free download on the 4Shared website.

    **ANSWER: Defendant denies that the audio tapes were stolen as Defendant denies that**

    **they are the Plaintiff's Property. Defendant admits to announcing that audio tapes**

    **produced by the Group were being sent to him by Defendant Havel and that he**

    **announced that he would place them on 4shared for free download.**

30.     On or about June 30, after receiving additional tapes from Co-Defendant Havel,
Defendant

    Bartel put up the entirety of the Audio Works on his Wordpress blog for free download.

**ANSWER: Defendant admits that he uploaded audio works produced by the Group to multiple Google Drives and to 4shared for free download and Defendant further admits to providing the audio works produced by the Group to a College Professor on a thumb drive free of charge. Defendant further admits to placing 30 gigs of audio works produced by the Group on a private google drive and inviting many individuals, including one retired and one active College Professor, to access said audio works of the Group as the Group asked that the Group's Property be disseminated ( Exhibit Two A )**

31.     On or about July 9, 2021, Defendant Bartel announced on Wordpress that 15 gigabytes of the Audio Works and Video Works had been uploaded to either Google Drive or to the 4Shared and were available for download.

**ANSWER: Defendant admits to being grateful to Defendant Havel for providing the audio tapes produced by the Group that have been suppressed for over twenty years by the Plaintiffs.**

32.     The uploading of this material to 4Shared or Google Drive, and the subsequent availability for download, was done without the permission or authorization of the Foundation.

**ANSWER: Defendant does not recognize the Plaintiffs as having any authority over the Property produced by the Group as the Group never stated that the Plaintiffs were to be the sole distributor of, or to copyright said Property nor have Mark and Sarah King provided a legal and/or legitimate transfer of Property from the Group to Plaintiffs and therefore denies needing Plaintiff's permission to disseminate the Group's Property.**

33.    On or about July 9, 2021, Defendant Bartel thanked Co-Defendant Havel for assisting

him in obtaining the Audio Works and helping him make the Audio Works available for

download.

**ANSWER: Defendant admits to being grateful to Defendant Havel for providing the**

**audio tapes produced by the Group that have been suppressed for over twenty years by**

**the Plaintiffs.**

34.    Upon information and belief, Defendants Havel and Weaver knowingly intend to infringe

the Foundation's copyrights in the Audio Works and to take active steps to continue infringing,

despite their knowing infringement.

**ANSWER: Does not pertain to Defendant and therefore is denied.**

35.    For example, on or about July 12, 2021, Defendant Havel posted to his website a log of the

Audio Works with the following commentary:

So just weeks ago, [a third party] who I had been in contact with on and off for
years sent me the digitized audios, all in .mp3 format and I quickly sent them to
[Defendant Bartel] and someone else who I know I can trust to be sure to upload
them to the internet in mulitple [sic] places so that even if [the Foundation]
somehow sue us it will be far too late to keep them from being available to those
who want to listen to them.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

36.    A true and correct copy of this post is attached hereto as Exhibit H.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

37.    Through use of the DMCA, the Foundation was able to, over a month later, get the

materials taken down and on or about August 29, 2021, Defendant Bartel announced on

Wordpress that the 4Shared archive of the Audio Works and Video Works had been taken down due to

"Copyright Infringement action by the legal owners, the Telah Foundation."

**ANSWER: Defendant denies stating that the Plaintiffs are the "legal owners" of the audio and video works produced by the Group. Defendant admits stating that the Plaintiffs had shut down his 4shared account.**

38.     On information and belief, in September 2021 Defendant Cathy Weaver met up with Defendant Steven Havel with the intentions of continuing to engage in copyright infringement and to make the Audio and Video Works available for free download on the internet.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

39.     On information and belief, in October and November, 2021, at various locations, Defendants Havel and Weaver live streamed discussions on the internet providing instructions to others regarding how individuals could obtain copies of the Audio and Video Works owned by the Foundation.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

40.     Defendants Havel and Weaver have also repeatedly engaged in public performances of the Audio Works, streaming them directly over their YouTube channel, and advertising this infringement via their twitter account:.                                    **ANSWER: Does not pertain to Defendant and is therefore denied.**

41.     Upon information and belief, Defendants Havel and Weaver sent copies of the Audio and Video Works to a third-party during the summer and fall of 2021 to make sure they were transferred into another country, in order to prevent the Foundation from enforcing its Copyrights.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

42.     Upon information and belief, Defendants Havel and Weaver's decision to provide CoDefendant Bartel with copies of the Audio and Video Works was also, in part, done to prevent the Foundation from enforcing its Copyrights.

**ANSWER: Defendant admits that Defendant Havel provided Defendant Bartel with the Audio Works however Defendant Bartel denies that Defendant Weaver provided Defendant Bartel with any such material. Defendant denies receiving any Video Works from Defendant Havel. Defendant Bartel also denies the Works were provided to Defendant specifically to prevent the Plaintiffs Mark and Sarah King from enforcing their Copyrights. Defendant also denies the validity of the Plaintiffs Copyrights and the means they used to obtain them.**

43.     Indeed, Defendants Havel and Weaver repeatedly stated in YouTube videos that they continue to want to disseminate the copyrighted material and that the Foundation is "not going to stop us."

**ANSWER: Does not pertain to Defendant and is therefore denied.**

44.     At the same time Defendant Havel expressly concedes that the Foundation owns the Property at issue in this case.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

45.    Upon information and belief, Co-Defendants Steven Havel, Cathy Weaver, and Jason Bartel are all working in a conspiracy to disseminate the Audio Works and/or Video Works in a manner that violates the Foundation's United States copyrights and in a manner designed to thwart the Foundation's ability to assert and enforce its copyrights.

**ANSWER: Defendant denies being in a conspiracy with Defendants Weaver and Havel but does admit to receiving audio works produced by the Group from Defendant Havel that Havel had received from JHN. Defendant acted solely on his own and placed the Group's audio works on a 4shared account that had more of the Group's audio and video works on it since 2009 that were copyrighted by the Plaintiffs ( Exhibit 6 ). Defendant does not recognize the validity of the Plaintiff's copyrights of the Group's Intellectual Property and therefore denies thwarting the Plaintiff's ability to assert and enforce its copyrights and does not know why the Plaintiffs allowed their copyrighted material to be on his 4shared acct. for twelve years before starting their current legal actions.**

46.    Upon information and belief, at the time of filing, each of the Co-Defendants are still engaged in the conspiracy to commit further infringement of the Foundation's copyrights and will continue to illegally copy and disseminate the property of the Foundation in violation of the Foundation's copyrights unless enjoined by this Court.

**ANSWER:  Defendant did not have a relationship with Defendant Havel and Defendant Weaver and therefore denies the conspiracy. Defendant does not recognize the validity of the Plaintiff's copyrights and has been freely disseminating the Group's Property for over twenty-five years as the Group asked to be done and will continue to do so as long as Defendant is on this earth.**

47.     Further, upon information and belief Co-Defendants Steven Havel and Cathy Weaver have prepared and are preparing a number of derivative works of copyrights owned by the Foundation in violation of the Foundation's copyrights.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

48.     Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating an audio book version of a the Literary Work owned.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

49.     Co-Defendants Steven Havel and Cathy Weaver are also engaging in public performances of the Literary Work and recording them and disseminating the public performances through Co-Defendants Steven Havel and Cathy Weaver's YouTube channel: https://www.youtube.com/3spm, and advertising such performances on their twitter account:



**Sawyer 4DoTi**
@Sawyerdoti

we plan to livestream asap on youtube.com/3spm . Our plan is to do a reading of the document in the Heavens Gate book, entitled Incarnating and Discarnating in addition to other discussion.



youtube.com
3spm
Showing how TI and DO's Teachings are Beyond Human in All ways

7:15 PM · Jan 25, 2022 · Twitter Web App

ANSWER: Does not pertain to Defendant and is therefore denied.

50.    Over the past few months this behavior has escalated exponentially, with Co-Defendants Steven Havel and Cathy Weaver posting now fewer than thirteen recordings containing the Foundation's copyrighted Audio Works and other material.

ANSWER: Does not pertain to Defendant and is therefore denied.

51.    This includes the following YouTube videos and Audio Works:

    Tape No. 149 - Broadcast on YouTube 3spm channel on 11/08/2021
    Tape No. 263 - Broadcast on YouTube 3spm channel on 11/08/2021
    Tape No. 004 - Broadcast on YouTube 3spm channel on 11/08/2021
    Tape No. 030 - Broadcast on YouTube 3spm channel on 3/26/22
    Tape No. 161 - Broadcast on YouTube 3spm channel on 4/08/22
    Tape No. 156 - Broadcast on YouTube 3spm channel on 4/12/22
    Tape No. 011 - Broadcast on YouTube 3spm channel on 4/13/22
    Tape No. 054 - Broadcast on YouTube 3spm channel on 4/14/22
    Tape No. 052 - Broadcast on YouTube 3spm channel on 4/17/22
    Tape No. 050 - Broadcast on YouTube 3spm channel on 4/18/22
    Tape No. 200 - Broadcast on YouTube 3spm channel on 4/19/22
    Tape No. 201 - Broadcast on YouTube 3spm channel on 4/20/22
    Tape No. 202 - Broadcast on YouTube 3spm channel on 4/21/22

Tape No. 203 - Broadcast on YouTube 3spm channel on 4/26/22
Tape No. 204 - Broadcast on YouTube 3spm channel on 4/27/22

**ANSWER: Does not pertain to Defendant and is therefore denied.**

52.    In addition, Co-Defendants Steven Havel and Cathy Weaver have advertised and plan to sell or have sold t-shirts containing the Foundation's Trademarks including the trademarked design and word marks.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

53.    The sales of material containing the Foundation's Trademarks is likely to cause confusion that these t-shirts are affiliated with the Foundation.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

54. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images owned by the including "The C.B.E. (Celestial Being Entity)" and routinely use this image in on their YouTube channel and on t-shirts being sold by Co-Defendants Steven Havel and Cathy Weaver.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

55. The creation of such derivative works and use in videos and on t-shirts constitutes copyright infringement of the Foundation's copyrights in its Art Work.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

## COUNT I INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. SRU00298530

56.    The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

57.     Defendants' conduct infringes upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER: Defendant does not recognize the Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act as the Group did not confer these rights on the Plaintiffs and the Plaintiffs claims to ownership of the Group's Property are fraudulent.**

58.     The Audio Works, recorded at the U.S. Copyright Office as Copyright Registration No. SRu00298530 are owned by the Foundation and have been owned by the Foundation continuously since 1997.

**ANSWER: Defendant questions the validity of the Copyright registration of the Audio Works and also questions the exact numbered tapes that Plaintiff's have alleged to have copyrighted and the circumstances under which the Audio Works were copyrighted under.**

59.     Each Defendant knew or had constructive knowledge that the reproduction and distribution of the Audio Works without the consent of the Foundation constituted copyright infringement.

**ANSWER: Defendant questions the validity of the copyright registration and the circumstances under which the copyrights were obtained and denies that the Group's Property was obtained legally and/or legitimately and therefore denies the allegations.**

60.   Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: Defendant does not recognize the Plaintiff's rights to the Group's Intellectual Property as Mark and Sarah King never had the Group's Property legally and/or legitimately transferred to Plaintiffs and therefore denies the allegation.**

61.   The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER:  Defendant denies causing any economic damages or reputation losses to the Plaintiffs as the Group never intended for there to be any financial gain or profit off of their Property nor for the Plaintiffs to be the sole distributor of said Property. Defendant is not responsible for how others perceive the Plaintiffs and is therefore not responsible for any perceived reputation losses. Furthermore, if Mark and Sarah King are concerned about economic losses the Defendant is curious as to why the Plaintiffs have not pursued those who are selling their copyrighted/trademarked materials online( Exhibit and why they are alleging that the Defendant has caused them economic losses when providing some of the same Property produced by the Group for free and Defendant denies that Mark and Sarah King had any of the Group's Property legally and/or legitimately transferred to Plaintiffs .**

62.   The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims as Mark and Sarah attempted to obscure an illegal and/or illegitimate transfer of Property from this Court.**

63.   As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims as Mark and Sarah King have demonstrably proven that Plaintiffs obtained the Group's Property in an illegal and/or illegitimate transfer.**

64.   The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER: Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims as Plaintiffs have abused this Court by obscuring an illegal**

and/or illegitimate transfer from the Group to justify a Civil Action with malicious intent against Defendant Jason Bartel, Defendant Cathy Weaver and Defendant Steven Havel.

## COUNT II INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. PA0000867224

65.   The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

66.   Defendants' conduct infringes upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER: Defendant questions the validity of the Plaintiff's copyright registrations and the circumstances under which they obtained them and Mark and Sarah King's ownership of the Group's Property and therefore denies this allegation.**

67.   The Video Works, recorded at the U.S. Copyright Office as Copyright Registration No. PA0000867224 are owned by the Foundation and have been owned by the Foundation continuously since 1997.

**ANSWER: Defendant denies the validity of the copyright registration and denies the validity of the alleged Property transfer to the Plaintiffs from the Group and therefore denies that Plaintiffs own any of the Group's Property.**

68.    Each Defendant knew or had constructive knowledge that the reproduction and distribution of the Video Works without the consent of the Foundation constituted copyright infringement.

**ANSWER: Defendant does not recognize the validity of the Plaintiff's copyrights as Defendant does not recognize the Plaintiff's ownership of the Group's Property and had many of the video works that the Plaintiffs fraudulently claim ownership of on his 4shared account since 2009 and is curious why the Plaintiffs did not have copyright strikes placed on them before 2021.**

69.    Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: Defendant does not recognize the Plaintiff's rights to the Group's Property as Defendant does not recognize Plaintiff's alleged transfer of ownership of said Property from the Group.**

70.    The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER:  Defendant again denies causing any economic and reputation losses to the Plaintiffs and Defendant strongly believes that Mark and Sarah King are attempting to**

**cause economic ruin to Defendants as Defendant Jason bartel strongly believes**

**Plaintiffs know Defendants cannot afford an Intellectual Property Attorney.**

71.　The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to

recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

　　**ANSWER: Defendant denies that the Plaintiffs have this right.**

72.　As Defendants' infringement was intentional and willful and as Defendants' conduct

make this case exceptional, the Foundation is entitled to an award of statutory damages,

exemplary damages, attorneys' fees, and the costs of the suit.

　　**ANSWER:  Defendant denies that Mark and Sarah King have this right.**

73.　The conduct of each Defendant is causing and, unless enjoined and restrained by this

Court, will continue to cause the Foundation great and irreparable injury that cannot fully be

compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to

17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each

Defendant from further infringing the Foundation's copyright and ordering that each Defendant

destroy all copies of Copyrighted Video Works made in violation of the Foundation's

copyrights.

　　**ANSWER: Defendant denies this right and is curious why numerous others who have**

**infringed for years on this alleged right are not named in this suit. ( Exhibit**

## COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO.
### TXU000817732

74.     The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWERS: As are the Answers thereto.**


75.     Defendants' conduct infringes upon the Foundation's exclusive rights of creating derivative works that are protected under the Copyright Act.

**ANSWER: Defendant denies that the Plaintiffs have these exclusive rights.**


76.     The Literary Work entitled "How and when 'Heaven's Gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials", recorded at the U.S. Copyright Office as Copyright Registration No. TXu000817732 (the "Literary Work") is owned by the Foundation and has been owned by the Foundation continuously since 1997.

**ANSWER: Defendant questions Mark and Sarah Kings ownership of any of the Group's Property due to the fraudulent manner in which said Property was obtained.**

77.     Defendants Weaver and Havel know that the creation of a derivative work, such as an audio version, of the Literary Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER: Does not pertain to Defendant and therefore is denied.**


78.     Defendants Weaver and Havel know that the public performance and the recording of public performances (and subsequent dissemination of such) of the Literary Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER: Does not pertain to Defendant and therefore is denied.**

79.     Defendants' conduct in creating a derivative work and publicly performing and distributing copyrighted works is willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: Does not pertain to Defendant and therefore is denied.**

80.     The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER: Defendant again denies any economic losses by Plaintiff due to Defendant's conduct as Defendant strongly believes bringing economic ruin to Defendants is Mark and Sarah King's prime motivation for filing this Civil Action against Defendants. Defendant again is not responsible for any perceived losses of reputation by Plaintiff and strongly believes Mark and Sarah King's own behavior is to blame for Plaintiffs perceived losses of reputation.**

81.     The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER: Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims as Defendant strongly believes that Mark and Sarah King are seeking statutory damages with malicious intent in order to economically ruin Defendants.**

82.    As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims as Mark and Sarah King initiated this Civil Action to cause pain and suffering to Defendants.**

83.    The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER: Defendant denies the validity of the Plaintiff's copyrights and therefore denies that Plaintiff is entitled to injunctive relief.**

## COUNT IV INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA000877834

84.     The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

85.     Defendants' conduct infringes upon the Foundation's exclusive rights of creating derivative works that are protected under the Copyright Act.

**ANSWER: : Defendant denies that the Plaintiffs have any exclusive rights to the Group's Property as the Plaintiffs have fraudulently claimed ownership of the Group's Property.**

86.     Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images registered as VA000877834 entitled "The C.B.E. (Celestial Being Entity)" (the "Visual Work") which is owned by the Foundation and has been owned by the Foundation continuously since 1997.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

87.     Defendants Weaver and Havel know that the creation of a derivative work, such as an these commercial dolls, of the Visual Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

88.     Defendants' conduct in creating a derivative work is willful within the meaning of the

Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

89.     The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

> **ANSWER: Defendant again denies causing the Plaintiffs any economic and reputation losses and is not responsible for how others perceive the Plaintiffs.  Mark and Sarah King obtained the Group's Property they had copyrighted in an illegal and/or illegitimate transfer of Property.**

90.     The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

> **ANSWER: Defendant denies that the Plaintiffs have the right to pursue statutory damages as Mark and Sarah King are seeking these damages with malicious intent in order to economically ruin Defendants.**

91.     As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER:  Defendant denies any implication that Plaintiffs are entitled to any relief under any of their claims as Mark and Sarah King are seeking these damages and attorneys fees and costs of the suit with malicious intent in order to economically ruin Defendants.**

92.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER: : Defendant does not recognize the validity of the Plaintiff's copyrights as per the illegal and/or illegitimate Property transfer which Mark and Sarah King used to seize the Group's Property. As per the intentions of the Group in the letters sent in the Federal Express packages to multiple former members of the Group in late March of 1997, including Plaintiffs, the Group's Property was to be disseminated to the world.**

## COUNT V CONTRIBUTORY INFRINGEMENT BY HAVEL AND WEAVER

93.     The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

94.   Defendants' conduct constitutes contributory infringement upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER: Defendant questions the validity of the Plaintiff's copyrights and the circumstances Mark and Sarah King obtained the Copyrights under and therefore denies the allegations in Paragraph 94 of the Plaintiff's complaint.**

95.   In particular, with respect to Defendant Bartel's direct infringement, through posting the Foundation's copyrighted material on the 4Shared website, Defendants Havel and Weaver actively induced, caused, and materially contributed to that infringement by sending him stolen copies of the Audio and Video Works that were in the possession of Defendants Havel and Weaver.

**ANSWER: Defendant questions the validity of the Plaintiff's copyrights  as the Group did not transfer the Group's Property to Plaintiffs and the Group only held a Common Law Copyright for their book and Defendant had been posting the Plaintiff's copyrighted material since 2009 on 4shared.com and had been giving away the Plaintiff's copyrighted material since 1997 to Libraries and Universities ( Exhibit 8 ) and to anyone who requests it free of charge. Defendant denies that the Audio and Video works produced by the Group were stolen as the Group never stated that they were to be anyone's property nor did the Group transfer said Property to Plaintiffs.**

96.     Defendants Havel and Weaver sent the stolen copies of the Audio and Video Works to Defendant Bartel knowing that he would be copying and redistributing the Foundation's copyrighted material.

**ANSWER: Defendant was never sent any Video works produced by the Group by Defendant Havel or Defendant Weaver nor any Audio works produced by the Group by Defendant Weaver. Defendant Bertel admits that Defendant Havel sent audio works numbered 219-929 produced by the Group to the Defendant.**

97.     Defendants Havel and Weaver's conduct was willful within the meaning of the Copyright

Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER: Does not pertain to Defendant and therefore is denied.**

98.     The Foundation has been damaged by Defendants Havel and Weaver's conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

99.     The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.     **ANSWER: Does not pertain to Defendant and therefore is denied.**

100.    As Defendants Havel and Weaver's infringement was intentional and willful and as Defendants Havel and Weaver's conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

101. The conduct of each Defendants Havel and Weaver is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting Defendants Havel and Weaver from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio and Video Works made in violation of the Foundation's copyrights.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

## COUNT VI CONSPIRACY TO COMMIT COPYRIGHT INFRINGEMENT

102.    The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

103.    As described above, each Defendant engaged in a concerted action with other Defendants to reproduce and distribute the Foundation's Audio and Video Works by sending each other stolen copies of these works and then uploading these Works to the internet to be downloaded by anyone.

**ANSWER: Defendant was sent Audio works 219-929 produced by the Group by Defendant Havel and placed them on 4shared.com and multiple Google drives for free**

download. Defendant has never sent any Audio or Video works produced by the Group to Defendant Havel or Defendant Weaver and Defendant has never received any Audio or Video works produced by the Group from Defendant Weaver.

104.    By so doing, the Defendants constructively agreed to engage in the unlawful reproduction and distribution of Foundation's copyrighted works.

**ANSWER: Defendant admits placing Audio works numbered 219-929 on 4shared.com and multiple google drives for free download and sending a thumb drive of said Audio Works to a College Professor free of charge. However Defendant denies the validity of the Copyrights and the circumstances under which the Copyrights were obtained by the Plaintiff's and therefore denies engaging in any unlawful reproduction or distribution of the works.**

105.    In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by copying the Works to distribute amongst each other and to distribute over the internet and were willful participants in this joint activity.

**ANSWER: Defendant denies committing overt tortious and unlawful acts. Defendant affirms that acting alone he placed the audio tapes numbered 219-929 produced by the Group on 4shared.com and multiple Google drives for free download and gave them on a thumb drive to a College Professor. Defendant denies copying any of the Group's works to distribute amongst ( sic ) either Defendant Weaver or Defendant Havel.**

**Defendant denies engaging in any civil conspiracy with Defendant Weaver or**

**Defendant Havel.**

106.    As a proximate result of this conspiracy, the Foundation has been damaged, as is more fully alleged in Counts I–IV, above.

**ANSWER: Defendant denies that placing audio works numbered 219-929 on multiple**

**free file sharing sites damaged the Plaintiffs or Mark and Sarah King's  Foundation and**

**Defendant denies that this was done as part of a conspiracy.**

## COUNT VII FEDERAL TRADEMARK INFRINGEMENT

107. The Foundation hereby incorporates by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

**ANSWER: As are the Answers thereto.**

108. The Foundation is the owner of all rights in the Trademarks.

**ANSWER: Defendant questions the validity of the trademarks and the**

**circumstances under which the Plaintiffs obtained them and therefore denies the**

**statement made in Paragraph 108 of Plaintiff's complaint.**

109. Defendants Havel and Weaver have used the Trademarks in connection with their

YouTube channel and in connection with selling T-Shirts in a manner that is likely to

cause confusion, to cause mistake, or to deceive, in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER: Does not pertain to Defendant and is therefore denied.**

110. The use by Havel and Weaver is unauthorized, is likely to continue, and is likely to cause substantial injury to the public and to the Foundation, and the Foundation is entitled to injunctive relief and its attorneys fees and costs under the Lanham Act.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

111. Havel and Weaver's infringement of the Trademarks, as aforesaid has caused and is likely to continue to cause irreparable harm to the Foundation. Unless restrained and enjoined by this Court, Havel and Weaver will persist in their infringement, thereby causing the Foundation further irreparable harm.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

112 The Foundation is entitled to, among other relief, injunctive relief and an award of actual damages, Havel and Weaver's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under sections 34, 35, 43 of the Lanham Act, 15 U.S.C. § 1116, 1117, 1125 together with prejudgment and post-judgment interest.

**ANSWER: Does not pertain to Defendant and is therefore denied.**

113. The Foundation has no adequate remedy at law.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to**

**the allegation contained in paragraph 113 and therefore deny the same.**

## DEMAND FOR JURY TRIAL

The Foundation requests a trial by jury on all issues so triable.

**ANSWER: Defendant also requests a trial by jury of all issues so triable.**

## PRAYER FOR RELIEF

WHEREFORE, the Foundation prays for judgment against the Defendants, and each of them, as follows:

A.      For entry of a preliminary injunctions, temporary restraining orders, and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing the Foundation's rights in the Video and Audio Works, the Literary Work, and the Visual Work including without limitation by using the internet to reproduce or copy the Video and Audio Works, to distribute the Video and Audio Works, or to make the Video and Audio Works available for distribution to the public, or to publicly perform the Video and Audio Works or the Literary Work, or to create derivative works of the Literary Work or the Visual Work except pursuant to a lawful license or with the express authority of the Foundation. Each Defendant also shall destroy all copies of the Video and Audio Works that Defendant have in their possession, any and derivative of the Literary Work or Visual Work created, and shall destroy all copies of those downloaded audiovisual works transferred onto any physical medium or device in each Defendant's possession, custody, or control;

B.      For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Foundation;

C.      For an order of impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of the Foundation's Video and Audio works, Literary Work, Visual Work, or derivatives thereof, photographs or other materials that are in Defendants' possession or under their control;

D.      For actual damages and profits of Defendants along with the costs of this action, pursuant to 15 U.S.C. § 1117;

E.     A trebling of all damages pursuant to 15 U.S.C. § 1117;

F.     A finding that this case is exceptional under 15 U.S.C. § 1117 and an award of attorneys

fees;

      G.     For an order that Defendants are jointly and severally liable to the Foundation in

      the full amount of the Judgment on the basis of a common law claim for civil

      conspiracy to commit copyright infringement;

H.     For an award of compensatory damages in favor of the Foundation and against

Defendants, jointly and severally, in an amount to be determined at trial;

    I.     For the Foundation's costs;

J.     For the Foundation's reasonable attorneys' fees;

K.     An award of pre- and post-judgment interest on each and every monetary award; and

L.     For such other and further relief as the Court deems proper.

**RESPONSE:  Defendant denies any allegations or premises contained in the numbered paragraphs entitled "Prayer for Relief" and deny that Plaintiff's are entitled to any relief from this Court. Defendant specifically denies the requested relief would make this an "exceptional case" for which it should be awarded its reasonable attorney's fees pursuant to 15 U.S.C. 1117(a). Defendant also specifically denies the Plaintiff's request for injunctive relief.**

**Wherefore Defendant respectfully request the Court to enter judgment in favor of the Defendants and against the Plaintiff's on Mark and Sarah Kings Complaint and awarding to Defendant Jason Bartel, Defendant Cathy Weaver and Defendant Steven Havel cost and expenses and reasonable damages in this action and such other relief as the Court may deem just in the premises.**

**Here follows the Defendant, Jason Bartel's Defense.  Defendant identifies the following affirmative defenses upon which Jason Bartel may rely at the time of the trial.  Jason Bartel, Defendant respectfully**

asks this Court that he be able to reserve the right to amend, supplement, restate and/or withdraw any of these defenses or to assert additional defenses. Furthermore by characterizing the following as defenses, Jason Bartel the Defendant does not admit that he bears the burden of proof on any of the issues raised by the following defenses.

## Affirmative Defenses to the Allegations of the Complaint Based Upon Conduct of the Parties:

### Background of the Events Between the Parties Leading to the lawsuit

**114.** Defendant was a member of the Group from August to November of 1994. Defendant was planning on leaving Madison. WI in April of 1997 and driving to the western U.S. in the hopes of reuniting with the Group. Defendant had no known contact for the Group but knew that others who had left the Group had also been separated from the Group for years and had been able to rejoin the Group in a serendipitous manner.

115. When the news of the "mass suicide" hit on March 27th, 1997 Defendant knew that he had waited too long to try to find the Group and was desperate for any information that he could find about what had happened. Defendant looked

at heavensgate.com and found an address for TELAH Services and sent a letter to the TELAH Services address which was on Greenway Rd. in Phoenix and which later Defendant found out was a mailbox at a Postnet business that was owned by the Plaintiffs. The letter was returned to sender stating "not at this address".

116 Several days after this the Defendant noticed that a new address was on

heavensgate.com which stated Right To Know with a Denver, CO address and Defendant sent a letter to said address containing a phone number to reach the Defendant at and an offer to help with anything regarding the Group. Shortly after this Chuck Humphrey ( aka RKK, hereafter Chuck ) called the Defendant, multiple phone calls ensued and Chuck put the Defendant in touch with another former member of the Group, Keith Kampfen ( aka STW, hereafter Keith ) of California who is now deceased and Chuck encouraged the Defendant to study the information that the Group had left behind.

117 In early June of 1997 the Defendant left Madison, WI for California to meet up with Keith. Later that summer the Defendant, Keith, Chuck and Francisco Falcon ( aka JHN and hereafter JHN ) met at a restaurant in California and discussed how they would try to do the task of disseminating the Group's information as the Group repeatedly used the phrase "disseminate our information" in the letters that they had sent out in several FedEx packages to former members of the Group in late March of 1997.( Exhibit  The former members who were recipients of the packages were Chuck, JHN, the Plaintiffs ( one package for the two of them ), Wayne Parker ( aka OSC  and hereafter OSC), Rio Diangelo ( aka NEO ), Lorraine and Floyd Snelson ( aka FLX/ABL and one package for the two of them ). Packages were also sent to the ISP in Tennessee that was hosting heavensgate.com, a Romanian ISP that was to be a backup in case the US site was shut down and Simon Boyce and Debbie Geller of the BBC. Three others were added at the last minute according to a document that the

Defendant has from the Group and they were described as "Rights" sympathizers and a Waco author.

118 In June or July of 1997 the Defendant received an e-mail from the Plaintiffs that had also been sent to other former members of the Group including Keith and JHN. In the e-mail the Plaintiffs attempted to manipulate Defendant's and others' perception of Chuck and claimed that Chuck was under an "influence" and essentially could not be trusted. It was the Defendant's first indication that some very serious rifts were developing between former members of the Group. 119 Defendant met with Chuck in late July or early August of 1997 in the San Francisco Bay area and Defendant and Chuck decided that they wanted to continue with a project Chuck had begun of disseminating the Group's information. Chuck had written in an unpublished manuscript that immediately after the Group's "mass suicide" he had received his FedEx package on March 25th ( Exhibit 10 ) and had called the Plaintiffs as they were listed on the document that described those who had received similar packets and Chuck had spent time with the Plaintiffs when all of them were out of the Group. Chuck would later write the aforementioned unpublished manuscript detailing many of the events of the aftermath of the Group as well as having several conversations with the Defendant about that subject.

120 Chuck stated that he flew to Phoenix from Denver on March 26th and he

and OSC flew to San Diego later that day before the news of the "mass suicide"

had broken and were on their way to the Residence when they heard about it on

the radio. They chose to turn around and fly back to Phoenix. Chuck stated that

at about 3 AM Plaintiff Mark King called him as Mark was upset that the

TELAH Services address was still on heavensgate.com. Chuck had been given

the disks from the Group with their last statements and instructions for Chuck to

upload them to the site and no one else was given that task. (Exhibit Two )Chuck was

unable at the time that Plaintiff Mark King called him to remove the address as the site was

too busy but he was able to remove the address at a later time and that is why I

saw the Right To Know address in Denver on the site and sent the

aforementioned letter to Chuck.

121Chuck stated that Do ( aka Marshall Applewhite ) had called him in late 1996

and asked him to set up a mailbox with the name Right To Know. (Exhibit )

Later Chuck asked Do for permission to incorporate Right To Know as a

business entity and Do

approved so Chuck had Right To Know Enterprises created in Colorado. A

Right To Know address in Venice, CA ( where Chuck set up a new mailbox after

leaving the Denver area ) can be seen on heavensgate.com as it was in December

of 1997 and February of 1998. Chuck was given the masters to the Group's Exit

videos and told by the Group, "We thought you would know best how to

duplicate the tapes and distribute them for widest coverage". ( Exhibit Two )

122 On the morning of March 27th, 1997 Chuck stated that he met with the Plaintiffs and OSC in a parking lot in Phoenix at 7am as the Plaintiffs were afraid of the authorities. At that meeting Chuck stated that the Plaintiffs gave him and OSC all of " their paperwork they got from the class ( the Group ) along with two sets of keys to all of the cars and trucks the class had parked in a San Diego airport parking lot". One of these cars, a Lincoln Continental, was given to Chuck by the Group as outlined in the document prepared by the Group and the Defendant and Chuck later used that vehicle to drive between California and Colorado/Wyoming and back. Two other vehicles were given to OSC by the Group as per the aforementioned document.

123 Chuck and OSC flew back to San Diego on March 27th, 1997 to retrieve some of the cars and to check on the storage locker. Chuck gives detailed information in his manuscript that it was locker units 214 and 147 at a storage facility on Barham Dr. in Escondido, CA. He stated that the rental agreements were signed by Tom Nichols ( aka DSTODY ) and Cabot Van Sinderen ( OLLODY ) and money orders in the amount of $80 to cover the rent on the two storage lockers through April of 1997. Chuck stated that he and OSC retrieved "about 6 or 7 boxes of audio cassettes and several other boxes of Beyond Human tapes". According to Chuck there was not enough room in the Lincoln Continental for all the contents of the storage locker. They then left in the Lincoln

and picked up a Mazda van that the Group had designated for OSC and transferred some of the Lincoln's contents to it and drove back to Phoenix.

124 Chuck stated that OSC "put his tapes in the storage locker he rented in Phoenix" and Chuck then drove OSC to the airport so that he could fly back to San Diego to try to retrieve the rest of the items from storage. Chuck drove to Denver and placed the tapes that he retrieved in a storage locker there. Chuck received a phone call in Denver from OSC concerning how a lock had been placed on the storage locker by the San Diego County Sheriff.

125 Chuck stated that at a meeting at a Mexican restaurant in Phoenix with the Plaintiffs late March or in early

April of 1997 that " MRC ( Mark King )  was saying that TOM ( Jerome Weinstein , an attorney)

wanted to form some kind of entity to be able to get all the rights to Heaven's Gate stuff including

copyrights

on all the web pages and their logo's etc. He ( MRC ) said there can be tens of millions at stake".

Chuck "told MRC I was against this and that the attorney seemed to be just manipulating them so he could make a lot of money".

126. Defendant had numerous conversations with Chuck  in which he related the details of a meeting he had with Plaintiff Mark King in late April or early May of 1997. Chuck had made the decision at that point to take the same step as those thirty-nine members of the Group and was preparing to leave this world. Plaintiff

Mark King earnestly asked Chuck for the Group's audio tapes that Chuck had retrieved from the San Diego storage locker. Chuck told Plaintiff Mark King \ that he could have the tapes if he promised to make them available to any who would want to hear them and Plaintiff Mark King repeatedly told Chuck that they would be made available. Chuck admitted to the Defendant that he did not trust Plaintiff Mark King to keep his word but since Chuck was planning on ending his existence in this world he reluctantly gave the Group's audio tapes to Plaintiff Mark King. Unbeknownst to Plaintiff Mark King Chuck had made copies of tapes 1-218 as these were the tapes that the Defendant and Chuck later digitized and gave away to Universities, Libraries and to anyone who would ask for them for the cost of shipping. Defendant still has many of these CD-ROMs Exhibit  and gives them away to this day.

127 Defendant and Chuck were living together in Big Bear, California in late 1997 when they were digitizing the Group's audio tapes and they were told the following in an 11/17/97 e-mail ( Exhibit Four ) from Mark and Sarah King and Wayne Parker, "Please discontinue any reproduction and dispersal of audio tapes in any form. Please give all of us the time to work out the best solution in this matter. We promise they will be made available when the right decision is arrived at". Defendant is now aware that this e-mail was sent after the TELAH Foundation

had copyrighted 486 of the audio tapes produced by the Group and that e-mail

does not constitute a cease and desist order.

128 In the fall of 1997 the Defendant and Chuck put these audio tapes in

CD-ROM form in the Library of Congress and numerous other libraries as well

as many of the videos produced by the Group and the First Edition of the book

that the Group wrote ( Exhibit Eight ) The Defendant moved back to Wisconsin in

January of 1998 with many of the CD-ROMs that he still has and Chuck's body

was found in the Arizona desert in February of the same year. Chuck left Right to

Know to his daughter as she lived in California and had access to Chuck's

computers and other things that he used to run Right To Know. Chuck's daughter

was sued by the Plaintiffs and OSC in March of 1998 just one month after her

Dad taking his own life and told the Defendant that

Plaintiff Mark King had threatened to take her houses in the suit as she had

numerous properties in southern California. Chuck's daughter seemed frightened

to the Defendant when the Defendant spoke to her on the phone in March of

1998 and the Defendant told her that this wasn't her fight and that she should

give the Plaintiffs whatever they wanted and not take them on in court.

129 The Defendant has made numerous attempts to disseminate the Group's

audio tapes, video tapes and book in the intervening twenty-four years.

Defendant has given away all but one of his First Edition books that he was

given by Chuck and has never tried to sell any of the CD-ROMs that he still has. Defendant has been very vocal online in his criticisms of Mark and Sarah Kings Foundation and how they have not allowed himself and many others access to the Group's audio tapes. In 1998 the Defendant sent Plaintiff Mark King an e-mail in which he told the Plaintiff that Defendant would pay for the copying costs of the remaining unreleased audio tapes and was told by Plaintiff Mark King that Defendant had to "apologize" because the Plaintiffs had spent so much money on lawyers and Plaintiff Mark King was stating that it was at least partially the Defendant's fault that the Plaintiffs had chosen to spend so much money on lawyers. Defendant admits telling Plaintiff Mark King in very coarse language that that apology would never happen.

130 Defendant and the Plaintiffs have been feuding online for the past twenty-five years and the Defendant believes that the Plaintiffs had his freewebs blog shut down in @2009 for a copyright violation as Defendant had an audio tape from 1994 produced by the Group on the website. Defendant received said tape from Chuck and still has the original cassette. Defendant had also transcribed the letter that the Group sent to the Plaintiffs in the FedEx package and had a link for the 4shared site that Defendant had uploaded 224 of the Group's audio tapes as well as many of the Group's videos.

131 Defendant is aware of numerous individuals online who are selling materials that have been Copyrighted and/or Trademarked by the Plaintiffs including multiple sites where the CD-ROMs that the Defendant and Chuck created are being sold. ( Exhibit Defendant strongly believes that the Plaintiffs are suing him solely for personal reasons as Defendant has continued to be vocal online in Defendant's criticisms of the Plaintiff's withholding of the Group's audio tapes and Defendant believes that this lawsuit was filed at least partially due to Plaintiff's knowing that Defendant works at a Taxi Company and most likely cannot afford an Intellectual Property Attorney.

132 Defendant is aware that the Plaintiffs told Chuck in 1997 that Defendant and another former member of the Group"may not have enough Next Level mind to listen to the audio tapes" ( Exhibit Seven ) and Defendant strongly believes that Plaintiffs do not feel that anyone is worthy of listening to the Group's audio tapes unless they are ABC or HBOMAX who the Defendant believes have had the Group's audio tapes licensed to them for two recent documentaries. Defendant strongly believes that the Plaintiffs will never let Defendant have access to the Group's audio tapes and therefore Defendant was very excited to learn from Defendant Havel that JHN was sending Defendant Havel close to seven hundred of the Group's audio tapes. Defendant was also very excited to finally be able to share these audio tapes  with anyone who would like to listen to them including a

College Professor whom the Defendant sent a thumb drive containing audio tapes 1-929 produced by the Group. This Professor has stated that he's willing to state that Defendant sent the Professor the thumb drive at no cost. Defendant has publicly disagreed with said Professor's conclusions about the Group but would still give the Professor the thumb drive no matter what the Professor stated about the Group. Defendant believes in freedom of access to information and that it was the clear intention of the Group as delineated in the letters that the Group sent in the FedEx packages to multiple ex-members of the Group that the Group's "information" be "disseminated" as the phrase "disseminate our information" or variations thereof is used multiple times in the Group's letters to ex-members but the word "copyright" does not appear once. ( Exhibit Two A )

Herein concludes the affirmative defenses of the defendant, Jason Bartel

# COUNTERCLAIM

Defendant Jason Bartel identifies the following Counterclaim upon which Defendant may rely at the time of trial.  Defendant respectfully asks to reserve the right, however, to amend, supplement, restate any of these Counterclaims or to assert additional information to support this Counterclaim.

In support of Defendant, Jason Bartel's counterclaim against Mark and Sarah King hereafter to be referred to as Mark and Sarah King

collectively referred to as Counter Defendants. The Defendant Jason Bartel to be

referred to as Counter Plaintiff hereby asserts the following:

The Heaven's Gate group, then referred to as T.O.A. Total Overcomers
Anonymous had placed a copyright symbol in the name of Total Overcomers
Anonymous on the Beyond Human Series 1-12 in 1992, they are the original
owners and creators of the Video Works. The Counter Defendants knew this
information but still proceeded to obtain invalid copyright registrations of the
Video Works, despite them not being in the group or being involved in the creation
of the Video Works nor having any instructions from the Group to copyright the
Beyond Human Series. Mark and Sarah King when filing their application for the
copyright of the Video Works misrepresented information by copyrighting the
Video Works despite not being in the Group in 1992 nor being involved in an
"employer for hire" relationship with the Group in 1992. It is clearly marked on the
masters of the Beyond Human Series 1-12 that T.O.A had placed a copyright
symbol on them.


Chuck Humphrey of Right to Know also had instructions, in the form of a letter
received via fed-ex package, from Do, the leader of the Heaven's Gate group to
distribute the Group's Exit videos and maintain heavensgate.com. Rkkody did so
and went to the storage locker in San Diego County with Wayne Parker ( aka OSC
) and retrieved several boxes of the Group's Audio Works from said storage
locker. Mark King later obtained the Group's Audio Works from Chuck when
Chuck was planning on joining the Group by taking the same action that the Group
did. Mark King repeatedly promised Chuck that the Group's tapes would be made
available as per Chuck's stipulation for giving Plaintiff the Group's Audio Works.
Chuck admitted to Defendant that Chuck did not trust Mark King to follow through
on his promises but as Chuck was leaving this world Chuck didn't know what else
to do with the Audio Works. Unbeknownst to Plaintiffs Chuck had copies Audio
Works numbered 1-218 and later Chuck and Defendant digitized said Audio
Works and placed them on CD-ROMs and distributed them for free to numerous
Libraries along with the Group's Video Works and the Group's Literary Work,
How and When Heaven's Gate May be Entered.

The Literary Work had a Common Law Copyright ( Exhibit placed on said Literary Work by the Group that allowed anyone to reproduce the Group's Literary Work. Counter Defendants who had no hand in creating the Literary Work obtained a Copyright for the Literary Work with no instruction from the Group to do so.

Upon information and belief Do, the leader of the Group and the Group members did not wish for any of their Audio and Video Works to be placed under copyright or trademark registrations that would restrict their usage or viewing by the public, quite the opposite the Group wished for their Property to be shared and disseminated to the public in all their entirety and with the only restriction being that it could not be altered or used for commercial purposes. Counter Defendants have gone directly against Do and the Group's wishes in Mark and Sarah King's handling of the Property left behind by the Group. Counter Defendants with no proof despite repeated requests alleged that two separate judges had awarded them sole ownership of all the Groups Property. Counter Defendants obtained all the Group's Property via the illegal and/or illegitimate transfer of Property described in Defendant's Answer to Plaintiff's Complaint in Paragraph 8.

Counter Defendants have stated that they received packages, faxes, emails, written correspondence and telephone calls that Do and other members of the Group stating that all of the Group's Property was transferred to Mark and Sarah King and have never provided any proof to Defendant or any natural person of said Plaintiff's claims of said transfer of the Group's Property.

Counter Plaintiffs respectfully request a declaratory judgment action for invalidity, unenforceability, and if applicable, cancellation of the asserted trademark and copyright registrations for the reasons stated above.

Lawful "use in commerce" is required for registration of a mark under the Lanham Act. If the registrant's use is not lawful, it is not entitled to federal trademark registration and, if registration has erroneously been granted by the Trademark Office, it cannot be asserted as the basis for enforcement of rights. Such a registration is subject to cancellation. Upon information and belief the registration of the E.B.E Visual Work is not presently on sale nor has it ever been by the registrants. These registrations are abandoned and are therefore invalid and

unenforceable, as is the registration for the Audio Works as they have never been for sale by registrants.

15 U.S.C. 1119 grants district courts the power to order the cancellation of any registration in whole or in part. The Counter Defendants registration of the Audio Works, Video Works and Visual Works should be canceled pursuant to 15 U.S.C. 1064 on the grounds of abandonment, fraud on the Trademark Office and the above statements.

WHEREFORE, Counter Plaintiff prays that after due proceedings be had, there be judgment rendered in their favor against Counter Defendants, otherwise known as Mark and Sarah King as Defendant believes they have filed a frivolous petition and this civil action is an abuse of the Federal Court system.

Counter Plaintiff's respectfully requests the following further relief of this Court:

A declaration and order declaring the TELAH Foundations copyright and trademark registrations invalid and unenforceable;

If applicable a declaration and order canceling the registrations of the TELAH Foundation in whole or in part and directing the Director of the United states Patent and Trademark Office to correct the Principal Register of copyrights and trademarks.

A declaration and order declaring the Counter Plaintiff and Defendant Cathy Weaver and Defendant Steven Havel to be awarded equal ownership and equal rights to All Property left behind by the Group and allegedly awarded to the Counter Defendants.

If an attorney is granted by this Court or Counter Plaintiff obtains an attorney on a contingency basis an award of reasonable attorney's fees;

An award of damages, interest and costs commensurate with what Mark and Sarah King were claiming that Plaintiffs should be awarded by the Court and any damages the Court deems necessary for Mark and Sarah King's malicious intent in filing Plaintiff's Complaint against Defendants as Defendant Jason Bartel strongly believes that Mark and Sarah King filed this Civil Action against Defendants in an attempt to economically ruin Defendants as Plaintiffs can afford an Intellectual Property Lawyer and Defendant strongly believes that Mark and Sarah King are aware that Defendants cannot afford an attorney, much less an Intellectual Property lawyer.

Such other and further relief as this Court shall find due under the law or in equity.

Jason Bartel
N4019 Forest Drive
Hancock, WI 54943
jason_bartel@unioncab.com

Defendant

# INDEX OF EXHIBITS

**Exhibit One**  Arizona Corporation Commission Entity Information concerning the Evolutionary Level Above Human, Inc. d/b/a the TELAH Foundation

**Exhibit Two A**  The Group's generic letter to Mark and Sarah King ( aka MRC/SRF )

**Exhibit Two B**  Group's generic letter to Chuck Humphrey ( aka RKK )

Exhibit Two C Group's letter to Mark and Sarah King concerning dispersal of Group's Property ( automobiles )

Exhibit Two D Group's letter to Mark and Sarah King concerning the "Purser" task

Exhibit Two E Group's letter to Chuck Humphrey concerning installation disks containing Group's last statements and maintaining Group's website, heavensgate.com

Exhibit Two F Group's letter to the Internet Service Provider for heavensgate.com

Exhibit Two G Group's letter to Francisco Falcon  ( aka JHN )

Exhibit Two H Group's list of thow who received Federal Express packages in late March of 1997

Exhibit Two I  Location document describing the Residence of the Group and how to gain entry to said Residence

Exhibit Two L Group's letter to the landlord of the Residence

Exhibit Three Group's Common Law Copyright placed on group's Literary Work

Exhibit Four  E-mail from Mark and Sarah King and Wayne Parker to Defendant and Chuck Humphrey dated 11/17/97

Exhibit Five  Image of Beyond Human Series masters sent to Francisco Falcon ( aka JHN ) by the Group in late March of 1997

Exhibit Six  Defendant's 4shared account information

Exhibit Seven E-mail from Chuck Humphrey to Mark and Sarah King dated October 17, 1997

Exhibit Eight  List of libraries that Right To Know provided Group's Intellectual Property to in 1997

Exhibit Nine  Various online sites where the Group's Property is for sale

Exhibit Ten Unpublished manuscript by Chuck Humphrey