# EXHIBIT 11

Ruling by Lisa Guy-Schall on a petition brought before Judge Guy-Schall's Court

by Mark and Sarah King on behalf of the Foundation.

0247



FEB 22 1999

BY: M. GARLAND

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

Estates of

JOHN MICHAEL CRAIG, also known as
LOGAN M. LAWSON, aka LOGAN LAHSON,

Deceased.

Case No. PN022228

**STATEMENT OF DECISION**

The above-entitled cause came on regularly for trial on January 11, 1999, in Department A of the above-entitled court, the Honorable Lisa Guy-Schall, Judge, presiding. The matter was tried without a jury and concluded on January 13, 1999. Jillyn Hess-Verdon, Todd Irby, and Clara Mc Alinden, appeared as counsel for petitioner, the Telah Foundation, Inc., and John J. Sansone, County Counsel by Cheryl K. Carter and Lewis P. Zollinger, Senior Deputies, appeared as counsel for respondent, the Public Administrator for the County of San Diego.

Oral and documentary evidence was introduced on behalf of the respective parties, and the cause was argued and submitted for decision. Thereafter, the matter was taken under submission pending this Court's ruling at the hearing on consolidation of all estates set for February 19, 1999.

The Court, at the hearing held on February 19, 1999, granted the Motion to Consolidate to all thirty-nine estates with the intent that the decision herein would apply to all estates.

1      Accordingly, this Court, having considered the evidence and heard the arguments of

2      all counsel and being fully advised, issues the following statement of decision:

3                          **STATEMENT OF FACTS**

4      The parties hereto stipulated to the following facts:

5      On March 26, 1997, 39 individuals associated into a group identified as "Heaven's Gate,"

6      expired in a residence in Rancho Santa Fe, California (Trial Exhibit Numbers 135, 136).

7      Shortly prior to their deaths, on March 24, 1997, they sent a mailing to Mark and Sarah King

8      which included powers of attorneys, documents regarding vehicles, passports, keys, maps,

9      codes to storage units, unsigned letters, videotapes and other items (Trial Exhibit Numbers

10     1-3, 8-27, 33-38, 63, 74-76, 93-106, 132, 133).

11     On March 27, 1997, the San Diego County Sheriff's Department removed some, but not

12     all, of the items in the residence of the decedents.

13     On April 1, 1997, the San Diego County Sheriff's Department removed some, but not all,

14     of the items in two storage units located at Private Storage Systems, 2421 Barnham Drive,

15     Escondido, CA.

16     In April 1997, Petitioners contacted the Public Administrator and requested a meeting.

17     Petitioner met with Susan Jamme and Judith Evans of the Public Administrator's Office and

18     explained what they received from the decedents.

19     On April 23, 1997, the Public Administrator asked Mark and Sarah King to return items

20     of property they had received just prior to the deaths.  They returned two vehicles on

21     May 13, 1997, along with keys and a bill of sale for a third vehicle already in the Public

22     Administrator's possession (Trial Exhibit Number 89).  The Public Administrator for the

23     County of San Diego was subsequently appointed Special Administrator on April 24, 1997

24     (Trial Exhibit Number 135, 136).  In his representative role, the Public Administrator

25     marshaled and took possession of the personal property in the residence and the storage

26     units and also received property that had been removed by the Sheriff's Department from

27     both locations (Trial Exhibit Number 77).

28     ///

1   On September 24, 1997, Petitioners filed a creditor's claim detailing a claim on

2   decedents' assets in the Public Administrator's possession.

3   On December 23, 1997, the Public Administrator obtained an appraisal of the business

4   entity known as Higher Source Contract Enterprises.  The appraisal indicated that the

5   intellectual property owned by Higher Source Contract Enterprises was de minimus as of

6   March 22, 1997 (Trial Exhibit Number 137).  As a result, the Public Administrator petitioned

7   the Court on March 6, 1998, to terminate the special administration (Trial Exhibit Number

8   138).  The petition was granted on May 7, 1998.  Therefore, these 39 estates are being

9   administered pursuant to Summary Probate Proceedings provided for in Probate Code

10  § 7660 et seq. (Trial Exhibit Numbers 139-177).  The Court has directed that a motion be

11  brought to consolidate the 39 estates.

12  The Public Administrator determined that the aggregate value of all 39 decedents'

13  estates would not exceed $50,000.00.  He had received creditor claims for funeral and

14  burial expenses of approximately $100,000.00 (Trial Exhibit Numbers 178-210).

15  On September 22, 24, and October 27, 1997, the Petitioner registered the following

16  copyrights and trademarks:

17  A.  The literary work entitled, "How and When Heaven's Gate (The Door to the Physical

18  Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials"

19  B.  The audiovisual work entitled, "Last Chance to Evacuate Earth Before It's Recycled,"

20  "Plant About to Be Recycled – Your Only Chance to Survive – Leave With Us"

21  C.  The audiovisual work entitled, "Do's Final Exit – Students of Heaven's Gate Expressing

22  Their Thoughts Before Exit"

23  D.  The audiovisual work entitled, "Beyond Human – The Last Call"

24  E.  The sound recordings entitled, "The Audiotape Library of Heaven's Gate by Ti and

25  Do"

26  F.  The audiovisual work entitled, "The C.B.E. (Celestial Being Entity)"

27  G.  The fabric design entitled, "Heaven's Gate Away Team Patch"

28  ///

At a later date, the Petitioner filed an application to have the trademark, "HEAVEN'S GATE," registered.

The Public Administrator marshaled a Certificate of Trade Name Registration for Higher Source Contract Enterprises (Trial Exhibit Number 211), and an application for Registration for Trade Name for Telah Services (Trial Exhibit Number 212), which are in the name of decedent Logan Lahson, aka John Craig. In addition, he marshaled a Certificate of Copyright Registration for Artwork for a screenplay entitled, "The Meeting," in the name of decedent Olliver Odinwood and a Certificate of Copyright Registration for a motion picture screenplay entitled, "The Meeting," in the name of individual decedent David Codody, a pseudonym (Trial Exhibit Number 59, 60). These certificates were recovered from the decedent's residence.

Items on Exhibits 1 and 2 attached to this Statement of Decision are a comprehensive listing of property at issue. Exhibit 1 is a listing of gifts made in view of impending death. Items listed in Exhibit 2 were controverted by the parties. Intellectual property listed throughout Exhibits 1 and 2 were controverted by the parties.

## FINDINGS OF FACT AND DECISION

1.   This Court finds that no gift was made of items listed on Exhibit 2. This finding is based upon the following facts:

The items on Exhibit 2 were in the possession of the decedents upon their deaths, either in their residence, or on their person.

The decedents themselves wrote a letter to Sam, Fifi, Tawny and Tony (Sam referring to Sam Koutchesfahani, their landlord), stating on page one of Trial Exhibit No. 74:

"The test for you now is that our task here on earth is over and its time for us to go home – to return to the Kingdom of Heaven from where we came",

and on page two:

"The authorities may want to confiscate or hold for estate purpose TV's, bunks and other equipment that belongs to us. As far as we're concerned we would like for you to have what is left in the house if the authorities will allow it."

1  According to Trial Exhibit 1, the decedents asked Mark and Sarah King to mail this letter

2  to Sam, stating in an undated letter to MRC/SRF, on page one:

3  "It is likely that the items currently in the residence will not be easily available to
4  you – so we did mention to our landlord, Sam, who might have better luck with the
   authorities in claiming some of those items, since he owns the house, that he could
5  have whatever valuables are there..."

6  A gift is defined as a transfer of personal property made voluntarily and without

7  consideration (Probate Code § 5700).  Here it is clear no pre-mortem transfer ever occurred

8  because the decedents intended Sam Koutchesfahani to have the contents of the

9  residence after their deaths.  Thus, decedents retained control and possession of personal

10  property in Exhibit 2.  A donor must intend to confer a present right on a donee, the

11  delivery, however, must be a gift in presenti, not for the purpose of making a future

12  disposal of it under the directions of the donor" (*Hart v. Ketchum* (1898) 121 Cal 426, 428).

13  2.  Regarding the Gifts in View of Impending Death listed in Exhibit 1, the

14  respondents have the right to recover said gifts, sell them, apply the proceeds to pay

15  creditor's claims and return unused proceeds to petitioner, if any.

16  This Court bases its decision on the following findings of facts:

17  All items in Exhibit 1 are gifts made in view of impending deaths. Don Billings, Public

18  Administrator for the County of San Diego and Personal Representative herein, testified

19  that the aggregate value of these estates is approximately $50,000.00.  Creditor's claims

20  have been filed for funeral expenses of approximately $100,000.00  An appraisal of the

21  intellectual property owned by Higher Source Contract Enterprises stated its value was de

22  minimus as of March 22, 1997.  Therefore, the estates are insolvent, and creditor's claims

23  exceed their value.

24  A gift in view of impending death is subject to rights of the creditors of the giver

25  (Probate Code § 5704).  Since the personal representative has insufficient assets to pay

26  creditors, the property in Exhibit 1 is subject to recovery by the personal representative

27  herein (Probate Code § 9652).

28  ///

1   Since the "primary object is to enable the trustee to reduce that asset to possession

2   and administer it for the benefit of creditors under the direction and supervision of the

3   probate court" (*Goldstein v. Prien* (1956) 143 Cal.App.2d 123, 127), this Court will not require

4   the Public Administrator to file another action when the same parties, issues and facts are

5   presently before this Court.  Petitioners' request to the contrary is without merit, unduly

6   harmful to the creditors, and invites a multiplicity of suits.

7       3.      Regarding the ownership of intellectual property, this Court determines that

8   the estates own all intellectual property interests together with the tangible assets from

9   which those interests are derived.  This determination is based upon the following findings

10   of fact:

11   Although Petitioners presented evidence of post-mortem registrations of the literary

12   work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level

13   Above Human) May Be Entered – An Anthology of Our Materials;" the audiovisual works

14   entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled –

15   Your Only Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate

16   Expressing Their Thoughts Before Exit," "Beyond Human – The Last Call," "The C.B.E. (Celestial

17   Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The

18   Audiotape Library of Heaven's Gate by Ti and Do."  Nevertheless, there is no evidence of any

19   writing which explicitly conveyed or transferred ownership of all this intellectual property

20   to the Petitioners.  There was no writing actually signed by the decedents except the

21   Durable Power of Attorney, which became void upon their deaths.

22   Sarah King testified that, "How and When Heaven's Gate (The Door to the Physical

23   Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials," Last

24   Chance to Evacuate Earth Before It's Recycled," Plant About to Be Recycled – Your Only

25   Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate Expressing

26   Their Thoughts Before Exit," and "Beyond Human – The Last Call," were all given to the

27   petitioners by the group for the express purpose of distributing copies and receiving

28   ///

- 6 -

returned copies.  Thus, she and her husband, Mark, were agents or distributors, but no more.

Two "Heaven's Gate Away Team" patches were mailed in identical mailings to the Petitioners and others according to Rio Di Angelo.  There is no evidence that by these mailings the Petitioners also received the intellectual property rights to the patches. Therefore, there is no evidence that a pre-mortem transfer of the intellectual property rights occurred.

As for the painting, "C.B.E.," it was delivered to Petitioners in February of 1977, with words of gratitude, according to Sarah King.  Yet, there is no evidence that decedents gave intellectual property rights in the painting to the Petitioners as well.

There is no evidence, written or otherwise, transferring ownership of intellectual property rights in the "The Audiotape Library of Heaven's Gate by Ti and Do."

Any transfer of ownership of intellectual property, other than by operation of law, is invalid unless an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent (17 U.S.C. § 204 (a)).  Furthermore, it is well settled that a copyright is distinct from the material object in which its expressive content is embodied (17 U.S.C. § 202).  Transfer of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202).

Since there is no written instrument transferring ownership of the intellectual property to the petitioners, the estates own all intellectual property as tenants in common.

4. The Petitioners' request for attorneys' fees I denied.

Generally, attorney fees are not awarded unless specifically provided for by statute (Code of Civil Procedure § 2021).  Probate Code § 9860 does not provide for payment of attorney fees and the Petitioners cite this Court to none.

To the extent Petitioners may be requesting attorney's fees based upon a fiduciary duty which was owed to them by the Public Administrator which was allegedly breached, this Court makes the following observations:

1  The Public Administrators powers and duties were set forth in the order appointing

2  him as special administrator [Exhibit No. 135]. This order did not include the powers of a

3  general person representative or the right to commence, maintain, or defend suits and

4  other legal proceedings (Probate Code § 8544). A special administrator appointed to

5  perform a particular act has no duty to take any other action to protect the estate

6  (Probate Code § 8544 (d)). Furthermore, in the performance of those duties imposed upon

7  him, the Public Administrator treated the Petitioners no differently than any other

8  claimants similarly situated.

9  5.   The Public Administrator's request for an award of sanctions against the

10  Petitioners pursuant to Code of Civil Procedure § 128.5 is granted.

11  This award is based upon the following findings of fact:

12  The essential facts of this case are not, and have not been, in material dispute. Thirty-

13  nine individuals died leaving property subject to estate administration. The estates are

14  insolvent, the creditor's claims for burial and funeral expenses exceed the value of these

15  estates by a margin of two to one. Ownership rights to a substantial portion of the

16  property in the estates was never transferred to the Petitioners. That which was

17  transferred was a gift in view of impending death. Either way, property in the estates was

18  indisputably subject to creditors' claims and the Petitioner's claim to the contrary was

19  without merit.

20  Petitioners filed this action actually asking for relief that no trial court could grant. A

21  trial court cannot make a will for a decedent. The decedents' alleged intent could not take

22  the place of statutory formalities and alleged wishes could not control and direct

23  disposition of a decedent's property without the law to give them substance. No evidence

24  of pre-mortem transfer of the items in Exhibit 2 was offered. No evidence was offered

25  contesting the value of the estates or the propriety of the creditors' claims. Except for

26  three bills of sale and thirty-nine Powers of Attorney, no signed writing of any kind was

27  offered into evidence. For these reasons, this action was frivolous and without merit.

28  ///

Prosecution of a frivolous action may in itself be evidence from which a finding of subjective bad-faith can be made, for purposes of award of sanction (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 702).

By having to defend this frivolous action, the estates now have even fewer assets available to pay toward the creditors' priority claims.  An award of sanctions remedies some of the inequity resulting to the creditors.

Judgment is hereby ordered as follows:

1.     All right, title and possession of property listed on Exhibit 2 is vested in the Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, and Suzanne Cooke.

2.     All right, title and possession of all property listed on Exhibit 1 is vested in Don Billings, Public Administrator for the County of San Diego, as Personal Representative for Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch,

Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne Cooke, as trustee for petitioner Telah Foundation.   Said trustee shall sell all valuable property listed on Exhibit 1, liquidating said property to cash and apply said cash to payment of approved creditors' claims filed against the aforesaid estates.  Any amount in excess of claims shall be returned to Telah Foundation.

3.    All right, title and possession of all intellectual property is vested in the Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne Cooke.

4.    Petitioners shall bear their own attorneys' fees and costs.

5.    Petitioners are sanctioned and directed to pay attorneys' fees and costs of the Public Administrator.

DATED: 2/22/99

LISA GUY-SCHALL
JUDGE OF THE SUPERIOR COURT

-10-