**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

The Evolutionary Level Above Human, Inc.  d/b/a
The Telah Foundation,
  an Arizona nonprofit corporation,
Civil Action No. 3:22-cv-00395
      Plaintiff,
        v.

Steven Robert Havel;
Cathy JoAnn Weaver;  Jason Bartel,

      Defendants.



## Responses to Mark King and Sarah King (Foundation), Plaintiffs, Status Report

**re: I. The Nature of the Case:** Plaintiff's stated the:

a. "Plaintiff is the owner the intellectual property (copyrights and trademarks) of Heaven's Gate";

**Havel and Weaver's RESPONSE:** This is a false statement. Plaintiff was given two Consent Decrees that have never been shown to the Court but only pertain to some of the Groups intellectual property. Here are some facts that can be proven to the Court when Plaintiffs make available the full documentation of those two court cases that each contain Consent Decrees. It seems apparent that Plaintiff's don't want those 1999 Court documentations to come to light because it brings to question the very validity of all their Copyrights and Trademarks:

1. Plaintiffs' 1997 copyright of Audio Tapes were for 486 audio cassette, "deposits" (Plaintiff Exhibit A) which were NOT in the Storage room referred to in the Consent Decree and in the Letters (See Havel's Exhibit 4 - The Letters) to Mark King and Sarah King, when the Consent Decrees were given in 1999. How can someone be given ownership of something the Court did not know existed?

2. We have ample evidence that other individuals were given some of the Groups Intellectual Property over years but in particular in Fed Ex Packages delivered to approximately 8-10 individuals at the time of the Groups Exit of their human vehicles in March of 1997. (See Havel's Exhibit's 1 and 2 regarding much of what Rkkody received directly from DO, otherwise known as Marshall Applewhite and that Jhnody received directly from DO, with instructions to disseminate the information they received that included using  master originals of the Beyond Human – The Last Call Video tape series to make copies to send to the media and/or ANYONE they chose to send them to). Copies of the Beyond Human Series were sent to others and copies were listed in the list of the contents of Storage as well. (See Exhibits 11 and 12 with this Response).

This also brings to light the question as to what documentation Plaintiffs used to gain those for Mark King and Sarah King or anyone else to copyright anything the Group left behind.

3. Also Rio D' Angelo, legal name of Richard Ford, aka Neo or Neody who was the focus of a number of documentaries and articles since he left the Group some 2 weeks before the Group exited their human vehicles, also received some of the Groups Intellectual Property, as he states in his book, Beyond Human Mind. Some of what he received included Artwork and one or more screenplays for the movie, The Meeting that TI and DO and a crew worked on in the early 1980's that I and Mark King and Sarah King were witness to. Among  artwork is what has been called the CBE lithographic print that Plaintiffs have copyrighted but whose copyright is called into question as even being fraud because Mark King and Sarah King knew that Ollody aka Oliver and Oliver Odinwood was the artist who painted the CBE painting. (See Exhibit 11 and 12) that shows the contents of storage included copyright registrations of that artwork for the Meeting that included the CBE artwork that Mark King and Sarah King acting as The Telah Foundation illegally copyrighted and/or found an avenue to somehow trick the copyright office into giving them a copyright registration as if they were the employers of TOA, otherwise known as Total Overcomers Anonymous in a "work for hire" provision and somehow transferring that copyright to Telah Foundation listing their documentation as "pursuant to assignments".


Defendants may choose to seek depositions from Rio D'Angelo to produce the letter he received from DO in his Fed X package or at an earlier time to show exactly what Intellectual Property he had and still may have.

Plaintiffs do not want to be required by law to reveal what documentation they used to obtain those copyrights thus this ploy to halt and even stop the discovery process.

4. Plaintiffs have repeatedly acted deceitfully for many years with statements like this one shown here,  so need to be required to show us all the documentation they possess which is what the Discovery Process was designed to accomplish that they want to forego because of how they stand to lose the entire case and be required to share all the material they received from Storage and foot the costs of Defendants.


b. "Defendants have infringed on the intellectual property rights of Plaintiff,
leading Plaintiff to file this lawsuit and assert in the Complaint causes of action for copyright infringement, contributory infringement, conspiracy to commit copyright infringement, and trademark infringement."

**Havel and Weaver's RESPONSE:** This is a false statement. Stephen Havel has admitted to having audio tapes received as a gift from Rkkody in 1997 and from Jhnody in 2021. But it wasn't until this lawsuit that Plaintiffs provided evidence of having a copyright of some of the audio tapes. There is a very detailed log file made by the Group including the number of the tape, a title and description, date it was recorded and length of the recording. We know there are about 1061 of these audio tapes. Mark King and Sarah King despite years of asking have never disclosed which of the 1061 audio tapes by audio tape number and date they have copyrighted. So how was I to know which of those 1061 audios were copyrighted? Especially after some 15 years that Mark King and Sarah King knew I'd been sharing them and never showed me their copyrights even though I asked and as they said to Cathy Weaver and myself in person that they, "let it slide", at the time referring specifically to the Beyond Human Video Tape Series available on YouTube for over a decade.

Now that I know some audios were copyrighted, I've come to have many reasons to question the legality of Mark King and Sarah King obtaining the copyrights in the first place which is part of why I need many documents from Plaintiffs as evidence of exactly what they do have copyrighted and how they obtained said copyrights given they created none of it.

I have stopped playing any audio tapes on my Youtube channel or anywhere else, not because I am admitting any guilt and infringement of their copyrights but because I don't know exactly which tapes were copyrighted by Plaintiffs because they never would and still haven't given me that information.

Even when Plaintiffs filed a Cease and Desist on me and included Weaver (who was simply sitting in with me when I played audio tapes), they didn't state exactly what to Cease and Desist from, just saying they owned everything which I knew was not true so didn't believe anything they said.

c. "Plaintiff's high likelihood of succeeding on its copyright infringement claims and Defendants' admission of infringement in their Answers (Doc. 20, 26, and 35) along with their Motion to Appoint Counsel (Doc. 39) conclusively establishes that Defendants have infringed on the intellectual property rights of Plaintiff. (Doc. 39-1 at 23.)"

**Havel and Weaver's RESPONSE:** First off, each Defendant filed their own Answer as certain of the Complaints filed by Plaintiffs have no bearing on other of the three Defendants. If Doc. 20 refers to Stephen Havel's "Answer" then in that one example, there is no admission of infringement. Here is what I, Havel wrote:

**- Doc. 20.: Plaintiff's Complaint:** "The Trademarks (hereafter the "Trademarks") were registered (by the Foundation) with the United States Trademark Office on July 27, 2010, July 13, 2010, and February 28, 2017 as Trademark Reg. Nos. 3824482, 3816596 and 5,148,959."

**Havel's ANSWER:** I don't have enough information to confirm or deny, or understand how the Telah Foundation created trademarks from Art Work they didn't create.

**Havel's CURRENT RESPONSE: I don't see how this Answer admits to any infringement.**

**- Doc. 26.: Plaintiff's Complaint:** "Defendants have knowingly and willfully have illegally acquired, transported and disseminated copies of the audio tapes and other intellectual property belonging to the Foundation."

**Havel's ANSWER::** I deny doing anything illegal, let alone doing so knowingly and willfully. I was gifted the audios in 12998 and 1999 **[Note: this was a typo and was also inaccurate, which I had corrected in other places of this Answer but neglected to catch it here until now, as the dates were 1997 and 1998 when Rkkody gifted me audio tapes]** by Rkkody, the person who retrieved the 486 initial audio tapes from storage and who Common Law Copyrighted 202 of them under Heaven's Representatives then. Mark and Sarah King, until this lawsuit, even since 2007 never informed me of EXACTLY what audios they copyrighted, even as a part of their Cease and Desist served on me in 2021. I knew there were a great many audio tapes than what Rkkody retrieved from storage in March of 1997 because I personally was present in TI and DO's classroom for the making of some 800+ of those audios. One can hear

DO referring to me and one can hear my voice in many. Plus I was literally often times the one pushing the buttons on the audio tape recorder to make those tapes. Plus I knew that DO and TI wanted them made available to the public after they left.

I deny the phrase "intellectual property" defines anything in particular since the Group distributed parts of their intellectual property to no less than 8 former class members by their exit time.

**Havel's CURRENT RESPONSE:** I deny my Answer here admits to any infringement of copyrighted material as we still don't know which of the 486 tapes may have been one's I played. Plus for years Mark King and Sarah King knew I was playing audio tapes on my YouTube Channel, 3SPM and providing them to some people to listen to and doing so all non-commercially.

Additionally, for years, since around 2009 I was aware that Bartell had posted the digitized audio tapes Rkkody retrieved from storage and digitized. Bartell had even helped Rkkody digitize them and disseminate them. Bartell posted over 200 of those audio for anyone who happened upon them to hear and/or download for free on 4shared.com. Years later 4shared starting charging a fee, if I recall, if someone wanted to download multiple files. Bartell did not receive any funds from any of that. There is evidence that Mark King and/or Sarah King knew well of Bartells posting of audio tapes on 4shared as Mark King appeared to be a regular follower of Crlody's blog (Crlody.wordpress.com) as well as mine at: sawyerhg.wordpress.com. Crlody would refer to 4shared on his blog.

This appears to be another reason plaintiffs don't want to proceed with Discovery because they know Defendants will ask them questions like when they knew that Bartell was providing audio tapes and that their answers would be under oath and could lead to perjury should they choose to lie. An answer to this question of when they knew of "our" playing and/or posting of audio tapes could be grounds to dismiss their entire Claim against us under the Affirmative Defense of Latches and Delays.

**- Doc. 35.: Plaintiff's Complaint:** "35. For example, on or about July 12, 2021, Defendant Havel posted to his website a log of the Audio Works with the following commentary:

So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in multiple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them."

**Havel's ANSWER:** Here is the total exact quote from Plaintiff Exhibit H which quotes my blog Sawyerhg.wordpress.com: In this Bartell is referred to by his Class name, Crlody:

"So just weeks ago, Jhnody who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to Crlody and someone else who I know I can trust to be sure to upload them to the internet in multiple places so that even if Mark and Sarah somehow sue us it will be far too late to keep them from being available to those who want to listen to them."

Havel admits that he wrote this and agrees that he did send Bartel (Carlan, aka Crlody) a thumb drive containing digitized audio tapes Jhnody gifted to me that Mark and Sarah had sent to Jhnody.

Havel didn't know what Bartel would do with the audio tapes he provided to him from Jhnody. He never asked him to do anything, nor did he ask anyone else to post anything.

I don't recall following through with sending anyone else a thumb drive. To be honest I didn't want the expense of buying a thumb drive to give it away as I was/am poor and those 64 gig thumb drives cost nearly $40 and I am quite frugal and was trying to figure out a way to bundle what was now some 900 digitized audio tapes to send them to others in small packets as they are asked for. I never accomplished that. I have always been discreet about whom I give the tapes to.

At the time and until this lawsuit was filed, I had no foreknowledge of what was or wasn't copyrighted though I had asked Mark King for exactly what audios were copyrighted, to no avail.

I only knew that before I received that thumb drive from Jhnody I already had since 1998 about 202 digitized audio tapes that Rkkody sent me back then that were Common Law Copyrighted by Heaven's Representatives, a phrase/name the Group aka Class used.

**Havel's CURRENT RESPONSE: I don't see how this admits to any specific infringement of copyrights as we still don't know exactly which of the 1061 audio tapes were copyrighted.**

**Havel and Weaver request of the Court that Plaintiff's seeking a Preliminary Injunction and an "expedited hearing" be denied.**

As Defendant Havel and Weaver, we ask the Court to allow us to obtain the evidence in Discovery we need to establish our defenses and counter claims. This ploy by Plaintiff appears to be because they don't have the documentation to show how they legally obtained any of the copyrights and/or trademarks and exactly what was copyrighted and whether it was done legally. We suspect they don't want to be subject to answering the various categories of Discovery where they are under oath to answer truthfully. We already have documentation from Judge Lisa Guy-Schall that establishes that Mark King and Sarah King provided no evidence of ownership of any of Heaven's Gate Group's Intellectual Property. (See Exhibit 11).

But it's apparent that Plaintiffs received the Consent Decree from Judge Guy-Schall as a deal so the auction could proceed and the deceased loved one's families could gain closure and some help with burial costs that Mark King and Sarah King's threats of appeals of their lost case and frivolous lawsuit was threatening to hold up.  (Also see Exhibit 12).

We don't think they want to provide any of that documentation and that they don't have anything more than the Letters to use to falsely justify their registration of copyrights of the audios and video's and the Book. The Letters don't give any instructions to establish copyrights and Plaintiffs say they believe they are carrying out DO's instructions.

**Re: Plaintiffs Status Report section III. Discovery**

**Plaintiff's say:** With the Court's consent, as discussed in Section V, below, Plaintiff is seeking an expedited hearing to resolve this case on the merits pursuant to Fed. Rule Civ. P. 65(a)(2) and

intends to so move the Court within the next two weeks. If the Court is inclined to grant Plaintiff's request for a consolidated hearing on the merits, Plaintiff believes it can prove its case without the need for any additional discovery.

**Havel and Weaver's RESPONSE:** They say they can prove their case "without the need for any additional discovery". Yet there has been no Discovery.  We believe they don't want us to have the ability to Discover what they did to obtain Copyrights and/or Trademarks and/or don't want us to see exactly what the Consent Decrees did or did not give them. They don't want to divulge exactly which numbered audio tapes they have copyrighted as then we would be able to play the others as Fair Use. (I won with Youtube against Mark King and Sarah Kings copyright strikes because I do meet all the qualifications for Fair Use).

It is highly possible that one reason they don't want anyone to play certain audio tapes is because there is a body of evidence in a number of audio tapes of DO talking about them in a way they are embarrassed by. I have actually chose not to play those audio tapes because I had no interest in causing them embarrassment. A number of us dropouts of the Group who still believe are embarrassed by why we chose to leave. In Mark King and Sarah Kings case they were ordered to leave because they didn't want to follow certain procedures but that didn't mean DO didn't stay in touch and said he had hoped they would change their direction back into becoming a Class Member. DO often gave dropouts that still wanted to stay in touch with him chances to serve. That's the reason DO gave them the task to handle their mail and some other duties after they left. However, with them the tasks they were given went to their heads to where they actually began to go against DO's wishes as stated in the Letters and many other places.

They have portrayed themselves as the authorities and overseers of all things Heaven's Gate and don't want what is actually a false reputation tarnished.

They could have let Rkkody, in 1997 and 1998 disseminate the audios and other materials. But instead they harassed him and his daughter and sued her after Rkkody took his own life in 1998 because Rkkody gave his daughter much of the intellectual property DO gave him directly before they left.

They could have let Bartell (aka Carlan, Crlody) (who worked with Rkkody) and myself, Havel (aka Sawyer, Swyody) and Francisco Falcon aka Juan, Jhnody) and now Cathy Weaver perform the tasks DO gave all believers to do by many, many proves – to disseminate Their Information as we have been doing for years. They could have simply continued doing what they wanted of that task to keep the website going while acknowledging how DO gave the example in the Heaven's Gate Book of having a Common law copyright on all Their material for maximum exposure – allowing for the copying of the entire book or parts of it as long as nothing is changed or added to and that is not done for commercial purposes of  for profit.

But instead they decided they had to be the only ones to provide TI and DO's information to those who sought after it and yet instead of their providing the audio tapes mostly hid them away for 25 years and would probably hide them away for another 25 years if it wasn't for Rkkody and Jhnody giving tapes away and giving them to Crlody and myself to give away.

They don't want to show us the evidence of how, when and why they were able to obtain copyrights in 1997 BEFORE any Consent Decrees were given to them for some part of the Group's Intellectual Property and how they were able to obtain Trademarks for artwork they didn't create even, many years later.

In other words, those of us who were Standing for TI and DO publicly had been sharing what Rkkody provided us for many years to include the CBE image of what an Older Member of the

Next Level could look like.

For reference here is the Rule Plaintiffs are using to justify moving the Court to hold an expedited hearing. This is from Cornell school of law. Note the last sentence:

> Fed. Rule Civ.P. 65(a)(2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. **But the court must preserve any party's right to a jury trial.**

**Havel and Weaver's RESPONSE:** We hereby ask the Court to reserve our right as Defendant Parties to a Jury Trial as the Plaintiffs first ordered as there is nothing straight forward in this case and it will take a trial to provide all the evidence of wrongdoing by Mark King and Sarah King. (Foundation, Plaintiffs). We didn't choose to fight them in these ways. They have been the aggressors and have been caught by us in many lies, so they need to dissolve their copyrights and agree to share with all, all the TI and DO materials.

**Re: Section V. (A) of Plaintiff's Status report, anticipating filing a Motion for a Preliminary Injunction to restrain Defendants, we request the court to deny any such motion.**

**Havel and Weaver's RESPONSE:** We believe the Court needs to hear/see all the evidence in this case. For instance ,Weaver has not copied, reproduced, circulated or sold any of the alleged copyrighted material. Since the lawsuit Weaver and Havel have only sold some T shirts that have a picture of TI and DO on them that is in the public domain having come from a picture of TI and DO that was on the cover of the magazine section of the New York Times Magazine Cover from 1976.

**Weaver and Havel request of the court to have a complete Discovery opportunity in which to obtain evidence Plaintiff's have so we can further build our defense and counter claims and for a Jury Trial.**

**Re: Section V. (B) of Plaintiffs Status Report** that refers to Plaintiff's response to Weaver and Havel's Motion to Appoint Counsel (Doc. 39), that is still pending. Plaintiff submitted its Response on October 11, 2022, and the deadline to file a Reply has passed with no Reply

**Havel and Weaver's RESPONSE:** In Plaintiffs filing an objection to Weaver and Havel receiving a Court ordered attorney, they stated that we were not showing "interest" in the case and were "competent" to represent ourselves.

The fact that Weaver and Havel missed filing a response to Plaintiffs motion to deny our receiving an attorney is one example of why we need an attorney, to sort out when we needed to reply to Plaintiff's motions and insults and accusations and to what degree.

Weaver and Havel didn't respond to Plaintiffs accusations for four reasons and perhaps this was a mistake:

> 1) Time and Energy - We both work full time for a living and were also very busy with preparing our individual Court Ordered Status Reports

> 2) We didn't want to burden the Court responding to unfounded accusations from Plaintiffs.

> 3) We didn't think the court would take these character assassination attempts seriously

(ie. saying we had no interest in the case)

4) We didn't want to give credence to Plaintiffs false accusations that appeared to be designed to try to antagonize us. It appeared they were playing this game of showing they were mad at us for preferring to only communicate by email and/or through the Courts.

We deny emphatically that we have shown no interest in this case as Plaintiffs claimed and seem to treat as fact. As said, we hope the Court will see through these attempts at character assassination that have no basis in fact nor any bearing on the case and whether we deserve to have a court appointed pro bono attorney assigned to our case to at least be someone we can consult with on legal matters and so we don't file unnecessarily yet still are defending ourselves as best we can and so not to miss deadlines like this again.

We are not requesting an attorney because we have admitted guilt as Plaintiffs have alleged in their Status Report. Rather we are asking for an attorney to prove that Plaintiffs copyrights and/or Trademarks were fraudulently obtained. To that end, through many hours of searching for Plaintiffs past court cases that Plaintiffs would not let us or anyone else see and which are not on Pacer, we have found the following attached cases we wish to submit here as Exhibits 11 and 12 towards our defenses and counterclaims.

_Stephen Havel_   10-27-2022

Stephen Havel

5776 Grape Rd. Suite 51 PMB# 121

Mishawaka, IN. 46545

Defendant

_Cathy Weaver_   10-27-2022

Cathy Weaver

5776 Grape Rd. Suite 51 PMB# 121

Mishawaka, IN. 46545

Defendant