UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> STEVEN ROBERT HAVEL, et al., <br><br> Defendants. | CASE NO. 3:22-CV-395-MGG |

**ORDER**

Defendant Steven Robert Havel, a litigant without a lawyer, has filed a Motion asking the Court to appoint an attorney for himself and his co-Defendants Cathy Weaver and Jason Bartel. [DE 39]. The Court denied prior motions requesting an appointed attorney filed by Mr. Havel and Ms. Weaver [DE 14, DE 15], as these Defendants had not presented any documentation or information about their efforts to obtain counsel. [DE 17 at 2]. Mr. Bartel has not previously requested court-appointed counsel. Plaintiff has objected to the instant request through a response filed on October 11, 2022. With no reply filed by Defendants, the Motion is now ripe.

As an initial matter, Mr. Havel states that he has filed the instant motion on behalf of himself and his Co-Defendants. However, only Mr. Havel has signed the motion. Mr. Havel is not able to represent his partner or anyone else in this action. *See Swanson v. Citibank N.A.*, 614 F.3d 400, 492 (7th Cir. 2010) (stating that *pro se* litigants may not represent their spouse or anyone else on appeal); *see also Navin v. Park Ridge*

*School Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001) (per curiam). Although the Court will address the instant motion filed on behalf of all three Defendants in the interest of efficiency and justice, Defendants are **ADVISED** that any future motions filed in this manner will be **STRICKEN**.

As noted in the Court's order on Mr. Havel and Ms. Weaver's first motions for counsel, "there is no constitutional or statutory right to court-appointed counsel in federal civil litigation . . ." *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). However, in some circumstances, the Court may ask an attorney to volunteer to represent indigent parties. The Court considers two factors when considering such a request:

> When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent [party] made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the [party] appear competent to litigate it himself?

*Id.* at 654.

As to the first factor, the Court previously denied the motions filed by Mr. Havel and Ms. Weaver because they did not include any information describing attempts to obtain counsel. The instant motion now explains that Mr. Havel and Ms. Weaver sought out counsel by sending out twenty copies of Plaintiff's complaint to attorneys. Mr. Havel further explains that they only received two responses back, and both were denials. [DE 39 at 1-2, ¶¶4-5]. Based on this, Mr. Havel and Ms. Weaver have made an adequate attempt to obtain counsel on their own. Plaintiff, through its response, also does not dispute that Mr. Havel and Ms. Weaver have satisfied this first factor. [DE 40

2

at 2, ¶ 1.]. However, the instant motion fails to mention any attempt to obtain counsel on the part of Mr. Bartel. Without more, the Court cannot find that Mr. Bartel has satisfied the first factor, and accordingly must deny this request as to Mr. Bartel.

Moving to the second factor for Mr. Havel and Ms. Weaver, the Court must determine whether, given the difficulty of the case, Mr. Havel and Ms. Weaver are competent to litigate this case themselves. "Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).

As such, when determining whether to recruit pro bono counsel, "the difficulty of the case is considered against the [party's] litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. The relevant inquiry "is whether the difficulty of the case—factually and legally—exceeds the particular [party's] capacity as a layperson to coherently present it to the judge or jury himself." *Id.* There are no "fixed" requirements for determining a party's competence to litigate his own case, but the court should take into consideration the party's "literacy, communication skills, educational level, and litigation experience." *Id.* In the end, "[t]he inquiry into the [party's] capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*

3

As it is still early in this matter, the Court cannot fully evaluate the difficulty of the case or Mr. Havel and Ms. Weaver's ability to litigate themselves. *See Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010)( stating that "the case [is] still in its infancy, thereby making it impossible . . . to make any accurate determination regarding [the party's] abilities" or the difficulty of the case.). As to their competence, Mr. Havel and Ms. Weaver currently allege that they "do not have the knowledge to proceed forward with any confidence that we won't miss a deadline that we know nothing about or follow federal rules that we just do not have any working understanding of." [DE 39 at 1, ¶2]. However, Mr. Havel and Ms. Weaver's filings thus far in this matter consist of their answers, counterclaims, various motions, and status reports [DE 14, DE 15, DE 21, DE 22, DE 24, DE 25, DE 48, and DE 49] which show that they are literate, capable of rationally expressing themselves to the court, and able to meet deadlines. The only other relevant information[1] provided in instant motion explains

---

[1] Defendants' instant motion also contends that "Plaintiffs' attorneys are already engaging in intimidation and bullying tactics to scare us into making the wrong move or saying the wrong thing. All co-defendants would consider it a travesty of justice for us to lose this case based on technicalities that we know nothing about. (Exhibit A)." [DE 39 at 1, ¶1.]. The referenced Exhibit A consists of email correspondence from Plaintiff's lawyers seeking to coordinate a telephone conference with Defendants in accordance with Federal Rule of Civil Procedure 26(f). Defendants have underlined the following statements by Plaintiff's counsel for the Court's attention: "Please note that if any party refuses to participate in this process, we will need to notify the Court and will request appropriate sanctions, including dismissal, default judgment, and any other relief that is appropriate" and "Please let us know if you are standing by your previous desire to not talk on the phone and we will let the Court know." [DE 39-1 at 2, 8]. It is true that, unless the Court orders otherwise, Rule 26(f) requires parties to confer as soon as practicable and submit a joint report, and that failure to participate in framing a discovery plan as ordered by the Court may result in sanctions. *See* Fed. R. Civ. P. 37(b)(2), (f). However, here, the Court specifically ordered the "unrepresented Defendants and the Plaintiff to separately prepare and file a *brief* status report." [DE 36 (underlined emphasis added)]. Accordingly, as the parties were ordered to separately prepare these reports, the parties were not required to confer—via telephone or otherwise—under Rule 26(f), and Plaintiff's counsel did not need to correspond with Defendants on this issue or explain potential consequences of a failure to confer. Despite this, the Court does not find that the email correspondence shows intimidation or bullying by Plaintiff's attorneys. Rather, the email correspondence appears to show that Plaintiff's attorneys mistakenly believed that the parties were still required to confer as delineated

4

that "[a]ll co-defendants have obligations to work and we just don't have the time or energy after working 8 hour days and nights to be able to spend countless hours trying to research all of the federal rules." [*Id.*]. As to this, Plaintiff contends that this statement does not reflect a lack of competency but a lack of interest in litigating this case themselves.

Given the paucity of information included in this motion, and considering the filings previously made by Mr. Havel and Ms. Weaver, the Court cannot find that they are not competent to litigate this case themselves. As contended by Plaintiff, Defendants' statements in the instant motion instead appear to express vexation at the time litigating this matter requires rather than incompetence. Accordingly, until this matter further progresses, and until the Court receives additional information from Mr. Havel, Ms. Weaver, and Mr. Bartel, the Defendants will continue to proceed with this case *pro se.*

For these reasons, the Court **DENIES** Mr. Havel's Motion for a court-appointed attorney on behalf of himself and Defendants Cathy Weaver and Jason Bartel. [DE 39].

**SO ORDERED** this 28th day of October 2022.

                                                      s/Michael G. Gotsch, Sr.
                                                      Michael G. Gotsch, Sr.
                                                      United States Magistrate Judge

---

under Rule 26(f). Plaintiff's attorneys are cautioned to carefully review the Court's orders moving forward to minimize the potential for heated correspondence such as this moving forward.