# EXHIBIT 11

Ruling by Lisa Guy-Schall on a petition brought before Judge Guy-Schall's Court

by Mark and Sarah King on behalf of the Foundation.

0247

F I L E D
Clerk of the Superior Court

FEB 22 1999

BY: M. GARLAND

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | | |
|---|---|---|
| Estates of | ) | Case No. PN022228 |
| JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, | ) ) ) | **STATEMENT OF DECISION** |
| Deceased. | ) ) | |

The above-entitled cause came on regularly for trial on January 11, 1999, in Department A of the above-entitled court, the Honorable Lisa Guy-Schall, Judge, presiding. The matter was tried without a jury and concluded on January 13, 1999. Jillyn Hess-Verdon, Todd Irby, and Clara Mc Alinden, appeared as counsel for petitioner, the Telah Foundation, Inc., and John J. Sansone, County Counsel by Cheryl K. Carter and Lewis P. Zollinger, Senior Deputies, appeared as counsel for respondent, the Public Administrator for the County of San Diego.

Oral and documentary evidence was introduced on behalf of the respective parties, and the cause was argued and submitted for decision. Thereafter, the matter was taken under submission pending this Court's ruling at the hearing on consolidation of all estates set for February 19, 1999.

The Court, at the hearing held on February 19, 1999, granted the Motion to Consolidate to all thirty-nine estates with the intent that the decision herein would apply to all estates.

Accordingly, this Court, having considered the evidence and heard the arguments of all counsel and being fully advised, issues the following statement of decision:

### STATEMENT OF FACTS

The parties hereto stipulated to the following facts:

On March 26, 1997, 39 individuals associated into a group identified as "Heaven's Gate," expired in a residence in Rancho Santa Fe, California (Trial Exhibit Numbers 135, 136). Shortly prior to their deaths, on March 24, 1997, they sent a mailing to Mark and Sarah King which included powers of attorneys, documents regarding vehicles, passports, keys, maps, codes to storage units, unsigned letters, videotapes and other items (Trial Exhibit Numbers 1-3, 8-27, 33-38, 63, 74-76, 93-106, 132, 133).

On March 27, 1997, the San Diego County Sheriff's Department removed some, but not all, of the items in the residence of the decedents.

On April 1, 1997, the San Diego County Sheriff's Department removed some, but not all, of the items in two storage units located at Private Storage Systems, 2421 Barnham Drive, Escondido, CA.

In April 1997, Petitioners contacted the Public Administrator and requested a meeting. Petitioner met with Susan Jamme and Judith Evans of the Public Administrator's Office and explained what they received from the decedents.

On April 23, 1997, the Public Administrator asked Mark and Sarah King to return items of property they had received just prior to the deaths. They returned two vehicles on May 13, 1997, along with keys and a bill of sale for a third vehicle already in the Public Administrator's possession (Trial Exhibit Number 89). The Public Administrator for the County of San Diego was subsequently appointed Special Administrator on April 24, 1997 (Trial Exhibit Number 135, 136). In his representative role, the Public Administrator marshaled and took possession of the personal property in the residence and the storage units and also received property that had been removed by the Sheriff's Department from both locations (Trial Exhibit Number 77).

///

- 2 -

On September 24, 1997, Petitioners filed a creditor's claim detailing a claim on decedents' assets in the Public Administrator's possession.

On December 23, 1997, the Public Administrator obtained an appraisal of the business entity known as Higher Source Contract Enterprises.  The appraisal indicated that the intellectual property owned by Higher Source Contract Enterprises was de minimus as of March 22, 1997 (Trial Exhibit Number 137).  As a result, the Public Administrator petitioned the Court on March 6, 1998, to terminate the special administration (Trial Exhibit Number 138).  The petition was granted on May 7, 1998.  Therefore, these 39 estates are being administered pursuant to Summary Probate Proceedings provided for in Probate Code § 7660 et seq. (Trial Exhibit Numbers 139-177).  The Court has directed that a motion be brought to consolidate the 39 estates.

The Public Administrator determined that the aggregate value of all 39 decedents' estates would not exceed $50,000.00.  He had received creditor claims for funeral and burial expenses of approximately $100,000.00 (Trial Exhibit Numbers 178-210).

On September 22, 24, and October 27, 1997, the Petitioner registered the following copyrights and trademarks:

A. The literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials"

B. The audiovisual work entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled – Your Only Chance to Survive – Leave With Us"

C. The audiovisual work entitled, "Do's Final Exit – Students of Heaven's Gate Expressing Their Thoughts Before Exit"

D. The audiovisual work entitled, "Beyond Human – The Last Call"

E. The sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do"

F. The audiovisual work entitled, "The C.B.E. (Celestial Being Entity)"

G. The fabric design entitled, "Heaven's Gate Away Team Patch"

///

1   At a later date, the Petitioner filed an application to have the trademark, "HEAVEN'S

2   GATE," registered.

3   The Public Administrator marshaled a Certificate of Trade Name Registration for Higher

4   Source Contract Enterprises (Trial Exhibit Number 211), and an application for Registration

5   for Trade Name for Telah Services (Trial Exhibit Number 212), which are in the name of

6   decedent Logan Lahson, aka John Craig.  In addition, he marshaled a Certificate of

7   Copyright Registration for Artwork for a screenplay entitled, "The Meeting," in the name of

8   decedent Olliver Odinwood and a Certificate of Copyright Registration for a motion picture

9   screenplay entitled, "The Meeting," in the name of individual decedent David Codody, a

10  pseudonym (Trial Exhibit Number 59, 60).  These certificates were recovered from the

11  decedent's residence.

12  Items on Exhibits 1 and 2 attached to this Statement of Decision are a comprehensive

13  listing of property at issue.  Exhibit 1 is a listing of gifts made in view of impending death.

14  Items listed in Exhibit 2 were controverted by the parties.  Intellectual property listed

15  throughout Exhibits 1 and 2 were controverted by the parties.

16  **FINDINGS OF FACT AND DECISION**

17  1.      This Court finds that no gift was made of items listed on Exhibit 2.  This finding

18  is based upon the following facts:

19  The Items on Exhibit 2 were in the possession of the decedents upon their deaths,

20  either in their residence, or on their person.

21  The decedents themselves wrote a letter to Sam, Fifi, Tawny and Tony (Sam referring

22  to Sam Koutchesfahani, their landlord), stating on page one of Trial Exhibit No. 74:

23  "The test for you now is that our task here on earth is over and its time for us to go
home – to return to the Kingdom of Heaven from where we came",

24

25  and on page two:

26

27  "The authorities may want to confiscate or hold for estate purpose TV's, bunks and
other equipment that belongs to us.  As far as we're concerned we would like for you to
have what is left in the house if the authorities will allow it."

28

According to Trial Exhibit 1, the decedents asked Mark and Sarah King to mail this letter to Sam, stating in an undated letter to MRC/SRF, on page one:

> "It is likely that the items currently in the residence will not be easily available to you – so we did mention to our landlord, Sam, who might have better luck with the authorities in claiming some of those items, since he owns the house, that he could have whatever valuables are there..."

A gift is defined as a transfer of personal property made voluntarily and without consideration (Probate Code § 5700). Here it is clear no pre-mortem transfer ever occurred because the decedents intended Sam Koutchesfahani to have the contents of the residence after their deaths. Thus, decedents retained control and possession of personal property in Exhibit 2. A donor must intend to confer a present right on a donee, the delivery, however, must be a gift in presenti, not for the purpose of making a future disposal of it under the directions of the donor" (*Hart v. Ketchum* (1898) 121 Cal 426, 428).

2.    Regarding the Gifts in View of Impending Death listed in Exhibit 1, the respondents have the right to recover said gifts, sell them, apply the proceeds to pay creditor's claims and return unused proceeds to petitioner, if any.

This Court bases its decision on the following findings of facts:

All items in Exhibit 1 are gifts made in view of impending deaths. Don Billings, Public Administrator for the County of San Diego and Personal Representative herein, testified that the aggregate value of these estates is approximately $50,000.00. Creditor's claims have been filed for funeral expenses of approximately $100,000.00  An appraisal of the intellectual property owned by Higher Source Contract Enterprises stated its value was de minimus as of March 22, 1997. Therefore, the estates are insolvent, and creditor's claims exceed their value.

A gift in view of impending death is subject to rights of the creditors of the giver (Probate Code § 5704). Since the personal representative has insufficient assets to pay creditors, the property in Exhibit 1 is subject to recovery by the personal representative herein (Probate Code § 9652).

///

**0252**

1   Since the "primary object is to enable the trustee to reduce that asset to possession

2   and administer it for the benefit of creditors under the direction and supervision of the

3   probate court" (*Goldstein v. Prien* (1956) 143 Cal.App.2d 123, 127), this Court will not require

4   the Public Administrator to file another action when the same parties, issues and facts are

5   presently before this Court. Petitioners' request to the contrary is without merit, unduly

6   harmful to the creditors, and invites a multiplicity of suits.

7       3.       Regarding the ownership of intellectual property, this Court determines that

8   the estates own all intellectual property interests together with the tangible assets from

9   which those interests are derived. This determination is based upon the following findings

10  of fact:

11      Although Petitioners presented evidence of post-mortem registrations of the literary

12  work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level

13  Above Human) May Be Entered – An Anthology of Our Materials;" the audiovisual works

14  entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled –

15  Your Only Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate

16  Expressing Their Thoughts Before Exit," "Beyond Human – The Last Call," "The C.B.E. (Celestial

17  Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The

18  Audiotape Library of Heaven's Gate by Ti and Do." Nevertheless, there is no evidence of any

19  writing which explicitly conveyed or transferred ownership of all this intellectual property

20  to the Petitioners. There was no writing actually signed by the decedents except the

21  Durable Power of Attorney, which became void upon their deaths.

22      Sarah King testified that, "How and When Heaven's Gate (The Door to the Physical

23  Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials," Last

24  Chance to Evacuate Earth Before It's Recycled," Plant About to Be Recycled – Your Only

25  Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate Expressing

26  Their Thoughts Before Exit," and "Beyond Human – The Last Call," were all given to the

27  petitioners by the group for the express purpose of distributing copies and receiving

28  ///

1   returned copies. Thus, she and her husband, Mark, were agents or distributors, but no

2   more.

3        Two "Heaven's Gate Away Team" patches were mailed in identical mailings to the

4   Petitioners and others according to Rio Di Angelo. There is no evidence that by these

5   mailings the Petitioners also received the intellectual property rights to the patches.

6   Therefore, there is no evidence that a pre-mortem transfer of the intellectual property

7   rights occurred.

8        As for the painting, "C.B.E.," it was delivered to Petitioners in February of 1977, with

9   words of gratitude, according to Sarah King. Yet, there is no evidence that decedents gave

10   intellectual property rights in the painting to the Petitioners as well.

11        There is no evidence, written or otherwise, transferring ownership of intellectual

12   property rights in the "The Audiotape Library of Heaven's Gate by Ti and Do."

13        Any transfer of ownership of intellectual property, other than by operation of law, is

14   invalid unless an instrument of conveyance, or a note or memorandum of the transfer is in

15   writing and signed by the owner of the rights conveyed or such owner's duly authorized

16   agent (17 U.S.C. § 204 (a)). Furthermore, it is well settled that a copyright is distinct from

17   the material object in which its expressive content is embodied (17 U.S.C. § 202). Transfer

18   of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202).

19        Since there is no written instrument transferring ownership of the intellectual

20   property to the petitioners, the estates own all intellectual property as tenants in

21   common.

22        4. The Petitioners' request for attorneys' fees I denied.

23        Generally, attorney fees are not awarded unless specifically provided for by statute

24   (Code of Civil Procedure § 2021). Probate Code § 9860 does not provide for payment of

25   attorney fees and the Petitioners cite this Court to none.

26        To the extent Petitioners may be requesting attorney's fees based upon a fiduciary

27   duty which was owed to them by the Public Administrator which was allegedly breached,

28   this Court makes the following observations:

-7-

The Public Administrators powers and duties were set forth in the order appointing him as special administrator (Exhibit No. 135). This order did not include the powers of a general person representative or the right to commence, maintain, or defend suits and other legal proceedings (Probate Code § 8544). A special administrator appointed to perform a particular act has no duty to take any other action to protect the estate (Probate Code § 8544 (d)). Furthermore, in the performance of those duties imposed upon him, the Public Administrator treated the Petitioners no differently than any other claimants similarly situated.

5.   The Public Administrator's request for an award of sanctions against the Petitioners pursuant to Code of Civil Procedure § 128.5 is granted.

This award is based upon the following findings of fact:

The essential facts of this case are not, and have not been, in material dispute. Thirty-nine individuals died leaving property subject to estate administration. The estates are insolvent, the creditor's claims for burial and funeral expenses exceed the value of these estates by a margin of two to one. Ownership rights to a substantial portion of the property in the estates was never transferred to the Petitioners. That which was transferred was a gift in view of impending death. Either way, property in the estates was indisputably subject to creditors' claims and the Petitioner's claim to the contrary was without merit.

Petitioners filed this action actually asking for relief that no trial court could grant. A trial court cannot make a will for a decedent. The decedents' alleged intent could not take the place of statutory formalities and alleged wishes could not control and direct disposition of a decedent's property without the law to give them substance. No evidence of pre-mortem transfer of the items in Exhibit 2 was offered. No evidence was offered contesting the value of the estates or the propriety of the creditors' claims. Except for three bills of sale and thirty-nine Powers of Attorney, no signed writing of any kind was offered into evidence. For these reasons, this action was frivolous and without merit.

///

1  Prosecution of a frivolous action may in itself be evidence from which a finding of

2  subjective bad-faith can be made, for purposes of award of sanction (*West Coast*

3  *Development v. Reed* (1992) 2 Cal.App.4th 693, 702).

4  By having to defend this frivolous action, the estates now have even fewer assets

5  available to pay toward the creditors' priority claims.  An award of sanctions remedies

6  some of the inequity resulting to the creditors.

7  Judgment is hereby ordered as follows:

8  1.   All right, title and possession of property listed on Exhibit 2 is vested in the

9  Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio,

10  Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,

11  Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard

12  Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter

13  McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva

14  Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann

15  Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela

16  Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch,

17  Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, and Suzanne

18  Cooke.

19  2.   All right, title and possession of all property listed on Exhibit 1 is vested in Don

20  Billings, Public Administrator for the County of San Diego, as Personal Representative for

21  Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio,

22  Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,

23  Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard

24  Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter

25  McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva

26  Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann

27  Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela

28  Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch,

1   Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne

2   Cooke, as trustee for petitioner Telah Foundation.  Said trustee shall sell all valuable

3   property listed on Exhibit 1, liquidating said property to cash and apply said cash to

4   payment of approved creditors' claims filed against the aforesaid estates.  Any amount in

5   excess of claims shall be returned to Telah Foundation.

6       3.      All right, title and possession of all intellectual property is vested in the Estates

7   of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond

8   Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie

9   Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David

10  Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne

11  McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley

12  Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael

13  Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan

14  St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch, Alphonzo Foster,

15  Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne Cooke.

16      4.      Petitioners shall bear their own attorneys' fees and costs.

17      5.      Petitioners are sanctioned and directed to pay attorneys' fees and costs of the

18  Public Administrator.

19  DATED: 2/22/99

20

21

22  LISA GUY-SCHALL
    JUDGE OF THE SUPERIOR COURT

23

24

25

26

27

28

-10-

# EXHIBIT 12

An August of 1999 settlement Plaintiffs Mark and Sarah King reached with San Diego County

approved by Judge Lisa Guy-Schall.

1   JILLYN HESS-VERDON, (SBN: 146626)
    TODD D. IRBY, (SBN: 153485)
2   HESS-VERDON & ASSOCIATES
    1301 Dove Street, Suite 670
3   Newport Beach, California 92660
    Attorneys for The TELAH FOUNDATION
4   Telephone: (949) 474-5460
    Fax: (949) 474-5470

5

6

7

8       SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9                NORTH COUNTY BRANCH

10   Estates of

11   JOHN MICHAEL CRAIG, also known as
    LOGAN M. LAWSON, aka LOGAN LAHSON,
12   DANA ABREO, MARSHALL HERF
    APPLEWHITE, ROBERT JOHN ARANCIO,
13   RAYMOND ALAN BOWERS, LA DONNA ANN
    BRUGATO, MARGARET JANE BULL,
14   CHERYL ELAINE BUTCHER, BETTY
    ELDRIE DEAL, ERIKA ERNST, JULIE
15   A. LA MONTAGNE, JACQUELINE O.
    LEONARD, JEFFERY HOWARD LEWIS,
16   DAVID GEOFFREY MOORE, GAIL RENEE
    MAEDER, STEVEN TERRY MCCARTER,
17   JOEL PETER MCCORMICK, YVONNE
    MCCUDDY-HILL, NANCY DIANE NELSON,
18   NORMA JEANNE NELSON, THOMAS ALVA
    NICHOLS, LINDLEY AYERHURT PEASE,
19   SUSAN ELIZABETH PAUP, MARGARET
    ELLA RICHTER, JUDITH ANN ROWLAND,
20   MICHAEL BARR SANDOE, BRIAN ALAN
    SCHAAF, DAVID CABOT VAN SINDEREN,
21   JOYCE ANGELA SKALLA, GARY JORDAN
    ST. LOUIS, SUSAN FRANCES STROM,
22   DENISE THURMAN, GORDON THOMAS
    WELCH, ALPHONZO FOSTER, LUCY
23   PESHO, MICHAEL CARRIER, DARWIN
    JOHNSON, LAWRENCE GALE, and
24   SUZANNE COOKE,

25                Deceased

No.   PN022228

ORDER APPROVING AGREEMENT TO
SELL ESTATE PROPERTY AND TO
CONVEY TRUST PROPERTY TO
TRUST BENEFICIARIES

JUDGE: HON. LISA GUY-SCHALL
DEPT: 28

F I L E D
Clerk of the Superior Court
AUG 1 1 1999
BY: M. GARLAND

26

27

28

                      1

**Order Approving Settlement Agreement**

1

2    The PROPOSED AGREEMENT TO SELL ESTATE PROPERTY AND TO CONVEY

3  TRUST   PROPERTY   TO   TRUST   BENEFICIARIES,   (hereinafter,   the

4  "Agreement") filed by Don Billings, the Public Administrator, County

5  of San Diego, administrator of the Estates of John M. Craig, Dana

6  Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan

7  Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine

8  Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne,

9  Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore,

10  Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick,

11  Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson,

12  Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup,

13  Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe,

14  Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla,

15  Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon

16  Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin

17  Johnson, Lawrence Gale, Suzanne Cooke, came on regularly for

18  hearing on August 6, 1999 at 1:30 p.m., in Department 28, of the

19  above-entitled   Court,   the   Honorable   Judge   Lisa   Guy-Schall

20  presiding.    The  Public  Administrator  was  represented  by  his

21  attorney, John J. Sansone, County Counsel, by Cheryl K. Carter,

22  Senior Deputy.    The  TELAH  FOUNDATION  was  represented  by  its

23  attorneys  Jillyn  Hess-Verdon,  and  Todd  D.  Irby;  no  other

24  appearances were made.

25    Upon satisfactory proof being made to the Court, the Court

26  finds:

27

28 _____

2

**Order Approving Settlement Agreement**

1        1.   Notice of the Time and Place of the Hearing on the

2  Agreement has been given in the manner prescribed by law;

3        2.   Notice of the Agreement and the Parties' request for

4  its approval was made in the manner prescribed by law; and

5        3.   All of the allegations contained in the Agreement are

6  true.

7    IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the

8  execution of the agreement which provides the following:

9                               <u>RECITALS</u>

10    (1)  The parties herein are Respondent, Don Billings, Public

11  Administrator for the County of San Diego and Personal

12  Representative for the following Estates: John M. Craig, Dana

13  Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan

14  Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine

15  Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne,

16  Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore,

17  Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick,

18  Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson,

19  Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup,

20  Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe,

21  Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla,

22  Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon

23  Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin

24  Johnson, Lawrence Gale, and Suzanne Cooke; and Petitioners, Mark

25  King and Sarah King, on behalf of the TELAH FOUNDATION.

26    (2)  A controversy exists between the Parties as to the

27

28  _____3_____

1   ownership of certain property which was litigated in Superior Court

2   Case #PN022228.

3       (3)  On February 22, 1999 Judge Lisa Guy-Schall rendered a

4   Statement of Decision in Superior Court Case #PN022228 determining

5   that all right, title and possession of property listed on Exhibit

6   Two (referenced therein) is vested in the aforestated Estates; that

7   all right, title, and possession of the property listed on Exhibit

8   One (referenced therein) is vested in Don Billings as Trustee for

9   The TELAH FOUNDATION, and that all valuable property would be

10  liquidated to cash and applied to the payment of approved

11  creditors' claims filed against the aforesaid Estates, with any

12  excess proceeds of Exhibit One items returning to the TELAH

13  FOUNDATION; and that all intellectual property involved in the

14  dispute is vested in the aforesaid Estates.

15      (4)  Further, attorneys' fees and costs of the Public

16  Administrator were awarded and ordered by the court to be paid by

17  the TELAH FOUNDATION.

18      (5)  The Parties have considered their competing claims, the

19  dispute, and the appellate rights in Superior Court Case #PN022228

20  associated thereto.

21      (6)  The TELAH FOUNDATION filed a Notice of Appeal to preserve

22  its rights to appeal the Statement of Decision by Judge Guy-Schall

23  in its entirety.

24      (7)  This agreement affects only the Parties' rights and

25  interests in the intellectual and tangible property held by the

26  Public Administrator.

27

28                            **4**

1    (8)   The Parties further agree that this agreement is in the
2  best  interests  of  the  Parties  and  heirs  as  it  will  provide
3  protection as to certain items of property from sale for commercial
4  purposes;  provides  some  cash;  and  allows  remaining  items  of
5  property  to  be  subject  to  estate  administration  (by  releasing
6  issues as to ownership of the property from the appellate process).

7

8                              AGREEMENT

9    IT IS HEREBY AGREED as follows:

10   (1)   The Parties agree this Agreement shall be binding on all
11  the  successors,  heirs,  administrators,  assigns  of  each  of  the
12  parties and beneficiaries of their respective estates.

13   (2)   Don Billings, Public Administrator, and trustee for TELAH
14  FOUNDATION for certain property determined to be gifts made in view
15  of  impending  death  by  the  decedents  herein  (Exhibit  One  of
16  Statement  of  Decision  referenced  therein),  hereby  agrees  to
17  transfer and convey to TELAH FOUNDATION by and through Mark King
18  and Sarah King all right, title and possession of the following
19  property, including any intellectual property rights, in exchange
20  for the TELAH FOUNDATION's promise to release and waive all rights
21  of  appeal  pertaining  to  all  other  items  of  property  of  the
22  aforesaid estates in the possession of the Public Administrator,
23  thereby  permitting  the  Public  Administrator  to  liquidate  said
24  property without delay.  In addition, the TELAH FOUNDATION promises
25  to safeguard, archive and control these items thereby agreeing to
26  not sell them.  Finally, the TELAH FOUNDATION waives the right to

27

28  ───────────────────────5───────────────────────

1  any proceeds from the liquidation of items retained by the Public

2  Administrator.    Accordingly, Don Billings conveys to the TELAH

3  FOUNDATION all right, title and possession of the following:

4  LIST OF TRUST ASSETS BEING
   CONVEYED TO TRUST BENEFICIARY
5  TELAH FOUNDATION

6  Blue Bag Containing Floppy Disks; Sheriff's Evidence List, Item
   #131
7  Blue Bag Containing Papers, Small Black Binder; Sheriff's Evidence
   List, Item #132
8  Black Attache Case Containing Misc. Papers, Office Items; Sheriff's
   Evidence List, Item #133
9  Green Attache Containing Floppy Disks; Sheriff's Evidence List,
   Item #134
10 Black Organizer Containing Papers and Floppy Disks; Sheriff's
   Evidence List, Item #135
11 Black Briefcase Containing Floppy Disks, Toolkit, Hard Disk, CD-
   ROM, Personal Organizer; Sheriff's Evidence List, Item #136
12 Dark Gray Briefcase Containing Floppy Disks; Sheriff's Evidence
   List, Item #137
13 Black Attache Containing Papers and Floppy Disks; Sheriff's
   Evidence List, Item #138
14 Blue Garment Bag Containing Pillow Cases, Misc.  Items; Sheriff's
   Evidence List, Item #139
15 Tool Kit in Black Carrying Case; Sheriff's Evidence List, Item #140
   Box Containing 4 Video Tapes (TV Interview Tapes); Sheriff's
16 Evidence List, Item #141
   Black Box Containing Video Tapes (Planet About To Be Recycled);
17 Sheriff's Evidence List, Item #142
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
18 Item #143
   Box Containing Video Tapes (Planet About To Be Recycled); Sheriff's
19 Evidence List, Item #144
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
20 Item #145
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
21 Sheriff's Evidence List, Item #146
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
22 Sheriff's Evidence List, Item #147
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
23 Item #148
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
24 Sheriff's Evidence List, Item #149
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
25 Sheriff's Evidence List, Item #150
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
26 Sheriff's Evidence List, Item #151
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
27

28 _____

1  Sheriff's Evidence List, Item #152
   Box Containing Video Tapes (Planet About to Be Recycled); Sheriff's
2  Evidence List, Item #153
   Box Containing Video Tapes (Planet About to Be Recycled); Sheriff's
3  Evidence List, Item #154
   Box Containing Video Tapes (Beyond Human) and Audio Cassettes;
4  Sheriff's Evidence List, Item #155
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
5  Item #156
   Box Containing Video Tapes (Unlabeled); Sheriff's Evidence List,
6  Item #157
   Box Containing Video Tapes (Session Tapes-Beyond Human) and Audio
7  Cassettes; Sheriff's Evidence List, Item #158
   Box Containing Video Tapes (All But 4-Planet About to Be Recycled-
8  Other 4 are Beyond Human); Sheriff's Evidence List, Item #159
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
9  Sheriff's Evidence List, Item #160
   Box Containing Video Tapes (Various Titles-Master Tapes Beyond
10 Human Series); Sheriff's Evidence List, Item #161
   Box Containing Audio Cassettes; Sheriff's Evidence List, Item #162
11 Box Containing Audio Cassettes; Sheriff's Evidence List, Item #163
   Box Containing Audio Cassettes; Sheriff's Evidence List, Item #164
12 Box Containing Audio Cassettes; Sheriff's Evidence List, Item #165
   Box Containing Papers, Spiral Notebooks; Sheriff's evidence List,
13 Item #166
   Box Containing Papers; Sheriff's Evidence List, Item #167
14 Box Containing Misc. Computer Manuals, Disks; Sheriff's Evidence
   List, Item #168
15 Box Containing Papers Entitled "95 Statement by an ET Presently
   Incarnate"; Sheriff's Evidence List, Item #169
16 Accordion Folder Containing Misc. Papers; Sheriff's Evidence List,
   Item #170
17 Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
   #171
18 Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
   #172
19 Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
   #173
20 Box Containing Heaven's Gate Manuals, Papers and Floppy Disks;
   Sheriff's Evidence List, Item #174
21 Box Containing Loose Papers; Sheriff's Evidence List, Item #175
   Box Containing Notebooks, Papers and Floppy Disks; Sheriff's
22 Evidence List, Item #176
   Red Crate Containing Floppy Disks; Sheriff's Evidence List, Item
23 #177
   Plastic Box Containing Heaven's Gate Manuals; Sheriff's Evidence
24 List, Item #178
   Plastic Box Containing Heaven's Gate Manuals; Sheriff's Evidence
25 List, Item #179
   Pink Wallet with Discs
26 Cardboard Box Containing Mailers
   Blue Nylon Bag Containing Misc. Clippings Docs
27

28 _____ 7 _____

Order Approving Settlement Agreement

```
1   Black Bag Containing Misc.  Docs
    Green Nylon Bag Containing Discs
2   Computer Hard Drive IBM 50858185170
    Computer Hard Drive Server No I.D.
3   Green Nylon Bag Containing Discs
    Computer Hard Drive No I.D.
4   Cardboard Box Containing Discs
    Manilla Envelope Containing Photos
5   Purple Wallet Containing Discs
    Cardboard Box Containing Bag with Discs
6   Disc File Holder
    Cardboard Box Misc. Docs
7   Heaven's Gate Away Team Patches
```

8      (3.) Don Billings, Public Administrator, as Personal

9   Representative of the Estates of: John M. Craig, Dana Abreo,

10  Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers,

11  La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,

12  Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O.

13  Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee

14  Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne

15  McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva

16  Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret

17  Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan

18  Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan

19  St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas

20  Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin

21  Johnson, Lawrence Gale, and Suzanne Cooke, and as Trustee for the

22  TELAH FOUNDATION, agrees to sell the following property to the

23  TELAH FOUNDATION, by and through Mark King and Sarah King for the

24  sum of $2,000.00 thereby transferring all right, title and

25  possession:

26              TRUST AND ESTATE PROPERTY SOLD
                     TO TELAH FOUNDATION
27

28  _____**8**_____

1  Business Records in box marked "PURSER"
   Y/M Wide Band Wedding Ring
2  Yellow Metal Ring
   Blk. Bag w/misc.  clothing and papers
3  State of Arizona Certificate of Trade Name Higher Source Contract
   Enterprises Regis 12/11/95; Exp.  12/11/2000; Trade Name #151844
4  on behalf of Logan Lahson
   Form SS-4 Application for Employer ID# John M. Craig DBA Logan
5  Lahson
   1 Ctn. Framed and Unframed Artwork/Signs
6  1 Envelope w/orig.  Documents; orig.  Copyright Screenplay THE
   MEETING, orig.  Copyright Artwork for Screenplay and 2 Bills of
7  Sale by Authors of THE MEETING to group member
   3 Drawer File Cabinet, 2 Drawer File Cabinet
8  Application for Trade Name for Telah Services and Attachments
   2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #41
9  Notebook Computer; Sheriff's Evidence List, Item #43
   Mouse; Sheriff's Evidence List, Item #43.01
10 Desktop Computer CPU; Sheriff's Evidence List, Item #44
   Keyboard; Sheriff's Evidence List, Item #44.01
11 Monitor; Sheriff's Evidence List, Item #44.02
   Mouse; Sheriff's Evidence List Item #44.03
12 Data Transfer A/B Switch Box; Sheriff's Evidence List, Item #45
   Notebook Computer; Sheriff's Evidence List, Item #46
13 Mouse; Sheriff's Evidence List, Item #46.01
   Notebook Computer; Sheriff's Evidence List, Item #47
14 Mouse; Sheriff's Evidence List, Item #47.01
   Notebook Computer; Sheriff's Evidence List, Item #48
15 Mouse; Sheriff's Evidence List, Item #48.01
   Mini Tower CPU 386SX; Sheriff's Evidence List, Item #49
16 Keyboard; Sheriff's Evidence List, Item #49.01
   Monitor; Sheriff's Evidence List, Item #49.02
17 Mouse; Sheriff's Evidence List, Item #49.03
   Desktop CPU; Sheriff's Evidence List, Item #50
18 Keyboard; Sheriff's Evidence List, Item #50.01
   Monitor; Sheriff's Evidence List, Item #50.02
19 Mouse; Sheriff's Evidence List, Item #50.03
   Tower Computer; Sheriff's Evidence List, Item #51
20 Keyboard; Sheriff's Evidence List, Item #51.01
   Monitor ; Sheriff's Evidence List, Item #51.02
21 Mouse; Sheriff's Evidence List, Item #51.03
   Stereo Speakers; Sheriff's Evidence List, Item #51.04
22 Fax/Modem; Sheriff's Evidence List, Item #51.05
   Notebook Computer; Sheriff's Evidence List, Item #52
23 Monitor; Sheriff's Evidence List, Item #52.01
   Mouse; Sheriff's Evidence List, Item #52.03
24 Printer; Sheriff's Evidence List, Item #53
   Desktop CPU Case; Sheriff's Evidence List, Item #54
25 Keyboard; Sheriff's Evidence List, Item #54.01
   Mouse; Sheriff's Evidence List, Item #54.03
26 Monitor; Sheriff's Evidence List, Item #54.02
   2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #55
27

28 ─────────────────────────────9─────────────────────────────

**Order Approving Settlement Agreement**

3-Drawer Filing Cabinet; Sheriff's Evidence List, Item #56
Books from Bookshelf (3 boxes); Sheriff's Evidence List, Item #57
Papers; Sheriff's Evidence List, Item #58
Misc. Floppy Disks; Sheriff's Evidence List, Item #59
4-Drawer Filing Cabinet; Sheriff's Evidence List, Item #60
2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #61
Video Cassettes; Sheriff's Evidence List, Item #64
Black Plastic Box Containing Patches; Sheriff's Evidence List, Item #65
3 Papers, Different Titles; Sheriff's Evidence List, Item #66
2 Manuals "How and When Heaven's Gate May Be Entered"; Sheriff's Evidence List, Item #67
2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #68
Gray Plastic File Box; Sheriff's Evidence List, Item #69
Brown Plastic File Box; Sheriff's Evidence List, Item #70
Gray Plastic File Box; Sheriff's Evidence List, Item #71
Misc. Loose Papers, Envelopes and Binders; Sheriff's Evidence List, Item #72
Blue Plastic Box; Sheriff's Evidence List, Item #73
Blue Plastic Box; Sheriff's Evidence List, Item #74
VHS Tapes; Sheriff's Evidence List, Item #195
VHS Tapes; Sheriff's Evidence List, Item #196
VHS Tapes; Sheriff's Evidence List, Item #197
Box Containing Misc. Items; Sheriff's Evidence List, Item #198
Box Containing Cassettes; Sheriff's Evidence List, Item #199
Computer Disks; Sheriff's Evidence List, Item #200
VHS Tapes; Sheriff's Evidence List, Item #201
Empty VHS Cases; Sheriff's Evidence List, Item #202
VHS Tapes; Sheriff's Evidence List, Item #203
Clipboard and Three Ring Binder "Checkout" and Roster; Sheriff's Evidence List, Item #40
"Why We Must Leave At This Time" and "Earth Exit Statement"; Sheriff's Evidence List, Item #58
Computer Disks; Sheriff's Evidence List, Item #62
Two Cassettes (Audio Only); Sheriff's Evidence List, Item #63
File of Disks; Sheriff's Evidence List, Item #77
Manila Envelope Containing Documents; Sheriff's Evidence List, Item #188
Manila Envelope Containing Five (5) White Envelopes (Travel Documents); Sheriff's Evidence List, Item #189
Bank Bag with Calculator; Gas Receipts and Notebook
Computer Mini-Tower
Ctn. W/Computer (Insight)
Tower Computer Marked as "SERVER" on Tape; Sheriff's Evidence List, Item #113
Minitower Computer; Sheriff's Evidence List, Item #114
Monitor; Sheriff's Evidence List, Item #115
Box Containing Monitor, Keyboard and Mouse; Sheriff's Evidence List, Item #116
Box Containing Monitor; Sheriff's Evidence List, Item #117
Box Containing Computer, Keyboard, Ethernet Adapter, Mouse, 28.2 Fax/Modem, Powerstrip, and Manuals; Sheriff's Evidence List, Item

10

**Order Approving Settlement Agreement**

```
#118
Computer; Sheriff's Evidence List, Item #119
Monitor; Sheriff's Evidence List, Item #120
Box Containing Monitor, Keyboard, Mouse; Sheriff's Evidence List,
Item #121
Box Containing Monitor; Sheriff's Evidence List, Item #122
Box Containing Computer, Mouse Manuals and Cable; Sheriff's
Evidence List, Item #123
Black Carrying Case Containing Notebook Computer, Mouse,
Cigarette Lighter Adapter; Sheriff's Evidence List, Item #124
Box Containing Assorted Computer Accessories and Floppy Disks;
Sheriff's Evidence List, Item #130
Box Containing Sony Monitor 1055228 and Keyboard
Any other Intellectual Property
Any Shrouds
```

(4)   The TELAH FOUNDATION agrees to protect, safeguard, archive and control all items received in this agreement and not sell them.

(5)   The Public Administrator agrees not to advertise in any manner the liquidation of the items of these estates as "Heaven's Gate" liquidations.   The Public Administrator shall not be held responsible for representations made by the media, but will make every effort to follow the policy of the Public Administrator's Office in providing notices of any liquidations of the items of these estates.

(6)   TELAH FOUNDATION agrees to dismiss with prejudice its Notice of Appeal filed April 21, 1999 as to all property issues except the Court's order that The TELAH FOUNDATION pay the Public Administrator's attorney's fees and costs.   Said dismissal must be filed within seven (7) court days after receipt of court order approving this agreement.

(7)   Upon filing of above-referenced Dismissal, the Parties shall perform the remaining terms of this agreement including but

11

1  not limited to, the delivery of said items to THE TELAH
2  FOUNDATION, and the payment of said sum to the Public
3  Administrator, within seven (7) court days after the filing of
4  the above-referenced Dismissal.

5      (8)  This agreement, its terms, and any and all
6  negotiations, communications, and/or representations leading
7  thereto, shall be barred from admissibility for any purpose in
8  the remaining appellate process.

9      is approved by this Court as to its form and its content,
10  and the Parties may execute its terms forthwith.

11

12  IT IS SO ORDERED:

13

14  Dated:  8/11/99

                    LISA GUY-SCHALL
15                      JUDGE OF THE SUPERIOR COURT

16

17

18

19

20

21

22

23

24

25

26

27

28

12

**Order Approving Settlement Agreement**