List of Exhibits

Exhibit 1 - Olliver Odinwood Copyright Registration 11-18-1982 of 14 Illustrations for The Meeting
Exhibit 2 - Case PN022228 – Statement of Decision 1999 by Judge Lisa Guy Schall
Exhibit 3 - Beyond Human - The Last Call - Copyright @ 1992 by Total Overcomers Anonymous
Exhibit 4 - Heaven's Gate "Blue" Book Common Law Copyright by Heaven's Representatives
Exhibit 5 - Letter from DO and Crew to Mrc(Mark King) and Srf (Sarah King) March 25, 1997
Exhibit 6 - Letter from DO and Crew to Rkkody (Charles "Chuck" Humphreys) March 25, 1997
Exhibit 7 - Letter from DO and Crew to Jhnody (Francisco Falcon) about March 25, 1997

Exhibit 8 - Copyright of Heavens Gate Classroom Teachings

# Exhibit 1

Olliver

Odinwood

Copyright

Registration

11-18-1q

60

# Public Catalog

Copyright Catalog (1978 to present)

Search Request: Builder = (odinwood)[in Keyword Anywhere]

Search Results: Displaying 1 through 3 of 3 entries.

Set Search Limits

previous next

Resort results by: ⌄

| # | Full Title | Copyright Number | Date |
|---|---|---|---|
| [1] Meeting. | | VAu000041610 | 1982 |
| [2] Meeting : screenplay : based on an original story / by David Cadody, Daniel O'Day, Olliver Odinwood. | | PAu000431560 | 1982 |
| [3] Moonstone: Timeless Ascension. | | PAu003803440 | 2016 |

Set Search Limits

Resort results by: ⌄

Clear Selected   Retain Selected

previous next

Save, Print and Email (Help Page)

Select Format: Full Record ⌄   Format for Print/Save

Records





Labeled View

*The Meeting.*

**Type of Work:** Visual Material

**Registration Number / Date:** VAu000041610 / 1982-11-18

**Title:** The Meeting.

**Notes:** Cataloged from appl. only.

**Copyright Claimant:** Olliver *Odinwood*

**Date of Creation:** 1980

**Authorship on Application:** 14 full color acrylic ill.: Olliver *Odinwood.*

**Previous Registration:** Motion picture screenplay prev. reg.

**Copyright Note:** C.O. correspondence.

**Names:** *Odinwood, Olliver, 1948-*

◀ previous      next ▲

**Save, Print and Email (Help Page)**

Select Download Format | Full Record ∨ | Format for Print/Save

Enter your email address: [            ] Email

Help   Search   History   Titles   Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page

62

The following shows that the CBE illustration was already copyrighted in 1982 as 1 of 14 images and that copyright lasts for 70 years after the authors death. Links to the docs are below.

re:
SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN DIEGO

Case No. PNO22228
STATEMENT OF DECISION

JOHN MICHAEL CRAIG, also known as
LOGAN M. LAWSON, aka LOGAN LAHSON,
Deceased.

Sawyer:
In section: Statement of Facts, page 4: Olliver Odinwood (aka Ollody) was documented to have had a "Copyright Registration for Artwork for a screenplay entitled, "The Meeting". Here is the full text of that statement:

"The Public Administrator marshaled a Certificate of Trade Name Registration for Higher Source Contract Enterprises (Trial Exhibit Number 211), and an application for Registration for Trade Name for Telah Services (Trial Exhibit Number 212), which are in the name of decedent Logan Lahson, aka John Craig. In addition, he marshaled a Cenificate of Copyright Registration for Artwork for a screen play entitled, "The Meeting," in the name of decedent Olliver Odinwood and a Cenlflcate of Copyright Registration for a motion picture screenplay entitled, "The Meeting," In the name of Individual decedent David Cododoy, a pseudonym (Trial Exhibit Number 59,60). These certificates were recovered from the decedent's residence"

In performing a search of the US government copyright records for the name Odinwood, the following two listings turned up:

**** first listing ****
The Meeting.
*Type of Work:      Visual Material
Registration Number / Date:  VAu000041610 / 1982-11-18
Title:   The Meeting.
Notes: Cataloged from appl. only.
Copyright Claimant:  Olliver Odinwood
Date of Creation:      1980
Authorship on Application:   14 full color acrylic ill.: Olliver Odinwood.
Previous Registration:        Motion picture screenplay prev. reg.
Copyright Note:      C.O. correspondence.

Names:      Odinwood, Olliver, 1948-

https://cocatalog.loc.gov/cgi-
bin/Pwebrecon.cgi?v1=1&ti=1,1&SEQ=20221104224454&SAB1=odinwood&BOOL1=all%20of%20t
hese&FLD1=Keyword%20Anywhere%20%28GKEY%29&GRP1=OR%20with%20next%20set&SAB
2=&BOOL2=as%20a%20phrase&FLD2=Keyword%20Anywhere%20%28GKEY%29&CNT=25&PI



D=mut28I5LJ3TAOrLjM1ylGuJDn7O&SID=5

* Note when I access this document via the link on the document it comes up with Type of Work: blank

**** 2nd listing ****

The Meeting : screenplay : based on an original story / by David Codody,...
*Type of Work:        Dramatic Work and Music; or Choreography
Registration Number / Date: PAu000431560 / 1982-08-25
Title:   The Meeting : screenplay : based on an original story / by David Codody, Daniel O'Day, Olliver
Odinwood.
Description:   2 v.
Notes: Includes treatment.
Copyright Claimant:  David Codody, Daniel O'Day & Olliver Odinwood
Date of Creation:       1980
Authorship on Application:    David Codody, Daniel O'Day & Ollier Odinwood, pseuds.

Names:       Codody, David, pseud., 1934-
         O'Day, Daniel, pseud., 1948-
         Odinwood, Olliver, pseud., 1948-

https://cocatalog.loc.gov/cgi-
bin/Pwebrecon.cgi?v1=2&ti=1,2&SEQ=20221104224439&SAB1=odinwood&BOOL1=all%20of%20t
hese&FLD1=Keyword%20Anywhere%20%28GKEY%29&GRP1=OR%20with%20next%20set&SAB
2=&BOOL2=as%20a%20phrase&FLD2=Keyword%20Anywhere%20%28GKEY%29&CNT=25&PI
D=78oIEl4cObq1ofVGrR2M4Fxot56&SID=5

* Note when I access this document via the link on the document it comes up with Type of Work: blank
*******************

Here is the beginning of a statement as with this information and the Judges two decesions I believe I
have to update my counter claim with this evidence that they don't legally have a claim to the artwork
or screenplay of The Meeting. However, it's possible Rios has some rights to it so we may need to
supeana him:

I Stephen Havel, aka Sawywer, Swyody, SWY was in TI and DO's Group when these 14 illustations
were painted by Ollody (Odinwood) and I proof read the treatment screenplay of The Meeting at that
time in 1980 or thereabouts.

One of those 14 illustrations is currently known as the CBE (Celestial Being Entity) that was
copyrighted by Mark and Sarah King's Telah Foundation in 1997 illegally as it had already been
copyrighted on August 25th 1982.

Currently, all copyright-eligible works created on or after January 1, 1978 are protected for 70 years
after the death of their author. This right is granted automatically by the Copyright Act of 1976, which
established a 50-year protection period after death, as well as Amendments such as the Copyright Term
Extension Act of 1998, which extended post-mortem protection to 70 years. This also applies to joint
works created by multiple authors, where the term of protection is 70 years after the death of the last
living contributor.



(See https://copyrightalliance.org/what-happens-to-your-copyrights-after-you-die/ )

Mark King and/or Sarah King and/or their Telah Foundation had nothing to do with the creation of this material and have no documentation of any kind that rightfully gave them ownership of the material at the time of their copyright thus Judge Guy Schall had no authority to give them ownership of these items.

The only ones who have right to ownership of the materials would be the heirs of Olliver Odinwood (aka Ollody legally Cabot Van Sinderen (who was among the decedants in 1997) and possibly of David Codody (aka Cddody legally, Fred Mackey (who I witnessed DO sending to a half way situation with Brnody and Anyody (at first)) in Dallas, Texas in about 1988 and who was offerred to return in about 1994 but chose to stay in Dallas where I met with him in 1994 and after I left in 1995 and in the early 2000's) and Daniel O'Day (Dncody, legally, Richard "Dick" Joslyn, who left the Group in about 1992 before the Beyond Human Series came out, who I met with in 1995 in Sedona, AZ and then had communication with before he died of an HIV related sickness while he was in a hospital in Tampa, Florida area in the early 2000's.

Note: I'm not sure how to handle these facts as I don't want the Artwork and The Meeting screenplay to be claimed by these family members of Ollody, Cddody and Dncody. However, perhaps they wouldn't copyright them anyway not even thinking they are of value to some. But at least they wouldn't be in hiding with Mark and Sarah's lording over their usage. It's sort of ironic that Judge Guy Schal ordered them to not sell those items, yet we don't have that order. It's not that I want to make a commercial enterprise around them but I do feel as Rkkody did and DO gave indications of using them to earn income to use to continue to be able to disseminate their information.

We have had many great responses to the T shirts we regularily wear.

Sawyer


\*\*\*\*\*\*\*\*
https://copyrightalliance.org/what-happens-to-your-copyrights-after-you-die/
October 15, 2019

Education

What Happens to Your Copyrights After You Die?
by Anjelica Davis

It's not exactly fun to think about, but death is something that everyone will have to face eventually. And when creators spend their lives putting their blood, sweat, and tears into their passion, it makes sense that they'd want to protect their copyright post-mortem. Although it's a popular misconception, copyrighted works do not become public domain once the owner has died (just ask Michael Jackson — who, according to Forbes, was the highest-earning dead celebrity of 2018). Additionally, creators don't only want to protect their legacies; often, the continued copyright protection of their works after their deaths enables their loved ones to receive support even in their absence. But what exactly happens to your copyrights when you pass away? There's a few things to consider: who owns it, for how long, and what the owners are able to able to use it for.



Extent of Protection

Currently, all copyright-eligible works created on or after January 1, 1978 are protected for 70 years after the death of their author. This right is granted automatically by the Copyright Act of 1976, which established a 50-year protection period after death, as well as Amendments such as the Copyright Term Extension Act of 1998, which extended post-mortem protection to 70 years. This also applies to joint works created by multiple authors, where the term of protection is 70 years after the death of the last living contributor.

Protection is a little different for works made anonymously, under a pseudonym, or for-hire. In that case, protection lasts for either 95 years from the year the work was first published, or 120 years after its creation — whichever comes first. In general, however, when it comes to individual creators, 70 years after your death is the rule of thumb.
Your Heirs

Like any other property you own, what normally happens is that ownership of your copyrights is transferred to the heirs of your estate. This will depend on local state law, but typically this will mean your spouse and/or children, or other family members if you are unmarried and do not have children. If you wish to specify that a particular person or entity receive ownership, you can use a will to name a beneficiary to whom you'd like to transfer ownership. In just one complicated example of why a will is important, legendary artist Prince died in 2016 without having one established — launching his heirs into a years-long legal battle over who owns his estate. Estate attorneys can help with drafting a will and ensuring it makes your wishes clear and unambiguous.

If the work has been licensed or transferred, however, your death does not mean that the agreement establishing that license or transfer has expired. Instead, the license holder or owner retains the specific rights granted to them for as long as the agreement lasts, or until the copyright term expires.
Use of the Work

Once ownership has been passed on, the new owner may generally use and license your works in whatever way they wish. If the rights to the works are co-owned, any profits made from the use of the work might need to be split amongst all of the rights holders, but usually permission will not need to be secured from the other co-owners if one of the rights holders wishes to use the work non-exclusively.

Additionally, you can use your will to specifically outline how you'd like your works to be used after you pass away. For example, Adam Yauch of the Beastie Boys included a provision in his will prohibiting his works from being used for advertising purposes. This is another area in which an estate lawyer would be helpful in the process of preparing your will.
What Can You Do?

Now that you have all this information about what will—or what could—happen to your work after your passing, what do you do next? The first step is to figure out what copyrighted works you own, along with any registrations you may have made. Next, of course, to determine what you'd like to happen to those works. Who do you trust to protect your legacy, and who do you want any profits of the work to go to? Have you transferred your work, or have you set up any licensing agreements? Was the work published anonymously? Make sure you have the answers to these questions in mind before proceeding.



You should also consider whether to register any works that aren't already registered with the Copyright Office. Registration has a number of benefits, such as providing a public record indicating who owns the rights to your work. It also enables you and your heirs or beneficiaries to sue for infringement, as well as potentially receive statutory damages and attorneys' fees as part of a judgment.

It's also important that you talk with the person (or people) who you intend to inherit your copyright. Making them aware, and making sure they're on board, will help them be prepared for the responsibility of protecting your works after you're gone. You can also communicate to them how, exactly, you would like for them to handle your works.

Finally, we suggest reaching out to an attorney for assistance. An estate attorney will be able to help you create a will that outlines your exact desires — eliminating any ambiguity as to how you want your legacy to be carried out after you die. In addition, an estate attorney can help you consider any tax implications for your estate and may be able to recommend strategies for minimizing tax burdens, such as a trust.

# Exhibit 2

Case PN02222228 — Statement of Decision 1999 by J"



0247

F I L E D
Clerk of the Superior Court
FEB 2 2 1999
BY: M. GARLAND

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| Estates of<br><br>JOHN MICHAEL CRAIG, also known as<br>LOGAN M. LAWSON, aka LOGAN LAHSON,<br><br>Deceased. | Case No. PN022228<br><br>**STATEMENT OF DECISION** |

The above-entitled cause came on regularly for trial on January 11, 1999, in Department A of the above-entitled court, the Honorable Lisa Guy-Schall, Judge, presiding. The matter was tried without a jury and concluded on January 13, 1999. Jillyn Hess-Verdon, Todd Irby, and Clara Mc Alinden, appeared as counsel for petitioner, the Telah Foundation, Inc., and John J. Sansone, County Counsel by Cheryl K. Carter and Lewis P. Zollinger, Senior Deputies, appeared as counsel for respondent, the Public Administrator for the County of San Diego.

Oral and documentary evidence was introduced on behalf of the respective parties, and the cause was argued and submitted for decision. Thereafter, the matter was taken under submission pending this Court's ruling at the hearing on consolidation of all estates set for February 19, 1999.

The Court, at the hearing held on February 19, 1999, granted the Motion to Consolidate to all thirty-nine estates with the intent that the decision herein would apply to all estates.

1    Accordingly, this Court, having considered the evidence and heard the arguments of
2    all counsel and being fully advised, issues the following statement of decision:

3                              **STATEMENT OF FACTS**

4    The parties hereto stipulated to the following facts:

5    On March 26, 1997, 39 individuals associated into a group identified as "Heaven's Gate,"
6    expired in a residence in Rancho Santa Fe, California (Trial Exhibit Numbers 135, 136).
7    Shortly prior to their deaths, on March 24, 1997, they sent a mailing to Mark and Sarah King
8    which included powers of attorneys, documents regarding vehicles, passports, keys, maps,
9    codes to storage units, unsigned letters, videotapes and other items (Trial Exhibit Numbers
10   1-3, 8-27, 33-38, 63, 74-76, 93-106, 132, 133).

11   On March 27, 1997, the San Diego County Sheriff's Department removed some, but not
12   all, of the items in the residence of the decedents.

13   On April 1, 1997, the San Diego County Sheriff's Department removed some, but not all,
14   of the items in two storage units located at Private Storage Systems, 2421 Barnham Drive,
15   Escondido, CA.

16   In April 1997, Petitioners contacted the Public Administrator and requested a meeting.
17   Petitioner met with Susan Jamme and Judith Evans of the Public Administrator's Office and
18   explained what they received from the decedents.

19   On April 23, 1997, the Public Administrator asked Mark and Sarah King to return items
20   of property they had received just prior to the deaths. They returned two vehicles on
21   May 13, 1997, along with keys and a bill of sale for a third vehicle already in the Public
22   Administrator's possession (Trial Exhibit Number 89). The Public Administrator for the
23   County of San Diego was subsequently appointed Special Administrator on April 24, 1997
24   (Trial Exhibit Number 135, 136). In his representative role, the Public Administrator
25   marshaled and took possession of the personal property in the residence and the storage
26   units and also received property that had been removed by the Sheriff's Department from
27   both locations (Trial Exhibit Number 77).

28   ///



- 2 -

0249

1    On September 24, 1997, Petitioners filed a creditor's claim detailing a claim on
2    decedents' assets in the Public Administrator's possession.

3    On December 23, 1997, the Public Administrator obtained an appraisal of the business
4    entity known as Higher Source Contract Enterprises. The appraisal indicated that the
5    intellectual property owned by Higher Source Contract Enterprises was de minimus as of
6    March 22, 1997 (Trial Exhibit Number 137). As a result, the Public Administrator petitioned
7    the Court on March 6, 1998, to terminate the special administration (Trial Exhibit Number
8    138). The petition was granted on May 7, 1998. Therefore, these 39 estates are being
9    administered pursuant to Summary Probate Proceedings provided for in Probate Code
10   § 7660 et seq. (Trial Exhibit Numbers 139-177). The Court has directed that a motion be
11   brought to consolidate the 39 estates.

12   The Public Administrator determined that the aggregate value of all 39 decedents'
13   estates would not exceed $50,000.00. He had received creditor claims for funeral and
14   burial expenses of approximately $100,000.00 (Trial Exhibit Numbers 178-210).

15   On September 22, 24, and October 27, 1997, the Petitioner registered the following
16   copyrights and trademarks:

17   A. The literary work entitled, "How and When Heaven's Gate (The Door to the Physical
18   Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials"

19   B. The audiovisual work entitled, "Last Chance to Evacuate Earth Before It's Recycled,"
20   "Plant About to Be Recycled – Your Only Chance to Survive – Leave With Us"

21   C. The audiovisual work entitled, "Do's Final Exit – Students of Heaven's Gate Expressing
22   Their Thoughts Before Exit"

23   D. The audiovisual work entitled, "Beyond Human – The Last Call"

24   E. The sound recordings entitled, "The Audiotape Library of Heaven's Gate by Ti and
25   Do"

26   F. The audiovisual work entitled, "The C.B.E. (Celestial Being Entity)"

27   G. The fabric design entitled, "Heaven's Gate Away Team Patch"

28   ///



- 3 -

0250

1  At a later date, the Petitioner filed an application to have the trademark, "HEAVEN'S

2  GATE," registered.

3  The Public Administrator marshaled a Certificate of Trade Name Registration for Higher

4  Source Contract Enterprises (Trial Exhibit Number 211), and an application for Registration

5  for Trade Name for Telah Services (Trial Exhibit Number 212), which are in the name of

6  decedent Logan Lahson, aka John Craig.   In addition, he marshaled a Certificate of

7  Copyright Registration for Artwork for a screenplay entitled, "The Meeting," in the name of

8  decedent Olliver Odinwood and a Certificate of Copyright Registration for a motion picture

9  screenplay entitled, "The Meeting," in the name of individual decedent David Cododly, a

10  pseudonym (Trial Exhibit Number 59, 60).   These certificates were recovered from the

11  decedent's residence.

12  Items on Exhibits 1 and 2 attached to this Statement of Decision are a comprehensive

13  listing of property at issue.   Exhibit 1 is a listing of gifts made in view of impending death.

14  Items listed in Exhibit 2 were controverted by the parties.   Intellectual property listed

15  throughout Exhibits 1 and 2 were controverted by the parties.

16  **FINDINGS OF FACT AND DECISION**

17  1.   This Court finds that no gift was made of items listed on Exhibit 2. This finding

18  is based upon the following facts:

19  The items on Exhibit 2 were in the possession of the decedents upon their deaths,

20  either in their residence, or on their person.

21  The decedents themselves wrote a letter to Sam, Fifi, Tawny and Tony (Sam referring

22  to Sam Koutchesfahani, their landlord), stating on page one of Trial Exhibit No. 74:

23  "The test for you now is that our task here on earth is over and its time for us to go
   home – to return to the Kingdom of Heaven from where we came",

24

25  and on page two:

26

27  "The authorities may want to confiscate or hold for estate purpose TV's, bunks and
   other equipment that belongs to us.  As far as we're concerned we would like for you to
   have what is left in the house if the authorities will allow it."

28



- 4 -

According to Trial Exhibit 1, the decedents asked Mark and Sarah King to mail this letter to Sam, stating in an undated letter to MRC/SRF, on page one:

"It is likely that the items currently in the residence will not be easily available to you – so we did mention to our landlord, Sam, who might have better luck with the authorities in claiming some of those items, since he owns the house, that he could have whatever valuables are there..."

A gift is defined as a transfer of personal property made voluntarily and without consideration (Probate Code § 5700). Here it is clear no pre-mortem transfer ever occurred because the decedents intended Sam Koutchesfahani to have the contents of the residence after their deaths. Thus, decedents retained control and possession of personal property in Exhibit 2. A donor must intend to confer a present right on a donee, the delivery, however, must be a gift in presenti, not for the purpose of making a future disposal of it under the directions of the donor" (*Hart v. Ketchum* (1898) 121 Cal 426, 428).

2.    Regarding the Gifts in View of Impending Death listed in Exhibit 1, the respondents have the right to recover said gifts, sell them, apply the proceeds to pay creditor's claims and return unused proceeds to petitioner, if any.

This Court bases its decision on the following findings of facts:

All items in Exhibit 1 are gifts made in view of impending deaths. Don Billings, Public Administrator for the County of San Diego and Personal Representative herein, testified that the aggregate value of these estates is approximately $50,000.00. Creditor's claims have been filed for funeral expenses of approximately $100,000.00 An appraisal of the intellectual property owned by Higher Source Contract Enterprises stated its value was de minimus as of March 22, 1997. Therefore, the estates are insolvent, and creditor's claims exceed their value.

A gift in view of impending death is subject to rights of the creditors of the giver (Probate Code § 5704). Since the personal representative has insufficient assets to pay creditors, the property in Exhibit 1 is subject to recovery by the personal representative herein (Probate Code § 9652).

///

0252

1    Since the "primary object is to enable the trustee to reduce that asset to possession
2    and administer it for the benefit of creditors under the direction and supervision of the
3    probate court" (*Goldstein v. Prien* (1956) 143 Cal.App.2d 123, 127), this Court will not require
4    the Public Administrator to file another action when the same parties, issues and facts are
5    presently before this Court. Petitioners' request to the contrary is without merit, unduly
6    harmful to the creditors, and invites a multiplicity of suits.

7    3.    Regarding the ownership of intellectual property, this Court determines that
8    the estates own all intellectual property interests together with the tangible assets from
9    which those interests are derived. This determination is based upon the following findings
10   of fact:

11   Although Petitioners presented evidence of post-mortem registrations of the literary
12   work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level
13   Above Human) May Be Entered – An Anthology of Our Materials;" the audiovisual works
14   entitled, "Last Chance to Evacuate Earth Before it's Recycled," "Plant About to Be Recycled –
15   Your Only Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate
16   Expressing Their Thoughts Before Exit," "Beyond Human – The Last Call," "The C.B.E. (Celestial
17   Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The
18   Audiotape Library of Heaven's Gate by Ti and Do." Nevertheless, there is no evidence of any
19   writing which explicitly conveyed or transferred ownership of all this intellectual property
20   to the Petitioners. There was no writing actually signed by the decedents except the
21   Durable Power of Attorney, which became void upon their deaths.

22   Sarah King testified that, "How and When Heaven's Gate (The Door to the Physical
23   Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials," Last
24   Chance to Evacuate Earth Before it's Recycled," Plant About to Be Recycled – Your Only
25   Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate Expressing
26   Their Thoughts Before Exit," and "Beyond Human – The Last Call," were all given to the
27   petitioners by the group for the express purpose of distributing copies and receiving
28   ///

- 6 -

1  returned copies. Thus, she and her husband, Mark, were agents or distributors, but no
2  more.

3      Two "Heaven's Gate Away Team" patches were mailed in identical mailings to the
4  Petitioners and others according to Rio Di Angelo. There is no evidence that by these
5  mailings the Petitioners also received the intellectual property rights to the patches.
6  Therefore, there is no evidence that a pre-mortem transfer of the intellectual property
7  rights occurred.

8      As for the painting, "C.B.E.," it was delivered to Petitioners in February of 1977, with
9  words of gratitude, according to Sarah King. Yet, there is no evidence that decedents gave
10  intellectual property rights in the painting to the Petitioners as well.

11      There is no evidence, written or otherwise, transferring ownership of intellectual
12  property rights in the "The Audiotape Library of Heaven's Gate by Ti and Do."

13      Any transfer of ownership of intellectual property, other than by operation of law, is
14  invalid unless an instrument of conveyance, or a note or memorandum of the transfer is in
15  writing and signed by the owner of the rights conveyed or such owner's duly authorized
16  agent (17 U.S.C. § 204 (a)). Furthermore, it is well settled that a copyright is distinct from
17  the material object in which its expressive content is embodied (17 U.S.C. § 202). Transfer
18  of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202).

19      Since there is no written instrument transferring ownership of the intellectual
20  property to the petitioners, the estates own all intellectual property as tenants in
21  common.

22      4. The Petitioners' request for attorneys' fees I denied.

23      Generally, attorney fees are not awarded unless specifically provided for by statute
24  (Code of Civil Procedure § 2021). Probate Code § 9860 does not provide for payment of
25  attorney fees and the Petitioners cite this Court to none.

26      To the extent Petitioners may be requesting attorney's fees based upon a fiduciary
27  duty which was owed to them by the Public Administrator which was allegedly breached,
28  this Court makes the following observations:

0254

1   The Public Administrators powers and duties were set forth in the order appointing

2   him as special administrator (Exhibit No. 135). This order did not include the powers of a

3   general person representative or the right to commence, maintain, or defend suits and

4   other legal proceedings (Probate Code § 8544). A special administrator appointed to

5   perform a particular act has no duty to take any other action to protect the estate

6   (Probate Code § 8544 (d)). Furthermore, in the performance of those duties imposed upon

7   him, the Public Administrator treated the Petitioners no differently than any other

8   claimants similarly situated.

9       5.      The Public Administrator's request for an award of sanctions against the

10  Petitioners pursuant to Code of Civil Procedure § 128.5 is granted.

11      This award is based upon the following findings of fact:

12      The essential facts of this case are not, and have not been, in material dispute. Thirty-

13  nine individuals died leaving property subject to estate administration. The estates are

14  insolvent, the creditor's claims for burial and funeral expenses exceed the value of these

15  estates by a margin of two to one. Ownership rights to a substantial portion of the

16  property in the estates was never transferred to the Petitioners.   That which was

17  transferred was a gift in view of impending death. Either way, property in the estates was

18  indisputably subject to creditors' claims and the Petitioner's claim to the contrary was

19  without merit.

20      Petitioners filed this action actually asking for relief that no trial court could grant. A

21  trial court cannot make a will for a decedent. The decedents' alleged intent could not take

22  the place of statutory formalities and alleged wishes could not control and direct

23  disposition of a decedent's property without the law to give them substance. No evidence

24  of pre-mortem transfer of the items in Exhibit 2 was offered. No evidence was offered

25  contesting the value of the estates or the propriety of the creditors' claims. Except for

26  three bills of sale and thirty-nine Powers of Attorney, no signed writing of any kind was

27  offered into evidence. For these reasons, this action was frivolous and without merit.

28  ///

- 8 -

76

1    Prosecution of a frivolous action may in itself be evidence from which a finding of
2    subjective bad-faith can be made, for purposes of award of sanction (*West Coast*
3    *Development v. Reed* (1992) 2 Cal.App.4th 693, 702).

4    By having to defend this frivolous action, the estates now have even fewer assets
5    available to pay toward the creditors' priority claims.  An award of sanctions remedies
6    some of the inequity resulting to the creditors.

7    Judgment is hereby ordered as follows:

8    1.    All right, title and possession of property listed on Exhibit 2 is vested in the
9    Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio,
10   Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,
11   Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard
12   Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter
13   McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva
14   Nichols, Lindley Ayerhurst Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann
15   Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela
16   Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch,
17   Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, and Suzanne
18   Cooke.

19   2.    All right, title and possession of all property listed on Exhibit 1 is vested in Don
20   Billings, Public Administrator for the County of San Diego, as Personal Representative for
21   Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio,
22   Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,
23   Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard
24   Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter
25   McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva
26   Nichols, Lindley Ayerhurst Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann
27   Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela
28   Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch,

1   Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne
2   Cooke, as trustee for petitioner Telah Foundation.  Said trustee shall sell all valuable
3   property listed on Exhibit 1, liquidating said property to cash and apply said cash to
4   payment of approved creditors' claims filed against the aforesaid estates.  Any amount in
5   excess of claims shall be returned to Telah Foundation.

6       3.      All right, title and possession of all intellectual property is vested in the Estates
7   of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond
8   Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie
9   Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David
10  Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne
11  McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley
12  Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael
13  Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan
14  St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch, Alphonzo Foster,
15  Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne Cooke.

16      4.      Petitioners shall bear their own attorneys' fees and costs.

17      5.      Petitioners are sanctioned and directed to pay attorneys' fees and costs of the
18  Public Administrator.

19  DATED:  2/22/99

20

21

22  LISA GUY-SCHALL
    JUDGE OF THE SUPERIOR COURT
23

24

25

26

27

28

- 10 -

# Exhibit 3

B
e
y
o
n
d

H
u
m
a
n

-

T
h
e

L
a
s
t

C
a
l
l

-

C
o
p
y
r
i
g
h
t

@

1
9
9
2

# Beyond Human
## – *The Last Call*



## Ti, Do, and Students

This series of tapes explains simply, clearly, and understandably how we get to "Heaven." DON'T STOP! READ ON! It explains how Heaven is not where we go after we die "if we were good," but it is a physical Kingdom Level above the human kingdom that can only be entered while we are very alive and well, after having broken all ties and licked all addictions of the human condition. This can be done only under the supervision of *Representatives* of the "Heavenly" Kingdom (as Jesus was to His disciples) and at a time when that Representative is incarnate in a human "vehicle" (or body). This is happening again – now – at the close of this Age as it was promised.

Original Definition of Terms is one of the topics clarified in these tapes (language (tongues) came from the Kingdom of God and was taught to humans; however, opposing forces have successfully, through the centuries, sold man on wrong definitions of terms in order to hold man in darkness or separation from God).

A few examples are:

**Death** is *separation from God.*

**Life** is possessed by one who *knows the truth* concerning the Kingdom of God. (These terms apply to the soul and have nothing to do with the body. A body which is shed through old age, disease, accident, or murder merely forces a soul into a sleep state until it is replanted in the human perennial vine or household to which it is still bound.)

**Resurrection** occurs when a soul returns from misinformation (darkness, death) to Truth (life) concerning God and man.

**Heaven** is the place, in all that is, where the Most High God resides (even though some salvageable souls are taken there at times for their dormancy before replanting for another chance at overcoming death).

\*     \*     \*     \*     \*

Like we said at the beginning, these tapes tell us how to get to Heaven. If you want to go - you've found your classroom. Good luck! - It's tough! - We'll help you.

\*     \*     \*     \*     \*

Rev 3:21  *To him that overcometh will I grant to sit with Me in My throne, even as I also overcame, and am set down with My Father in His throne.*

Copyright 1992 by Total Overcomers Anonymous

# Exhibit 4

Heaven's Gate Blue Book Common Law Copyright 190

How and When

# "Heaven's Gate"

*(The Door to the Physical
Kingdom Level Above Human)*

## May Be Entered

*An anthology by Representatives
from the Kingdom of Heaven*



© Common Law Copyright
1996 by Heaven's Representatives
Printed in the New Mexico Republic, the united States of America


ALL RIGHTS RESERVED, WITHOUT PREJUDICE,
U.C.C. 1-207, U.C.C. 1-103.6


This book is protected by Common Law copyright. Permission is hereby granted to reproduce
this book, or portions thereof, as long as the content is unchanged, i.e., nothing added to it or
taken away from it as long it is for non-commercial purposes.


No part of this publication may be reproduced or transmitted in any form or by any means, now
known or to be invented or adapted, for the purpose of financial gain or profit.

Copyright

© Common Law Copyright
1996 by Heaven's Representatives
Printed in the New Mexico Republic, the united States of America
ALL RIGHTS RESERVED, WITHOUT PREJUDICE,
U.C.C. 1-207, U.C.C. 1-103.6
ISBN: 0-926524-51-8


This book is protected by Common Law copyright. Permission is
hereby granted to reproduce this book, or portions thereof, as
long as the content is unchanged, i.e., nothing added to it or
taken away from it as long as it is for non-commercial purposes.

# Exhibit 5

Letter from DO and Crew to Mrc (Mark King) and Sr

87

Hopefully, you will be able to work together with some of the following: OSC, RKK, JHN, FLX/ABL and NEO (who is currently working for a company in LA called InterAct Entertainment). There is also a recent correspondent from Germany by the name of Soeren (we couldn't remember if we mentioned him to you or not), who has been trying to make it to the US to meet with us. OSC is in contact with Soeren and has offered Soeren housing at his apartment. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it.

We also asked OSC to register the Heaven's Gate book with the Library of Congress and that if he needed any funds to accomplish this, that you would cover it out of the project funds that you have on hand.



Also we want to make it clear that we're certainly not asking you to do these tasks if, after receiving this information, circumstances make it too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step. No doors are closed to you.

We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some. Our hearts are with you and we appreciate your help on all this.

Good Luck.

The Class

Note: Due to time limitations and less than professional equipment, the quality is rather poor on the enclosed videotapes, and for this we apologize. Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format – our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. (RKK has the original master in his packet). These tapes can be sent to the media or wherever you feel would be appropriate. However, in case you don't know this already, the SVHS tapes will not play properly on a standard VHS player/recorder, you will need to view them on an SVHS machine.

Additional Note: We suspect that the authorities will take an immediate interest in you – your whereabouts – your plans in relationship to the action that we took – and we are asking that you be cautious and aware of this for your own protection.



**URGENT Note:** Please drop the letter in the mail addressed to our landlord, Sam, as soon as you feel comfortable *that he will not get that letter before you have a chance to get to the address* listed in the "Location" document.

88

MRC/SRF,

By now, having read the enclosed press release, you should be aware that we have exited our vehicles just as we entered them. Also included are two videotapes of DO and the Class, a list of the others who are receiving this final press release and "Earth Exit Statements by Students," as well as a document describing our location. The Internet account information, however, we sent only to you, RKK, and OSC.

Enclosed is a key to our storage units which we prefer remain confidential to you and whomever on the list above would be most helpful to you – we suspect RKK and OSC would likely be a big help – but including others would be OK as well, whatever your strategy permits. We put into storage items that we would prefer the authorities not have access to. You can do with those items whatever feels right to you. The only exception to this is some exercise equipment which belongs to our landlord, Sam, and we suspect he will want at some point. The storage units are #241 (use key 798 for this unit) and #147 (key 591), located at Private Storage Systems, 2421 Barham, Escondido, CA. The passcode to get through the gate is * 21484 # – the related contract/paperwork is also included in this package, and we have attached a map that further pinpoints this location.

We also have a 20 foot yellow truck in a separate storage unit, and we did think that RKK would be a good choice to retrieve it – it's big enough to be able to haul all of what's in storage, we believe. The truck storage paperwork is also enclosed. The name of the company is California Self Storage located at 5206 Eastgate Mall, San Diego, CA 92121-2809. The unit number is F 258 and the access code is *351-3046. Pursers have included an additional document as part of this packet that further covers the disposition of our cars and this truck. So we ask that you refer to that document for details. It is our desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information. Any of the funds you retrieve can be used towards that end and for the living expenses of those involving themselves with this project. It is likely that the items currently in the residence will not be easily available to you – so we did mention to our landlord, Sam, who might have better luck with the authorities in claiming some of those items, since he owns the house, that he could have whatever valuables are there – which likely will amount to a few TV's, some bunks, a few household items, and perhaps a laptop computer or two.

On another note, we uploaded the heavensgate website to an ISP in Romania, and we also FedEx'ed the Romanian webmaster the diskettes containing the entire site along with the diskette containing the final press release and the Earth Exit Statements by Students (these final statements are on a separate disk which hopefully RKK will be able to upload, however the Romanian fellow will have the entire site on diskette as back-up). We have prepaid two months of webhosting on this Romanian server under the name of Sister Michael Remi. The webmaster's name is Ionut Muntean, telephone number: 011 40 68 322150. He speaks and writes English well enough for us to communicate with him, and seems to be an agreeable fellow. All he knew about us however, before now, is that we were a small Interfaith monastery with some "non-traditional" views. So we're not sure what his response will be to this most recent event.

We are hoping, of course, to use this site as an alternate way to access our information in case the authorities shut down our sites in the States. The URL for this site is www.heavensgate.deltanet.roknet.ro.

As you may have noticed, we have listed Simon Boyce as our preferred media contact. He recently requested to use us in a major documentary about UFO's and paranormal (he works for the BBC, however he and his crew are currently working out of the CBC office – Canadian Broadcast Company – in New York). Although we declined the interview, he tried to make the point with us on several occasions that their intention was to be as objective as possible. So, whether or not that is possible (for the media to remain objective) at least his frame of mind attempts to lean in that direction. His producer/director, Debbie Geller, at a later time made another sincere attempt to try to convince us to participate in their documentary. So, for this reason, we are recommending that they be involved to some degree in the coverage of this event, that is, if their attitude seems to remain somewhat objective and you find working with them not too difficult. Of course, this is contingent upon whether or not you should choose to say anything to the media on our behalf. We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about.

(continued on next page)



# Exhibit 6

Letter from DO and Crew to Rkkody (Charles Chu





RKK,

By now, having read the enclosed press release and the Earth Exit Statements by Students, you should be aware that we have exited our vehicles just as we entered them. Also enclosed is a list of the others who are receiving this press release, as well as a document describing our location. The Internet account information, however, we sent only to you, MRC/SRF, and OSC. We are hoping that with your computer skills, you might choose to assist us in this capacity for whatever length of time feels right to you. We are particularly interested in having you upload the files on the third diskette entitled "Earth Exit, final press release, and index page" to all three of our websites. Instructions to do this have been written up by SRR/VRN and are included in this packet. We are also interested in someone following through with keeping a check on the site located on the Romanian ISP listed on the account information sheet.

We did upload the site to his server last Thursday and we also FedEx'ed the Romanian webmaster the same set of diskettes as you received containing the entire site along with a press release and related documents. We have prepaid two months of webhosting on this Romanian server under the name of Sister Michael Remi. The FTP and telnet access routine is detailed on the account information sheet. The webmaster's name is Ionut Muntean, telephone number: 011 40 68 322150. He speaks and writes English well enough for us to communicate with him, and seems to be an agreeable fellow. All he knew about us however, before now, is that we were a small Interfaith monastery with some "non-traditional" views. So we're not sure what his response will be to this most recent event.

We are hoping, of course, to use this site as an alternate way to access our information in case the authorities shut down our sites in the States. The URL for this site is www.heavensgate.deltanet.roknet.ro – the server is unix machine. If you run into any questions regarding the unix server, a friend of some classmembers named Chris Milus (he's on the list we sent you), runs an ISP in Tennessee, which currently houses the heavensgate.com site. He's very unix knowledgeable, and we suspect he'll be more than happy to help out.

Thanks for your help on this.

Also we want to make it clear that we're certainly not asking you to do this if, after receiving this information, circumstances make it too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step.

We have listed Simon Boyce as our preferred media contact. He recently requested to use us in a major documentary about UFO's and paranormal (he works for the BBC, however he and his crew are currently working out of the CBC office – Canadian Broadcast Company – in New York). Although we declined the interview, he tried to make the point with us on several occasions that their intention was to be as objective as possible. So, whether or not that is possible (for the media to remain objective) at least his frame of mind attempts to lean in that direction. His producer/director, Debbie Geller, at a later time made another sincere, attempt to try to convince us to participate in their documentary. So, for this reason, we are recommending that they be involved to some degree, in the coverage of this event, that is, if their attitude seems to remain somewhat objective and you find working with them not too difficult. Of course, this is contingent upon whether or not you should choose to say anything to the media on our behalf. We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about.

(continued next page)



Hopefully, you will be able to work together with MRC/SRF, OSC (Oscody), JHN, and NEO (who is currently working for a company in LA called InterAct Entertainment). There is also a recent correspondent from Germany by the name of Soeren, who has been trying to make it to the US to meet with us. OSC is in contact with this individual and has offered housing for him at the Phoenix satellite. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it.

Also, it's OK of you want to ask PYP if he would like to participate in any way.

We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some.

Good Luck.

Your Friends

**Note:** Due to time limitations and less than professional equipment, the quality is rather poor on the enclosed videotapes, and for this we apologize. Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format – our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. (RKK, you have the original master, we thought you would know best how to duplicate the tapes and where to distribute them for widest coverage.) These tapes can be sent to the media or wherever you feel would be appropriate. However, in case you don't know this already, the SVHS tapes will not play properly on a standard VHS player/recorder, you will need to view them on an SVHS machine.

**Additional Note:** We suspect that the authorities will take an immediate interest in you – your whereabouts – your plans in relationship to the action that we took – and we are asking that you be cautious and aware of this for your own protection.



Rkk,

Last minute additions for the web site -- if you would like to help
in this way.  Heavensgatetoo is our primary concern.  We have others
that may already correct the other sites if you don't get a chance
to get to it.  Note: any existing graphics that are missing from
these files can be found already on the web site.

Re: Installation of the files found on this disk.

The files on this disk are a press release and the latest papers by
students regarding our exit.  These are intended as updates to the
existing websites of heavensgate, heavensgatetoo, levelabovehuman, and
the Romania heavensgate site.

Since the heavensgatetoo site has a unique set up from the rest, you will
find a "too" subdirectories present on this disk.  The files in it
are the equivalent to heavensgate (or levelabovehuman) but are for
heavensgatetoo.

For simplicity, you will find both index.htm and index.html in the root
directories.  These are duplicates of one another.  Some of the sites
default to index.htm others to index.html, hence the duplication -- upload
both.  The files in the "misc" directory compliment what is already
in the online misc directories.  The new index files update the index
files that already exist in the online root so that they will now include
pointers to.the press release and student exit papers.

On another disk that you were sent, you will find the account information
you need in order to upload these files.

Thanks,

Your Friends.



93

# Exhibit 7

Letter from DO and Crew to Jhnody (Francisco Fa



JHN,

By now, having read the enclosed press release and Earth Exit Statements By Students, you should be aware that we have exited our vehicles just as we entered them. Hopefully, you will receive this FedEx in a timely manner to coincide with the FedEx's being sent out simultaneously to the others on the list.

We have enclosed a set of diskettes containing the contents of our website, two final videotapes made by DO and the Class, the location of our exit, and the list of others receiving this packet – one reason we particularly wanted to put it in your hands is so that two copies of this material will now exist outside the States. The other is with a Romanian ISP with whom we've recently made arrangements to be one to house the heavensgate site (www.heavensgate.deltanet.roknet.ro) – but until such time as this FedEx reaches him, the webmaster there knows very little about us, so we'll see how that goes – how he chooses to respond.

You have been extremely helpful to us, and we wanted to especially thank you for that assistance. You seemed to be in tune with those times when that help was particularly appreciated.

We would hope that, should you feel inclined to assist with the dissemination of our information, you would contact some of the following: MRC/SRF, RKK, OSC (Oscar or OSCODY), FLX/ABL or NEO and work together on it to some degree, at least initially. That's not to influence any options you may choose on your own in relationship to us and this event, for all doors are still open to you as well. That's always your choice.

We wish you only the best and our hearts are with you.

Thank you.

The Class

**Note:** Due to time limitations and less than professional equipment, the quality is rather poor on the enclosed videotapes, and for this we apologize. Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format – our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. These tapes can be sent to the media or wherever you feel would be appropriate. However, in case you don't know this already, the SVHS tapes will not play properly on a standard VHS player/recorder, you will need to view them on an SVHS machine.

**Additional Note:** We suspect that the authorities will take an immediate interest in you – your whereabouts – your plans in relationship to the action that we took – and we are asking that you be cautious and aware of this for your own protection.



# Exhibit 8

Copyright of Heaven's Gate Classroom Teachings

96

← → C 🔒 https://publicrecords.copyright.gov/detailed-record/12977815

Registration record SR000025 1498

Copyright Catalog (1978 to present)

**Heaven's Gate classroom teachings : audiotapes vol. 1-2.**

◀ Previous      Next ▲

Share ⦾      Actions ▸

| | |
|---|---|
| **Registration Number / Date** | SR0000251498 / 1998-05-13 |
| **Previous Registration** | Audiotapes preexisting. |
| **Type of Work** | Sound Recording |
| **Title** | Heaven's Gate classroom teachings : audiotapes vol. 1-2 |
| **Variant Title** | Heaven's Gate classroom teachings : audiotapes vol. 1-2. |
| **Date of Creation** | 1997 |
| **Date of Publication** | Oct97 |
| **Copyright Claimant** | © Kathryn Morea, d.b.a. Right to Know |
| **Authorship on Application** | recording: Charles E. Humphrey, 1942-1998, d.b.a. Right to Know. |
| **Basis of Claim** | New Matter: editing, compilation. |
| **Description** | 2 compact discs. |
| **Names** | Morea, Kathryn |
| | Humphrey, Charles E. 1942-1998 |
| | Right to Know |

97