**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation, an Arizona nonprofit corporation, | CASE NO. 3:22-CV-395-JD-MGG |
| Plaintiff, | |
| v. | |
| Steven Robert Havel, Cathy JoAnn Weaver, Jason Bartel, | |
| Defendants. | |



**BRIEF IN OPPOSITION TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION**

**I Cathy Joann Weaver hereby declare the following. I have included portions of the Plaintiff's Brief in Support of Preliminary Injunction (excluding their exhibits) into this Brief in Opposition to the Plaintiffs Motion for Preliminary Injunction hereafter to be referred to as Mark and Sarah King, that I intend to file so I can respond in a concise manner to each part that pertains to me.**

**Mark and Sarah King's first stretching of the truth is in the below footnote:**

As explained in Section IV, below, Defendant Cathy Weaver ("Ms. Weaver") filed a Petition for Bankruptcy on October 27, 2022. Plaintiff learned of Ms. Weaver's bankruptcy in mid-November as Plaintiff was about to file an earlier version of this Motion which also sought to enjoin Ms. Weaver. Ms. Weaver's filing has thrown a wrench in Plaintiff's initial thoughts on the scheduling of this matter, for fear of running afoul of 11 U.S.C. § 362. Over the past two months, Plaintiff's counsel has been in contact with the Bankruptcy Trustee seeking to have the automatic stay lifted. The Trustee, who has been made aware of Ms. Weaver's misconduct, has stated that she will not oppose a Motion to Lift the Stay, which will be filed in the United States Bankruptcy Court for the District of Indiana. Once the stay is lifted, Plaintiff intends to file a substantially similar motion seeking to enjoin Ms. Weaver.

**RESPONSE: I filed for Bankruptcy October 27, 2022, as I was over $44,000.00 in debt and could not afford the monthly payments any longer as is evidenced with the Plaintiff's, Mark and Sarah King adding my entire Bankruptcy filing with their exhibits. I spoke with 2 separate Bankruptcy attorneys assigned to my Bankruptcy case and both of those sessions were recorded. I don't know if I can obtain those recordings to submit as proof of our conversations. Neither of those attorneys advised me that I had to inform this Court of my filing, they both advised me that this Bankruptcy filing would have no effect on Mark and Sarah King enforcing their alleged copyright**

1

determine it was necessary to inform the Court of my Bankruptcy filing. The Bankruptcy attorneys counsel to me indicted it wasn't necessary to inform the Court because the two cases would not affect each other. They did inform me that in the event that a monetary judgment was placed against me that that could potentially stop the Plaintiff's from collecting that monetary amount from me but other than that the two cases were completely separate and would not stop Mark and Sarah King from pursuing any actions in regards to the alleged copyright infringement. The Plaintiffs have suggested that my filing Bankruptcy "threw a wrench" in their filing the motions they said they were going to file but according to my Bankruptcy attorneys that should not be the case. Plaintiffs are trying to blame their negligence on me and their doing so is not valid. My filing for Bankruptcy has no relevance on this case and I can only surmise Mark King and Sarah King included it in this lawsuit to cause me public shame and embarrassment by disclosing my personal financial hardships and my personal address which was not necessary as the Court had already informed me that a PO Box was a valid address to receive any filings from the Court or the Plaintiffs.

I.     **INTRODUCTION REGARDING HEAVEN'S GATE.**

Total Overcomers Anonymous, T.O.A., or Heaven's Gate ("Heaven's Gate") was a group that gained notoriety in 1997, when the majority of its members (39 members) engaged in a ritualistic mass suicide that coincided with the approach of the Hale-Bopp Comet.

This action involves Defendants Mr. Havel, Ms. Weaver, and Mr. Bartel's (collectively, the "Defendants") infringement of the intellectual property that was the property of Heaven's Gate, which is now owned by Plaintiff. Defendants' infringement and exploitation of these powerful materials is not only unlawful, but Defendants' widespread distribution of such powerful materials presents a risk that the events from 1997 will reoccur.

**RESPONSE: The Telah Foundation, which is comprised of Mark King and Sarah King only, have never proved that the Group transferred ANY of their property, physical or intellectual to them. Mark King and Sarah King were never given ownership of the Groups materials by the Group themselves. Mark King and Sarah King state that mine and my co-defendants widespread distribution of the materials presents a risk that others could commit suicide. I would like to state for the record that Mark King and Sarah King have maintained the website left behind by the group that according to them gets 100's of clicks a day and they receive numerous emails in regards to the Group. Is that not also "widespread distribution"? Mark King and Sarah King have also posted the Beyond Human series 1-12 on their Vimeo site along with Do's Final Exit, Last Chance to Evacuate Planet Earth Before it is Recycled, Planet Earth About to be Recycled and the Students Exit Statements. All of which has been available to the public to view since December of 2011. (See Exhibit 2) They also mail out to those who request them copies of the Heavens Gate book. All of these efforts constitute "widespread distribution" of the Group's materials and yet not ONE single person has committed suicide after viewing the above referenced materials. Not one single person has been documented as stating that they are committing suicide due to learning of Heaven's Gate**

and their hatred behind. Sawyer has been talking to people online over a decade and not one single person has committed suicide after listening to him. I respectfully ask the Plaintiff's Mark King and Sarah King to provide evidence that someone has taken their life in regards to hearing the Groups information in direct relation to Sawyer or myself. To accuse myself and my co-defendants of promoting suicide is slanderous and blatantly false. We state in the description of every single one of the livestreams that we are against suicide and that there is no new group to join. We state that every time we talk to anyone be it online or in person and there is ample evidence on Sawyers livestream to prove that. (See Exhibit 3)

## II. OVERVIEW OF DEFENDANTS' INTENTIONAL AND ONGOING INFRINGEMENT OF PLAINTIFF'S INTELLECTUAL PROPERTY.

### A. Plaintiff Is the Registered Owner of Copyrights and Trademarks of Heaven's Gate.

Throughout the 1980's and 1990's Heaven's Gate created a number of works, including the following:

☐ A series of audio tapes (the "Audio Works");

☐ Certain video works (the "Video Works");

☐ A literary work entitled "How and When Heaven's Gate' (the door to the physical kingdom level above human) may be entered: an anthology of our materials" (the "Literary Work"); and

☐ A visual work of "The C.B.E." (the "Visual Work")

[Doc. 1 (Complaint) at ¶¶ 8–25; Declaration of Mark King, attached hereto as Exhibit A, at ¶¶ 4-6, 9] Heaven's Gate also adopted and used trademarks in connection with its work (the "Trademarks"). [King Declaration, Exh. A, at ¶ 7]

Plaintiff, which is a not-for-profit organization, acquired the intellectual property rights related to these works and trademarks in or around 1999, following the passing of the 39 Heaven's Gate members and after a lengthy court battle. [King Declaration, Exh. A, at ¶ 8]

**RESPONSE: The Plaintiff's Mark King and Sarah King state that they "acquired the intellectual property rights…. in or around 1999". Yet in the Plaintiff's Mark King and Sarah King's initial complaint against us they stated, "**In 1994 the directors of the Foundation renewed a long-standing relationship with a group known as "Total Overcomers Anonymous", "TOA", or "Heaven's Gate" (the "Group").

3

Three years later, in 1999, all the physical property and intellectual property (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County."

**So which is it? They state the Group transferred to representatives of the Foundation all of their property in 1997 but now they are changing that and saying they acquired all the property in or around 1999. Are they allowed to rewrite history like this? This is an outright changing of previously stated dates in an attempt to cover up that they in fact were not transferred anything by the Group in 1997 and only obtained the Groups possessions after a lengthy court battle and threatened appeal of the first ruling which was not in Mark King and Sarah Kings favor.**

B. **Defendants Have Willfully Violated Plaintiff's Rights.**

Defendants have violated Plaintiff's copyright protections and intellectual property rights.

**RESPONSE: Denied as Plaintiff cannot prove the Group transferred their intellectual property to Mark King and Sarah King or the Telah Foundation thereby invalidating their fraudulently obtained copyrights.**

When these public performances of Plaintiff's copyrighted materials began in the Fall of 2021, Plaintiff demanded that Defendants stop infringing on Plaintiff's copyrights and Plaintiff sought to resolve this matter amicably. [King Declaration, Exh. A, at ¶ 13] Defendants have refused all such overtures. [King Declaration, Exh. A, at ¶¶ 14]

**RESPONSE: Mark King and Sarah King conned us into showing up for a meeting at their attorney's office when I, Cathy Weaver had requested to meet at a park or some such neutral location. They coerced us into attending this meeting in November of 2021 in order to present us with a ludicrous legal agreement that only benefited them and then served us with a Cease and Desist. The Plaintiff's did NOT try to resolve this matter amicably. They engaged in trickery and deceit to get us to the meeting and then blindsided us with an open-ended Cease and Desist which threatened us with prison time if we did not concede to their demands. Of course we couldn't sign such documents!**

The "3spm" YouTube channel contains many videos that infringe on Plaintiff's copyrighted content. [King Declaration, Exh. A, at ¶ 16] For example, Defendants Havel and Weaver have played the following audio tapes:

      Tape No. 149 - Broadcast on YouTube 3spm channel on 11/08/21
      Tape No. 263 - Broadcast on YouTube 3spm channel on 11/08/21
      Tape No. 004 - Broadcast on YouTube 3spm channel on 11/08/21
      Tape No. 030 - Broadcast on YouTube 3spm channel on 03/26/22
      Tape No. 161 - Broadcast on YouTube 3spm channel on 04/08/22
      Tape No. 156 - Broadcast on YouTube 3spm channel on 04/12/22

Tape No. 054 - Broadcast on YouTube 3spm channel on 04/14/22
Tape No. 052 - Broadcast on YouTube 3spm channel on 04/17/22
Tape No. 050 - Broadcast on YouTube 3spm channel on 04/18/22
Tape No. 200 - Broadcast on YouTube 3spm channel on 04/19/22
Tape No. 201 - Broadcast on YouTube 3spm channel on 04/20/22
Tape No. 202 - Broadcast on YouTube 3spm channel on 04/21/22
Tape No. 203 - Broadcast on YouTube 3spm channel on 04/26/22
Tape No. 204 - Broadcast on YouTube 3spm channel on 04/27/22

**RESPONSE:  As I stated in my initial Answer in regards to this charge, all of these videos have been marked private AND ARE NOT VIEWABLE BY THE PUBLIC OR ANYONE since June of 2022. To state that Sawyers YouTube channel contains many videos that infringe on their alleged copyrighted material is FALSE AND UNTRUE.  Also, it is very important to note that Sawyer has never in the 10+ year history of his channel ever done 3 full livestreams in one day.  I deny unequivocally that we played 3 separate tapes on 11/08/2022.  Each tape is at least 60 minutes long, to have played 3 tapes back-to-back with no commentary from Sawyer would have taken at least 3 hours' time and Sawyer talks for at least an hour if not two before and after he played any tapes.  So that would constitute an almost 6-to-7-hour livestream.  On 11/08/2022 we were travelling and did not have 6 to 7 hours to just livestream. Upon this Courts request we can show the date of all livestreams that have been marked Private to prove the dates of them.  This is the 2nd time Mark King and Sarah King have stated this falsehood and it needs to be corrected.  I would also like the Court to note that upon being served with this lawsuit we immediately took steps to comply with not infringing on any of the Plaintiff's alleged copyrights even though we can prove their copyrights were gained fraudulently by outright lying on their copyright applications and we do not acknowledge any of their copyrights as being valid.  Out of respect for the judicial process we removed from the public's view any of their alleged copyrighted material and the Court will note that not once since these proceedings began have we played any of the tapes.**

Mr. Havel and Ms. Weaver have also used their YouTube channel to disseminate the URLs of the copyrighted recordings that have been impermissibly uploaded to Google drive and made available by Defendants.  [King Declaration, Exh. A, at ¶ 17]  For example, on May 13, 2022's live stream, Ms. Weaver states: "There's several tapes, there are over 900-plus tapes available, audios, which we've been playing on the channel and if you email us we can give you a link to the google drive and point out specific tapes…" [King Declaration, Exh. A, at ¶ 18]  As explained in the next section, Mr. Bartel has distributed en masse Plaintiff's copyrighted materials.

**RESPONSE:  I would like the Court to note that those statements were made BEFORE these proceedings were brought against us and have not been stated since.**

5

C.     **Defendants' Stated Intention to Keep Infringing.**

Defendants are actively engaged in a conspiracy to commit copyright infringement. [King Declaration, Exh. A, at ¶ 28]  A fact that they have explicitly stated on the website belonging to or being operated by Mr. Havel and Ms. Weaver where they trumpet the fact that they will not stop infringing even with court intervention:

> So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in mulitple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them.

[King Declaration, Exh. A, at ¶¶ 28-29; *see* Doc. 1-8 at 4]

Additionally, as set forth in the prior section, Mr. Bartel recently announced, "To hell with going dark," while simultaneously sharing Plaintiff's copyrighted materials.  [Exhibit 4 to Exhibit A]

**RESPONSE: I, Cathy Weaver should not be included in this paragraph because neither of those statements are by me and in fact were stated before I was in contact with either of the co-defendants.**

E.     **Defendants Have Possibly Spoliated Evidence and Have Stated that They Will Not Produce Electronically Stored Information.**

It is possible that Defendants have spoliated evidence.  For example, Mr. Havel's Answer states that he has "removed" certain online posts from his "YouTube channel and Facebook page and Blog" where he played Plaintiff's protected audiotapes.  [Doc. 20 at 26, 68 at, ¶ 20]

Mr. Havel's Status Report states that he "will not agree to produc[e] any Electronically Stored Information." [Doc. 49 at 6, ¶ 3(c))] Ms. Weaver affirmatively requested that the Court prohibit the inspection or her laptop or cellphone.  [Doc. 48 at 2-3, ¶ 3]  Mr. Bartel has

including cell phones and computers nor any notebooks or ledgers." [Doc. 59 at 6, ¶ 3]

**RESPONSE:** I Cathy Weaver nor Stephen Havel have spoiled any "evidence". Mark King and Sarah King wish for us to give up our personal laptops and cellphones is completely ridiculous. I, Cathy Weaver am a full time Uber driver. I literally cannot do my job without my cellphone, to ask for that to be taken away from me and impounded for any length of time is completely unreasonable as is the impoundment of my personal laptop which I use to deal with this frivolous lawsuit. As noted above none of the videos have been deleted from YouTube, they have been marked private because we wished to respect this Court and the process of law and wait for it to be proven that the Plaintiff's Mark King and Sarah King illegally obtained all of their copyrights by deceiving the Copyright office. Once that has been proven beyond a shadow of a doubt those videos will be made available to the public again. We have no desire to hide anything and have been honest throughout this entire process unlike the Plaintiffs who have resorted to personal attacks and disclosing of my personal address and financial hardships to cause me and my family malicious harm.

### F. The Court Has Already Ruled that Plaintiff Has a Reasonable Likelihood of Succeeding on Its Copyright Infringement Claims.

Plaintiff previously sought on an ex parte basis a temporary restraining order and preliminary injunction against Defendants. [Docs. 8-9] Although on May 27, 2022, the Court denied the Motion's because it was requested ex parte, the Court found that:

1.   Plaintiff is the owner of the following valid copyrights:

☐   A lithographic print titled "The C.B.E. (Celestial Being Entity)" [Doc. 1-6];

☐   A literary work titled "How and When 'Heaven's Gate' (The Door to the Physical Kingdom Level Above Human) May be Entered – an Anthology of Our Materials" [Doc. 1-7];

☐   Sound recordings titled "The Audiotape Library of Heaven's Gate by Ti and Do" [Doc. 1-1]; and

☐   A collection of audiovisual works titled "Beyond Human – The Last Call." [Doc. 1-2]

[Doc. 11 at 5]

2.   Defendants copied Plaintiff's copyrighted works as "evidenced by Defendants Havel and Weaver's live streams of the audio works [King Decl. DE 9-1 ¶ 7], their live stream of themselves reading aloud the literary work [DE 1 ¶ 49; DE 9-1 ¶ 2], their usage of the C.B.E. image on both thumbnails and on merchandise [King Decl., DE 9-1 ¶¶ 14, 17], and by

Defendant Bartel posting archives of the copyrighted audio and audiovisual works online (*Id.* ¶¶ 9–13).").” [Doc. 11 at 6]

3.    Plaintiff “has a reasonable likelihood of succeeding on its copyright infringement claims.”  [Doc. 11 at 6]

**RESPONSE: In checking PACER there are no documents 8-9, there is no document 11. I, Cathy Weaver was not mailed any of these cited documents from the Plaintiffs' attorneys and they are not listed on PACER.  How are we supposed to defend ourselves when documents that don't exist are cited?  I have no knowledge the Plaintiffs requested a temporary restraining order or a preliminary injunction before this present motion they have requested on 1/23/2023, and again, nothing was mailed to me.  How can it be that this Court would tell Plaintiff's that they are likely to succeed in this case and there be no record of it for myself and my co-defendants to see? (See Exhibit 4).  I can't imagine any impartial Court would tell either of the parties that they were likely to succeed in the case, would this not be grounds for this case to be dismissed?  How also could this Court tell Plaintiffs that their alleged copyrights are valid without examination of their supposed Assignments and Transfers from the Group that Mark King and Sarah King do not possess? There is no documentation stating that the Group intended to give Mark King and Sarah King possession of their intellectual property.  There is nothing signed by any member of the Group stating that they give their intellectual property to Mark King and Sarah King or the Telah Foundation.  We as the defendants have a right to go through the Discovery process to request these alleged Assignments and Transfers and also Work for Hire claims that the Plaintiffs have based their entire ownership of the material on.**

**G.    Defendants' Filings Further Substantiate Defendants' Unlawful Actions.**

Defendants' filings in this action confirm that Defendants have infringed on Plaintiff's intellectual property rights.

6.    Ms. Weaver stated “[she] began participating in [Mr. Havel's] live streams where [Ms. Weaver and Mr. Havel] played the audio tapes and we also decided to make merchandise in the form of t-shirts.” [Doc. 39-1 at 23]

7.    Ms. Weaver confirmed that she and Mr. Havel “repeatedly play[ed] audio tapes and s[old] t-shirts.” [Doc. 39-1 at 23]

8.     Ms. Weaver stated that she and Mr. Havel have played "15 audio tapes on the live stream and [Ms. Weaver and Mr. Havel] sold a total of 9 shirts at 32.50." [Doc. 39-1 at 23]

9.     Ms. Weaver stated that she and Mr. Havel "stopped selling the two shirt designs that contain what [Plaintiff] ha[s] finally proved via the exhibits [Plaintiff] presented with this lawsuit what [Plaintiff] ha[s] trademarked/copyrighted." [Doc. 39-1 at 23]

10.    Mr. Havel admitted selling shirts with Plaintiff's trademark.  [Doc. 20 at 28-29]

**RESPONSE:  I do not deny stating that we sold 9 shirts at 32.50 each for a total of $292.50 of which shipping and procurement costs need to be deducted that contain what Mark King and Sarah King state they have copyrighted.  I do state that they never provided us any evidence to support their alleged copyrights despite my repeated requests for proof of.  Once they finally did, in the form of filing this lawsuit in late May 2022 we ceased selling the shirts out of respect for the Court to find the truth of this matter.  I and my co-defendants upon examination of Mark King and Sarah Kings copyright applications realized that they had falsified information on the applications in order to illegally copyright the Groups intellectual property!  Mark King and Sarah King nor the Telah Foundation were ever employed by the Group and therefor cannot use a Work for Hire status to gain the alleged copyrights.  We realized that is why they have never shown these documents before despite dozens of requests by myself and my co-defendants over the past years.**

**H.     Defendants, Who Are Unfazed By Legal Action, Continue to Infringe.**

Defendants are committed to infringing Plaintiff's protected material, as evidenced by Defendants' statements below, many of which were made *after* this litigation began.

On November 3, 2021, Mr. Havel and Ms. Weaver stated:

Ms. Weaver: "Everyone is going to have the tapes, and they can take and duplicate them."

Mr. Havel: "How you going to stop people from doing that?"

. . .

Ms. Weaver: "…what's to say that the Next Level info won't go back under lock and key for another 24 years?  Well, it's not. . . because, I'm not going to let that happen.

Mr. Havel: "And a lot of people, actually who aren't going to let that happen."

[King Declaration, Exh. A, at ¶ 32]

In January 2022, Ms. Weaver stated:

"... [the files] are uploaded to a couple of different sites now actually, so, and it's great, keep them, I mean we shouldn't be saying that but... "Everybody destroy them, destroy them, wink, wink, don't really but say that you did..."

[King Declaration, Exh. A, at ¶ 33]

On March 28, 2022, Mr. Havel stated:

"And, uh, I don't intend to let this channel come down. And, even if it did I would start another one and then they would have to find me and, uh, you know, shut me down. This isn't the first attempt on this channel and it won't be the last."

[King Declaration, Exh. A, at ¶ 34]

On April 8, 2022, on their YouTube channel, Ms. Weaver stated:

"Go ahead and email us . . . email us if you don't know where the tapes are . . . please email us and we'll direct you to them."

On May 1, 2022, Mr. Havel stated:

"And, uh, and technically, um, they could hold me accountable for that, so I'm not going to say how many, I'm not gonna even try to guess, 'cus I don't remember. Uh, but, um, 'cus I can take the fifth that it would tend to incriminate me. So I'll do that, uh, even thought they could probably hear this tape and say, "oh you say that." So, I dunno. If that gets used against me, that's the way it goes. **They're still not going to get any money from me and it's not going to stop the material from circulating, because we're all, [Bartel] and myself, Cathy, and [a third party], and other people are circulating the tapes.**"

**RESPONSE:  This lawsuit was filed in late May 2022, all of the above cited statements were made BEFORE this lawsuit was filed despite Plaintiffs stating they were made after the filing of this lawsuit.  I do not deny making these statements and will refer the Court to previous responses in regards to Mark King and Sarah Kings illegally obtained copyrights as to why we say what we have said.**

On October 7, 2022, Mr. Havel and Ms. Weaver broadcast a "live stream" on YouTube, during which time Mr. Havel stated, "**maybe we'll lose, but that won't stop me and Kathy [Weaver] and [Mr. Bartel] from telling the truth.**"  (Emphasis added) [King Declaration, Exh. A, at ¶ 38; *see* Exhibit 6 to Exhibit A]  Later in that stream, the following statements were made:

Ms. Weaver: "Once it's done and whatever the outcome is, if its not favorable,

Mr. Havel: "Right, but we don't know what we're going to do exactly."

Ms. Weaver: "**We're gonna share the fucking information. I know I shouldn't say that**, but like you said–"

Mr. Havel: "Well, yeah, **we're going to share the information one way or the other –**"

Ms. Weaver: "**And they won't be able to touch us.**"

Mr. Havel: "You know, I'm not saying which information and how.  Maybe it's just out of our mouths from our memories because they don't use that against us –"

Ms. Weaver: "They're going to use everything against us.  That's why their shady, shady lawyers wanted us to call so they can trip us up but we already know that we don't have to do that so –"

Mr. Havel: "Right, we talked to the clerk today –"

Ms. Weaver: "-Nanny poo."

On November 3, 2022, Mr. Havel and Ms. Weaver broadcast a "live stream" on YouTube, during which time Ms. Weaver stated, "like they instigated this again right because we sold nine shirts and played less than 13 audios for free."  [King Declaration, Exh. A, at ¶ 43; *see* Exhibit 10 to Exhibit A]

**RESPONSE:  In none of these statements made by Mr. Havel and myself did we state that we intended to keep sharing Mark King and Sarah Kings alleged copyrighted material. In fact, Mr. Havel stated the opposite and that he would share the information that he personally acquired from being present in the classroom for 19 years.  There is ample information about the Group that Mark King and Sarah King did not steal and place under lock and key, such as Mr. Havel's memories of his classroom experience.  It is not copyright infringement to state that we would continue to speak about Ti and Do and the Next Level.  In regards to the 9 shirts that we sold for $32.50 each for a total of $292.50 Mark King and Sarah King have spent potentially thousands of dollars to bring this suit against us for less than $300.00 made by Mr. Havel and myself.  This is clearly a lawsuit strictly filed to hurt us and attempt to ruin our lives emotionally and financially as we deal with the horrible amount of stress this has placed upon us.  The audios are free, neither Mr. Havel, myself or Mark King and Sarah King have made any money playing or disseminating them.  Not one dollar.**

**So why this lawsuit if not to damage us irrevocably and carry out their personal vendetta against us for going against their wishes and not entering into the Legal Agreement they tried to coerce us into signing upon our meeting that I, Cathy Weaver instigated in November of 2021?  If we had signed that agreement, they were going to give us permission to play all of the audios wherever we wanted to as long as we acknowledged that they had ownership and that they were giving us said permission.  Also in the proposed Legal Agreement Mark King and Sarah King pledged that if we signed the Agreement they would upload all 1061 tapes of the**

\\

Audio Tape Library of Ti and Do on their Vimeo site by March 25th, 2022.  They were going to upload all of the audios themselves.  Please refer back to that proposed Legal Agreement that was submitted as an exhibit in my Answer to the Plaintiff's complaint.

I.     **Defendants Havel and Weaver Have Been Promoting a Website that Copied the Website Operated by Telah and Have Been Promoting It.**

Plaintiff owns and operates a website with the URL "https://www.heavensgate.-com/". [King Declaration, Exh. A, at ¶ 45; *see* Exhibit 13 to Exhibit A]  Mr. Havel and Ms. Weaver have been promoting a copycat website that has the URL "https://heavensgatealso.com/". [King Declaration, Exh. A, at ¶ 46; *see* Exhibit 14 to Exhibit A] https://heavensgatealso.com/ is nearly identical to https://www.heavens-gate.com/, with the exception being that requests for materials are directed to "rep@heavensgatealso.com" instead of "rep@heavensgate.com." [King Declaration, Exh. A, at ¶ 47, *compare* Exhibit 13 to Exhibit A at 3, *with* Exhibit 14 to Exhibit A at 3]

Mr. Havel and Ms. Weaver admitted during a YouTube live stream on December 25, 2022, that "[they] have a website that [they]'re promoting [that]'s called heavensgatealso.com, which is the same code." [King Declaration, Exh. A, at ¶ 48; Exhibit 15 to Exhibit A]  Mr. Havel also stated that he offered to assist in changing the html code on the heavensgatealso.com website so that it listed a different email address, and Ms. Weaver stated that there have been discussions so that emails sent to the rep@heavensgatealso.com email address would be delivered to Mr. Havel and Ms. Weaver.  [King Declaration, Exh. A, at ¶ 49; Exhibit 16 to Exhibit A]

**RESPONSE:  The website heavensgatealso.com was NOT copied from the site of heavensgate.com.  Another former member of the group Jhnody was gifted directly by Do in 1997 the code to the website heavensgatealso.com and instructed by Do to put the website up and maintain it.  I have absolutely NOTHING to do with that website nor did Mr. Havel and myself state that the website was owned or operated by us.  We do not "have" this website.  None of the emails from that website are directed to us.  We did have email communication with Jhnody and we did ask that any English-speaking peoples potentially be directed to our email as Jhnody's second language is English but nothing came of that.  I ask the Court, is it a crime to promote a website not run by Mark King and Sarah King?**

III.     **A PRELIMINARY INJUNCTION SHOULD BE ENTERED**.

A party seeking a preliminary injunction must first show "that: (1) absent preliminary injunctive relief, [the party] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [the party] has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015).

Once the moving party has made such a showing, the Court "considers: (4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')." *Id.* at 662. The Court's assessment of the fourth factor "is made on a sliding scale: 'The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).

**RESPONSE: I respectfully ask the Court what "irreparable harm" will be suffered by the Plaintiffs if a Preliminary Injunction is not granted them?**

A.     **The Court Has Already Ruled that Plaintiff Is Likely to Succeed on the Merits of Its Copyright Infringement Claims.**

The United States Copyright Act provides that "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501. To succeed on the merits of their copyright infringement claim, the Foundation must establish (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016).

In this case, Plaintiff is the lawful assignee of all right, title and interest in and to the copyrighted works, including the Audio Works, Video Work, Literary Work, and Visual Work.

13

[King Declaration, Exh. A, at ¶¶ 4, 8-9 (Registration Certificates attached to Complaint as Exhibits A, B, F, G.)

Plaintiff has submitted extensive documentation, including Defendants' avowals, that Defendants are illicitly promoting and distributing copies of Plaintiff's copyrighted material, which is a violation of Plaintiff's rights under the Copyright Act.

The Court has already "f[ound] that the certificates of registration are prima facie evidence of valid copyrights over the aforementioned material by the Foundation" and "that the Foundation has made out a prima facie case that each of the defendants has copied, without authorization, original elements of the copyrighted works." [Doc. 11 at 5]

**RESPONSE:  Again, it is cited that this Court has already ruled that Mark and Sarah Kings copyrights are valid and that they are likely to win this case and document 11 is cited as being proof of this ruling.  There is no such document 11 listed on the docket.  Why would this Court rule at any time except during a judgment on which party was going to win this case?  Does that not constitute an unfair proceeding?  How can the Court rule the Plaintiff's copyrights valid without examining all of the overwhelming evidence we co-defendants have supplied to show how Mark King and Sarah King using the Telah Foundation illegally obtained their copyright registrations? We have the right to be allowed to engage in the Discovery process to require the Plaintiffs to provide proof of the Assignments, Transfers and Work for Hire that Plaintiffs have stated on their copyright applications as being given by the Group.**

> **B.   Plaintiff Has and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief.**

Harm is irreparable when it cannot be prevented or rectified by a final judgment after trial. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.* 549 F.3d 1079, 1089 (7th Cir. 2008).  An award of monetary damages does not preclude a finding of irreparable harm if, among other things:

> (1) the plaintiff is so poor that he would be harmed in the interim by the loss of the monetary benefits; (2) the plaintiff would be unable to finance his lawsuit without the money he wishes to recover; (3) the damages would be unobtainable from the defendant because it will be insolvent prior to the final judgment; and (4) the nature of the plaintiff's loss may make damages very difficult to calculate.

*Hamlyn v. Rock Island Cnty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 162 (C.D. Ill. 1997).

A final judgment will not rectify Plaintiff's irreparable harms that are caused by Defendants' unlawful activities because monetary damages will not rectify Plaintiff's damages and Defendants' actions could lead to the loss of life, which is an irreparable harm.

**RESPONSE: I respectfully ask the Court to require the Plaintiff's to prove beyond a shadow of a doubt that I, Cathy Weaver by sharing the Groups information will lead to loss of life. I again state that no loss of life has been suffered due to any of my actions in regards to sharing the Groups material. I also would like to state again that Plaintiffs themselves have been sharing an enormous amount of the Groups information and continue to do so to this day and yet no loss of life has taken place. Why would my sharing of the material be any different then what Mark King and Sarah King have already shared and continue to share? Mark King and Sarah King have proven that they are wealthy enough to bring this frivolous lawsuit against us and spend thousands of dollars and yet we only made $292.50, and again that does not deduct shipping cost nor the cost of the shirts that we paid for out of pocket. Plaintiffs are not poor and for them to state that this lawsuit is causing them to be poor is stretching the truth to say the least. I, Cathy Weaver had to file for Bankruptcy due to my overwhelming debt and reduced income due to all of the hours spent on this lawsuit and not being able to work.**

1.     **Money Damages Are Inadequate.**

Money damages are inadequate because: (1) Plaintiff, which is a not-for-profit corporation, will not be able to continue existing as a business or prosecuting this case without injunctive relief; (2) damages are difficult to quantify; (3) the ancillary damages—such as the possibility of lost life—cannot be remedies by damages; and (4) Defendants will not be able to pay an award of damages.

**RESPONSE: How will injunctive relief provide the Plaintiffs with being able to keep the Telah Foundation going? How will injunctive relief provide Mark King and Sarah King with monetary funds to keep prosecuting this case? Damages are difficult to quantify because there are no monetary damages that have been incurred by the Plaintiffs. Ancillary damages such as lost life need to be proven beyond a shadow of a doubt and the Plaintiffs cannot due such because NO LOSS OF LIFE HAS OCCURRED and for the Plaintiffs to keep suggesting that such will happen is slanderous and false.**

### a) Plaintiff Will Not Be Able to Continue Absent Injunctive Relief.

Plaintiff is a not-for-profit corporation that will not be able to continue to or prosecute this lawsuit without injunctive relief. *See Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir. 1984) (holding that monetary relief is inadequate when "[t]he damage award may come too late to save the plaintiff's business" or "plaintiff may not be able to finance his lawsuit against the defendant"). As set forth in the Declaration attached as Exhibit 1:

1.     Plaintiff is a not-for-profit corporation. [King Declaration, Exh. A, at ¶¶ 8, 54]

2.     The revenue generated through Plaintiff's operations is de minimis. Plaintiff has been able to maintain its existence because its Plaintiff's directors have contributed funds so that Plaintiff can pay the de minimis expenses associated with Plaintiff's operations. [King Declaration, Exh. A, at ¶ 52]

3.     The legal expenses associated with Plaintiff pursuing its claims against Defendants are not considered typical operating expenses. Plaintiff's legal expenses have already greatly exceeded Plaintiff's business operations. The cost of filing this action ($402) has exceeded the amount of annual income that Plaintiff earned in 2021. The cost of serving Defendants, one of whom evaded service (Mr. Bartel), was significant. [*See* Doc. 31-1 at 2-7 (total of $1,955.45 in attempting to serve Mr. Bartel)] [King Declaration, Exh. A, at ¶ 53]

4.     The expenses that Plaintiff has incurred in connection with its important and necessary legal action of Defendants are not sustainable for Plaintiff, which is a not-for-profit and does not generate a stream of revenue. Moreover, because legal action is necessary to preserve and protect Plaintiff's rights, the failure to enter injunctive relief could have the ultimate effect of Plaintiff losing its intellectual property rights. [King Declaration, Exh. A, at ¶ 54]

Moreover, as set forth in greater detail in Section III(B)(1)(d), at the end of trial, Plaintiff will not be able to recover damages from Defendants, who have avowed to the Court that they are indigent.

**RESPONSE: I respectfully ask the Court again, how is a preliminary injunction going to provide money to the Plaintiffs Mark King and Sarah King?  Mark King and Sarah King are clearly wealthy enough to employ lawyers to pursue this frivolous lawsuit against myself whereas I have had to declare Bankruptcy because I can't even pay my day-to-day expenses.  I would like to state again that we sold literally 9 shirts at the cost of $32.50 each.  Shipping costs were around $8.75 for each shirt we mailed out.  The shirts themselves cost us around $12.00 each to make which leaves us with about $11.75 in actual profits for each shirt sold.  9 x $11.75 = $105.75.  I and my co-defendants are being sued for damages in the millions of dollars over $105.75 in profit.**

## b) Actual Damages Are Difficult to Quantify, Especially Because Defendants Have Thwarted Plaintiff's Ability to Control the Distribution of Its Copyrighted Works.

Upon prevailing in its copyright action against Defendants, Plaintiff has the choice of recovering either actual damages or statutory damages.  17 U.S.C. § 504; 17 U.S.C. § 504(c) (providing that the "copyright owner may elect" its remedy "at any time before final judgment is rendered").  A calculation of Plaintiff's actual damages will be difficult to calculate in this situation.

Plaintiff, cognizant of the powerful nature of the protected materials, has neither widely distributed the protected materials nor sold the protected materials for profit.  *See*, e.g., Defendant Bartel's Answer, Doc. 10, at 14, ¶ 31 ("Defendant admits to being grateful to Defendant Havel for providing the audio tapes produced by the Group that have been suppressed for over twenty years by the Plaintiff[].").  As such, it would be difficult to establish with reasonable certainty the amount of actual damages/lost profits that Plaintiff would have had if Plaintiff charged consumers for its protected materials.

Additionally, Defendants have distributed and made available Plaintiff's protected materials to various recipients, each of whom may have redistributed those materials.  Defendants' distribution of the protected materials has frustrated Plaintiff's rights to control the distribution of its protected materials, and Defendants' actions have also necessarily diluted the market value of the materials in an unknown amount by making the materials available to anyone with access to the internet.

The irreparable harm in this case is similar to that in *Fitzgerald v. Murray*, which held

that the plaintiff suffered irreparable harm because the plaintiff's "right to control the distribution of its copyrighted materials" was denied by the defendant, who made repeated attempts to widely disseminate [the] infringing book and ha[d] encouraged others to share the book." No. 121CV01822TWPTAB, 2021 WL 7502265, at *4 (S.D. Ind. Oct. 20, 2021), *reconsideration denied*, No. 121CV01822TWPTAB, 2021 WL 5754846 (S.D. Ind. Dec. 3, 2021). Defendants have opened Pandora's box by distributing Plaintiff's protected materials and encouraging others to redistribute those materials. [King Declaration, Exh. A, at ¶¶ 10-51]

**RESPONSE: The Plaintiffs state that actual damages are hard to quantify. The overwhelming proof is that the Plaintiffs have no actual damages. At the most they have "lost out" on a percentage of $105.75 in profit from us selling 9 shirts. The Plaintiffs are lying by stating that they don't charge consumers for their materials. They charge 45.00 for a hard copy of the Heaven's Gate book which upon emailing them and asking they instruct people to send them cash through the mail and they will then send a copy of the Heaven's Gate book. (See Exhibit 5). The Plaintiffs also have "widely distributed" via the Heaven's Gate website a free viewing and download of the Heavens Gate book on the website they have hosted for the last 26 years. (See Exhibit 5a). They have the entire book for free available for download on the website where anyone of the hundreds if not thousands of people who go to that website can download and then share the book to whomever they may want too. How are we being held liable for talking about the book and telling people they can go to the heavensgate.com website and accessing it there? This charge makes absolutely no sense!**

### c)      The Possibility of Loss of Life Is Irreparable.

A final monetary judgment is not able to rectify the loss of life, a result which could reoccur if Defendants continue to distribute the Heaven's Gate materials.

In *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, the court held that the plaintiff's desire to commit suicide because of the defendant's policy was a prospective harm cannot "be compensated by monetary damages" and that there was not "an adequate remedy for preventable 'life-long diminished well-being and life functioning.'" 858 F.3d 1034, 1046 (7th Cir. 2017).

Similar to the policy at issue in *Whitaker*, Defendants' ongoing unlawful actions in this case could result in the loss of life.[2] Following the mass suicide of 39 Heaven's Gate members, history repeated itself, and four others took their own life in a similar manner and/or because of the Heaven's Gate teachings. The protected materials that are at issue in this case are powerful and have already resulted it in the loss of life, and Defendants' unlawful distribution

18

of materials at issue could result in a serious loss of life, which is often not remedied by money damages.

**RESPONSE:**
**Plaintiffs repeated accusations that I, Cathy Weaver or co-defendants sharing the material could result in loss of life is unfounded. Plaintiffs Mark King and Sarah King have shared the exact same material for over 26 years and no loss of life has occurred. The four individuals that Plaintiffs have referred to were all at one time physically in the Group. Not one person has committed suicide that was not in the Group upon hearing of the Groups information. The Plaintiff's sharing of the material could also result in loss of life.**

### d) Money Damages Are Unobtainable from Defendants Who Have Avowed to Lack Assets.

An award of money damages does not remedy harm when damages are unobtainable.

The Seventh Circuit has explained that the unobtainability of damages depends "on two factors

[2] In *Whitaker*, an expert report addressed the plaintiff's suicidal ideations. Here, history confirms that the materials could lead to suicide, as evidenced by nearly all of Heaven's Gate members committing mass suicide based on the message of Heaven's Gate.

—the appellees' resources and the potential magnitude of eventual damages." *Signode Corp.*

*v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983).

**RESPONSE:  Plaintiffs Mark King and Sarah King acting as the Telah Foundation have been sharing the message of Heaven's Gate for the last 26 years as has already been proven.  They stated in the proposed Legal Agreement that they presented to us at the meeting I, Cathy Weaver set up that they would post all 1061 Audio Tapes by March 25th, 2022 if we signed the Legal Agreement.  Does this not constitute Plaintiffs also intending to share material that could result in mass suicide or singular suicide?  Yet within the last 23 years no one has committed such an act upon hearing the message of Heaven's Gate.  I challenge the Plaintiffs to present any evidence to the contrary.  As stated above the 4 individuals who did commit suicide did so because they had been in the Group and did not hear anything from myself or any of my co-defendants that convinced them to perform that final act.  All 4 of those individuals did so before 2000.**

Assuming for the sake of argument that Plaintiff will elect to recover its statutory damages, Plaintiff could establish at least 224 violations by Mr. Bartel, at least 486 violations by Mr. Havel, and at least 15 violations by Ms. Weaver.  The evidence presented herein confirms that Defendants' infringements have been committed willfully, and the Court could exercise its discretion to "increase the award of statutory damages to a sum of not more than $150,000" per violation.  17 U.S.C. § 504(c)(2).  The table below sets forth the amounts that can be awarded under 17 U.S.C. § 504:

| No. | Defendant | No. of Infringed Works | Min. Award under 504(c)(1) ($750) | Max Award under 504(c)(1) ($30,000) | Max Award under 504(c)(2) ($150,000) |
|---|---|---|---|---|---|
| 1. | Bartel | 224 [Doc. 35 at 12, ¶ 27] | $168,000 | $6,720,000 | $33,600,000 |
| 2. | Havel | 486 [Doc. 35 at 9, ¶ 16] | $364,500 | $14,580,000 | $72,900,000 |
| 3. | Weaver | 15 [Doc. 39-1 at 23] | $11,250 | $450,000 | $2,250,000 |

Plaintiff would not be able to recover the damages set forth on the table above, which are likely understated.  Indeed:

1.     Mr. Bartel has represented to the Court that he "has limited financial resources" and is unable "to afford [p]rocess [s]ervers."  [Doc. 61 at 2]  The cost to serve process is less expensive than the $750 in minimum award statutory damages per violation.  *See*, e.g., Doc. 31-1 at 2-7 (affidavits of non-service reflecting cost of each attempted service on Mr. Bartel, each of which were for less than $750).

2.     Mr. Havel has avowed under penalty of perjury that his "financial hardship" precludes him from "hir[ing] a Process Server" and that he is unable to "afford an attorney."

[Doc. 15 at 1]  Mr. Havel does not work and, with the exception of a $12,500 loan that Mr. Havel took out, has "about $10,000" as of June 14, 2022, and that is "all [Mr. Havel] ha[s]." [Doc. 15-1 at 31]  Ms. Weaver avowed that Mr. Havel gave the $12,500 loan to Ms. Weaver, who immediately spent "$8,000 of which." [Doc. 14-1 at 32]  It appears that whatever funds Mr. Havel had has been exhausted on Ms. Weaver and elsewhere.  On October 21, 2022, Mr. Havel avowed that he was "without savings and live[s] on a fixed social security income and ha[s] significant debt."  [Doc. 49 at 6, ¶ 3(a)(1)]  Mr. Havel receives "1,067.00" per month in social security income.  [Doc. 15-1 at 31, ¶ 3]  Mr. Havel's social security income cannot be garnished.  42 U.S.C. § 407.

3.     Ms. Weaver has avowed under penalty of perjury that her "financial hardship" precluded her from "hir[ing] a Process Server" and that she is unable to "afford an attorney." [Doc. 14 at 1]  Ms. Weaver stated that in June 2022 she had "about $4,000 in [her] bank account" because Mr. "Havel took out a loan that he put in [Ms. Weaver's] bank account." [Doc. 14-1 at 32]  Ms. Weaver earns approximately "$1,512 per month" before deductions. [Doc. 14-1 at 31]  Ms. Weaver petitioned for Chapter 7 Bankruptcy on October 27, 2022.  A copy of Ms. Weaver's Petition for Bankruptcy is attached hereto as Exhibit B.  Ms. Weaver, through her Petition, swore that her monthly net income was "$20.65."  [Exh. B at 40, ¶ 23(c)]

In fact Mark King and Sarah King emailed me links to 4 of these audio tapes, are they including those because I listened to them when they freely sent them to me? I would like to point out again that Plaintiffs in the proposed Legal Agreement stated that they themselves would post all 1061 audio tapes on Vimeo for free for anyone who wanted to hear them if we would only agree to all their terms and sign the agreement. Now they want to ask this Court to award them millions of dollars in damages for playing FREE audio tapes? The Plaintiffs asking for such an exorbitant amount of money proves that they entered this lawsuit against myself and my co-defendants for malicious vindictive reasons. They were upset that we would not state that Mark King was the owner of all the material and this is their payback. They have lied and resorted to abusing the Courts time and resources to pursue this frivolous lawsuit against myself and my co-defendants. They told us in person at the meeting that we would pay if we did not agree to their demands and do things their way. This is the result of us not bowing down to them.

2. **The Harm Cannot Be Fully Rectified After Trial Because Defendants' Ongoing Distributions of the Protected Materials Intend to Continue Distributing the Protected Materials.**

Defendants' misconduct at issue in this matter is irreparable and, as Defendants have admitted, has been intended to be irreparable. *See* Sections II(C), (G)-(H) (identifying Defendants' multiple representations that confirm that Defendants seek to reveal and disseminate Plaintiff's protected materials and have others circulate the materials).

Even if monetary damages could be recovered from Defendants, monetary damages will not cure Plaintiff being stripped of its ability to control the materials at issue. Defendants have distributed the materials to others whom Defendants have encouraged to re-distribute materials, rendering weaker Plaintiff's ability to re-gain control over the materials.

Plaintiff will not secure adequate relief absent the Court entering an Order that obligates Defendants to remove its publications/circulation of the materials, prohibits Defendants from further dissemination of the materials, and forces the return of the materials. Even then, however, Plaintiff will need to remain hawkish to (1) prevent others from redistributing the materials that Defendants have published to the world, and (2) enforce its rights against those third parties, and Defendants if they violate the Court Order, which Defendants have stated that they will not respect. *See* Sections II(C), (H).

RESPONSE: I, Cathy Weaver have not distributed any of the Plaintiffs alleged copyrighted works since this lawsuit began, neither has Stephen Havel, I cannot speak for Defendant Bartel as I do not have a relationship with him. Through the Discovery process we will prove the Plaintiffs Mark King and Sarah King acting as the Telah Foundation lied on each and every one of their copyright applications to fraudulently gain those copyrights and trademarks.

C.    **There Is No Adequate Remedy at Law.**

"Prior cases in this circuit indicate that the irreparable harm and no adequate remedy at law inquiries are intertwined." *Lineback v. Frye Elec., Inc.*, 539 F. Supp. 2d 1111, 1121 (S.D. Ind. 2008).

As explained above, in Sections II(C), (H) and III(B)(1)(d), there is no adequate remedy at law because Defendants will not be able to satisfy an award of monetary damages and Defendants will continue to engage in unlawful actions.

This situation is similar to *Fitzgerald v. Murray*, in which the court found irreparable harm and an inadequate remedy at law when there was a "likelihood that [defendant] w[ould] continue infringing [plaintiff]'s copyright and that it will not be able to obtain money damages." 121CV01822TWPTAB, 2021 WL 7502265, at *5 (S.D. Ind. Oct. 20, 2021). Defendants, as set forth in Section II(C) and Section II(H), have avowed to continue infringing Plaintiff's copyrights and have a goal of having Plaintiff's protected materials redistributed. Further, as set forth in Section III(B)(1)(d), Plaintiff will not be able to recover monetary damages from Defendants.

Moreover, Plaintiff will continue to suffer from Defendants' ongoing misconduct that will not be curtailed unless there is a Court Order. Defendants will continue to distribute Plaintiff's protected materials, which has resulted in irreparable harm because it has eliminated Plaintiff's ability to control the distribution of the materials and has the potential of further irreparable harm in the form of the loss of life, as has happened in the past. *See Whitaker By Whitaker*, 858 F.3d 1034, 1046 ("While the [defendant] focuses the majority of its arguments on why [plaintiff]'s harm is not irreparable, it also argues that any harm he has allegedly suffered can be remedied by monetary damages. We are not convinced. While monetary damages are used to compensate plaintiffs in tort actions, in those situations the damages relate to a past event, where the harm was inflicted on the plaintiff through negligence or something comparable. But this case is not the typical tort action, as [plaintiff] has alleged prospective harm."). Plaintiff's prospective harm cannot be remedied by monetary damages that will be unrecoverable.

**RESPONSE: I, Cathy Weaver have not distributed any of the Plaintiffs alleged copyrighted works since this lawsuit began, neither has Stephen Havel, I cannot speak for Defendant Bartel as I do not have a relationship with him. Through the Discovery process we will prove the Plaintiffs Mark King and Sarah King acting as the Telah Foundation lied on each and every one of their copyright applications to fraudulently gain those copyrights and trademarks.**

Injunctive relief is necessary because the future harms that will arise from Defendants' avowals to continue circulating Plaintiff's copyrighted materials cannot be compensated by damages.

### E.     There Is a Strong Public Interest in Granting the Injunction.

The balance of harms works on a sliding scale such that "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018). Because Plaintiff is likely to prevail on its Copyright Claims, as the Court previously found, the balance of harms only needs to weigh slightly in the Foundation's favor.

It is well established that "upholding copyright protections serves the public interest" and "that copyright and trademark law protects not only individual parties, but the public at large." *Fitzgerald v. Murray*, 121CV01822TWPTAB, 2021 WL 7502265, at *5 (S.D. Ind. Oct. 20, 2021) (quoting *Silvertop Assocs. Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 770 (D.N.J. 2018)). Article I, Section 8, Clause 8 of the Constitution evidences the deeply rooted public policy to protect copyrights and intellectual property rights.

There is no interest that cuts in favor of Defendants. The law has made it unlawful to infringe upon the rights of others, as Defendants have done and continue to do without any regard for the law, and the Constitution provides rights to protect the owner of a copyright. Defendants have no intention of stopping, no matter the consequence, and it is proper for the Court to bring order to the chaos that Defendants have caused.

**RESPONSE: I, Cathy Weaver have not distributed any of the Plaintiffs alleged copyrighted works since this lawsuit began, neither has Stephen Havel, I cannot speak for Defendant Bartel as I do not have a relationship with him. Through the Discovery process we will prove the Plaintiffs Mark King and Sarah King acting as the Telah Foundation lied on each and every one of their copyright applications to fraudulently gain those copyrights and trademarks.**

IV.  **FUTURE INJUNCTIVE RELIEF WILL BE SOUGHT AGAINST MS. WEAVER ONCE THE BANKRUPTCY STAY HAS BEEN LIFTED.**

This Motion seeks injunctive relief against Mr. Havel and Mr. Bartel only because Ms. Weaver petitioned for bankruptcy on October 27, 2022.  Despite Ms. Weaver's failure to file in this action a Notice of Bankruptcy, there is nevertheless an automatic stay with respect to Plaintiff's Claims against Ms. Weaver in this proceeding.  *See* 11 U.S.C. § 362.

Plaintiff will either (1) seek to lift the stay so that Plaintiff can proceed against Ms. Weaver in this action, or (2) Plaintiff will bring an adversary proceeding against Ms. Weaver, which will ask for injunctive relief.  The Bankruptcy Trustee told Plaintiff's counsel that the Trustee will not oppose a Motion to Lift the Stay.

**RESPONSE:  In over 3 hours of recorded video conferencing with two separate Bankruptcy attorneys neither of those attorneys advised me that I needed to inform this Court of my filing for Bankruptcy.  They both indicated that it was not necessary as the Bankruptcy filing would have no bearing on the Plaintiffs pursuing this case against me and enforcing their alleged copyrights.  They did advise me that the Stay would stop the Plaintiffs if a judgement was entered against me in regards to a monetary award.  I have a call out to both Bankruptcy attorneys to get further information as Plaintiffs have now alleged that I filed for Bankruptcy solely to throw a wrench in these legal proceedings and that is absolutely not true.  As I'm sure Your Honor is well aware, I am not an attorney and I had no idea on advice of my Bankruptcy consul that it would have any bearing on this case.  I have been honest about every single thing that I have stated and I will continue to do so until this matter is resolved. Due to the timing I have to mail this Brief immediately to make it on time for the February 6th deadline to respond so I cannot wait until the Bankruptcy attorneys get back to me.  I am aware of the motion the Plaintiffs have filed in response to my motion for my other address to be stricken from the record and tomorrow 2/2/2023 I will begin composing my response to their malicious accusations in regards to me trying to protect my personal belongings and my family that reside at that address.**

V.  **REQUEST FOR TRIAL ON THE MERITS IF THERE IS A HEARING.**

If the Court would benefit from having a hearing on this Motion, Plaintiff requests that the Court advance the trial on the merits, as authorized by Fed. R. Civ. P. 65(a)(2) and consolidate it with a hearing.  In this case, given the overwhelming evidence of Defendants' misconduct, lengthy discovery is not necessary.

**RESPONSE:  DISCOVERY IS NECESSARY TO REQUEST THE PLAINTIFFS SHOW THE ASSIGNMENTS, TRANSFERS AND WORK FOR HIRE THEY SAY THEY HAD FROM THE GROUP TO FRADUENTLY GAIN THEIR COPYRIGHTS AND TRADEMARKS.**

## VI.    CONCLUSION.

Plaintiff respectfully requests that the Court enter an Order that: (1) prohibits Mr. Havel and Mr. Bartel from infringing upon Plaintiff's copyrights, (2) requires Mr. Havel and Mr. Bartel to deliver copyrighted materials to Plaintiff's counsel, and (3) requires Mr. Havel and Mr. Bartel and/or various online platforms to take down certain accounts and webpages that contain Plaintiff's copyrighted materials. Because the removal of such materials could result in the spoliation of evidence, Plaintiff requests the Court Order Defendants to back-up onto an external drive their computers, smartphones, and online accounts on which Defendants have uploaded materials, and to lodge those materials with the Court, under seal.

A proposed form of Order is being submitted herewith.

**RESPONSE:  I, Cathy Weaver have not been included in the request for an order of a preliminary injunction so I will not respond to this conclusion until such time as is appropriate.**

Cathy Weaver  2/2/2023

Cathy Weaver
5776 Grape Rd.
Suite 51
PMB# 121
Mishawaka, IN. 46545
Sawcat575@gmail.com
Defendant