UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC.,

    Plaintiff,

v.

STEVEN ROBERT HAVEL, et al.,

    Defendants.

CASE NO. 3:22-CV-395-MGG

## MOTION TO ADD AN EXHIBIT OF A 1998/1999 FEDERAL COURT CASE INVOLVING MARK AND SARAH KING AND PLANTIFF"S FOUNDATION TO DEFENDANT JASON BARTEL"S DEFENSE

Defendant Jason Bartel hereby moves the Court for an Order granting Defendant's request to add Exhibit 18, a Federal Court case from 1998/1999 involving Mark and Sarah King and Plaintiff's Foundation, to Defendant's defense in the case before this Court. Defendant understands that Defendant Bartel has multiple pending motions before the Court and that Plaintiffs have filed a Motion for a Preliminary Injunction, however, the contents of the Federal Court case in Exhibit 18 were recently discovered by Defendant and the Federal Case in Exhibit 18 directly impacts the legal and factual matters of the case before this Court. Moreover, the contents of Exhibit 18 add evidence to Defendant's Motion to Cancel All of The Evolutionary Level Above Human, Inc.'s, D/B/A The TELAH Foundation's, Registered Copyrights and Trademark Registrations. Moreover, many of the documents submitted for the case in Exhibit 18 will authenticate documents Defendant Bartel has submitted as Exhibits with Defendant's

1

answer to Mark and Sarah King's complaint in the case before this Court. Notably pages 51 to 59 in Exhibit 18 are many of the same documents that Defendant Bartel submitted as Exhibit 2.

The Federal case in Exhibit 18 is the same case mentioned in paragraph 11 of Plaintiff's complaint which Mark and Sarah King did not submit into this Court as evidence. On page 4 of Exhibit 18, point 16, Mark and Sarah King claim,

'When Do and members of The Class "exited" earth, they left behind specific instructions to other individuals associated with the Heaven's Gate religious organization. Plaintiffs MARK and SARAH KING were given authority to control and manage the organization's real, personal and Intellectual property. This included transfer of all copyrights and trademarks held or asserted by the organization, all rights to the organization's websites'

Defendant would like to draw the Court's attention to the similarity between the above claim by Mark and Sarah King in Exhibit 18 and paragraph 8 of Plaintiffs complaint in the case before this Court,

'in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County'.

In paragraph 10 of Plaintiff's complaint Mark and Sarah King claim that the litigation with San Diego County ( Exhibits 11 and 12 ) ended with a 'consent decree' when in fact said litigation ended with a Settlement Agreement to sell and convey trust property to Plaintiffs. In paragraph 11 of Mark and Sarah King's complaint Plaintiffs claimed the,

'consent decree which likewise confirmed the Foundation's ownership of, inter alia, the

intellectual property of the Group'.

As the consent decree ( Exhibit 18, pages, 116-119 ) was awarded to Mark and Sarah King in July of 1999 and the Settlement Agreement ( Exhibit 18 ) was finalized in August of 1999 the 'consent decree' in Exhibit 18 could not have 'confirmed' anything from the Settlement Agreement. Moreover, as the Probate dispute was ongoing in a California Superior Court and the Federal case was involving copyright and trademark infringement of the Group's intellectual property that was part of the same Probate dispute ( Exhibits 11 and 12 ), the U.S. District Court for the Northern District of California did not have the authority to Order the following in the July of 1999 consent decree ( Exhibit 18, page 118 ),

'TELAH will have exclusive rights and responsibility for ownership and management of of the intellectual property of The Class/Heaven's Gate group ( including the numerous other names used by the group, including copyrights and trademarks to books, videotapes, audiotapes, CD's, websites, letters, other documents, names and symbols'.

As per Plaintiffs Probate case with San Diego County ( Exhibits 11 and 12 ) the estates of the deceased Group members owned the Group's Property in common and by Judge Guy-Schall's Ruling of Decision ( Exhibit 12 ) all of that Property was to be Administered by San Diego County.

As the case in Exhibit 18 was filed in March of 1998 that Federal case was being litigated at the same time as the Probate dispute between Mark and Sarah King and San Diego County. ( Exhibits 11 and 12 ). Clearly the U.S. District Court for the Northern District of California was not aware of the concurrent litigation in a California Superior Court between Plaintiffs and San Diego County concerning a Probate dispute involving the Group's Property. As the Probate dispute

was in a California Superior Court and was not settled until August of 1999, the July of 1999 consent decree cited by Mark and Sarah King in paragraph 11 of Plaintiff's complaint is subject to termination. Defendant will file a Motion to Terminate said consent decree dependant on the Court's ruling on pending motions by Defendant Bartel.

The case in exhibit 18 establishes a pattern of Plaintiff's abuse of the Federal Court System by making fraudulent claims concerning the Group's Property. It also establishes a pattern in which Mark and Sarah King use Plaintiff's Foundation and the Foundation's legal resources and the limited liability that the Foundation offers to intimidate and cause harm to those individuals that Plaintiffs feel have defied Mark and Sarah King.

Defendant strongly believes that the Federal case in Exhibit 18 adds evidentiary support to Defendant's Motion to Name Mark and Sarah King as Plaintiffs as it is quite clear that the vast majority of the Foundation's activities for the past twenty-five years plus have been the result of actions taken by Mark and Sarah King. Defendant strongly believes that this is a case in which the Corporate Veil must be pierced and Mark and Sarah King must be held wholly accountable for all of the actions that Plaintiffs have taken in the name of Mark and Sarah King's Foundation.

As Plaintiffs used the Foundation's 1997 copyright registrations as evidentiary support to fraudulently obtain the consent decree in Exhibit 18 it is yet another example of how Mark and Sarah King tried to assert a copyright registration that Plaintiffs knew had no legal validity. Despite being denied all rights to any and all of the Group's intellectual property in February of 1999 ( Exhibit 11 ), Mark and Sarah King continued to fraudulently assert those same intellectual property rights in the Federal case in Exhibit 18. Now

over a quarter century later Mark and Sarah King have again tried to assert the same intellectual property rights that Plaintiffs were denied in February of 1999 ( Exhibit 11 ). Pages 13 to 26 of Exhibit 18 contain Plaintiff's application for copyright registrations for the 'works' that Mark and Sarah King alleged Plaintiff's have owned since 1997. The applications state that the 'works' were done as 'works for hire' and in space 4 of each application it is stated that 'the claimant(s) obtained ownership of the copyright' via 'pursuant to assignments' according to Mark and Sarah King and Plaintiff's Attorney at the time, Jerome E. Weinstein. As the intellectual property that Plaintiffs registered copyrights for in 1997 was denied to be owned by Mark and Sarah King in February of 1999 by Judge Lisa Guy-Schall's Ruling of Decision ( Exhibit 11 ), none of the intellectual property registered by Plaintiffs in the name of the Foundation was ever legally 'assigned' to Mark and Sarah King and therefore the Foundation's 1997 copyright registrations are subject to cancellation as per Defendant's Motion to Cancel All of The Evolutionary Level Above Human's, D/B/A The Telah Foundation's Registered Copyrights and Trademark Registrations. Moreover, Plaintiffs have provided no proof in over twenty-five years that any of the intellectual property that the Foundation registered copyrights for in 1997 was done as a 'work for hire' and therefore Plaintiffs knowingly and willingly committed fraud on the Foundation's copyright application further subjecting the Foundation's 1997 registered copyrights to cancellation.

Jason Bartel
N4019 Forest Dr.
Hancock, WI 54943
jason_bartel@unioncab.com

*Jason Bartel*
2/7/23