UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation, an Arizona nonprofit corporation,<br><br>     Plaintiff,<br> v.<br><br>Steven Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>     Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AGAINST JASON BARTEL / RESPONSE TO JASON BARTEL'S MOTION TO BLOCK REQUEST FOR A PRELIMINARY INJUNCTION [DOC. 72]**

The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation (the "Foundation" or "Plaintiff") requests that its Motion for Preliminary Injunction (the "Motion") (collectively, Docs. 66, 67, 67-1) be granted against Jason Bartel, who does not dispute that Mr. Bartel has infringed, that an Order is necessary to stop Mr. Bartel's infringement, and that Plaintiff is entitled to the requested relief.

Mr. Bartel's Response to the Motion (Doc. 72), which is titled "Motion to Block Plaintiff's Request for a Preliminary Injunction," ("Bartel's Response") does not dispute the conduct that has been alleged, proven, and admitted by Mr. Bartel. Instead, Mr. Bartel alleges that his actions are permissible because he disputes the validity of Plaintiff's ownership of Plaintiff's intellectual property. Mr. Bartel is wrong. Indeed, the very documents Mr. Bartel has repeatedly "moved" to have added to this case confirm that Plaintiff is the owner of all of Heaven's Gate's intellectual property.

Plaintiff requests that the Court grant the Motion and enjoin Mr. Bartel from engaging in his ongoing misconduct.

**I.     PLAINTIFF'S OWNERSHIP OF THE INTELLECTUAL PROPERTY.**

The sole argument raised by Mr. Bartel as to why he should not be enjoined is his unwavering belief that Plaintiff does not really own the intellectual property which Plaintiff has had registered for, in some cases, over 25 years.  As explained below, Mr. Bartel's arguments are unsupported by the law or even the documents Mr. Bartel has "moved" for entry into this case.

**A.     Mr. Bartel's Argument is Based on a Misreading of Court Decisions.**

Mr. Bartel's Response argues that Plaintiff does not own the intellectual property of Heaven's Gate because of a Ruling entered by a California Superior Court in February 1999. [Doc. 72 at 4]  Mr. Bartel is wrong.

On March 26, 1997, 39 members of Heaven's Gate passed away (the "Decedents"). Before passing, the Decedents sent to Mark and Sarah King, the Directors of the Foundation, powers of attorney, codes to storage units, maps, and the intellectual property of Heaven's Gate. [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 6-7; Exh. 1 to Exh. A at 2:5-10]  The Decedents conveyed to the Kings the intellectual property, including the master copies of every work that had been created for Heaven's Gate. [Exh. A at ¶ 7]  Don Billings, a Public Administrator in the County of San Diego and Special Administrator of the Decedents' estates, was appointed to administer the "Summary Probate Proceedings provided for in Probate Code § 7660 et seq." which were instituted for the Decedents, and which were later consolidated into a single proceeding.  [Exh. 1 to Exh. A at 1:27-28, 2:19-20, 3:8-10]

The Foundation filed a creditor's claim in connection with the consolidated and jointly administered probate proceedings for the Decedents, and a three-day trial ensued over the ownership of certain property, including the intellectual property being asserted in this case. [Exh. 1 to Exh. A at 1:16-18, 4:14-15]  In February 1999, the California Superior Court, which handled the probate proceedings, held that the intellectual property was not properly gifted by the Decedents, even though there were powers of attorneys provided and a clear written statement to convey the property.  [Exh. 1 to Exh. A at 2:5-10, 6:7-10]  In that same order, the

{07089008 / 3}                                                      2

Superior Court held that "the estates own **all** intellectual property Interests together with the tangible assets from which those interests are derived," and that "the estates own **all** intellectual property as tenants in common." [Exh. 1 to Exh. A at 6:7-10, 7:19-21 (emphasis added)] The Court held that Don Billings, the Public Administrator for the County of San Diego and Personal Representative for the Combined Estates, received "**[a]ll** right, title, and possession of **all** Intellectual property" that was "vested in the Estates of" the decedents." [Exh. 1 to Exh. A at 10:6 (emphasis added)]

This Order by the California Superior Court was wrong, and the Foundation appealed. [Exh. A at ¶¶ 10-11; Exh. 2 to Exh. A at 4:21-23] Rather than defend the Court's Order on appeal, Mr. Billings, as Public Administrator for the County of San Diego and Personal Representative for the Combined Estates of the Decedents, chose to enter into an agreement with Plaintiff. [Exh. A at ¶ 12] That agreement was binding on "the successors, heirs, administrators, assigns of each of the parties and beneficiaries of their respective estates." [Exh. A at ¶ 15, Exh. 2 to Exh. A at 5:10-12, 11:7-8] The agreement conveyed to Plaintiff **"any intellectual property rights**, in exchange for [the Foundation]'s promise to release and waive all rights of appeal." [Exh. 2 to Exh. A at 5:13-21 (emphasis added), 11:7-8, 11:19-20]

In August 1999, the California Superior Court approved of the agreement between Mr. Billings, on behalf of Decedents, and the Foundation, and the Superior Court entered a consent decree that, among other things, made clear that Plaintiff is the owner of any intellectual property. [Exh. 2 to Exh. A; *id.* at 11:7-8]

Mr. Bartel alleges that Plaintiff does not own the rights to certain materials, but the August 1999 Agreement specifically confirms that Plaintiff is the owner of ***all*** of Heaven's Gate's intellectual property. Mr. Billings, as Public Administrator and Representative of the Estates of the Decedents, transferred all rights the estates had in any intellectual property to the Foundation. *See generally* Exh. 2 to Exh. A; *id.* at 11:7-8 ("Any other Intellectual Property"). This is true for, *inter alia*:

- The Audiotape Library of Heaven's Gate by Ti and Do.  [Exh. 2 to Exh. A at 7:3-4, 7:6-7, 7:10-13, 10:18; *see also id.* at 11:7-8 ("Any other Intellectual Property")]

- "How and When Heaven's Gate (the Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials."  [Exh. 2 to Exh. A at 10:5-6; *id.* at 11:7-8 ("Any other Intellectual Property")]

- "Last Chance to Evacuate Earth Before It's Recycled."  [Exh. 2 to Exh. A at 6:20-26, 7:8-9; *id.* at 11:7-8 ("Any other Intellectual Property")]

- "Plant [sic] About to Be Recycled – Your Only Chance to Survive – Leave With Us."  [Exh. 2 to Exh. A at 6:16-18, 7:1-3, 7:7-8; *see also id.* at 11:7-8 ("Any other Intellectual Property")]

- "Do's Final Exit – Students of Heaven's Gate Expressing Their Thought Before Exit."  [Exh. 2 to Exh. A at 10:16 ("Earth Exit Statement"); *see id.* at 11:7-8 ("Any other Intellectual Property")]

- "Beyond Human – The Last Call."  [Exh. 2 to Exh. A at 6:17-19, 6:22-23, 7:3-4, 7:6-10, 7:9-10 ("Master Tapes Beyond Human Series"); *see also id.* at 11:7-8 ("Any other Intellectual Property")]

- The C.B.E. (Celestial Being Entity)."  [Exh. 2 to Exh. A at 9:5-6; *id.* at 11:7-8 ("Any other Intellectual Property")]

- The tradename "Heaven's Gate."  [Exh. 2 to Exh. A at 11:7-8 ("Any other Intellectual Property")]

That is, ***all*** of the intellectual property that related to the group was transferred to the Telah Foundation over two decades ago.

### B. The California Superior Court's Determination of Ownership of the Intellectual Property Cannot be Relitigated.

Claim preclusion, also called res judicata, bars the relitigation of claims that were brought or could have been brought in another suit that has reached final judgment.  *Valbruna*

*Slater Steel Corp. v. Joslyn Mfg. Co.*, 934 F.3d 553, 560 (7th Cir. 2019); *McGuire v. Marthakis*, No. 3:18-CV-760-MGG, 2022 WL 2390690, at *6 (N.D. Ind. July 1, 2022). To determine the preclusive effect of a state-court judgment, a federal court must look to the law of the state where the judgment was entered. *Id*. Claim preclusion applies to final orders in proceedings under the Probate Code. *Estate of Redfield,* 193 Cal.App.4th 1526, 1531, 1534 (Cal. Ct. Appl. 2nd Dist., Div. 3, April 5, 2011) (applying claim preclusion to resolve issues barred by probate court's dismissal of prior section 850 petitions with prejudice); *In re Conservatorship of Harvey* 3 Cal.3d 646, 651-652 (1970) (res judicata applied to bar later challenge to final Probate Code order authorizing conservator to employ attorney and pay travel expenses to locate possible heirs). This is enshrined in California Civil Procedure Code, which states:

> (a) The effect of a judgment or final order in an action or special proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows:
>
> > (1) In case of a judgment or order against a specific thing, or in respect to the probate of a will, or **the administration of the estate of a decedent**, or in respect to the personal, political, or legal condition or relation of a particular person, **the judgment or order is conclusive upon the title to the thing, the will, or administration, or the condition or relation of the person**.
> >
> > (2) In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

Cal. Civ. Proc. Code § 1908 (West) (emphasis added). "Although the probate court's jurisdiction under section 850 is not exclusive, a final judgment from the probate court is conclusive against '"the whole world" and not just the parties to the litigation." *Est. of Redfield*, 193 Cal. App. 4th at 1534 (citing *Heiser v. Superior Court,* 88 Cal.App.3d 276, 278, 151 Cal.Rptr. 745 (1979)).

The proceeding identified by Mr. Bartel, on which he bases his claims that the Foundation does not own the group's intellectual property, was a "Summary Probate

Proceedings provided for in Probate Code § 7660 et seq." [Exh. 1 to Exh. A at 3:8-10] As such, under California law, any final judgment in the matter is conclusive against "the whole world." *Est. of Redfield*, 193 Cal. App. 4th at 1534. The Court's order providing that the Foundation is the owner of all of the intellectual property belonging to the group/Decedents, has been final for over two decades and must be given preclusive effect.[1]

## II.  OTHER ISSUES RAISED BY MR. BARTEL.

Mr. Bartel also argues that the February 1999 Decision somehow invalidated all copyrights and trademarks that were registered before the August 1999 Settlement Agreement was entered and approved. [Doc. 72 at 4] That is not correct.

### 1. The February 1999 Decision Did Not Cancel Any Copyrights or Trademarks, and the California Superior Court Could Not Have Cancelled the Copyrights.

Contrary to Mr. Bartel's statement, the February 1999 Statement of Decision does not state that any copyright registrations or trademarks were invalidated. [Doc. 61-1 at 2-11; Exh. 1 to Exh. A] The February 1999 Statement of Decision was appealed and was pending appeal and subject to reversal when the parties entered into the settlement agreement that resolved the dispute.

Setting that factual issue aside, even if the February 1999 Statement of Decision attempted to invalidate a copyright, the court simply does not have the power to do so. Courts do not have authority to invalidate copyrights. *See Brownstein v. Lindsay*, 742 F.3d 55, 75 (3d Cir. 2014) ("Courts have no authority to cancel copyright registrations because that authority resides exclusively with the Copyright Office."). Thus, even if there was a temporary gap of

---

[1]  Mr. Bartel has also informed the Court that in the late 1990's, Plaintiff also litigated in the Federal District Court in the Northern District of California against others who infringed on Plaintiff's property. [Doc. 79-1 at 2-12] That case ended in 1999, and the Federal Judge signed a Consent Decree that confirmed that Telah "ha[s] exclusive rights . . . for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's, websites, letters, other documents, names and symbols." [Doc. 79-1 at 119:6-9, 120:13-19 (emphasis added); *see also* Exh. 3 to Exh. A at 3:6-9, 4:13-19]

ownership during the pendency of the appeal, which Plaintiff disputes, as Mr. Bartel alleges, the copyright registrations were not canceled and could not be cancelled, absent action of the United States Copyright Office.  Defendants have not submitted any law or case law to the contrary.

Furthermore, Mr. Bartel's allegation that the registrations may be invalid because they have an allegedly inaccurate registration date, is likewise unsupported by law.  The Supreme Court has held "that a certificate of registration is valid even though it contains inaccurate information, as long as the copyright holder lacked 'knowledge that it was inaccurate.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 945 (2022) (quoting 17 U.S.C. § 411(b)(1)(A)).  "Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration."  *Id.*  Plaintiff maintains that its copyright registrations, which were prepared by counsel, were accurate when submitted and remain accurate.  [Exh. A at ¶ 18] Indeed, Plaintiff, has firmly believed since March 1997 that it is the sole owner of *all* intellectual property, this is supported by the litigation before the California Superior Court in the probate action as well as by the Federal District Court in the Northern District of California consent decree from 1999.  [Doc. 79-1 at 119:6-9, 120:13-19; Exh. A at ¶ 19] Both cases ended in rulings confirming Plaintiff's ownership of the intellectual property and Plaintiff's registrations.  Accordingly, any potential inaccuracies in the registrations would be at odds with 20 years of litigation history, would be news to Plaintiff, and would not invalidate any of the registrations.

### III. THE COURT SHOULD ENTER THE PRELIMINARY INJUNCTION AGAINST MR. BARTEL.

#### A. Mr. Bartel Does Not Argue Against the Court Entering Injunctive Relief.

Mr. Bartel does not meaningfully address the factors that entitle Plaintiff to injunctive relief.  [Doc. 72 at 2-3]  While Mr. Bartel alleges that people will not commit suicide if he continues to infringe, Mr. Bartel noticeably avoids addressing how four others who committed

suicide, or any other of the other factors that support granting injunctive relief and the multiple other irreparable harms that will occur if the Court does not enter the requested relief.

Mr. Bartel does not dispute that there is irreparable harm to Plaintiff, the absence of an adequate remedy at law, Plaintiff's likelihood of success in asserting claims involving the intellectual property of which Mr. Bartel's documents confirm Plaintiff is the owner. Mr. Bartel does not even attempt to argue, nor could he, that there would be a substantial hardship if the Court ordered him to not engage in the unlawful behavior, which should not be committed by him.

**B.  Mr. Bartel's Response Confirms His Infringement.**

Mr. Bartel's Motion does not dispute his prior infringement. In fact, Mr. Bartel's Response confirms his infringements:

1) "Defendant Jason Bartel had audio tapes produced by the Group on Defendant's 4shared account from 2009 until 2021 when Plaintiffs had the site shut down based on fraudulent DMCA takedown notices . . . ." [Doc. 72 at 3]

2) "Defendant Jason Bartel . . . has had a blog distributing the Group's writings and other information since 2018." [Doc. 72 at 3]

3) "Plaintiff's [sic] expect the Court to believe that if Defendant Jason Bartel is allowed to put some more of the Group's intellectual property on free-file sharing sites as Defendant has done for at least 14 years that that action will somehow lead to 'the events of 1997 to reoccur'." [Doc. 72 at 4]

**C.  The Proposed Order Is Not Challenged.**

Mr. Bartel has not challenged the proposed Order that Plaintiff submitted to the Court. Mr. Bartel's failure to challenge the Order confirms that he does not take issue with the Court granting the relief that Plaintiff has requested, if the Court finds that Plaintiff is entitled to injunctive relief.

## IV. CONCLUSION.

Plaintiff respectfully requests that the Court enter an Order that: (1) prohibits Mr. Bartel from infringing upon Plaintiff's copyrights, (2) requires Mr. Bartel to deliver copyrighted materials to Plaintiff's counsel, and (3) requires Mr. Bartel and/or various online platforms to take down certain accounts and webpages that contain Plaintiff's copyrighted materials.

RESPECTFULLY SUBMITTED this 13th day of February 2023.

/s/ Isaac S. Crum
MESSNER REEVES LLP
Isaac S. Crum (AZ Bar #026510)
(*Pro Hac Vice*)
icrum@messner.com
Daniel L. Marks (AZ Bar #034141)
(*Pro Hac Vice*)
dmarks@messner.com
7250 N. 16th Street, Suite 410
Phoenix, Arizona 85020
Telephone: (602) 641-6705
Facsimile: (303) 623-0552

## CERTIFICATE OF SERVICE

  I hereby certify that on the 13th day of February 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing was also sent via U.S. mail and email.

| | |
|---|---|
| Cathy Weaver<br>5776 Grape Road, Ste 51<br>PMB #121<br>Mishawaka, IN 46545<br>sawcat575@gmail.com | Jason Bartel<br>N4019 Forest Drive<br>Hancock, WI 54943<br>jason_bartel@unioncab.com |
| Steven Robert Havel<br>5776 Grape Road, Ste 51<br>PMB #121<br>Mishawaka, IN 46545<br>sawcat575@gmail.com | |

                    */s/ Mary Willson*