# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation, an Arizona nonprofit corporation,<br><br>                Plaintiff,<br>   v.<br><br>Steven Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>                Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AGAINST STEVEN HAVEL

The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation (the "Foundation" or "Plaintiff") requests that its Motion for Preliminary Injunction (the "Motion") (collectively, Docs. 66, 67, 67-1) be granted against Steven Havel, who does not dispute engaging in the misconduct that has formed the basis of the lawsuit or provide a coherent basis for why the Court should not award the relief that is requested by Plaintiff.

Mr. Havel's *Revised Brief in Response to Plaintiff's Brief in Support of Motion for a Preliminary Injunction* (Doc. 87, hereafter, the "Response) does not dispute the conduct that has been alleged, proven, and admitted by Mr. Havel. Instead, Mr. Havel alleges that his actions are permissible because Mr. Havel purportedly received copies of Heaven's Gate's audio tapes from someone else, who took the tapes out of a storage locker before San Diego County seized the physical contents of the storage locker. Mr. Havel's position is misplaced. The evidence that has been presented to this Court confirms Plaintiff's ownership of the intellectual property of Heaven's Gate and that Plaintiff received ***all*** intellectual property rights created by the Decedent Members of Heaven's Gate.

{07135795 / 3}

1

Plaintiff requests that the Court grant the Motion and enjoin Mr. Havel from engaging in his ongoing misconduct.

I.     **RESPONSE TO MR. HAVEL'S ARGUMENTS.**

Plaintiff addresses Mr. Havel's arguments, which are not clearly articulated, as Plaintiff understands them.

    A.     **Plaintiff Is the Owner of ALL of Heaven's Gate's Intellectual Property, Including Whatever Materials "Rkkody" Allegedly Took From a Storage Facility.**

Mr. Havel alleges that he received from "Rkkody" audio tapes of Heaven's Gate, which consisted of "th[e] same Intellectual Property" that "w[as] also gifted" to "Mark and Sarah King," who are the directors of Plaintiff. [Doc. 87 at 6, ¶ G] Mr. Havel alleges that these 486 audio tapes were taken out of a storage locker in San Diego County by "Rkkody and Oscody," who returned the originals to Mr. King and Mrs. King. [Doc. 87 at 7] Mr. Havel does not dispute that Plaintiff has a registered copyright over those 486 tapes but argues that he received from Rkkody the 486 tapes "before any Consent Decrees." [Doc.87 at 7-8] Mr. Havel argues that the intellectual property was not part of the 1999 Consent Decree because Rkkody took and gifted copies to Mr. Havel in 1997 and 1998. [Doc. 87 at 5, ¶ (B)] Mr. Havel is wrong.

Mr. Havel has quotes at length from the February 1999 California Superior Court Decision, which rebuts Mr. Havel's position. Mr. Havel's Response states "Transfer of the physical object does not transfer the copyright and vice versa." [Doc. 87 at 8, ¶ 3 (citing February 1999 Decision)] As such, "Rkkody" and "Oscody's" alleged removal of physical audio tapes from a storage room does not result in "Rkkody and Oscody" obtaining ownership of those taken audio tapes.

Mr. Havel has taken the position that the "estates [of the Heaven's Gate Decedents] own all Intellectual property as tenants In common." [Doc. 87 at 8, ¶ 4] As explained in Doc. 81 at 2-4, Don Billings, as Public Administrator for the County of San Diego and Personal Representative for the Combined Estates of the Decedents, chose to enter into an agreement with Plaintiff that was binding on "the successors, heirs, administrators, assigns of each of the

parties and beneficiaries of their respective estates." [Doc. 81-1 at 4, ¶ 15; Doc. 81-1 at 21:10-12, 28:7-8]  The agreement conveyed to Plaintiff **"any intellectual property rights**, in exchange for [the Foundation]'s promise to release and waive all rights of appeal." [Doc. 81-1 at 22:13-21 (emphasis added), 28:7-8, 28:19-20]  In August 1999, the California Superior Court approved of the agreement between Mr. Billings, on behalf of Decedents, and the Foundation, and the Superior Court entered a consent decree that, among other things, made clear that Plaintiff is the owner of any intellectual property. [Doc. 81-1 at Exh. 2 to Exh. A; *id.* at 28:7-8 ("Any other Intellectual Property")]

Mr. Havel asks "[h]ow can [Telah] have received 'intellectual property rights' for Property that was not in the Storage or in the property where the Group Members were deceased?" [Doc. 87 at 20]  The California Superior Court held that the Estates of the Heaven's Gate Decedents owned all intellectual property as tenants in common, and it was conveyed to Plaintiff by the California Superior Court.  It does not matter if Rkkody removed physical items from a storage facility.  Rkkody never obtained intellectual property rights to those materials.  Instead, ownership of all of the intellectual property of Heaven's Gate was transferred to Plaintiff and Plaintiff is the sole owner of that intellectual property.

Further contradicting Mr. Havel's supposed belief that Rkkody obtained intellectual property rights by virtue of allegedly removing an item from storage is the Order obtained by Plaintiff against Rkkody's Estate.  Plaintiff brought a lawsuit against the daughter of Chuck Humphrey, who is also known as Rkkody, after Mr. Humphrey passed away, as well as against the Estate of Mr. Humphrey. [Doc. 87 at 14, ¶ N ("Kathryn Morea (daughter to Rkkody (aka Chuck Humphrey) registered copyrights of the content of 2 CD's containing approx. 218 digitized audio tapes, filed on May 1998.")]  That case ended in 1999, and the Federal Judge signed a Consent Decree that confirmed that Telah "ha[s] exclusive rights . . . for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's, websites, letters, other documents, names and symbols."

[Doc. 79-1 at 119:6-9, 120:13-19 (emphasis added); *see also* Exh. 3 to Exh. A of Doc. 81-1 at 33:6-9]

Accordingly, Plaintiff is the owner of the intellectual property of Heaven's Gate, as confirmed by the California Superior Court, the Federal District Court in the Northern District of Arizona, and by the Estate of Mr. Humphrey/"Rkkody."

Mr. Havel later argues that he does not know whether the audio tapes he played were the "486 items in the deposit on the copyright registration" and that his "copyright infringement . . .was unknowing." [Doc. 87 at 12, ¶ G; Doc. 87 at 23]  This highly implausible assertion is also highly irrelevant.  "Copyright infringement is a strict liability offense." *Design Basics, LLC v. Big C Lumber Co. Inc.*, No. 3:16-CV-53-HAB, 2019 WL 3285958, at *9 (N.D. Ind. July 22, 2019).  As such, Mr. Havel's claimed ignorance is no defense to liability. *Id.*

## B.     Laches Is Inapplicable.

Mr. Havel states "Plaintiff[] had literally over 10 years to show me the copyrights [it] had and did not, so [its] use of those of those . . . copyrights and/or trademarks should be null and voided by non use according to the Affirmative Defense of Laches and Delay." [Doc. 87 at 12, ¶ D (emphasis removed)]  Mr. Havel does not develop this "argument" and the Court should deem it waived. *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 173 n. 1 (7th Cir.1996) (finding waiver when a party "failed to develop the argument in any meaningful manner"); *Bezingue v. Steuben Lakes Reg'l Waste Dist.*, 507 F. Supp. 3d 1021, 1044 (N.D. Ind. 2020) (explaining that it is not the Court's "duty to research and construct legal arguments available to a party" (quoting *Head Start Family Educ. Program, Inc. v. Cooperative Educ. Serv. Agency 11*, 46 F. 3d 629, 635 (7th Cir. 1995))).

Plaintiff's copyright registrations are notice to the world that Plaintiff is the owner of those copyrights.  *See* 17 U.S.C. § 205(c).  Mr. Havel's Response does not cite any statute, rule, or case law that would support Mr. Havel's proposition that intellectual property rights should be "voided" if Mr. Havel is not personally shown registrations.  Mr. Havel's position

is nonsensical and contrary to 11 U.S.C. § 205(c). Copyright registrations that are a matter of public record and provide notice of ownership to the world. Moreover, Mr. Havel has actual notice of Plaintiff's ownership because Mr. Havel has been served with the Complaint in this action, which included registrations for Plaintiff's intellectual property.

The materials that Mr. Havel has filed into the record contradict Mr. Havel's false statement that Plaintiff "never" told Mr. Havel about its copyrights "until this lawsuit was filed." [Doc. 87 at 15] Mr. Havel's Answer confirms that he was "threatened with a lawsuit," before this action took place. [Doc. 20 at 26 ("I was surprised when they threatened me with a lawsuit . . . ."); Doc. 20 at 31 (stating that "[Mr. Havel and Ms. Weaver] met with [Telah] in November of 2021 in Phoenix at [Telah's] lawyers office, when they surprised us with a Cease and Desist . . . ."); *id.* ("Even when they tricked us into being issued a Cease and Desist in 2021 they didn't show us exactly what they had copyrighted and trademarked. They only said they 'owned all their intellectual property' which I know isn't true so I totally distrusted things they would say.").] Despite Mr. Havel being on actual notice and threatened with a lawsuit, Mr. Havel refused to stop infringing on Plaintiff's intellectual property, and Mr. Havel has refused to stop, even with a lawsuit being brought against him.

### C. There Is No Fair Use.

Mr. Havel argues that his use of Plaintiff's intellectual property "should qualify in every way as Fair Use." [Doc. 87 at 12, ¶ E (emphasis removed)] Mr. Havel claims that "he can provide ample evidence his usage can easily meet all of the conditions of Fair Use." [Doc. 87 at 15, ¶ O] But Mr. Havel failed to develop this "argument" and the Court should deem it waived. *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 173 n. 1 (7th Cir.1996) (finding waiver when a party "failed to develop the argument in any meaningful manner"); *see also Parker v. City of Tucson*, 233 Ariz. 422, 432, ¶ 24, n.9 (App. 2013) ("[A] party with superior knowledge about and access to evidence regarding certain facts should bear the burden of producing that evidence, rather than charging the adverse party with the task of proving a negative."); *State Tax Comm'n v. Graybar Elec. Co.*, 86 Ariz. 253, 257 (1959) ("Where such

vital information is readily available to a party, it can only be presumed from the failure to produce it that the inference is adverse.").

Even if not waived, Mr. Havel's blatant infringement does not constitute fair use because, generally, "wholesale copying of copyrighted material precludes application of the fair use doctrine." *Stern v. Does*, 978 F. Supp. 2d 1031, 1046 (C.D. Cal. 2011), *aff'd sub nom. Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013) (quoting *Marcus v. Rowley*, 695 F.2d 1171, 1176 (9th Cir. 1983)); *see also Wall Data Inc. v. L.A. County Sheriff's Dep't,* 447 F.3d 769, 780 (9th Cir. 2006) (finding that "'verbatim' copying of the entire copyrighted work . . . weighs against a finding of fair use"); *Rosemont Enters., Inc. v. Random House, Inc*., 366 F.2d 303, 310 (2d Cir.1966) ("The fair use privilege is based on the concept of reasonableness and extensive verbatim copying or paraphrasing of material set down by another cannot satisfy that standard."); *Wihtol v. Crow*, 309 F.2d 777, 780 (8th Cir.1962) ("[I]t is not conceivable to us that the copying of all, or substantially all, of a copyrighted song can be a 'fair use' merely because the infringer had no intent to infringe.").

As the Seventh Circuit has stated, "copying that is a substitute for the copyrighted work . . . or for derivative works from the copyrighted work . . is not fair use." *Ty, Inc. v. Publications Int'l Ltd*., 292 F.3d 512, 517 (7th Cir. 2002).  Here, Mr. Havel has explicitly and intentionally provided direct download links to the Foundation's copyrighted materials and played entire audio tapes on his YouTube channel, providing interested individuals with a substitute source for the identical copyrighted materials.  This is not fair use.

### D. Mr. Havel's Allegations of Inconsistencies Are Wrong and Irrelevant.

Mr. Havel makes general allegations that there are inconsistencies in declarations and "[a]ttempt[s] to [c]overup."  [Doc. 87 at 16]  Mr. Havel provides no evidentiary support for his allegations.  Plaintiff disputes that there are inaccuracies and denies there being a "coverup."

Mr. Havel's allegations are irrelevant to the issue before the Court: should injunctive relief be granted against Mr. Havel.  As Mr. Havel's allegations of "coverups" and that

"Plaintiff[] [is] at this time scrambling to hide . . . facts and plan to barrage the Court," have nothing to do with the issue before the Court, Plaintiff will not "barrage the Court" with unnecessary responses to Mr. Havel's allegations. [Doc. 87 at 6, ¶ E]

Plaintiff will address, although briefly as this has already been explained, Mr. Havel's allegation that there is an inconsistency as to whether Plaintiff's ownership of the intellectual property rights of Heaven's Gate began in 1997 or 1999. "Plaintiff has maintained that it has owned the intellectual property of Heaven's Gate since 1997." [Doc. 81-1 at 1, ¶ 4] Although there existed for a short period a dispute as to Plaintiff's ownership of the intellectual property of Heaven's Gate, multiple Court Orders have been entered that confirm that the Foundation is the legal owner of all of the intellectual property of Heaven's Gate. [Doc. 81-1 at 1-3, ¶¶ 5-18] Two of the Court Orders that confirmed Plaintiff's ownership of the intellectual property were entered in 1999. [Doc. 81-1 at Exhibits 2 and 3 to Exhibit A]

**E.     Mr. Havel Admits to Infringing on Plaintiff's Valid C.B.E. Copyright.**

Mr. Havel states that "I stopped all accused breaches," with the exception of using the C.B.E. Copyright. [Doc. 87 at 12, ¶ F] Although Mr. Havel does not dispute that Plaintiff is the owner of the C.B.E. Copyright, he alleges that the Copyright Registration is incorrect because it does not state that it was created by "Olliver Odinwood (Ollody)." [Doc. 82 at 20, ¶ C; *see also* Doc, 1-6 (copyright registration for "the C.B.E. (Celestial Being Entity)")] This is immaterial. Mr. Odinwood's real name is David Cabot Van Sinderen. [Declaration of Mark King, attached hereto as Exhibit A, at ¶ 4] The California Superior Court action identified David Cabot Van Sinderen as one of the decedents, and all of the intellectual property was transferred to Plaintiff. [Doc. 83-1 at 15:15, 15:27, 18:20, 19:14, 20:21, 28:7-8] Plaintiff is the sole owner.

Moreover, the Supreme Court has held "that a certificate of registration is valid even though it contains inaccurate information, as long as the copyright holder lacked 'knowledge that it was inaccurate.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 945 (2022) (quoting 17 U.S.C. § 411(b)(1)(A)). "Lack of knowledge of either fact or law can

excuse an inaccuracy in a copyright registration." *Id.* Plaintiff maintains that its copyright registrations, which were prepared by counsel, were accurate when submitted and remain accurate. [Doc. 81-1 at 3, ¶ 18] Indeed, Plaintiff, has firmly believed since March 1997 that it is the sole owner of *all* intellectual property, this is supported by the litigation before the California Superior Court in the probate action as well as by the Federal District Court in the Northern District of California consent decree from 1999. [Doc. 79-1 at 119:6-9, 120:13-19; Doc. 81-1 at 4, ¶ 19]

> **F. Mr. Havel Fails to Address His Statements that He Will Never Stop Disseminating Plaintiff's Protected Property, Regardless of the Circumstances.**

Mr. Havel fails to address his multiple statements that he will never not stop infringing, such as:

1) "And, uh, I don't intend to let this channel come down. And, even if it did I would start another one and then they would have to find me and, uh, you know, shut me down. This isn't the first attempt on this channel and it won't be the last." [Doc. 67 at 11]

2) "They're still not going to get any money from me and it's not going to stop the material from circulating, because we're all, [Bartel] and myself, Cathy, and [a third party], and other people are circulating the tapes." [Doc. 67 at 12]

3) From exchange between Mr. Havel and his co-Defendant Cathy Weaver:

   Ms. Weaver: "Once it's done and whatever the outcome is, if its not favorable, we're out of here."

   Mr. Havel: "Right, but we don't know what we're going to do exactly."

   Ms. Weaver: "**We're gonna share the fucking information. I know I shouldn't say that**, but like you said-"

   Mr. Havel: "Well, yeah, **we're going to share the information one way or the other** –"

Ms. Weaver: "**And they won't be able to touch us**."

[Doc. 67 at 12]

### G. Following the Filing of the Motion for a Preliminary Injunction, Mr. Havel Has Made Additional Statements Confirming that He Will Not Stop Infringing On Plaintiff's Intellectual Property.

After the Motion for a Preliminary Injunction was filed, Mr. Havel has continued to make statements that he and Ms. Weaver will not stop infringing on Plaintiff's intellectual property. [Declaration of Mark King, attached hereto as Exhibit A, at ¶ 5]

For example, during a YouTube "live stream" that Mr. Havel and Ms. Weaver hosted on January 28, 2023, Mr. Havel stated that he and Ms. Weaver would not "go[] away" if the YouTube channel was "taken down," that he may move the sharing of information to platforms such as Telegram or Rumble and provided directions for the audience to "look for [Mr. Havel and Ms. Weaver]." [Declaration of Mark King, attached hereto as Exh. A, at ¶ 6; Exh. 1 to Exh. A]  At a later point during the January 28, 2023, live stream, Mr. Havel discussed his "commitment to uh doing these live streams" and "sharing" the "information." [Declaration of Mark King, attached hereto as Exh. A, at ¶ 7; Exh. 2 to Exh. A]

### H. The Lawsuit Has Not Curtailed Mr. Havel's Unlawful Conduct.

Mr. Havel states that "I stopped all accused breaches," with the exception of using the C.B.E. Copyright.  [Doc. 87 at 12, ¶ F]  This is false.

For example, on December 17, 2022, Mr. Havel was paid to perform at a "Heaven's Gate Re-Examined" event at a venue in Georgia called the "Lodge of Sorrows," during which time he played "the Final Exit Video." [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 10, 12; Exh. 3 to Exh. A]  Plaintiff is the owner of "the Final Exit Video." [Declaration of Mark King, attached hereto as Exh. A, at 11; Doc. 81-1 at 27:16; *id.* at 28:7]

The "Heaven's Gate Re-Examined" event was live streamed on December 17, 2022, on the 3spm YouTube channel belonging to Mr. Havel that he and Ms. Weaver operate. [Declaration of Mark King, attached hereto as Exh. A, at ¶ 13]  The Final Exit Video played for approximately one and one-half hours.  [*Id.* at ¶ 14; Exhibits 5-6 to Exh. A]

In the December 17, 2022, live stream's comment section, Mr. Havel responded to a comment that stated "what a great event…jealous of all who attended" by saying "we are hoping to do more all over the country. This feels like the right thing to do." [Declaration of Mark King, attached hereto as Exh. A, at ¶ 15]  Ms. Weaver, through her username "cathysouthwestern," also replied that "We are in talks to have another one coming up next May, it will be in Chicago this time!" [*Id.* at ¶ 16]

In the December 17, 2022, live stream's comment section, Mr. Havel wrote, in part, "Wish we would have livestreamed starting at the museum earlier in the day when we had a little meeting around the Heavens Gate part of the museum with DO's voice playing and his face showing from a Beyond Human tape in the background the entire time."  [*Id.* at ¶ 17]  Beyond Human is a copyrighted work owned by Plaintiff.  [*id.* at ¶ 18; *see* Doc. 1-2]

Mr. Havel and Ms. Weaver were both paid for participating in the "Heaven's Gate Re-Examined" event on December 17, 2021.  [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 20-21; Exh. 8 to Exh. A]

## II. THE COURT SHOULD ENTER THE PRELIMINARY INJUNCTION AGAINST MR. HAVEL.

### A. Mr. Havel Does Not Argue Against the Court Entering Injunctive Relief.

Mr. Havel does not meaningfully address the factors that entitle Plaintiff to injunctive relief.  While Mr. Havel alleges that people will not commit suicide if he continues to infringe, Mr. Havel fails to address any other of the other factors that support granting injunctive relief and the multiple other irreparable harms that will occur if the Court does not enter the requested relief.

Mr. Havel does not dispute that there is irreparable harm to Plaintiff, the absence of an adequate remedy at law, Plaintiff's likelihood of success in asserting claims involving the intellectual property of which Plaintiff is the owner.  Mr. Havel does not even attempt to argue, nor could he, that there would be a substantial hardship if the Court ordered him to not engage in the unlawful behavior, which should not be committed by him.

In this Reply, Plaintiff has provided additional evidence to the Court of comments that Mr. Havel made since the time that the Motion for a Preliminary Injunction was filed that confirm Mr. Havel's commitment to infringing on Plaintiff's intellectual property. Plaintiff has also submitted proof of Mr. Havel and Ms. Weaver being paid by others to infringe on Plaintiff's intellectual property and that Mr. Havel and Ms. Weaver "are in talks to have another" event in May 2023. [Declaration of Mark King, attached as Exh. A, at ¶¶ 10-21]

Mr. Havel's expressed intent to continue infringing and his past and ongoing misconduct confirm that it is necessary for this Court to enter injunctive relief against Mr. Havel as nothing short of a Court Order, and possibly not even a Court Order, will cause Mr. Havel to stop his unlawful conduct.

**B.   Mr. Havel's Response Confirms His Infringement.**

Mr. Havel's Response does not dispute his prior infringement. *See Eli Lilly & Co. v. Apotex, Inc.*, 430 F. Supp. 3d 560, 565 (S.D. Ind. 2019), *aff'd,* 837 Fed. Appx. 780 (Fed. Cir. 2020) (failing to respond to an argument is a concession on those points).

**C.   The Proposed Order Is Not Challenged.**

Mr. Havel has not challenged the proposed Order that Plaintiff submitted to the Court. Mr. Havel's failure to challenge the Order confirms that he does not take issue with the Court granting the relief that Plaintiff has requested, if the Court finds that Plaintiff is entitled to injunctive relief. *See Dye v. City of Bloomington, Indiana*, 580 F. Supp. 3d 560, 569 (S.D. Ind. 2022) ("Plaintiffs did not respond to Defendants' argument, so any opposing argument is waived.").

**III.   CONCLUSION.**

Plaintiff respectfully requests that the Court enter an Order that: (1) prohibits Mr. Havel from infringing upon Plaintiff's copyrights, (2) requires Mr. Havel to deliver copyrighted

/ / /

/ / /

/ / /

materials to Plaintiff's counsel, and (3) requires Mr. Havel and/or various online platforms to take down certain accounts and webpages that contain Plaintiff's copyrighted materials.

RESPECTFULLY SUBMITTED this 28th day of February 2023.

/s/ Isaac Crum
MESSNER REEVES LLP
Isaac S. Crum (AZ Bar #026510)
(*Pro Hac Vice*)
icrum@messner.com
Daniel L. Marks (AZ Bar #034141)
(*Pro Hac Vice*)
dmarks@messner.com
7250 N. 16th Street, Suite 410
Phoenix, Arizona 85020
Telephone: (602) 641-6705
Facsimile: (303) 623-0552

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below.  A copy of this filing was also sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4019 Forest Drive
Hancock, WI 54943
jason_bartel@unioncab.com

/s/ Mary Willson