UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation, an Arizona nonprofit corporation,<br><br>Plaintiff,<br>v.<br><br>Steven Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-JD-MGG |



# HAVEL'S REPLY TO PLAINTIFF'S MOTION TO STRIKE DOC. 91 AND DOC. 91-1 AND REQUEST FOR SANCTIONS

**Plaintiffs Motion:**

### MR. HAVEL HAS DISREGARDED THE RULES, AGAIN, BY FILING AN UNAUTHORIZED LENGTHY SURREPLY.

The Local Rules provide for a motion, an opposition, and a reply. Neither the Local Rules nor the Federal Rules provide the right to file a surreply. *See* e.g., N.D. Ind. L.R. 71(3); *Goltz v. Univ. of Notre Dame du Lac*, 177 F.R.D. 638, 641 (N.D. Ind. 1997) ("[T]he Local Rules provided for only three briefs: an initial brief, a response to that brief, and a reply brief. . . . The Rules did not provide for the filing of a response to the reply brief."). Mr. Havel never requested permission from the Court to file the Surreply.

Even if Mr. Havel's Surreply was permitted under the Rules or by Court Order, the Surreply would otherwise violate the page limit set in N.D. Ind. L.R. 7-1(e)(1) for motions, responses, and replies. Mr. Havel's Surreply Brief is 24 pages. [Doc. 91] Attached to the Surreply as Exhibit 4 is an additional 14 pages of an unsigned and

1

untimely Brief in opposition to the proposed Order that was lodged with the Court on January 23, 2023. [Doc. 91-1 at 14-27] *See* Fed. R. Civ. P. 11(a) (requiring each filing "be signed . . . by a party personally if the party is unrepresented). The Court previously struck Mr. Havel's opposition to the proposed Order, among Mr. Havel's other filings, for non-compliance with the Local Rules. *See* Doc. 78 (Order granting in part Plaintiff's Motion to Strike that was filed at Doc. 77). The Surreply in total contains 38 pages of argument.

I. HAVEL'S REPLY

1. I am sorry your honor, but when I saw how many new accusations were filed by Plaintiffs I didn't know how to respond as some of the many accusations make statements that are concocted from partial quoting of what I said with the addition of their words they insert that totally misconstrue what I said, in essence creating a lie they hope to use in their favor. Plaintiffs keep attempting to try to get me to say I infringed on things I never infringed on. I didn't know that according to Plaintiffs I needed to file with the court asking for a special authorization to reply again and that was called a "surreply". I don't even know if what they said about this applies to pro se defendants, as I admit not knowing these laws or even how to search for them. If Plaintiffs are correct I stand corrected and will not reply again in that way.

2. When I examined the Civil Rules of Procedure your honor sent me a link for when correcting my formatting ignorance, I didn't see that Exhibits were part of the 24 page limit. I don't know if I needed to include that document since I had already filed it as part of my first reply to Plaintiffs Motion for a Preliminary Injunction that the Court ordered me to refile. From what Plaintiffs said and was ordered by the Court it wasn't clear to me whether the Exhibits would be entirely stricken, so I shortened them and tried to better express my defense against a Preliminary Injunction.

2

3. I neglected to sign doc 91-1 – my Exhibit 4 to my reply to Plaintiffs reply which was my oversight as I had to drive an hour to go to a copy machine and then to the Post Office and I ran into incredible traffic in downtown Savannah, GA to send that to the Court as I didn't know what the Courts schedule was to order a Preliminary Injunction against me, so I overlooked the signature on that Exhibit that was framed as it's own motion to add it to the case. In hindsight I would have just referenced the document I had already filed that was not yet stricken, though that didn't make sense either.

4. None of the above was intentional as Plaintiffs also state in section III by saying: "There is no basis for Mr. Havel's ongoing and intentional disregard of the Rules." Why in the world would I want to disregard the rules especially knowing how these Plaintiffs, have no desire for the truth to be brought out so will try to win by any other means.

5. I was in error to state, "All Plaintiffs do is repeat lies and barrage me and the Court with the same claims." Plaintiffs attempted to use this statement to try to show the Court there was no need for a Surreply. I made that statement because I was frustrated that the foundation of Plaintiffs complaints against me in their Motion for a Preliminary Injunction were largely filled with the same evidence of my playing audios they brought up in Doc 1, the initial Complaint, and by bringing them up again I suspect they sought to give the appearance of further alleged infringements when the facts are that I have NOT played any audios or video's anywhere, that Plaintiffs claim to have valid copyrights for, (which I now have ample documentation were not legitimate in the first place). I should have led that reply with the broader picture as there are many new claims Plaintiffs have made. To substantiate my grounds for making that claim, that I would be glad to reformat correctly into the proper document, here are the main points I am claiming are brand new that I hope I am able to reply to on the record.

a) **In Plaintiffs introduction they state:** "...requests that its Motion for Preliminary Injunction (the "Motion") (collectively, Docs. 66, 67, 67-1) be granted against Steven Havel, who does not dispute engaging in the misconduct that has formed the basis of the lawsuit or provide a coherent basis for why the Court should not award the relief that is requested by Plaintiff." **I do dispute engaging in any misconduct that has formed the basis of this lawsuit.**

b) **Further in Plaintiffs Introduction they piece together a scenario that is confusing and again state that I do** "... not dispute the conduct that has been alleged, proven, and admitted by Mr. Havel", **when I do dispute any poor conduct or infringement.**

c) **Plaintiff goes on to say**"...Instead, Mr. Havel alleges that his actions are permissible because Mr. Havel purportedly received copies of Heaven's Gate's audio tapes from someone else, who took the tapes out of a storage locker before San Diego County seized the physical contents of the storage locker". **Plaintiffs know that Rkkody and Oscody took those 486 audio tapes out of storage, not "someone else". Once again Plaintiffs keep on trying to diminish the facts. Plus, as I have well established in my Answer's Exhibits that I have not "purportedly" received copies of Heaven's Gate Audio Tapes. I have them still with the mailers and the dates are clear and they are from Right to Know, Rkkody's Organization DO had him set up before he died. In fact, I have the very same CD's Rkkody was recorded to have had during the Kings 1998-9 Lawsuit when Rkkody's (Humphrey's) CD's were ordered by Judge Breyer to be given to Mark and Sarah King who were to "disseminate them". This order from Judge Breyer, I can document and will shows that Plaintiffs almost entirely ignored that order or they would have at the least sent those CD's to me (and co-defendant Bartell) to also do the dissemination task as DO stated he desired all his believers to do with all his intellectual property because I and Bartell independent from one another were probably the biggest**

4

disseminators. Your honor, I keep learning of new evidence that prove my defense and Plaintiffs don't want the Court and the eventual jurors to see this evidence and so they are trying to remove the evidence by motions to block it from the Court record by repeatedly making up their own story.

d) In section I.A. Plaintiffs state, "Mr. Havel does not dispute that Plaintiff has a registered copyright over those 486 tapes but argues that he received from Rkkody the 486 tapes "before any Consent Decrees." [Doc.87 at 7-8]" I do dispute Plaintiffs have legitimate copyrights and I have plenty of grounds to dispute that. Plaintiffs have never shown any documentation from the Group to authorize the legal "transfer" or "assignments" they stated they had on the copyright applications nor have they shown any documentation for the "work for hire" status they claim to be the "author" because of.

e) Further Plaintiffs try to address the argument that Rkkody didn't OWN or have property rights for the audio tapes he removed from Storage that it can be shown DO and Crew wanted him and others to possess. How does that work? If I make something like an audio or video tape and don't copyright it and I give it to multiple friends and don't bequeath the original to anyone in my will after I die, doesn't all who received that gift OWN it? Could each who received those gifts copyright them? I think not, unless they each have legal documentation of that intention from it's author before they died. The Group made a very conscious choice not to copyright anything to protect against this very thing happening where some who were gifted some of their Property would then seek to hoard it and profit by having it. Mark King and Sarah King said as much about profiting by it in Judge Breyer's Court saying in their Complaint that Defendants having the same intellectual property could effect their own profits. I will be presenting this to the court shortly but have more documents to obtain.

5

f) **Plaintiffs argue that Judge Breyer ruled** "...that Telah "ha[s] exclusive rights . . . for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's, websites, letters, other documents, names and symbols." [Doc. 79-1 at 119:6-9, 120:13-19 (emphasis added); see also Exh. 3 to Exh. A of Doc. 81-1 at 33:6-9]" **But what they didn't tell the court then was that there was a great amount of intellectual property in Storage and that another court had ruled their show of copyrights did not constitute proof from the Group that they wished for Mark and Sarah King to have all that material exclusively let alone copyrights to it. Is it legal to have two different courts ruling simultaneously on the same Intellectual Property?**

**Plus Judge Breyer wasn't informed that Jhnody (and others) already possessed a great deal of the Groups Intellectual Property including the Beyond Human Master Originals, plus a diskette that contained the entire Heavensgate.com website code that included Images and the entire contents of the Heaven's Gate "blue" book they printed and bound themselves and that they included a copyright page that was for a "common law copyright" that allowed for copying parts of or the entire book as long as nothing was added or taken away from it and it wasn't done for commercial purposes. Judge Breyer seemed to want to rule on the Groups intention but was he expected to read that intention for a Common Law Copyright that renders Plaintiffs claim against me re:** Document 1 Complaint COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732 the Literary Work moot. **Jhnody also received a number of Away Team patches. He received all of these items around the same time Mark and Sarah King and Rkkody and Oscody and Rio D'Angelo (Neody) and others received similar physical Intellectual Property Material. In the letter DO sent to Jhnody he expressed his desire for Jhnody to copy the video tapes and give them**

to whoever he wished to give them to and included giving them to the media. This is clearly the intention of DO and Crew that all their property be given freely to all who wanted it and that no one or two or more people would hoard it the way Mark and Sarah King have been trying to do for years and are attempting to do now. We all can know DO's intention and this is a religious freedom issue and a free speech issue and I am being discriminated against by having the words from my religious leaders TI and DO hidden away and kept from being shared with others who want to know what they were all about, when that's what they wanted me and others to do, by many, many proves in their Literary Works, Video Works, in other documents they wrote and by their example starting in earnest in 1988 and in the audio tapes themselves, but Mark and Sarah King don't want to do that so they don't want others to do it either.

g)  Plaintiffs state, "Mr. Havel later argues that he does not know whether the audio tapes he played were the "486 items in the deposit on the copyright registration" and that his "copyright infringement . . .was unknowing." [Doc. 87 at 12, ¶ G; Doc. 87 at 23]. They need to quote what I say in context instead of concocting what they want the court to think about what I said. In other words IF I did infringe on a copyright there was no way to know about it, as Plaintiffs would never inform me what they had copyrights for, to date, though we were communicating contentiously over years about the audio tapes I possessed, that I can document. All Mark King would say is something like, "if you saw what we have, you'd side with us…" or he'd say something like, "we own and have the rights to everything" which I always knew was not true. They have been defrauding three courts for years.

h)  Plaintiffs write: "This highly implausible assertion is also highly irrelevant. "Copyright infringement is a strict liability offense." Design Basics, LLC v. Big C Lumber Co. Inc., No. 3:16-CV-53-HAB, 2019 WL 3285958, at *9 (N.D. Ind. July 22,

7

2019). As such, Mr. Havel's claimed ignorance is no defense to liability. Id." **They refused to address the argument and I never said that my "copyright infringement…was unknowing as I never admitted to any copyright infringement for several reasons. If one holds a copyright and never tells you what they have copyrighted how can they uphold that copyright? Look at the registration for 486 audios. There are some 1061 audios according to Mark King, that I have him saying on record, so which audios fall under their copyright and which do not? Just tell me.**

i) **In section E. Plaintiffs state that** "Mr. Havel states that "I stopped all accused breaches," with the exception of using the C.B.E. Copyright. [Doc. 87 at 12, ¶ F]" **Notice how Plaintiffs hardly ever quote my entire sentences because if they did they would not be able to spin lies about what I actually said. I never said I breached any copyrights or trademarks for several reasons. But I did admit to using the C.B.E. Image because it's a fact that Ollody as Olliver Odinwood, legally Cabot Van Sinderen is the artist who held that copyright since 1982 and that voids Mark King and Sarah Kings copyright they fraudulently registered, not checking the box on the registration application that asks if there was a previous registration and stating who had it registered and not checking the box of it being a "work for hire" or not. They can claim it was the fault of their lawyers but they signed the documents so they too are culpable for fraud and even if it was an oversight they should have corrected it, but then again they thought they could get away with it and probably thought we'd never find that copyright.**

j. **Plaintiffs state in Paragraph 1:** "Mr. Havel now seeks to raise new arguments that he did not raise in his Amended Response that was due on February 21, 2023, or to reframe and expand arguments he has already raised, but Plaintiff was not able to address those arguments in its Reply because Mr. Havel failed to make those arguments in a timely manner or in accordance with the Rules."

8

k. **Plaintiffs state in Paragraph 2:** "Mr. Havel's filing of an unauthorized Surreply prevents Plaintiff from addressing these new and/or expanded arguments because Mr. Havel did not raise those previously and/or did not develop those arguments." **Regarding paragraph j and k here, so far I have addressed the lies Plaintiffs have put in their reply. If they can make up new lies in their response, don't I get to respond to their new lies? If I am not, then through what instrument of the law can I address their lying?**

m. Plaintiffs state in Paragraph 3: "Both parties have had an adequate opportunity to make their arguments, and the court will not entertain further briefing."). This is especially true when Plaintiff will not have an opportunity to address Mr. Havel's new arguments. Additional briefing will not eliminate the prejudice. Plaintiff should not have the resolution of its Motion delayed further because of Mr. Havel's ongoing disregard of the Rules and Court's Orders. Nor should Plaintiff need to incur attorneys' fees to address the untimely, improper, and overlimit arguments that Mr. Havel now raises but failed to raise in his 24-page Amended Response. [Doc. 87] The Court has already reminded Mr. Havel that there should be a "just, speedy, and inexpensive resolution of this action," and further briefing that is made necessary because of Mr. Havel's disregard of the Rules and Court Orders would be contrary to that directive. " **I was not able to raise certain arguments because Plaintiffs didn't bring them up in the Motion and Brief for a Preliminary Injunction but did bring them up in their doc 90 Reply to Defendants revised reply to Plaintiffs Motion and Brief for a Preliminary Injunction. To follow are Plaintiffs new arguments/accusations they filed in their reply to my revised reply:**

II.  Here are the paragraphs containing Plaintiffs new arguments/accusations and new Exhibits Plaintiffs introduced for the first time in their Reply in doc 90 that I have not been given the chance to respond to:

9

1. **Plaintiffs state in doc 90 – Section I.A that;** "Plaintiff Is the Owner of ALL of Heaven's Gate's Intellectual Property, Including Whatever Materials "Rkkody" Allegedly Took From a Storage Facility. Mr. Havel alleges that he received from "Rkkody" audio tapes of Heaven's Gate, which consisted of "th[e] same Intellectual Property" that "w[as] also gifted" to "Mark and Sarah King," who are the directors of Plaintiff. [Doc. 87 at 6, ¶ G] Mr. Havel alleges that these 486 audio tapes were taken out of a storage locker in San Diego County by "Rkkody and Oscody," who returned the originals to Mr. King and Mrs. King. [Doc. 87 at 7]"

    **Havel's Reply to new allegations: I have proof that plaintiffs know that Rkkody and Oscody retrieved the audio tapes from storage, not "someone else" and that "position" is not misplaced at all. (See doc 91-1 (Exhibit 1 – Bardo Methodology Interview with Mark King)).**

2. **Here is a new allegation that was not in the Motion or Brief for a Preliminary Injunction yet was brought up in doc 90 at I. H. which I am not supposed to be able to respond to. Here is what Plaintiffs wrote:** "The Lawsuit Has Not Curtailed Mr. Havel's Unlawful Conduct. Mr. Havel states that "I stopped all accused breaches," with the exception of using the C.B.E. Copyright. [Doc. 87 at 12, ¶ F] This is false. For example, on December 17, 2022, Mr. Havel was paid to perform at a "Heaven's Gate Re-Examined" event at a venue in Georgia called the "Lodge of Sorrows," during which time he played "the Final Exit Video." [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 10, 12; Exh. 3 to Exh. A] Plaintiff is the owner of "the Final Exit Video." [Declaration of Mark King, attached hereto as Exh. A, at 11; Doc. 81-1 at 27:16; id. at 28:7] The "Heaven's Gate Re-Examined" event was live streamed on December 17, 2022, on the 3spm YouTube channel belonging to Mr. Havel that he and Ms. Weaver operate. [Declaration of Mark King, attached hereto as Exh. A, at ¶ 13] The Final Exit

Video played for approximately one and one-half hours. [Id. at ¶ 14; Exhibits 5-6 to Exh. A] "

**Havel's Reply: This is proof of Mark King and Sarah King hiding their alleged copyrights and trademarks and how Plaintiffs have now brought new evidence into this lawsuit. For instance, how come if they had the Video tape DO's Final Exit copyrighted, why didn't they present that when they first filed this lawsuit? Just like they have not disclosed which audio tapes were copyrighted. If I am expected to abide by their alleged copyrights don't the Plaintiffs have to show <u>every single thing</u> that they have allegedly copyrighted?**

**Theoretically I could play audio tape 700 as there are only 486 listed in the copyright registration, that is unless tape 700 was one of them. If it isn't allegedly copyrighted by Plaintiffs, then why can't I play it?**

**I didn't know DO's Final Exit was copyrighted by Plaintiffs. I only learned about that a few weeks ago when I saw it in the lawsuit Plaintiffs filed against Rkkody after he died.**

**Your Honor, why do Plaintiffs get to introduce new evidence and why don't they have to produce the evidence of how they obtained those copyrights in the first place? Why don't Plaintiffs show us the documents to legally transfer the Groups copyrights to them as they stated or gave them the documents to prove they were a "work for hire" employer or employee, however that works? Why can't we see that evidence? And how can I know what I can use and can't if they don't show me exactly which audio tapes they have copyrighted? Won't I be able to use the ones they haven't copyrighted that is until the Court rules that their copyrights are illegitimate or legitimate? Can the San Diego Court or the District Court of Northern Califormia rule on material not in the Courts jurisdiction? If I gave someone an audio of my music and I died, if I left no will, would that person be able**

to copyright my music if I didn't leave some legal document stating they could do so?

I do plan on doing more events, which again is not a statement alleging I will be infringing on Plaintiffs alleged Copyrights. Each event that we will be doing will be different and we don't intend to play DO's Final Exit nor any other alleged copyrighted tapes as I will abide by not doing so until this matter is settled. DO's Final Exit is and has been in the Public Domain by being posted on Vimeo by Plaintiffs Mark King and Sarah King so anyone can play it from there and I don't know if that is where it was played from as I was a guest there and not running the actual event. That is Fair Use as we had commentary before, during and after the playing.

3. Further new allegation regarding the event we livestreamed, Plaintiffs stated still in section I.H of doc 90: "In the December 17, 2022, live stream's comment section, Mr. Havel responded to a comment that stated "what a great event…jealous of all who attended" by saying "we are hoping to do more all over the country. This feels like the right thing to do." [Declaration of Mark King, attached hereto as Exh. A, at ¶ 15] Ms. Weaver, through her username "cathysouthwestern," also replied that "We are in talks to have another one coming up next May, it will be in Chicago this time!" [Id. at ¶ 16] In the December 17, 2022, live stream's comment section, Mr. Havel wrote, in part, "Wish we would have livestreamed starting at the museum earlier in the day when we had a little meeting around the Heavens Gate part of the museum with DO's voice playing and his face showing from a Beyond Human tape in the background the entire time." [Id. at ¶ 17] Beyond Human is a copyrighted work owned by Plaintiff. [id. at ¶ 18; see Doc. 1-2] Mr. Havel and Ms. Weaver were both paid for participating in the "Heaven's Gate ReExamined" event on December 17, 2021. [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 20-21; Exh. 8 to Exh. A]"

Havel's Reply: The Beyond Human tapes are available on Vimeo posted by Plaintiffs Mark King and Sarah King and therefore have been in the Public Domain and have been available to the public for years. I did not have a hand in playing the Beyond Human tape at the museum, it is part of the permanent exhibit at the museum and my presence there provided commentary before, during and after the playing. That is Fair Use.

There is no crime in receiving payment for performing at live events. Most of the money I made was from the sale of my book and for T shirts that have the public domain picture of TI and DO on them. Nor have I profited from any direct Heaven's Gate materials or information, again, I ask is it a crime or an infringement on the Plaintiffs alleged copyrights for me to discuss my personal experience in the Heavens Gate Group and be paid for it? Cathy Weaver also put on a display of her photography that has nothing to do with Heaven's Gate and I performed a music set that had nothing to do with Heaven's Gate. There were other events there that had nothing to do with Heaven's Gate.

4. Plaintiffs say in doc 90 section II.A.: "Mr. Havel Does Not Argue Against the Court Entering Injunctive Relief."

Havel's Response to this new allegation: I would ask the Court to please see Document 73 and Document 87 where I went point by point in opposing the Plaintiffs Brief in Support of a Preliminary Injunction against me, are these documents not an argument against the Court entering Injunctive Relief? I deny Plaintiffs will get any "relief" from whatever I say or do or don't say or do. I don't even know what they are talking about by "relief".

5. Plaintiffs state in doc 90 section II.A. that, "Mr. Havel does not dispute that there is irreparable harm to Plaintiff, the absence of an adequate remedy at law, Plaintiff's likelihood of success in asserting claims involving the intellectual property of which Plaintiff is the owner. Mr. Havel does not even attempt to argue, nor could he, that there

13

would be a substantial hardship if the Court ordered him to not engage in the unlawful behavior, which should not be committed by him."

**Havel's response: I, Stephen Havel do in fact dispute that there is irreparable harm.**

6. **More from doc 90 section A states references to new Exhibits**: "In this Reply, Plaintiff has provided additional evidence to the Court of comments that Mr. Havel made since the time that the Motion for a Preliminary Injunction was filed that confirm Mr. Havel's commitment to infringing on Plaintiff's intellectual property.

**Havel's response: Another lie. I am not committed to infringements of anything nor have any of the statements Plaintiffs have provided prove that.**

7. **Plaintiffs state:** "Plaintiff has also submitted proof of Mr. Havel and Ms. Weaver being paid by others to infringe on Plaintiff's intellectual property and that Mr. Havel and Ms. Weaver "are in talks to have another" event in May 2023. [Declaration of Mark King, attached as Exh. A, at ¶¶ 10-21]"

**Havel's Response: I deny being paid to infringe on any of Plaintiffs intellectual property rights. I didn't know DO's Final Exit was copyrighted and don't know whether it was played from Plaintiffs Vimeo channel making the playing Fair Use.**

8. **Plaintiff's state in doc 90 section II.A.:** "Mr. Havel's expressed intent to continue infringing and his past and ongoing misconduct confirm that it is necessary for this Court to enter injunctive relief against Mr. Havel as nothing short of a Court Order, and possibly not even a Court Order, will cause Mr. Havel to stop his unlawful conduct.

**Havel's Response: There is no evidence that I have knowingly and allegedly infringed on any of the Plaintiffs alleged copyrights since this lawsuit began. Thus, there is no need for a Court order as I am fully willing to voluntarily abide by continuing to not allegedly infringe on Plaintiffs alleged copyrights. I respectfully ask the Court to order Plaintiffs to provide <u>every single</u> copyright and trademark they have allegedly obtained instead of springing this one here and that one there. For instance, I also didn't know they had the Away Team patch copyrighted or**

trademarked until I saw it in the Morea court case documents. Jhnody was sent 3 original Away Team patches by DO in March/April of 1997 so does he own them and if the people that created them didn't leave behind some instrument of transference to any one person then wouldn't it be anyone who received such gifts prerogative of what to do with it? San Diego County Court and the District Court of Northern California didn't consider what Jhnody received from DO because neither Courts were informed of such. Mark and Sarah King are dishonest.

9. **Plaintiffs in doc 90 section II. B. claim:** Mr. Havel's Response Confirms His Infringement. Mr. Havel's Response does not dispute his prior infringement. *See Eli Lilly & Co. v. Apotex, Inc.*, 430 F. Supp. 3d 560, 565 (S.D. Ind. 2019), *aff'd*, 837 Fed. Appx. 780 (Fed. Cir. 2020) (failing to respond to an argument is a concession on those points).

**Havel's Response: Failure to respond is not a concession. I am fatigued with many hours of going through this every time Plaintiffs file the same and new accusations that are without merit while never showing the documents of transference of copyrights and trademarks they say they have from the Group to them.**

10. **Plaintiffs state new claim saying in doc 90 section II.C.:** "The Proposed Order Is Not Challenged. Mr. Havel has not challenged the proposed Order that Plaintiff submitted to the Court. Mr. Havel's failure to challenge the Order confirms that he does not take issue with the Court granting the relief that Plaintiff has requested, if the Court finds that Plaintiff is entitled to injunctive relief. See Dye v. City of Bloomington, Indiana, 580 F. Supp. 3d 560, 569 (S.D. Ind. 2022) ("Plaintiffs did not respond to Defendants' argument, so any opposing argument is waived.")."

**Havel's Response: I challenge every allegation and my arguments are factual and honest. I respectfully refer Your Honor to Document 75 where I did in fact oppose and challenge the entire Proposed Order paragraph by paragraph. Your Honors order, in partly striking my initial response because of formatting errors and length**

was not clear to me if document 75 was also being stricken from the record, so I respectfully ask to submit it. (See doc 75 Response to Proposed Order for a Preliminary Injuction – This doc 75 I did sign). I don't know whether the procedures allow me to reply to a proposed order Plaintiffs send to the Court to sign.

III.   I ask the Court to deny this Order to strike doc 91 and 91-1 and deny any Sanctions whatsoever. I have tried to abide by all the procedures and anytime I have neglected them was unintentional and out of ignorance of them and not even knowing what to search for to obtain the knowledge. I demonstrated wanting to abide by the 24 page limit to replies. I have abided by the double spacing and font size requirements and have signed all the docs I submitted except the exhibit.

RESPECTFULLY SUBMITTED this 11th day of March 2023.

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

*Stephen Robert Havel*
Stephen Robert Havel



PRESS FIRMLY TO SEAL     PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE     Retail

P    US POSTAGE PAID
$9.65
Origin: 31401
03/10/23
1278150701-02

PRIORITY MAIL®

0 Lb 4.00 Oz
RDC 04

EXPECTED DELIVERY DAY: 03/14/23

C005

SHIP TO:
204 S MAIN ST
SOUTH BEND IN 46601-2122

USPS TRACKING® #

9505 5124 3507 3069 3345 18

PRIORITY MAIL
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
Stephen Havel
5776 Grape Rd.
Suite 51 PMB #121
Mishawaka, IN 46545

TO:
Northern District Court
of South Bend
204 S. Main St.
South Bend, IN
46601

Label 228, March 2016     FOR DOMESTIC AND INTERNATIONAL USE

PS00001000014    EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP