# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation, an Arizona nonprofit corporation, <br><br> Plaintiff, <br><br>   v. <br><br> Steven Robert Havel, <br> Cathy JoAnn Weaver, <br> Jason Bartel, <br><br> Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS

On July 12, 2023, this Court Ordered [DE 125 ("Order")] Plaintiff to respond to Defendants' objections to Plaintiff's proposed Preliminary Injunction. [DE 121 ("Havel Objections"); DE 122 ("Weaver Objections"); and DE 124 ("Bartel Objections"); DE 121, 122, and 124 are collectively referred to herein as the "Objections".]   Plaintiff hereby submits that response.

### I.     ARGUMENT

This Court's Order and the Objections identify three different issues which Defendants appear to primarily object to: (1) the list of works, (2) alleged accusations of spoliation, and (3) incorrect naming of plaintiff in this lawsuit. Defendants Havel and Weaver both additionally raise a handful of other objections. Plaintiff responds in turn to each these issues below.

#### A.     List of Works

This Court Ordered that Plaintiff, "file a proposed preliminary injunction order that includes a list of the 486 audio works registered under copyright registration SRu298530" and to also "FILE a list of" the copyrighted audio works that are not being asserted in this

case. [DE 117 at 3.]  Undersigned counsel personally did this, creating said lists with the assistance of Plaintiff, and submitting the created lists to this Court. [DE 120 at 6–26.]  The descriptions for these audio files were created, having listened to a few of them, with the understanding that it is impossible to summarize thousands of hours of audio tape into complete "topics." Indeed, the bulk of these tapes are discussions which run over 30 minutes and sometimes over 60 or 90 minutes—making them impossible to entirely summarize.  Based on this and what was requested, the list submitted to the Court was created.

Defendants have electronic copies (mp3 versions) of the audio tapes and the numbering and runtime can be used to match up each tape with Defendants' mp3 file. Thus, while it could have been useful in other contexts to identify what is on the spine of a tape for identification purposes, that is not the case here, since Defendants do not actually have those tapes.

Furthermore, Defendants are well aware of which tape is which. They have posted and made available online a huge number of tapes, each if which is identified by the same "tape number" as Plaintiff's submitted list.  For example, Jason Bartel posted links to Google drive on his webpage promoting where these tapes can be downloaded.  [DE 67-1, ¶¶ 23.] Mr. Bartel has also worked with a third-party individual to make these tapes available at Archive.org, where they are still being made available to freely download today, and they are made available using the same "tape number" format used by Plaintiffs in their submission to the Court. [*See* https://archive.org/download/HPM-HeavensGateAudio.]  These tapes are also identified *by tape number* in Defendants' infringing YouTube videos. As shown below:



https://www.youtube.com/c/3spmSwy/videos (last visited May 16, 2022).

Since, (1) Plaintiff and Defendants all refer to these audio tapes by tape number, (2) what is written on the spine is of no help for identification purposes, since Defendants do not have physical tapes, and (3) fulsome summaries of hundreds of hours of tapes is impossible, Plaintiffs respectfully submit that the lists already submitted are sufficient.

**B.       Spoliation Accusations and Other Existing Lists**

Defendant Havel's Objections [DE 124] allege (with unnecessary malice) that by having undersigned counsel create and submit the lists that were submitted [DE 120 at 6–26], Plaintiffs have engaged in "ALTERING" "CONCEALING" "SPOILING" "EVIDENCE in the entire lawsuit." [Havel Objections, 2 (capitalization in original).] Mr. Havel goes on to allege that by providing the Court with the list that Plaintiffs did, Plaintiff engaged in "a very serious act of Spoliation of some of the main and most essential evidence". [*Id*. at 2–3.] Mr. Havel goes on to allege that Plaintiff has "Intentionally" "altered every tape description to be 'Various Discussions' when the Creators of the tapes used very robust descriptions." Plaintiff does not appreciate or deserve such unfounded

accusations.   Plaintiff has not altered, concealed, or spoiled any evidence—Plaintiff *created* a new list to comply with and pursuant to this Court's Order.  It did not "alter" or "spoil" any evidence in this case or what is physically on the tapes.

Mr. Havel's gripe[1] appears to be that the list created for the Court is not one that Mr. Havel is already familiar with which was created by Plaintiff over the 25+ years that Plaintiff has been in possession of the audio tapes. [*See* Havel Objections 3–6.]  Mr. Havel is correct that there are multiple such lists which have been created by Plaintiff (and the group whose intellectual property Plaintiff owns) over the past two decades. These various lists include some information from the spines of the tapes and also include information added by Plaintiff about what is on each tape.[2]   These lists largely contain a copyright legend at the end such as the one shown below:

> The Telah Foundation has full Intellectual Property rights (with appropriate copyright rights as needed) on all audio tapes and all other intellectual property of the Heaven's Gate Group. Any use, reproduction, or dissemination of any of the intellectual property must receive permission from the Telah Foundation.

As Mr. Havel admits in his Objections, the last time he received such an audio tape log from Plaintiff, he copied and pasted that copyrighted log directly on the internet. [*See* DE

---

[1] Mr. Havel also incorrectly states that Plaintiff was ordered to provide a "List of Audio tapes that were never copyrighted at all."  That is incorrect and there are no audio tapes which were "never copyrighted at all" since "copyright exists ***automatically*** as soon as a work is fixed in a tangible medium."  *Neri v. Monroe*, 726 F.3d 989, 990 (7th Cir. 2013) (emphasis added) (citing 17 U.S.C. § 102(a).

[2] It is well established that compiling such information includes "choices as to selection and arrangement" which "so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." *Pittsburg Tank & Tower Co. v. Preferred Tank & Tower, Inc.*, No. 3:10-CV-32-JMS-WGH, 2011 WL 1465588, at *2 (S.D. Ind. Apr. 18, 2011) (citing *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 348, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

121-1 at 5 ("Here is a sample of the audio tape log Plaintiff[] sent to JHnody that Hjnody sent to Defendant who posted it on his Blog, Sawyer.wordpress.com").]  Given the circumstances, Plaintiff would have to be crazy to provide Defendants with *more* copyrighted material which they will then simply disseminate on the internet as they have done in the past.  (Also, if Defendants already have a list with (1) tape number, (2) recording date, (3) runtimes, and (4) a more detailed description of what is on the tape— why do they need Plaintiff to produce such a list and why do they not just match Plaintiff's list with what they already have?) This is why undersigned counsel, with the assistance of Plaintiff, created the list that was submitted to the Court.

To resolve this issue and balance Plaintiff's concerns that Defendants will simply continue to misappropriate more of Plaintiff's intellectual property, Plaintiff suggests that the Court (1) Order Defendants to email the list that they already have to undersigned counsel, (2) undersigned counsel will confirm whether the descriptions in Defendants' possession are consistent with one or more of Plaintiff's lists for the 486 audio tapes at issue in this case, and (3) Plaintiff's counsel will file the list under seal with the Court. Alternatively, to the extent the Court desires Plaintiff to produce one of the "more detailed" lists (which Defendants already appear to have), Plaintiff requests that this Court first enter a protective order governing this case.  (This Court's Model Protective Order is acceptable to Plaintiff.) Plaintiff also requests that this Court make clear to Defendants that Defendants ***cannot*** disclose to anyone outside this litigation any information they learn from documents produced in the context of this litigation and that they cannot use any documents or information for any purpose other than to litigate this dispute.

### C.   Name of Plaintiff

Mr. Bartel's Objection is that Plaintiff had a "corporate misnomer" in their original complaint and incorrectly put "Inc." at the end of its name rather than "Foundation".  As Mr. Bartel admits, this misnomer is not material in situations such as this. [Bartel

Objections, 6 (citing 19 Am. Jur. 2d Corps. § 1907).] Pursuant to this Court's authorization in the Scheduling Order (permitting amendments until August 15, 2023) [DE 117], Plaintiff is concurrently filing an amended complaint that cures this error.

Mr. Bartel's Objection that copyrights registered under an entity's trade name (The Telah Foundation) cannot be asserted by the company that uses that trade name (The Evolutionary Level Above Human Foundation), is unsupported by law or logic. The only case Plaintiff was able to locate related to this was from over 50 years ago. *Grove Press, Inc. v. Greenleaf Pub. Co.*, 247 F. Supp. 127, 128 (E.D.N.Y. 1965) (Court stating without concern, "It was not, however, until July 7, 1965, that the copyright in said work was registered in the office of the Register of Copyrights in the name of Librairie Gallimard, the trade name of Gallimard.")

### D.    Defendants' Additional Objections

Ms. Weaver and Mr. Havel also appears to raise a handful of additional objections: (1) that Plaintiff's have not provided a complete list of all of their copyrighted material [Weaver Objections, 2 and 6], (2) that Plaintiff has not presented legal proof of transfer of the copyrighted material to Plaintiff [*id.*, 5; Havel Objections at 15]; (3) that Defendants do not agree to an injunction enjoining the creation of derivative works [Weaver Objections, 6; Havel Objections, 15]; and (4) that this Court does not have legal authority to order that copyrighted material be turned over to Plaintiffs [Weaver Objections, 7; Havel Objections, 16]. Plaintiffs respond to each argument in turn below.

### 1.    Complete list of copyrighted material is impossible.

This Court did not Order Plaintiff to create a complete list of all of its copyrighted material, only to list registered and unregistered audio tapes. [*See* DE 117.] As discussed previously, Plaintiff complied with that requirement. This complaint by Ms. Weaver appears to be nothing more than a misunderstanding of Copyright law. As this Court knows, "copyright protection subsists . . . in original works of authorship fixed in any

tangible medium of expression" 17 U.S.C. § 102.  The creation, whole cloth, of a list of every scrap of paper or audio tape or video tape (or other tangible media) owned by Plaintiff which arguably constitutes an original work would be incredibly time consuming—if even possible. Furthermore, it is entirely unclear what relevance a list of *all* copyrighted materials would even have to this case which is focused on the materials identified in the Complaint.

Ms. Weaver's desire for an identification of items in which Plaintiff has legal rights, appears to be an attempt by Ms. Weaver to identify areas where she may continue her copyright infringement with impunity.  If Ms. Weaver is truly looking for a way to discern what is and what is not allowable under the law, the Copyright Act has the answer in 17 U.S.C. s. 106—Ms. Weaver should refrain from copying, reproducing, displaying, distributing, performing, or preparing derivative works *for ANY work created by another person group or entity.*  She should also refrain from aiding, abetting, contributing to, or otherwise assisting anyone else engaging in such activities.  Ms. Weaver knows she did not create the tapes at issue here—she must stop distributing them.

> **2.      Plaintiff has not presented legal proof of transfer of the copyrighted material to Plaintiff**

This is simply incorrect.  *See e.g.*, DE 90 at 2–4.

> **3.      Ms. Weaver and Mr. Havel do not agree to an injunction enjoining the creation of derivative works.**

Ms. Weaver's and Mr. Havel's Objections seems to indicate that they will agree to stop copying, reproducing, displaying, distributing, or performing the copyrighted works at issue in this case—however, they do *not*  agree to not make derivative works. (Weaver Objections, 6, line 1–2).  This, perhaps, is an issue they should take up with Congress.  The Copyright Act grants the copyright owner "exclusive rights to do and to authorize" the "prep[aration of] derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). Either at the preliminary injunction stage or as part of the final injunction, Plaintiff is entitled to an injunction that enjoins *all* infringing activities—including the preparation of

derivative works. Defendants have not articulated any reason why it would be inappropriate to include such language in the preliminary injunction. (Other than an apparent desire to continue to infringe by creating derivative works.)

### 4.      This Court has legal authority to order that copyrighted material be turned over to Plaintiffs.

Ms. Weaver and Mr. Havel question this Court's authority over their "personal" copies of Plaintiff's copyrighted material.   The Copyright act expressly permits impoundment of "all copies" that are either "made *or used* in violation of the exclusive right of the copyright owner*". 17 U.S.C. § 503. Ms. Weaver's and Mr. Havel's playing of audio tapes and plan to make an audio book out of Plaintiff's copyrighted book, are all instances of "use" of these materials in violation of Plaintiff's rights and Congress has authorized this Court to impound such materials (and have such materials destroyed).

RESPECTFULLY SUBMITTED this 24th day of July 2023.

   */s/ Isaac S. Crum*
MESSNER REEVES LLP
Isaac S. Crum (AZ Bar #026510)
(*Pro Hac Vice*)
icrum@messner.com
7250 N. 16th Street, Suite 410
Phoenix, Arizona 85020
Telephone: (602) 641-6705
Facsimile: (303) 623-0552

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below.  A copy of this filing will also be sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4051 26th Lane
Redgranite, WI 54970-7087
jason_bartel@unioncab.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

*/s/ Mary Willson*