**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

~FILED~
SEP 13 2023
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

THE EVOLUTIONARY LEVEL ABOVE
HUMAN, INC.,

　　　　Plaintiff,

　　v,

　　　　　　　　　　　　　　　　　CASE NO. 3:22-CV-395-JD-MGG

STEVEN ROBERT HAVEL, et al.,

　　　　Defendants

---

**DEFENDANT JASON BARTEL'S FIRST AMENDED DEFENSES.**
**COUNTERCLAIM AND EXHIBITS**

**Here follows the Defendant, Jason Bartel's Defense. Defendant identifies the following affirmative defenses upon which Jason Bartel may rely at the time of the trial. Jason Bartel, Defendant respectfully asks this Court that Defendant be able to reserve the right to amend, supplement, restate and/or withdraw any of these defenses or to assert additional defenses. Furthermore by characterizing the following as defenses, Jason Bartel, the Defendant, does not admit that Defendant bears the burden of proof on any of the issues raised by the following defenses.**

**Affirmative Defenses to the Allegations of the Complaint Based Upon Conduct of the Parties:**

**Background of the Events Between the Parties Leading to the lawsuit**

**114.** Defendant was a member of the Group from August to November of 1994. Defendant was planning on leaving Madison. WI in April of 1997 and driving to the western U.S. in the hopes of reuniting with the Group. Defendant had no known contact for the Group but knew that others who had left the Group had also been separated from the Group for years and had been able to rejoin the Group in a serendipitous manner.

115. When the news of the "mass suicide" hit on March 26th, 1997 Defendant knew that Defendant had waited too long to try to find the Group and was desperate for any information that Defendant could find about what had happened. Defendant looked at heavensgate.com and found an address for TELAH Services and sent a letter to the TELAH Services address which was on Greenway Rd. in Phoenix and which later Defendant found out was a mailbox at a Postnet business that was owned by Mark King. The letter was returned to sender stating "not at this address". The address for the Postnet Business was

4757 E. Greenway Rd. #107B  Phoenix, AZ 85032.

116 Several days after this the Defendant noticed that a new address was on
heavensgate.com which stated Right To Know with a Denver, CO address and
Defendant sent a letter to said address containing a phone number to reach the
Defendant at and an offer to help with anything regarding the Group. Shortly
after this Chuck Humphrey ( aka RKK, hereafter Chuck ) called the Defendant.
Multiple phone calls ensued and Chuck put the Defendant in touch with
another former member of the Group, Keith Kampfen ( aka STW, hereafter Keith
) of California, who is now deceased. Chuck encouraged the Defendant to
study the information that the Group had left behind.

117 In early June of 1997 the Defendant left Madison, WI for California to meet
up with Keith. Later that summer the Defendant, Keith, Chuck and Francisco
Falcon ( aka JHN and hereafter JHN ) met at a restaurant in California and
discussed how they would try to do the task of disseminating the Group's
information as the Group used the phrase "disseminate our information" in the
letters that the Group had sent out in several FedEx packages to former members
of the Group in late March of 1997. For example, in the letter ( Exhibit Two A,
page 1 ) to MRC/SRF (Mark King and Sarah King ), the Group stated, "'It is our

desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information". In the letter in Exhibit Two D, page 1 to Mark King and Sarah King the group stated, "disseminating information about what actually happened here". Also, from the same letter in Exhibit Two D, page 1 'We don't know if you'll actually be able to get any of these funds, but if it is possible, we'd like these funds to be available to those who still support the class and want to help get our information out".

Furthermore, the Group had encouraged Chuck to 'distribute' the Group's video tapes ( Exhibit Two B, page 2 ), as well as 'encouraging' the copying of the Group's video tapes,

"our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. ( RKK, you have the original master, we thought you would know best how to duplicate the tapes and where to distribute them for widest coverage ). These tapes can be sent to the media or wherever you feel would be appropriate".

In the Group's Letter to JHN ( Exhibit Two G ) the Group stated,

'We would hope that, should you feel inclined to assist with the dissemination of our information, you would contact some of the following: MRC/SRF, RKK,

OSC ( Oscar or OSCODY ), FLX/ABL or NEO and work together on it to some degree, at least initially".

The former members who were recipients of the packages were Chuck, JHN, Mark King and Sarah King aka MRC/SRF ( one package for the Kings ), Wayne Parker ( aka OSC  and hereafter OSC), Rio Diangelo ( aka NEO ), Lorraine and Floyd Snelson ( aka FLX/ABL and one package for the two of them ). Packages were also sent to the ISP in Tennessee ( Exhibit Two F ) that was hosting heavensgate.com, a Romanian ISP that was to be a backup in case the US site for heavensgate.com was shut down and Simon Boyce and Debbie Geller of the BBC.

118 In June or July of 1997 the Defendant received an e-mail from Mark King that had also been sent to other former members of the Group including Keith and JHN. In the e-mail Mark King attempted  to manipulate Defendant's and others' perception of Chuck and claimed that Chuck was under an "influence" and essentially could not be trusted. It was the Defendant's first indication that some very serious rifts were developing between former members of the Group. 119 Defendant met with Chuck in late July or early August of 1997 in the San Francisco Bay area and Defendant and Chuck decided that they wanted to

continue with a project Chuck had begun of disseminating the Group's information. Chuck had written in an unpublished manuscript that immediately after the Group's "mass suicide" he had received his FedEx package on March 25th ( Exhibit Ten, page 9 ) and had called Mark and Sarah King as they were listed on the document that described those who had received similar packets. Chuck had spent time with Mark King and Sarah King when all of them were out of the Group. Chuck would later write the aforementioned unpublished manuscript detailing many of the events of the aftermath of the Group as well as having several conversations with the Defendant about that subject.

120 Chuck stated that he flew to Phoenix from Denver on March 26th and he and OSC flew to San Diego later that day before the news of the "mass suicide" had broken. Chuck and OSC were on their way to the Residence when they heard about the news on the radio. They chose to turn around and fly back to Phoenix. Chuck stated that at about 3 AM Mark King called him as Mark was upset that the TELAH Services address was still on heavensgate.com. Chuck had been given the disks from the Group with their last statements and instructions for Chuck to upload the Group's last statements to the site. Chuck was unable at the time that Mark King called him to remove the TELAH Services address as the

site was too busy. Chuck was able to remove the address at a later time and that is why I saw the Right To Know address in Denver on the site and sent the aforementioned letter to Chuck in late March of 1997.

121 Chuck stated that Do ( aka Marshall Applewhite ) had called him in late 1996 and asked him to set up a mailbox with the name Right To Know.
Later Chuck asked Do for permission to incorporate Right To Know as a business entity and Do approved so Chuck had Right To Know Enterprises created in Colorado.

122 On the morning of March 27th, 1997 Chuck stated that he met with Mark and Sarah King and OSC in a parking lot in Phoenix at 7am as the Kings were afraid of the authorities. At that meeting Chuck stated that the Kings gave him and OSC all of " their paperwork they got from the class ( the Group ) along with two sets of keys to all of the cars and trucks the class had parked in a San Diego airport parking lot" ( Exhibit Ten, page 12 ).One of these cars, a Lincoln Continental, was given to Chuck by the Group as outlined in the document prepared by the Group. Defendant and Chuck later used the Lincoln to drive between California and Colorado/Wyoming and back. Two other vehicles were given to OSC by the Group as per the aforementioned document. ( Exhibit Two

C )

123 Chuck and OSC flew back to San Diego on March 27th, 1997 to retrieve some of the cars and to check on the storage locker. Chuck gives detailed information in his manuscript that it was locker units 214 and 147 at a storage facility on Barham Dr. in Escondido, CA. He stated that the rental agreements were signed by Tom Nichols ( aka DSTODY ) and Cabot Van Sinderen ( OLLODY ) and money orders in the amount of $80 to cover the rent on the two storage lockers through April of 1997. Chuck stated that he and OSC retrieved "about 6 or 7 boxes of audio cassettes and several other boxes of Beyond Human tapes" ( Exhibit Ten, page 14 ). According to Chuck there was not enough room in the Lincoln Continental for all the contents of the storage locker. Chuck and OSC then left in the Lincoln and picked up a Mazda van that the Group had designated for OSC and transferred some of the Lincoln's contents to it and drove back to Phoenix.

124 Chuck stated that OSC "put his tapes in the storage locker he rented in Phoenix" and Chuck then drove OSC to the airport so that he could fly back to San Diego to try to retrieve the rest of the items from storage. ( Exhibit Ten, page

14 ). Chuck drove to Denver and placed the tapes that he retrieved in a storage locker there. Chuck received a phone call in Denver from OSC concerning how a lock had been placed on the storage locker by the San Diego County Sheriff.

125 Chuck stated that at a meeting with Mark King at a Mexican restaurant in April of 1997 that,

'MRC was saying that TOM ( note: TOM was Jerome Weinstein, an Attorney ) wanted to form some kind of entity to be able to get all the rights to Heaven's Gate stuff including copyrights on all the web pages and their logos, etc. He said there can me ( sic ) 10's of millions at stake'. ( Exhibit Ten, page 22 ).

126. Defendant had numerous conversations with Chuck in which Chuck related the details of the meeting Chuck had with Mark King in April of 1997. Chuck had made the decision at that point to take the same step as those thirty-nine members of the Group and Chuck was preparing to leave this world by his own hand.

Mark King earnestly asked Chuck for the Group's audio tapes that Chuck had retrieved from the San Diego storage locker. Chuck told Mark King that Mark King could have the tapes if Mark promised to make them available to any who would want to hear them. Mr. King repeatedly told Chuck that

the tapes would be made available. Chuck admitted to the Defendant that Chuck did not trust Mark King to keep his word but since Chuck was planning on ending his existence in this world he reluctantly gave the Group's audio tapes to Mark King. Unbeknownst to Mark King, Chuck had made copies of tapes 1-218. Tapes 1-218 were the tapes that the Defendant and Chuck later digitized and gave away to Universities, Libraries and to anyone who would ask for them for the cost of shipping. Defendant still has many of these CD-ROMs and will give them away as soon as this Court case has concluded in favor of Defendants.

127 Defendant and Chuck were living together in Big Bear, California in late 1997 when they were digitizing the Group's audio tapes and they were told the following in an 11/17/97 e-mail ( Exhibit Four ) from Mark and Sarah King, "Please discontinue any reproduction and dispersal of audio tapes in any form. Please give all of us the time to work out the best solution in this matter. We promise they will be made available when the right decision is arrived at". Defendant is now aware that this e-mail was sent after the TELAH Foundation had copyrighted 486 of the audio tapes produced by the Group and that e-mail did not constitute a cease and desist order.

57

128 In the fall of 1997  Defendant and Chuck put the Group's audio tapes in

CD-ROM form in the Library of Congress and numerous other libraries as well

as many of the videos produced by the Group and the First Edition of the book

that the Group wrote ( Exhibit Eight  ) The Defendant moved back to Wisconsin

in January of 1998 with many of the CD-ROMs that he still has and Chuck's

body was found in the Arizona desert in February of the same year. Chuck left

Right to Know to his daughter as she lived in California and had access to

Chuck's computers and other things that he used to run Right To Know. Chuck's

daughter was sued ( Exhibit 18 ) by Mark King, Sarah King, The Evolutionary

Level Above Human Foundation, Inc. ( allegedly ) and Wayne Parker ( OSC ) in

March of 1998 just one month after her Dad took his own life. Chuck's daughter

told Defendant that Mark King had threatened to 'take her houses' as she had

numerous properties in southern California. Chuck's daughter seemed frightened

when the Defendant spoke to her on the phone in March of 1998 and the

Defendant told her that this wasn't her fight and that she should

give Mark King and Sarah King whatever they wanted and not take them on in

court.

129 The Defendant has made numerous attempts to disseminate the Group's audio tapes, video tapes and book in the intervening twenty-four years. Defendant has given away all but one of Defendant's First Edition books that Defendant was given by Chuck and has never tried to sell any of the CD-ROMs that Defendant still has. Defendant has been very vocal online in Defendant's criticisms of Mark and Sarah King and how the Kings have not allowed Defendant and many others to have access to the Group's audio tapes. In 1998 the Defendant sent Mark King an e-mail in which Defendant told Mark King that Defendant would pay for the copying costs of the remaining unreleased audio tapes. Defendantwas told by Mark King that Defendant had to "apologize" because the Kings had spent so much money on lawyers. Mark King stated that it was at least partially the Defendant's fault that the Kings had chosen to spend so much money on lawyers. Defendant admits telling Plaintiff Mark King in very coarse language that that apology would never happen.

130 Defendant and the Kings  have been feuding online for the past twenty-five years and Defendant believes that the Kings had Defendant's freewebs blog shut down in @2009 for a copyright violation as Defendant had an audio tape from 1994 produced by the Group on the website. Defendant

received said tape from Chuck and still has the original cassette. Defendant had also transcribed the letters that the Group sent to Mark King and Sarah King in the FedEx package and had a link for the 4shared site that Defendant had uploaded 224 of the Group's audio tapes to as well as many of the Group's videos.

131 Defendant is aware of numerous individuals online who are selling materials that have been Copyrighted and/or Trademarked by 'The Telah Foundation' and 'The Evolutionary Level Above Human Foundation, Inc.', including multiple sites where the CD-ROMs that the Defendant and Chuck created are being sold. ( Exhibit Nine ). Defendant strongly believes that Mark King and Sarah King are using an alleged corporation to sue Defendant solely for personal reasons as Defendant has continued to be vocal online in Defendant's criticisms of the King's withholding of the Group's audio tapes. Defendant believes that this lawsuit was filed at least partially due to the King's knowing that Defendant works at a Taxi Company and that Defendant most likely cannot afford an Intellectual Property Attorney.

132 Defendant is aware that Mark King told Chuck in 1997 that Defendant and another former member of the Group"may not have enough Next Level mind to

listen to the audio tapes" ( Exhibit Seven ). Defendant strongly believes that

Mark King and Sarah King do not feel that anyone is worthy of listening to the

Group's audio tapes unless they are ABC or HBOMAX as Defendant strongly

believes that the Group's audio and video tapes licensed were licensed to ABC

and HBOMAX for two recent documentaries. Defendant strongly believes that

Mark King and Sarah King will never let Defendant have access to the Group's

audio tapes and therefore Defendant was very excited to learn from Defendant

Havel that JHN was sending Defendant Havel close to seven hundred of the

Group's audio tapes. Defendant was also very excited to finally be able to share

these audio tapes with anyone who would like to listen to them including a

College Professor whom the Defendant sent a thumb drive containing audio

tapes 1-929 produced by the Group. This Professor has stated that he's willing to

state that Defendant sent the Professor the thumb drive at no cost. Defendant has

publicly disagreed with said Professor's conclusions about the Group but would

still give the Professor the thumb drive no matter what the Professor stated about

the Group. Defendant believes in freedom of access to information and that it was

the clear intention of the Group as delineated in the letters that the Group sent in

the FedEx packages to multiple ex-members of the Group that the Group's

"information" be "disseminated" as the phrase "disseminate our information" or variations thereof are used multiple times in the Group's letters to ex-members. The terms 'copyright' and 'trademark' do not appear anywhere in the Group's last letters to multiple former members of the Group ( Exhibit Two A )

Herein concludes the affirmative defenses of the defendant, Jason Bartel

# COUNTERCLAIM

Defendant Jason Bartel identifies the following Counterclaim upon which Defendant may rely at the time of trial or in the case of a Summary Judgment Motion. Defendant respectfully asks to reserve the right, however, to amend, supplement or restate any of these Counterclaims or to assert additional information to support this Counterclaim. Defendant specifically requests to amend Defendant's Counterclaim if a legal entity or entities are named as Plaintiff or Plaintiffs in the case before this Court.

Defendant has asserted in Defendant's Response to alleged Plaintiff's First Amended Complaint that alleged Plaintiff, 'The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation' is not a legal entity

Incorporated in the state of Arizona with the capacity to sue. Defendant

also contends that alleged Plaintiff has not submitted an amended Corporate

Disclosure Statement with alleged Plaintiff's First Amended Complaint.

Therefore, alleged Plaintiff's Attorney, Isaac S. Crum, has only agreed to

represent the alleged corporate entity, 'The Evolutionary Level Above Human,

Inc.' in the case before this Court as per the Corporate Disclosure Statement

signed by Isaac S. Crum on May 18, 2022. Alleged Plaintiff appears to be

confused about the true and legal name of Plaintiff and whether or not Plaintiff

is an 'Arizona 501(C)(3) Nonprofit Corporation' as per alleged Plaintiff's instant

complaint, or an 'Arizona nonprofit corporation' as per alleged Plaintiff's First

Amended Complaint. Defendant does not believe that 'The Evolutionary Level

Above Human, Inc.' is a legal, Incorporated entity nor does Defendant believe

that 'The Evolutionary Level Above Human Foundation d/b/a The Telah

Foundation' is the true and legal name of an entity Incorporated in the state of

Arizona. Therefore, Defendant will not name either "The Evolutionary Level

Above Human, Inc. or 'The Evolutionary Level Above Human Foundation

d/b/a The Telah Foundation' as a Counter Plaintiff in Defendant's Counterclaim.

　　For the purposes of Defendant's Counterclaim, Defendant will be

using the true and legal name of the Arizona Corporation that owns the

trademark registrations in alleged Plaintiff's Exhibits C and D, The

Evolutionary Level Above Human Foundation, Inc. Defendant will add d/b/a

The Telah Foundation to 'The Evolutionary Level Above Human Foundation,

Inc.' in Defendant's Counterclaim as alleged Plaintiff's Exhibits A, B, E, F and G

are registered in the name of The Telah Foundation. Furthermore, the Settlement

Agreement in Defendant's Exhibit 12 involved San Diego County and

Mark King and Sarah King on behalf of The Telah Foundation. Moreover, in

Defendant's Exhibit 18, page 1, 'The Telah Foundation' is identified as the

'DBA' or 'doing business as' of 'The Evolutionary Level Above Human

Foundation, Inc.'

By adding 'd/b/a The Telah Foundation' to the true and legal name of the

Arizona Nonprofit Corporation, The Evolutionary Level Above Human

Foundation, Defendant is not acknowledging that 'The Telah Foundation' is the

true and legal name of an Incorporated entity with the capacity to sue.

Defendant is only acknowledging that 'd/b/a The Telah Foundation' is the 'doing

business as' or 'trade name' of 'The Evolutionary Level Above Human

Foundation, Inc.'

In support of Defendant Jason Bartel's Counterclaim against 'The

64

Evolutionary Level Above Human Foundation, Inc. d/b/a The Telah

Foundation', hereafter to be referred to as The Evolutionary Level Above Human

Foundation, Inc. d/b/a The Telah Foundation and individually referred to as

Counter Defendant, the Defendant Jason Bartel to be referred to as Counter

Plaintiff hereby asserts the following:

The Heaven's Gate group has been publicly acknowledged to have ended

on or before March 26, 1997. Counter Defendant, The Evolutionary Level

Above Human Foundation, Inc. d/b/a The Telah Foundation was not

Incorporated in the state of Arizona until September 23, 1997 ( Exhibit `1, page

1 ). Therefore, the Heaven's Gate Group did not legally transfer any of the

Group's Property to Counter Defendant as Counter Defendant was Incorporated

almost six months after the publicly acknowledged end of the Group.

Furthermore, Counter Defendant has provided no written proof of a legal

transfer of property from the Group to Counter Defendant. Moreover, the

litigation with San Diego County ( Counter Plaintiff's Exhibits 11 and 12 ),

which transferred some of the Group's Property to 'The TELAH Foundation',

was induced through fraud. Alleged 'President Mark King' of 'The TELAH

Foundation' claimed in a September 19, 1997 creditor's claim with San Diego

County that The Telah Foundation was a 'corporation' ( Exhibit 46 ). As per

Exhibit 47, as of June 21, 2023 The Telah Foundation is the 'trade name' of The

Evolutionary Level Above Human Foundation, an 'Arizona Corporation'. As

per Counter Defendant's Exhibits C and D 'The Telah Foundation' is the 'DBA'

( doing business as ) of the 'The Evolutionary Level Above Human Foundation (

Arizona Corporation )'. Per Counter Plaintiff's Exhibit 1, page 1 The

Evolutionary Level Above Human Foundation was Incorporated in the state of

Arizona on September 23, 1997.

Therefore, the September 19, 1997 creditor's claim signed by alleged

'President Mark King' of d/b/a 'The Telah Foundation' was signed four days

prior to the Incorporation of The Evolutionary Level Above Human Foundation

in the state of Arizona.

Furthermore, Counter Defendant's Exhibits B, F and G are copyright

registrations in the name of 'The Telah Foundation' with registration dates prior

to the Incorporation date of September 23, 1997 for 'The Evolutionary Level

Above Human Foundation'. Counter Defendant's Exhibit A is a copyright

registration in the name of 'The Telah Foundation' from October of 1997.

Therefore, alleged Plaintiff registered copyrights using the name of 'The Telah

Foundation' both prior to and after the Incorporation of 'The Evolutionary Level

Above Human Foundation' in the state of Arizona on September 23, 1997.

Thus, Counter Defendant's copyright registrations in Counter Defendant's Exhibits A, B, F and G are alleged to be owned by the 'd/b/a' or 'trade name', The Telah Foundation. As a 'd/b/a' or 'trade name' is not an Incorporated, legal entity, a 'd/b/a' or 'trade name' cannot own property, enter into contracts or has the capacity to sue. Furthermore, the California Superior Court, County of San Diego Ruled in February of 1999 that Mark King and Sarah King, on behalf of The Telah Foundation, had no rights to the Group's intellectual property that were registered for copyrights in the name of The Telah Foundation in 1997 ( Counter Plaintiff's Exhibit 11, page 6 ). As per Counter Plaintiff's Exhibit 19, page 4, § 9, the San Diego County Counsel asserted that The Telah Foundation's copyright registrations were obtained fraudulently.

Counter Defendant has claimed on the trademark registration certificate in Exhibit E that 'The Telah Foundation' is an 'Arizona Corporation' and yet Counter Defendant has identified The Telah Foundation as a 'd/b/a' in the Title of Proceedings and in Counter Defendant's Exhibits C and D. Therefore, Counter Defendant has provided conflicting information to this Court regarding the alleged entity named 'The Telah Foundation' as Counter Defendant has claimed in Exhibit E that 'The Telah Foundation' is an '( Arizona Corporation )' while also identifying 'The Telah Foundation' as the 'DBA' of The Evolutionary Level Above Human Foundation, Inc. in Exhibits C and D.

Counter Plaintiff respectfully requests a declaratory judgment action for invalidity, unenforceability, and if applicable, cancellation of The Telah Foundation's asserted trademark and copyright registrations for the reasons stated above.

Lawful "use in commerce" is required for registration of a mark under the Lanham Act. If the registrant's use is not lawful, it is not entitled to federal trademark registration and, if registration has erroneously been granted by the Trademark Office, it cannot be asserted as the basis for enforcement of rights. Such a registration is subject to cancellation. Upon information and belief the registration of the E.B.E Visual Work is not presently on sale nor has it ever been by the registrants. These registrations are abandoned and are therefore invalid and unenforceable, as is the registration for the Audio Works as they have never been for sale by registrants.

15 U.S.C. 1119 grants district courts the power to order the cancellation of any registration in whole or in part. The Counter Defendants registration of the Audio Works, Video Works and Visual Works should be canceled pursuant to 15 U.S.C. 1064 on the grounds of abandonment, fraud on the Copyright and Trademark Offices and the above statements.

The Literary Work had a Common Law Copyright ( Exhibit Three ) placed on said Literary Work by the Group that allowed anyone to reproduce the Group's Literary Work. Counter Defendant, who had no hand in creating the Literary Work, obtained a Copyright for the Literary Work with no instruction from the Group to do so.

Upon information and belief Do, the leader of the Group and the Group members did not wish for any of their Audio and Video Works to be placed under copyright or trademark registrations that would restrict their usage or viewing by the public, quite the opposite, the Group wished for their Property to be shared and disseminated to the public in all their entirety and with the only restriction being that it could not be altered or used for commercial purposes. Counter Defendant has gone directly against Do and the Group's wishes in Counter Defendant's handling of the Property left behind by the Group. Counter Defendant, with no proof, alleges that two separate judges had awarded Counter Defendant sole ownership of all the Groups Property. Counter Defendant obtained all the Group's Property via the illegal and/or illegitimate transfer of Property described in Defendant's Answer to alleged Plaintiff's Complaint in Paragraph 8.

Counter Defendants have stated that they received packages, faxes, emails,

written correspondence and telephone calls from Do and other members of the Group stating that all of the Group's Property was transferred to Mark King and Sarah King and yet Counter Defendant has never provided any proof to Defendant or any other person or persons of Counter Defendant's claims of said transfer of the Group's Property.

Counter Plaintiff respectfully requests a declaratory judgment action for invalidity, unenforceability, and if applicable, cancellation of the asserted trademark and copyright registrations for the reasons stated above.

WHEREFORE, Counter Plaintiff prays that after due proceedings be had, there be judgment rendered in Counter Plaintiff's favor against Counter Defendant, as Counter Plaintiff Bartel believes that Counter Defendant, The Evolutionary Level Above Human Foundation, Inc. d/b/a The Telah Foundation, has filed a frivolous lawsuit with malicious intent that is wholly without merit. Counter Plaintiff's respectfully requests the following further relief of this Court:

A declaration and order declaring The Evolutionary Level Above Human Foundation Inc. d/b/a The Telah Foundation's copyright and trademark registrations invalid and unenforceable;

If applicable a declaration and order canceling the registrations of The
Evolutionary Level Above Human Foundation d/b/a The Telah Foundation in
whole or in part and directing the Director of the United States Patent and
Trademark Office to correct the Principal Register of copyrights and trademarks.

A declaration and order declaring that all claims to the Group's Property by The
Telah Foundation are null and void as The Telah Foundation is not a
'corporation' and the Public Administrator of San Diego County is to be the
administrator of the Heaven's Gate Group's Property as per intestate succession
law.

If an attorney is granted by this Court or Counter Plaintiff obtains an attorney on
a contingency basis an award of reasonable attorney's fees;

An award of damages, interest and costs commensurate with what Counter
Defendant is claiming should be awarded by the Court and any other damages

the Court deems necessary for Counter Defendant's malicious intent in filing a

frivolous Complaint against Defendants Jason Bartel, Steven Havel and Cathy

Weaver. Counter Plaintiff Jason Bartel strongly believes that Counter Defendant,

The Evolutionary Level Above Human Foundation, Inc. d/b/a The Telah

Foundation, filed this Civil Action against Defendants in an attempt to

economically ruin, harass and intimidate Defendants.


Such other and further relief as this Court shall find due under the law or in

equity.


Jason Bartel
N4051 26th LN
Redgranite, WI 54970
jason_bartel@unioncab.com

Defendant

7/10/2023