Note: The audio tape cassettes were stacked front and center in the storage room. The items of value clearly include the audio tapes.

Next the letter addresses not being concerned with the contents of the house at Rancho Sante Fe saying the owner of the house, Sam "could have whatever valuables are there".

Regardless, again it talks about "this project". What project were they referring to? Anyone that knows TI and DO's Mind from their countless references in their many materials, audios, video's, Their Book, etc. knows while they were here they were always wanting people to learn about them and their information. That's the only project that was left after they exited. This is further revealed later on.

(iv.) "We are hoping, of course, to use this site as an alternate way to access our information in case the authorities shut down our sites in the States"

Note: This clearly shows one sample of what the project is - to make sure their information is made available, so much so that they sought a company off shore from the US in case the US shut down the US host of their website. About this they said,

They had at the time at least 3 websites called Heavensgate.com, LevelAboveHuman.com, and Heavensgatetoo.com. Rkkody had made Righttoknow.com and Rkkody.com and Mark and Sarah King misled the Courts by indicating Rkkody was selling his T shirts, etc. on the Heavensgate.com website he was in control of by DO's instigation for a number of the first months after the Class exited their human bodies.

(v.) "he tried to make the point with us on several occasions that their intention was to be as objective as possible. So whether or not that is possible (for the media to remain objective) at least his frame of mind attempts to lean in that direction. His producer/director, Debbie Geller, at a later time made another sincere attempt to try to convince us to participate in their documentary."

Note: The Group went on to describe their "preferred media contact, Simon Boyce who worked for the BBC at that time working out of the CBC Office - Canadian Broadcast Company - in New York who wanted to use them in a "major documentary about UFO's and paranormal".

Note: Again, it showed The Group wanted Mark and Sarah King to follow through with offering to the media their information.

These letters arrived on March 25th in a fed x package that other former dropout classmembers received copies of some of. They next mention in this letter "this event" that in context seems to be clearly talking about their planned exit of their human vehicles that Mark and Sarah King would have known about by then. They go on to say:

(vi.) "So, for this reason, we are recommending that they be involved to some degree in the coverage of this event, that is, if their attitude seems to remain somewhat objective and you find working with them not too difficult."

So They were hoping Mark and Sarah, "you" to whom this letter was addressed would seek to at least explore working with Simon and Debbie if it wasn't "too difficult". These two are media people who were interested in the group for their documentary. But even after saying what they would choose for Mark and Sarah King to do (if it felt right) they stated:

(vii.) "Of course this is contingent upon whether or not you should choose to say anything to the media on our behalf."

As is the way of the Next Level as taught by both TI and DO that shows lots of evidence of throughout the audio tapes, they don't push people or guilt them or manipulate people into working for/with them. They always said that's what the lower forces do. That's what many humans do with one another. Since the Next Level doesn't need any humans for anything, they require us to want to work for them and to prove it to them by choosing to work for them in the ways they primarily reveal to us, which they are showing some of the ways in this letter. This "hope" they had that some would take on this project of dissemination of their information is echoed throughout their book, "Heaven's Gate" - How and When The Kingdom Level Above Human May Be Entered" - "an anthology of their materials". They state their highest intention for Mark and Sarah to choose to take on by saying again:

(viii.) "We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about"

Note: "more thorough knowledge"? Wasn't the web site's content of their Book "Heaven's Gate" - How and When The Kingdom Level Above Human May Be Entered" - "An Anthology of Our Materials" (that included the transcripts of the videeo series, "Beyond Human - The Last Call" - that they sent SVHS masters to JHN and sent VHS copies to others in the list, and the exit video's and other documents given to Rkkody to post on his Right to Knpow website, all made before their exit in March of 1997 providing that "opportunity for more thorough knowledge of who we are and what we're about?" What other material could give a more thorough knowledge of who we are and what we're about?" What's not obvious to a casual

reader of this letter is the fact that in that storage room there were some 1061 audio tapes that were more than that in hours from the internal meetings of TI and DO and/or DO (after TI exited in 1985) to their student body from 1982 to 1997.

(ix.) "Hopefully, you will be able to work together with some of the following: OSC, RKK, JHN, FLX/ABL and NEO (who is currently working for a company in LA called InterAct Entertainment)."

Note: Then they go on to list another person whom wasn't a member of the classroom, never had been while all those mentioned once were members of the classroom and even asked that he be provided with "housing" at OSC's apartment. Here is what is said about Soeren:

(x.) "There is also a recent correspondent from Germany by the name of Soeren (we couldn't remember if we mentioned him to you or not), who has been trying to make it to the US to meet with us. OSC is in contact with Soeren and has offered Soeren housing at his apartment. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it."

One of the objections Mark and/or Sarah had made to not considering Sawyer (SWY aka Swyody) and Carlan (CRL aka Crlody) as recipients of that division of audio tapes ("items of value" to showing "a more thorough knowledge of who we are and what we're about" (as found in storage)) was because niether Sawyer nor Carlan were in the names mentioned, even though in that instruction the wording didn't limit who was to receive some portion of the audio tapes.

Yet among those names none including Mark and Sarah (MRC and SRF) showed any more of being "inclined to disseminate our information".

Mark and Sarah at the time of receiving this letter chose to send Rkk and Osc to storage to retrieve the "items of value", perhaps not even knowing what the items of value actually were. When Rkk and Osc opened the door according to CRL who worked with RKK and heard from RKK his account of going to storage CRL told me that RKK said the boxes of audio tapes were stacked right up front. Rkk only took one of the boxes and it contained some 484 audio tapes. He then divided them in some way and copied some 218 of them and gave all the masters to Mrc/Srf because by then they wanted to have them. RKK then proceeded to copy them and digitize them and put them on cd's and sent them to some libraries of at least one university and to certain individuals that included SWY who met with him in 1995 near Boulder, Colorado and stayed in communication until he exited his vehicle for the second time in 1998.

Sawyer has as evidence those cd's and they can still be read and they show the postmarks of 1998 which proves they were not in the storage room when a judge from San Diego County gave Mark and Sarah the intellectual rights to the contents of that storage room. Those digitized audios were gifted to me from Rkkody who was on the list of those who would certainly be among the ones DO and Crew hoped would disseminate their information. Mark and Sarah had no instructions to copyright any of those tapes. So those copyrights are in dispute. Furthermore, it was JHN (Juan) who gifted Sawyer a thumb drive containing those 218 audios and another some 712 audios and JHN was another name mentioned by DO on the list of others MRC/SRF should try to work with. Mrc/Srf gave them to JHN and JHN has testified that he believed they weren't meant to be locked up in storage so he gave them to me. We have evidence that Mark and Sarah were very upset that JHN was going to give them to

Sawyer. Thus all those audios were gifted to Sawyer and Sawyer gifted them to Carlan and Carlan and Sawyer have been gifting them to others and not receiving any payment for them.

(xi.) "We also asked OSC to register the Heaven's Gate book with the Library of Congress and that if he needed any funds to accomplish this, that you would cover it out of the project funds that you have on hand."

Note: This seems to be evidence that DO didn't intend for Mark and Sarah (TELAH) to copyright the audios anything they retrieved from storage. In other words, DO and Crew were very thorough and even planned to give the task of registering their book with the Library of Congress to Oscody – Wayne Parker, someone who had just found DO and Crew after being sent out of the Class in 1976 with the 19 from the Wyoming Campground area in Medicine Bow National Forest.

As said earlier, even though they showed their intentions all throughout this letter, they still wanted Mark and Sarah to have the opportunity to choose "other options" to "these tasks" and have the freedom to "exercise any available options with whatever timing feels right for your own next step":

(xii.) "Also we want to make it clear that we're certainly not asking you to do these tasks if, after receiving this information, circumstances make it too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step. No doors are closed to you.

We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some. Our hearts are with you, and we appreciate your help on all this.

126

Good Luck.

The Class"

(xiii.) "Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format -  our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. (Rkk has the original master in his packet). These tapes can be sent to the media or wherever  you feel would be appropriate."

So the only intellectual property Mark and Sarah were sent directly was two videotapes and several letters. Rkkody was given the most by a long shot yet Mark King and Sarah King made it look to the Courts as Rkkody having little to no role. DO knew Mark and Sarah could not be trusted to do the right thing so they had little to do with any of the intellectual material except for the audio tapes.

## VI. CONCLUSION

Here concludes Defendant Stephen Havel's Defenses.

## COUNTERCLAIM

Defendant Stephen Havel identifies the following Counterclaim upon which Defendant may rely at the time of trial. Defendant respectfully asks to reserve the right, however, to amend, supplement, restate any of these Counterclaims or to assert additional information to support this Counterclaim.

In support of Defendant, Stephen Havel's counterclaim against the Plaintiff's The TELAH Foundation hereafter to be referred to as Mark King and Sarah King and collectively referred to as Counter Defendants. The Defendant Stephen Havel to be referred to as Counter Plaintiff hereby assert the following:

A.    **COUNT I – COUNTER DEFENDANTS ILLEGALLY COPYRIGHTED DO AND THE CLASS' BEYOND HUMAN – THE LAST CALL VIDEO TAPE SERIES (7 TAPES) AND FOUR OTHER VIDEO TAPES;** "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit, DO MADE IN 1992, 1996 AND 1997

1.  Upon Information and belief, the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO in Case No. PNO22228 between Petitioners, The Telah Foundation (Mark King and Sarah King) vs the Public Administrator of the estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased, (having consolidated all the estates of the 39 deceased), that concluded on January 13, 1999 with a STATEMENT OF DECISION by Judge Lisa Guy-Schall, under the section: FINDINGS OF FACT AND DECISION, paragraph 3 concluded:

"3. Regarding the ownership of Intellectual property, this Court determines that

the estates own all Intellectual property interests together with the tangible assets from which those Interests are derived. This determination is based upon the following findings of fact: Although Petitioners presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" **the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity")**; the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do."

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually signed by the decedents except the Durable Power of Attorney, which became void upon their deaths. "**(Exhibit 12 - Case PN022228 – Statement of Decision Feb 2nd 1999 by Judge Lisa Guy-Schall - Section: FINDINGS OF FACT AND DECISION, Paragraph 3)

2. Therefore, upon Information and belief, Counter Defendants have illegally registered copyrights for DO and The Classes Video Tape Series of 7 tapes entitled, Beyond Human – The Last Call – as the Telah Foundation, Registration PA0000867224 09-22-1997 (Video Works).

   (a.) In 1992 DO and The Class created the Beyond Human – The Last Call Video tape series thus automatically held a copyright by being the creators of the works. This fact is shown on the video tape jackets the Group made, as "Copyright 1992 by Total Overcomers

Anonymous" that Counter Plaintiff non-exclusively possesses. (Exhibit 11 - Heaven's Gate Copyright of 1992 Beyond Human - The Last Call Video tape jacket)

(b.) Counter Defendants knew when they received some Beyond Human – The Last Call Video's that there was a Copyright on the tape jackets as shown in paragraph (a) above in Exhibit 11 but chose to copyright the video tapes anyway. This is an effort to defraud the Copyright Office and Judge Lisa Guy-Schall's Court by presenting that falsified copyright registration to Judge Guy-Schall's Court..

3. Therefore, upon Information and belief, Counter Defendants have illegally registered copyrights for DO and The Classes Video Tapes entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Planet About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit" and "Students of Heaven's Gate Expressing Their Thoughts Before Exit"

4. Plaintiffs Impossible Claims of receiving proof of transfer from DO and The Class:

(a.) Plaintiffs Claim their proof of transfer of DO and The Classes Material to the Telah Foundation is their Consent Decrees obtained from two Courts in 1999, but that is impossible because Plaintiffs registered their copyrights in September and October of 1997 long before receiving any Consent Decrees from either Court Case.

(b.) Plaintiffs used this obvious attempt to obstruct justice most recently in PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS to Plaintiff's proposed Preliminary Injunction" (DE 131 at I.D.2) where in response to Defendants objection that, "Plaintiff has not presented legal proof of transfer of the copyrighted material to Plaintiff", by responding with, "This is simply incorrect. See e.g., DE 90 at 2–4." **Plaintiffs state in pages 2-4 that the Consent Decree from Judge Lisa Guy Schall ordered after the Statement of**

Decision is that proof of transfer from the Heaven's Gate Group to The Telah Foundation, but they received that decision in 1999 and the Heaven's Gate Group were deceased in 1997, over 1 ½ years before that Consent Decree. Also, Plaintiffs received the Consent Decree over a year after they registered the copyrights in September and October of 1997.

5. **There was no valid Assignments of Transfer provided to any of the Courts**

In the copyright registration of these Video Works, in section IV of Claimant's Transfer, seeking to transfer rights from Total Overcomers Anonymous to The Telah Foundation, the transfer is listed as "pursuant to assignments" yet there never were any assignments provided to any of the three Court cases where this copyright registration was provided as an exhibit. In fact in the following document by Counsel for San Diego County:

JOHN J SANSONE, County Counsel, By Cheryl K. Carter, Deputy in the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO Case No. PN 022228 - OBJECTION TO PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY'S FEES (PROBATE CODE §9860) filed on JULY 17, 1998, in Section II they wrote:

"PETITIONERS ADMIT DECEDENTS OWNED INTELLECTUAL PROPERTY AND STATE THEY OBTAINED THE RIGHTS BY ASSIGNMENT BUT FAIL TO ALLEGE FACTS TO SUPPORT SAID ASSIGNMENT.

Petitioners make much of their copyright registrations after Decedents' deaths, stating in their applications that the Telah Foundation was copyright claimant "pursuant to assignments".

It is clear that the Decedent's Intellectual Property included common law trademarks/trade names, including Domain names and several unregistered copyrights. No assignments accompany the petition and several questions arise, were these pre-death assignments? Were the DPOA's used to execute these assignments? Was this a result of undue influence? On the other hand if they were post-death assignments, what authority did they have to so execute? All of these queries and issues rebut the so-called "prima facie" validity of their copyrights." (Exhibit 19 – San Diego County – Attorney Sansone's Objection to Petition to Determine Ownership of Estate Property ROA 74 Case File Contents 2-3 [173-179]- Section II re: No evidence of legitimte copyrights provided)

## B.    COUNT II – COUNTER DEFENDANTS ILLEGALLY COPYRIGHTED DO AND THE CLASS' 486 AUDIO CASSETTE TAPES

1.  Upon Information and belief, the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO in Case No. PNO22228 between Petitioners, The Telah Foundation (Mark King and Sarah King) vs the Public Administrator of the estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased, (having consolidated all the estates of the 39 deceased), that concluded on January 13, 1999 with a STATEMENT OF DECISION by Judge Lisa Guy-Schall, under the section: FINDINGS OF FACT AND DECISION, paragraph 3 concluded: "3. Regarding the ownership of Intellectual property, this Court determines that the estates own all Intellectual property interests together with the tangible assets from which those Interests are derived. This determination is based upon the following findings of fact:

Although Petitioners presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; and **the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do."**

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually signed by the decedents except the Durable Power of Attorney, which became void upon their deaths.** "(Exhibit 12 - Case PN022228 – Statement of Decision Feb 2nd 1999 by Judge Lisa Guy-Schall - Section: FINDINGS OF FACT AND DECISION, Paragraph 3)

(The Audiotape Library of Heaven's Gate by TI and Do contains the alleged 486 audio tape cassettes Mark King and Sarah King, as The Telah Foundation Officers have an illegitimate copyright registration for).

2. Upon Information and belief, Plaintiffs have gone against the wishes of DO and The Class by copyrighting 486 audio tapes without any legal signed documentation from DO and The Class to legally justify their copyright registration.

(a.) Rkkody, otherwise known as Chuck Humphrey and Right to Know also had instructions, in the form of a letters he received on March 25, 1997 via Fed Ex packages, from DO (and

his Crew of Students (aka heretofore as, "The Class")), the remaining leader of the Heaven's Gate group, to assist, with at least 7 other former members and others who chose to participate, in the "dissemination project" of all their Intellectual Property The Class left behind that The Class Distributed some of, to these 8 before they chose to self exit their human bodies, and by obtaining all the contents of the storage locker and to divide the ~~articles~~ "items of value" in that Storage among ~~to~~ those who wished to take on the task of disseminating the groups left behind information. (Exhibit 13 - MRC & SRF Letter from The Class - Rkkody's participation and the "items of value" in Storage (Audio Tapes))

(b.) After Mark King and Sarah King gave Rkkody the keys and codes and locations of the storage rooms, information they received in a Letter from The Class, (Exhibit 13) that suggested Rkkody and Oscody could be helpful with retrieving that contents of the Storage rooms, Rkkody and Oscody on March 27, 1997 flew to San Diego, picked up two of the cars that were left for them and went to Storage and retrieved some 486 audio cassette tapes, split them between one another leaving Rkkody with ~~and had~~ a box of 200+ (of the 1061/1082 Audio Works in that Storage Room) which he proceeded to digitize onto CD Rom's to perform the Dissemination Project DO and The Class repeatedly hoped he (and the other former members and others, would want to do.

(c.) On January 5, 1998 Rkkody sent me CD's that included a Common Law copyright for those ~~200+~~ CD Rom's containing the 200+ digitized Audio Works.
Rkkody's organization, Right to Know, with Rkkody's daughter Kathryn M. were the Claimant for Heaven's Gate classroom teachings; audiotapes vol. 1-2, Registration Number SR0000251498 on May 13, 1998. (Exhibit 14 Copyright SR0000251498 Heavens Gate audio recordings 2 cds by Kathryn Morea Rkk (Humphrey) Right to Know  5-13-98).  I

could be wrong but believe this copyright registration was seen as needed by Rkkody because of Mark King and Sarah King's illegal copyright registrations of approx. 486 audio tapes on October 27, 1997 as Rkkody already knew Mark and Sarah King were trying to keep Rkkody from disseminating them. I have personal experience talking and having correspondence with Mark King, Rkkody and Kathryn Morea (Rkkody's Daughter) at that time in 1997, by telephone and emails about their conflict. Plus we have co-defendant Jason Bartell's (aka Crlody) testimony having worked with Rkkody and Kathryn M. and another former classmate, known as Gnrody.

These multiple copyrights of the same audio tapes has caused much confusion as to who exactly has copyright of the Audio Works as neither provided any documentation from The Class to the copyright office to authorize these registrations). However, Rkkody/Kathryn M.'s copyright is the same type of copyright that DO put on the Blue Book, DO and The Class published.

d. Do the leader of the Heaven's Gate group expressed in several of the Audio Works that he wished all of the Audio Works to be disseminated and shared with the public upon the groups exit. Thus even if there was to be copyrights on them, they should have been common law copyrights or not restricted in their availability to whoever wanted them. (e.) DO and Class in the Letter they sent by FedX on March 25, 1997 to Mrc/Srf (aka Mark King/Sarah King) pertaining to what to do with the "items of value" in one of the Storage Rooms wrote:

**"It is our desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information".**

In this Letter and other letters DO's Crew are very specific on who received what Intellectual Property and who they wanted to receive physical property (i.e. cars, truck to Rkkody) but in

this case they were very general which matches up with other statements in the Heaven's Gate Book that states "to get our information out" as a task for any new believers. Mark King and/or Sarah King claim only they were meant to get the information out, and even if that was so, they aren't doing it with the 1000+ audio tapes and they are trying to stop others like me from doing so, thus they are going directly against the wishes of DO and The Class in these very important regards.

In this example of the "items of value" in Storage, according to Crlody who spoke to Rkkody about what he encountered when he went to the Storage Room, he said the boxes of audio tapes were stacked immediately up front.

**PLAINTIFFS ATTEMPT TO OBSTRUCT JUSTICE CLAIMING THEIR COPYRIGHTS OBTAINED IN 1997 WERE LEGAL BECAUSE OF THE SETTLEMENTS IN 1999.**

3. Plaintiffs used this obvious attempt to obstruct justice most recently in PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS to Plaintiff's proposed Preliminary Injunction" (DE 131 at I.D.2) where in response to Defendants objection that:

**"Plaintiff has not presented legal proof of transfer of the copyrighted material to Plaintiff",** by responding with,

**"This is simply incorrect. See e.g., DE 90 at 2–4."**

**Plaintiffs state in pages 2-4 in DE 90 that the Consent Decree from Judge Lisa Guy Schall (ordered after the Statement of Decision) is that proof of transfer from the Heaven's Gate Group to The Telah Foundation.**

**It is impossible to use a 1999 Consent Decree for the proof of transfer that happened in 1997.**

However, Plaintiffs received that Settlement in 1999 and the Heaven's Gate Group were deceased in 1997, over 1 ½ years before that Consent Decree was ordered. Also, Plaintiffs received the Consent Decree over a year after they registered the copyrights in September and October of 1997.

## C.   COUNT III – COUNTER DEFENDANTS ERRONEOUSLY CLAIM THE COPYRIGHT OF AUDIO TAPE NUMBERS 487 TO 1082 WHEN ONLY THE CREATORS HAVE THE COPYRIGHT.

**BACKGROUND**

1. DO and The Class intended for all people in the world to have access to all the audio tapes freely. DO gave instructions they be retrieved from Storage by Mrc/Srf, (aka Mrcody/Srfody) Mark King/Sarah King, enlisting the help of Rkk/Osc (Rkkody/Oscody), Charles "Chuck" Humphrey/Wayne Parker (both deceased in 1998/2000). Mrc/Srf were offered the task of "dividing" them among those who were inclined to disseminate them, TI, DO and The Classes Information. Mrc/Srf failed to get to Storage in time but did pass the task on to Rkk/Osc who did get there in time to retrieve the said 486 audio tapes. The next day San Diego County put a lock on that storage room. Mrc/Srf then sought to get those tapes and other items of value in Storage through the courts and though San Diego County ruled against their having any claim to the storage contents, because of Mark King/Sarah King threatening an appeal that would hold up the entire process of holding an auction to provide funds to pay for burial expenses, etc. and would be threatened with lawsuits from the

Families, Judge Lisa Guy-Schall decided on a Settlement that gave Mark King and Sarah King a large part of the Intellectual Property that was in Storage and Charged them some $2000.00 for another portion of what was in Storage. That is how Mark King and Sarah King as The Telah Foundation received possession of the remaining audio tapes from number 487 to 1061 or 1082. Upon receipt instead of dividing them as DO and The Class instructed they began to hord them and keep them away from anyone who would disseminate them, though that was the entire purpose of DO and The Classes leaving them behind with instructions to do. Because co-Defendant Jason Bartel, (aka Crl, Crlody, Carlan) and defendant Stephen Havel, Defendant (aka Swy, Swyody, Sawyer) had the 200+ audios Rkkody gave them and wanted to share them with people for free and did to some degree over 10 years, that Mark King and Sarah King knew about, they would never give those audio tapes to them to disseminate. But the Kings did give many of them to Jhnody, another former member who was on the list provided by DO of individuals who were sent portions of DO and The Classes Intellectual Property. In 2019 Jhnody decided it wasn't DO's intention to hide them away so knowing Sawyer would disseminate them, which included giving them to Crlody, he sent him a thumb drive containing about 930 digitized audio tapes and was reprimanded by the Kings for doing so.

## COURT RULES THE KINGS HAVE NO VALID COPYRIGHTS

2. Upon Information and belief, the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO in Case No. PNO22228 between Petitioners, The Telah Foundation (Mark King and Sarah King) vs the Public Administrator of the estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased, (having consolidated all the estates of the 39 deceased), that concluded on January

13, 1999 with a STATEMENT OF DECISION by Judge Lisa Guy-Schall, under the section: FINDINGS OF FACT AND DECISION, paragraph 3 concluded:

"3. Regarding the ownership of Intellectual property, this Court determines that the estates own all Intellectual property interests together with the tangible assets from which those Interests are derived. This determination is based upon the following findings of fact: Although Petitioners presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; and **the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do."**

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually signed by the decedents except the Durable Power of Attorney, which became void upon their deaths.** "(Exhibit 12 - Case PN022228 – Statement of Decision Feb 2nd 1999 by Judge Lisa Guy-Schall - Section: FINDINGS OF FACT AND DECISION, Paragraph 3)

Since there were no legal documents provided to Judge Lisa Guy-Schall's Court to legally transfer the Creator Copyrights the Heaven's Gate Group, The Class has over all of its Materials, Intellectual Property to date, it would also be applied to the unregistered audio tapes Mark King and Sarah King gained possession of when Judge Guy-Schall decided to

139

Settle so gave them the remaining boxes of audio tapes that were confiscated by San Diego

County from DO and The Classes Storage rooms, which are presumably but not certainly

tape cassettes numbered from 487 to 1082. (Though Plaintiffs have provided conflicting

information as to how many audio tapes they actually have, at first saying there were 1061).

The Kings often change their story and seek to trick the Court and Defendants to get their

way.

## PLAINTIFFS ATTEMPT TO OBSTRUCT JUSTICE CLAIMING THEIR COPYRIGHTS OBTAINED IN 1997 WERE LEGAL BECAUSE OF THE SETTLEMENTS IN 1999.

3. Plaintiffs used this obvious attempt to obstruct justice most recently in PLAINTIFF'S

RESPONSE TO DEFENDANTS' OBJECTIONS to Plaintiff's proposed Preliminary

Injunction" (DE 131 at I.D.2) where in response to Defendants objection that, "Plaintiff has

not presented legal proof of transfer of the copyrighted material to Plaintiff", by responding

with, "This is simply incorrect. See e.g., DE 90 at 2–4." **Plaintiffs state in pages 2-4 that**

**the Consent Decree from Judge Lisa Guy Schall ordered after the Statement of**

**Decision is that proof of transfer from the Heaven's Gate Group to The Telah**

**Foundation, but they received that decision in 1999 and the Heaven's Gate Group were**

**deceased in 1997, over 1 ½ years before that Consent Decree. Also, Plaintiffs received**

**the Consent Decree over a year after they registered the copyrights** in September and

October of 1997.

4. Plaintiffs state that they hold the Copyright, claiming DO and The Class transferred the

copyright the Creators, (TI, DO and Crew, aka The Class) of those Audio Tapes

automatically held by having been the Creators for all the tapes Plaintiffs registered (shown

in List 1 - numbers 1 – 486, minus those that were missing) and those that remain unregistered, (shown in List 2 numbers 487 to 1082 (minus those that were either misnumbered or missing or were duplicates or were damaged, that some of which have been documented by Counter Plaintiffs).

5. Given Plaintiffs have never shown any Court nor Defendants any legal documents of evidence that The Class legally transferred any of The Class Intellectual Property to these Counter Defendants, these tapes in List 2 (487-1082) should be assumed to still have a Common Law Copyright as The Group chose for the First version Publish of Their Book, termed the Blue Book, that originals were given by the Group to both Rkkody and Jhnody about March 25, 1997 in their packets and that Jhnody gifted one of the ones he received to me, Havel authorizing me to copy it entirely or in parts as long as it is not for commercial purposes, which doesn't include the cost of copying and redistributing as Counter Defendants have been doing with the Third and last version of the Book of the same name, referred to as the "Purple Book".

## 6. There was no valid Assignments of Transfer provided to any of the Courts

In the copyright registration of this Visual Art Work, the C.B.E. Lithographic Print, in Section IV of Claimant's seeking to transfer rights from Total Overcomers Anonymous to The Telah Foundation, the transfer method is listed as "pursuant to assignments" yet there never were any assignments provided to any of the three Court cases where this copyright registration was provided as an exhibit. In fact in the following document by Counsel for San Diego County:

141

JOHN J SANSONE, County Counsel, By Cheryl K. Carter, Deputy in the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO Case No. PN 022228 - OBJECTION TO PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY'S FEES (PROBATE CODE §9860) filed on JULY 17, 1998, in Section II they wrote:

"PETITIONERS ADMIT DECEDENTS OWNED INTELLECTUAL PROPERTY AND STATE THEY OBTAINED THE RIGHTS BY ASSIGNMENT BUT FAIL TO ALLEGE FACTS TO SUPPORT SAID ASSIGNMENT.

Petitioners make much of their copyright registrations after Decedents' deaths, stating in their applications that the Telah Foundation was copyright claimant "pursuant to assignments".

It is clear that the Decedent's Intellectual Property included common law trademarks/trade names, including Domain names and several unregistered copyrights. No assignments accompany the petition and several questions arise, were these pre-death assignments? Were the DPOA's used to execute these assignments? Was this a result of undue influence? On the other hand if they were post-death assignments, what authority did they have to so execute? All of these queries and issues rebut the so-called "prima facie" validity of their copyrights." (Exhibit 19 – San Diego County – Attorney Sansone's Objection to Petition to Determine Ownership of Estate Property ROA 74 Case File Contents 2-3 [173-179]- Section II re: No evidence of legitimte copyrights provided)

142

## D.  COUNT IV –MARK KING AND SARAH KING WENT DIRECTLY AGAINST DO'S WILL WHEN THEY CHANGED THE COMMON LAW COPYRIGHT DO AND THE CLASS' PUT ON VERSION ONE OF THEIR BOOK, ENTITLED "How and When 'Heaven's Gate' (The Door to The Physical Kingdom Level Above Human) May Be Entered : An Anthology of Our Materials" (aka "Blue Book") INTO A TELAH FOUNDATION COPYRIGHT

1. Upon Information and belief, the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO in Case No. PNO22228 between Petitioners, The Telah Foundation (Mark King and Sarah King) vs the Public Administrator of the estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased, (having consolidated all the estates of the 39 deceased), that concluded on January 13, 1999 with a STATEMENT OF DECISION by Judge Lisa Guy-Schall, under the section: FINDINGS OF FACT AND DECISION, paragraph 3 concluded:

"3. Regarding the ownership of Intellectual property, this Court determines that the estates own all Intellectual property interests together with the tangible assets from which those Interests are derived. This determination is based upon the following findings of fact: Although Petitioners presented evidence of post-mortem registrations of **the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;"** the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call,"

"The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do." **Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually signed by the decedents except the Durable Power of Attorney, which became void upon their deaths.** "(Exhibit 12 - Case PN022228 – Statement of Decision Feb 2nd 1999 by Judge Lisa Guy-Schall - Section: FINDINGS OF FACT AND DECISION, Paragraph 3)

2 . Upon Information and belief, Plaintiffs have gone against the wishes of DO, TI and The Class by changing the copyright the Group used on their Book, termed The Blue Book and publishing version three of the Book (Purple Book) with a copyright to the Telah Foundation. Plaintiffs should be required to issue a reprint adding the Common Law Copyright and/or should not have jurisdiction to claim copyright infringement upon anyone who chooses to copy part of or the entire book – that is from version 1 – The Blue Book as long as it's not done for commercial purposes.

3. The first version Blue Book Literary Work was copyrighted by the group who were the original creators and owner of the Literary Work before their exit under a common law copyright to be re-produced upon anyone desiring to do so as long as it was not for commercial purposes and not altered in anyway.  Counter Defendants who had no hand in creating the Literary Work obtained an entirely different copyright and instead used that in the Literary Work directly against the wishes of the group and Do.

E. **COUNT V – INTENTIONALLY AND ILLEGALLY COPYRIGHTING DO AND THE CLASS' (OLLODY AKA OLLIVER ODINWOOD'S) ACRYLIC PAINTING OF "HOW AN OLDER MEMBER OF THE KINGDOM OF HEAVEN MIGHT LOOK" AS THE C.B.E. LITHOGRAPHIC PRINT (VA 877-834 PLAINTIFF'S EXHIBIT F DE 1-6)**

1. Upon Information and belief, Lawful "use in commerce" is required for registration of a mark under the Lanham Act. If the registrant's use is not lawful, it is not entitled to federal trademark registration and, if registration has erroneously been granted by the Copyright Office, it cannot be asserted as the basis for enforcement of rights. Such a registration is subject to cancellation.

(a.) Upon information and belief the registration of the C.B.E Visual Art Work is not presently on sale nor has it ever been by the registrants Mark King and/or Sarah King or by The Telah Foundation. These registrations are abandoned and are therefore invalid and unenforceable.

(b.) Upon Information and belief, Plaintiffs C.B.E. Image copyright should be cancelled because that same image had already been copyrighted by Olliver Odinwood (Ollody) on November 18, 1982, with author registration number: Vau000041610 of 14 full color acrylic ill. that included the same exact C.B.E. image.

(c.) Upon Information and belief, the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO in Case No. PNO22228 between Petitioners, The Telah Foundation (Mark King and Sarah King) vs the Public Administrator of the estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased, (having consolidated all the estates of the 39 deceased), that

145

concluded on January 13, 1999 with a STATEMENT OF DECISION by Judge Lisa Guy-Schall, under the section: FINDINGS OF FACT AND DECISION, paragraph 3 concluded:

"As for the painting, "C.B.E.,"it was delivered to Petitioners In February of 1977, with words of gratitude, according to Sarah King. Yet, there is no evidence that decedents gave Intellectual property rights in the painting to the Petitioners as well."

(note: Listing the date of this gift to Petitioners as 1977 is either a typo or a lie. The painting did not exist until 1980 as Olliver Odinwoods copyright shows while Mark King and Sarah King were in the Group as well as was Stephen Havel and no one in the group was given possession of any of Ollody's (aka Olliver Odinwood, legal name of David Cabot Van Sinderen's) artwork he alone created. Likely the date was supposed to be February of 1997 when the Group had not yet become deceased.  However, the ruling still applies that a gift does not give Petitioners any Intellectual Property Rights. (Exhibit 12 - Case PN022228 – Statement of Decision Feb 2nd 1999 by Judge Lisa Guy-Schall)

## 2.  There was no valid Assignments of Transfer provided to any of the Courts

In the copyright registration of this Visual Art Work, the C.B.E. lithographic print, in the Transfer section, seeking to transfer rights from Total Overcomers Anonymous to The Telah Foundation, the transfer is listed as "pursuant to assignments" yet there never were any assignments provided to any of the three Court cases where this copyright registration was provided as an exhibit. In fact in the following document by Counsel for San Diego County:

JOHN J SANSONE, County Counsel, By Cheryl K. Carter, Deputy in the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO Case No. PN 022228 - OBJECTION TO PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY'S FEES (PROBATE CODE §9860) filed on JULY 17, 1998, in Section II they wrote:

"PETITIONERS ADMIT DECEDENTS OWNED INTELLECTUAL PROPERTY AND STATE THEY OBTAINED THE RIGHTS BY ASSIGNMENT BUT FAIL TO ALLEGE FACTS TO SUPPORT SAID ASSIGNMENT.

"Petitioners make much of their copyright registrations after Decedents' deaths, stating in their applications that the Telah Foundation was copyright claimant "pursuant to assignments".

"It is clear that the Decedent's Intellectual Property included common law trademarks/trade names, including Domain names and several unregistered copyrights. No assignments accompany the petition and several questions arise, were these pre-death assignments? Were the DPOA's used to execute these assignments? Was this a result of undue influence? On the other hand if they were post-death assignments, what authority did they have to so execute? All of these queries and issues rebut the so-called "prima facie" validity of their copyrights." (Exhibit 19 – San Diego County – Attorney Sansone's Objection to Petition to Determine Ownership of Estate Property ROA 74 Case File Contents 2-3 [173-179]-Section II re: No evidence of legitimate copyrights provided)

147

## F. COUNT VI COUNTER DEFENDANTS INTENTIONALLY ILLEGALLY REGISTERED TRADEMARKS ON DO AND THE CLASSES INTELLECTUAL PROPERTY, THE ARTWORK OF THOSE CREATORS WITHOUT ANY LEGAL DOCUMENTATION TO DO SO

1. Upon information and belief Do, the leader of the group and the group members did not wish for any of their works to be placed under copyright or trademark registrations that would restrict their usage or viewing by the public, quite the opposite they wished for their materials to be shared and disseminated to the public in all their entirety and with the only restriction being that it could not be altered or used for commercial purposes. Counter Defendants have gone directly against Do and the groups wishes in their handling of the intellectual property left behind by the group.

## G. COUNT VII COUNTER DEFENDANTS INTENTIONALLY MISLED NOW THREE COURTS BY CLAIMING TO OWN AND HAVE THE COPYRIGHTS FOR ALL DO AND THE CLASSES INTELLECTUAL PROPERTY WITHOUT ANY LEGAL DOCUMENTATION TO PROVE.

1. Counter Defendants with no proof despite repeated requests alleged that two separate judges had awarded them sole ownership of all the groups materials. For instance, DO and The Class gave as many as 13 individuals that I know of possession and thus ownership as gifts of some portions of their property. This occurred mostly through FedX or another service's packets that arrived on March 25, 1997.

However, **Transfer of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202). (Exhibit 12)**

(a.) We know about some of what Flxody received from her testimony on behalf of Mark and Sarah King in the San Diego County Judge Guy-Schall case in 1999.

(b.) Oscody also received a letter and they all 3 received at least two video's termed the Exit Videos, DO's Final Exit and Students Expressing their farewell before Exit". These three are deceased for over 20 years. Oscody also is the one DO sent the 3rd version of the Classes Book to with instructions on what it would take to register the book with the Library of Congress. Mark and Sarah king ignore and have stated in Court filings that they received the Book and those instructions when even in the letter they received DO and The Class said they were giving that task to Oscody. Until we are allowed to see his letter we don't know how to prove Mark and Sarah King are stretching the truth in that regard.

(c.) Rkkody received the most yet Mark and Sarah King downplay that fact almost entirely putting themselves up front in that regard.  He received the masters of the 4 exit videos, Beyond Human Tapes, Away Team patches and finished documents not in the Heaven's Gate Book or on any of the 3 Heaven's Gate websites. He received the task to be the one to at least initially put updates on the heavensgate.com website. He also receive the CBE image and a number of versions of that same image which he posted on Rkkody.com along with face pictures of many of the deceased members, the Heaven's Gate Logo (as it has been called) that contains the Rings of Saturn all painted by Ollody, aka Olliver Odinwood who still holds the copyright to. He also received a number of Blue Books, which is version one and/or version two of the Book Mark and Sarah King printed from version three. He received direct instructions if he chose to, to share the Beyond Human video's with the media or anyone he chose as well as the four exit video's which he proceeded to do days

after their exit event. (Exhibit 4 - The Letters From The Class to Mrc Srf Rkk JHN - Project and Intention for each Believer to Disseminate ALL Their Information)

(d.) Jhnody received Exit Videos, master originals for the Beyond Human Video Series, Away Team patches. He also received a number of Blue Books, which is version one and/or version two of the Book Mark and Sarah King printed from version three. One of those books he recently gave to me in person.  He also received the code and data for Heavensgate.com. He received direct instructions if he chose to, to share the Beyond Human video's with the media or anyone he chose. He also received a detailed map to the Rancho Sante Fe mansion showing the door that was left open for him to enter by. He lived in Venezuela at the time. He also received a list of the others who received "similar packets". (Exhibit 2 - Jhnody's gift to Sawyer in June of 2021 of approx. 920 digitized audios on a pendrive he received from Mark and Sarah – His Letter from DO and The Class)

(e.)  Neody, aka Rio also received at least two letters  All three said they received a letter or more, at least 2 video tapes termed the Exit Videos, DO's Final Exit and Students Expressing their farewell before Exit".  He also received a detailed map to the Rancho Sante Fe mansion showing the door that was left open for him to enter by.

**All these forms of their Intellectual Property was given to these individuals in 1997 so how can a Consent Decree from the Courts legitimately decree that Mark and Sarah King have exclusive ownership in 1999.**

Even if the Courts determined Plaintiffs had Sole ownership over the intellectual property they listed in their two court cases possession does not constitute copyrights or trademarks of all the material.

Counter Defendant in the desire to control all of the material obtained the copyright and trademark registrations to do with as they see fit, not as Do, the leader of the group and the members of the group wished and expressly stated throughout the Audio, Video and Literary Works.

## H. COUNT VIII FILING TWO CLAIMS IN TWO DIFFERENT CALIFORNIA COURTS IN THE SAME TIME PERIOD TO ACQUIRE MUCH OF THE SAME BODY OF INFORMATION AND NOT INFORMING BOTH COURTS OF THE OTHER ACTIONS AND THEIR NATURE

1. In CASE NO.: PN022228 filed in the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO by THE TELAH FOUNDATION on 04/21/98 entitled,

PETITION BY CLAIMANT TO OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY FEES, in Paragraph 1.A. (Exhibit 21 - Petition by Claimant to Determine Ownership of Estate Property pg 6-14 of roa 73 case file contents 1-3, page 2), Petitioner states:

"...Petitioner is not aware of any other judicial proceeding to determine the ownership of the property."

How could Petitioner - Mark and Sarah King state they were not aware of any other judicial proceeding to determine the ownership of the Property when over a month and a half BEFORE that statement was recorded Mark and Sarah King filed their complaint against Rkkody (then deceased) as Right to Know and against Kathryn Morea, Rkkody's Daughter on 03/06/98 for much of the same Property - the Audio Works Rkkody had from the same Storage Room San Diego County had confiscated Property from by March 28, 1997 and the same Video Works - The Beyond Human - The Last Call series and the same 4 Exit Videos and the Heaven's Gate Books (presumably the Blue Books, version one as the Purple Book was not put to print by DO and The Class before they exited).

Property is defined by Petitioners Mark and Sarah King as what is listed in their Attachment A (Exhibit 23 – Attachment A - Petitioners description of Property they claimed)

Here is the docket entry for the Judge Breyer court case:

"03/06/98 Case 3:98-cv-00892 COMPLAINT filed by Mark King and Sarah King file (process) Fee status pd entered on 3/6/98 in the amount of $ 150.00 ( Receipt No. 130620); jury demand (ga, COURT STAFF)"

## I. COUNT IX – MARK AND SARAH KING ARE INFRINGING ON HAVEL'S "WORK FOR HIRE" COPYRIGHT OF ALL OF THE HEAVEN'S GATE INTELLECTUAL PROPERTY

Mark King and Sarah King are trying to prevent Havel from sharing freely the Heaven's Gate wealth of information they left behind.

Since it is public knowledge with considerable evidence that I, Counter Plaintiff, Stephen Havel, aka Sawyer, Swyody, Swydote, Swy - being all names DO of TI and DO gave me

152

during the 19 years I was physically with them in The Class, spanning 1975 to 1994, I believe I am of their Family and have a great deal of evidence I contributed to the Beyond Human - The Last Call, Video Tape series (Video Works) and to some 85% of the Audio Tapes and can be proven was even the tape machine operator, and deserve to have all the Heaven's Gate Intellectual property shared with me to participate in the dissemination and distribution of that Property as I have been doing since at least 2007.

1. It has been established by these Counter Defendants, Mark and Sarah King that all The Classes Intellectual Property was created by the entire Group and thus is a "collaborative work" (Exhibit 22 - Petitioners supplemental trial brief pages 145-151 from ROA 75 Case File Contents 3-3, Paragraph B.):

"B. The property of the decedents has never been distinguished by the Respondent as being the property of one specified identifiable individual but has always been treated as "belonging to the loose association of thirty-nine individuals" (Respondent's Trial Brief, page 9, paragraph V; line 20). Since the Public Administrator has failed to provide any evidence of ownership by an individual, then the intellectual property must also be treated as "belonging to the loose association of thirty-nine individuals", or more accurately, a collaborative work by the Heaven's Gate group."

2. The Authors of a work are those who hold the copyright to them:

Initial ownership of a copyright vests with the author or authors of the work 17 U.S.C. POI (a).

Havel is one of those collaborative authors as seen in the Beyond Human - The Last call Video tape series as well as heard in many of the Audio Tapes.

3. DO gave Sawyer (Havel) many tasks that even Mark and Sarah King were witness to. Before and after Mark King and Sarah King were sent out of the Group, Sawyer was assigned to be "Craft (House) Overseer" of over a dozen students on behalf of DO in what was called "South Craft" (House) located in the Denver area. Sawyer was assigned to oversee a group doing public meetings around the U.S. in 1994 and was the primary public speaker in many meetings and spokesman for the media and participated in writing projects and video projects. Thus DO was Sawyer's employer as a "work for hire": Ownership of a "work for hire" vests with the person, company or group for whom the work was prepared. 17 U.S.C. POI (b).

4. Therefore I hold the copyright to all the Intellectual Property I can prove I was a collaborator on:
The copyright to a collaborative work is jointly held by the group as a whole. 17 U.S.C. POI (a).

## J. COUNT X CLAIMING IN THREE COURTS THAT DO'S HEAVEN'S GATE GROUP "TRANSFERRED" TO THE TELAH FOUNDATION ALL RIGHTS TO ALL THEIR INTELLECTUAL PROPERTY WHILE HAVING NO SUCH DOCUMENTABLE TRANSFER.

1. Upon Information and belief, Counter Defendants have stated that they received fed ex packages, faxes, emails and telephone calls that other members of the group left behind with the task of disseminating their materials did not.  Counter Plaintiff's respectfully ask the Judge to order those fed ex packages, faxes, emails and telephone call logs to be made public

to once and for all answer the question of the Counter Defendants actions in suppressing the Audio, Video and Visual Works that were left behind in storage by the group.

2. Upon Information and Belief, Counter Defendants have stated DO and The Class "transferred" all their intellectual property to them or left it in Storage in 1997 for them to retrieve. Yet Counter Defendants have no evidence of such a transfer therefore they have no legitimate copyrights and they should be cancelled.

(a.) Any transfer of ownership of intellectual property, other than by operation of law, is invalid unless an instrument of conveyance, or a note or Memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent (17 U.S.C. § 204 (a)).

There is no signed document by the Owner of the rights, the creators, TI, DO and The Class of the Intellectual Property in question.

(b.) Furthermore, It is well settled that a copyright is distinct from the material object in which its expressive content is embodied (17 U.S.C. § 202).

Transfer of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202).

(c.) A person claiming copyright must either be the author, or must have succeeded to the rights of the author (Epoch 8 Producing Corp. v. Killiam Shows, Inc. (2nd Cir. 1975) 522 F2d. 737, 9 citing Ninuaer on Copyright, S 5.01).

For example, a painting may be copyrighted and the copyright sold separate from the painting. The copyright entitles its owner to sell copies of the original painting. However,

this does not prevent the original painting from itself being sold separately. Owners of the original painting simply cannot make and sell copies without the copyright.

Neither Plaintiffs or Defendants were ever engaged in sale of any of TI and DO and The Classes Intellectual Property.

(d.) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession (17 U. S.C. S 201 (d) (1) ).

The inherent copyrights the creators of the Intellectual Property automatically held that lasts for some 70 years after death was not transferred in whole or in part by any means of conveyance or by operation of law, nor bequeathed by will.

The writing requirement serves the same purpose as the statute of frauds for certain other types of instruments (Pamfiloff v. Giant Records, Inc. (N.D. Cal. 1992) 794 F. Supp. 933 at 936).

(e.) While it is true that a presumption arises upon issuance of a copyright registration certificate, that presumption is rebuttable and evidence that the registration certificate was obtained fraudulently overcomes the presumption (Seiler v. Lucasfilm Ltd. (9th Cir., 1986) 808 F2d. 111316, footnote 5 at p. 1322; Eckes v. Card Prices Update (2nd Cir.,1984) 736 F2d. 859).

**COUNT XI – DENYING JUDGE BREYER'S CONSENT DECREE ORDER TO DISSEMINATE RKKODY'S CD'S CONTAINING OVER 200 DIGITIZED; AUDIO TAPES, BEYOND HUMAN – THE LAST CALL VIDEO TAPES, THE HEAVEN'S**

GATE BOOK (VERSION 1) AND C.B.E. IMAGE, ETC. IN PARTICULAR TO "VERIFIED FORMER MEMBERS" OF THE CLASS – CRLODY (DEFENDANT JASON BARTEL) AND SWYODY (DEFENDANT STEPHEN HAVEL) AND OTHERS WITH A COMMON LAW STIPULATION

In Judge Richard Breyer's Consent Decree, filed on Jul 9, 1999 in the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA in CASE NO.: CV-98-00892 CRB, the order is laid out and in some cases TELAH, The Telah Foundation, Mark King and Sarah King have not abided by the order, in particular towards Co-defendants, Jason Bartell and Cathy Weaver and my self Defendant Stephen Havel.

(Note: The Morea's are referring to Kathryn Morea the daughter of Rkkody and her husband. As the Kings sued Rkkody's estate just days after Rkkody died, in the name of Right to Know and included Kathryn Morea in the suit, because she inherited from her parent Rkkody the Intellectual Property he had received from DO and The Class before they exited this world.)

1. Mark and/or Sarah King have never distributed to Defendants the "Humphrey version" of the Heaven's Gate May Be Entered book.  Here is the ruling:

"1. TELAH will distribute the "How and When Heaven's Gate May Be Entered" book, final version, initial version, and Humphrey version, as set forth in the Settlement Agreement."

2. re: Video Tapes - Beyond Human - The Last Call and the 4 Exit Videos, Defendants are not aware of TELAH providing this new Set of Videotape CD's to anyone.  Here is the order:

"2. TELAH will provide copies of the heavensgate.com website on disk to The Moreas, who will then prepare a new Videotape CD from the CD's created by Humphrey containing copies of videotapes created by The Class, as set forth in the Settlement Agreement. The new Videotape CD will be provided to TELAH, which will make copies of the it and distribute it as set forth in the Settlement Agreement."

3. re: Audio Tapes - Defendants never received any CD's or Audio tapes from Mark and Sarah King or from any of their organizations. Nor have they disseminated them to anyone else that Defendants are aware of, though there might be a rare exception.  Here is the Order:

"3. The Moreas will provide TELAH with one copy of the two CD set of CD's created by Humphrey containing copies of audiotapes of classroom sessions by The Class ("the Audiotape CD Set"). From this copy, TELAH will make a new revised Audiotape CD Set and will disseminate it as set forth in the Settlement Agreement."

4. Mark and Sarah King have refused to provide the document referred to as the Settlement Agreement. This document is referred to in the docket as follows:

"07/09/1999  31     CONSENT DECREE BETWEEN PLAINTIFFS AND KATHRYN AND CESAR MOREA by Judge Charles R. Breyer : TELAH will distribute the "How and When Heaven's Gate May Be Entered" book ... Kathryn and Cesar Morea will provide TELAH with copies of the Humphrey verson ... TELAH will have exclusive rights and responsibility for ownership and management of the intellectual property of The Class/the Heaven's Gate group ... (see document) (cc: all counsel) ( Date Entered: 7/14/99) [3:98-cv-00892] (mcl, COURT STAFF) (Entered: 07/14/1999)"

For many reasons Counter Plaintiff can show that the Court was not informed of the ongoing litigation of the San Diego County Court case or he couldn't have ruled Telah to have "exclusive rights and responsability and management of the intellectual property. Since Kathryn Morea couldn't combat Mark and Sarah Kings lawyers who threatened her with the loss of her house (she told me on the telephone and in an email at that time that I have put on record in this case, she settled, thus there was no one to challenge what Mark and Sarah said and their falsified copyrights and trademarks.

In an email from Crlody, co-defendant Jason Bartell from 2016, years before there was any talk of lawsuits that I was aware of from Mark and Sarah King, he said, Kathryn showed him a document that was from the Court Case that said, the Kings were supposed to give the Intellectual Property they received from Rkkody's possession his daughter inherited to "verified former Members" of The Class, which Bartell and Havel clearly are.

5. The audio tapes Plaintiffs accused Defendant of playing on his youtube.com 3spm channel livestreams, (all before the lawsuit was filed and without the Cease and Desist being specific of which of these tapes were copyrighted, which we still aren't being correctly informed about because of doctored tape lists requested by the Court) are listed in paragraph 51 of Plaintiffs Complaint, (DE 1) as:

"51. This includes the following YouTube videos and Audio Works:

Tape No. 149 - Broadcast on YouTube 3spm channel on 11/08/2021

Tape No. 263 - Broadcast on YouTube 3spm channel on 11/08/2021

Tape No. 004 - Broadcast on YouTube 3spm channel on 11/08/2021

Tape No. 030 - Broadcast on YouTube 3spm channel on 3/26/22

Tape No. 161 - Broadcast on YouTube 3spm channel on 4/08/22

Tape No. 156 - Broadcast on YouTube 3spm channel on 4/12/22

Tape No. 011 - Broadcast on YouTube 3spm channel on 4/13/22

Tape No. 054 - Broadcast on YouTube 3spm channel on 4/14/22

Tape No. 052 - Broadcast on YouTube 3spm channel on 4/17/22

Tape No. 050 - Broadcast on YouTube 3spm channel on 4/18/22

Tape No. 200 - Broadcast on YouTube 3spm channel on 4/19/22

Tape No. 201 - Broadcast on YouTube 3spm channel on 4/20/22

Tape No. 202 - Broadcast on YouTube 3spm channel on 4/21/22

Tape No. 203 - Broadcast on YouTube 3spm channel on 4/26/22

Tape No. 204 - Broadcast on YouTube 3spm channel on 4/27/22" (DE 1 at 51)

Among them only audio tape 263 was not on the Rkkody provided CD's that Mark and Sarah King as TELAH were ordered to literally "disseminate" to me, without stipulation of what I could or could not do with them.

## DEMAND FOR JURY TRIAL

Counter Plaintiff requests a trial by jury on all issues so triable.

## CONCLUSION

15 U.S.C. 1119 grants district courts the power to order the cancellation of any registration in whole or in part.  The Counter Defendants registration of the Audio Works, Video Works and Visual Art Works should be cancelled pursuant to 15 U.S.C. 1064 on the grounds of abandonment, fraud on the Trademark Office and the Copyright Office and the above statements.

(a.)   On the copyrights they were all registered by Telah Foundation with a Transfer from Total Overcomers Anonymous aka TOA, as "pursuant to assignments" when there were no "assignments", no documents from the Group or any indication they anticipated their Material being copyrighted or trademarked, with the exception of their Book, Literary Work which they indicated should have a Common Law Copyright. Having no documentation to give copyrights to Telah Foundation was established by San Diego County Superior Court in Judge Lisa Guy-Schall's Statement of Decision against Plaintiffs then, Petitioners. (Exhibit 12 - Case PN022228 – Statement of Decision Feb 2nd 1999 by Judge Lisa Guy-Schall )

## PRAYER FOR RELIEF

WHEREFORE, Counter Plaintiffs pray that after due proceedings be had, there be judgment rendered in their favor against The TELAH Foundation, otherwise known as Mark and Sarah King.

Counter Plaintiff's respectfully requests the following further relief of this Court:

a.  A declaration and order declaring the TELAH Foundations copyright and trademark registrations invalid and unenforceable;

b. If applicable a declaration and order cancelling the registrations of the TELAH Foundation in whole or in part and directing the Director of the United states Patent and Trademark Office to correct the Principal Register of copyrights and trademarks.

c. A declaration and order declaring the Counter Plaintiffs equal ownership and equal rights to ALL the Intellectual Property left behind and allegedly awarded to the Counter Defendants.

d. If an attorney is granted by this Court or Counter Plaintiffs obtain an attorney on a contingency basis an award of reasonable attorney's fees;

e. Counter Plaintiffs have had to try to present their own pro se defense and have spent a minimal average of one hour a day on this case. Since Counter Plaintiffs are not attorneys I would suggest reasonable compensation should be provided by Counter Defendants, Mark King and/or Sarah King and/or by the Telah Foundation and/or by The Evolutionary Level Above Human, Inc. of at least $20/hr.

f. Counter Plaintiffs have also had to take off from work they need to pay their bills and because of that time off to file documents in their defense on time have lost income for at least twice a month. Counter Plaintiffs average an income of about $120.00 a day so depending on how long this lawsuit continues at that rate Counter Plaintiffs request relief accordingly.

g. Counter Plaintiffs are not allowed by the Court to file documents via email so have had to incur expenses to do so. Most of the time Counter Plaintiffs have been engaged in their defense and this complaint, they have lived some distance away from the Court in South Bend, Indiana so have had to mail our documents to the Court using Priority Mail services from the USPS at approximately $10.00 per mailing, plus the cost of printer ink and copying expenses averaging another $10.00 per document filed. Based on the amount of documents filed and to be filed Counter Plaintiffs request relief at a rate of $20.00 per document filed by Counter Plaintiffs

and by Defendants from the start of this lawsuit in May of 2020 to the conclusion of this lawsuit.

h. When this lawsuit was filed and included co-defendant Cathy Weaver, whom defendant Havel formed a relationship with we were living in Mishawaka, Indiana with Cathy Weaver's minor daughter. Because of the nature of this lawsuit, having to do with what most in society saw as a dangerous suicide cult, there was a very real fear it would be in the news and would be a subject of ridicule of us from neighbors, family and friends and especially endangering Cathy Weavers daughters relationship in her school among school mates and at her job among co-workers, Cathy Weaver felt fearful and wanted to move from that location ASAP. Cathy Weaver as a single mother had raised her daughter by herself, by working to pay all their bills but had no savings nor credit. The only way we were able to rent another house on such short notice was to pay 6 months of rent up front. Because I also had no savings at that time and my meager social security was paying the rent on my house in Vermont where my adult daughter still lived I also had nothing to come up with that rent money, but since I had used half of my inheritance to pay off all my loans, I still had very good credit so took out a loan for some $13,000.00 that mostly went to paying that advanced rent payment to get ahead of other house applicants and the remainder went towards renting a 24 foot truck to use to move out of the old house and into the new house which we did the moving of ourselves. Counter Plaintiff asks the Court to provide a relief order against Counter Defendants Mark and Sarah King et al, to reimburse me, Havel for that debt as we were able to manage our bills before the Kings sued us.

i. Because of our religious freedom to believe in TI and DO's teachings that have nothing to do with suicide as they taught we needed our physical bodies in order to learn lessons through,

163

Counter Defendants began to have a small amount of T shirts made as the only form of monetary income Havel has ever had besides his Book, "Ti and DO The Father and "Jesus" Heaven's Gate UFO Two Witnesses". Two of the three T shirt designs included images I knew Ollody, my friend in the group created/painted as sometimes I watched him do so. I had no knowledge or even suspicion Mark and Sarah King as The Telah Foundation had copyrighted some of Ollody's paintings.

When Mark and Sarah King sued me and included my use of the CBE painting they had a copyrighted in 1997 that I since have proof was a fraudulent copyright Mark and Sarah King knew was not legal, I took down my advertising of the T shirts on my 3spm youtube channel and lost the income they could have generated. I would estimate that based on the few sales I had before I was sued, I could have sold at least one a week at about $32.00 each which I ask relief for how ever many weeks this lawsuit continues.

j. Counter Defendant Havel asks for relief for many hours of anguish brought on by Plaintiffs. Their action against Havel has been hard enough but given Cathy Weaver was also sued by these Counter Defendants in their Complaint because of what amounts to her using a few four letter words on my livestream towards them and instead of becoming their ally as shown by emails between her and Mark and/or Sarah King, they wanted, became an ally to TI and DO and thus with Counter Plaintiff Havel. These Counter Defendants Mark King and Sarah King made untrue statements in their complaint against Cathy Weaver as she wasn't even a personal friend of Havel's when Havel received digitized audio tapes from Francisco Falcon in around June of 2021 and sent them to co-defendant Jason Bartel aka Crlody), nor had control over playing tapes on my Youtube channel. Because she has suffered greatly and because of that I have suffered greatly because of what amounts to a silly ego battle of who is right and wrong

about what TI and DO taught and intended for us to do after their departure, when we all could

be working together to reveal to the world the truth about what TI and DO did and taught and

how they were nothing like any of the media groups have portrayed. Havel doesn't pretend to

know what relief could be customary to receive so leaves that up to the Courts.

k.  Such other and further relief as this Court shall find due under the law or in equity.

Dated: September 14, 2023

_Stephen Havel_
Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

Defendant

165