

Vimeo Heavens Gate by the Telah Foundation Beyond Human - The Last Call Session 1 - 2 June & Sawyer pictured

1992   JWNOdg June   Swyody S Auyeh



1994        EVNODY        Swgody
                          SAWyer/        RUhody



Missoula, Montana

Swyody Rhhody   ?.
Sawyer

News CNN Heaven's Gate 1997 NOS(NL)



SLVOdy (among 39)

SWYOdy (not among 39) SAWYER

EVNOdy

JOYOdy (not among 39)

KWhOdy (Exit in 1998)

# History of Sawyer's Public Speaking and Media Events
# During and After his membership with Heaven's Gate
### (Sawyer is represented by his Heaven's Gate group initials - SWY)

## THE BIRTH PERIOD of Human Individual Metapmorphisis - H.I.M.

**September 1975 - July, 1976**
  Public Meeting Engagements
    Worchester, MA - 200 people at the public library - SWY/DND as speakers
    Mt. Pelier, Vermont - 14 people at hotel room - SWY/DND as speakers
    Panama City, Florida - 50 people at Best Western Motel - SWY/DND guest speakers *= STL & ?*
    Brownsville, Texas - 40 people at the public library - SWY/DND as speakers
    Lake Charles, Louisiana - 12 people at local hotel
    Liberal, Kansas - 100 people at public library - SWY/DND as speakers *— Ad in newspaper 1976*
    Joplin, Missouri - 15 people at public library - SWY/DND as speakers
    St. Joseph, Missouri - 3 people at the public library - SWY/DND as speakers

## 1992 SATELLITE SERIES by Total Overcomers Anonymous - T.O.A.

**September 1992** - One hour tape announcing the Second Coming by SWY/JWN sent to Christian
  Broadcasting Network for uplink
**October 1992** - 12 hr. Satellite/Video Series - Beyond Human, SWY/JWN as Do's TelePrompTers *for 1ˢᵗ 4 hou*

## 1993 AD CAMPAIGN by T.O.A.

Associate writer of May 27, 1993 USA TODAY 1/3 Page Ad, and consultant on about 20 other ads
  placed in alternative bases tabloids worldwide.

## 1994 PUBLIC MEETING AGENDA of T.O.A.

**December 1993 - Trial Public Meeting**
  SWY is flown in to Denver, from Phoenix to assist JWN/ALX
**January 1994 - September 1994 Public meetings and media events**
  Dallas, Texas (Addison Hotel) Public Meeting given by- SWY, CHK, OLL, GLN
  CBS affiliate does nice segment - uses movie script artwork done by OLL
  Dallas, Texas Public Meeting at a city park facility near Love Field - given by SWY, CHK, OLL
  Austin, Texas Public Meeting with media coverage at the Hyatt Hotel given by- SWY, CHK
  Tucson, Arizona -
    ABC affiliate does a good segment of SWY/CHK
    UFOAZ by Ted Loman 60 minute interview with SWY/CHK and MLL
    Public Meeting at a New Age Book Store (Ted tapes meeting) given by SWY/CHK and MLL
  Houston, Texas
    Public Meeting in a private gymnasium given by SWY/CHK
    ABC affiliate separate interview given by SWY/CHK
  Birmingham, Alabama
    Public Meeting given by SWY/MLL with media coverage
  Boulder, Colorado
    Public Meeting at Best Western Motel given by SWY/CHK
  Denver, Colorado
    Public Meeting at a Public Library given by SWY/CHK (near the University)
  Olympia, Washington
    Public Meeting at University given by SWY/YVN
  Portland, Oregon
    Public Meeting at hotel given by  SWY/YVN
  Medford, Oregon
    Public Meeting given at courthouse by SWY/YVN
  Mt. Shasta, California
    Public Meeting given at recreation center by SWY/YVN
    Private Meeting given to Mt. Shasta Business Community by SWY/YVN and assistants.
  Vancouver, British Columbia, Canada - (canceled)

Missoula, Montana
> Several meetings with U of M cult expert and psychologist, Robert Balch to edit his manuscript
> Public Meeting at a hotel given by SWY/YVN media coverage (Rob Balch has footage)

Chicago, Illinois
> West Chicago Public Meeting - SWY/YVN
> Downtown Public Meeting at University - SWY, JWN, OLL, STM

Portland, Maine
> Public Meeting with media coverage given by SWY/YVN

Hampton, New Hampshire (South of Portsmouth, New Hampshire)
> Public Meeting with media coverage given by SWY/YVN

## RANCHO SANTA FE EVENT - Heaven's Gate    *JST draught*

**March 30, 1997 - Easter Sunday**
CBS - 60 minutes - Leslie Stahl interviews Sawyer, Wayne and Kelly,  Executive Producer Don Hewitt says in 50 years of TV this has got to be the most interesting story he's seen and he wants to run all 60 minutes on it.  The only other time all 60 minutes was dedicated to one topic was an interview with the Reagans. (However they couldn't get all three segments edited on time so just ran 2 segments (40 min.)
Short Daily News interview of Sawyer (In CBS waiting room after "60 Minutes" taping)

**March 31, 1997**
ABC - Good Morning America Segment, Joan Lunden interviews Sawyer with Mr. & Mrs. Maeder
CBS - Morning show Segment- Interview of Sawyer, Wayne and Lee Shargal
NBC short interview with Sawyer and Wayne on the street outside of CBS studio
MSNBC - Dayside: Live 60 minute discussion with Sawyer & Wayne by Brian Williams
MSNBC - Sawyer on line chat for 30 minutes
ABC World News Tonight, David Ritter interviews Sawyer and Wayne at Wayne's hotel room
MSNBC - Dayside: Live 60 minute discussion with Sawyer, Wayne and Kelly
MSNBC - Sawyer on line chat for 30 minutes

**April 1, 1997**
CNN - Larry King Live, with DYM's sister, Sawyer from NY, RTH from SF and AND from Seattle

**April 3, 1997**
Time Magazine Interview of Sawyer by Dick Ostling and Photographer
Newsweek Magazine Interview of Sawyer by Matt Bai

**April 8, 1997**
New York Times Interview of Sawyer by Barry Birnack

Boston Globe Phone interview of Sawyer by Steve Fainaru and Charlie Senate re: LVV
Denver Post phone interview of Sawyer re: Ladonna from Denver
UFOAZ - hosted by Ted Loman, 5 minute live phone interview with Sawyer.

**April 9, 1997**
Geraldo Rivera Day Show (taped to play in May)- UFO's Yes or No? (PANEL: Sawyer, Ted Loman (host of UFOAZ), Moon Astronaut Dr. Edgar Mitchell, Michael Luckman (director of NY Center for UFO Research), Tim Crofford (UFO Video footage), Kim Carlsburg, (Abductee), another Abductee and Gov't debunker.

BBC phone interview of Sawyer by Marc Duff in London
San Jose News phone interview of Sawyer by Tracy re: ALX    *(by telephone)*

Psychology Class interviews Sawyer at Riverhead Suffolk Community College

# EXHIBIT 4

## Instructions/Guidelines for Dissemination Project and Handling of the Estate for those who remain

**Letters from The Class aka Friends or Pursers to:**

**RKK – From Your Friends re: Web Sites and Media Contact... Page 1 - 2**

**RKK – From Your Friends re: Web Site**                                     **Page 3**

**MRC/SRF - (Mark and Sarah King) –**                                     **Page 4-5**
(re: Items of Value in Storage (Audio tapes) to be disseminated).

**MRC/SRF – (Mark and Sarah King) –**                                     **Page 6-8**
(From Pursers re: legal and financial affairs)

**MRC/SRF – (Mark and Sarah King) –**                                     **Page 9-10**
(From The Class re: disposition of cars/vans, etc.

**Chris and Holly – BBC Reporters Interested in Story**                  **Page 11**
(Sent by Your Friends) re: Intro to Chuck (Rkkody)

MRC/SRF,

By now, having read the enclosed press release, you should be aware that we have exited our vehicles just as we entered them. Also included are two videotapes of DO and the Class, a list of the others who are receiving this final press release and "Earth Exit Statements by Students," as well as a document describing our location. The Internet account information, however, we sent only to you, RKK, and OSC.

Enclosed is a key to our storage units which we prefer remain confidential to you and whomever on the list above would be most helpful to you – we suspect RKK and OSC would likely be a big help – but including others would be OK as well, whatever your strategy permits. We put into storage items that we would prefer the authorities not have access to. You can do with those items whatever feels right to you. The only exception to this is some exercise equipment which belongs to our landlord, Sam, and we suspect he will want at some point. The storage units are #241 (use key 798 for this unit) and #147 (key 591), located at Private Storage Systems, 2421 Barham, Escondido, CA. The passcode to get through the gate is * 21484 # – the related contract/paperwork is also included in this package, and we have attached a map that further pinpoints this location.

We also have a 20 foot yellow truck in a separate storage unit, and we did think that RKK would be a good choice to retrieve it – it's big enough to be able to haul all of what's in storage, we believe. The truck storage paperwork is also enclosed. The name of the company is California Self Storage located at 5206 Eastgate Mall, San Diego, CA 92121-2809. The unit number is F 258 and the access code is *351-3046. Pursers have included an additional document as part of this packet that further covers the disposition of our cars and this truck. So we ask that you refer to that document for details. It is our desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information. Any of the funds you retrieve can be used towards that end and for the living expenses of those involving themselves with this project. It is likely that the items currently in the residence will not be easily available to you – so we did mention to our landlord, Sam, who might have better luck with the authorities in claiming some of those items, since he owns the house, that he could have whatever valuables are there – which likely will amount to a few TV's, some bunks, a few household items, and perhaps a laptop computer or two.

On another note, we uploaded the heavensgate website to an ISP in Romania, and we also FedEx'ed the Romanian webmaster the diskettes containing the entire site along with the diskette containing the final press release and the Earth Exit Statements by Students (these final statements are on a separate disk which hopefully RKK will be able to upload, however the Romanian fellow will have the entire site on diskette as back-up). We have prepaid two months of webhosting on this Romanian server under the name of Sister Michael Remi. The webmaster's name is Ionut Muntean, telephone number: 011 40 68 322150. He speaks and writes English well enough for us to communicate with him, and seems to be an agreeable fellow. All he knew about us however, before now, is that we were a small interfaith monastery with some "non-traditional" views. So we're not sure what his response will be to this most recent event.

We are hoping, of course, to use this site as an alternate way to access our information in case the authorities shut down our sites in the States. The URL for this site is www.heavensgate.deltanet.roknet.ro.

As you may have noticed, we have listed Simon Boyce as our preferred media contact. He recently requested to use us in a major documentary about UFO's and paranormal (he works for the BBC, however he and his crew are currently working out of the CBC office – Canadian Broadcast Company – in New York). Although we declined the interview, he tried to make the point with us on several occasions that their intention was to be as objective as possible. So, whether or not that is possible (for the media to remain objective) at least his frame of mind attempts to lean in that direction. His producer/director, Debbie Geller, at a later time made another sincere attempt to try to convince us to participate in their documentary. So, for this reason, we are recommending that they be involved to some degree in the coverage of this event, that is, if their attitude seems to remain somewhat objective and you find working with them not too difficult. Of course, this is contingent upon whether or not you should choose to say anything to the media on our behalf. We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about.

(continued on next page)

Hopefully, you will be able to work together with some of the following: OSC, RKK, JHN, FLX/ABL and NEO (who is currently working for a company in LA called InterAct Entertainment). There is also a recent correspondent from Germany by the name of Soeren (we couldn't remember if we mentioned him to you or not), who has been trying to make it to the US to meet with us. OSC is in contact with Soeren and has offered Soeren housing at his apartment. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it.

We also asked OSC to register the Heaven's Gate book with the Library of Congress and that if he needed any funds to accomplish this, that you would cover it out of the project funds that you have on hand.

Also we want to make it clear that we're certainly not asking you to do these tasks if, after receiving this information, circumstances make it too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step. No doors are closed to you.



We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some. Our hearts are with you and we appreciate your help on all this.

Good Luck.

The Class

Note: Due to time limitations and less than professional equipment, the quality is rather poor on the enclosed videotapes, and for this we apologize. Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format — our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. (RKK has the original master in his packet). These tapes can be sent to the media or wherever you feel would be appropriate. However, in case you don't know this already, the SVHS tapes will not play properly on a standard VHS player/recorder, you will need to view them on an SVHS machine.

Additional Note: We suspect that the authorities will take an immediate interest in you — your whereabouts — your plans in relationship to the action that we took — and we are asking that you be cautious and aware of this for your own protection.

**URGENT Note:** Please drop the letter in the mail addressed to our landlord, Sam, as soon as you feel comfortable *that he will not get that letter before you have a chance to get to the address* listed in the "Location" document.

March 22, 1997

MRC/SRF

You are about to inherit what's left of our purser task, to do with as you choose. We are arranging to get some funds to all of you (RKK, OSC & MRC/SRF) from what we have on hand, but we know that there is no way we can pay you for whatever efforts you may or may not choose to contribute in collecting our loose ends and disseminating information about what actually happened here.

### Funds Which May Come In After We Leave

We don't know if you'll actually be able to get any of these funds, but if it is possible, we'd like these funds to be available to those who still support the class and want to help get our information out.

We had two clients who still owe healthy amounts to our company, Higher Source Contract Enterprises. For security reasons (we aren't sure how public MRC/SRF's P.O. may become), we are asking these clients to make out their final checks to OSC and mail them directly to OSC, but these companies may or may not cooperate. Should these clients send checks to our Higher Source P.O., the mail should be forwarded to our box with MRC/SRF, and if you choose, you could deposit those checks in our Higher Source bank account via mail, and use the signed checks that we are sending you to get the money out. If they pay OSC directly, then hopefully he can cash the checks and divvy the funds up with the others. There are three significant amounts still owed to us.

QwikCap
4755 Oceanside Blvd., Suite 130
Oceanside, CA 92056
Contact: Spencer C. Elliott, Phone: 619-631-5280, Fax: 619-631-5285

*Spencer knew us as June, Gaider Sonny, Stewart, & Rio of Higher Source*

*Update: We decided not to ask Qwikcap to send a check to OSC. If they send a check, it will be to Higher Source*

Amounts Owed:    $4,750.50 (due 3/28/97)
                 $9,400.00 (due 3/14/97)

Btek Computer Services
3802 E. University, Suite 5
Phoenix, AZ 85034
Contact: Stan Babowicz, Phone: 602-470-0705, Fax: 602-470-0753

*Stan knew us as Melinda & Sonny of Higher Source*

Amount Owed:    $3750.00 (Overdue since about Dec. 96, but we subcontracted for a client who has been slow to pay. Stan has been expecting payment any day, and if he does get the funds, we believe he will in turn pay us.)

The other source of income we expect is from tax refunds. We provided you a Power of Attorney for anyone expecting a tax refund, and a list of refunds expected, but we don't know if you'll be able to successfully cash any checks or not—or even if you'll want to try.

You can also use whatever is in the TELAH bank account, which we think is about $1430.

**Postal Boxes**

We provided you a list of all our P.O.'s. We closed out a couple of P.O.'s (a U.S. Post Office box in Rancho Santa Fe, and a P.O. for OLL & TLL in Colorado Springs). We sent letters to four P.O.'s asking them to forward weekly to the box we have with you in Phoenix, and we gave them forwarding funds for this purpose. A fifth P.O. (Del Mar Hts P.O.) we did nothing with, since it had little mail going to it. The sixth P.O., the Scottsdale P.O. also was not forwarded. Instead, we are giving you the keys to the Scottsdale P.O. in case you choose to stop by and pick up the mail. Other than the checks you might get through our Higher Source P.O., we doubt that there will be much of interest to you in our mail.

**Power of Attorneys/ID's**

We are sending you a comprehensive Power of Attorney for anyone expecting a tax refund, or who has major items (cars, credit cards, insurance, rent, etc.) in their name. We don't know if these will be accepted by those you deal with, or if you'll have any reason to use them. We also sent you a list of the legal names of all the individuals in the class along with their basic information and a copy of everyone's passport or ID.

**Bank Accounts**

We have only two bank accounts of possible interest to you—business accounts for Higher Source Contract Enterprises and TELAH Services.

**Bills**

We do not expect or want you to pay any bills. We've left extra funds with our landlord, the credit card companies, and anyone else that we thought might have reason to think we might owe them money. We even filed all of our tax returns for 1996 and paid any taxes that anyone should owe this year. (Copies of our tax returns and all supporting documents have been left in our craft for the government.) We did our best to pay anyone and everyone. If we missed something, it was unintentional, and our bills certainly shouldn't be a concern for those of you who feel led to continue here.

**Voicemails**

We sent letters canceling all of our voicemails as of 4/1/97. You shouldn't need to be concerned about any of these.

**Insurance/Registrations**

We are sending you a list of our cars and basic related information. We didn't cancel insurance or registrations for the cars (and we don't think you need to). We figured that as cars are sold or re-registered, this issue will take care of itself.

**Phone Cards**

We have a couple of pre-paid phone cards that still have some funds on them if you'd like to use them. (We used them for calling from pay phones.) To use them dial: 1-800-355-0599 and enter the account number. The account numbers are:

27841873   Balance about $96
54937763   Balance about $42

May the force be with you!

Pursers (SNG, SLV, MLL, GLD)

*[handwritten top:]* black ked-out their names on this purser task letter. Apparently they didn't on the primary letter.

*[handwritten left:]* MRC/SRF

If you choose to accept this mission....hopefully this note thoroughly explains all you need to know about the keys/titles/bills of sale for the cars we've been using. We all thank you very much for any and all the help you have given us—we appreciate it, and the Next Level appreciates it, more than you know.

What we've done is to take all the cars to the San Diego Airport Parking Co., the location of which is shown on their flyer and further clarified on the marked Mapsco pages. Note that there is free shuttle service from and to the San Diego Airport. Also enclosed are one set of keys, the signed title, and a signed Bill of Sale for each car. The Olds has two Bills of Sale, in case it matters what state the Bill of Sale must be for (since the title and registration are in different states). We are hoping that you will solicit help from Oscar (OSCODY), RKK, FLX/ABL, and others as you need it.

**NOTE**

Whoever picks up the car(s) will need to present the enclosed claim ticket and have the car keys with them. There is someone on duty 24 hours a day and you can pick up the cars at any time. We've paid for one month's parking to give you plenty of time to make whatever arrangements you need to.

*[handwritten right:]* THE CLAIM CHECK ENCLOSED ARE IN NAME OF MARK THE CAR DESIGN: ARE WRITTEN in c the top of the ch Check.

It's up to you how the vehicles are distributed, but the following suggestions were ok'd by Links:

- White Ford van (X-van) and dark blue Mercury Sable (S-car) to MRC/SRF. We thought you might be able to use X-van to help shuttle things around for your business.
- The white Lincoln Continental (LC-car) to RKK.
- The silver Mazda van (M-van) and tan Oldsmobile (O-car) to OSC. We thought if Soren comes that it would be helpful for him to have use of a car—perhaps the Olds would be suitable for his use.
- ~~Maybe you could contact NEO, JHN, FLX/ABL, or possibly RYP to see if any of them want the blue Ford Van (Blue van) or any of the cars that you, RKK, or OSC don't want, or if they could use the proceeds from a sale—you can work it out with them as you see fit.~~ *[handwritten right:]* left at residence
- If there are vehicles that are not wanted or can't be used, maybe they could go on some car lot on consignment, or be sold, or given away, or just forget about them. We do feel the I-van (white Handicap van that really stands out in a crowd of cars) could be sold for something, maybe to a Nursing Home or Handicap place, etc. It's in very good shape. Maybe OSC or RKK could help you with its disposition.
- The large yellow moving truck can be found at our storage place (the accessing and disposing of storage items are covered in another note to you). Again, perhaps you could get some help from RKK or OSC in handling the truck and storage.
- Pertinent information about each car (maintenance records, care instructions, etc.) can be found in the respective glove compartments or on the front seat. Note that the I-van has a book of instructions for how to operate its various features. It's particularly important that this book be read before operating the vehicle. Also, you will find extended warranties for S-car and LC-car.

Another set of keys, as well as list of vehicles, a copy of this note, and copies of the paperwork are coming to you in another package, just in case something happens to one package. Some cars may have a travel bag in them—be sure to get the bags and their purser contents.

Thanks again,
The Class

Chris and Holly,

Well, it's difficult to know where to start since you know quite a bit about us, yet it's been through the acquaintance of only a few classmembers. Those of us who do know you, never felt it was sheer happenstance that our paths seemed to cross as they did. And we're hoping that your association with us won't put you in too awkward a situation, especially by hosting the heavensgate website. (Enclosed is a diskette containing the contents of the site, which we are providing you as insurance and back-ups.)

Enclosed is also a list of others who are receiving this information simultaneously ... many of these are individuals who have spent varying degrees of time in the class and who, for different reasons, found themselves outside the class at this time.

We believe you know Rio who is now working at InterSet Entertainment in LA designing websites. Their server currently houses the Kushuer Locke website (one of the owners of InterAct, Nick Mutronicks, is friends with Peter Locke. Nick also knows us ... who we are – and we have done quite a bit of work for his company.)

We're not aware of anyone else on the list that you know personally – but we suspect that they'll all be quite cooperative and helpful to you.

Chuck Humphrey is a computer programmer and all-around computer person who will be keeping up with our site on a Romanian unix server as well as uploading to the heavensgate sites the final press release and the Exit Statements by Students. If for some reason there is a delay in the upload to the site on your server, feel free to go ahead and do it. All the files that need to be replaced and/or added are on a single diskette labeled "Earth Exit, final press release and index page." We mentioned to Chuck to contact you if he had any questions regarding unix – we thought you'd be happy to help him out if he needs it.

We obtained space on this Romanian server to house a mirror site of heavensgate. The URL is www.heavensgate.dotunet.roknet.ro – hopefully the webmaster can withstand the controversy. This Romanian fellow knows very little about us until such time as he receives this Fedex with press release, except that we are a small interfaith monastery with some "non-traditional" views. His name is Ionut, and he was quite agreeable when we spoke to him on the telephone, but that was before he was aware of our history or of events to follow.

Well, here's to you. Thanks for your help throughout the years. We do suspect, however, that our paths are likely to cross yet again – we'll see.

Your friends,

June, Steele, Sonny, Nick, Evan, Otis and Geoff

this letter was sent to MARS MEDIA – Holly Crais
used to have the Heaven gate site on their
server until it was removed and given to Ryan
Scandsburg.

RKK,

By now, having read the enclosed press release and the Earth Exit Statements by Students, you should be aware that we have exited our vehicles just as we entered them. Also enclosed is a list of the others who are receiving this press release, as well as a document describing our location. The Internet account information, however, we sent only to you, MRC/SRF, and OSC. We are hoping that with your computer skills, you might choose to assist us in this capacity for whatever length of time feels right to you. We are particularly interested in having you upload the files on the third diskette entitled "Earth Exit, final press release, and index page" to all three of our websites. Instructions to do this have been written up by SRR/VRN and are included in this packet. We are also interested in someone following through with keeping a check on the site located on the Romanian ISP listed on the account information sheet.

We did upload the site to his server last Thursday and we also FedEx'ed the Romanian webmaster the same set of diskettes as you received containing the entire site along with a press release and related documents. We have prepaid two months of webhosting on this Romanian server under the name of Sister Michael Remi. The FTP and telnet access routine is detailed on the account information sheet. The webmaster's name is Ionut Muntean, telephone number: 011 40 68 322150. He speaks and writes English well enough for us to communicate with him, and seems to be an agreeable fellow. All he knew about us however, before now, is that we were a small Interfaith monastery with some "non-traditional" views. So we're not sure what his response will be to this most recent event.

We are hoping, of course, to use this site as an alternate way to access our information in case the authorities shut down our sites in the States. The URL for this site is www.heavensgate.deltanet.roknet.ro – the server is unix machine. If you run into any questions regarding the unix server, a friend of some classmembers named Chris Milus (he's on the list we sent you), runs an ISP in Tennessee, which currently houses the heavensgate.com site. He's very unix knowledgeable, and we suspect he'll be more than happy to help out.

Thanks for your help on this.

Also we want to make it clear that we're certainly not asking you to do this if, after receiving this information, circumstances make it too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step.

We have listed Simon Boyce as our preferred media contact. He recently requested to use us in a major documentary about UFO's and paranormal (he works for the BBC, however he and his crew are currently working out of the CBC office – Canadian Broadcast Company – in New York). Although we declined the interview, he tried to make the point with us on several occasions that their intention was to be as objective as possible. So, whether or not that is possible (for the media to remain objective) at least his frame of mind attempts to lean in that direction. His producer/director, Debbie Geller, at a later time made another sincere, attempt to try to convince us to participate in their documentary. So, for this reason, we are recommending that they be involved to some degree, in the coverage of this event, that is, if their attitude seems to remain somewhat objective and you find working with them not too difficult. Of course, this is contingent upon whether or not you should choose to say anything to the media on our behalf. We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about.

(continued next page)

Hopefully, you will be able to work together with MRC/SRF, OSC (Oscody), JHN, and NEO (who is currently working for a company in LA called InterAct Entertainment). There is also a recent correspondent from Germany by the name of Soeren, who has been trying to make it to the US to meet with us. OSC is in contact with this individual and has offered housing for him at the Phoenix satellite. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it.

Also, it's OK of you want to ask PYP if he would like to participate in any way.

We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some.

Good Luck.

Your Friends

**Note:** Due to time limitations and less than professional equipment, the quality is rather poor on the enclosed videotapes, and for this we apologize. Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format – our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. (RKK, you have the original master, we thought you would know best how to duplicate the tapes and where to distribute them for widest coverage.) These tapes can be sent to the media or wherever you feel would be appropriate. However, in case you don't know this already, the SVHS tapes will not play properly on a standard VHS player/recorder, you will need to view them on an SVHS machine.

**Additional Note:** We suspect that the authorities will take an immediate interest in you – your whereabouts – your plans in relationship to the action that we took – and we are asking that you be cautious and aware of this for your own protection.

Rkk,

Last minute additions for the web site -- if you would like to help in this way. Heavensgatetoo is our primary concern. We have others that may already correct the other sites if you don't get a chance to get to it. Note: any existing graphics that are missing from these files can be found already on the web site.

Re: Installation of the files found on this disk.

The files on this disk are a press release and the latest papers by students regarding our exit. These are intended as updates to the existing websites of heavensgate, heavensgatetoo, levelabovehuman, and the Romania heavensgate site.

Since the heavensgatetoo site has a unique set up from the rest, you will find a "too" subdirectories present on this disk. The files in it are the equivalent to heavensgate (or levelabovehuman) but are for heavensgatetoo.

For simplicity, you will find both index.htm and index.html in the root directories. These are duplicates of one another. Some of the sites default to index.htm others to index.html, hence the duplication -- upload both. The files in the "misc" directory compliment what is already in the online misc directories. The new index files update the index files that already exist in the online root so that they will now include pointers to the press release and student exit papers.

On another disk that you were sent, you will find the account information you need in order to upload these files.

Thanks,

Your Friends.



Mrc & Srf letter from Class page 1 of 2:

List of others receiving this final press release and "Earth Exit Statements by Students...

"The Internet account information, however, we sent only to you (1), RKK and OSC.

The storage key was to remain confidential to you (1) and "whomever on the list above would be most helpful to you - we suspect RKK and OSC."

"We suspect RKK and OSC would likely be a big help - but including others (2) would be OK as well, whatever your strategy permits."

"You can do with those items whatever feels right to you. The only exception to this is some exercise equipment which belongs to our landlord, Sam, and we suspect he will want at some point.

Note: Perhaps what feels right to them is to ignore the many, many indications that among those items, the 1061 audio tapes, included was to store them and hardly at all share them with anyone over 25 years, but even DO and Crew expressing this is not without their showing what they hoped would happen with the contents of that storage unit in Escondido.

Next they describe another storage unit where they have a truck they suggest Rkk retrieve that they suggest be used to contain the contents of the escondido storage unit (where the tapes are).

They go on to say their intention for some of the content of that storage unit:

"It is our desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information".

Note, in this example they didn't refer to anyone in specific "inclined to disseminate our information" the way the previous statements referred to Rkk, Osc and the "others on the list". So did they just overlook how the wording was different in the "dissemination" task. The next line adds some clarification of their intention:

"Any of the funds you retrieve can be used towards that end and for the living expenses of those of those involving themselves with this project."

Up until this point no "funds" were mentioned. Could it be that there were things in storage that could have been sold?

Next the letter addresses not being concerned with the contents of the house at Rancho Sante Fe saying the owner of the house, Sam "could have whatever valuables are there".

Regardless, again it talks about "this project". What project were they referring to? Anyone that knows TI and DO's Mind from their countless references in their many materials, audios, video's, Their Book, etc. knows while they were here they were always wanting people to learn about

them and their information. That's the only project that was left after
they exited. This is further revealed later on.

For example the next things talked about in this letter is the Heaven's
Gate website they had sent a copy of to a Romanian webmaster . This
clearly shows one sample of what the project is - to make sure their
information is made available, so much so that they sought a company off
shore from the US in case the US shut down the US host of their website.
About this they said,

"We are hoping, of course, to use this site as an alternate wayt to access
our information in case the authorities shut down our sites in the States"

(They had at the time at least 4 websites called Heavensgate.com,
LevelAboveHuman.com, Righttoknow.com and Heavensgatetoo.com)

Then they went on to describe their "preferred media contact, Simon Boyce
who workd for the BBC at that time working out of the CBC Office -
Canadian Broadcast Company - in New York who wanted to use them in a
"major documentary about UFO's and paranormal. They had declined the
interview. Here is what else they said regarding Simon Boyce:

"he tried to make the point with us on several occasions that their
intention was to be as objective as possible. So whether or not that is
possible (for the media to remain objective) at least his frame of minde
attempts to lean in that direction. His producer/director, Debbie Geller,
at a later time made another sincere attempt to try to convince us to
participate in their documentary."

Now remember these letters arrived on March 25th in a fed x package that
other former dropout classmembers received copies of. They next mention in
this letter "this event" that in context seems to be clearly talking about
their planned exit of their human vehicles that Mark and Sarah would have
known about by then. They go on to say:

"So,for this reason, we are recommending that they be involved to some
degree in the coverage of this event, that is, if their attitude seems to
remain somewhat objective and you find working with them not too
difficult.

So They were hoping Mark and Sarah, "you" to whom this letter was
addressed would seek to at least explore working with Simon and Debbie if
it wasn't "too difficult". These two are media people who were interested
in the group for their documentary. But even after saying what they would
choose for Mark and Sarah to do (if it felt right) they stated:

"Of course this is contingent upon whether or not you should choose to say
anything to the media on our behalf."

As is the way of the Next Level as taught by both TI and DO that shows
lots of evidence of throughout the audio tapes, they don't push people or
guilt them or manipulate people into working for/with them. They always
said that's what the lower forces do. That's what many humans do with one
another. Since the Next Level doesn't need any humans for anything, they

require us to want to work for them and to prove it to them by choosing to work for them in the ways they primarily reveal to us, which they are showing some of the ways in this letter. This "hope" they had that some would take on this project of dissemination of their information is echoed throughout their book, "Heaven's Gate" - How and When The Kingdom Level Above Human May Be Entered" - "an anthology of their materials". They state their highest intention for Mark and Sarah to choose to take on by saying again:

"We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about"

"more thorough knowledge"? Wasn't the web site anthology of their materials in their Book (that included the transcripts of the videeo series, "Beyond Human - The Last Call" - that they sent SVHS masters to JHN and sent VHS copies to others in the list, and the exit video's and other documents given to Rkkody to post on his Right to Knpow website, all made before their exit in March of 1997 providing that "opportunity for more thorough knowledge of who we are and what we're about?" What other material could give a more thorough knowledge of who we are and what we're about?" What's not obvious to a casual reader of this letter is the fact that in that storage room there were some 1061 audio tapes that were more than that in hours from the internal meetings of TI and DO and/or DO (after TI exited in 1985) to their student body from 1982 to 1997.

They hoped those tapes would be "divided among those inclined to disseminate our information". So at the very least, they were to be divided among those mentioned in the list, which were then listed in page two of this letter saying:

"Hopefully, you will be able to work together with some of the following: OSC, RKK, JHN, FLX/ABL and NEO (who is currently working for a company in LA called InterAct Entertainment)."

Then they go on to list another person whom wasn't a member of the classroom, never had been while all those mentioned once were members of the classroom and even asked that he be provided with "housing" at OSC's apartment. Here is what is said about Soeren:

"There is also a recent correspondent from Germany by the name of Soeren (we couldn't remember if we mentioned him to you or not), who has been trying to make it to the US to meet with us. OSC is in contact with Soeren and has offered Soeren housing at his apartment. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it."

One of the objections Mark and/or Sarah had made to not considering Sawyer (SWY aka Swyody) and Carlan (CRL aka Crlody) as recipients of that division of audio tapes ("items of value" to showing "a more thorough knowledge of who we are and what we're about" (as found in storage)) was because niether Sawyer nor Carlan were in the names mentioned, even though

in that instruction the wording didn't limit who was to receive some
portion of the audio tapes. Yet among those names none including Mark and
Sarah (MRC and SRF) showed any more of being "inclined to disseminate our
information".

Mark and Sarah at the time of receiving this letter chose to send Rkk and
Osc to storage to retrieve the "items of value", perhaps not even knowing
what the items of value actually were. When Rkk and Osc opened the door
according to CRL who worked with RKK and heard from RKK his account of
going to storage CRL told me that RKK said the boxes of audio tapes were
stacked right up front. Rkk only took one of the boxes and it contained
some 484 audio tapes. He then divided them in some way and copied some 218
of them and gave all the masters to Mrc/Srf because by then they wanted to
have them. RKK then proceeded to copy them and digitize them and put them
on cd's and sent them to some libraries of at least one university and to
certain individuals that included SWY who met with him in 1995 near
Boulder, Colorado and stayed in communication until he exited his vehicle
for the second time in 1998.

Sawyer has as evidence those cd's and they can still be read and they show
the postmarks of 1998 which proves they were not in the storage room when
a judge from San Diego County gave Mark and Sarah the intellectual rights
to the contents of that storage room. Those digitized audios were gifted
to me from Rkkody who was on the list of those who would certainly be
among the ones DO and Crew hoped would disseminate their information. Mark
and Sarah had no instructions to copyright any of those tapes. So those
copyrights are in dispute. Furthermore, it was JHN (Juan) who gifted
Sawyer a thumb drive containing those 218 audios and another some 712
audios and JHN was another name mentioned by DO on the list of others
MRC/SRF should try to work with. Mrc/Srf gave them to JHN and JHN has
testified that he believed they weren't meant to be locked up in storage
so he gave them to me. We have evidence that Mark and Sarah were very
upset that JHN was going to give them to Sawyer. Thus all those audios
were gifted to Sawyer and Sawyer gifted them to Carlan and Carlan and
Sawyer have been gifting them to others and not receiving any payment for
them.

So what is the evidence that DO didn't intend for Mark and Sarah (TELAH)
to copyright the audios or much of anything they retrieved from storage?

The next line in the letter sheds some light on this:

"We also asked OSC to register the Heaven's Gate book with the Library of
Congress and that if he needed any funds to accomplish this, that you
would cover it out of the project funds that you have on hand."

As said earlier, even though they showed their intentions all throughout
this letter, they still wanted Mark and Sarah to have the opportunity to
choose "other options" to "these tasks" and have the freedom to "exercise
any available options with whatever timing feels right for your own next
step":

"Also we want to make it clear that we're certainly not asking you to do
these tasks if, after receiving this information, circumstances make it

too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step. No doors are closed to you.

We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some. Our hearts are with you and we appreciate your help on all this.

Good Luck.

The Class"

So the "tasks" being spoken of are the tasks they wanted some to take on but they were allowing Mark and Sarah to make changes if "other options seem more appropriate for you". They opened it up for them to perform what they felt was more appropriate for them according to what "feels right for your own next step". The steps they hoped all would take was to do the tasks given - to disseminate their information far and wide and to Stand in Defense of TI and DO and accept the consquences of doing so as described in Jwnody's document:

{ Exhibit ""Away Team" from Deep Space Surfaces Before Departure"] in the Heavensgate.com book also seen on http://www.Heavensgate.com}

So what about the copyrighting. It's apparant that the registration of the Book with the library of congress might require a formal publishing of their book under a foundation name, such as TELAH Foundation, as opposed to self publishing. The group left behind a self published book we will call "the blue book". mark and sarah published that same book with a different copyright page referred to as the "purple book."

[ exhibit - different copyright pages]

We don't know if they had instructions from DO to change the copyright page. The initial one provided a common law copyright.

However, one could include a modified version of the copyright to satisfy both points of view.


*********************************************
Case ID: USDC IN/ND case 3:22-cv-00395-JD-MGG   document 1-1 filed 05-18-22
*********************************************

*** Exhibit A - Certificate of Registration - United States Copyright office Registration Number SRu 298-530 10-27-97

Title of work: THE AUDIOTAPE LIBRARY OF HEAVEN'S GATE BY TI AND DO*

*   Deposit includes 486 audio cassettes containing text and sound recordings

Summons requires an answer or motion in 21 days from day it is received to Isaac S. Crum, Messner Reeves LLP, 7250 N. 16th St. Suite 410, Phoenix, AZ 85020

Must file answer or motion with the court.

Also applies to Cathy Joann Weaver and Jason Bartel

*** Exhibit B - Certificate of Registration - Beyond Human - The Last Call

*   Deposit includes 6 video tapes

*** Exhibit C - "Heaven's Gate" Trademark for pre-recorded video tapes featuring content of a religious or spiritual nature

*** Exhibit D - "Heaven's Gate" Trademark for cloth patches or embroidered patches

*** Exhibit E - Heavens Gate keyhole logo for use on digital media, video tapes and DVD's featuring religous and spiritual information

*** Exhibit F - The C.B.E. (Celestial Being entity) lithographic print

*** Exhibit G - Heavens gate book

*** Exhibit H - Sawyer Stands for TI and DO's Heaven's Gate blog at sawyerhg.wordpress.com

Archive for the "ufo cult' category

Posts:
- Updated TI and DO Audio Tape Log
- Transhumanism, like the Religions and New Age Spirituality are Dead Ends at this Time
- Two Major Celestial Events Effect the Earth on April 12, 2021 - Fireball Explosion and Near Miss Asteroid #44 Since 2021
- Response to: Content Deep Dive: 3spm The Heaven's Gate Apologist
- What Humans are up to in Space and on Earth and Why
- Critique of HBO Max Heaven's Gate Cult of Cults Docuseries Article
- Standing for TI and DO is Our Task Now
- Sawyer's Commentaries to Heavens Gate Podcasts by Pineapple Street Media (index to several commentaries to podcast series)
- Critique of Daily Mail article 12-15-2019
- TI and DO Classroom Meeting Transcript Links
tape #5
tape #53
tape #215
tape Mt. Cross, CA
Last Chance to Evacuate Earth Before It's Recycled
tape #95 - Listing our task

Summons:

Civil Cover Sheet:

```
(1) refers to Mrc/Srf (Mark and Sarah King)
(2) by "others" in context refers to others on the list
```

The letter from the class to the landlord of the Rancho Santa Fe property
by crlody
Note: This letter was included in the FedEx package that was sent to
MRC/SRF ( aka Marc and Sarah King ) with the following instruction,

"Please drop the letter in the mail addressed to our landlord, Sam, as
soon as you feel comfortable that he will not get the letter before you
have a chance to get to the address listed in the 'Location' document".

In his manuscript RKK discusses the letter and MRC/SRF's reaction to it,

"they were also concerned about a letter they were (to) send to the
landlord of the house where (sic) the class had rented. MRC told me that
they had a copy of the letter that the class for Sam and has asked MRC/SRF
to send (it) once the bodies were found. The letter contained their names
and my name. They wanted to remove their names and my name from that
letter before they sent it off. I had some real mixed feelings at that
time, as it seemed that they were changing something the class had
purposely done, yet I also had mixed emotions about my name on the letter
that might the authorities to me and I think that neither MRC/SRF wanted
that link. I think that ultimately my response was to tell them they had
to do what they felt was right to do. I learned later that they did remove
their names and my name because they felt that Sam would surely show the
Sheriff and that would be a direct link to us".

S, R, T & T,

First off, we wanted to say how much we appreciated your friendship. It's
very unusual for us to have more than a brief association with human, but
maybe it was because your roots are not in the US and your belief is non-
Christian. Anyway, when we first leased your house we know your belief and
trust in us was put to the test. As the months went by, we fulfilled all
our obligations and we think we more than met your expectations. We feel
that the Next Level arranged this circumstance with you and that we hope
you're up to an even greater test. The test for you now is that our task
here on earth is over and it's time for us to go home--to return to the
Kingdom of Heaven from where we came.

As you will remember Sam, we told you that these containers ( bodies )
were merely tools for us to use for our task and that we borrowed them
since the early to mid-seventies ( more or less 22 to 24 years ago ) and
have been using them ever since. It's now time for us to exit this world
and leave out borrowed bodies behind. Since we come from the world above
human that created all that is including these human containers, each of
us had the right to take one and use it, and each of us also has the right
to lay it down. By the time you receive this letter we will be left a few
days ago.

Since when we came into this world we borrowed these containers for the
task we were given to do, it's necessary that we leave them behind upon
our return so that this world will know that we came, offered the Kingdom
of Heaven to them, and left. We could have very easily been picked up
unnoticed by a space craft and quietly slipped away with no one the wiser,

but the design for our end is that it's necessary for the world to have
proof of our existence and judge us as they will. As you know so well.
most of it will be full of misinformation and negative, but there may be a
few who might have their eyes opened a little and see some of the truth
behind our action. What this amounts to, Sam and F, is that we left these
"containers" ( the bodies we were using ) in your house and soon the
authorities and news media will be all over your property wanting to know
every scrap of information ( past and present ) about us. All that you
read and hear will most certainly be negative, but the K's who know us and
who see us as "angels" from heaven, can try and set their twisted record
straight if you want to. All of our containers had a past before we
borrowed them and so the media will dig up all the garbage they can find,
especially about Teacher Do ( who you know as Father Jonathan ). To the
world and the way humans are programmed, your house will appear as a crime
scene where a group of cult members lived and "committed suicide". Nothing
could be further from the truth for we merely left behind the tools that
we needed for this earthly task, and since each container had served its
intended purpose, it was discarded when it was no longer needed--just like
you would discard a worm out suit of clothes. The ignorant world will want
to know who we are and why we would do such a "stupid act" and so ( sic )
numerous books, movie and TV scripts will probably be quickly written to
profit from the media hyped "tragic event". If you want to benefit
financially from what you know about us and the media notoriety you will
have, feel free to do so. Our "Heaven's Gate" book that you have a copy of
will probably become a "best seller".

In preparation for our exit, we wanted your house to be as nice as
possible, so we have spent a lot of time cleaning up the grounds. We
cleaned up the back fence area bu hauling off about three truck loads of
old yard trimmings. We also pruned and fertilized the fruit trees, pulled
a million weeds, weed whacked the grass around the fruit trees and shrubs,
fixed a lot of broken and damaged sprinklers to where they all work, dug
ditches around the fruit trees for holding water, trimmed the hedges and
shrubs, and a lot more. The grounds look nice.

The authorities may want to confiscate or hold for estate purposes, TV's,
bunks and other equipment that belongs to us. As far as we're concerned we
would like for you to have what is left in the house if the authorities
will allow it.

Note: Despite having this letter with the above statements and the
following from their own letter,

" It is likely that the items currently in the residence will not be
easily available to you-- so we did mention to our landlord, Sam, who
might have better luck with the authorities in claiming some of those
items that he could have whatever valuables are there-which likely will
amount to a few TV's. some bunks, a few household items, and perhaps a
laptop computer or two"

the Kings still filed a lawsuit against San Diego County for the items
that were in the house.

******

https://culteducation.com/group/968-heaven-s-gate/9572-judge-rules-san-
diego-county-owner-of-heavens-gate-estate.html
Text:
Judge Rules San Diego County Owner of Heaven's Gate Estate
A judge has ruled the County of San Diego is the owner of the estate of
the Heaven's Gate Cult. Superior Court Judge Lisa Guy-Schall issued that
decision Monday.
San Diego Insider/February 23, 1999
The judge had presided over a three-day trial last month that pitted the
County of San Diego against an organization called TELAH, which stands for
Evolutionary Level Above Human.
The two founders of TELAH, Mark and Sara King, had claimed the Heaven's
Gate members transferred ownership of all their assets to them before 39
cult members committed suicide in March 1997 in Rancho Santa Fe.

The county contended the assets should be liquidated and used to pay
claims filed by relatives of cult members to pay for burial costs.

Those claims with the county total almost $100,000. The assets, which
include vehicles and computer equipment, are valued at just over $50,000,
although it is thought many of the assets could be worth much more at
auction to collectors because of the notoriety of the cult.

The judge also hit the Kings with court sanctions for filing a frivolous
petition and ruled they must pay the county's attorney fees and other
court costs.
*******

I feel that it was a nice dose of karma that the Kings got hit with for
filing a "frivolous lawsuit" for going directly against the class'
instruction regarding the items in the house.

Back to the letter,

The big screen TV cost $5,800 and the smaller one in the den/bar was
around $1,200, so feel free to keep or sell them. Hopefully, the TV's and
other equipment we left in the house, plus the $7,000 deposit we have with
you will take care of our financial obligations for April and May. We hope
our story alone will be worth something. The Next Level will be in the
house watching all that happens and will assist you with your task. Our
vehicles ( bodies ) will probably be taken to the morgue and may or may
not be claimed by their human families. It will probably be chaos around
your house for awhile with not only the cops, FBI, and media, but the
snoopy, looky-lou public who may wany souvenirs might be more of a
problem. If the public thinks that your house was actually occupied by a
God ( Father Jonathan ) and angels from God's Kingdom, who knows, they may
want to but it from you and turn it into some sort of shrine.

The truth about the Kingdom of Heaven and the facts about us are in our
Heaven's Gate book and on our website http://www.heavensgate.com. In
preparation for our exit, we have produced and added to our website some
materials to give the world a chance to know the truth from the Kingdom of
God'd point of view as opposed to what they will hear and read from the
media. With this in mind we have sent out a press release nationwide and

have enclosed a copy for you. We have also prepared and sent out a few copies of a 1 1/2 hour video tape of Do ( you know him as Father Jonathan ) explaining what our task has been, why we can no longer stay here, and the fact that it is necessary for us to leave now in order that we be out of harm's way before the serious spading under of this planet is set in motion by the Next Level.

All our current bills have been paid, but since we won't be here to pay the remaining ones that come in we would be grateful if you would take care of them for us, and so we've enclosed $1.500 that should be more than enough. Thanks for the use of your house and your friendship. All that has and will happen can be a positive if you view it from the right perspective. Also know that the Next Level picked you for this task because they felt you could handle it. You won't be alone, so just ask the Next Level for help as you tell the world about us, and you will have it.

Thanks for everything,

Logan & June

# EXHIBIT 5

## Chatroom with Mark King – September 3, 2021 on Sawyer 3spm Youtube Channel

Geoff Barnes
?sup SWYODY

CelticKing345
?Hi Sewyer

krell
?hey sawyer

krell
?how are you sir

krell
?no audio so far?

krell
?there we go

krell
?sounds good

Abby B
?I can hear you

Abby B
?Yes

Abby B
?Audio is fine

Geoff Barnes
?hear you fine

CelticKing345
?Your audio is fine

krell
?sometimes i toy with the idea that biological creatures are the most
advanced and efficient form of self replicating tech

Geoff Barnes
?can TELAH sue us for listening to you play a tape?

CelticKing345
?Are the bodies in the next level made of flesh and bones like ours? Or
are they robots?

krell
?that's why i love christ. no hidden privileged information. the parables
were in plain language for anyone with ears, let them hear

krell

?i feel like grace is what allows us to do the work and take pleasure in
our toil as our portion forever

Comment Section User
?is there any way to download all of these audio tapes

krell
?that is one way to discern maybe. if you say you cant and dont believe in
something. but it doesn't go away.

krell
?perhaps then you must

Comment Section User
?also what program are you using currently i can't identify it by sight

krell
?in a screen or higher image

krell
?man is not independent of woman or woman of man. woman was made from man
and now man is born from a woman

MR UFO GUY
?Hello Sawyer and chat????

krell
?o7 ufo

patty
?Hi Sawyer!!!

patty
?Ah i see, the commentary thing

patty
?What if you put a disclaimer at the beginning of every video to cover
yourself?

Mark King
?Hi Sawyer, You may want to qualify that you are not an attorney. Fair use
does not cover playing whole tapes and collections. We have destroyed that
in court.

Geoff Barnes
?woah

patty
? Fair use if it's works of commentary which is exactly what we're getting
here

Geoff Barnes
?hey Mark

```
krell
?why would someone not want the tapes played if no one is grifting or
anything

krell
?wouldn't it be better to be out there

patty
?^

patty
?Sup krell!

krell
?hey patty

krell
?so many creatives have used do's words and image for projects. lots of
inspiration

krell
?all forms of media from cartoons and music

rodefoe
?hey guys

rodefoe
?aiight, ima head out

patty
?Lol

Steak and Eggs
?Good evening Sawyer

Geoff Barnes
?sup steak

Mark King
?RKK gave us the original 202 tapes back in May, 1997.

Geoff Barnes
?I wish you could all work together in a timely fashion

Mark King
?So Ti and Do would steal copyrighted materials? You can just ask us for
them. There is so much more material to see.

Geoff Barnes
?Mark I am interested in the materials

Mark King
?We just want to serve the Next Level. Please examine saying we are
working for lucy.
```

Mark King
?Cathy, RKK was given the website task. He failed at that and the site
went down on March 28th, 1997. JHN was given a storage task. He has turned
against the NL. We were asked to do the rest.

Mark King
?Hi Cathy, All tapes will be placed on Vemio.

cathysouthwestern
?Mark I can say 100% I am very grateful to you and Sarah for maintaining
the website all these years and for the audio you have emailed me
personally when I emailed you asking for it.

Mark King
?Sorry Sawyer, we have a 200 word limit.

cathysouthwestern
?It hurts me greatly to see past class members fighting and it's confusing
as well. It doesn't jive with how the class was when together.

78 Sound
?has there been any evidence they made it on the spaceship?

cathysouthwestern
?Mark, all tapes will placed on Venmo? That is wonderful news!!!

Mark King
?Cathy, It is very sad. We want to let everything out now but Sawyer and
Bartel are blocking us by not following rules.

cathysouthwestern
?I don't understand how would them disseminating the information stop you
also from putting it out?

Mark King
?Sorry, we meant Vimeo.

cathysouthwestern
?Vimeo....okay....I saw it wrong!

Mark King
?Cathy, both Sawyer and Bartel has stated they would put out all the tapes
without structure. They have already demonstrated that they will steal
items that are copyrighted & trademarked.

78 Sound
?Dr. Steven Greer says its a state of consiousness when seeing they see
ufos

cathysouthwestern

?This is probably a really stupid observation but how can Next Level
information be regulated by the human kingdom?

Mark King
?Cathy - If they do that, the whole structure the Next Level set up will
be messed up.

cathysouthwestern
?but the Next Level would not let that happen

cathysouthwestern
?unless it is supposed to happen

Mark King
?Cathy, the structure and information will survive, if protected properly.

cathysouthwestern
?It feels like maybe y'all got wrapped up in human kingdom emotions
concerning Next Level information

cathysouthwestern
?and those of us who just want the information are stuck left wanting

Mark King
?Cathy, it is in Sawyers and Bartel hand to make this right. If they do
information will come fast.

cathysouthwestern
?I really don't care WHO puts it out. JUST PUT IT OUT is exactly how I
feel.

cathysouthwestern
?So you are saying your actions are a direct result of Sawyer and Bartels
actions?

Mark King
?If you live in this world you have to use earth's structure to do that.

cathysouthwestern
?You aren't putting out the tapes and it is Sawyer and Bartels faults? Is
that what you are stating?

Mark King
?Yes Cathy, They are standing in the way because they steal and them add
there spin.

cathysouthwestern
?So if they stop doing that you'll be able to put all the tapes on Vimeo?

Mark King
?Over the years they have demonstrated that if even one tape comes up,
they just put it out.

Mark King

?Sorry Sawyer, we do have the task to do.

cathysouthwestern
?Just sounds like a lot of ego going back and forth....Next Level wants
this information out and ALL of you are standing in the way

cathysouthwestern
?Just sounds like a lot of ego going back and forth....Next Level wants
this information out and ALL of you are standing in the way

cathysouthwestern
?get out of the way and let the Next Level talk to us through Do

Mark King
?Yes, LGG/MLL set up Telah and said that is the name we will be called.

Mark King
?We are the Telah Foundation. The Next Level set it up.

Mark King
?With permission, you can have the tapes and other things.

Mark King
?Sawyer, Authors of internet articles and documentaries make changes all
the time. We are misquoted and simply lied to often.

Mark King
?This format is not conducive to answering questions. Things are asked
while I am answering and I am not hearing them. My spelling is not too
good at times other.

Mark King
?Hi Cathy, we know you have to get to work so we will let you go. We have
to go to bed but we appreciate talking to you. Like we said, we have told
Sawyer it is up to him.

Mark King
?We could be back on track in days or end up in court. He has to really
talk to Do. We do everyday.

Mark King
?RKK inaction and failure to get the storage items cost Sarah and I
$325,000 in court action (which we won) to get audio tapes 487 to 1061. We
knew there were a lot of tapes there plus much more.

Mark King
?OSC was in charge of the book.

Mark King
?We gave copies of three pages to RKK. We have all originals.

cathysouthwestern

?I just had to take a quick shower....thank you for answering my questions
Mark, I really appreciate it and I understand your position a lot better
now

Mark King
?We never gave RKK any originals and only asked him to empty the locker
one day. He's failed at everything he was asked to do.

cathysouthwestern
?So Sawyer what I'm hearing is if you don't release any previously
unreleased tapes TELAH will release them all on Vimeo. Mark do I have that
correct?

Mark King
?Yes, an apology is in order.

Mark King
?Yes, that is correct Cathy.

Mark King
?If it is silly a nd not needed, you and bartel don't know the damage you
have done.

cathysouthwestern
?I for one am excited to see that happen in the near future!

Mark King
?Good Night

# Exhibit 11

**Heaven's Gate Copyright of 1992 Beyond Human –
The Last Call Video Tape Jacket**

Exhibit 11

USDC WND page 0-21-cr-00395-MGC document 153-2 filed 09/25/23 page 38 of 121

<u>Original Definition of Terms</u> (as we understand it, for a brief overview, these terms of language (tongues) came from the Kingdom of God and was taught to humans, however, opposing forces have successfully, through the centuries, sold man on wrong definitions of terms in order to hold man in darkness or separation from God)

A few examples are:

**Death** is separation from God.

**Life** is possessed by one who *knows the truth concerning the Kingdom of God*. (These terms apply to the soul and have nothing to do with the body. A body which is shed through old age, disease, accident, or murder merely forces a soul into a sleep state until it is replanted in the human perennial vine or household to which it is still bound.)

**Resurrection** occurs when a soul returns from misinformation (darkness, death) to Truth (life) concerning God and man.

**Heaven** is the place, in all that is, where the Most High God resides (even though some salvageable souls are taken there at times for their dormancy before replanting for another chance at overcoming death)

\* \* \* \* \*

Like we said at the beginning, these tapes tell us how to get to Heaven. If you want to go - you've found your classroom. Good luck! - It's tough! - We'll help you

\* \* \* \* \*

Rev 3:21 *To him that overcometh will I grant to sit with Me in My throne, even as I also overcame, and am set down with My Father in His throne.*

Copyright 1992 by Total Overcomers Anonymous

# Exhibit 12

**Case PN022228 – Statement of Decision Feb 2nd 1999
by Judge Lisa Guy Schall**

Exhibit 12

0247

F I L E D
Clerk of the Superior Court

FEB 22 1999

BY: M. GARLAND

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| Estates of | Case No. PN022228 |
| JOHN MICHAEL CRAIG, also known as | **STATEMENT OF DECISION** |
| LOGAN M. LAWSON, aka LOGAN LAHSON, | |
| Deceased. | |

The above-entitled cause came on regularly for trial on January 11, 1999, in Department A of the above-entitled court, the Honorable Lisa Guy-Schall, Judge, presiding. The matter was tried without a jury and concluded on January 13, 1999. Jillyn Hess-Verdon, Todd Irby, and Clara Mc Alinden, appeared as counsel for petitioner, the Telah Foundation, Inc., and John J. Sansone, County Counsel by Cheryl K. Carter and Lewis P. Zollinger, Senior Deputies, appeared as counsel for respondent, the Public Administrator for the County of San Diego.

Oral and documentary evidence was introduced on behalf of the respective parties, and the cause was argued and submitted for decision. Thereafter, the matter was taken under submission pending this Court's ruling at the hearing on consolidation of all estates set for February 19, 1999.

The Court, at the hearing held on February 19, 1999, granted the Motion to Consolidate to all thirty-nine estates with the intent that the decision herein would apply to all estates.

1   Accordingly, this Court, having considered the evidence and heard the arguments of

2   all counsel and being fully advised, issues the following statement of decision:

3                                 **STATEMENT OF FACTS**

4   The parties hereto stipulated to the following facts:

5   On March 26, 1997, 39 individuals associated into a group identified as "Heaven's Gate,"

6   expired in a residence in Rancho Santa Fe, California (Trial Exhibit Numbers 135, 136).

7   Shortly prior to their deaths, on March 24, 1997, they sent a mailing to Mark and Sarah King

8   which included powers of attorneys, documents regarding vehicles, passports, keys, maps,

9   codes to storage units, unsigned letters, videotapes and other items (Trial Exhibit Numbers

10  1-3, 8-27, 33-38, 63, 74-76, 93-106, 132, 133).

11  On March 27, 1997, the San Diego County Sheriff's Department removed some, but not

12  all, of the items in the residence of the decedents.

13  On April 1, 1997, the San Diego County Sheriff's Department removed some, but not all,

14  of the items in two storage units located at Private Storage Systems, 2421 Barnham Drive,

15  Escondido, CA.

16  In April 1997, Petitioners contacted the Public Administrator and requested a meeting.

17  Petitioner met with Susan Jamme and Judith Evans of the Public Administrator's Office and

18  explained what they received from the decedents.

19  On April 23, 1997, the Public Administrator asked Mark and Sarah King to return items

20  of property they had received just prior to the deaths.  They returned two vehicles on

21  May 13, 1997, along with keys and a bill of sale for a third vehicle already in the Public

22  Administrator's possession (Trial Exhibit Number 89).  The Public Administrator for the

23  County of San Diego was subsequently appointed Special Administrator on April 24, 1997

24  (Trial Exhibit Number 135, 136).   In his representative role, the Public Administrator

25  marshaled and took possession of the personal property in the residence and the storage

26  units and also received property that had been removed by the Sheriff's Department from

27  both locations (Trial Exhibit Number 77).

28  ///

-2-

1     On September 24, 1997, Petitioners filed a creditor's claim detailing a claim on

2  decedents' assets in the Public Administrator's possession.

3     On December 23, 1997, the Public Administrator obtained an appraisal of the business

4  entity known as Higher Source Contract Enterprises.  The appraisal indicated that the

5  intellectual property owned by Higher Source Contract Enterprises was de minimus as of

6  March 22, 1997 (Trial Exhibit Number 137).  As a result, the Public Administrator petitioned

7  the Court on March 6, 1998, to terminate the special administration (Trial Exhibit Number

8  138).  The petition was granted on May 7, 1998.  Therefore, these 39 estates are being

9  administered pursuant to Summary Probate Proceedings provided for in Probate Code

10  § 7660 et seq. (Trial Exhibit Numbers 139-177).  The Court has directed that a motion be

11  brought to consolidate the 39 estates.

12     The Public Administrator determined that the aggregate value of all 39 decedents'

13  estates would not exceed $50,000.00.  He had received creditor claims for funeral and

14  burial expenses of approximately $100,000.00 (Trial Exhibit Numbers 178-210).

15     On September 22, 24, and October 27, 1997, the Petitioner registered the following

16  copyrights and trademarks:

17     A. The literary work entitled, "How and When Heaven's Gate (The Door to the Physical

18  Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials"

19     B. The audiovisual work entitled, "Last Chance to Evacuate Earth Before It's Recycled,"

20  "Plant About to Be Recycled – Your Only Chance to Survive – Leave With Us"

21     C. the audiovisual work entitled, "Do's Final Exit – Students of Heaven's Gate Expressing

22  Their Thoughts Before Exit"

23     D. The audiovisual work entitled, "Beyond Human – The Last Call"

24     E. The sound recordings entitled, "The Audiotape Library of Heaven's Gate by Ti and

25  Do"

26     F. The audiovisual work entitled, "The C.B.E. (Celestial Being Entity)"

27     G. The fabric design entitled, "Heaven's Gate Away Team Patch"

28  ///

- 3 -

1      At a later date, the Petitioner filed an application to have the trademark, "HEAVEN'S

2  GATE," registered.

3      The Public Administrator marshaled a Certificate of Trade Name Registration for Higher

4  Source Contract Enterprises (Trial Exhibit Number 211), and an application for Registration

5  for Trade Name for Telah Services (Trial Exhibit Number 212), which are in the name of

6  decedent Logan Lahson, aka John Craig.   In addition, he marshaled a Certificate of

7  Copyright Registration for Artwork for a screenplay entitled, "The Meeting," in the name of

8  decedent Olliver Odinwood and a Certificate of Copyright Registration for a motion picture

9  screenplay entitled, "The Meeting," in the name of Individual decedent David Codody, a

10  pseudonym (Trial Exhibit Number 59, 60).   These certificates were recovered from the

11  decedent's residence.

12      Items on Exhibits 1 and 2 attached to this Statement of Decision are a comprehensive

13  listing of property at issue.  Exhibit 1 is a listing of gifts made in view of impending death.

14  Items listed in Exhibit 2 were controverted by the parties.  Intellectual property listed

15  throughout Exhibits 1 and 2 were controverted by the parties.

16                            **FINDINGS OF FACT AND DECISION**

17      1.     This Court finds that no gift was made of items listed on Exhibit 2.  This finding

18  is based upon the following facts:

19      The items on Exhibit 2 were in the possession of the decedents upon their deaths,

20  either in their residence, or on their person.

21      The decedents themselves wrote a letter to Sam, Fifi, Tawny and Tony (Sam referring

22  to Sam Koutchesfahani, their landlord), stating on page one of Trial Exhibit No. 74:

23      "The test for you now is that our task here on earth is over and its time for us to go
home – to return to the Kingdom of Heaven from where we came",

24

25  and on page two:

26

27      "The authorities may want to confiscate or hold for estate purpose TV's, bunks and
other equipment that belongs to us.  As far as we're concerned we would like for you to
have what is left in the house if the authorities will allow it."

28

1    According to Trial Exhibit 1, the decedents asked Mark and Sarah King to mail this letter

2  to Sam, stating in an undated letter to MRC/SRF, on page one:

3        "It is likely that the items currently in the residence will not be easily available to
       you – so we did mention to our landlord, Sam, who might have better luck with the
4        authorities in claiming some of those items, since he owns the house, that he could
       have whatever valuables are there..."

5

6    A gift is defined as a transfer of personal property made voluntarily and without

7  consideration (Probate Code § 5700). Here it is clear no pre-mortem transfer ever occurred

8  because the decedents intended Sam Koutchesfahani to have the contents of the

9  residence after their deaths. Thus, decedents retained control and possession of personal

10  property in Exhibit 2. A donor must intend to confer a present right on a donee, the

11  delivery, however, must be a gift in presenti, not for the purpose of making a future

12  disposal of it under the directions of the donor" (*Hart v. Ketchum* (1898) 121 Cal 426, 428).

13    2.    Regarding the Gifts in View of Impending Death listed in Exhibit 1, the

14  respondents have the right to recover said gifts, sell them, apply the proceeds to pay

15  creditor's claims and return unused proceeds to petitioner, if any.

16    This Court bases its decision on the following findings of facts:

17    All items in Exhibit 1 are gifts made in view of impending deaths. Don Billings, Public

18  Administrator for the County of San Diego and Personal Representative herein, testified

19  that the aggregate value of these estates is approximately $50,000.00. Creditor's claims

20  have been filed for funeral expenses of approximately $100,000.00 An appraisal of the

21  intellectual property owned by Higher Source Contract Enterprises stated its value was de

22  minimus as of March 22, 1997. Therefore, the estates are insolvent, and creditor's claims

23  exceed their value.

24    A gift in view of impending death is subject to rights of the creditors of the giver

25  (Probate Code § 5704). Since the personal representative has insufficient assets to pay

26  creditors, the property in Exhibit 1 is subject to recovery by the personal representative

27  herein (Probate Code § 9652).

28  ///

-5-

1    Since the "primary object is to enable the trustee to reduce that asset to possession
2    and administer it for the benefit of creditors under the direction and supervision of the
3    probate court" (*Goldstein v. Prien* (1956) 143 Cal.App.2d 123, 127), this Court will not require
4    the Public Administrator to file another action when the same parties, issues and facts are
5    presently before this Court.  Petitioners' request to the contrary is without merit, unduly
6    harmful to the creditors, and invites a multiplicity of suits.

7        3.    Regarding the ownership of intellectual property, this Court determines that
8    the estates own all intellectual property interests together with the tangible assets from
9    which those interests are derived.  This determination is based upon the following findings
10   of fact:

11       Although Petitioners presented evidence of post-mortem registrations of the literary
12   work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level
13   Above Human) May Be Entered – An Anthology of Our Materials;" the audiovisual works
14   entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled –
15   Your Only Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate
16   Expressing Their Thoughts Before Exit," "Beyond Human – The Last Call," "The C.B.E. (Celestial
17   Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The
18   Audiotape Library of Heaven's Gate by Ti and Do."  Nevertheless, there is no evidence of any
19   writing which explicitly conveyed or transferred ownership of all this intellectual property
20   to the Petitioners.  There was no writing actually signed by the decedents except the
21   Durable Power of Attorney, which became void upon their deaths.

22       Sarah King testified that, "How and When Heaven's Gate (The Door to the Physical
23   Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials," Last
24   Chance to Evacuate Earth Before It's Recycled," Plant About to Be Recycled – Your Only
25   Chance to Survive – Leave With Us," "Do's Final Exit – Students of Heaven's Gate Expressing
26   Their Thoughts Before Exit," and "Beyond Human – The Last Call," were all given to the
27   petitioners by the group for the express purpose of distributing copies and receiving
28   / / /

-6-

returned copies.  Thus, she and her husband, Mark, were agents or distributors, but no more.

Two "Heaven's Gate Away Team" patches were mailed in identical mailings to the Petitioners and others according to Rio Di Angelo.  There is no evidence that by these mailings the Petitioners also received the intellectual property rights to the patches. Therefore, there is no evidence that a pre-mortem transfer of the intellectual property rights occurred.

As for the painting, "C.B.E.," it was delivered to Petitioners in February of 1977, with words of gratitude, according to Sarah King.  Yet, there is no evidence that decedents gave intellectual property rights in the painting to the Petitioners as well.

There is no evidence, written or otherwise, transferring ownership of intellectual property rights in the "The Audiotape Library of Heaven's Gate by Ti and Do."

Any transfer of ownership of intellectual property, other than by operation of law, is invalid unless an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent (17 U.S.C. § 204 (a)).  Furthermore, it is well settled that a copyright is distinct from the material object in which its expressive content is embodied (17 U.S.C. § 202).  Transfer of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202).

Since there is no written instrument transferring ownership of the intellectual property to the petitioners, the estates own all intellectual property as tenants in common.

4. The Petitioners' request for attorneys' fees i denied.

Generally, attorney fees are not awarded unless specifically provided for by statute (Code of Civil Procedure § 2021).  Probate Code § 9860 does not provide for payment of attorney fees and the Petitioners cite this Court to none.

To the extent Petitioners may be requesting attorney's fees based upon a fiduciary duty which was owed to them by the Public Administrator which was allegedly breached, this Court makes the following observations:

-7-

1    The Public Administrators powers and duties were set forth in the order appointing

2    him as special administrator (Exhibit No. 135). This order did not include the powers of a

3    general person representative or the right to commence, maintain, or defend suits and

4    other legal proceedings (Probate Code § 8544). A special administrator appointed to

5    perform a particular act has no duty to take any other action to protect the estate

6    (Probate Code § 8544 (d)). Furthermore, in the performance of those duties imposed upon

7    him, the Public Administrator treated the Petitioners no differently than any other

8    claimants similarly situated.

9    5.    The Public Administrator's request for an award of sanctions against the

10    Petitioners pursuant to Code of Civil Procedure § 128.5 is granted.

11    This award is based upon the following findings of fact:

12    The essential facts of this case are not, and have not been, in material dispute. Thirty-

13    nine individuals died leaving property subject to estate administration. The estates are

14    insolvent, the creditor's claims for burial and funeral expenses exceed the value of these

15    estates by a margin of two to one. Ownership rights to a substantial portion of the

16    property in the estates was never transferred to the Petitioners. That which was

17    transferred was a gift in view of impending death. Either way, property in the estates was

18    indisputably subject to creditors' claims and the Petitioner's claim to the contrary was

19    without merit.

20    Petitioners filed this action actually asking for relief that no trial court could grant. A

21    trial court cannot make a will for a decedent. The decedents' alleged intent could not take

22    the place of statutory formalities and alleged wishes could not control and direct

23    disposition of a decedent's property without the law to give them substance. No evidence

24    of pre-mortem transfer of the items in Exhibit 2 was offered. No evidence was offered

25    contesting the value of the estates or the propriety of the creditors' claims. Except for

26    three bills of sale and thirty-nine Powers of Attorney, no signed writing of any kind was

27    offered into evidence. For these reasons, this action was frivolous and without merit.

28    ///

Prosecution of a frivolous action may in itself be evidence from which a finding of subjective bad-faith can be made, for purposes of award of sanction (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 702).

By having to defend this frivolous action, the estates now have even fewer assets available to pay toward the creditors' priority claims.  An award of sanctions remedies some of the inequity resulting to the creditors.

Judgment is hereby ordered as follows:

1.   All right, title and possession of property listed on Exhibit 2 is vested in the Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, and Suzanne Cooke.

2.   All right, title and possession of all property listed on Exhibit 1 is vested in Don Billings, Public Administrator for the County of San Diego, as Personal Representative for Estates of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch,

- 9 -

1  Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne

2  Cooke, as trustee for petitioner Telah Foundation.  Said trustee shall sell all valuable

3  property listed on Exhibit 1, liquidating said property to cash and apply said cash to

4  payment of approved creditors' claims filed against the aforesaid estates.  Any amount in

5  excess of claims shall be returned to Telah Foundation.

6      3.    All right, title and possession of all intellectual property is vested in the Estates

7  of John M. Craig, Dana Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond

8  Alan Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher, Betty Eldrie

9  Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O. Leonard, Jeffery Howard Lewis, David

10  Geoffrey Moore, Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne

11  McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva Nichols, Lindley

12  Ayerhurt Pease, Susan Elizabeth Paup, Margaret Ella Richter, Judith Ann Rowland, Michael

13  Barr Sandoe, Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan

14  St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas Welch, Alphonzo Foster,

15  Lucy Pesho, Michael Carrier, Darwin Johnson, Lawrence Gale, Suzanne Cooke.

16      4.    Petitioners shall bear their own attorneys' fees and costs.

17      5.    Petitioners are sanctioned and directed to pay attorneys' fees and costs of the

18  Public Administrator.

19  DATED: 2/22/99

20

21

22  LISA GUY-SCHALL
   JUDGE OF THE SUPERIOR COURT

23

24

25

26

27

28

-10-

# Exhibit 13

**MRC (Mark King) & SRF (Sarah King) Letter from The Class - Rkkody's participation and the "items of value" in Storage (Audio Tapes)**

MRC/SRF,

By now, having read the enclosed press release, you should be aware that we have exited our vehicles just as we entered them. Also included are two videotapes of DO and the Class, a list of the others who are receiving this final press release and "Earth Exit Statements by Students," as well as a document describing our location. The Internet account information, however, we sent only to you, RKK, and OSC.

Enclosed is a key to our storage units which we prefer remain confidential to you and whomever on the list above would be most helpful to you -- we suspect RKK and OSC would likely be a big help -- but including others would be OK as well, whatever your strategy permits. We put into storage items that we would prefer the authorities not have access to. You can do with those items whatever feels right to you. The only exception to this is some exercise equipment which belongs to our landlord, Sam, and we suspect he will want at some point. The storage units are #241 (use key 798 for this unit) and #147 (key 591), located at Private Storage Systems, 2421 Barham, Escondido, CA. The passcode to get through the gate is * 21484 # -- the related contract/paperwork is also included in this package, and we have attached a map that further pinpoints this location.

We also have a 20 foot yellow truck in a separate storage unit, and we did think that RKK would be a good choice to retrieve it -- it's big enough to be able to haul all of what's in storage, we believe. The truck storage paperwork is also enclosed. The name of the company is California Self Storage located at 5206 Eastgate Mall, San Diego, CA 92121-2809. The unit number is F 258 and the access code is *351-3046. Pursers have included an additional document as part of this packet that further covers the disposition of our cars and this truck. So we ask that you refer to that document for details. It is our desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information. Any of the funds you retrieve can be used towards that end and for the living expenses of those involving themselves with this project. It is likely that the items currently in the residence will not be easily available to you -- so we did mention to our landlord, Sam, who might have better luck with the authorities in claiming some of those items, since he owns the house, that he could have whatever valuables are there -- which likely will amount to a few TV's, some bunks, a few household items, and perhaps a laptop computer or two.

On another note, we uploaded the heavensgate website to an ISP in Romania, and we also FedEx'ed the Romanian webmaster the diskettes containing the entire site along with the diskette containing the final press release and the Earth Exit Statements by Students (these final statements are on a separate disk which hopefully RKK will be able to upload, however the Romanian fellow will have the entire site on diskette as back-up). We have prepaid two months of webhosting on this Romanian server under the name of Sister Michael Remi. The webmaster's name is Ionut Muntean, telephone number: 011 40 68 322150. He speaks and writes English well enough for us to communicate with him, and seems to be an agreeable fellow. All he knew about us however, before now, is that we were a small interfaith monastery with some "non-traditional" views. So we're not sure what his response will be to this most recent event.

We are hoping, of course, to use this site as an alternate way to access our information in case the authorities shut down our sites in the States. The URL for this site is www.heavensgate.deltanet.roknet.ro.

As you may have noticed, we have listed Simon Boyce as our preferred media contact. He recently requested to use us in a major documentary about UFO's and paranormal (he works for the BBC, however he and his crew are currently working out of the CBC office -- Canadian Broadcast Company -- in New York). Although we declined the interview, he tried to make the point with us on several occasions that their intention was to be as objective as possible. So, whether or not that is possible (for the media to remain objective) at least his frame of mind attempts to lean in that direction. His producer/director, Debbie Geller, at a later time made another sincere attempt to try to convince us to participate in their documentary. So, for this reason, we are recommending that they be involved to some degree in the coverage of this event, that is, if their attitude seems to remain somewhat objective and you find working with them not too difficult. Of course, this is contingent upon whether or not you should choose to say anything to the media on our behalf. We would hope that the public would have an opportunity for more thorough knowledge of who we are and what we're about.

(continued on next page)

Hopefully, you will be able to work together with some of the following: OSC, RKK, JHN, FLX/ABL and NBO (who is currently working for a company in LA called InterAct Entertainment). There is also a recent correspondent from Germany by the name of Soeren (we couldn't remember if we mentioned him to you or not), who has been trying to make it to the US to meet with us. OSC is in contact with Soeren and has offered Soeren housing at his apartment. We gave instructions to OSC that if Soeren continues to try to support us and to move in our direction, that he can be included in events that transpire to whatever degree feels right. Soeren has been through quite a lot recently in his attempts to come our way, and DO thinks that he deserves our/your help if he still wants it.

We also asked OSC to register the Heaven's Gate book with the Library of Congress and that if he needed any funds to accomplish this, that you would cover it out of the project funds that you have on hand.

Also we want to make it clear that we're certainly not asking you to do these tasks if, after receiving this information, circumstances make it too difficult or other options seem more appropriate for you. We want you to feel free to exercise any available options with whatever timing feels right for your own next step. No doors are closed to you.

We're probably not thinking of all the things we need to pass on, but if you ask TI and DO for help, as you know, you will get all you need and then some. Our hearts are with you and we appreciate your help on all this.

Good Luck,

The Class

Note: Due to time limitations and less than professional equipment, the quality is rather poor on the enclosed videotapes, and for this we apologize. Some of the individuals on the list are receiving SVHS tapes and some will be receiving the standard VHS format -- our intention is for those SVHS tapes to serve primarily as masters for making further copies, which we are certainly encouraging. (RKK has the original master in his packet). These tapes can be sent to the media or wherever you feel would be appropriate. However, in case you don't know this already, the SVHS tapes will not play properly on a standard VHS player/recorder, you will need to view them on an SVHS machine.

Additional Note: We suspect that the authorities will take an immediate interest in you -- your whereabouts -- your plans in relationship to the action that we took -- and we are asking that you be cautious and aware of this for your own protection.



**URGENT Note:** Please drop the letter in the mail addressed to our landlord, Sam, as soon as you feel comfortable *that he will not get that letter before you have a chance to get to the address* listed in the "Location" document.

# Exhibit 14

**Copyright SR0000251498 Heaven's Gate audio recordings 2 cds by Kathryn Morea Rkkody (Charles "Chuck" Humphrey) right to know  5-13-98**

Exhibit 14

Registration record SR0000251498

Copyright Catalog (1978 to present)

**Heaven's Gate classroom teachings :audiotapes vol. 1-2.**

◀ Previous          Next ▶

Share ∨     Actions ▼

| | |
|---|---|
| **Registration Number / Date** | SR0000251498 / 1998-05-13 |
| **Previous Registration** | Audiotapes preexisting. |
| **Type of Work** | Sound Recording |
| **Title** | Heaven's Gate classroom teachings :audiotapes vol. 1-2. |
| **Variant Title** | Heaven's Gate classroom teachings : audiotapes vol. 1-2. |
| **Date of Creation** | 1997 |
| **Date of Publication** | Oct97 |
| **Copyright Claimant** | © Kathryn Morea, d.b.a. Right to Know |
| **Authorship on Application** | recording: Charles E. Humphrey, 1942-1998, d.b.a. Right to Know. |
| **Basis of Claim** | New Matter: editing, compilation. |
| **Description** | 2 compact discs. |
| **Names** | Morea, Kathryn |
| | Humphrey, Charles E., 1942-1998 |
| | Right to Know |

# Exhibit 15

## Blue Book Common Law Copyright

Exhibit 15

USDC IN/ND case 3:22-cv-00395-MGG document 153-3 filed 09/15/23 page 56 of 121

# Exhibit 16

**copyright vau000041610 by olliver odinwood of 14 paintings including the CBE Older Member and Saturn Rings on 11-18-1982**

Exhibit 16



*The Meeting.*

**Type of Work:** Visual Material

**Registration Number / Date:** VAu000041610 / 1982-11-18

**Title:** The Meeting.

**Notes:** Cataloged from appl. only.

**Copyright Claimant:** Olliver *Odinwood*

**Date of Creation:** 1980

**Authorship on Application:** 14 full color acrylic ill.: Olliver *Odinwood*.

**Previous Registration:** Motion picture screenplay prev. reg.

**Copyright Note:** C.O. correspondence.

**Names:** *Odinwood, Olliver, 1948-*

previous    next

**Save, Print and Email (Help Page)**

Select Download Format [Full Record ▾] [Format for Print/Save]

Enter your email address: [          ] [Email]

Help   Search   History   Titles   Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page

# Exhibit 17

## CASE 3:98-cv-00892-CRB - Judge Breyer Consent Decree

RECEIVED

1  DAVID J. MICLEAN (SB# 115098)
   KIMBERLY A. DONOVAN (SB# 160729)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   1001 Marshall Street
3  Redwood City, California 94063
   Telephone: (650) 364-8200
4  Facsimile: (650) 367-0997

FILED

JUL - 9 1999

JUL - 9 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5  Attorneys for Plaintiffs
6  THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION,
   INC., MARK KING, SARAH KING and WAYNE PARKER

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  THE EVOLUTIONARY LEVEL ABOVE          CASE NO.: CV-98-00892 CRB ENE
    HUMAN FOUNDATION, INC. dba THE
13  TELAH FOUNDATION, MARK KING,
    SARAH KING and WAYNE PARKER,
14
                                          CONSENT DECREE BETWEEN
          Plaintiffs,                     PLAINTIFFS AND KATHRYN AND
15                                        CESAR MOREA
    v.
16
    RIGHT TO KNOW; The Executor of the Estate
17  of CHARLES HUMPHREY aka CHUCK
    HUMPHREY, KATHRYN MOREA,
18  LANMINDS and IMPSAT MEXICO,

19        Defendants.

20

21        Pursuant to a Settlement Agreement, The Evolutionary Level Above Human Foundation,

22  Inc. dba The Telah Foundation ("TELAH"), Mark King, Sarah King, Wayne Parker, Kathryn Morea

23  and Cesar Morea (all collectively referred to as "The Parties") hereby agree to be enjoined and to be

24  required to act as follows:

25        1.      TELAH will distribute the "How and When Heaven's Gate May Be Entered" book,

26  final version, initial version, and Humphrey version, as set forth in the Settlement Agreement.

27  Kathryn and Cesar Morea (jointly referred to as "The Moreas") will provide TELAH with copies of

28  the Humphrey version, except up to 5 personal copies, for this purpose.

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA 94063
(650) 364-8200

-1-

2.      TELAH will provide copies of the heavensgate.com website on disk to The Moreas, who will then prepare a new Videotape CD from the CD's created by Humphrey containing copies of videotapes created by The Class, as set forth in the Settlement Agreement.  The new Videotape CD will be provided to TELAH, which will make copies of the it and distribute it as set forth in the Settlement Agreement.

3.      The Moreas will provide TELAH with one copy of the two CD set of CD's created by Humphrey containing copies of audiotapes of classroom sessions by The Class ("the Audiotape CD Set").  From this copy, TELAH will make a new revised Audiotape CD Set and will disseminate it as set forth in the Settlement Agreement.

4.      The rkkody.com website shall be taken down completely and all e-mail capabilities are to be disabled.  Morea will sign documents and assist as necessary to enable TELAH to do this.  Morea will not maintain a website containing materials of The Class/Heaven's Gate, nor will she assist others in doing so.

5.      TELAH will bring up the heavensgate.com website in the manner set forth by The Class, as indicated in the diskettes left by The Class, except as set forth in the Settlement Agreement.  TELAH will be responsible for paying all costs to bring up and maintain the heavensgate.com website and will have ownership of the domain name and site.  TELAH will be responsible for evaluating and responding to e-mail received by heavensgate.com as it deems appropriate.  As set forth in the Settlement Agreement, once a month for a period of 3 months from the date the heavensgate.com website becomes operable, TELAH will send The Moreas redacted copies of all viable e-mail messages received at the heavensgate.com website and all responses sent to those messages.  Other than the changes specifically set forth in the Settlement Agreement, no other changes shall be made to the heavensgate.com website.

6.      TELAH agrees to send out copies of the "Do's Final Exit," "Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Last Chance to Evacuate Earth Before It's Recycled," "Planet About to be Recycled - Your Only Chance to Survive - Leave With Us" videotapes in their possession at no charge or for the cost of shipping, at TELAH's discretion, to anyone who requests them as set forth in the heavensgate.com website contained in the diskettes left

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA   94063
(650) 364-8200

-2-

1   by The Class.

2         7.     The Moreas presently have control over the Right To Know name and postal box.

3   The Moreas can use the Right To Know name and postal box as they wish, so long as such use is

4   consistent with the provisions contained in this Agreement.  On that basis, TELAH will dismiss The

5   Action against Right To Know.

6         8.     TELAH will have exclusive rights and responsibility for ownership and management

7   of the intellectual property of The Class/the Heaven's Gate group (including the numerous other

8   names used by the group), including copyrights and trademarks to books, videotapes, audiotapes,

9   CD's, websites, letters, other documents, names and symbols.

10        9.     The Moreas have made certain representations and agreements with respect to the

11  Heaven's Gate material in their possession, as set forth in the Settlement Agreement.  With respect to

12  the Heaven's Gate material with The Moreas are entitled to maintain in their possession under the

13  Settlement Agreement, The Moreas agree not to copy, distribute or disseminate any of this material

14  or show or give it to anyone other than themselves.  The Moreas agree this material is to be

15  maintained and used only as set forth in the Settlement Agreement.  Should The Moreas locate any

16  additional material  which they are not entitled to maintain under the provisions of this Consent

17  Decree and the Settlement, Agreement they will promptly send that material to TELAH.

18       15.    The Parties hereby submit to the jurisdiction of the United States District Court,

19  Northern District of California, for purposes of enforcement of Decree.  The Parties agree to execute

20  any and all documents necessary to effectuate the provisions of the Settlement Agreement.

21  Dated: _7-1-99_

22  _____
    TELAH, by its President, Mark King

23  Dated: _7-1-99_

24  _____
    MARK KING

25

26  Dated: _7-1-99_

27  _____
    SARAH KING

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA  94063
(650) 364-8200

-3-

1  Dated: 7/1/99

2

3  Dated: 6/21/99                    _____
                                      WAYNE PARKER
4

5

6  Dated: 6-21-99 -                  _____
                                      KATHRYN MOREA
7

8                                    _____
                                      CESAR MOREA
9  Dated: 7/6/99

10                                   Approved as to Form and Content

11                                   _____
                                      KIMBERLY A. DONOVAN
12                                   Attorney for TELAH, Mark King, Sarah King
                                      and Wayne Parker
13  It is so ordered.

14

15  Dated: 9-9-99

16

17

18                                   _____
                                      CHARLES R. BREYER
19                                   JUDGE, UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA  94063
(650) 364-8200

-4-

1  JILLYN HESS-VERDON, ESQ. (SBN: 146626)

2  TODD D. IRBY, ESQ. (SBN: 153485)
   HESS-VERDON & ASSOCIATES

3  4000 Westerly Place, Suite 135
   Newport Beach, California 92660

4  (714) 474-5460

5
   Attorneys for Petitioner,

6  THE TELAH FOUNDATION

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          FOR THE COUNTY OF SAN DIEGO

10

11  In the Matter of the Estate of          )    CASE NO.: PN022228
    JOHN MICHAEL CRAIG, also known          )

12  as LOGAN M. LAWSON, also known as        )    PETITION BY CLAIMANT
    LOGAN LAHSON                             )    TO DETERMINE OWNERSHIP OF

13                                           )    ESTATE PROPERTY, FOR ORDER
                           Decedent.         )    AUTHORIZING AND

14                                           )    DIRECTING REPRESENTATIVE TO
                                             )    TRANSFER ESTATE PROPERTY

15                                           )    TO PETITIONER AND PAYMENT
                                             )    OF PETITIONER'S ATTORNEYS

16                                           )    FEES (PROBATE CODE §9860)
                                             )

17                                           )    SET FOR HEARING
                                             )

18                                           )    DATE:
                                             )    TIME:        JUN 25 1998

19                                           )    DEPT: E

20                                                DEPT  E AT 9:00 A.M.
                                                  VISTA COURTHOUSE

21       Petitioner, The TELAH Foundation ("FOUNDATION"), as a Creditor of the estate of

22  the above-named decedent, alleges the following:

23       1.      The named decedent, along with thirty-eight other members of the class,

24  commonly known as "Heaven's Gate" or "Heaven's Representatives" died on or about March

25  26, 1997 in Rancho Santa Fe, California, in possession of the property described in Attachment

26  A.  On April 24, 1997 Letters of special administration were issued by the clerk of the above-

27                                           1

28

FILED
PROBATE DIVISION
VISTA

1998 APR 21  P 2: 57

MARTONE
IOR COURT
OUNTY, CA

6456 03 04 PN22228      04/21/98 14:59
02 021 New Probate             $188.00

1   titled court to the Public Administrator.  The special administrator has included the  property

2   among the probate assets of decedent's estate personal property (undescribed) as valued at

3   approximately $5,000 as a 1/39th interest ($195,000 for all 39 decedents) and "intellectual

4   property rights held by Higher Source Contract Enterprises", as stated in the Petition To

5   Terminate Special Administration, with an appraised value determined by Brinig and Company

6   to be "de minimus or virtually nil", and Petitioner is not aware of any other judicial proceeding

7   to determine the ownership of the property.

8        2.  Petitioner claims that the property in the possession of the Public Administrator

9   which meets Petitioner's detailed listing on **Exhibit "A"** in fact belongs to Petitioner.  The

10  facts on which the claim of ownership is based are:

11  **I.  WRITTEN MATERIALS AND INTELLECTUAL PROPERTY IN THE**

12  **PUBLIC ADMINISTRATOR'S POSSESSION HAVE BEEN**

13  **COPYRIGHTED BY PETITIONER AND REGISTRATION OF COPY**

14  **RIGHTS IS PRIMA FACIE EVIDENCE OF THE VALIDITY OF THE**

15  **COPYRIGHT**.

16       A. Petitioner's legal counsel, with regards its intellectual property matters, have

17  obtained the necessary copyrights on many of the materials which are in the possession of the

18  Public Administrator.

19       B.  The legal effect of the registration of these copyrights by Petitioner is that

20  there is a presumption of validity of its copyrights.  The United States Copyright Act, at United

21  States Code §410(c ) states:

22       "In any judicial proceedings the certificate of registration made before or within

23       five years after the first publication of the work shall constitute *prima facie*

24       evidence of the validity of the copyright and the facts stated in the certificate."

25       C.  The five original literary, audio and audiovisual works, created by the

26  Heaven's Gate members which have been granted the protection of the United States Copyright

27

28                                               2

HESS-VERDON & ASSOCIATES
Attorneys at Law
4000 Westerly Place, Suite 125
Newport Beach, CA 92660
Tel: (714) 414-5480
Fax: (714) 414-5470

Office. (True and correct copies of each of the Copyright Certificates are contained in the Declaration of Joseph Hart, Esq. which was filed in this Court as a Verified Supplement on March 31, 1998, attached hereto as **Exhibit "B"**).

## II. APPLICATIONS REGISTERING TRADEMARK OF "HEAVEN'S GATE" BY PETITIONER SECURES PETITIONER'S RIGHTS TO SUCH DURING APPLICATION PROCESS.

A. The name "Heaven's Gate" was not trademarked by the decedent or the estate, hence Petitioner's application registering the trademark of "Heaven's Gate" secures Petitioner's use of such trademark.

B. Petitioner's counsel demonstrated diligence in performing a trademark research before applying for the trademark of "Heaven's Gate". The copy of the Trademark Research Report is attached hereto as **Exhibit "C"**, which further evidences Petitioner's secure position during the application process.

C. Petitioner has asserted such rights against third parties with success. (See copies of letter by Petitioner's previous counsel, collectively, as **Exhibit "D"**).

## III. THE PUBLIC ADMINISTRATOR IS PROHIBITED FROM SELLING THESE ITEMS UNDER FEDERAL COPYRIGHT LAW.

A. Should the Public Administrator attempt to sell the property items belonging to Petitioner, such actions would qualify as infringements and misappropriations and would be actionable in the United States District Court.

B. Petitioner has already brought suit in the United States District Court, Northern District of California, Action Number CV-98-00892 CRB ENE enforcing Petitioner's rights against third parties attempting to sell T-shirts, coffee mugs, mouse pads and other paraphernalia used to exploit the Heaven's Gate organization, name and ideas, because these actions were contrary to the beliefs and purposes of the deceased persons and their instructions to Petitioner.

3

C.  Therefore, since the Public Administrator would not be able to sell these items; nor are they assets belonging to the estate to be distributed intestate, Petitioner requests that the court order that such items, once inventoried, be distributed to Petitioner.

## IV.  PETITIONER IS A NON-PROFIT ORGANIZATION ATTEMPTING TO PRESERVE THE USE AND INTEGRITY OF ITS INTELLECTUAL PROPERTY AND PERSONAL PROPERTY FOR RELIGIOUS REASONS.

A.  Petitioner is not acting in an individual capacity for personal gain, but rather has formed a non-profit organization to ensure that the beliefs and ideas of the decedents  can be maintained exactly as they requested and specified for religious and philosophical purposes, with dignity and respect.  (See copy of Declaration of Kimberly A. Donovan as **Exhibit "E"**, which was filed in this Court as an exhibit of Petitioner's Opposition to Petition To Terminate Special Administration on March 25, 1998.)

B.  Since Petitioner is a non-profit organization, its directors Mark and Sara King can not profit individually from the activities of the Foundation.  Petitioner has in fact agreed that the personal property items, which were delivered to the Public Administrator, in good faith, and which the Foundation hopes to receive from the Public Administrator, (e.g. bunk beds, vehicles, etc.) be directed to San Diego charities, rather than "sold at auction" by the Public Administrator.

## V.  DECEDENT, AND THE OTHER DECEDENTS REPRESENTED IN THIS CASE,  LEFT NUMEROUS AND DETAILED INSTRUCTIONS EVIDENCING THEIR WISHES THAT THEIR BELONGINGS AND PROPERTY BE MANAGED, OWNED AND DISTRIBUTED TO PETITIONER.

A.  Prior to their deaths the decedents, collectively, held the rights, title, and interest to, and were in possession of, various items of tangible and intangible personal property, including intellectual property.

HISS-VERDON & ASSOCIATES
ATTORNEYS AT LAW
4000 Westcliff Place, Suite 135
Newport Beach, CA 92660
Tel. (714) 474-5450
Fax (714) 474-5470

4

1         B. On or about March 19, 1997, many of the decedents executed notarized

2    documents entitled STATUTORY DURABLE POWER OF ATTORNEY ("DPA"). Each

3    of the DPAs designated Mark Gerard King as the signatories' primary attorney-in-fact (Mrs.

4    King was designated as a successor attorney-in-fact), and granted Mr. King "Broad and

5    Sweeping" powers to manage, *inter alia*, all real *and personal* property transactions on

6    behalf of the documents' signers. The DPA's along with other voluminous documents

7    evidencing their transfer of ownership rights, were shipped, via *Federal Express,* to Mr. and

8    Mrs. King prior to their deaths. The express provisions of the previously described

9    DURABLE POWERS OF ATTORNEY. (True and correct copies of each of the documents

10   are attached to this Petition and collectively identified as **Exhibit "F "**).

11        C. On or about March 22, 1997 the decedents sent to Mark and Sara King,

12   written instructions and numerous documents, contained in the previously-referenced *Fed*

13   *Ex* shipment, providing explicit information regarding, among other things, the location of

14   the decedents' storage areas and codes of entry into their home; instructions on the

15   management of the organization's website; explicit instructions regarding the group's most

16   sensitive financial information, including payables, receivables, and income tax returns;

17   lists of the members' credit cards; titles, registrations, keys, bills of sale for the group's

18   vehicles, and instructions on where to find them; computer diskettes; and an itemized list of

19   the organization's members including birth dates and driver's licenses, with instructions for

20   Mark and Sara King to exercise its own discretion in protecting the interests of the

21   decedents.

22        D. An Application for Delivery of Mail Through Agent, dated May 9, 1996,

23   and signed by the decedent, authorizing the Petitioner to act as the agent for the

24   organization for the delivery of its mail.

25   //

26   //

27

28

HESS-VERDON & ASSOCIATES
ATTORNEYS AT LAW
4590 WESTON PLACE, SUITE 150
NEWPORT BEACH, CA 92660
TEL: (714) 474-5450
FAX: (714) 474-5470

5

## VI. MANY FAMILY MEMBERS CONSENT TO THE DISTRIBUTION OF THE PROPERTY IN THE SPECIAL ADMINISTRATOR'S POSSESSION TO THE PETITIONER.

A. Since the names and addresses of the family members of the decedents are not known to the Petitioner, but are held by the Public Administrator for the privacy of the family members, Petitioner has not been able to contact all of them regarding the wishes and instructions which the decedents gave Mark and Sara King.

B. However, many of those relatives, which were not estranged from their decedent, have been in contact with Petitioner and have consented to the distribution of the property, (which is in the possession of the Public Administrator and which is claimed by the Petitioner), to be distributed to Petitioner, along with the other miscellaneous personal property which can be directed to San Diego charities. (See true and correct copies of declarations attached hereto as **Exhibit "G"**. Originals are on file with the court as verified supplements filed on March 31, 1998).

## VII. PETITIONER IS ENTITLED TO ATTORNEYS FEES AND COSTS SINCE THE SPECIAL ADMINISTRATOR FAILED TO BRING THIS §9860 PETITION AFTER RECEIVING NOTICE OF PETITIONER'S CLAIMS THEREBY FORCING PETITIONER TO BRING THIS PETITION.

A. On or about April 24, 1997, the Public Administrator for the County of San Diego, was appointed, on an *ex parte* basis, as the Special Administrator of the decedent's estate, and was granted the powers enumerated in his Petition to Terminate Special Administration which was filed in this Court on March 6, 1998.

B. On or about September 24, 1997, Petitioner, by and through its legal counsel, timely filed a CREDITOR'S CLAIM, in the above-entitled action to preserve the organization's rights as the successor to the Decedents' interest in the estate's personal property.

C. Petitioner and their previous counsel had several discussions during the one

6

year period of administration, disputing the rights of ownership to said property in the Public Administrator's possession.

D.  Throughout the pendency of this action the Petitioner, has, on numerous occasions, attempted to avoid engaging in expensive and time-consuming litigation of the type likely to ensue from this Petition by seeking to apprise the Special Administrator and his representatives of the existence of the above-referenced evidence of Petitioner's status as the designated legal representative of the Heaven's Gate family; a status which was conferred upon it *long before* the members' untimely departure.  Nevertheless, the Public Administrator's representative has, since the initiation of the Probate process, chosen to ignore Petitioner's claims, and maintain its agenda of disposing of the organization's private effects for whatever financial remuneration could be obtained, without regard the *explicit* wishes of those whose opinions mattered most, the decedents'.

## CONCLUSION

3.  A genuine dispute currently exists regarding the ownership of the above-described property.  As previously described, the Public Administrator, through its Special Administrator, has, since the filing of its initial Petition for Letters of Administration, consistently disregarded the Petitioner's claims against the estate.  As a result, Petitioner is compelled to presented its claim that it is the rightful owner of the decedents' personal property, not the estate.

4.  Petitioner has reviewed the facts on which the claim of ownership is based and believes them to be true and correct.

5.  The scope of this Court's inquiry, pursuant to the authority granted by Section 9860 of the Probate Code, is broad enough to cover a variety of claims for title, even one of first impression, as this is sure to be.  (*Estate of Aiello* (1980) 106 Cal. App. 3d 669.)

6.  As designated and trusted recipient of the Heaven's Gate members' tangible and intangible personal property following their demise, and as the holder of the legal rights to the intellectual property in the possession of the Public Administrator, the Petitioner is clearly an

7

interested party and thus has standing to bring this action. *Estate of Sayles* (1982) 130 Cal. App. 3d 275.

7. All parties known to the Petitioner having an interest in the property, and all parties having an interest in decedent's estate that could be affected by a determination of ownership of the property, including the heirs and devises, and each person who has filed a request for special notice, will be mailed or personally served with a copy of this petition and notice of the time and place of the hearing on this petition.

WHEREFORE, the Petitioner requests the court to determine the ownership of the property described herein; to authorize and direct the Special Administrator to transfer such property to Petitioner; for reimbursement of Petitioner's attorneys fees and cost incurred in bringing this petition; and for such other orders as the court considers proper.

DATED: _April 2, 1998_

JILLYN HESS-VERDON
HESS-VERDON & ASSOCIATES
Attorneys for Petitioner

8

VERIFICATION

STATE OF CALIFORNIA )
                     )   ss.
COUNTY OF SAN DIEGO  )

I, Mark King, the undersigned, say:
I am the President of The TELAH Foundation, the Creditor/Petitioner in the

above-entitled action. I have read the foregoing <u>Petition by Claimant to Determine</u>
<u>Ownership of Estate Property, For Order Authorizing and Directing</u>
<u>Representative to Transfer Estate Property to Petitioner and Payment</u> of
<u>Petitioner's Attorneys' Fees (Probate Code Section 9860)</u>
and know the contents thereof, which are true of my own knowledge, except as to the matters

stated therein upon my information and belief, and as to those matters I believe them to be true.

I verify under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this _18th_ day of _April_, 1998, at Phoenix, Arizona.

MARK KING, President
Creditor/Petitioner,
The TELAH Foundation

# Exhibit 18

## Case PN022228 08-11-99 Settlement ORDER APPROVING SELL ESTATE PROPERTY Judge LISA GUY-SCHALL

1  JILLYN HESS-VERDON, (SBN: 146626)
   TODD D. IRBY, (SBN: 153485)
2  HESS-VERDON & ASSOCIATES
   1301 Dove Street, Suite 670
3  Newport Beach, California 92660
   Attorneys for The TELAH FOUNDATION
4  Telephone: (949) 474-5460
   Fax: (949) 474-5470

5

6

7

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9                      NORTH COUNTY BRANCH

10 Estates of                          )  No.  PN022228
                                       )
11 JOHN MICHAEL CRAIG, also known as   )  ORDER APPROVING AGREEMENT TO
   LOGAN M. LAWSON, aka LOGAN LAHSON,  )  SELL ESTATE PROPERTY AND TO
12 DANA ABREO, MARSHALL HERF           )  CONVEY TRUST PROPERTY TO
   APPLEWHITE, ROBERT JOHN ARANCIO,    )  TRUST BENEFICIARIES
13 RAYMOND ALAN BOWERS, LA DONNA ANN   )
   BRUGATO, MARGARET JANE BULL,        )
14 CHERYL ELAINE BUTCHER, BETTY        )  JUDGE:. HON. LISA GUY-SCHALL
   ELDRIE DEAL, ERIKA ERNST, JULIE     )  DEPT:  28
15 A. LA MONTAGNE, JACQUELINE O.       )
   LEONARD, JEFFERY HOWARD LEWIS,      )
16 DAVID GEOFFREY MOORE, GAIL RENEE    )
   MAEDER, STEVEN TERRY MCCARTER,      )
17 JOEL PETER MCCORMICK, YVONNE        )
   MCCUDDY-HILL, NANCY DIANE NELSON,   )
18 NORMA JEANNE NELSON, THOMAS ALVA    )
   NICHOLS, LINDLEY AYERHURT PEASE,    )
19 SUSAN ELIZABETH PAUP, MARGARET      )
   ELLA RICHTER, JUDITH ANN ROWLAND,   )
20 MICHAEL BARR SANDOE, BRIAN ALAN     )
   SCHAAF, DAVID CABOT VAN SINDEREN,   )
21 JOYCE ANGELA SKALLA, GARY JORDAN    )
   ST. LOUIS, SUSAN FRANCES STROM,     )
22 DENISE THURMAN, GORDON THOMAS       )
   WELCH, ALPHONZO FOSTER, LUCY        )
23 PESHO, MICHAEL CARRIER, DARWIN      )
   JOHNSON, LAWRENCE GALE, and         )
24 SUZANNE COOKE,                      )
                                       )
25              _____Deceased____)

26

27

28                         1

            Order Approving Settlement Agreement

1

2      The PROPOSED AGREEMENT TO SELL ESTATE PROPERTY AND TO CONVEY

3    TRUST   PROPERTY   TO   TRUST   BENEFICIARIES,   (hereinafter,   the

4    "Agreement") filed by Don Billings, the Public Administrator, County

5    of San Diego, administrator of the Estates of John M. Craig, Dana

6    Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan

7    Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine

8    Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne,

9    Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore,

10   Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick,

11   Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson,

12   Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup,

13   Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe,

14   Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla,

15   Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon

16   Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin

17   Johnson, Lawrence Gale, Suzanne Cooke, came on regularly for

18   hearing on August 6, 1999 at 1:30 p.m., in Department 28, of the

19   above-entitled Court, the Honorable Judge Lisa Guy-Schall

20   presiding.    The Public Administrator was represented by his

21   attorney, John J. Sansone, County Counsel, by Cheryl K. Carter,

22   Senior Deputy.    The TELAH FOUNDATION was represented by its

23   attorneys Jillyn Hess-Verdon, and Todd D. Irby; no other

24   appearances were made.

25      Upon satisfactory proof being made to the Court, the Court

26   finds:

27

28   _____2_____

Order Approving Settlement Agreement

1           1.   Notice of the Time and Place of the Hearing on the

2    Agreement has been given in the manner prescribed by law;

3           2.   Notice of the Agreement and the Parties' request for

4    its approval was made in the manner prescribed by law; and

5           3.   All of the allegations contained in the Agreement are

6    true.

7       IT  IS  THEREFORE  ORDERED,  ADJUDGED  AND  DECREED  that  the

8    execution of the agreement which provides the following:

9    RECITALS

10      (1)   The parties herein are Respondent, Don Billings, Public

11   Administrator   for   the   County   of   San   Diego   and   Personal

12   Representative  for  the  following  Estates:  John  M.  Craig,  Dana

13   Abreo,  Marshall  Herf  Applewhite,  Robert  John  Arancio,  Raymond  Alan

14   Bowers,  La  Donna  Ann  Brugato,  Margaret  Jane  Bull,  Cheryl  Elaine

15   Butcher,  Betty  Eldrie  Deal,  Erika  Ernst,  Julie  A.  La  Montagne,

16   Jacqueline  O.  Leonard,  Jeffery  Howard  Lewis,  David  Geoffrey  Moore,

17   Gail  Renee  Maeder,  Steven  Terry  McCarter,  Joel  Peter  McCormick,

18   Yvonne  McCuddy-Hill,  Nancy  Diane  Nelson,  Norma  Jeanne  Nelson,

19   Thomas  Alva  Nichols,  Lindley  Ayerhurt  Pease,  Susan  Elizabeth  Paup,

20   Margaret  Ella  Richter,  Judith  Ann  Rowland,  Michael  Barr  Sandoe,

21   Brian  Alan  Schaaf,  David  Cabot  Van  Sinderen,  Joyce  Angela  Skalla,

22   Gary  Jordan  St.  Louis,  Susan  Frances  Strom,  Denise  Thurman,  Gordon

23   Thomas  Welch,  Alphonzo  Foster,  Lucy  Pesho,  Michael  Carrier,  Darwin

24   Johnson,  Lawrence  Gale,  and  Suzanne  Cooke;  and  Petitioners,  Mark

25   King and Sarah King, on behalf of the TELAH FOUNDATION.

26      (2)   A  controversy  exists  between  the  Parties  as  to  the

27

28   3

1  ownership of certain property which was litigated in Superior Court
2  Case #PN022228.

3      (3)  On February 22, 1999 Judge Lisa Guy-Schall rendered a
4  Statement of Decision in Superior Court Case #PN022228 determining
5  that all right, title and possession of property listed on Exhibit
6  Two (referenced therein) is vested in the aforestated Estates; that
7  all right, title, and possession of the property listed on Exhibit
8  One (referenced therein) is vested in Don Billings as Trustee for
9  The TELAH FOUNDATION, and that all valuable property would be
10  liquidated to cash and applied to the payment of approved
11  creditors' claims filed against the aforesaid Estates, with any
12  excess proceeds of Exhibit One items returning to the TELAH
13  FOUNDATION; and that all intellectual property involved in the
14  dispute is vested in the aforesaid Estates.

15      (4)  Further, attorneys' fees and costs of the Public
16  Administrator were awarded and ordered by the court to be paid by
17  the TELAH FOUNDATION.

18      (5)  The Parties have considered their competing claims, the
19  dispute, and the appellate rights in Superior Court Case #PN022228
20  associated thereto.

21      (6)  The TELAH FOUNDATION filed a Notice of Appeal to preserve
22  its rights to appeal the Statement of Decision by Judge Guy-Schall
23  in its entirety.

24      (7)  This agreement affects only the Parties' rights and
25  interests in the intellectual and tangible property held by the
26  Public Administrator.

27
28  _____

4

Order Approving Settlement Agreement

1    (8)  The Parties further agree that this agreement is in the
2  best interests of the Parties and heirs as it will provide
3  protection as to certain items of property from sale for commercial
4  purposes; provides some cash; and allows remaining items of
5  property to be subject to estate administration (by releasing
6  issues as to ownership of the property from the appellate process).

7

8               **AGREEMENT**

9   IT IS HEREBY AGREED as follows:

10    (1)  The Parties agree this Agreement shall be binding on all
11  the successors, heirs, administrators, assigns of each of the
12  parties and beneficiaries of their respective estates.

13    (2)  Don Billings, Public Administrator, and trustee for TELAH
14  FOUNDATION for certain property determined to be gifts made in view
15  of impending death by the decedents herein (Exhibit One of
16  Statement of Decision referenced therein), hereby agrees to
17  transfer and convey to TELAH FOUNDATION by and through Mark King
18  and Sarah King all right, title and possession of the following
19  property, including any intellectual property rights, in exchange
20  for the TELAH FOUNDATION's promise to release and waive all rights
21  of appeal pertaining to all other items of property of the
22  aforesaid estates in the possession of the Public Administrator,
23  thereby permitting the Public Administrator to liquidate said
24  property without delay.  In addition, the TELAH FOUNDATION promises
25  to safeguard, archive and control these items thereby agreeing to
26  not sell them.  Finally, the TELAH FOUNDATION waives the right to

27

28

Order Approving Settlement Agreement

1  any proceeds from the liquidation of items retained by the Public

2  Administrator.   Accordingly, Don Billings conveys to the TELAH

3  FOUNDATION all right, title and possession of the following:

4                    LIST OF TRUST ASSETS BEING
                    CONVEYED TO TRUST BENEFICIARY
5                        TELAH FOUNDATION

6  Blue Bag Containing Floppy Disks; Sheriff's Evidence List, Item
   #131
7  Blue Bag Containing Papers, Small Black Binder; Sheriff's Evidence
   List, Item #132
8  Black Attache Case Containing Misc. Papers, Office Items; Sheriff's
   Evidence List, Item #133
9  Green Attache Containing Floppy Disks; Sheriff's Evidence List,
   Item #134
10 Black Organizer Containing Papers and Floppy Disks; Sheriff's
   Evidence List, Item #135
11 Black Briefcase Containing Floppy Disks, Toolkit, Hard Disk, CD-
   ROM, Personal Organizer; Sheriff's Evidence List, Item #136
12 Dark Gray Briefcase Containing Floppy Disks; Sheriff's Evidence
   List, Item #137
13 Black Attache Containing Papers and Floppy Disks; Sheriff's
   Evidence List, Item #138
14 Blue Garment Bag Containing Pillow Cases, Misc. Items; Sheriff's
   Evidence List, Item #139
15 Tool Kit in Black Carrying Case; Sheriff's Evidence List, Item #140
   Box Containing 4 Video Tapes (TV Interview Tapes); Sheriff's
16 Evidence List, Item #141
   Black Box Containing Video Tapes (Planet About To Be Recycled);
17 Sheriff's Evidence List, Item #142
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
18 Item #143
   Box Containing Video Tapes (Planet About To Be Recycled); Sheriff's
19 Evidence List, Item #144
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
20 Item #145
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
21 Sheriff's Evidence List, Item #146
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
22 Sheriff's Evidence List, Item #147
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
23 Item #148
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
24 Sheriff's Evidence List, Item #149
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
25 Sheriff's Evidence List, Item #150
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
26 Sheriff's Evidence List, Item #151
   Box Containing Video Tapes (Last Chance to Evacuate Earth);

27

28
─────────────────────────────────────────
                    6

                Order Approving Settlement Agreement

1  Sheriff's Evidence List, Item #152
Box Containing Video Tapes (Planet About to Be Recycled); Sheriff's
2  Evidence List, Item #153
Box Containing Video Tapes (Planet About to Be Recycled); Sheriff's
3  Evidence List, Item #154
Box Containing Video Tapes (Beyond Human) and Audio Cassettes;
4  Sheriff's Evidence List, Item #155
Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
5  Item #156
Box Containing Video Tapes (Unlabeled); Sheriff's Evidence List,
6  Item #157
Box Containing Video Tapes (Session Tapes-Beyond Human) and Audio
7  Cassettes; Sheriff's Evidence List, Item #158
Box Containing Video Tapes (All But 4-Planet About to Be Recycled-
8  Other 4 are Beyond Human); Sheriff's Evidence List, Item #159
Box Containing Video Tapes (Last Chance to Evacuate Earth);
9  Sheriff's Evidence List, Item #160
Box Containing Video Tapes (Various Titles-Master Tapes Beyond
10  Human Series); Sheriff's Evidence List, Item #161
Box Containing Audio Cassettes; Sheriff's Evidence List, Item #162
11  Box Containing Audio Cassettes; Sheriff's Evidence List, Item #163
Box Containing Audio Cassettes; Sheriff's Evidence List, Item #164
12  Box Containing Audio Cassettes; Sheriff's Evidence List, Item #165
Box Containing Papers, Spiral Notebooks; Sheriff's evidence List,
13  Item #166
Box Containing Papers; Sheriff's Evidence List, Item #167
14  Box Containing Misc. Computer Manuals, Disks; Sheriff's Evidence
List, Item #168
15  Box Containing Papers Entitled "95 Statement by an ET Presently
Incarnate"; Sheriff's Evidence List, Item #169
16  Accordion Folder Containing Misc. Papers; Sheriff's Evidence List,
Item #170
17  Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
#171
18  Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
#172
19  Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
#173
20  Box Containing Heaven's Gate Manuals, Papers and Floppy Disks;
Sheriff's Evidence List, Item #174
21  Box Containing Loose Papers; Sheriff's Evidence List, Item #175
Box Containing Notebooks, Papers and Floppy Disks; Sheriff's
22  Evidence List, Item #176
Red Crate Containing Floppy Disks; Sheriff's Evidence List, Item
23  #177
Plastic Box Containing Heaven's Gate Manuals; Sheriff's Evidence
24  List, Item #178
Plastic Box Containing Heaven's Gate Manuals; Sheriff's Evidence
25  List, Item #179
Pink Wallet with Discs
26  Cardboard Box Containing Mailers
Blue Nylon Bag Containing Misc.  Clippings Docs

27

28     7

**Order Approving Settlement Agreement**

1  Black Bag Containing Misc. Docs
   Green Nylon Bag Containing Discs
2  Computer Hard Drive IBM 50858185170
   Computer Hard Drive Server No I.D.
3  Green Nylon Bag Containing Discs
   Computer Hard Drive No I.D.
4  Cardboard Box Containing Discs
   Manilla Envelope Containing Photos
5  Purple Wallet Containing Discs
   Cardboard Box Containing Bag with Discs
6  Disc File Holder
   Cardboard Box Misc. Docs
7  Heaven's Gate Away Team Patches

8      (3)  Don  Billings,  Public  Administrator,  as  Personal

9  Representative of the Estates of: John M. Craig, Dana Abreo,

10  Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers,

11  La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,

12  Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O.

13  Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee

14  Maeder,  Steven  Terry  McCarter,  Joel  Peter  McCormick,  Yvonne

15  McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva

16  Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret

17  Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan

18  Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan

19  St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas

20  Welch,  Alphonzo  Foster,  Lucy  Pesho,  Michael  Carrier,  Darwin

21  Johnson, Lawrence Gale, and Suzanne Cooke, and as Trustee for the

22  TELAH FOUNDATION, agrees to sell the following property to the

23  TELAH FOUNDATION, by and through Mark King and Sarah King for the

24  sum  of  $2,000.00  thereby  transferring  all  right,  title  and

25  possession:

26                    TRUST AND ESTATE PROPERTY SOLD
                           TO TELAH FOUNDATION
27

28  _____8_____

              Order Approving Settlement Agreement

1   Business Records in box marked "PURSER"
    Y/M Wide Band Wedding Ring
2   Yellow Metal Ring
    Blk. Bag w/misc.  clothing and papers
3   State of Arizona Certificate of Trade Name Higher Source Contract
    Enterprises Regis 12/11/95; Exp.  12/11/2000; Trade Name #151844
4   on behalf of Logan Lahson
    Form SS-4 Application for Employer ID# John M. Craig DBA Logan
5   Lahson
    1 Ctn. Framed and Unframed Artwork/Signs
6   1 Envelope w/orig.  Documents; orig.  Copyright Screenplay THE
    MEETING, orig.  Copyright Artwork for Screenplay and 2 Bills of
7   Sale by Authors of THE MEETING to group member
    3 Drawer File Cabinet, 2 Drawer File Cabinet
8   Application for Trade Name for Telah Services and Attachments
    2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #41
9   Notebook Computer; Sheriff's Evidence List, Item #43
    Mouse; Sheriff's Evidence List, Item #43.01
10  Desktop Computer CPU; Sheriff's Evidence List, Item #44
    Keyboard; Sheriff's Evidence List, Item #44.01
11  Monitor; Sheriff's Evidence List, Item #44.02
    Mouse; Sheriff's Evidence List Item #44.03
12  Data Transfer A/B Switch Box; Sheriff's Evidence List, Item #45
    Notebook Computer; Sheriff's Evidence List, Item #46
13  Mouse; Sheriff's Evidence List, Item #46.01
    Notebook Computer; Sheriff's Evidence List, Item #47
14  Mouse; Sheriff's Evidence List, Item #47.01
    Notebook Computer; Sheriff's Evidence List, Item #48
15  Mouse; Sheriff's Evidence List, Item #48.01
    Mini Tower CPU 386SX; Sheriff's Evidence List, Item #49
16  Keyboard; Sheriff's Evidence List, Item #49.01
    Monitor; Sheriff's Evidence List, Item #49.02
17  Mouse; Sheriff's Evidence List, Item #49.03
    Desktop CPU; Sheriff's Evidence List, Item #50
18  Keyboard; Sheriff's Evidence List, Item #50.01
    Monitor; Sheriff's Evidence List, Item #50.02
19  Mouse; Sheriff's Evidence List, Item #50.03
    Tower Computer; Sheriff's Evidence List, Item #51
20  Keyboard; Sheriff's Evidence List, Item #51.01
    Monitor ; Sheriff's Evidence List, Item #51.02
21  Mouse; Sheriff's Evidence List, Item #51.03
    Stereo Speakers; Sheriff's Evidence List, Item #51.04
22  Fax/Modem; Sheriff's Evidence List, Item #51.05
    Notebook Computer; Sheriff's Evidence List, Item #52
23  Monitor; Sheriff's Evidence List, Item #52.01
    Mouse; Sheriff's Evidence List, Item #52.03
24  Printer; Sheriff's Evidence List, Item #53
    Desktop CPU Case; Sheriff's Evidence List, Item #54
25  Keyboard; Sheriff's Evidence List, Item #54.01
    Mouse; Sheriff's Evidence List, Item #54.03
26  Monitor; Sheriff's Evidence List, Item #54.02
    2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #55

27

28

Order Approving Settlement Agreement

| | |
|---|---|
| 1 | 3-Drawer Filing Cabinet; Sheriff's Evidence List, Item #56 |
| | Books from Bookshelf (3 boxes); Sheriff's Evidence List, Item #57 |
| 2 | Papers; Sheriff's Evidence List, Item #58 |
| | Misc.  Floppy Disks; Sheriff's Evidence List, Item #59 |
| 3 | 4-Drawer Filing Cabinet; Sheriff's Evidence List, Item #60 |
| | 2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #61 |
| 4 | Video Cassettes; Sheriff's Evidence List, Item #64 |
| | Black Plastic Box Containing Patches; Sheriff's Evidence List, |
| 5 | Item #65 |
| | 3 Papers, Different Titles; Sheriff's Evidence List, Item #66 |
| 6 | 2 Manuals "How and When Heaven's Gate May Be Entered"; Sheriff's |
| | Evidence List, Item #67 |
| 7 | 2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #68 |
| | Gray Plastic File Box; Sheriff's Evidence List, Item #69 |
| 8 | Brown Plastic File Box; Sheriff's Evidence List, Item #70 |
| | Gray Plastic File Box; Sheriff's Evidence List, Item #71 |
| 9 | Misc.  Loose Papers, Envelopes and Binders; Sheriff's Evidence |
| | List, Item #72 |
| 10 | Blue Plastic Box; Sheriff's Evidence List, Item #73 |
| | Blue Plastic Box; Sheriff's Evidence List, Item #74 |
| 11 | VHS Tapes; Sheriff's Evidence List, Item #195 |
| | VHS Tapes; Sheriff's Evidence List, Item #196 |
| 12 | VHS Tapes; Sheriff's Evidence List, Item #197 |
| | Box Containing Misc.  Items; Sheriff's Evidence List, Item #198 |
| 13 | Box Containing Cassettes; Sheriff's Evidence List, Item #199 |
| | Computer Disks; Sheriff's Evidence List, Item #200 |
| 14 | VHS Tapes; Sheriff's Evidence List, Item #201 |
| | Empty VHS Cases; Sheriff's Evidence List, Item #202 |
| 15 | VHS Tapes; Sheriff's Evidence List, Item #203 |
| | Clipboard and Three Ring Binder "Checkout" and Roster; Sheriff's |
| 16 | Evidence List, Item #40 |
| | "Why We Must Leave At This Time" and "Earth Exit Statement"; |
| 17 | Sheriff's Evidence List, Item #58 |
| | Computer Disks; Sheriff's Evidence List, Item #62 |
| 18 | Two Cassettes (Audio Only); Sheriff's Evidence List, Item #63 |
| | File of Disks; Sheriff's Evidence List, Item #77 |
| 19 | Manila Envelope Containing Documents; Sheriff's Evidence List, |
| | Item #188 |
| 20 | Manila Envelope Containing Five (5) White Envelopes (Travel |
| | Documents); Sheriff's Evidence List, Item #189 |
| 21 | Bank Bag with Calculator; Gas Receipts and Notebook |
| | Computer Mini-Tower |
| 22 | Ctn. W/Computer (Insight) |
| | Tower Computer Marked as "SERVER" on Tape; Sheriff's Evidence |
| 23 | List, Item #113 |
| | Minitower Computer; Sheriff's Evidence List, Item #114 |
| 24 | Monitor; Sheriff's Evidence List, Item #115 |
| | Box Containing Monitor, Keyboard and Mouse; Sheriff's Evidence |
| 25 | List, Item #116 |
| | Box Containing Monitor; Sheriff's Evidence List, Item #117 |
| 26 | Box Containing Computer, Keyboard, Ethernet Adapter, Mouse, 28.2 |
| | Fax/Modem, Powerstrip, and Manuals; Sheriff's Evidence List, Item |
| 27 | |
| 28 | 10 |

---

Order Approving Settlement Agreement

1  #118
   Computer; Sheriff's Evidence List, Item #119
2  Monitor; Sheriff's Evidence List, Item #120
   Box Containing Monitor, Keyboard, Mouse; Sheriff's Evidence List,
3  Item #121
   Box Containing Monitor; Sheriff's Evidence List, Item #122
4  Box Containing Computer, Mouse Manuals and Cable; Sheriff's
   Evidence List, Item #123
5  Black Carrying Case Containing Notebook Computer, Mouse,
   Cigarette Lighter Adapter; Sheriff's Evidence List, Item #124
6  Box Containing Assorted Computer Accessories and Floppy Disks;
   Sheriff's Evidence List, Item #130
7  Box Containing Sony Monitor 1055228 and Keyboard
   Any other Intellectual Property
8  Any Shrouds

9      (4)   The TELAH FOUNDATION agrees to protect, safeguard,

10 archive and control all items received in this agreement and not

11 sell them.

12     (5)   The Public Administrator agrees not to advertise in any

13 manner the liquidation of the items of these estates as "Heaven's

14 Gate" liquidations.   The Public Administrator shall not be held

15 responsible for representations made by the media, but will make

16 every effort to follow the policy of the Public Administrator's

17 Office in providing notices of any liquidations of the items of

18 these estates.

19     (6)   TELAH FOUNDATION agrees to dismiss with prejudice its

20 Notice of Appeal filed April 21, 1999 as to all property issues

21 except the Court's order that The TELAH FOUNDATION pay the Public

22 Administrator's attorney's fees and costs.   Said dismissal must

23 be filed within seven (7) court days after receipt of court order

24 approving this agreement.

25     (7)   Upon filing of above-referenced Dismissal, the Parties

26 shall perform the remaining terms of this agreement including but

27

28 ─────────────────────────11─────────────────────────

                Order Approving Settlement Agreement

1   not limited to, the delivery of said items to THE TELAH

2   FOUNDATION, and the payment of said sum to the Public

3   Administrator, within seven (7) court days after the filing of

4   the above-referenced Dismissal.

5       (8)  This agreement, its terms, and any and all

6   negotiations, communications, and/or representations leading

7   thereto, shall be barred from admissibility for any purpose in

8   the remaining appellate process.

9       is approved by this Court as to its form and its content,

10  and the Parties may execute its terms forthwith.

11

12  IT IS SO ORDERED:

13

14  Dated:  8/11/99

15               LISA GUY-SCHALL

               JUDGE OF THE SUPERIOR COURT

16

17

18

19

20

21

22

23

24

25

26

27

28

12

Order Approving Settlement Agreement

# Exhibit 19

**San Diego County – attorney Sansone's Objection to
Petition to Determine Ownership of Estate Property
ROA 74 Case File Contents 2-3 [173-179]**

*Exhibit 19*

```
FILED
PROBATE DIVISION
VISTA

1998 JUL 15 A II: 14

KENNETH E. MARTONE
CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA
```

1 JOHN J SANSONE, County Counsel
By Cheryl K. Carter, Deputy
2 State Bar No. 125540
Attorneys for Don Billings
3 Public Administrator - Public Guardian
5201-A Ruffin Road
4 San Diego, CA 92123
Telephone: (619) 694-3500
5 Fax: (619) 694-3987

6

7

8        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9

10

11 ESTATE OF                    ) No. PN 022228
                                )
12 IN THE MATTER OF THE ESTATE OF ) OBJECTION TO PETITION TO DETERMINE
                                ) OWNERSHIP OF ESTATE PROPERTY, FOR
13 JOHN MICHAEL CRAIG, ALSO KNOWN AS ) ORDER AUTHORIZING AND DIRECTING
   LOGAN M. LAWSON, ALSO KNOWN AS ) REPRESENTATIVE TO TRANSFER ESTATE
14 LOGAN LAHSON,                 ) PROPERTY TO PETITIONER AND
                                ) PAYMENT OF PETITIONER'S ATTORNEY'S
15                               ) FEES (PROBATE CODE §9860)
                                )
16                               ) DATE:  JULY 17, 1998
                                ) TIME:  2:30 P.M.
17              DECEDENT         ) DEPT:  E
                                )
18 _____)

19

20        Don Billings, Public Administrator for the County of San Diego and

21 Administrator of the Estates of John Craig and thirty-eight (38) other

22 decedents who expired on March 26, 1997, hereby objects to the Petition

23 by Claimant to Determine Ownership of Estate Property, for order

24 Authorizing and Directing Representative to Transfer Estate Property to

25 Petitioner and Payment of Petitioner's Attorneys Fees as follows:

26 ///

27 ///

28                              1

I

**IF PRIOR TO THEIR DEATHS, "DECEDENTS, COLLECTIVELY, HELD THE RIGHTS, TITLE, AND INTEREST TO, AND WERE IN POSSESSION OF VARIOUS ITEMS OF TANGIBLE AND INTANGIBLE PERSONAL PROPERTY, INCLUDING INTELLECTUAL PROPERTY" THEN PETITIONERS ALLEGED MERE MANAGEMENT AUTHORITY DID _NOT_ TRANFER THE AFOREMENTIONED TITLE TO THE PROPERTY TO _THEMSELVES_.**

Petitioners allege at number V of their petition that as a result of the decedents executing documents entitled "STATUTORY DURABLE POWER OF ATTORNEY(S) DPA's appointing Mark Gerard King as attorney in fact and Mrs. King as successor a few days before their deaths that this somehow devolved ownership rights upon them.  They support this by stating they received by "Federal Express" explicit information regarding the aforementioned property.  However petitioners fail to mention that in California, a DPOA terminates upon the death of the principal. (PC§ 4152(a)(4)) except for certain limited conditions not met here.  Petitioners have also failed to produce any writing which purports to make a disposition of the decedents property upon their death, that satisfies the requirements of a Will in this state.

Petitioners do allege gifts were made however they also state the "decedents owned and possessed title to property including intellectual property prior to their deaths and as possession and control remained with the decedents it appears they still owned it after their deaths.

A.   Assuming arguendo that the DPOA and writings devolved title to the petitioners, objector asserts the DPOA's executed March

2

19, 1997, a few short days before the deaths which occurred
March 26, 1997, were the result of duress, or undue influence
given the event which transpired on March 26, 1997.

B.   In addition, the DPOA's appear irregular on their face as they
purport that the decedents were residents of Arizona and
present in Arizona at a time others have alleged they were
residents of California and present in California.

C.   Finally, case law has long held that gifts from principals to
agents during the existence of the fiduciary relationship may
be presumed the result of undue influence and absent a showing
of independent advice, the presumption can actually shift the
burden of proof to show absence of undue influence.


                                    II


        PETITIONERS ADMIT DECEDENTS OWNED INTELLECTUAL PROPERTY AND
        STATE THEY OBTAINED THE RIGHTS BY ASSIGNMENT BUT FAIL TO
        ALLEGE FACTS TO SUPPORT SAID ASSIGNMENT.


    Petitioners make much of their copyright registrations after
Decedents' deaths, stating in their applications that the Telah
Foundation was copyright claimant "pursuant to assignments".

    It is clear that the Decedent's Intellectual Property included
common law trademarks/trade names, including Domain names and several
unregistered copyrights.  No assignments accompany the petition and
several questions arise, were these pre-death assignments?  Were the
DPOA's used to execute these assignments?  Was this a result of undue

                                    3

1  influence? On the other hand if they were post-death assignments, what
2  authority did they have to so execute?
3      All of these queries and issues rebut the so-called "prima facie"
4  validity of their copyrights.

5
6                                    III

7      THE PROBATE CODE GOVERNS THE RIGHTS DUTIES AND LIABILTIES OF
8      PARTIES UPON DEATH.

9
10     The Petitioners intentions and beliefs cannot obviate or blur the
11 will of the people of the State of California as set forth in the
12 Probate Code.  A personal representative cannot make distributions
13 based upon religious and philosophical positions.

14
15                                    IV

16
17     OBJECTOR IS AWARE OF FAMILY MEMBERS WHO VEHEMENTLY OPPOSE
18     DISTRIBUTION TO PETITIONERS.

19     If 100% of the heirs do not consent, the majority cannot "rule".
20 Certain heirs can however waive distribution but it must be stated
21 these estates are insolvent.  They have burial claims and costs of
22 administration, other creditors may also file claims.  Therefore, it is
23 premature and probably moot, to discuss any distribution.  If
24 petitioners fail to establish ownership rights, there will more than
25 likely be no distribution.
26 ///
27
28                                    4

**V**

**SINCE THE ORDER TERMINATING THE SPECIAL ADMINISTRATION WAS NOT FILED UNTIL MAY 7, 1998, AND SINCE PRIOR TO THAT TIME OBJECTOR HAD NO POWER TO EVALUATE CREDITOR CLAIMS, PETITIONERS REQUEST FOR ATTORNEY FEES IS UNFOUNDED.**

It was not until objector was authorized to terminate the Special Administrator with its limited powers, was objector able to begin to function as a general personal representative with the power to process creditor claims and adjudicate property claims.  Petitioner is not entitled to attorney fees or costs.

**VI**

**PCS 9860 PETITION FILED IN PN 022228 SHOULD BE TAKEN OFF CALENDAR OR SAID PEITTION AMENDED TO REFLECT PROPER PARTIES.**

On May 7, 1998, this court signed its order terminating the Special Administration of the Estate of John Craig in PN 022228.

Objector has opened thirty-nine (39) summary probates including the summary probate of John Craig.  It appears this petition/litigation should be amended to reflect all proper parties, case numbers, etc.

///
///
///
///
///

5

1

**CONCLUSION**

2

3      Based upon the above stated arguments, the claim of the Telah

4  Foundation should be denied.

5

6  DATED: *7-15-98*                    JOHN J. SANSONE, County Counsel

7                                      *Cheryl K. Carter*
                                       By Cheryl K. Carter, Deputy
8                                      Attorneys for Objector

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      6

VERIFICATION

I am the Public Administrator for the Estate of John Michael Craig, Decedent, in the County of San Diego, and the respondent in the above-entitled action and am authorized to make this verification on its behalf. I have read the foregoing , OBJECTION TO PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY'S FEES and know the contents thereof. I certify that the same is true of my own knowledge, except as to the matters which are therein stated upon my information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed on this 15th day of July, 1998, at San Diego, California.

DON BILLINGS
Public Administrator

IN THE MATTER OF THE ESTATE OF JOHN MICHAEL CRAIG,
Superior Court No.  PN 022228

# Exhibit 21

**Petition by Claimant to Determine Ownership of
Estate Property pg 6-14 of roa 73 case file contents 1-3**

Exhibit 21

```
1  JILLYN HESS-VERDON, (SBN: 146626)
   TODD D. IRBY, (SBN: 153485)
2  HESS-VERDON & ASSOCIATES
   1301 Dove Street, Suite 670
3  Newport Beach, California 92660
   Attorneys for The TELAH FOUNDATION
4  Telephone: (949) 474-5460
   Fax: (949) 474-5470
5
```

F I L E D
Clerk of the Superior Court

AUG 1 1 1999

BY: M. GARLAND

```
6

7

8         SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9                        NORTH COUNTY BRANCH

10  Estates of                         )  No.  PN022228
                                       )
11  JOHN MICHAEL CRAIG, also known as  )  ORDER APPROVING AGREEMENT TO
    LOGAN M. LAWSON, aka LOGAN LAHSON, )  SELL ESTATE PROPERTY AND TO
12  DANA ABREO, MARSHALL HERF          )  CONVEY TRUST PROPERTY TO
    APPLEWHITE, ROBERT JOHN ARANCIO,   )  TRUST BENEFICIARIES
13  RAYMOND ALAN BOWERS, LA DONNA ANN  )
    BRUGATO, MARGARET JANE BULL,       )
14  CHERYL ELAINE BUTCHER, BETTY       )  JUDGE: HON. LISA GUY-SCHALL
    ELDRIE DEAL, ERIKA ERNST, JULIE    )  DEPT:  28
15  A. LA MONTAGNE, JACQUELINE O.      )
    LEONARD, JEFFERY HOWARD LEWIS,     )
16  DAVID GEOFFREY MOORE, GAIL RENEE   )
    MAEDER, STEVEN TERRY MCCARTER,     )
17  JOEL PETER MCCORMICK, YVONNE       )
    MCCUDDY-HILL, NANCY DIANE NELSON,  )
18  NORMA JEANNE NELSON, THOMAS ALVA   )
    NICHOLS, LINDLEY AYERHURT PEASE,   )
19  SUSAN ELIZABETH PAUP, MARGARET     )
    ELLA RICHTER, JUDITH ANN ROWLAND,  )
20  MICHAEL BARR SANDOE, BRIAN ALAN    )
    SCHAAF, DAVID CABOT VAN SINDEREN,  )
21  JOYCE ANGELA SKALLA, GARY JORDAN   )
    ST. LOUIS, SUSAN FRANCES STROM,    )
22  DENISE THURMAN, GORDON THOMAS      )
    WELCH, ALPHONZO FOSTER, LUCY       )
23  PESHO, MICHAEL CARRIER, DARWIN     )
    JOHNSON, LAWRENCE GALE, and        )
24  SUZANNE COOKE,                     )
                                       )
25                          Deceased   )
    _____)
26

27
                               1
28  _____
```

Order Approving Settlement Agreement

1

2       The PROPOSED AGREEMENT TO SELL ESTATE PROPERTY AND TO CONVEY

3   TRUST   PROPERTY   TO   TRUST   BENEFICIARIES,   (hereinafter,   the

4   "Agreement") filed by Don Billings, the Public Administrator, County

5   of San Diego, administrator of the Estates of John M. Craig, Dana

6   Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan

7   Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine

8   Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne,

9   Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore,

10  Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick,

11  Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson,

12  Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup,

13  Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe,

14  Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla,

15  Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon

16  Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin

17  Johnson, Lawrence Gale, Suzanne Cooke, came on regularly for

18  hearing on August 6, 1999 at 1:30 p.m., in Department 28, of the

19  above-entitled   Court,   the   Honorable   Judge   Lisa   Guy-Schall

20  presiding.   The Public Administrator was represented by his

21  attorney, John J. Sansone, County Counsel, by Cheryl K. Carter,

22  Senior Deputy.   The TELAH FOUNDATION was represented by its

23  attorneys Jillyn Hess-Verdon, and Todd D. Irby; no other

24  appearances were made.

25      Upon satisfactory proof being made to the Court, the Court

26  finds:

27

28  _____
                          2

Order Approving Settlement Agreement

1    1.  Notice of the Time and Place of the Hearing on the
2  Agreement has been given in the manner prescribed by law;

3    2.  Notice of the Agreement and the Parties' request for
4  its approval was made in the manner prescribed by law; and

5    3.  All of the allegations contained in the Agreement are
6  true.

7  IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the
8  execution of the agreement which provides the following:

9                          RECITALS

10  (1)  The parties herein are Respondent, Don Billings, Public
11  Administrator for the County of San Diego and Personal
12  Representative for the following Estates: John M. Craig, Dana
13  Abreo, Marshall Herf Applewhite, Robert John Arancio, Raymond Alan
14  Bowers, La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine
15  Butcher, Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne,
16  Jacqueline O. Leonard, Jeffery Howard Lewis, David Geoffrey Moore,
17  Gail Renee Maeder, Steven Terry McCarter, Joel Peter McCormick,
18  Yvonne McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson,
19  Thomas Alva Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup,
20  Margaret Ella Richter, Judith Ann Rowland, Michael Barr Sandoe,
21  Brian Alan Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla,
22  Gary Jordan St. Louis, Susan Frances Strom, Denise Thurman, Gordon
23  Thomas Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin
24  Johnson, Lawrence Gale, and Suzanne Cooke; and Petitioners, Mark
25  King and Sarah King, on behalf of the TELAH FOUNDATION.

26  (2)  A controversy exists between the Parties as to the
27
28  _____

                            3

Order Approving Settlement Agreement

1   ownership of certain property which was litigated in Superior Court
2   Case #PN022228.

3       (3)   On February 22, 1999 Judge Lisa Guy-Schall rendered a
4   Statement of Decision in Superior Court Case #PN022228 determining
5   that all right, title and possession of property listed on Exhibit
6   Two (referenced therein) is vested in the aforestated Estates; that
7   all right, title, and possession of the property listed on Exhibit
8   One (referenced therein) is vested in Don Billings as Trustee for
9   The TELAH FOUNDATION, and that all valuable property would be
10   liquidated to cash and applied to the payment of approved
11   creditors' claims filed against the aforesaid Estates, with any
12   excess proceeds of Exhibit One items returning to the TELAH
13   FOUNDATION; and that all intellectual property involved in the
14   dispute is vested in the aforesaid Estates.

15       (4)   Further, attorneys' fees and costs of the Public
16   Administrator were awarded and ordered by the court to be paid by
17   the TELAH FOUNDATION.

18       (5)   The Parties have considered their competing claims, the
19   dispute, and the appellate rights in Superior Court Case #PN022228
20   associated thereto.

21       (6)   The TELAH FOUNDATION filed a Notice of Appeal to preserve
22   its rights to appeal the Statement of Decision by Judge Guy-Schall
23   in its entirety.

24       (7)   This agreement affects only the Parties' rights and
25   interests in the intellectual and tangible property held by the
26   Public Administrator.

27

28   ———————————————— 4 ————————————————

1    (8)   The Parties further agree that this agreement is in the
2  best interests of the Parties and heirs as it will provide
3  protection as to certain items of property from sale for commercial
4  purposes; provides some cash; and allows remaining items of
5  property to be subject to estate administration (by releasing
6  issues as to ownership of the property from the appellate process).
7
8                              AGREEMENT
9      IT IS HEREBY AGREED as follows:
10     (1)   The Parties agree this Agreement shall be binding on all
11  the successors, heirs, administrators, assigns of each of the
12  parties and beneficiaries of their respective estates.
13     (2)   Don Billings, Public Administrator, and trustee for TELAH
14  FOUNDATION for certain property determined to be gifts made in view
15  of impending death by the decedents herein (Exhibit One of
16  Statement of Decision referenced therein), hereby agrees to
17  transfer and convey to TELAH FOUNDATION by and through Mark King
18  and Sarah King all right, title and possession of the following
19  property, including any intellectual property rights, in exchange
20  for the TELAH FOUNDATION's promise to release and waive all rights
21  of appeal pertaining to all other items of property of the
22  aforesaid estates in the possession of the Public Administrator,
23  thereby permitting the Public Administrator to liquidate said
24  property without delay.  In addition, the TELAH FOUNDATION promises
25  to safeguard, archive and control these items thereby agreeing to
26  not sell them.  Finally, the TELAH FOUNDATION waives the right to
27
28  _____5_____

Order Approving Settlement Agreement

1  any proceeds from the liquidation of items retained by the Public

2  Administrator.   Accordingly, Don Billings conveys to the TELAH

3  FOUNDATION all right, title and possession of the following:

4  LIST OF TRUST ASSETS BEING
   CONVEYED TO TRUST BENEFICIARY
5  TELAH FOUNDATION

6  Blue Bag Containing Floppy Disks; Sheriff's Evidence List, Item
   #131
7  Blue Bag Containing Papers, Small Black Binder; Sheriff's Evidence
   List, Item #132
8  Black Attache Case Containing Misc. Papers, Office Items; Sheriff's
   Evidence List, Item #133
9  Green Attache Containing Floppy Disks; Sheriff's Evidence List,
   Item #134
10 Black Organizer Containing Papers and Floppy Disks; Sheriff's
   Evidence List, Item #135
11 Black Briefcase Containing Floppy Disks, Toolkit, Hard Disk, CD-
   ROM, Personal Organizer; Sheriff's Evidence List, Item #136
12 Dark Gray Briefcase Containing Floppy Disks; Sheriff's Evidence
   List, Item #137
13 Black Attache Containing Papers and Floppy Disks; Sheriff's
   Evidence List, Item #138
14 Blue Garment Bag Containing Pillow Cases, Misc. Items; Sheriff's
   Evidence List, Item #139
15 Tool Kit in Black Carrying Case; Sheriff's Evidence List, Item #140
   Box Containing 4 Video Tapes (TV Interview Tapes); Sheriff's
16 Evidence List, Item #141
   Black Box Containing Video Tapes (Planet About To Be Recycled);
17 Sheriff's Evidence List, Item #142
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
18 Item #143
   Box Containing Video Tapes (Planet About To Be Recycled); Sheriff's
19 Evidence List, Item #144
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
20 Item #145
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
21 Sheriff's Evidence List, Item #146
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
22 Sheriff's Evidence List, Item #147
   Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
23 Item #148
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
24 Sheriff's Evidence List, Item #149
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
25 Sheriff's Evidence List, Item #150
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
26 Sheriff's Evidence List, Item #151
   Box Containing Video Tapes (Last Chance to Evacuate Earth);
27

28

6

Order Approving Settlement Agreement

```
1   Sheriff's Evidence List, Item #152
    Box Containing Video Tapes (Planet About to Be Recycled); Sheriff's
2   Evidence List, Item #153
    Box Containing Video Tapes (Planet About to Be Recycled); Sheriff's
3   Evidence List, Item #154
    Box Containing Video Tapes (Beyond Human) and Audio Cassettes;
4   Sheriff's Evidence List, Item #155
    Box Containing Video Tapes (Beyond Human); Sheriff's Evidence List,
5   Item #156
    Box Containing Video Tapes (Unlabeled); Sheriff's Evidence List,
6   Item #157
    Box Containing Video Tapes (Session Tapes-Beyond Human) and Audio
7   Cassettes; Sheriff's Evidence List, Item #158
    Box Containing Video Tapes (All But 4-Planet About to Be Recycled-
8   Other 4 are Beyond Human); Sheriff's Evidence List, Item #159
    Box Containing Video Tapes (Last Chance to Evacuate Earth);
9   Sheriff's Evidence List, Item #160
    Box Containing Video Tapes (Various Titles-Master Tapes Beyond
10  Human Series); Sheriff's Evidence List, Item #161
    Box Containing Audio Cassettes; Sheriff's Evidence List, Item #162
11  Box Containing Audio Cassettes; Sheriff's Evidence List, Item #163
    Box Containing Audio Cassettes; Sheriff's Evidence List, Item #164
12  Box Containing Audio Cassettes; Sheriff's Evidence List, Item #165
    Box Containing Papers, Spiral Notebooks; Sheriff's evidence List,
13  Item #166
    Box Containing Papers; Sheriff's Evidence List, Item #167
14  Box Containing Misc. Computer Manuals, Disks; Sheriff's Evidence
    List, Item #168
15  Box Containing Papers Entitled "95 Statement by an ET Presently
    Incarnate"; Sheriff's Evidence List, Item #169
16  Accordion Folder Containing Misc. Papers; Sheriff's Evidence List,
    Item #170
17  Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
    #171
18  Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
    #172
19  Box Containing Heaven's Gate Manuals; Sheriff's Evidence List, Item
    #173
20  Box Containing Heaven's Gate Manuals, Papers and Floppy Disks;
    Sheriff's Evidence List, Item #174
21  Box Containing Loose Papers; Sheriff's Evidence List, Item #175
    Box Containing Notebooks, Papers and Floppy Disks; Sheriff's
22  Evidence List, Item #176
    Red Crate Containing Floppy Disks; Sheriff's Evidence List, Item
23  #177
    Plastic Box Containing Heaven's Gate Manuals; Sheriff's Evidence
24  List, Item #178
    Plastic Box Containing Heaven's Gate Manuals; Sheriff's Evidence
25  List, Item #179
    Pink Wallet with Discs
26  Cardboard Box Containing Mailers
    Blue Nylon Bag Containing Misc.  Clippings Docs
27

28                                  7
```

Order Approving Settlement Agreement

1 | Black Bag Containing Misc. Docs
Green Nylon Bag Containing Discs
2 | Computer Hard Drive IBM 50858185170
Computer Hard Drive Server No I.D.
3 | Green Nylon Bag Containing Discs
Computer Hard Drive No I.D.
4 | Cardboard Box Containing Discs
Manilla Envelope Containing Photos
5 | Purple Wallet Containing Discs
Cardboard Box Containing Bag with Discs
6 | Disc File Holder
Cardboard Box Misc. Docs
7 | Heaven's Gate Away Team Patches

8 |   (3) Don Billings, Public Administrator, as Personal

9 | Representative of the Estates of: John M. Craig, Dana Abreo,

10 | Marshall Herf Applewhite, Robert John Arancio, Raymond Alan Bowers,

11 | La Donna Ann Brugato, Margaret Jane Bull, Cheryl Elaine Butcher,

12 | Betty Eldrie Deal, Erika Ernst, Julie A. La Montagne, Jacqueline O.

13 | Leonard, Jeffery Howard Lewis, David Geoffrey Moore, Gail Renee

14 | Maeder, Steven Terry McCarter, Joel Peter McCormick, Yvonne

15 | McCuddy-Hill, Nancy Diane Nelson, Norma Jeanne Nelson, Thomas Alva

16 | Nichols, Lindley Ayerhurt Pease, Susan Elizabeth Paup, Margaret

17 | Ella Richter, Judith Ann Rowland, Michael Barr Sandoe, Brian Alan

18 | Schaaf, David Cabot Van Sinderen, Joyce Angela Skalla, Gary Jordan

19 | St. Louis, Susan Frances Strom, Denise Thurman, Gordon Thomas

20 | Welch, Alphonzo Foster, Lucy Pesho, Michael Carrier, Darwin

21 | Johnson, Lawrence Gale, and Suzanne Cooke, and as Trustee for the

22 | TELAH FOUNDATION, agrees to sell the following property to the

23 | TELAH FOUNDATION, by and through Mark King and Sarah King for the

24 | sum of $2,000.00 thereby transferring all right, title and

25 | possession:

26 | TRUST AND ESTATE PROPERTY SOLD
TO TELAH FOUNDATION

27

28 | 8

Order Approving Settlement Agreement

| | |
|---|---|
| 1 | Business Records in box marked "PURSER" |
| | Y/M Wide Band Wedding Ring |
| 2 | Yellow Metal Ring |
| | Blk. Bag w/misc. clothing and papers |
| 3 | State of Arizona Certificate of Trade Name Higher Source Contract |
| | Enterprises Regis 12/11/95; Exp. 12/11/2000; Trade Name #151844 |
| 4 | on behalf of Logan Lahson |
| | Form SS-4 Application for Employer ID# John M. Craig DBA Logan |
| 5 | Lahson |
| | 1 Ctn. Framed and Unframed Artwork/Signs |
| 6 | 1 Envelope w/orig. Documents; orig. Copyright Screenplay THE |
| | MEETING, orig. Copyright Artwork for Screenplay and 2 Bills of |
| 7 | Sale by Authors of THE MEETING to group member |
| | 3 Drawer File Cabinet, 2 Drawer File Cabinet |
| 8 | Application for Trade Name for Telah Services and Attachments |
| | 2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #41 |
| 9 | Notebook Computer; Sheriff's Evidence List, Item #43 |
| | Mouse; Sheriff's Evidence List, Item #43.01 |
| 10 | Desktop Computer CPU; Sheriff's Evidence List, Item #44 |
| | Keyboard; Sheriff's Evidence List, Item #44.01 |
| 11 | Monitor; Sheriff's Evidence List, Item #44.02 |
| | Mouse; Sheriff's Evidence List Item #44.03 |
| 12 | Data Transfer A/B Switch Box; Sheriff's Evidence List, Item #45 |
| | Notebook Computer; Sheriff's Evidence List, Item #46 |
| 13 | Mouse; Sheriff's Evidence List, Item #46.01 |
| | Notebook Computer; Sheriff's Evidence List, Item #47 |
| 14 | Mouse; Sheriff's Evidence List, Item #47.01 |
| | Notebook Computer; Sheriff's Evidence List, Item #48 |
| 15 | Mouse; Sheriff's Evidence List, Item #48.01 |
| | Mini Tower CPU 386SX; Sheriff's Evidence List, Item #49 |
| 16 | Keyboard; Sheriff's Evidence List, Item #49.01 |
| | Monitor; Sheriff's Evidence List, Item #49.02 |
| 17 | Mouse; Sheriff's Evidence List, Item #49.03 |
| | Desktop CPU; Sheriff's Evidence List, Item #50 |
| 18 | Keyboard; Sheriff's Evidence List, Item #50.01 |
| | Monitor; Sheriff's Evidence List, Item #50.02 |
| 19 | Mouse; Sheriff's Evidence List, Item #50.03 |
| | Tower Computer; Sheriff's Evidence List, Item #51 |
| 20 | Keyboard; Sheriff's Evidence List, Item #51.01 |
| | Monitor ; Sheriff's Evidence List, Item #51.02 |
| 21 | Mouse; Sheriff's Evidence List, Item #51.03 |
| | Stereo Speakers; Sheriff's Evidence List, Item #51.04 |
| 22 | Fax/Modem; Sheriff's Evidence List, Item #51.05 |
| | Notebook Computer; Sheriff's Evidence List, Item #52 |
| 23 | Monitor; Sheriff's Evidence List, Item #52.01 |
| | Mouse; Sheriff's Evidence List, Item #52.03 |
| 24 | Printer; Sheriff's Evidence List, Item #53 |
| | Desktop CPU Case; Sheriff's Evidence List, Item #54 |
| 25 | Keyboard; Sheriff's Evidence List, Item #54.01 |
| | Mouse; Sheriff's Evidence List, Item #54.03 |
| 26 | Monitor; Sheriff's Evidence List, Item #54.02 |
| | 2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #55 |
| 27 | |
| 28 | |

9

Order Approving Settlement Agreement

1  3-Drawer Filing Cabinet; Sheriff's Evidence List, Item #56
   Books from Bookshelf (3 boxes); Sheriff's Evidence List, Item #57
2  Papers; Sheriff's Evidence List, Item #58
   Misc.  Floppy Disks; Sheriff's Evidence List, Item #59
3  4-Drawer Filing Cabinet; Sheriff's Evidence List, Item #60
   2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #61
4  Video Cassettes; Sheriff's Evidence List, Item #64
   Black Plastic Box Containing Patches; Sheriff's Evidence List,
5  Item #65
   3 Papers, Different Titles; Sheriff's Evidence List, Item #66
6  2 Manuals "How and When Heaven's Gate May Be Entered"; Sheriff's
   Evidence List, Item #67
7  2-Drawer Filing Cabinet; Sheriff's Evidence List, Item #68
   Gray Plastic File Box; Sheriff's Evidence List, Item #69
8  Brown Plastic File Box; Sheriff's Evidence List, Item #70
   Gray Plastic File Box; Sheriff's Evidence List, Item #71
9  Misc.  Loose Papers, Envelopes and Binders; Sheriff's Evidence
   List, Item #72
10 Blue Plastic Box; Sheriff's Evidence List, Item #73
   Blue Plastic Box; Sheriff's Evidence List, Item #74
11 VHS Tapes; Sheriff's Evidence List, Item #195
   VHS Tapes; Sheriff's Evidence List, Item #196
12 VHS Tapes; Sheriff's Evidence List, Item #197
   Box Containing Misc.  Items; Sheriff's Evidence List, Item #198
13 Box Containing Cassettes; Sheriff's Evidence List, Item #199
   Computer Disks; Sheriff's Evidence List, Item #200
14 VHS Tapes; Sheriff's Evidence List, Item #201
   Empty VHS Cases; Sheriff's Evidence List, Item #202
15 VHS Tapes; Sheriff's Evidence List, Item #203
   Clipboard and Three Ring Binder "Checkout" and Roster; Sheriff's
16 Evidence List, Item #40
   "Why We Must Leave At This Time" and "Earth Exit Statement";
17 Sheriff's Evidence List, Item #58
   Computer Disks; Sheriff's Evidence List, Item #62
18 Two Cassettes (Audio Only); Sheriff's Evidence List, Item #63
   File of Disks; Sheriff's Evidence List, Item #77
19 Manila Envelope Containing Documents; Sheriff's Evidence List,
   Item #188
20 Manila Envelope Containing Five (5) White Envelopes (Travel
   Documents); Sheriff's Evidence List, Item #189
21 Bank Bag with Calculator; Gas Receipts and Notebook
   Computer Mini-Tower
22 Ctn. W/Computer (Insight)
   Tower Computer Marked as "SERVER" on Tape; Sheriff's Evidence
23 List, Item #113
   Minitower Computer; Sheriff's Evidence List, Item #114
24 Monitor; Sheriff's Evidence List, Item #115
   Box Containing Monitor, Keyboard and Mouse; Sheriff's Evidence
25 List, Item #116
   Box Containing Monitor; Sheriff's Evidence List, Item #117
26 Box Containing Computer, Keyboard, Ethernet Adapter, Mouse, 28.2
   Fax/Modem, Powerstrip, and Manuals; Sheriff's Evidence List, Item
27

28                              10

                   Order Approving Settlement Agreement

1  #118
Computer; Sheriff's Evidence List, Item #119
2  Monitor; Sheriff's Evidence List, Item #120
Box Containing Monitor, Keyboard, Mouse; Sheriff's Evidence List,
3  Item #121
Box Containing Monitor; Sheriff's Evidence List, Item #122
4  Box Containing Computer, Mouse Manuals and Cable; Sheriff's
Evidence List, Item #123
5  Black Carrying Case Containing Notebook Computer, Mouse,
Cigarette Lighter Adapter; Sheriff's Evidence List, Item #124
6  Box Containing Assorted Computer Accessories and Floppy Disks;
Sheriff's Evidence List, Item #130
7  Box Containing Sony Monitor 1055228 and Keyboard
Any other Intellectual Property
8  Any Shrouds

9     (4)  The TELAH FOUNDATION agrees to protect, safeguard,

10  archive and control all items received in this agreement and not

11  sell them.

12     (5)  The Public Administrator agrees not to advertise in any

13  manner the liquidation of the items of these estates as "Heaven's

14  Gate" liquidations.   The Public Administrator shall not be held

15  responsible for representations made by the media, but will make

16  every effort to follow the policy of the Public Administrator's

17  Office in providing notices of any liquidations of the items of

18  these estates.

19     (6)  TELAH FOUNDATION agrees to dismiss with prejudice its

20  Notice of Appeal filed April 21, 1999 as to all property issues

21  except the Court's order that The TELAH FOUNDATION pay the Public

22  Administrator's attorney's fees and costs.   Said dismissal must

23  be filed within seven (7) court days after receipt of court order

24  approving this agreement.

25     (7)  Upon filing of above-referenced Dismissal, the Parties

26  shall perform the remaining terms of this agreement including but

27

28

11

Order Approving Settlement Agreement

1  not limited to, the delivery of said items to THE TELAH

2  FOUNDATION, and the payment of said sum to the Public

3  Administrator, within seven (7) court days after the filing of

4  the above-referenced Dismissal.

5      (8)  This agreement, its terms, and any and all

6  negotiations, communications, and/or representations leading

7  thereto, shall be barred from admissibility for any purpose in

8  the remaining appellate process.

9      is approved by this Court as to its form and its content,

10  and the Parties may execute its terms forthwith.

11

12  IT IS SO ORDERED:

13       8/11/99

14  Dated:

15       LISA GUY-SCHALL
        JUDGE OF THE SUPERIOR COURT

16

17

18

19

20

21

22

23

24

25

26

27

28                          12

Order Approving Settlement Agreement

# Exhibit 22

**Petitioners supplemental trial brief pages 145-151
from ROA 75 Case File Contents 3-3**

Exhibit 22

0210

JILLYN HESS-VERDON, ESQ. (SBN: 146626)
TODD D. IRBY, ESQ. (SBN: 153485)
HESS-VERDON & ASSOCIATES
1301 Dove Street, Suite 670
Newport Beach, California 92660
(949) 474-5460

FILED
KENNETH E. MARTONE
Clerk of the Superior Court

JAN 1 1 1999

By: M GARLAND Deputy
VISTA BRANCH

Attorneys for Petitioner,
THE TELAH FOUNDATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| In the Matter of the Estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, also known as LOGAN LAHSON<br><br>Decedent. | CASE NO.: PN022228<br><br>PETITIONER'S SUPPLEMENTAL TRIAL BRIEF<br><br>Hon. Lisa Guy Shall<br>TRIAL DATE: January 11, 1999<br>TIME: 9:00 AM<br>DEPT: A |

On January 8, 1999, the Respondent filed a Supplemental Brief addressing issues not raised at any earlier stage in this case. Therefore, Petitioner is filing this Supplement as a direct rebuttal to the assertions made in Respondent's's Supplemental Brief only.

I.

**TELAH IS ENTITLED TO ALL INTELLECTUAL PROPERTY**

**AT ISSUE IN THIS ACTION.**

A. <u>Transfer and Present Ownership of the Intellectual Property To TELAH</u>.

Before departing, the decedents, who together constituted the Heaven's Gate group, transferred ownership of the group's intellectual and other property to the Mark

1

0211

and Sarah King.  This is quite sensible since Mark and Sarah King had already been handling a number of matters on behalf of Heaven's Gate.  This transfer was a mere continuation of the role that Mark and Sarah King had been handling prior to the departure of the decedents.

Not being attorneys themselves, the group used several methods to assure it made a proper transfer of the intellectual property at issue.  First, the Heaven's Gate group sent masters of their book to Mark and Sarah King with writings setting forth their instructions for revising the book, registering it with the Library of Congress (thereby registering the copyright), and publishing it.  The group then called Mark King and, as a group, discussed the book, revisions to it and plans for it, as well as other issues.  Next, numerous members of the Class prepared and executed notarized Powers of Attorney granting all powers to Mark King, with Sarah King and Wayne Parker as alternates in case Mark King could not serve.  Finally the Heaven's Gate group wrote letters and sent keys, codes and other access information making it clear that the Kings were to have sole authority and possession of the property and assets of the Heaven's Gate group, including the intellectual property at issue in this case.

The most clear single document setting forth the transfer of these assets is the letter from the Heaven's Gate pursers.  The pursers were responsible for maintaining all assets (including cash, accounts receivable and real, personal and intellectual property) on behalf of the decedents, which assets are referred to as the "purser task".  Only Mark and Sarah King received a letter from the pursers which begins "You are about to inherit what's left of our purser task."  Throughout the document it is made clear that the Kings can do as set forth, or do otherwise, as they feel is appropriate.

Another letter also makes it clear that Mark and Sarah King, not the various other people who received letters, were the ones with the ultimate responsibility for the assets and intellectual property of the Heaven's Gate group.  The letter to Mark and Sarah King

0212

from "The Class" includes information on the group's storage lockers (where the audiotapes, a truck, and various other items were located), the website and various media issues. Letters to Wayne Parker and Chuck Humphrey included the website information, but did not include the scope of information and instructions provided to Mark and Sarah

In addition to receiving these letters, among the material included in the boxes of material received by the Petitioner were SVHS videotape masters, computer diskettes, writings and other material which had not already been given to Mark and Sarah King; keys and codes to storage lockers, keys, parking garage tickets, title documents and directions regarding cars and trucks; a letter to be forwarded to the group's landlord; passports and identifying information regarding each of the decedents; credit card, phone card, tax return, and personal information about the decedents; and bank account and accounts receivable information (to the extent that the Kings did not have this already). After evaluating the situation as a whole, consulting with others who had received letters and packages from the decedents, contacting other former members of the group, and consulting various attorneys, the Kings proceeded to obtain registration for the copyrights on many of the assets entitled to copyright registration and further began the trademark registration process. The also sought to enforce and protect these intellectual property rights consistent with the law. *At this point the Petitioner is entitled to a presumption of validity of the copyrights in this case.*

**B.** **Respondent's Assertion of Collaborative Work Being The Same as Tenants In Common is Wholly Inaccurate.**

The property of the decedents has never been distinguished by the Respondent as being the property of one specified identifiable individual but has always been treated as "belonging to the loose association of thirty-nine individuals" (Respondent's Trial Brief, page 9, paragraph V; line 20). Since the Public Administrator has failed to provide any evidence of ownership by an individual, then the intellectual property must also be treated

3

0213

1   as "belonging to the loose association of thirty-nine individuals", or more accurately, a

2   collaborative work by the Heaven's Gate group.

3        Initial ownership of a copyright vests with the author or authors of the work 17

4   U.S.C. §201(a).  Ownership of a "work for hire" vests with the person, company or group

5   for whom the work was prepared.  17 U.S.C. §201(b).  **The copyright to a collaborative**

6   **work is jointly held by the group as a whole.** 17 U.S.C. §201(a), (emphasis added).

7   There is no doubt that all this work was a collaborative "work for hire".  In essence, all of

8   the members of the Heaven's Gate group provided contributions to the copyrighted work

9   from time to time, but all with the intent that they were creating these works for the

10  group.  All former members of The Class would agree that individually they did not retain

11  rights to the works they created.  Instead, the group as a whole was the owner.  This is

12  expressed, for example, by indicating their book was "An Anthology by Representatives

13  of the Kingdom of Heaven" and indicating "Heaven's Representatives" on the copyright

14  notice.  This is further indicated by the notice appearing on some videotapes, which

15  indicates "T.O.A." (Total Overcomers Anonymous, one of the names used by the group).

16  The evidence demonstrates that the rights to the material subject to copyright protection

17  in this case were initially vested in the Heaven's Gate group as a whole.

18       To arbitrarily assert that the material is owned as a tenancy-in-common, conflicts

19  with the evidence and the law in this case which pertains to collaborative works, "works

20  for hire", which are created for the benefit of a single entity and not for the benefit of the

21  author or authors.

22  //

23  //

24  //

25  //

26

27                                4

28

HIBBS-VERBON & ASSOCIATES
Attorneys at Law
1301 Dove Street, Suite 878
Newport Beach, CA 92660
Tel: (949) 474-6460
Fax: (949) 474-6470

0214

## II.

### THE PUBLIC ADMINISTRATOR'S FAILURE TO SEEK ADDITIONAL POWERS PURSUANT TO ITS APPOINTMENT AS SPECIAL ADMINISTRATOR CONSTITUTES A BREACH OF HIS DUTIES.

A.   **The Public Administrator Should Have Sought Additional Powers When it Became Apparent That Administering the Craig Estate Would Require More Attention Than Might Have Been Apparent at its Inception.**

The Public Administrator's attempt to evade responsibility for the haphazard manner in which the Craig Estate was administered since its inception is disingenuous, at best. While it is true that the initial court order appointing the Public Administrator as Special Administrator of the Estate of John Michael Craig did specify the Special Administrator's initial duties, the Public Administrator was free to, and in fact should have, sought additional powers consistent with those permitted under Probate Code §8544 once it became apparent that this administration would not be, by any measurable yardstick, routine.

As set forth in detail in the Petitioner's trial brief, the Public Administrator permitted the Estate to languish without taking any aggressive steps to ascertain its true depth, breadth, or value for almost one year. During that time several events transpired which should have prompted the Respondent to seek additional powers from the Court to respond to them promptly and professionally (e.g.: (1) The filing of the Petitioner's Creditor's Claim; (2) The discovery that at least one of the Decedents previously had substantial personal financial assets which, arguably, should have been included in the Estate's valuation; and (3) Discovering that numerous copyright-protected items were in existence, and possibly, the subject of infringement. The Public Administrator should not be permitted to escape responsibility for its passive approach to managing an estate with as many complex facets

5

0215

as this one ultimately turned out to have.

**B.**    The Public Administrator is the Party to This Dispute That is "Trying
to Have it Both Ways."

Contrary to the Respondent's assertions, the only party to this dispute that is attempting to play both sides of the court is the Public Administrator. The Petitioner filed its Creditor's claim for the sole, statutorily-permitted purpose of placing the Public Administrator on notice of its perceived right to many of the Estate's assets. The Public Administrator has never responded to the Petitioner's claim in the manner prescribed by statute. It has neither accepted nor rejected the claim. Further, the Public Administrator has never, as was its right (and, in all probability, duty) filed its own Petition under Probate Code §9860 to determine the true ownership of the Estate's assets, or even sought declaratory assistance from this Court. Consequently, it has fallen on the shoulders of the Petitioner to move this matter along to a decisive resolution. The Petitioner was instructed by the Public Administrator's Office to wait for during the entire first year of administration before taking legal action, then upon hearing of the Public Administrator's intent to sell all items at public auction, was forced to request that the Court intervene. Therefore, the Petitioner has, with all due dispatch, sought to exhaust its remedies; the Public Administrator has not.

**C.**    The Public Administrator's Religious Discrimination Against the
Decedents and Petitioners Has Permeated The Entire Administration of
the Estate and Management of This Case.

Since the fateful date that the Decedents' bodies were discovered there has been a relentless campaign on the part of the mass media and the general public to brand the Decedents as misguided religious zealots whose wishes deserved nothing more than derision. Unfortunately, this same dismissive attitude has pervaded every aspect of the Public Administrator's approach to its task as guardian of the Estate. Throughout numerous written and verbal communications with the Petitioner, as well as the families of the Decedents,

6

HERB-VERDON & ASSOCIATES
Attorneys at Law
1201 Dove Street, Suite 670
Newport Beach, CA 92660
Tel: (949) 474-4660
Fax: (949) 474-4670

1   there have been subtle, as well as overt references to the Decedents' admittedly non-

2   traditional religious beliefs.  It is not the Public Administrator's role to pass judgment on the

3   practices of those whose property is commended to its care; nevertheless, it has done so.

4   Consequently, it has overstepped the bounds of propriety and should be admonished for

5   same.

6                                           III.

7                                      CONCLUSION

8        There is ample factual and legal support for the Petitioner's contentions regarding its

9   ownership of the Decedents' property, and this Court is respectfully requested to issue a

10  judgment confirming its ownership of the Decedents' property.

11

12  DATED:  Jan. 11, 1999            HESS-VERDON & ASSOCIATES

13

14                                   By

15                                   JILLYN HESS-VERDON
                                     Attorneys for Petitioner,
16                                   THE TELAH FOUNDATION

17

18

19

20

21

22

23

24

25

26

27

28

                                      7

RECEIVED

JUL -9 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 | DAVID J. MICLEAN (SB# 115098)
KIMBERLY A. DONOVAN (SB# 160729)
2 | ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street
3 | Redwood City, California 94063
Telephone: (650) 364-8200
4 | Facsimile: (650) 367-0997

FILED

JUL - 9 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6 | Attorneys for Plaintiffs
THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION,
INC., MARK KING, SARAH KING and WAYNE PARKER

7

8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11

12 | THE EVOLUTIONARY LEVEL ABOVE | CASE NO.: CV-98-00892 CRB ENE
HUMAN FOUNDATION, INC. dba THE
13 | TELAH FOUNDATION, MARK KING,
SARAH KING and WAYNE PARKER,

14 | | CONSENT DECREE BETWEEN
Plaintiffs, | PLAINTIFFS AND KATHRYN AND
15 | | CESAR MOREA

16 | v.

17 | RIGHT TO KNOW; The Executor of the Estate
of CHARLES HUMPHREY aka CHUCK
18 | HUMPHREY, KATHRYN MOREA,
LANMINDS and IMPSAT MEXICO,

19 | Defendants.

20

21      Pursuant to a Settlement Agreement, The Evolutionary Level Above Human Foundation,

22 | Inc. dba The Telah Foundation ("TELAH"), Mark King, Sarah King, Wayne Parker, Kathryn Morea

23 | and Cesar Morea (all collectively referred to as "The Parties") hereby agree to be enjoined and to be

24 | required to act as follows:

25      1.      TELAH will distribute the "How and When Heaven's Gate May Be Entered" book,

26 | final version, initial version, and Humphrey version, as set forth in the Settlement Agreement.

27 | Kathryn and Cesar Morea (jointly referred to as "The Moreas") will provide TELAH with copies of

28 | the Humphrey version, except up to 5 personal copies, for this purpose.

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA 94063
(650) 364-8200

-1-

2.     TELAH will provide copies of the heavensgate.com website on disk to The Moreas, who will then prepare a new Videotape CD from the CD's created by Humphrey containing copies of videotapes created by The Class, as set forth in the Settlement Agreement.  The new Videotape CD will be provided to TELAH, which will make copies of the it and distribute it as set forth in the Settlement Agreement.

3.     The Moreas will provide TELAH with one copy of the two CD set of CD's created by Humphrey containing copies of audiotapes of classroom sessions by The Class ("the Audiotape CD Set").  From this copy, TELAH will make a new revised Audiotape CD Set and will disseminate it as set forth in the Settlement Agreement.

4.     The rkkody.com website shall be taken down completely and all e-mail capabilities are to be disabled.  Morea will sign documents and assist as necessary to enable TELAH to do this.  Morea will not maintain a website containing materials of The Class/Heaven's Gate, nor will she assist others in doing so.

5.     TELAH will bring up the heavensgate.com website in the manner set forth by The Class, as indicated in the diskettes left by The Class, except as set forth in the Settlement Agreement.  TELAH will be responsible for paying all costs to bring up and maintain the heavensgate.com website and will have ownership of the domain name and site.  TELAH will be responsible for evaluating and responding to e-mail received by heavensgate.com as it deems appropriate.  As set forth in the Settlement Agreement, once a month for a period of 3 months from the date the heavensgate.com website becomes operable, TELAH will send The Moreas redacted copies of all viable e-mail messages received at the heavensgate.com website and all responses sent to those messages.  Other than the changes specifically set forth in the Settlement Agreement, no other changes shall be made to the heavensgate.com website.

6.     TELAH agrees to send out copies of the "Do's Final Exit," "Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Last Chance to Evacuate Earth Before It's Recycled," "Planet About to be Recycled - Your Only Chance to Survive - Leave With Us" videotapes in their possession at no charge or for the cost of shipping, at TELAH's discretion, to anyone who requests them as set forth in the heavensgate.com website contained in the diskettes left

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA  94063
(650) 364-8200

-2-

by The Class.

7.     The Moreas presently have control over the Right To Know name and postal box. The Moreas can use the Right To Know name and postal box as they wish, so long as such use is consistent with the provisions contained in this Agreement.  On that basis, TELAH will dismiss The Action against Right To Know.

8.     TELAH will have exclusive rights and responsibility for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's, websites, letters, other documents, names and symbols.

9.     The Moreas have made certain representations and agreements with respect to the Heaven's Gate material in their possession, as set forth in the Settlement Agreement.  With respect to the Heaven's Gate material with The Moreas are entitled to maintain in their possession under the Settlement Agreement, The Moreas agree not to copy, distribute or disseminate any of this material or show or give it to anyone other than themselves.  The Moreas agree this material is to be maintained and used only as set forth in the Settlement Agreement.  Should The Moreas locate any additional material  which they are not entitled to maintain under the provisions of this Consent Decree and the Settlement, Agreement they will promptly send that material to TELAH.

15.     The Parties hereby submit to the jurisdiction of the United States District Court, Northern District of California, for purposes of enforcement of Decree.  The Parties agree to execute any and all documents necessary to effectuate the provisions of the Settlement Agreement.

Dated:  _7-1-99_

_____
TELAH, by its President, Mark King

Dated:  _7-1-99_

_____
MARK KING

Dated:  _7-1-99_

_____
SARAH KING

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA  94063
(650) 364-8200

-3-

1   Dated: 7/1/99

2

3   Dated: 6/21/99

4                                  WAYNE PARKER

5

6   Dated: 6-21-99-                KATHRYN MOREA

7

8                                  CESAR MOREA

9   Dated: 7/6/99                  Approved as to Form and Content

10

11                                 KIMBERLY A. DONOVAN
                                    Attorney for TELAH, Mark King, Sarah King
12                                  and Wayne Parker

13   It is so ordered.

14

15   Dated: 9-9-99

16

17

18                                 CHARLES R. BREYER
                                    JUDGE, UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA  94063
(650) 364-8200

-4-

# Exhibit 23

## Attachment A - Petitioners description of Property they claimed

## ATTACHMENT "A"

Prior to the Departure )or death, in layman's terms) of Ti Do, also known as Marshall Herff Applewhite (hereinafter referred to as "Ti Do"), the spiritual leader of the group variously known as Heaven's Gate, Heaven's Representatives, the Class, Total Overcomers Anonymous, T.O.A., Total Overcomers Monastery, Telah Services, Higher Source Contract Enterprises (hereinafter referred to as "the Class") made a then present gift of the following properties to Mark and Sarah King, former members of the Class, to do with as they saw fit in the cause of perpetuating the teachings of the Class.  It was an absolute completed gift set forth in writings and by the delivery of keys to vaults and storage units where certain of these properties were stored by the Class.

The properties are as follows:

1.   audio and video tapes of the teachings of Ti and Do (or Bo and Peep), the Older Members of the Class, including the following:

> "Beyond Human-The Last Call" - Sessions 1 through 12
> "Do's Final Exit-Students Of Heavens Gate Expressing Their Thoughts Before Exit"
> "Last Chance To Evacuate Earth Before It's Recycled" "Planet About To Be Recycled-Your Only Chance To Survive-Leave With Us"

together with all copyrights therein.

2.   All drawings and figures of beings on the Higher Level, including, without limitation, "The C.B.E. (Celestial Being Entity)" and the copyrights and trademarks therein.

3.   All symbolic patches, emblems and other insignia of the Class, including, without limitation, "Heaven's Gate Away Team Patch" and all trademarks and copyrights therein.

4.   All books, pamphlets, writings and other written material of Ti Do and the Class, including all versions of that certain book entitled "How And When "Heaven's Gate" (The Door To The Physical Kingdom Level Above Human) may be entered - An Anthology Of Our Materials" and the copyrights therein.

1

5.    All vehicles left at the site of the Departure including the 20 foot Yellow Truck, Handicapped Van, Blue Ford Van and indicia of ownership of said vehicles, including the Certificates of Registration.

6.    Bank accounts and cash left at the site of the Departure.

7.    Accounts receivable owing to the Class under its various trade names, including the following amounts owed by the following companies or persons:

       QwikCap
       4755 Oceanside Boulevard
       Suite 130
       Oceanside, CA 92056
       Contact: Spencer C. Elliott
       Tel.#: (619) 631-5280
       Fax #: (619) 631-5285

       Amounts Owed:   $9,400.00 (due 3/14/97
                       $4,750.50 (due 3/28/97)

       Btek Computer Services
       3802 E. University, Suite 5
       Phoenix, AZ 85034
       Contact: Stan Babowicz
       Tel.#: (602) 470-0705
       Fax #: (602) 470-0753

       Amount Owed:   $3,750.00 (overdue since December 1996)

8.    Entire contents of rental house at 18241 Colina Norte, Rancho Santa Fe, California 92067, at the time the departed bodies were discovered.

9.    Entire contents of rental storage units #241 and #147 at Private Storage Systems, 2421 Barham, Escondido, California, as left on March 23, 1997 (with the exception of Sam Koutchesfahani's exercise equipment).

10. All other properties, including, without limitation, securities, bank accounts, businesses, tax refunds, medicare or medicaid payments, and any and all other property or things of value, or otherwise, belonging to the Class, wherever situated.