UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc.<br><br>Plaintiff,<br>v.<br><br>Steven Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-JD-MGG<br><br>FILED<br>OCT 06 2023 - PM03:54<br>US DISTRICT COURT<br>Northern District of Indiana<br>Chanda J Berta - Clerk |

# Defendants Response to Plaintiffs Response to Defendants Motion to Require Plaintiff's Provision of Defendants First Request of Documents

I. **Defendant's Responses to Plaintiffs Section Defendant. FACTS A. Plaintiff's Objections and Responses to Defendant Havel's First Requests for Production**

Plaintiff asserts: "Contrary to Defendant Havel's assertions, Plaintiff has not flatly refused to produce documents, but rather, Plaintiff has indicated that it will not produce certain responsive documents without a protective order in place in light of Defendants' willful and ongoing infringement of Plaintiff's intellectual property."

Defendants Response: There is zero evidence of "Defendants' willful and ongoing infringement of Plaintiff's intellectual property." because nothing of the sort is happening or will happen, thus no basis for a protective order to simply produce these basic documents that are already part of the public record but Defendant wants to be able to be admitted as evidence without Plaintiffs challenging the a documents authenticity.

Defendant is opposed to a Protective Order to enable their provision of Defendants Document Requests.

Plaintiffs have no Trade Secret. They give away the Heavens Gate Book that is posted on the Heavensgate.com website and have never heard of Plaintiffs selling the Beyond Human Series of Video's or other videos to a degree of needing to protect Trade Secrets.

**II.     Defendants Responses to Plaintiff's Specific Objections to Document Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, and 17 :**

"Plaintiff timely responded and objected to Defendant Havel's document requests and indicated that it would produce responsive documents to requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, and 17 by September 20, 2023, but only upon entry of an agreed-upon or Court ordered protective order. [DE 142]."

A.     **Re: Document Requests 1, 2, 3, 4, 5, 6, 7, 8 and 9** all have to do with Requesting Plaintiffs supply the documentation Plaintiffs provided to the copyright office to register the 486 Audio tapes (Audio Works), the 7 Beyond Human - The Last Call Video's (Video Works), Book Manuscript entitled, "How and When "Heaven's Gate" (The Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials and the C.B.E. (Celestial Being Entity) Lithographic Print.

Since Plaintiffs are not the Creators of any of the Groups Intellectual Property, for each of these three bodies of information Plaintiffs copyrighted Defendant asked for the documentation they supplied the copyright office, in particular to Section 4 of the registration, that Plaintiffs had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author to the Telah Foundation.

These requests also seek documents to prove the Authors (Heaven's Gate Group's) "work for hire" status, insinuating as Mark and Sarah King did in Judge Lisa Guy-Schalls Court that they should be seen as members of the group, thus having rights to their Intellectual Property as "works in common", which if that is the context of Mark and Sarah King having some claim to authorship, it would also include me and co-defendant Jason Bartel and other's who could be verified former members.

Regarding the Audio tapes, Defendant wanted to see the exact detailed lists of the 486 audio tapes submitted to the copyright office and in what form those "tapes" where as Defendant doesn't think they were digitized by then, except for what Rkkody had digitized that he sent to Defendant and provided to co-defendant Bartel. The two Lists Plaintiffs gave to the Court upon the Courts order was a mockery of the Court Order and are full of errors and even missing tapes so it's highly in question whether 486 tapes were actually submitted. For example there are some listings that other logs indicate there is a "missing tape" for but is in the lists Plaintiffs provided.

Defendant doesn't know why any of these document requests would show any justification for a protective order. Perhaps Plaintiffs need to be specific to which documents that might apply to and why. Here is one idea:

According to Judge Lisa Guy Schall's Decision, Plaintiffs then as Claimants provided Powers of Attorney to the Court which Defendant have the court documents that show but Judge Guy Schall noted they were of no value because in California, they were voided upon the decease of the Members of the Group. If those are the documents Plaintiff wants to be under a protective order because it reveals the legal names of the deceased members of the Group, it's totally moot as their legal names are already part of the public record as Defendant have them from the Court and they have been part of the information that has been circulating around the internet for over two decades that were not provided by me.

B.    **Document Request 10 (4 Letters):** These 4 Letters were sent to Plaintiff from DO and Crew with their FedX packet that arrived on March 25, 1997 that consists of their final instructions/guidelines for those former members who wanted to serve at their departure time.

3

Defendant have had them for many years but again Defendant want them because though they have been filed with the Court in my Answer/Defense/Counter Claim Defendant want to be sure they are authenticated. Defendant don't believe any contain legal names or account information or bank accounts or anything else that could pose a security risk to Plaintiffs as the accounts and Storage Units and codes and locations are all long gone. Plus Mark and Sarah King themselves provided some of them in their filing in Judge Lisa Guy-Schall's Court.

However, if Plaintiffs find any parts that are questionable, then black those parts out, though that should not be an excuse to black out more than necessary because mostly Defendant want these letters for the demonstration of what was DO's intention for their Intellectual Property and their desire for it to be disseminated which Plaintiffs seeem to usually ignore.

These Letters also shows DO and Crew's suggestions to use Rkkody's significant involvment in getting all of storage (where the audio tape cassettes were) loaded into a truck, something that Plaintiffs ignored in all three Court Cases, slanting what they did record as pointing them them, nearly alone as to whom The Groups Intellectual Property was left for. In fact it can be shown also in these Letters, including Rkkody's, that Rkkody was given as much or even more responsabilities regarding the Intellectual Property than Mark and Sarah King were given yet Mark and Sarah King even depicted him in the Guy-Schall case as a "3rd party" whom they were suing, claiming he had only a commercial interest in the Material, when that was not at all true, which Rkkody's manuscript he wrote at that time corroborates with co-Defendant Bartel's account from working with Rkkody in 1997-1998. Defendant am not exaggerating but that is part of what is revealed in having the Court records and in these Letters which is why Mark King and Sarah King don't want this Court to see them.

C. **Document Request 11 - Judge Guy-Schall Court Documents:** Again, these are all in the public record and are easy to obtain and Defendant possess them because a friend bought them from the Courts database website where many of the court documents had been digitized.

4

These provide evidence of Mark and Sarah Kings presentation of their copyrights they are using in this case and how the attorneys for the Public Administrator on behalf of the Probate case for San Diego County produced documents that led to the ruling by Judge Lisa Guy Schall, that found Mark and Sarah King as Claimants had no legal claim on any of the Groups physical or Intellectual Property from the Estate and from the Storage Rooms the County had confiscated and hoped to sell in an auction to raise funds to pay the County's bills and to provide some relief to families of loved ones who were among the 39 deceased members of the Heaven's Gate Group.

These also show why Judge Guy-Schall decided to Settle with Mark and Sarah King, who were fined for filing a frivolous lawsuit and had to pay their own and their Counties court costs and another $2OOO.OO for the Intellectual Property, a 3rd Party, Mark and Sarah King hired to assess the value of the Intellectual Propergy, said was "nil". If Defendant recall Mark and Sarah King spent over $300,000.00 to come away with the contents of storage where the audio tapes were stored by the Group.

There are many additional parts of these documents that are evidence Defendant will use in our Jury Trial because Mark and Sarah King frequently stretched the truth and/or omitted certain parts of the story to create the scenario they wanted to try to win their cause.

D. **Document Request 14 of 9 documents from the Judge Richard Breyer Case:**

These requests detail many of the documents filed in that case by Plaintiff and by Defendant Kathryn Morea (Rkkody's Daughter). Defendant has listed 9 documents. Again Defendant would like them all to be entered in to the public record and to be authenticated so that could be done. Defendant have them and if Plaintiff agrees they are authentic and doesn't seek to keep them from being in this cases public record then we can simply agree that Defendant will file them and then there is no need to receive new copies of these documents from Plaintiff.

Perhaps one of the most important of these documents is listed in my Document Request as 14 (b and c) Judge Breyers Consent Decree and the Judges Settlement Agreement that appears to have been sealed that provides details of the Consent Decree that Defendant have from the memory of co-Defendant Jason Bartel includes that Plaintiffs needed to disseminate the audios and other works directly to "verified former members" of which Defendant clearly is as is co-defendant Jason Bartel.

E. **Document Request 15** - Emails between co-defendant Cathy Weaver and Mark King and/or Sarah King before the lawsuit was filed.

These show how Plaintiffs didn't tell someone who had requested to listen to audio tapes that they had anything copyrighted. Why wouldn't they say that. Instead they warn Cathy Weaver not to share them with anyone else. This is important to my Defense and Counter Claim to back up what Defendant've been saying for years, that they act like they have copyrighted everything when they don't and perhaps that's because Judge Guy Schall ruled they had no legal jurisdiction for having copyrighted anything from the Heaven's Gate Group.

Again, Defendant want these for authentication since none of these were in Plaintiffs Initial Disclosure.

F. **Document Request 17**: This request was for Emails between Rep@heavensgate.com and/or Crown1@cox.net (Plaintiffs) and Sawyerhg@yahoo.com (Defendant Stephen Havel) for years before the lawsuit.

Defendant has most of them and they show nothing being said about Plaintiffs having copyrights and/or trademarks that goes to my Laches and Delay Affirmative Defense.

Defendant do not agree with needing a Protective Order from the Court. Most all of Defendants Requests are mostly for authentification of documents and are most all are already been part of the public record for even decades.

Even if the Court determined to order a protective order Defendant would argue the scope of such an order only pertain to certain of the documents requested as most show no justification for such an order.

III. **Plaintiffs state that some of Defendant's Document Requests were already provided:**

In response to some of Defendant Havel's requests, Plaintiff indicated where, in the current record, the requested document had already been provided (requests 16, 22, 23, 24, 25). [DE 142 at 21, 25, 26, 27].

A. **Document Request 16 is withdrawn**: Cease and Desist and Proposed Legal Agreement on Use of the Heaven's Gate Intellectual Property served on Havel and Weaver in person in November of 2021 is withdrawn.

Defendant wanted Plaintiffs to authenticate this document which Defendant supposes they just have by referring to DE 142 where Plaintiff provided the reference to co-Defendant Cathy Weaver's Answer (Dkt. 26-1) as Exhibit 11.

B. **Document Requests 22, 23 and 24:**
Plaintiff indicated where, in the current record, the requested document had already been provided (requests 16, 22, 23, 24, 25). [DE 142 at 21, 25, 26, 27].

7

Plaintiffs refuse to provide these log file requests, (document requests 22, 23 and 24 noted below, even though it would be very simple for them to do, so is yet another smoke screen to showing us what they have because they may have doctored them as Defendant have considerable evidence of.

**C. Document Request 22 - Document - Audio Tape "master log"**

(the existence of which is evidenced in point 22 below) (Correction: the Master Log existence is evidenced in point 23 not 22):

D. **Document Request 23**: Email Document: On Nov. 24, 2021 rep@heavensgate.com (Plaintiffs Mark King and/or Sarah King) responded to Cathy Weaver (cathysouthwestern@gmail.com), with the subject "Coming to Agreement," addressed to Cathy and Sawyer, filed with the Court as DE 26-10) (Weaver's Answer to Plaintiffs Complaint against her, Exhibit 10.

In this email Plaintiffs refer to the "master log" in particular:

-On page 84 of Cathy Weaver's Answer to Plaintiffs Complaint, in Exhibit 10 (DE 26-10 at 5c.), rep@heavensgate.com (Plaintiffs Mark King and/or Sarah King) wrote a reference to: "…audio tape # 918 (master log #1039) ("Links returning after 20 days – 4/18/96")…" that shows these two different tape numbers with a Description referring to the same Audio Tape.

Plaintiff refers to their response in DE 142 at page 25, 26 and 27:

"Plaintiff objects to this Request to the extent that it is vague, ambiguous, or otherwise lacks sufficient precision to permit a Response. Plaintiff has filed multiple logs with the Court and directs Defendants to those documents."

**Defendant's Response**: This is exactly yet another reason Defendant abolutely knew, the only way Defendant would get anything from Plaintiff was by getting a new court order.

8

(a.) There is nothing vague or ambiguous about these log file requests. Plaintiff knows exactly what the "Master Log" is. Plaintiff knows exactly what the Rkkody log file is.

Plaintiffs were given Rkkody's log file from Rkkody.com by Judge Breyer in 1999 through the log file Kathryn Morea possessed on Rkkody's CD's that she got from Rkkody as his daughter.

Plaintiff knows exactly what the Jhnody logfile is as they gave it to Jhnody who gave it to me that Defendant posted on my blog.

(b.) There is nothing in a log file request that shows to "lack sufficient precision"?

Plaintiffs provision of two tape logs is what lacks precision by many evidences:

Plaintiffs provision of two tape logs was clearly tampering with evidence. Plaintiffs said they had their lawyers listen to a few tapes they and determined that it was too big a job to construct a log file with descriptions besides "Various Discussions" on every one of the so called 1082 audio tape files. All the audio tape cassette have a very brief description on them. Though Defendant wasn't in the Group after September of 1994 Defendant was on the tape making crew before then and that crew always made a label after each meeting tape was made by DO. Mark King himself sometimes ran the tape recorder.

When one looks at the logs we have from Rkkody they have fairly brief descriptions but specific to the real content of the tapes not ever "various discussions".

When one looks at the logfile Jhnody sent to Defendant that came from Mark King and Sarah King one observes that it has even more thorough descriptions than were on Rkkody's log file and the tape log with those tapes are even more characters than can fit on a line, probably the work of Dave Goetzinger who Mark King and/or Sarah King worked with to digitize many of the tapes as best Defendant can tell from communicating with Goetzinger some years ago.

Plus when one looks at the Jhnody log file it was rare that a month went by over 15 years that there weren't a number of meetings in, yet the Jhnody log file ends in January of 1997 and we know there were more tapes because when Jhnody gave the 930 or so to me and Mark King and/or Sarah King

found out, they reprimanded him for doing so, in an email Jhnody shared with me and Mark King and/or Sarah King wrote to him and said he wouldn't get any more tapes.

Yet the so called tape logs Mark King had his lawyers created (so Defendant bet he could then blame errors on them), the last tape has the same date as #1082 in the Jhnody logfile but in Jhnody's is numbered 1061, the number Mark King said in my youtube 3spm chatroom was the amount of tapes he had, which Defendant have submitted as evidence.

So for over 1 1/2 months from into January to March when they exited their human vehicles they made no audio tapes which is very, very unlikley. Is it possible, yes but not probable.

Defendant was able to calculate that some 21 tapes are missing, which perhaps that's the difference between 1061 and 1082. One of the early logs lists a tape log entry was a "missing tape" so Defendant am not blaming Mark King and/or Sarah King for those missing tapes. Defendant know there were tapes that stopped working or the tape got stretched too thin by watching it alot and even doing so in the transcribing meachines we had while Defendant was still in the classroom Group.

But Defendant has noticed and a friend has noticed that most of the problems with the numbering system seemed to start in tapes with the year 1996. There are quite a few. This casts a very dark deceitful light on everything Mark King and Sarah King say.

Defendant would suggest strongly that Plaintiffs are hiding something important to my case, by their refusal to show us the Master Tape log and the other logs on Rkkody's CD (they were given by Judge Breyer that Defendant Havel and co-defendant Bartel both have had since 1997) and the handwritten logs that came with each box of tapes made by The Heaven's Gate Group, that Rkkody had and gave to Crlody - co-defendant Jason Bartel, who gave me a copy of.

It makes one wonder if Plaintiffs have doctored or removed certain descriptions, like to some tapes where TI and DO talked about them in a way that was not flattering. Defendant have found one such tape description when comparing logfiles.

Mark King and Sarah King were at first gifted with the tape division task and they seemed to intend to perform that task but then something changed and they persecuted Rkkody for disseminating the tapes he retrieved from Storage, a task Mark and Sarah King were supposed to be primaries on that they instead weren't even secondaries on, passing on the primary part of the task to Rkkody and Oscody who DO and Crew said could help Mark and Sarah (Mrc and Srf).

Judge Lisa Guy-Schall said Mark and Sarah King were to protect the tapes. Maybe they have done so to some degree but now Defendant hope it's time for them to share that task equally with at least Jhnody, Jason Bartel (Crlody), Havel (Swyody) and Cathy Weaver and the few other former members and even new believers because Mark and Sarah king are preventing hundreds of people from being able to have the Religious Freedom and Freedom of Information to have access to the tapes in a common law way, thus non-profit, but it can't be all in Mark King and Sarah Kings hands as they have gone against the wishes of TI and DO for the audio tapes by many proves in the tapes themselves.

(a.) Why didn't Plaintiffs supply their Master Log we know from the evidence in Document request NO. 23 exists?

Does that "Master Log" contain descriptions as "various discussions"?

Was no tape log provided with their copyright application?

Why is it that Plaintiffs cited Defendant as having infringed on their copyrights with Defendants sawyerhg.wordpress.com blog post, as recorded in Plaintiffs own Complaint (DE 1 and DE 132 Amended Complaint, as Exhibit H) that is a log file of tapes numbered 1 to 930, the very tape log Plaintiffs sent to Jhnody (that Jhnody will testify to and that Defendant can verify Jhnody sent to me) with the digitized tapes where each had a full description?

**Defendant ask the Court to please order Plaintiffs to provide the Master Log, the Log they got off of Rkkody's CD's and the logfile Defendant'm calling the Jhnody log that Jhnody sent to Defendant.**

By the way, though Plaintiffs weren't happy with my circulating Heaven's Gate Material, they said they let it slide for over 15 years, yet when Defendant starts playing audios from what Jhnody sent Defendant that Defendant didn't have before that, it brought on many threats with lawsuits and huge fines for anyone who had them and even threats of jail time for infringers yet still didn't show their copyrights and trademarks until the suit months later.

IV. **Response to Plaintiffs Objections to Defendants Document Requests 12, 13, 18, 19, 20, 21 and 26** saying: "Plaintiff also indicated that it stood on its objections and would not produce documents responsive to requests 12, 13, 18, 19, 20, 21, 26, primarily because each of these requests are directed at information that is outside the scope of discovery and outside what is required by the Federal Rules. [Id. at 17, 18, 22, 23, 24, 25, 27, 28]."

A. **Document requests 12 and 13 have to do with the CBE Lithographic print** and other images painted by Ollody that Plaintiffs are claiming to have copyrighted, so are not at all outside the scope of discovery for Defendant to have that evidence for Defendant's defense?

**Document Requests 12** - Olliver Odinwood - Ollody's copyrights from 1982 of C.B.E. (Celestial Being Entity):

Some of the documents revealed in the Judge Guy Schall case from 1999, in Exhibits, lists the contents of the storage room the Group left behind that San Diego County confiscated. That's how Defendant learned of the Copyright of the 14 Acrylic paintings created by Ollody under the pen name of Olliver Odinwood, which Defendant knew from first hand experience observing Ollody while he was painting those 14 paintings included the original of the C.B.E. Lithographic Print that had been gifted by DO and Crew to Mark and Sarah King before they left this world but without providing any rights to copyright it.

**Defendant can't imagine this Request is "outside the scope of discovery and outside what is required by the Federal Rules."**

(12.

Plaintiffs copyrighted an image they were gifted that they had no hand in creating and then copyrighted that C.B.E. print and are suing me for using the digital image Defendant got from Rkkody's CD's he common law copyrighted, with two others like it and put that included doing what Rkkody was doing by putting it and other images on T shirts for my personal use and for sale because Defendant wants people to see that image as it shows an image that gives a far more positive image of an Older Member of the Kingdom of Heaven than the way that type of image is often depicting space aliens that are ugly and insect and evil looking, etc.

Discovery is for either parties to have an opportunity to build their case stronger by getting information from the other party for their own case. The "Counts" against Defendant are the backbone of the case against Defendant. Leading up to the listing of the Counts was paragraph 54 in DE 1, Plaintiffs Complaint and DE 132 (Amended Complaint) that states:

"54. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images owned by the including "The C.B.E. (Celestial Being Entity)" and routinely use this image in on their YouTube channel and on t-shirts being sold by Co-Defendants Steven Havel and Cathy Weaver." Leading to:

"COUNT IV - INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA000877834
86. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images registered as VA000877834 entitled "The C.B.E. (Celestial Being Entity)" (the "Visual Work") which is owned by the Foundation and has been owned by the Foundation continuously since 1997."

It should be a major defense that Plaintiffs had no right to copyright this image.

Incidentally Defendant never had a real plan to make plush dolls. It was simply an idea we ran by Mark King and Sarah King that they couldn't imagine approving, one of the first of many nails in the coffin of our working together.

B. **Document Requests 13** - List and pictures of all 14 of Olliver Odinwood - Ollody's copyright acrylic paintings

This will provide the primary evidence that the C.B.E. Image is one of those 14 paintings. Defendant know it is because Defendant was in the Group when all 14 were painted by Ollody. Mark and Sarah King also were in the group then. They might not have known they were copyrighted then but given their responsibilities in the Group they likley did know and that's why Plaintiffs didn't check the box that indicated the image had been copyrighted before and didn't list the correct author and/or that it was a "work for hire" by Total Overcomers Anonymous TOA.

They don't want to provide it because they are guilty of copyrighting an image that had been copyrighted by it's creator Ollody in 1982.

Furthermore Defendant requested all 14 images (that by the way Defendant already have because Rkkody included some of them on his website rkkody.com that he gave to me in 1997, when he used them to raise funds so he could disseminate the audios and video's and their Book for free) because when Mark King gave a lengthy interview with a website called, Bardo Methodology somehow another of Ollody's paintings was shown on the article, the one with an Older Member of the Next Level coming down a light ramp out of a space craft, another part of the Movie Script - The Meeting, and on the image, it had a "Copyright - The Telah Foundation". Defendant have never seen evidence that Mark and Sarah King and their Telah Foundation have copyrights of that other image but they have told me they do which was not true.

Defendant think Plaintiffs made a big mistake to copyright that C.B.E. image and that also surfaced in Judge Lisa Guy Schalls Decision and no one has confronted them until they pushed the issue by prosecuting me for using the C.B.E. image and Defendant want all this to be settled. If they legally have the rights to copyright any of this material, fine but if not then they are available for me to use, not to make money with, but to show people what TI and DO and Crew did though Defendant would like to put them on T shirts for sale so Defendant can wear them to show off their artwork. DO even talked about selling certain things to support the effort of sharing their information with people.

C. **Document requests 18** - Email documents between Plaintiffs email addresses; rep@heavensgate.com and/or Crown1@cox.net and Dave Goetzinger who was an officer in the Telah Foundation while he was also communicating with me via email.

My reason for wantings these emails is very straight forward. They might shows how Dave Goetzinger, who was working for Mark King and/or Sarah King with some arrangement, was given access to most or all of the audio tapes to digitize them and also worked on the Beyond Human – The Last Call Video Series and contains information important to my defense, like showing that they talked to him about having copyrights but never to me until this case was filed. Plus Dave Goetzinger might know why the audio tape Lists Plaintiffs presented to the Court were so full of errors of all kinds so can not be considered authentic lists of what was copyrighted.

D. **Document Request NO. 19** Electronic Media – Content of Rkkody's Right to Know CD's

Defendant didn't do a good job in wording this Document Request. Defendant didn't want that actual content of the CD's. Defendant wanted the table of contents of the CD's from Plaintiff since they were awarded them and ordered by the Court to remove Rkkody.com website code and data from them as Defendant understand it and then to distribute the remainder of the content that on Defendants CD's left some 200 audio tapes in .rm (real player) format and the 7 Beyond Human series audio tracks.

Receiving this table of contents of these CD's that contain the audio tapes is definitely within the scope of this Discovery request.

Plaintiffs won possession of these CD's in the Judge Breyer Case and were ordered by the Consent Decree to Disseminate them but have refused to do for over 20+ years that pertained especially to the audio tapes. Defendant understand that Plaintiffs were ordered by Judge Breyer to send the content of the CD's to "verified former Members" of the Group (of which Havel and Bartell are and can prove)

with no stipulations as to Defendants use of said Material. Thus Defendant should on this point alone have the right to copy those 200+ audio tape files and give them to others.

Mark King and Sarah King are therefore in breach of following Judge Breyer's Court Order.

E. **Document Request No. 20** - This request is a repeat of Document Request 12 so is redacted.

F. **Document Request No. 21** - This document is redacted as outside the scope of this Discovery like Plaintiffs claimed.

26. Emails between Plaintiffs and Francisco Falcon, (aka Juan, Jhnody) - Defendant reexamined this Request and determined that these emails are not important to my Defense. Defendant has his emails with Mark King and/or Sarah King. So Defendant is redacting this Request.

G. **Defendants Response to Plaintiffs Section I.B.** Defendant Havel's Motion to Compel and Subsequent Filings:

It is agreed that Defendant wants to authenticate most of the documents in Defendants subsequent filings but that is primarily because of Plaintiffs lack of cooperation in the provision of their Initial Disclosure and opinion that these two previous Court Cases have no value to Defendants current case. Authentication of documents are very important to Defendants Defense and Counter Claim: Plaintiffs have already denied co-defendant Jason Bartel's filing of one of these documents that shows why their copyrights were considered by the Court to be even potentially "fraudulently" obtained by Plaintiffs, which Defendant have quoted in a number of documents. That is the reason Defendant've asked Plaintiffs to provide these documents that they did not disclose in their Initial Disclosure but they certainly must have.

These past Court cases are extremely relevant to Defendants Defense and Counter Claim:

16.

Most of the files have been obtained by Defendant because they are already publicly available, provided by the very Courts that held the trials that provided Decisions and Settlements to Plaintiffs, including the very Consent Decrees Plaintiffs cited as a large part of their legal criteria for having rights to "all" the Groups Intellectual Property, so these requests are absolutely relevant to this current case.

The Document Requests Defendant made that ask for Plaintiffs legal basis for obtaining copyrights and trademarks stems from Plaintiffs Complaint: DE 1 and DE 132 (amended) paragraph 8 where they overstate what they were given by the Group:

"8. In 1994 the directors of the Foundation renewed a long-standing relationship with a group known as "Total Overcomers Anonymous", "TOA", or "Heaven's Gate" (the "Group"). Three years later, in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County."

Defendant have a great deal of evidence Mark King and Sarah King didn't receive "all the physical property and intellectual property belonging to the Group" and especially without any legal "transfer" from the Group and were only gifted part of the Groups Intellectual Property that was in Storage with the stipulation from DO and Crew that they wanted them to "divide" what was in Storage (the audio tapes, etc.) among those who were inclined to "Disseminate our Information" a Project they have only done minimum parts of and done next to nothing with the 1000+ audio tapes and instead are doing the complete opposite trying to stop me and co-defendants from disseminating what they were gifted to gift to others.

Here are two paragraphs where Plaintiffs refer to the two Court cases as most of the basis for their legal right and/or ownership of some of the Groups Intellectual Property. These two paragraphs are from Plaintiffs Complaint: DE 1 and 132 (Amended Complaint):

"10. From 1997–1999 the Foundation was involved in litigation with San Diego County (who represented both the County and the estates of members in the Group) over ownership of the

17.

Property. That litigation ended with the entry of a consent decree in 1999, which conveyed to the Foundation not only a large amount of physical property, but also all of the intellectual property rights belonging to the Group."

Again, this is untruthful and exaggerated because at least 6 other individuals received a large amount of the Groups Intellectual Property, namely Jhnody - Francisco Falcon and Rkkody, Charles "Chuck" Humphrey, but also Oscody - Wayne Parker, Flxody and Ablody, Lorraine and Able Snelson and Neody - Rio D' Angelo, though Defendant don't know exactly what Intellectual Property Oscody, Flxody and Ablody and Neody received but know that Jhnody and Rkkody received in their FedX packets on or about March 25, 1997 a list of the others who had received "similar packets". Jhnody received Blue Books, the master originals for the Beyond Human Video Tape Series with instructions/guidelines to copy them and send them to the media or anyone he wanted to. He also received Away Team patches and the code and data for a working Heavensgate.com website should the first one be taken down. Rkkody received the masters for the 4 Exit videos, the code and data for three websites to include the account information to manage the site, Blue Books, Away Team patches, Beyond Human video tapes and other documents no one else received that he posted on rkkody.com.

So why did Mark King and Sarah King give the Courts the impression in this case that they alone received "all of the intellectual property rights belonging to the Group". Did these others not have any rights to the Intellectual Property they were sent by DO and Crew.
Plaintiffs went on to file in their complaint that:
"11. A second lawsuit, filed in 1998 also ended in a 1999 consent decree which likewise confirmed the Foundation's ownership of, inter alia, the intellectual property of the Group"

In fact both these lawsuits were operating at the same time on much of the same general body of Intellectual Property which seems to me to be a jurisdiction conflict for one not to inform the other of the same kind of action.

18.

Mark King and Sarah King went on to persecute Rkkody for his doing what DO asked him to do - disseminate DO and TI's and Crews Information. Mark and Sarah King really took the position that they were the "kings" - pun intended and treated Rkkody as a "third party" who was only interested in commercializing the Heaven's Gate information which was a complete fabrication. Co-defendant Bartel who was working with Rkkody in 1997 was well aware of the harrassing Mark King and Sarah King were putting upon Rkkody and his partner Gnrody that both Rkkody and Gnrody communicated to me but Defendant didn't know how to sort out and wasn't interested in what Defendant might do.

Skip forward to 2023 where Mark King files with the Court:

"Plaintiff, which is a not-for-profit organization, acquired the intellectual property rights related to these works and trademarks in or around 1999, following the passing of the 39 Heaven's Gate members and after a lengthy court battle. [King Declaration, Exh. A, at ¶ 8]"

So when did he get the Intellectual Property Rights? Remember from the Complaint they said,

"...in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County."

So somehow it was only 1999 when the Kings received the Intellectual Property Rights via court battles but they received the Intellectual Property itself in 1997 in person or from Storage. So the Courts gave them the "rights" but the Group transferred to them their Intellectual Property (without Rights) in 1997? Claiming many of my Document Requests are irrelevant or over burdensome is yet another smokescreen as most of these requests are from the very Court cases that resulted in two Consent Decrees that Plaintiffs erroneously now claim is the basis for the alleged transfer of Intellectual Property to Plaintiffs from the Group, when the group left years before those Consent Decrees and one of the very same Court cases "decided" Plaintiffs had no legal justification for their copyrights (Judge Guy-Schall) and in the other court case under Judge Richard Breyer that they were ordered to actually disseminate the audios and video's to others including primarily "verified former members" without any stipulation as to what those who received them could or could not do with them.

Had Plaintiffs not referred to both Court Cases as a big part of their support of this lawsuit, then these documents would be largely irrelevant, but they did as will be shown below to be most relevant.

Neither are any of my Document Requests for the documents from those two court cases burdensome for Plaintiffs to provide as they were all digitized by the Courts and were provided most of by a friend who bought them from the Courts own database and gave them to Defendants. If Plaintiffs would simply verify that they are authentic then Defendant would simply add them to the evidence list Defendant will draw on for his Defense and Counter Claim.

*Stephen Havel*      dated October 6, 2023

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

Defendant