UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION

The Evolutionary Level Above Human, Inc.

d/b/a The Telah Foundation, an Arizona

nonprofit corporation,

     Plaintiff,

v.

Steven Robert Havel,

Cathy JoAnn Weaver,

Jason Bartel,

     Defendants.

CASE NO. 3:22-CV-395-JD-MGG



-FILED-

OCT 3 0 2023

At _____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## BRIEF IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS TO PRODUCE

## HAVEL'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

The following Brief supports the Motion to Compel Plaintiffs to produce Defendant's Second

Request for Documents. Plaintiffs have compiled many boilerplate general objections to both

of Defendant's Requested first and this Second Request for Documents. Despite rhetoric

Defendant contends Plaintiffs are Abusing Discovery and denying Defendant's rights to reveal

a plethora of Admissible Evidence to Defendants Defense and Counter Claim.

## I. **General Reason's All Document Requests Should be Granted**

1. **Many of the First and this Second Request of Documents are already in the public**

**record.** Defendant Requests some of the Documents to authenticate them for trial. If Plaintiffs

would agree not to challenge the Case Files Defendant possesses, that Defendant would gladly provide to Plaintiffs poste haste, then the only files Defendant would be Requesting would be the Three Letters they filed with the Court whose details were not in the Case files Defendant possesses, those sent by the Heaven's Gate Group to Rio D'Angelo (Neody), Oscody (Wayne Parker) (Deceased) and to Lorraine Snelson (Flxody) (Deceased) (see Section III Document Request No. 1)  and the Requested Emails and from the First Request for Production of Documents, the Settlement Agreement from Judge Richard Breyer's Case Files (that I do not possess and is most important to Defendant's Defense.

2. re: Plaintiffs Requested Protective Order:

a.) **Plaintiffs don't meet any of the standards for a Protective Order.** In Regards to Heaven's Gate Intellectual Property (IP), they have no trade secrets to protect, as they have no "trade" as they sell nothing besides the Heaven's Gate Book version 3. They don't sell any of the Heaven's Gate audios and legally, by two Court Consent Decrees are barred from selling the Audio Tapes and are only allowed to sell the Video Tapes according to the Groups design on the Heaven's Gate website, that is according to the Judge Richard Breyer's Case Settlement, as far as Defendant can tell.

(b.) **Defendant also objects to a Court ordered Protective Order** if that is going to entail all that Plaintiffs asked the Court for in their  response to Defendant's (First) Request for Production of Documents as it would be putting a type of gag order on Defendant when there is no legal justification for and would affect my free speech on my Youtube channel and would become a Religious Discrimination case to inhibit.

(c.) Such an order would probably delay Discovery past the Court Ordered scheduling order of December and Defendant would claim Discovery Abuse and ask the Courts leave for an extension of Discovery because of.

(d.) Plaintiffs expressed the reason for a Protective Order was due to the fear Defendant would put those items on the internet. Defendant has not provided any of the previous Court's Case Files to the internet, thus this is unfounded. Even so, Plaintiffs need to be specific as to why something from 25 years ago is not allowed to be in the public record. I suggest that Plaintiffs are simply trying to stop the truth from coming out by hiding away certain facts in the Letters listed in Section I Paragraph 1 above and others and in emails. Most all the other Documents in the two requests are already in the public sphere in the Courts digitized Case Files anyone interested can buy and circulate.

4. **The Olliver Odinwood Document Requests of both First and Second Requests for Documents**: Plaintiffs have also stated they will not provide any of the documents associated with the Olliver Odinwood (David Cabot Van Sinderen) aka (Ollody)'s 14 Acrylic paintings that Plaintiff's received from the Judge Lisa Guy-Schall case Consent Decree when several of those paintings are part of Plaintiffs case against Defendant. In particular to the C.B.E. Painting (Celestial Being Entity), Plaintiffs were gifted a mere Lithographic print of that and then fraudulently copyrighted it as if they Created the image and then seek to win money from Defendant because of Defendant's use of that Painting's image and others painted by Ollody on T shirts. How can these documents not be relevant or met with any objections to provide?

II. **Responses to Plaintiffs Identical general responses to most all Defendant's Second Request for the Production of Documents:**

Plaintiff included what seems to be the same composite of stock responses to each of the 60

3

Document Requests. Defendant broke up Plaintiffs stock paragraph and  labeled the parts as A thru J. The wording is from Plaintiffs followed by Defendants Response starting in bold type:

A. Plaintiff objects to the Requests to the extent they require Plaintiff to obtain and produce documents from persons over whom it has no control. Plaintiff responds to, and will produce documents responsive to, the Requests only on behalf of itself. This was very awkward for Defendant because it wasn't at all clear which of the general objections applied to which Document Requests.

**Defendant's Response:** Nothing Defendant Requested required Plaintiff to obtain and produce documents from any other person besides what Plaintiffs should still have as they are all from their Court Case in San Diego that was resolved in 1999, though some documents were listed in Exhibits but apparently were sealed which Defendant doubts were sealed to Plaintiffs.

B. Plaintiff objects to the Requests to the extent that they are vague, ambiguous, or otherwise lack sufficient precision to permit a Response.

**Defendant's Response:** In some of Defendant's Document Requests detailed reasons were not provided but that has been corrected in this Motion by quoting specific parts of each document being requested so cannot be considered vague or ambiguous or without sufficient precision.

C. Plaintiff objects to the Requests to the extent that they call for the production of documents that would reveal its trade secrets or other confidential research, development, commercial or proprietary information, or information that may be protected by a right of privacy under either the United States Constitution or any other applicable law. Plaintiff reserves the right to produce such non-privileged, responsive documents only pursuant to a protective order duly entered by the court appropriately limiting the control, use and disposition of such documents.

**Defendant's Response:** Plaintiffs have no "trade" regarding any of the Heaven's Gate Intellectual Property they possess so this appears to be a frivolous stock objection. They have no "confidential research, development," nor "commercial" application. There are no longer privacy concerns as many of the documents have been available from the Courts for years.

D. Plaintiff objects to the Requests to the extent they seek the production of documents that are neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**Defendant's Response:** Defendant has corrected this by providing more details of exactly why these Requests can provide for the Discovery of Admissible Evidence.

E. Plaintiff objects to the Requests to the extent that they seek the production of documents that are publicly available, more readily and more appropriately collected from sources other than Plaintiff, and/or more practically obtained through other methods.

**Defendant's Response:** Most of the Requests are for documents listed in Plaintiffs own Court Cases that determined they had no legal proof for copyrights and trademarks. Plaintiffs of late are trying to bypass that fact by referring to their Consent Decrees from the same court cases as their legal justification for their obtaining of copyrights and trademarks, though were received after they registered copyrights and trademarks. Therefore these Court documents are not unreasonable requests to make and Defendant has provided in this motion parts from some of the documents to show their value in Defendant's defense.

F. Plaintiff objects to the Requests to the extent that they are overbroad and unduly burdensome.

**Defendant's Response:** There were many documents in these public files Defendant now possesses not requested so not to burden Plaintiffs with my needed Defense they have forced me

into. Plaintiffs refusal to provide anything is what is burdensome and these objections are overbroad. Even so any of the Requests that had no detailed reason stated has been corrected.

G. Plaintiff objects to the Requests to the extent they may be construed to request the production of documents prepared in anticipation of litigation; that constitute or reflect attorney work product; that disclose the mental impressions, conclusions, opinions or legal theories of any attorneys for Plaintiff; that contain privileged attorney-client communications; or that are otherwise protected from production under applicable privileges, laws or rules. Plaintiff will not produce any such privileged or protected documents.

**Defendant's Response:** There are no valid grounds to claim privilege of the attorney client relationship Plaintiff has had to these Document Requests. Many are already publicly obtainable from the Courts Case Files database.

H. Plaintiff objects to the Requests to the extent they are ambiguous or excessive as to time frames and thus are overbroad.

**Defendant's Response:** If any of these Requests could be seen as ambiguous, such has been corrected and more details provided so can not be "overbroad" and of no excessive time frames.

I. Plaintiff objects to the Requests to the extent that they attempt to impose obligations on Plaintiff other than those imposed or authorized by applicable law or rule. Plaintiff further objects to the Requests to the extent that obtaining and compiling responsive documents would impose a vexatious and undue burden on Plaintiff, and thus the Requests are oppressive and/or are merely intended to harass.

**Defendant's Response:** If Defendant was requesting these Documents to harass, Defendant could have requested dozens more. Of course, Plaintiff considers this a burden as Plaintiff

doesn't want to lift a finger to help Defendant win the case which these documents can help Defendant with. Plaintiffs objections are mostly all Discovery Abuse to refuse to cooperate with.

J. Plaintiff objects to the Requests to the extent they seek to have Plaintiff produce confidential, trade secret, privileged, or other information which Plaintiff considers sensitive information without a protective order governing the use and dissemination of such materials.

**Defendant's Response:** Plaintiffs are repeating themselves with these boilerplate objections, that Defendant has already addressed above.

III. **Specific Responses to Plaintiffs Responses to Defendant's Second Request for Production of Documents.**

Because Plaintiffs responded to Defendant's Second Request for Production of Documents with the same stock objections Defendant addressed in Section II (above) in this Brief, Defendant has updated Reasons for most of the Requests that did not provide a more detailed Reasons so the Court could see that there was nothing frivolous or harassing or overbroad or ambiguous or outside the scope of this lawsuit as Plaintiffs' claim in their stock objections.

1.) **DOCUMENTS NO. 1**: CASE NO. PN022228 JOINT TRIAL READINESS CONFERENCE REPORT, Section E. Exhibit Index.

**Updated Reason:** Defendant has Requested specific Exhibits 5 (**Requested Document No. 42**), 6 (**Requested Document No. 43**) and 7 (**Requested Document No. 44**) in this list of Exhibits. This Exhibit list shows Plaintiffs have these documents Defendant wants for their content. Defendant already possesses Letters from the Group to Rkkody and to Mark and Sarah King (Mrc/Srf) and to Jhnody (Francisco Falcon) that all show The Group gave their Intellectual Property to all of them and expressed in each of those letters their desire that they hoped they

would freely disseminate their IP to the media and to anyone they chose to give it to. Plaintiffs have said in now 3 courts that the Heaven's Gate Group transferred all of their Intellectual Property to them which was a misrepresentation of the truth that Plaintiffs knew because of having access to all of these letters yet did not convey honestly to the Courts.

2. **DOCUMENTS NO. 2**: CASE NO.: PN022228 PETITION BY CLAIMANT TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER

**Updated Reason:** Shows the Statutory Durable Power of Attorney forms left by the Group in California law expired at the death of the person named thus not legal for Mark and Sarah King to use to register copyrights.

3. **DOCUMENT NO. 3**: CASE: PN022228 PETITIONER'S SUPPLEMENTAL TRIAL BRIEF 1-11-99.

**Updated Reason:** Shows how attorney's Sansone and Carter working for San Diego County cited a number of copyright laws and examined the documents Mark and Sarah King provided the court to claim ownership over all the Heaven's Gate Property and determined none of what Plaintiffs provided gave any legal justification for Plaintiffs to copyright and/or trademark anything and that is why Judge Lisa Guy Schall, in her Decision ruled against most all of Mark and Sarah Kings Claims.  The Judge ruled that they could have any of the material that didn't sell in auction. This is highly admissible evidence and is specific and not overbroad and directly applies to the copyrights that are the entire basis of this case against Defendant.

4. **DOCUMENTS NO. 4**: CASE PN022228 PETITIONER, THE TELAH FOUNDATION'S OPPOSITION TO PUBLIC ADMINISTRATOR'S MOTION IN LIMINE NO. 6 filed 01-11-99

**Defendants Updated Reasons for Request:** It also shows that they admit others besides

themselves received Material. Here is a quote from the document where Plaintiffs are misrepresenting the truth to the court in several ways:

> "Before their deaths the Decedents mailed transferred control and ownership of their property to Petitioner. The Petitioner will introduce evidence at trial to illustrate that Petitioner was specifically chosen by the Class because its founders were known by the Class members, for over twenty years, as people who could be trusted to carry out their clearly expressed intentions and to safeguard against having their teachings and beliefs mocked or misappropriated for commercial exploitation."  Nothing was said to them by the Class that asked them

to "carry out" the "safeguard against having their teachings and beliefs mocked or misappropriated for commercial exploitation."

5. **DOCUMENTS NO. 5**: CASE: PN022228 TRIAL BRIEF filed by Petitioners on 01-08-99

**Updated Reasons**: This document shows that Plaintiffs believed if San Diego County didn't provide them with the Groups Intellectual Property it would be a Religious Discrimination case which is part of Defendant Havel's Defense/CounterClaim.

6. **DOCUMENTS NO. 6**: CASE NO.: PN022228 TRIAL BRIEF filed by Petitioners 01-08-99.

**Updated Reasons:** Shows Plaintiffs (then Petitioners) case of what was the Groups intention that if they actually believed wouldn't be suing anyone for doing as they said they wanted to do with the Materials. Here is a quote from this document that shows Mark and Sarah King said they wanted to abide by the "decedents"..."wishes":

> "As a result, the wishes of the decedents are very important to Petitioner, and the Petitioner is seeking for the Court to consider the decedents' last wishes and instructions above the Public Administrator's self-serving desire to find some economic recovery from what it has determined to be worthless junk."

If the wishes and "last wishes" and "instructions" from decedents were very important to Mark King and Sarah King, they wouldn't be suing me, which I will show at trial has evidence of.

This statement among others also re-enforces a study Plaintiffs had done during that case that referred to the value of the Heaven's Gate Intellectual Property as "nil" and in this example,

"worthless junk". This is important to Defendant's Defense and Counter Claim because Plaintiffs seek Relief in this case to the tune many millions of dollars.

Also included in this document is the admissible evidence related to this statement by Petitioners (Mark and Sarah King):

> "3. Decedents intended Petitioner to have all intellectual property and property with religious significance by delivery of contents of storage unit to Petitioner pre-mortem."

7.  **DOCUMENTS NO. 7-12**: Petitioners Exhibit No. 6 Marshall Herf Applewhite (aka DO) - Order to Proceed Summarily

**Updated Reason:** These requests might show these two decedents intentions for the Intellectual Property left behind by DO and by Ollody aka Olliver Odinwood, legally David Cabot Van Sinderen who painted the C.B.E. Acrylic painting he copyrighted in 1982 that Plaintiffs copyrighted illegally in 1997 and are suing me for using for over two decades.

12.  **DOCUMENTS NO. 12**: Petitioners Exhibit No. 99 Handwritten notes in wallet of David Van Sinderen. May show when Plaintiffs knew of legal copyrights Olliver Odinwood possessed.

13.  **DOCUMENTS NO. 13**: Petitioners Exhibit No. 92 Envelope containing the Fedx sender's copy receipts of packages sent to 12 other individuals and two sender's copy receipts for packages sent to Mark and Sarah King.

**Updated Reason:** This document can potentially show more individuals who received packets of Intellectual Property from The Heaven's Gate Group and the dates they received those packets to challenge Plaintiffs claim that they more or less received it all. This supports claim Plaintiffs don't have "exclusive ownership" of all the Heaven's Gate Intellectual Property because before they even received any consent decrees packets were sent to as many as 12 people.

13-12.  **DOCUMENTS NO. 13-12**: Petitioners Exhibit No. 74 Undated, unsigned letter in which the recipients are identified as Sam, Fifi, Tawni & Tony in which the senders are identified as

Logan & June.

**Updated Reason:** This document can be useful towards providing admissible evidence as Judge Lisa Guy-Schall references in it the intention of the Heaven's Gate Group that the Property in the mansion the decedents, were leasing, wasn't their intention to go to Mark and Sarah King who sought to possess it all.

14. **DOCUMENTS NO. 14**: Petitioners Exhibit No. 62 State of Arizona Certificate of Trade Name pertaining to the TELAH Foundation dated January 15,1998.

**Updated Reason:** This document as well as Document No. 15 (Petitioners Exhibit No. 61 Letter dated January 12, 1998 from Mark King to the Secretary of State) contains statements Plaintiffs made to the Courts misrepresenting the truth regarding when the Telah Foundation was formed and whether it was a legal entity with jurisdiction to register copyrights.


16.  DOCUMENTS NO. 16:

Petitioners Exhibit No. 57 E-mail transcript dated January 15, 1997 from Soren Codea.

**Updated Reason:** This could further show that DO was willing to give Soren a place to stay in and a car to drive to help with the Dissemination Project he hoped all students would engage even though Soren was never a  member of the Group.


17. **DOCUMENT REQUESTS**:

a. **NO. 17** Petitioners Exhibit No. 54 E-mail transcript dated October 22, 1996 from Francisco J. Falcon

b. **NO. 18**: Petitioners Exhibit No. 53 E-mail transcript dated September 25, 1996 from Francisco J. Falcon

c. **NO. 19**: Petitioners Exhibit No. 52 E-mail transcript dated December 9, 1996 from "Mrc/Srf"

d. **NO. 20**: Petitioners Exhibit No. 51 E-mail transcript dated October 22, 1996 from "Mrc/Srf"

e. **NO. 21**: Petitioners Exhibit No. 37 Printed information sheet identifying those people who also received packages from the decedents on or about March 26, 1997.

f. **NO. 22**: Petitioners Exhibit No. 38 Handwritten letter dated 3/22, in which the recipients are identified as "MRC/SRF" and the senders are identified as "Your Friends"

g. **NO. 23**: Petitioners Exhibit No. 39 E-mail transcript from Chuck Humphrey to rep@heavensgate.com dated June 19,1996

h. **NO. 24**: Petitioners Exhibit No. 40 E-mail transcript in which the senders are identified as Mrc/Srf and the recipients are identified as Mll/Jwn, dated December 16, 1996.

i. **NO. 25**: Petitioners Exhibit No. 41 Printed letter in which the recipients are identified as "MRC/SRF" and the senders are identified as "MLL/GLD," the contents of which is concerning income and expense information for TELAH services.

j. **NO. 26**: Petitioners Exhibit No. 42 E-mail transcript dated October 21, 1996 from "Mrc/Srf

k. **NO. 27**: Petitioners Exhibit No. 43 E-mail transcript dated October 25, 1996 from "Mrc/Srf

l. **NO. 28**: Petitioners Exhibit No. 44 E-mail transcript dated October 28, 1996 from "Mrc/Srf

m. **NO. 29**: Petitioners Exhibit No. 45 E-mail transcript dated October 29, 1996 from "Mrc/Srf

n. **NO. 30**: Petitioners Exhibit No. 46 E-mail transcript dated October 30, 1996 from "Mrc/Srf

o. **NO. 31**: Petitioners Exhibit No. 47 E-mail transcript dated November 5, 1996 from"Mrc/Srf

p. **NO. 32**: Petitioners Exhibit No. 48 E-mail transcript dated November 6, 1996 from"Mrc/Srf

q. **NO. 33**: Petitioners Exhibit No. 49 E-mail transcript dated November 12, 1996 from "Mrc/Srf.

r. **NO. 34**: Petitioners Exhibit No. 50 E-mail transcript dated November 18, 1996 from "Mrc/Srf

s. **NO. 35**: Petitioners Exhibit No. 31 Four page tabulated document entitled 'Changes Made to

Heaven's Gate Book.

t. **NO. 36**: Petitioners Exhibit No. 32 three page doc entitled "3rd Edition of Heaven's Gate"

u. **NO. 37**: Petitioners Exhibit No. 31 Four page tabulated document entitled "Changes Made Heaven's Gate Book"

v. **NO. 38**: Petitioners Exhibit No. 30 Printed page entitled "Revised Editions of Heaven's Gate"

w. **NO. 39**: Petitioners Exhibit No. 28 Undated handwritten note to MRC/SRF (Mark and Sarah King) from EVN/JWR.

**Updated Reason for these 23 Documents:**

Plaintiffs have repeatedly expressed that they received many communications from The Class re: the "transfer" of the Classes Intellectual Property in 1996 and 1997 that they would never send to Defendant over decades. Defendant knew Plaintiffs were exaggerating those communications as having much of anything to do with The Groups Intellectual Property dissemination and that Plaintiffs replaced the Groups intention with claiming their task was primarily to protect the information from becoming public as they are still attempting to do now by refusing to make public the 1000+ audio tapes.

This is why Defendant Requests these email communications in Requests 18-39 (listed below) as Defendant is looking for more Admissible evidence from the prior court case against San Diego County where Plaintiffs pressured the Court with threats of appeal of their Decision against most all their claims but by siting technical aspects with the way the County handled their inventory of the Groups Property and other trivial matters that according to Judge Lisa Guy Schall decided to settle because of the expected lawsuits from the dozens of family members of the deceased who wanted closure and some help with burial costs and the costs of the handling of the entire event that Mark and Sarah King would hold up for even years. Thus Judge Lisa

Guy-Schall compromised and sold the Intellectual Property the County had to Plaintiffs.

All these emails were listed by Plaintiffs so they must have them on file as Defendant was not

able to see them through the Court data base from which Defendant received the primary

documents that were not sealed.

18.  **DOCUMENTS NO. 40**:

Petitioners Exhibit No. 29 Undated handwritten two page note to Wayne Parker, who is

identified as "OSC," the contents of which refer to the material necessary to make a book for the

Library of Congress.

**Updated Reason:** This Document is especially relative to Defendant having admissible

evidence for Defendant's Defense and Counter Claim because Plaintiffs claim they received that

task of publishing version 3 of the Heaven's Gate Book (Literary Work). But in the Letter

addressed from "The Class" to Mrc/Srf (Plaintiffs names in the Group) was stated that Oscody

(Wayne Parker) was to file the same Book with the Library of Congress. It is important to know

the truth about this, whatever it is, which could include evidence of the Groups reversal of

intention from having a Common Law copyright on the Book to having Telah Foundation

copyright on it that Mark and Sarah King put on the Book.

19.  **DOCUMENTS NO. 41**:

Petitioners Exhibit No. 4 Undated letter, the recipients of which are identified as Chris and Holly

and the senders of which are identified as "June, Steele, Sonny, Nick, Evan, Otis, and Geoff.

**Updated Reason**:

Defendant may have Requested the same Document Defendant Requested in Defendants First

Request of Documents as one of four Letters. Defendant left this Request in this Second Request

of Documents in case they are actually different Letters since Mark and Sarah King have said

they received communications in addition to the Letters Defendant already possessed. If they are the same Defendant withdraws this Request.

20. **DOCUMENTS NO. 42**:

Petitioners Exhibit No. 5 Undated letter in which the recipient, Wayne Parker, is identified as OSCODY, and the senders are identified as "The Class"

**Updated Reason:** (See Updated Reason NO. 1)

21. **DOCUMENTS NO. 43**:

Petitioners Exhibit No. 6 Undated letter in which the recipient, Rio DiAngelo, is identified as NEO, and the senders are identified as "The Class"

**Updated Reason:** (See Updated Reason NO. 1)

22. **DOCUMENTS NO. 44**:

Petitioners Exhibit No. 7 Letter dated March 24, 1997, in which the recipients, Floyd and Lorraine Snelson, are identified as FLX/ ABL, and the senders are identified as "The Class"

**Updated Reason:** (See Updated Reason NO. 1)

23. **DOCUMENTS NO. 45**:

Petitioners Exhibit No. 1 Undated letter in which the recipients, Mark and Sarah King, are identified as MRC and SRF, and the senders are identified as "The Class"

**Updated Reason:** Defendant may have Requested the same Document Defendant Requested in Defendants First Request of Documents as one of four Letters. Defendant left this Request in this Second Request of Documents in case they are actually different Letters since Mark and Sarah King have said they received communications in addition to the Letters Defendant already possessed. If they are the same Defendant withdraws this Request.

24. **DOCUMENTS NO. 46**:

Petitioners Exhibit No. 2 Letter dated March 22, 1997, in which the recipients, Mark and Sarah King, are identified as MRC and SRF, and the senders are identified as "Pursers" (SNG, SLV, MLL, GLD)

**Updated Reason:** Defendant may have Requested the same Document Defendant Requested in Defendants First Request of Documents as one of four Letters. Defendant left this Request in this Second Request of Documents in case they are actually different Letters since Mark and Sarah King have said they received communications in addition to the Letters Defendant already possessed. If they are the same Defendant withdraws this Request.

25. **DOCUMENTS NO. 47**:

03-26-98 CASE NO. PN 022228 DECLARATION OF KIMBERLY A. DONOVAN IN SUPPORT OF OPPOSITION TO PETITION TO TERMINATE SPECIAL ADMINISTRATION (See ROA 73 case file contents 1-3 pages 364-389)

Defendant's Initial Reason for Request: Shows how Mark King and Sarah King accused Chuck Humphrey of stealing the Materials DO gave him and accused him of commercializing the Material when there is a large amount of evidence to the contrary.

**Updated Reason**: In this example from the document request, the attorney for Plaintiffs Mark and Sarah King wrote the following:

"The TELAH Foundation became quite concerned when it appeared people were attempting to use the religious group's website, audiotapes, videotapes, name and symbols for profit and personal gain. The TELAH Foundation promptly sought legal advice to assist in securing all rights to which the group was entitled and further to diligently enforce the intellectual property rights as required by law. The TELAH Foundation was particularly concerned about garish, offensive or otherwise inappropriate use of the intellectual property associated with the religious group and deceased individuals.

16

The TELAH Foundation became aware of commercial misappropriation of intellectual property associated with the religion of The Evolutionary Level Above Human. Specifically, Mr. Chuck Humphrey had made revisions to the religious group's website and was selling T-shirts, coffee mugs, mouse pads and other paraphernalia in an obvious effort to exploit the Heaven's Gate organization, name and ideas. This was directly contrary to the beliefs and purposes of The TELAH Foundation, as expressed to me by Mark King Sarah King and Wayne Parker. The TELAH Foundation instead believed that the organization's intellectual property should be maintained in exactly the manner that the deceased persons requested and specified, and always should be treated with dignity and respect."

Plaintiffs have lodged the claim that Defendant was infringing upon their copyrights and trademarks by putting certain images of CBE and the so called Heaven's Gate Logo on T shirts for sale. This is the same exact kind of thing Rkkody (Chuck Humphrey) was doing in 1997 that Mark and Sarah called "commercial misappropriation of intellectual property" in this San Diego case and then after Rkkody died sued his estate and daughter whom Rkkody left the intellectual property from the group to, that he was given directly from DO and the Group before they exited their human vehicles in March of 1997.

This shows Plaintiffs were treating Rkkody as if he was doing something against the Group's wishes and that was not at all the case as can be easily proven by a number of documents and letters given to Rkkody and Mark and Sarah King by the Group in 1997. Plaintiffs were misleading their lawyer and the Court by these statements and now are trying to use that same ploy against Defendant.

26. **DOCUMENTS NO. 48**:

PETITION BY CLAIMANT TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY FEES filed 04/21/98.

Defendant's Initial Reason for Request: A number of Claims made by Petitioners that show they either exaggerated or misled or were dishonest about a number of issues they presented to the Court that strengthens Defendants defense.

**Defendants Updated Reasons** for Document Request No. 48: The quotes below all come from the document: ROA 73 case file contents 1-3 pages 6-14)

Here is one of many examples in this and other Court documents that show how the Plaintiffs, Mark and Sarah King omitted certain key information. For instance below in the last sentence asserting that they were given by the Group "instructions for Mark and Sara King to exercise its own discretion in protecting the interests of the decedents."

Plaintiffs have no such document of any sort that instructs them to "protect the interests of the decedents".

The entire main interest of the decedents can be shown by many evidences including the Letters sent to Mark and Sarah King by the Group to be to divide their audio tapes among those who were inclined to disseminate them to others, without any stipulation of to whom besides "who were inclined" to perform that task and those decedents were also shown to have only cared about disseminating to the public and media of the Beyond Human Video Tapes Series and the four exit videos and their literary works in their Book that they put a Common Law Copyright on encouraging anyone to copy the entire book or parts of the Book as long as nothing was changed or added to and to not do so for commercial purposes. Defendant has done nothing for commercial purposes with their writings and audios and video's for over 15 years and never will but Defendant also can prove that to make T Shirts from images was not in the Groups mind to be prohibited from doing.

Here is the context of the above quoted part from this document request:

"On or about March 22, 1997 the decedents sent to Mark and Sara King, written instructions and numerous

18

documents, contained in the previously-referenced Fed Ex shipment, providing explicit information regarding, among other things, the location of the decedents' storage areas and codes of entry into their home; instructions on the management of the organization's website; explicit instructions regarding the group's most sensitive financial information, including payables, receivables, and income tax returns; lists of the members' credit cards; titles, registrations, keys, bills of sale for the group's vehicles, and instructions on where to find them; computer diskettes; and an itemized list of the organization's members including birth dates and driver's licenses, with instructions for Mark and Sara King to exercise its own discretion in protecting the interests of the decedents."

Plus the Group as Plaintiffs state in this document and others were very, very explicit with their instructions on how to treat their remaining finances, who to give cars to, who would get money and what they hoped would be done with the money knowing it wouldn't be enough to keep the website going for very long and encouraging to seek funds from some of the items in storage to pay for living expenses of those who were inclined to disseminate their information and that is exactly what Defendant has sought to do with the making and selling of T shirts using images that were painted and copyrighted by Olliver Odinwood in 1982 so voids Plaintiffs copyrights and trademark registrations of said images.

And yet with all those Letters containing very explicit instructions as Plaintiffs noted in this and other court documents, Group Members did nothing to give Plaintiffs any legal right to copyright any of their Intellectual Property proving that Plaintiffs sought to defraud the government into giving them such a right by falsifying copyright registrations with no legal "Assignments" or even the insinuation that they were part of the "collective" rights each Group Member may have had under the law that could qualify as describing as a "work for hire" relationship when the Group provided no legal description of anyone in the Group as working for them in the production of Audio and/or Video tapes.

If all the Students were part of that Collective possession of Rights then Defendant is also one who should be granted by the Courts the same Collective possession of rights over all the

Intellectual Property when Defendant was evidenced to be in the group and evidences in belief and action as never having left their service though it took a different direction.

27. **DOCUMENTS NO. 49**:

03/26/98 CASE NO.: PN022228 OPPOSITION TO PETITION TO TERMINATE SPECIAL ADMINISTRATION (Probate Code §8546) filed 03/26/98. See roa 73 case file contents 1-3 pages 327-333)

Defendant's Initial Reason for Request: To show that having the Material from the Class is a religious freedom issue according to Mark King and Sarah King.

Here is a small section from this document Defendant plans to use as Admissible Evidence that this is a Religious Freedom Issue as stated by Plaintiffs themselves to the San Diego County Court system:

> "Respondent's intellectual property legal counsel has been active in securing the wishes of the decedent that the intellectual property transferred to Respondent commonly referred to as "Heaven's Gate" materials, drawings, books and tapes, etc., be respected and safeguarded as philosophical and religious materials. (See Exhibit "C")."

> "Respondent has taken diligent, respectful and tedious steps to secure such intellectual property for the purpose intended by the decedent, by managing such property as a religious foundation, which is prohibited from self-dealing and personal financial gain. (See Exhibit"C")"

28. **DOCUMENTS NO. 50**:

Case No. PN022228 OBJECTION TO PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY, FOR ORDER AUTHORIZING AND DIRECTING REPRESENTATIVE TO TRANSFER ESTATE PROPERTY TO PETITIONER AND PAYMENT OF PETITIONER'S ATTORNEY'S FEES

**Updated Reason:** This document shows the power of attorneys in California were terminated upon decedents deaths. It also shows petitioners Mark King and Sarah King had no documents to

show to acquire copyright registrations to transfer from TOA their common law copyrights to

Telah Foundation and showed no documents to back up their Transfer statement in the copyright

registrations as "pursuant to assignments". Attorneys, Cheryl Carter and the others asked if they

used those powers of attorney as the "assignments" which was not legal to do.

**Updated Reasons:** Here is a brief section from that Document that Defendant plans to use as

Admissible evidence in Defendant's Defense and Counter Claim:

"Petitioners allege at number V of their petition that as a result of the decedents executing documents entitled

"STATUTORY DURABLE POWER OF ATTORNEY (S) DPA' s appointing Mark Gerard King as attorney in fact

and Mrs. King as successor a few days before their deaths that this somehow devolved ownership rights upon them.

They support this by stating they received by "Federal Express" explicit information regarding the aforementioned

property. However petitioners fail to mention that in California, a DPOA terminates upon the death of the principal.

(PC§ 4152(a)(4)) except for certain limited conditions not met here. Petitioners have also failed t6 produce any

writing which purports to make a disposition of the decedents property upon their death, that satisfies the

requirements of a Will in this state.

Petitioners do allege gifts were made however they also state the "decedents owned and possessed title to property

including intellectual property prior to their deaths and as possession and control remained with the decedents it

appears they still owned it after their deaths.

 Assuming arguendo that the DPOA and writings devolved title to the petitioners, objector asserts the DPOA's

executed March  19, 1997, a few short days before the deaths which occurred  March 26, 1997, were the result of

duress, or undue influence given the event which transpired on March 26, 1997.

In addition, the DPOA's appear irregular on their face as they purport that the decedents were residents of Arizona

and present in Arizona at a time others have alleged, they were residents of California and present in California.

Finally, case law has long held that gifts from principals to agents during the existence of the fiduciary relationship

may be presumed the result of undue influence and absent a showing of independent advice, the presumption can

actually shift the burden of proof to show absence of undue influence.

PETITIONERS ADMIT DECEDENTS OWNED INTELLECTUAL PROPERTY AND STATE THEY

OBTAINED THE RIGHTS BY ASSIGNMENT BUT FAIL TO ALLEGE FACTS TO SUPPORT SAID

ASSIGNMENT.

Petitioners make much of their copyright registrations after Decedents' deaths, stating in their applications that the Telah Foundation was copyright claimant pursuant to assignments".

It is clear that the Decedent's Intellectual Property included common law trademarks/trade names, including Domain names and several unregistered copyrights. No assignments accompany the petition and several questions arise, were these pre-death assignments? Were the DPOA's used to execute these assignments? Was this a result of undue influence? On the other hand if they were post-death assignments, what authority did they have to so execute? All of these queries and issues rebut the so-called "prima facie" validity of their copyrights.

THE PROBATE CODE GOVERNS THE RIGHTS DUTIES AND LIABILTIES OF
PARTIES UPON DEATH.

The Petitioners intentions and beliefs cannot obviate or blur the  will of the people of the State of California as set forth in the Probate Code. A personal representative cannot make distributions based upon religious and philosophical positions."

29. **DOCUMENTS NO. 51**: 07-17-98 CASE NO.:PN022228 VERIFIED SUPPLEMENT-DECLARATION OF MARK KING (ROA 74 Case File Contents 2-3.pdf pages 182 and 183)

**Updated Reason:** This is one of several examples in this document that shows that Mark King was not only misrepresenting the Groups intention for their IP but even is easy to prove acting against what he actually said here. One strong evidence is saying their purpose was to "prevent unfettered [unrestrained or uninhibited] distribution and production of decedents writings, teachings and beliefs... Plaintiffs totally made this up. The Group gave them no such guidelines or instructions and they have maintained the Groups website Heavensgate.com for decades which gives away the content of the Groups Book so is completely unrestrained and uninhibited as anyone can download the entire book off that Book page of the website and with it comes the Common Law Copyright that encourages anyone to copy the entire book or parts of it as long as it's unchanged and not added to and not used for commercial purposes. There are a number of statements in this document request that can add to admissible evidence in Defendant's Defense

and Counter Claim. Here is the context of that statement used above:

> "The Telah Foundation's purpose is to prevent unfettered distribution and production of the decedents' writings, teachings and beliefs from those who would misuse such for personal gain or to recruit individuals to their own organization, which was contrary to the decedents' wishes as made know to me."

30. **DOCUMENTS NO. 52**: CASE NO.: PN022228 TRIAL BRIEF filed by Petitioners filed on 01-08-99. (see page 64 of ROA 74 Case File Contents 2-3)

**Defendant's Initial Reason for Request:** Shows Plaintiffs (then Petitioners) case of what was the Groups intention This document also shows that Plaintiffs believed if San Diego County didn't provide them with the Groups Intellectual Property it would be a Religious Discrimination case which is part of Defendants Defense to also show the Court and a Jury.

List of the contents of one of the items listed in San Diego Counties Exhibit 1 as:

31. **DOCUMENTS NO. 53**: CTN. FRAMED AND UNFRAMED ARTWORK/SIGNS

**Updated Reason**: Plaintiffs have claimed copyright and/or ownership over all of David Cabot van Sinderen, aka Olliver Odinwood's, Ollody)'s artwork for The Meeting Script and in particular have a copyright for the C.B.E. one of those 14 paintings and/or the Lithographic Print that is one of the counts in their complaint against Defendant, Defendant believes it necessary to see the entirety of what Plaintiffs received from the Court case in the Settlement that appears to be identified by this line item in Exhibit 1.

32. **DOCUMENTS NO. 54**: Envelope with original documents: Orig: Copyright screenplay The Meeting. Orig: Copyright artwork for screenplay.

**Updated Reasons:** Defendant believes Plaintiffs nor Rio D'Angelo will ever make any significant effort to try to have produced the Groups screenplays as all three of them tended to run and hide when the Group exited and have said things to the media that were not true. The truth is not dangerous as there is no reason for suicide and there is no new group nor leaders

needed but the Groups Material holds a wealth of knowledge they wanted shared with people, which is why they left it behind for others to have.

33. **DOCUMENTS NO. 55**: Bills of sale by authors of The Meeting to Group Member.

**Updated Reasons:** Since Defendant is being sued for use of the CBE image painted by Olliver Odinwood for The Meeting Script referenced in this Bill of Sale that was included in one of the two Exhibits as gifted or bought by Plaintiffs, Defendant believes there could be admissible evidence to Defendant's Defense and Counter Claim in being able to have a copy of this "Bill of Sale" especially to see to whom (what Group Member) The Meeting script was sold to.

34. **DOCUMENTS NO. 56**: No. PNO22228. Notice of lodgment in support of supplemental brief. Date January 8, 1999. **Defendant withdraws this Request**

35. **DOCUMENTS NO. 57**: No. PNO22228 Supplemental Brief. Date January 8, 1999.

**Updated Reason:** For Admissible Evidence of why Judge Lisa Guy-Schalls case against Plaintiffs Mark King and Sarah King didn't reveal any documentation to legally obtain any copyrights or trademark registrations to support the receipt of any of The Groups IP.

36. **DOCUMENTS NO. 58**: Legal document from the Group to Plaintiffs stating their transfer of Telah Services to Plaintiff.

**Updated Reason:** To learn the truth about what the Group did give to Plaintiffs that they referred to as a "transfer" of Telah Services to Plaintiff. Whatever it was Plaintiffs received it was not good enough for the IRS because Mark King said in the Bardo Methodology Interview that he and Sarah King had to travel to Washington D.C. to speak in person with bureaucrats to change the name of the entity the Heaven's Gate Group had established as Telah Services to Plaintiffs new entity, the Telah Foundation. This shows more potential misrepresentations.

37. **DOCUMENTS NO. 59**: Document from IRS to Plaintiffs stating the renaming of Telah

Services to The Telah Foundation that Plaintiffs say in an interview they received directly from an "IRS panel in Washington".

**Updated Reason:** (See the Reason for Request NO. 36)

38. **DOCUMENTS NO. 60**: Fed Ex Packages Content Lists sent to Plaintiffs from The Group

**Updated Reason:** Plaintiffs have stated they and only they received from the Group detailed instructions re: transfer of IP to them and instructions of how and to whom to disseminate the IP. This is not a request for the Letters requested in Defendant's first Request of Documents.

Dated: ~~September 14, 2023~~ *S.H.*

october 25, 2023

*Stephen Havel*

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

Defendant