# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc. | CASE NO. 3:22-CV-395-JD-MGG |
| Plaintiff, | |
| v. | |
| Steven Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel, | |
| Defendants. | |

**-FILED-**
NOV 2 0 2023
A[...]M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendant Stephen Havel hereby requests the Court to enter a preliminary injunction that prohibits The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation or "The Evolutionary Above Human Foundation d.b.a. The Telah Foundation (the "Foundation" or "Plaintiff") or Mark King or Sarah King or any other of their names from registering any new copyrights or trademarks for any of the Heaven's Gate Intellectual Property until this lawsuit against Defendants is resolved.

## I. A PRELIMINARY INJUNCTION SHOULD BE ENTERED

A party seeking a preliminary injunction must first show "that: (1) absent preliminary injunctive relief, [the party] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [the party] has a reasonable likelihood of success on the merits." Turnell v. CentiMark Corp., 796 F.3d 656, 661–62 (7th Cir. 2015). Once the moving party has made such a showing, the Court "considers: (4) the irreparable harm the moving



party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')." Id. at 662. The Court's assessment of the fourth factor "is made on a sliding scale: 'The more likely the Moving Party is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018) (quoting Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

A. re: (1) absent preliminary injunctive relief, Defendants and the Public could suffer irreparable harm in the interim prior to a final resolution;

1. Plaintiffs are already showing signs of preparing to lose all of what they were certain they held the legal rights to uphold:

(a) One such sign is when Plaintiffs have registered new copyrights on audio tapes 487 to 497-498 that will be detailed below.

(b) Plaintiff's filed that copyright under a new name Defendant's have not seen them use in any of the three Court Cases re: the Heaven's Gate Intellectual Property which appears to be a strategy in case they lose this case so they could attempt to file a new lawsuit should Defendants make use of the Audio tapes 487 to 930 Plaintiffs never copyrighted. Plaintiffs copyrighting additional audio tapes will cause "irreparable harm" on Defendant to further prepare a Counter Claim that legally includes dealing with Plaintiffs new copyrights and/or trademarks.

(c) Plaintiffs are using every measure they can to avoid providing any of the documents Defendant's have Requested. Defendant may need to seek from the Court an extension to

Discovery as once Defendant's Admissions and Interrogatories are submitted, Plaintiffs could run out the clock of the Discovery Schedule the Court ordered by December 14, 2023 and a great deal of Admissible Evidence would not have been provided.

2. This is causing "irreparable harm" on Defendant to have to spend even dozens to hundreds of more hours to defend himself and to prepare for trial and the loss of thousands of dollars more in lost income and expenses related to this lawsuit also because Plaintiffs have added even more illegal copyrights to the case. (Defendant will show their illegality).

3. Without the Court ordered restraints put on Plaintiffs further attempts to copyright and/or trademark any of TI and DO and the Classes Intellectual Property, until the legality of their existing copyrights and trademarks can be determined in this lawsuit, Plaintiffs could be bringing "irreparable harm" upon Defendants' and the Publics' Constitutional Religious Rights to practice their Religion by having access to TI and DO's Intellectual Property, which amounts to having access to the equivalent of the New Testament of Jesus' words and the Bible and/or to the Jewish Torah and/or to The Islamic/Muslim Koran and/or to the Buddist Tripitaka and/or to the Hindu Vedas.

B. re: (2) there is no adequate remedy at law;

There is no other way Defendant knows about to restrain Plaintiffs from registering more copyrights. Defendant exchanged emails with the U.S. Copyright office and they said the only way Defendant could challenge a copyright registration was through the courts.

C. re: (3) Defendant has a reasonable likelihood of success on the merits." Turnell v. CentiMark Corp., 796 F.3d 656, 661–62 (7th Cir. 2015).

Defendant's Updated Defense and Counter Claim shows a great deal of evidence of a reasonable likelihood of success plus if Defendant receives the Requested Documents and

responses to Admissions and Interrogatories that success will have even a greater likelihood of

success.

D. re: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted"

1. Plaintiffs have never shown any irreparable harm, even if they had to share all of the Heaven's Gate Intellectual Property (included the 1082 Audio tapes) with Defendants and/or the Public.

2. Defendant's and the Public's "irreparable harm" is because of not Having the Freedom of Information that is provided by the audio tapes. It's history and needs to be in the public sphere.

E. re: "(5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')."

1. The public interest has been effected in a negative way by not having access to any of the audio tapes because by seeing what TI and DO have said in the audio tapes, they will see why Suicide is not an option because we need our physical bodies to lesson lessons in the human kingdom.

2. If plaintiffs are allowed to continue to copyright the audio tapes then more people will simply believe the media story that belief in TI and DO leads to suicide when that is not at all the case and that can be proven.

(4)

II. **PLAINTIFFS NEW COPYRIGHT REGISTRATION NO. SRu001552631**

A. This Motion for a Preliminary Injunction to be ordered against Plaintiffs taking out further copyrights and/or trademarks is not at all a precautionary action to request since Plaintiffs have just filed for new copyrights on some of the audio tapes they hadn't copyrighted before.

Therefore, Defendant is showing the Court the evidence for the need for a Preliminary Injunction against Plaintiffs filing copyrights and/or trademarks, especially applicable to the falsified copyright registration Plaintiffs have just filed on July 7, 2023 detailed below:

1. On July 7, 2023 Plaintiff's, under a slightly new name registered a copyright No. SRu001552631 for The Groups Audio tape numbers 487 to 497-498, citing the Author as Steven Terry McCarter aka Srrody, who was one of the 38 deceased Students of TI and DO.

2) Defendant can testify and prove that Srrody had nothing to do with being the Creator of any of the Groups Audio Tapes (except by pushing the record button sometimes on the tape recorder, that Defendant has audio evidence of doing at times).

3) One major proof Srrody was not the Author of any of these audio tapes can be found when one compares the voice on those audio tapes (DO) with Srrody's voice from the video he with other of the 38 students made and published called, "Students of Heaven's Gate Expressing Their Thoughts Before Exit".

4) At the most Srrody's voice might be heard very briefly in some of these audio tapes as a Student asking his Teacher, DO (aka Marshall Herf Applewhite), the only true Author of these tapes, brief questions.

5) Steven Terry McCarter aka Srrody is listed in the registration as having been born in 1956 and was listed as not having died by the omission of the year of his decease in 1997 as there is a great amount of evidence of and Plaintiffs know well.

6) Plaintiffs appear to be trying to hide behind the corporate veil by starting to copyright audio tapes they have not copyrighted before and doing so by using the "Claimant name" of: "The Evolutionary Above Human Foundation d.b.a. The Telah Foundation" (removing the word "Level") in the registration that is different from the name of the institution used to file this lawsuit over the same body of audio tapes (as illustrated by Plaintiffs provision of two lists of audio tapes to the Court that they claim to have either registered or unregistered copyright for).

7) Defendant believes there is no coincidence that Plaintiffs filed this copyright registration on July 7, 2023 less than a month after the zoom hearing Judge Gosch held with Plaintiffs and Defendants, where Plaintiffs were caught in the hearing saying Plaintiffs not only had registered copyrights for 486 audio tapes (though is under dispute) but also had the unregistered copyright the Creators of the audio tapes automatically held, on the additional audio tapes Plaintiffs stated in that hearing that they said tnumbered "over 1000", which was the first time in the Courts a number was recorded.

8) According to this registration data below in the section of the registration application: "Regarding group registration," here are more parts that are unlawful. The copyright office listed requirements (in bold and in quotes) below:

a.) **"(1) All the works must be unpublished"**; From my research an Audio Work like a Song is considered published when it physically changes hands – like when it's been made into an .mp3 file and it changes hand with another person. For the audios Plaintiffs have registered to copyright, numbers 487 to 497/498 they were sent to Jhnody by Mark and Sarah King and Jhnody sent them to me on a thumb drive and I gave them to co-Defendant Jason Bartel. Thus they were not unpublished.

b.) "**4) all the works must be created by the same author or the same joint authors**"

None of these audio tapes were created by Steven Terry McCarter aka Srrody. The Author is DO.

c.) "**5) the authorship claimed in each work must be the same**";  The Authorship is the same but is not the Author.

d.) "**6) the author and claimant for each work must be the same person or organization**"

Steven Terry McCarter aka Srrody is not the Author and the Claimants are different people – namely Mark and Sarah King behind some new Foundation name, "The Evolutionary Above Human Foundation d.b.a. The Telah Foundation that didn't exist in 1990 when these works were created. Also Mark King and Sarah King who are behind this registration, though, were in the Group from 1975 to 1987 so especially had no part in the creation of these audio tapes which Defendant Havel is witness to.

9. The Transfer clause of this registration is: "by operation of law,". I doubt Mark and Sarah King have any legal documents from Steven Terry McCarter to legally copyright those tapes.

10. For reference, here is the aforementioned copyright registration data:

**Type of Work:**    Sound Recording

**Registration Number / Date**:   SRu001552631 / 2023-07-07

**Application Title:**    Tape 487 and 9 Other Unpublished Works.

**Title:**    Tape 487 and 9 Other Unpublished Works.

**Description:**    Electronic file (eService)

**Copyright Claimant:** The Evolutionary Above Human Foundation d.b.a. The Telah Foundation, Transfer: by operation of law. Address: 4757 E. Greenway Road, #103, Phoenix, AZ, 85032, United States.

7

**Date of Creation:** 1990

**Authorship on Application:** Steven Terry McCarter, 1956- ; Citizenship: United States.

**Authorship:** Sound Recordings.

**Rights and Permissions:**      Rowan Smith, Messner Reeves LLP, 7250 N 16th Street, Suite 410, Phoenix, AZ, 85020, United States, rsmith@messner.com

**Copyright Note:** C.O. correspondence.

**Regarding group registration:** A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization.

**Contents:** Tapes 487 to 497-498.

## III. OVERVIEW OF ILLEGALITIES OF PLAINTIFF's PREVIOUS COPYRIGHTS AND TRADEMARKS

A. The San Diego County Attorney's and the U.S. Copyright Laws, as shown in Case No. PN022228 presided over by Judge Lisa Guy-Schall's Statement of Decision on Feb. 22, 1999 demonstrates reasons Plaintiffs, (then recorded as Petitioners) initially received no relief from their Creditor Claim they filed against San Diego County and were fined for a "frivolous lawsuit":

Under the section: "FINDINGS OF FACT AND DECISION" at Paragraph 3 and 5 below:

1. "3. Regarding the ownership of Intellectual property, this Court determines that the estates own all Intellectual property interests together with the tangible assets from which those



Interests are derived. This determination is based upon the following findings of fact:

Although Petitioners presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With US," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do."

**"Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually Signed by the decedents except the Durable Power of Attorney, which became void upon their deaths."**

2. "5. Since there is no written Instrument transferring ownership of the Intellectual property to the petitioners, the estates own all Intellectual property as tenants in common."

B. Plaintiffs were accused by attorney's Sansone and Carter for San Diego County of defrauding the U.S. Copyright Office with their copyrights:

1) Plaintiffs Case No. PN022228 document, SUPPLEMENTAL BRIEF for their case in the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO on JANUARY 8, 1999 where JOHN J. SANSONE, COUNTY COUNSEL wrote:

"Respondent hereby files this supplemental brief as to copyrights and duties of a special administrator. WITHOUT A WRITING TRANSFER OF COPYRIGHT PASSES BY INTERSTATE SUCCESSION - Telah contends that having obtained certificates of registration from



the United States Copyright Office gives them ownership of intellectual property, as it passes down to

the Public Administrator (Petitioners' Brief, page 4—5). This is not true. The federal Copyright Act

is set forth at 17 U.S.C at 101 et seq.

"A copyright in a work protected under this act vests in the author or authors of the work (17 U. S.C.

S 201(a)".

"The authors of a joint work are co—owners of a copyright in the work (17 U.S. C. S 201 (a) ".

A "-Joint work" is one prepared by two or more authors with the intention that their contributions be

merged into inseparable parts of a unitary whole (17 U.S. C S 101) . A person claiming copyright

must either be the author, or must have succeeded to the rights of the author (Epoch 8 Producing

Corp. v. Killiam Shows, Inc. (2nd Cir. 1975) 522 F2d. 737, 9 citing Ninuaer on Copyright, S 5.01).

A copyright is distinct from the material object in which its expressive content is embodied (17 U.S.

C. S 202).

Transfer of the physical object does not transfer the copyright and vice versa (17 13 U.s.c. s 202).

For example, a painting may be copyrighted and the copyright sold separate from the painting. The

copyright entitles its owner to sell copies of the original painting. However, this does not prevent the

original painting from itself being sold separately. Owners of the original painting simply cannot

make and sell copies without the copyright.

**The ownership of a copyright may be transferred in whole or in part by any means of**

**conveyance or by operation of law, and may be bequeathed by will or pass as personal**

**property by the applicable laws of intestate succession (17 U. S.C. S 201 (d) (1) ).**

Any transfer, other than by operation of law, is not valid unless an instrument of conveyance, or a

note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or

such owner's duly authorized agent (17 U.S. C. s 204 (a) ) ; PMC, Inc. v. Saban Entertainment, Inc.

(1996) 45 Cal.App.4th 579 at 592).

The writing requirement serves the same purpose as the statute of frauds for certain other types of

instruments (Pamfiloff v. Giant Records, Inc. (N.D. Cal. 1992) 794 F. Supp. 933 at 936).

Absent the requisite signed written instrument, physical transfer of a registration certificate cannot

(10)

work an assignment of the copyright referred to therein (Kingsrow Enters., Inc. v. Metromedia, Inc.

(S.D.N.Y. 1975) 397 F. Supp. 879).

State courts have exclusive jurisdiction to probate wills disposing of copyrights Republic Pictures

Corp. v. Security First Nat'l Bank of Los Angeles, (9th Cir. 1952) 197 F2d 767; Estate of White,

(1948) 84 Cal . App.2d 409; Nixuner on Copyright, S 10.06).

In the absence of a will, the intestate succession law of the decedent's domicile determines the

disposition of the copyright vested in the decedent at the time of death (17 U.S. C. S 201 (d) (1) ;

Maddux v. Grey, (S.D. Cal. 1930) 43 F.2d 441).

In determining the rights and duties of joint owners of copyright, the courts analogize to applicable

rules relating to joint ownership of real property (Nirtmer on Copyright, S 6.09).

Accordingly, in the absence of a written instrument to the contrary, the relationship between joint

owners is said to be that of a tenancy-in-common (Silverman v. Sunrise Pictures Corp. , (2nd Cir.

1921) 273 F. 909; Nimraer on Copyright, S 6.09).

The prevailing rule under the concept of tenancy—in—common is that upon the death of each joint

owner, his or her heirs or legatees acquire his or her respective share of the joint work (Edward B.

Marks Corp. v. wonnell, (S.D. N. Y. 1945) 61 r. Supp. 722; Nimmer on Copyright, S 6.09)

Under the law applicable to copyrights, the thirty—nine decedents owned all of the works now being

claimed by the Kings. Unless the Kings can produce some conveyance of ownership from the

decedents to them prior to their deaths, the ownership of the property and copyrights in such property

must pass to the heirs and legatees by intestate succession. This result cannot be altered by any

certificate of registration the Kings may have subsequently obtained.

**While it is true that a presumption arises upon issuance of a copyright registration certificate,**

**that presumption is rebuttable and evidence that the registration certificate was obtained**

**fraudulently overcomes the presumption (Seiler v. Lucasfilm Ltd. (9th Cir., 1986) 808 F2d.**

**111316, footnote 5 at p. 1322; Eckes v. Card Prices Update (2nd Cir.,1984) 736 F2d. 859).**

C. **Evidence of Plaintiffs deceit in obtaining copyrights or trademarks:**

1. For Plaintiffs to list Total Overcomers Anonymous, Inc. (aka T.O.A.) on the copyright

(11)

registration is an attempt to manipulate because the organizational name could't [illegible] be the Author.

the first 400 to 500 audio tapes were registered so how could T.O.A. be the Author.

2. The Authors on Audio Tapes recorded from 1982 to June 18, 1985 were both TI and DO.

3. The Authors on Audio Tapes recorded from June 19, 1985 to March 23, 1997 was DO.

4. Plaintiffs have not provided a Will from any of the Members of The Group.

5. The Powers of Attorney The Group gave Plaintiffs under California law expired at the death of Member as Judge Lisa Guy-Schall documented in her Statement of Decision.

6. Plaintiffs have not provided any "Assignments" to legitimize the Intellectual Property legal Transfer from T.O.A. to The Telah Foundation.

7. re: Plaintiff registering copyrights Artwork (C.B.E. Celestial Being Entity) in 1997:

   (a.) The original artwork was created and copyrighted in 1982 by Olliver Odinwood aka Ollody, legally David Cabot Van Sinderen

   (b.) Plaintiffs knowingly did not reveal Ollody as the Author on the Registration

   (c.) Plaintiffs knowingly did not correctly answer the question on the Registration of whether or not there was a previous registration of this C.B.E. lithographic print.

   (d.) Plaintiffs did not check the box on the registration to state whether it was a work for hire

8. Plaintiff ignoring the desires and intentions of the Creators of all the Groups Intellectual Property, by a plethora of audio and written evidence to include by these Creators unregistered Common Law Copyrights on their Book:

   a.) See the Heaven's Gate Book that was self published first by The Group in 1996, termed "The Blue Book's" Copyright page.

   b.) See the same content of the same Blue Book still to this day posted on the Groups Heavensgate.com published in 1996 Mark and Sarah King became webmasters for.

12

c.) See the way the Group published their video tape series, Beyond Human, last of all with a copyright notice on the plastic tape jacket that says, "@ Copyright 1992 by Total Overcomers Anonymous"

9. Plaintiffs not abiding by Court Orders that included:

(a.) Judge Breyers Consent Decree ordering Plaintiffs to distribute and dissemination the Intellectual Property (as defined in that case) to at the least "verified former Members" like Defendant Havel and co-defendant Bartel. (This seems to be one of the reasons Plaintiffs refuses to cooperate in Defendant's Discovery Request of Documents to include the Judge Breyer "Settlement Agreement" to further prove that point).

(b.) Plaintiffs have not followed the order by Judge Lisa Guy-Schall's Settlement, writing that Plaintiffs were not to sell any of the Intellectual Property Plaintiffs were given by the Court or bought from the Court. This is evidenced by Plaintiffs selling the Heaven's Gate Book and Heaven's Gate Video Tapes and perhaps other items yet to be discovered.

10. How Plaintiffs have mutated the few tasks they were exclusively given by the Group as Sarah King testified in Judge Lisa Guy Schall's Court that wrote about the Intellectual Property they were claiming to own; "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials," Last Chance to Evacuate Earth Before It's Recycled," Plant About to Be Recycled - Your Only Chance to Survive - Leave With US," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," and "Beyond Human - The Last Call," **were all given to the petitioners by the group for the express purpose of distributing copies and receiving returned copies. Thus, she and her husband, Mark, were agents or distributors, but no more."**

11. To read all three of the Court cases Plaintiff's have brought against Dan aka Gem14 of 25

former Members of the Group like Rkkody, co-defendant Bartel aka Crlody and Defendant

and against co-defendant Cathy Weaver, one would think they were the only former

members who were given Heaven's Gate Intellectual Property and are the only ones tasked

to distribute/disseminate that Intellectual Property, which is not at all true. Here are some

examples from the Court case presided over by Judge Lisa Guy Schall, who writes:

(a.) In regard to the "Away Team patches" that Plaintiffs, in this case referred to as "fabric

designs" in their Complaint Judge Guy-Schall writes: **Two "Heaven's Gate Away Team"**

**patches were mailed In Identical mailings to the Petitioners and Others according to**

**Rio DI Angelo. There Is no evidence that by these mailings the Petitioners also**

**received the intellectual property rights to the patches. Therefore, there Is no evidence**

**that a pre-mortem transfer of the intellectual property rights occurred."**

(Defendant Note: Rio DI Angelo is aka Neody, the person that also received a packet and

discovered the bodies. Jhnody also received a packet that contained maps to find the bodies while

he was in Venezuela where he is from).

(b.) "As for the painting, "C.B.E.," it was delivered to Petitioners In February of 1977, with words of

gratitude, according to Sarah King. Yet, there is no evidence that decedents gave Intellectual

property rights in the painting to the Petitioners as well."

(c.) "There is no evidence, written or otherwise, transferring ownership of Intellectual property rights

in the "The Audiotape Library of Heaven's Gate by TI and Do." Any transfer of ownership of

intellectual property, other than by operation of law, is invalid unless an instrument of conveyance,

or a note or memorandum of the transfer is in writing and signed by the owner of the rights

conveyed or such owner's duly authorized agent (17 U.S.C. § 204 (a)). "

"Furthermore, it is well settled that a copyright is distinct from the material object in which its

expressive content is embodied (17 U.S.C. § 202). Transfer of the physical object does not transfer

(14)

D. **Miscellaneous evidence of Plaintiffs Pattern of Deceit and Manipulations of the laws and the Court System to get what they want**

Plaintiffs have attempted to mislead three Courts, including the current Court, to date, by their many false statements to the Courts so need to be restrained from registering more copyrights or trademarks until they can prove their copyrights and trademarks legally obtained.

1. For over two decades Plaintiffs have repeatedly hidden their intention to hide the Heaven's Gate Intellectual Property and to steal it away from anyone who had it and stop anyone else from disseminating it. This started with Rkkody in 1997 who co-defendant Jason Bartell (aka Crlody) worked with, so can testify about and that we also have Rkkody's Manuscript to prove as well as Rkkody's partner who was also briefly in The Group using the name Gnrody and Rkkody's Daughter Kathryn who Plaintiffs sued 9 days after Rkkody died to take over all the Intellectual Property DO's Group gave directly to Rkkody before they died.

(a.) Rkkody immediately went to storage on March 27, 1997 after Mark and Sarah King informed him that their letter from The Group compelled them to do so and to use him and Oscody to help retrieve the contents of Storage and divide the "items of value" in it among those who were inclined to disseminate their Information, their Intellectual Property and that included other items as well. A battle ensued with Plaintiffs after that when Rkkody took about half of the audio tapes and proceeded to copy them and digitize them because he knew that was DO and The Groups intention as he receive the lions share of Intellectual Property with the same instructions to share with the media and anyone who wanted them. Mark and Sarah learned who Rkkody sent CD's to (for free) and threatened them to give them back or face legal action against them because by then Mark and Sarah King saw that

15

supporting The Group in some ways wouldn't be as fearful as they evidenced in 1 of 3 of 5

lied to Rkkody about disseminating the audio tapes if he would give the tapes to them. He

did give the tapes to them but kept copies because he didn't trust their intentions and as it

turned out they never did disseminate them and even now are trying to hide them away

from the public.

2. Plaintiffs knew for years before the lawsuit that co-defendant Bartel aka Crlody and

   Defendant Havel aka Swyody, possessed the approximate 214 audio tapes and all the key

   video tapes, Rkkody with Crlody's help copied and digitized and put on CD's and sent to

   them, but didn't share with Havel they had copyrights though they knew Havel was sharing

   them with people and sometimes playing some on his youtube.com 3spm channel and knew

   as early as 2008 that Bartel had posted them on the 4shared.com website for free download

   to anyone who wanted them. It wasn't until Jhnody (aka Francisco Falcon sent a thumb drive

   to Havel with some 930 audio tapes on them that Mark and Sarah King had sent to Jhnody

   for storage that Plaintiffs started threatening a lawsuit to stop because Defendant had started

   playing some on his youtube.com channel as he did for years before them unhampered by

   Plaintiffs.

3. In November of 2021 before Plaintiffs sued Defendants they presented Havel and Weaver

   with a Cease and Desist at their lawyers office in Phoenix, yet did not give any details of

   exactly what Defendants were to Cease and Desist from. They did not even tell Defendants

   about their copyrights or trademarks. They threatened Defendants with fines that even

   Defendants children would have to pay and that Defendants could incur Jail time if they

   didn't cease all public use of any of the Material aka Intellectual Property, even though

   Defendants never generated any funds from giving away Material or playing of audio tapes

   on Defendant Havel's Youtube 3spm channel. They stated to Defendant(s) that they had

(16)

everything from The Group copyrighted and Defendant Havel didn't believe them ask

them many times then and in Email evidence from years before why they say that and all

they would say is that they were given all the Materials and if we saw their documentation

we would agree with them in how they were handling the Material, yet would never tell

Defendants specifically or show Defendants the evidence of that alleged documentation.

Defendant didn't know until this lawsuit surfaced finding the Judge Guy-Schall Decision that

they had no legal documentation for taking out copyrights or trademarks on any of the

Groups Material.

4. In Plaintiffs Reply to Defendant's Answer Plaintiffs made no effort to lay out exactly what

audio tapes they had copyrighted even after Defendant in his Answer (DE 20) explained

repeatedly not knowing they even had copyrights at the time of the alleged infringements and

not knowing which of the 900+ audio tapes they had copyrighted and were part of the 486

audio tapes in the copyright registration deposit.

E. Plaintiffs further tried to manipulate the Court.

1. Judge Gosch held a zoom hearing on June 14, 2023 Defendants Havel, Bartel and Weaver

in which Mark King was silent and not visually present and Plaintiffs agreed to provide two

Lists to the Court and to Defendants in order to reach a just "Stipulated Preliminary

Injunction" against Defendants because Havel and Weaver were already abiding by a self-

imposed preliminary injunction since the lawsuit began but asked to learn which of the 1061

audio tapes were registered as copyrighted and which were not registered and if agreed upon

that stipulated preliminary injunction didn't mean Defendants were agreeing to any

Infringements of any Copyrights and Trademarks.

(a) Plaintiffs agreed to providing the Two Lists to the Court and Defendants as part of

agreeing to a Stipulated Preliminary Injunction against Defendants.

(b) Plaintiffs admitted to there being "over 1000" audio tapes. This was the 4th time

Plaintiffs authenticated approximately how many audio tapes there were, though Mark

King had said on a number of occasions as 1061. See DE 20-2 Havel's Answer, an email

record on page 156 that quotes Mark King and Sarah King (signed Mrc/Srf) saying: **"We**

**thought you knew we had copyrights on everything (yes, even the 1061 individual**

**audiotapes). The Telah Foundation has full ownership, full copyrights and**

**trademarks on everything the Group owned."** This statement came on September 1,

2021 and was followed by Mark King coming into Havel's (aka Sawyer) Livestream on

Youtube.com channel 3SPM chat room and saying twice there were 1061 audio tapes.

(c) Plaintiffs provided two Lists that once again sought to hide the full record of what audio tapes

they had copyrighted and which ones were not. Instead of providing the true descriptions The

Group initially put together, (which we have some evidence of) they sought to mask that part of

the audio tapes identity by making every one of the newly revealed 1082 audio tapes to have a

description/topic of "Various Discussions".

(d) Plaintiffs also tried to change the designation of the Audio tapes that were not registered to

claiming they held copyrights to all of the audio tapes regardless of whether they were registered

or not, even claiming to be the Creators of the unregistered audio tapes which was a falsehood

Defendant pointed out during the hearing.

(e) Plus the two Lists are full of major errors. For instance, some 22 of the audio tapes they said

were in List 1 (DE 120-1) were non-existent by their numbers according to The Group provided

tape log Rkkody put on his CD's in 1997. Another example being that tape 929, the last one in the

log Havel received from Jhnody who received from Mark King and/or Sarah King and posted on

Havel's sawyerhg.wordpress.com blog that Plaintiffs included in their Complaint Exhibit H (DE 1-

H) has the same date and time as audio tape 1082. It's not just a typo as there are at least 20 tapes

redacted from the List 2 which perhaps accounts for the 21 tape discrepancy between the 1061 and

1082. So I claim they have severely altered and even spoiled evidence of Defendants having

(18)

infringed on even their so called registered copyrights of audio tapes.

(f) Plaintiffs went on to say in the hearing that if Defendant played one of the unregistered audio tapes on his Youtube channel they would register them and file a motion for another preliminary injunction against Defendant. Meanwhile Defendant didn't have any plans to play those audio tapes though wants to. (By the way, Defendants 3spm Youtube channel has never been monetized and Defendant has never made any money from the audio tapes or video tapes or writings from The Group.

(g) Plaintiffs have a "master log". We have documented proof in an email to Weaver from Mark King and/or Sarah King saying so. So why not just provide that master log file with the descriptions that are on the same log file given to Jhnody if that is accurate?

(h) There are several partial log files, even some that are hand written that were presumably in each box of audio tapes. Jason Bartell received some of The Groups handwritten logfile. There is another that The Group, (Rkkody said) typed in that Rkkody provided on his CD's that I possess. I provided examples in my filing against Plaintiffs proposed Order for a Preliminary Injunction. Plaintiffs may still be engaging in deceitful behavior by providing incomplete and inaccurate Lists of what audio tapes they registered and haven't registered.

(i) Plaintiffs claims to have registered Copyrights for 486 Audio Tapes, listed in DE 120-1, the Exhibit 1 List of the 486 audio tapes in that registration Deposit. However, examination of that List shows at least 18 of those 486 tapes they listed in Exhibit 1 never existed. The following tapes that don't exist are: 122, 129, 134, 137, 138, 147, 165, 167, 168, 174, 176, 177, 178, 180, 183, 206, 214 and 451. Their non-existence should have been known by Plaintiffs if they simply glanced over the existing log files that came with the audio tapes. Plus Plaintiffs could have seen in the log file that certain tape numbers were skipped. So why would Plaintiffs include those tape numbers in their Lists provided to the Court and Defendants?

I don't know why Plaintiffs didn't count the actual tapes they sent to the Copyright office. I don't know how they provided the original tapes or copies of cassettes or were those 468 already converted to digital by then, I don't know. It may be a mistake but as I don't know why they would

(19)

want to intentionally leave a mistake like that and couldn't prior it filed correctly. These tapes

were 486. Plaintiffs, Mark King and Sarah King registered that copyright at least a year before

they received additional tapes from Storage in 1999 via the Judge Lisa Guy Schall's Settlement so

they couldn't have actually sent 486 audio tapes to the Copyright Office. Plaintiffs can not be

depended upon to tell the whole truth about these matters so should not be allowed to register any

further copyrights or trademarks of audio tapes or other Material they did not Create.

2. In Plaintiffs Current Complaint, re: this perspective in DE 1 at 10... **"That litigation ended with
   the entry of a consent decree in 1999, which conveyed to the Foundation not only a large
   amount of physical property, but also all of the intellectual property rights belonging to the
   Group."**

   The part that is untrue is saying "All". This is not a true statement as in the documentation

   Defendants have, neither Court ever seemed to hear about the at least 6 other individuals (besides

   Mrc/Srf (aka Mark King/Sarah King) who received as stated above, "...**all of the intellectual
   property rights belonging to the Group.**" on or before Mark King and/or Sarah King received any.

   The biggest provision of substantial evidence of this fact comes from Jhnody (Francisco Falcon)

   who also received considerable Intellectual Property and "rights" directly from DO and his Crew at

   approximately the same time Mark King and Sarah King and Rkkody,  Rio (Neody), Oscody, Flxody

   and Ablody also received Intellectual Property and such "rights".

   Defendant doesn't know exactly what Rio (Neody) and Oscody and Flxody and Ablody also

   received. What we do know is that each of these received "a similar packet" to what Jhnody and

   Rkkody  and Mrcody/Srfody received because The Group said in the list they provided to Rkkody

   and Jhnody that they had sent "similar packets" to the other individuals named above.

3. In DECLARATION OF MARK KING IN SUPPORT OF PLAINTIFF'S MOTION FOR A

   PRELIMINARY INJUNCTION (DE 67-1 at paragraph 4) Mark King states under oath:

   **"I have reviewed the Complaint (Docket No. 1) filed in connection with the above-captioned
   matter and state that I am aware of the factual averments made therein and the factual
   averments made therein are true and accurate. To the extent, if any that there are any**

(20)
bng

inconsistencies between the Complaint and this declaration, this declaration should govern because it is based on information and documentation that has been learned and obtained, respectively, since the date the Complaint was filed."

What Mark King is attempting to explain away is the vast difference between what Plaintiffs filed in their Complaint (DE 1 at 8) that stated:

**"In 1994 the directors of the Foundation renewed a long-standing relationship with a group known as "Total Overcomers Anonymous", "TOA", or "Heaven's Gate" (the "Group").**

**Three years later, in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County."**

And what Mark King stated in Plaintiffs Motion for a Preliminary Injunction:

**"Plaintiff, which is a not-for-profit organization, acquired the intellectual property rights related to these works and trademarks in or around 1999, following the passing of the 39 Heaven's Gate members and after a lengthy court battle.  [King Declaration, Exh. A, at ¶ 8]**

Therefore, as Mark King stated in paragraph 4 of his Declaration, there apparently was a clarification of any inconsistencies between DE 1 at 8 and DE 67 – King Declaration, Exh.A at 8;

**"…based on information and documentation that has been learned and obtained, respectively, since the date the Complaint was filed."**

Thus between May of 2021 when the Complaint was filed and the present filing, Mark King seems to be saying he learned he was wrong about the year in which he and Sarah King **"acquired the intellectual property rights related to these works and trademarks in or around 1999"** – the Works in the Complaint and The Material in this Motion Brief **"after a lengthy court battle"** rather than **"in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County"** saying nothing about having "rights" to that Material/Works from The Group in any case but from **"a lengthy court battle"**.

Additionally, in Plaintiffs Complaint they stated that there was more than one lawsuit going on that

(21)

had something to do with Plaintiffs desiring to have possession and legal issues of the

Intellectual Property belonging to The Group, though they repeatedly say to ALL of the Material and

have ALL of the Rights which are ALL erroneous statements. (See DE 1 at 10 and 11) and then in

paragraph 12: **"The Foundation has been the owner of the Property from 1997 to the present"**

which they have said themselves didn't occur regarding the Property in the Storage or in Rkkody's

hands until 1999. (DE 1 at 12).

So what I want to know is what was the **"information and documentation that has been learned**

**and obtained"** between when this lawsuit was filed in May of 2021 and the date of Mark King's

Declaration?

4. In Plaintiffs Case No. before Judge Charles Breyer Plaintiffs once again they built their case on a

foundation of mistruths and financial pressure on Defendant Morea to settle. Plaintiffs said in the

Judge Breyer CASE 3:98-cv-00892-CRB Complaint (DE 1 at 16): "16. When Do and members of

The Class "exited" earth, they left behind specific instructions to other individuals associated with

the Heaven's Gate religious organization. **Plaintiffs MARK and SARAH KING were given**

**authority to control and manage the organization's real, personal and intellectual property.**

**This included transfer of all copyrights and trademarks held or asserted by the organization,**

**all rights to the organization's websites**, rights to accounts receivable from customers of a business

run by the organization and specific assets of individual members of Heaven's Gate who had

departed."

(a.) Plaintiffs have never shown any documents from the Heaven's Gate Group that gives them any

"authority to control and manage the organization's real, personal and intellectual property". That

was what they wanted to do, contrary to the wishes of the Heaven's Gate Group that I can show a

great deal of evidence of.

(b.) Plaintiffs have yet to show the Heaven's Gate Group had any registered copyrights or

trademarks and never have shown any documents giving Plaintiffs the right to "transfer" those

alleged copyrights and trademarks. But what putting this in the Complaint did was set the stage for

receiving those rights because Defendants (The Moreas primarily) weren't equipt to challenge

(22)

their saying that. Mark and Sarah King seemed to wait to silence her body and escape hoping

he could have significantly challenged them in Court.

(c.) Defendant now knows Plaintiffs had copyrighted and trademarked Material AFTER the Group

left this world in 1997. The Consent Decrees only came over a year after they had already

copyrighted and trademarked some of Heaven's Gate Intellectual Material. Defendant hasn't seen

any documentation that the Consent Decrees were retroactive to apply to Material they copyrighted

over a year before.

(d.) Here is the ruling Plaintiffs may be using to justify thinking they had copyrights over all

The Groups Material: In CASE NO.: CV-98-00892 CRB under Judge Charles R. Breyer's

Consent Decree on 7-9-99, DE 26 at 8 Judge Breyer writes:

(i.) **"TELAH will have exclusive rights and responsibility for ownership and management of**
**the intellectual property of The Class/the Heaven's Gate group (including the numerous**
**other names used by the group), including copyrights and trademarks to books, videotapes,**
**audiotapes, CD'S, websites, letters, other documents, names and symbols."**
But The Heaven's Gate Group had no registered copyrights (except for Olliver Odinwoods

copyrights of 14 Illustrations and the Script for The Meeting), unless one considers the copyright

all Creators of Material automatically possess by creating a work or unless one considers the

Common Law Copyright The Group put on their Book, a copyright they spelled out and can still

be seen on heavensgate.com under the Book link, on the Copyright page that encourages anyone

to copy the book entirely or in part as long as nothing is changed or added and it's not done for

commercial purposes.

(j.) Judge Breyer goes on to write in his Consent Decree that Telah would have: **"…exclusive rights**
**and responsibility for ownership and management of the intellectual property,…"** **"…**
**including copyrights and trademarks to books, videotapes, audiotapes, CD'S, websites,**
**letters, other documents, names and symbols…"**.
Had Mark King and Sarah King really wanted to operate on behalf of what The Creators wanted,

23

expressed in many ways, they would have embraced The Groups existing Common

Law copyrights if at all so all who wanted access to The Groups Material could have it and could

also perform the task The Group hoped for, to disseminate their information. Instead Mark King

and Sarah King conspired to construct a copyright to the Telah Foundation for the slightly updated

version of the Book written by the same Creators, and then on top of that sue former Students like

themselves for abiding by the Creators Common Law Copyright?

In the Breyer Case, Plaintiffs really played up the Copyrights they had registered on some of The

Groups Material they took no part in creating nor had any documentation from The Group to

register any copyrights to themselves. Plaintiffs in essence stole the Material that belonged to

Rkkody and after his death, his daughter Kathryn Morea.

## Conclusion

Defendant believes he has met all the criteria for the Court to order a Preliminary Injunction

against Plaintiff's registering any more Copyrights of Audio Tapes  and/or Trademarks (like for

Ollody's paintings like the C.B.E. painting) until this alleged infringement case is concluded.

Defendant has provided evidence Plaintiff has just filed this past July 7, 2023 a new copyright

registration using falsified information - listing a deceased Student of TI and DO as an Audio

Tape Author that I can personally testify was never the author of  any of the Groups Intellectual

Property with one exception being the document Srrody wrote in the Heaven's Gate Book.

Additionally, it has been shown that the copyrights Plaintiffs have are at the least invalid and at

the most fraudulent, that is pending the conclusion of this case.

Plaintiffs are trying to keep these audio tapes hidden and this is actually a Freedom of

Information and a Religious Freedom case in that regard, at least for Defendant's Counter

Claim.

24

Defendant tried to show some evidence of how Plaintiff continued has been using the law to manipulate now three Courts.

Dated: *NOV. 15, 2023*

*Stephen Havel*

Stephen Havel

5776 Grape Rd.
Suite 51
PMB# 121
Mishawaka, IN. 46545
Sawcat575@gmail.com
Defendant