UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human, Inc.<br><br>Plaintiff,<br>v.<br><br>Steven Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-JD-MGG  |

# DEFENDANT HAVEL'S RESPONSE TO PLAINTIFF'S REPSONSE TO DEFENDANT HAVEL'S MOTION FOR A PRELIMINARY INJUNCTION

Defendant hereby submits its Response to Plaintiff's Response [DE 187] to Defendant Havel's Motion for a Preliminary Injunction [DE 179, DE 180] against Plaintiff filing more copyrights and/or trademarks for the Audio Tapes or for other Heaven's Gate Intellectual Property.

Plaintiffs response clearly shows how badly they want to halt Defendants from having any Discovery, by trying to strike a deal with the Court.

A. Regarding Plaintiff's claim that:

"Defendant Havel falls well short of meeting the required showing for a preliminary injunction. A party seeking a preliminary injunction must first show "that: (1) absent

1

preliminary injunctive relief, [the party] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [the party] has a reasonable likelihood of success on the merits."

**Defendant's Updated Responses to these three conditions needing to be met to order a Preliminary Injunction against Plaintiffs:**

1. re: Condition No. "(1) absent preliminary injunctive relief, [the party] will suffer irreparable harm in the interim prior to a final resolution"

   a.) It would allow Plaintiffs to falsify more copyright registrations as they just did in July by registering audio tapes 487 to 498 claiming Steven McCarter, aka Srrody is listed as author of the audio tapes when it can be easily proven is not at all the Author.

   b.) It would further complicate this case for the Court and the upcoming Jury to sort through, especially since Plaintiffs created a new author for the audio tapes.

2. re: Condition No. "(2) there is no adequate remedy at law";

   Plaintiffs can register copyrights for anything they want and the only way such action can be challenged is by suing them, which Defendant has no capacity to do because it would cost a huge amount of money to maintain. Thus the time to challenge their copyrights is in this case and through Defendants Counter Claim.

3. re: Condition No. "(3) [the party] has a reasonable likelihood of success on the merits";

   a.) Because in Plaintiffs own Court Case, Judge Lisa Guy Schall Case PN022228 – Statement of Decision in 1999 wrote:

2

"There is no evidence, written or otherwise, transferring ownership of intellectual property rights in the "The Audiotape Library of Heaven's Gate by TI and DO". Any transfer of ownership of intellectual property, other than by operation of law, is invalid unless an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent (17 U.S.C. § 204 (a)). Furthermore, it is well settled that a copyright is distinct from the material object in which its expressive content is embodied (17 U.S.C. § 202). Transfer of the physical object does not transfer the copyright and vice versa (17 U.S.C. § 202). Since there is no written instrument transferring ownership of the intellectual property to the petitioners, the estates own all intellectual property as tenants in common."

b.) Plaintiffs have just registered copyright for 10 audio tapes authored by DO aka Marshall Herf Applewhite, but listed Steven Terry McCarter (a student and one of the deceased) as the Author while his voice may not have even been heard at all on any of those audio tapes or if he was heard would have been ever so briefly to ask DO, his Teacher questions.

B. Despite what Plaintiffs say there is significant evidence that Plaintiffs have added audio tapes above the 486 to the case and they have stated they had copyrights for them. They have also added at least one Video tape to the case; DO's Final Exit.

1. Plaintiffs state, "However, Plaintiff has not added any copyrights to this case, nor can Defendant Havel point to any pleadings showing as much. Plaintiff's act of simply seeking copyright registrations for works that are not involved in this case has no impact on Defendant Havel vis-à-vis the issues of this case." [DE 187 at Paragraph 3]

3

Here is considerable evidence of how Plaintiffs define the word "copyrights" and how it show that the audio tapes 487-498, that they newly registered are absolutely part of this case:

a.) Plaintiffs have had varied definitions of what they claimed to be their copyrighted "Audio Works". For instance, in their initial and amended Complaints (DE 1 and DE 132) they define "Audio Works" as:

> "15. The hundreds of audio cassettes (hereafter the "Audio Works") were registered (by the Foundation) with the United States Copyright Office on October 27, 1997 as Reg. No. SRu00298530."

This Copyright registration refers to 486 audio tapes defined as "Audio Works" but then Plaintiffs expand that definition to include "**additional tapes**" as the "**entirety of the Audio Works**" (Bolding added for clarity):

> "29. On or about June 20, 2021 Defendant Bartel announced that **more stolen audio tapes** were being sent to him by Co-Defendant Havel and that Defendant Bartel would post those **additional tapes** for free download on the 4Shared website.
>
> 30. On or about June 30, **after receiving additional tapes** from Co-Defendant Havel, Defendant Bartel **put up the entirety of the Audio Works** on his Wordpress blog for free download"

b.) Here's evidence Plaintiffs considered they held **"copyrights"** over all the "entirety of the Audio Works" they have just redefined to include additional tapes to the original 486:

> "34. Upon information and belief, Defendants Havel and Weaver knowingly intend to infringe the **Foundation's copyrights in the Audio Works** and to take active steps to continue infringing, despite their knowing infringement."

4

In case it seems Plaintiffs are still talking about the 480 audio tapes, here is clarification a more precise new definition of Audio Works (with my bolding added for clarity), at:

"35. For example, on or about July 12, 2021, **Defendant Havel posted to his website a log of the Audio Works** with the following commentary: So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in mulitple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them.

36. A true and correct copy of this post is attached hereto as Exhibit H." [DE 1 & 132]

Here is the start and end of that long tape "log of the Audio Works" filed by Plaintiffs as Exhibit H that numbers the audio tapes from 1 to 929: (487-498 are parts of this log).

*Start of logfile example:

"TI, DO & Students Audio Tape Library Classroom Instruction / Tape Log

001 AB 07/14/1982 Building reverence. Practice of silence. Silva Mind Control – off track – change M.O. (Ti & Do). "Tree" – Keep mind at feet of chief – ask to be examined. Object – "greeting" – separation from teachers. Meditation – relaxation vs. stress 76 min.

929 A 01/25/97 – 17 min – Class & JHN phone call regarding UFO Conference – Meeting with Lee Shargel.

*end of logfile example

5

c.) Here is additional evidence from Judge Gosch's Order [DE 111 Section 2 paragraph 2] in which Judge Gosch recounted his June 14, 2023 Zoom Conference when Plaintiffs stated they held "over 1000 copyrighted audio works in total":

> "Plaintiff added that, while copyright registration SRu298530 lists a deposit of 486 audio tapes, there are over 1,000 copyrighted audio works in total. *See Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009) ("Compliance with the registration requirements of 17 U.S.C. § 411(a) is not a condition of copyright protection but is a prerequisite to suing for infringement.") As agreed by the parties, Plaintiff must **FILE** a list of these other works. Plaintiff must file this list by **July 7, 2023**"

d.) Plaintiffs in that same Hearing said if Defendant played audio tapes for the public, speaking at the time of the audio tapes above the 486 they have registered copyrights for, they would register them as copyrighted and add them to this lawsuit against Defendant. Defendant was fairly certain Plaintiff would begin to seek to copyright the audio tapes they had not yet copyrighted even though Defendant did not play any audio tapes for the public. At that time Defendant began constructing this Request for a Preliminary Injunction but put it on hold to see if Plaintiffs would register more copyrights for additional audio tapes above the 486.

C. Plaintiffs failed to add this copyright registration NO. SRu001552631, filed on 07-07-2023 for Sound Recordings - Tape 487 and 9 Other Unpublished Works to their Court ordered Prediscovery Disclosures Plaintiff filed on 7-13-20-23 [DE 129], 6 days after Plaintiff registered this copyright.

Plaintiff has interfered with Discovery by hiding this latest Copyright registration from the Court and from Defendant even though Judge Gosch ordered Plaintiff and Defendants to give

6

reports of any additional Discovery disclosure they possessed beyond the Initial Disclosure every 6 weeks throughout Discovery. This is another reason why Plaintiffs need to be restrained by the Court from filing further Copyright and/or Trademark Registrations and need to provide Defendant with all the requested Discovery from Defendant and let the truth be available to the Court and Jury.

D. Also in regard to Plaintiffs saying they "haven't added new copyrights to this case", again they are hiding the truth evidenced by Plaintiffs claim that Defendant infringed on their copyright of the video tape "DO's Final Exit," when the video was played at a meeting in which Defendant was a guest. (DE 90-1 Paragraphs 9 and 10):

> "9. The lawsuit that Plaintiff has brought against Mr. Havel and his co-Defendants has not caused Mr. Havel to stop circulating Plaintiff's copyrighted materials.
>
> 10. For example, on December 17, 2022, Mr. Havel was paid to perform at a "Heaven's Gate Re-Examined" event at a venue in Georgia called the "Lodge of Sorrows," during which time he played "the Final Exit Video."
>
> 11. Plaintiff is the owner of "the Final Exit Video." See Doc. 81-1 at 27:16; id. at 28:7."

Plaintiffs say here that the playing of the video tape was an "example" of Havel's "circulating Plaintiff's **copyrighted materials**".

E. In Plaintiffs filing; [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [DE 120 the end of Paragraph 1] they admit to having Registered Audio Works and **"additional sound recordings including tapes 487-1082"** which proves audio tapes 487-1082 are in this case.

7

Also within this document Plaintiffs stretch the truth by referring to these additional "unregistered" audio recordings as all part of "The Audiotape Library of Heaven's Gate by Ti and Do" which is the title Plaintiffs gave for the Deposit of 486 registered audio tapes in their original copyright registration.

Then Plaintiffs attempt to portray themselves as having all the audio tapes copyrighted, (perhaps to cover for when their counsel blundered during the Hearing by saying something like, "Plaintiff as the creators have copyrights over all the audio tapes"), by seeking to lose the separate distinction between what audio tapes were copyright registered from those audio tapes not copyright registered by referring to all of them as the "copyrighted work". Here is the full context of Plaintiffs statements:

> "The copyrighted works listed herein are referred to collectively as the "Registered Works". Plaintiff is also the owner of additional sound recordings, including tapes 487-1082 in the "The Audiotape Library of Heaven's Gate by Ti and Do" (the "Unregistered Works") and listed in the attached Exhibit 2. The Registered and Unregistered Works are collectively referred to herein as the "Copyrighted Works".' [DE 120 the end of Paragraph 1]

F. Where Plaintiffs state in Paragraph 4, "its ownership rights cannot be relitigated" that is not necessarily true, yet Defendant doesn't plan to try to re-litigate those cases but they did not receive any copyrights from those cases because the Group held no registered copyrights besides having the CBE. Image copyrighted by Olliver Odinwood in 1982 which voids the copyright they registered for the same image in 1997. This is the reason Plaintiffs said they were not going to provide the documents Defendant requested in his first Request for Documents during

Discovery which in part referred to these 14 acrylic paintings Author Oliver O. Janwoge, aka Ollody painted.

Possession of Intellectual Property is not the same as having a copyright protection registered for that same Property. Defendant is not trying to take away any of the Intellectual Property Plaintiffs hold. Defendant only wants Plaintiffs to share those materials with Defendants to disseminate in whatever ways they see fit to abide by what DO and the Group wanted, so that it's not disseminated for profit though could be organized to pay for the media required for dissemination as DO indicated he approved of.

The copyright office has informed me that the only way to challenge a copyright claim is through litigation. Plaintiffs could be fined and imprisoned (though I don't want either) by their blatant disregard and fraud on the copyright office and that is especially evident by their new copyright registration that is filled with mistakes that some seeme to be intentional as Mark and Sarah King know very, very well that Srrody, aka Steven Terry McCarter was not the author of any of the audio tapes and that they have no legal documents that the Group transferred to Plaintiffs any intellectual property rights.

G. Plaintiffs continue to say in Paragraph 4:

"Yet, Defendants continue to seek overbroad discovery related to previously litigated cases and continue to assert that they have a reasonable likelihood of success, all premised on their misunderstanding of the relevant law. [See DE 180 at 3–4]."

Plaintiffs opinion about what they call Defendant's "overbroad discovery" has nothing to do with this Preliminary Injunction Request. But since they brought up Discovery, it's interesting that they tried to strike a deal with the Court, in their Conclusion.

9

Plaintiffs claim Defendant's Discovery is "overbroad", related to previously litigated cases…" as if they never referred to those cases in this lawsuit. In fact in Mark Kings Declaration, Mark King changed the Complaint statement of having had the Groups Intellectual Property transferred to them starting in 1997 or placed in storage to having received Intellectual Property Rights in 1999 from two Consent Decrees.

H. Then in Paragraph 5 Plaintiffs state;

> "Further, Defendant Havel's Motion appears to be premised on his misconstruing existing records at the U.S. Copyright Office. For example, the Copyright Office inadvertently omitted a portion of Plaintiff's name in its most recent registration. This omission was brought to the Copyright Office's attention and has since been corrected."

Defendant did not know why Plaintiff left off a big part of their Foundation's name, "Level" in their new copyright registration. Plaintiffs blame it on the Copyright office and perhaps that's what happened but given the large amount of Plaintiffs outright, easily provable deceitful behavior, that is an embarrassment to the way TI and DO and their Students acted, Defendant included that discrepancy in Defendants Motion, but it was hardly the "premise" of this Motion as Plaintiffs exaggerate.

I. In Paragraph 6 Plaintiff tries to strike a deal with the Court by stating:

> "Despite the above, Plaintiff would agree to delay applying for any new copyright or trademark registrations until this lawsuit is resolved provided that there are no extensions to the existing Scheduling Order. Plaintiff would agree to the above in the spirit of cooperation and in an effort to arrive at a "just, speedy, and inexpensive determination" of this proceeding"

As of the Judges Order [DE 189] Defendant's Motion to Extend Discovery is moot because all the deadlines were put on TOLL for a time.

Conclusion:

1. In Plaintiffs mind, as shown, it is clear that they considered that the audio tapes labeled as 001-929 were all part of this case.

2. Defendant has shown considerable evidence that shows Plaintiffs were not telling the truth to the Court about which tapes were part of this case.

3. Defendant has shown considerable evidence that shows Plaintiffs have stated to the Court that they had copyrights for all the "over 1000" or 1061 or 1082 (still not a conclusive number) Audio Tapes and for other Heaven's Gate Intellectual Property Plaintiffs and others have in their possession.

4. Defendant has shown that Plaintiffs need to be restrained from registering new copyrights (as they just did) because if they aren't restrained it would cause irreparable damage to Defendant's case and to the public at large because Plaintiffs will prevent anyone from having the wealth of information contained in those audio tapes, even though they do not in any way promote suicide.

5. The damages are also irreparable because to challenge Plaintiff's copyrights, however the amount of evidence that there was some fraud in obtaining them, would require of Defendant untold time and money, but hopefully can be accomplished through the current court action Plaintiffs brought against Defendant.

6. Defendant doesn't trust Plaintiffs would informally agree to not file any further copyrights or trademarks.

11

7. Defendant rejects Plaintiffs ploy to strike a deal with the Court, to voluntarily refrain from filing further copyright and/or trademark registrations, in return for not allowing Defendant the needed time for Discovery which is to avoid responding to any of Defendant's Discovery Requests.

Dated:

12-12-2023

*Stephen Havel*

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

**UNITED STATES POSTAL SERVICE**

**PRIORITY MAIL**

Retail

**P**  US POSTAGE PAID  $9.65
Origin: 31401
12/12/23
1278150701-52

PRIORITY MAIL®

0 Lb 3.50 Oz
RDC 03

EXPECTED DELIVERY DAY: 12/18/23

C005

SHIP TO:
204 S MAIN ST
SOUTH BEND IN 46601-2122

USPS TRACKING® #

9505 5124 3508 3346 4614 86

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

**PRIORITY MAIL**

FROM:
Stephen Havel
5776 Grape Rd.
Ste 51 PMB #121
Mishawaka, IN 46545

TO:
US District Court
Robert Grant Federal Courthouse
204 S. Main St.
South Bend, IN 46601

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE