UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION, INC., | |
| Plaintiff, | |
| v. | CASE NO. 3:22-CV-395-MGG |
| STEPHEN ROBERT HAVEL, et al., | |
| Defendants. | |

**OPINION and ORDER**

Ripe before the Court are two discovery motions filed by *pro se* defendant Steven Havel: (1) his Motion to Order Plaintiffs to Produce Havel's First Request for Production of Documents, filed on September 15, 2023; and (2) his Motion to Compel Plaintiffs to Produce Havel's Second Requests for Production of Documents, filed on October 30, 2023. [DE 151, DE 172.] As explained below, the Court must deny both motions. Mr. Havel is instead ordered to meet and confer with Plaintiff's counsel should he wish to pursue his discovery requests further.

**I.      Relevant Background**

Plaintiff filed this case on May 18, 2022, alleging that Defendants infringed on its registered copyrights and trademarks. Following a zoom status conference with the parties on June 14, 2023, the Court entered its Rule 16(b) Scheduling Order to control the progress of this litigation. [DE 117 at 5-10]. The Scheduling Order set December 14, 2023, as the deadline to complete discovery in this case. Moreover, to facilitate the

parties' completion of discovery before this deadline, the Court also set October 16, 2023, as the deadline to file all discovery-related nondispositive motions. Regarding this nondispositive motion deadline, the Court's order advised as follows:

> For a motion filed before this deadline, no extension of discovery will be granted without good cause and the court's consent under Fed. R. Civ. P. 16(b)(4). To facilitate a pretrial status conference and a prompt trial date, no motion to extend discovery or to continue other pretrial deadlines will be approved after this nondispositive motion deadline, except for excusable neglect or other extraordinary reasons. Accordingly, after this deadline, good cause alone will <u>not</u> be sufficient to constitute such a reason. The parties are thus advised to complete timely discovery and, if necessary, file any motion to continue pretrial deadlines, motion to compel, or such motions that may impact the schedule well enough in advance of this deadline to permit any necessary briefing and time for the court to rule.

[DE 117 at 6]. The Court issued this Scheduling Order after already addressing the parties' numerous motions disputing how the case should proceed. The *pro se* defendants filed most of these motions—many did not comply with the Rules of Civil Procedure or the Court's local rules, and many used a vituperative tone that impugned the motivation or litigation tactics used by Plaintiff. Accordingly, the Scheduling Order concluded with the following advisements to all parties:

> The parties and attorneys are **ADMONISHED** to cooperate in good faith and comply with all applicable rules during the discovery process. Failure to litigate this action consistent with the procedures set forth in the Federal Rules of Civil Procedure could result in sanctions up to and including dismissal of all claims.
>
> To that end, the Court reminds the parties and attorneys to take reasonable steps to preserve all electronically stored information (ESI) that is relevant to any claim or defense. This requirement relates back to the point in time when the party reasonably anticipated litigation about these matters. The parties are encouraged to negotiate a stipulated protective order regarding the confidentiality of discovery materials while this action

2

>is pending (if deemed necessary). A protective order template, consistent with Seventh Circuit authority, is available at https://www.innd.uscourts.gov/judges-info/MGG.

[DE 117 at 7-8].

Mr. Havel filed his First Request for Production of Documents approximately two months later, on August 9, 2023, seeking twenty-six categories of documents from Plaintiff. Among his requests were copies of documents Plaintiff submitted to the Copyright Office; correspondence between Plaintiff's directors and other members of the religious group Heaven's Gate; records from other litigation involving Plaintiff; correspondence between the parties; and correspondence between Plaintiff and third parties. [DE 135]. Plaintiff timely filed its responses to these requests on September 7, 2023. [DE 142]. Plaintiff objected to many of these requests as overbroad and not relevant to any claim or defense in this case, or otherwise seeking documents that are not in its custody or control. Plaintiff's responses further indicated that it had responsive documents to produce, but these documents contained confidential or proprietary information such that a protective order would need to be entered first. [*See* DE 142 at 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, and 20].

Upon receiving this response from Plaintiff, Mr. Havel filed his Motion to Order Plaintiffs to Produce Havel's First Request for Production of Documents about a week later, on September 15, 2023. Mr. Havel challenges all of Plaintiff's objections and wholly rejects Plaintiff's request for a protective order, contending that Plaintiff has not shown that it will be required to reveal confidential or sensitive information. Plaintiff responded to Mr. Havel's motion on September 29, 2023. Plaintiff contends that Mr.

3

Havel's motion should be denied for his failure to meet and confer with Plaintiff's counsel. Like its response to his requests, Plaintiff maintains that the scope of Mr. Havel's requests should be limited and that a protective order should be entered before Plaintiff discloses certain documents. Plaintiff also submitted a proposed protective order as part of its response.

The same day Mr. Havel filed this motion, he also filed his Second Request for Production of Documents. In this second request, he seeks sixty categories of documents—primarily filings and exhibits submitted in another case involving Plaintiff. Plaintiff timely filed its response to this second request on October 11, 2023. [DE 169]. Plaintiff's responses prompted Mr. Havel to file another Motion to Compel on October 30, 2023, where he primarily disputes Plaintiff's request that a protective order be entered before it discloses discovery. Plaintiff responded to Mr. Havel's second motion on November 13, 2023. Plaintiff reports that this second document request was primarily to authenticate documents already in Mr. Havel's possession and that Mr. Havel has again refused to consider a protective order despite several of his newer requests seeking documents filed under seal in another case. Plaintiff also disputes the timing of the second motion, contending that Mr. Havel filed it two weeks after the discovery-related nondispositive motion deadline.

The time for Mr. Havel to file any reply in support of his motions has now passed. *See* N.D. Ind. L.R. 7-1(d)(3). The motions are ripe for ruling.

4

## II. Discussion

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When a responding party withholds discoverable information responsive to a party's discovery requests, a motion to compel discovery is allowed. Fed. R. Civ. P. 37(a)(3)–(4). But before a motion to compel is filed, the parties must first try to work it out among themselves. As explained in Federal Rule of Civil Procedure, all motions to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). This is not a technical formality. Informal resolution plays an important part in the mandate to achieve a "just, speedy, and inexpensive resolution" of an action. Fed. R. Civ. P. 1. By meeting and conferring, parties are often able to "narrow the outstanding discovery issues and assist[] the Court in crafting more specifically-tailored relief." *Doaks v. Safeco Ins. Co. of Am.*, No. 309-CV-367JTM, 2010 WL 3940907, at *1 (N.D. Ind. July 20, 2010), *report and recommendation adopted sub nom. Dorothy Doaks v. Safeco Ins. Co. of Am.*, No. 3:09 CV 367, 2010 WL 3940891 (N.D. Ind. Oct. 5, 2010).

Here, it is undisputed that Mr. Havel filed his discovery motions without first making any attempt to informally resolve the dispute with Plaintiff's counsel. [*See* DE 152, DE 172 at 1-2]. This Court's local rules state that a *pro se* party's failure to file the certification is not a basis to deny a discovery motion. N.D. Ind. L.R. 37-1(b). Even so, courts in this circuit often require informal attempts at resolution even in cases

5

involving *pro se* parties. *See, e.g., Southall v. AVI Food Sys., Inc.*, No. 121CV00039HABSLC, 2022 WL 1015001, at *2 (N.D. Ind. Apr. 5, 2022) (discussing the defendant's attempts to confer with the *pro se* plaintiff); *Sanders v. Univ. of Notre Dame,* No. 3:21-CV-404-RLM-JEM, 2021 WL 5358575, at *1 (N.D. Ind. Nov. 17, 2021) (explaining that the *pro se* plaintiff must attempt to work out disputes directly with the defendant's counsel first); *Alerding Castor Hewitt LLP v. Fletcher*, No. 1:16-cv-2453-JPH-MJD, 2019 WL 1746284, at *2 (S.D. Ind. April 18, 2019) (observing that Rule 37 "does not have an exemption for pro s[e] litigants").

Moreover, this Court specifically ordered the parties to cooperate in good faith as this case progresses, making Mr. Havel's failure to do so here particularly problematic. [DE 117 at 7, DE 125 at 4]. Mr. Havel's whirlwind motions do not suggest good faith cooperation. Noncompliance with the Court's order warrants denial. *See, e.g., Sanders,* 2021 WL 5358575, at *1; *Ostrowski v. Lake Cnty. Bd. of Commissioners*, No. 2:16-CV-166-JEM, 2016 WL 8668496, at *2 (N.D. Ind. Oct. 21, 2016) (denying a *pro se* motion to compel for failure to comply with Rule 37 after the court ordered the *pro se* party to follow its requirements); *Mattar v. Cmty. Mem'l Hosp.*, No. 1:04-CV-095, 2005 WL 8169389, at *1 (N.D. Ind. Sept. 23, 2005).

The need for a narrowing of issues is even more necessary here, as the parties have reached a total impasse on several of Mr. Havel's requests, and Mr. Havel's blanket refusal to a protective order makes it difficult for the Court to provide tailored relief. This is exacerbated by the timing of these motions, as Mr. Havel filed his second motion filed on October 30, 2023—nearly two weeks after this Court's discovery-related

nondispositive motion deadline of October 16, 2023. Per this Court's Scheduling Order, no discovery motions filed after this deadline will be approved absent excusable neglect or other extraordinary reasons. Mr. Havel acknowledges this language in the Court's scheduling order, but rather than explaining his own untimeliness, he accuses Plaintiff of "seek[ing] to delay discovery" by objecting to his discovery requests and seeking a protective order prior to production of documents. [DE 172 at 2]. Without more, the Court cannot find any excusable neglect or extraordinary reasons here.

Although these deficiencies warrant denial of Mr. Havel's motions, this Court is still mindful of the mandate to ensure a "just, speedy, and inexpensive resolution" of this case. Fed. R. Civ. P. 1. Denying Mr. Havel's motions without further order does not meet this mandate. This Court has broad discretion in deciding discovery matters and must "independently determine the proper course of discovery based upon the arguments of the parties.". Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines*, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996). Plaintiff's response indicates that many of Mr. Havel's concerns "could have easily been resolved through communication with [its] counsel." [DE 161 at 1]. Based on this, consistent with the Court's order that the parties cooperate in good faith, Mr. Havel must meet and confer with Plaintiff on the issues raised in these motions if he wishes to pursue his discovery requests further.

To facilitate such a conference, the Court now addresses certain concerns raised by the parties. First, it appears that Mr. Havel requested numerous documents that he already has in his possession and that he did so "to authenticate them for trial." [DE 173

7

at 1]. It is true that "producing a paper in discovery is an implicit act of authentication." *Jones v. DuPage Cnty. Sheriff's Off.*, 529 F. Supp. 3d 867, 872 n.1 (N.D. Ill. 2021). But the purpose of a request for production of documents is to obtain items in the *responding* party's possession—not items the *requesting* party already possesses. Mr. Havel cannot oblige Plaintiff to do something not contemplated by the federal rules. Although his request as propounded was procedurally improper, there are other ways that Mr. Havel can authenticate his documents. As suggested by Plaintiff, Mr. Havel can propound requests for admission under Federal Rule of Civil Procedure 36. These requests for admission can ask Plaintiff to admit that certain documents Mr. Havel possesses are authentic copies. Moreover, the parties can also stipulate to the authenticity of certain documents without filing formal discovery requests. Thus, this issue is particularly apt for informal resolution, and the Court encourages the parties to discuss this concern at any discovery conference.

Next, the parties dispute the relevance of several of Mr. Havel's requests, and Plaintiff reports that it will not produce documents responsive to certain requests because they are beyond the scope permitted by the rules. [DE 161 at 2]. Although the scope of discovery is liberal, "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *United States v. Lake County Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted). Mr. Havel's explanations for the relevance of certain requests are either wholly conclusory or lack sufficient detail to show how they are connected to the claims or defenses in this case. For instance, his reason for

8

propounding request no. 21 is that it "is important for Defendant's Defense." [DE 135 at 12]. Likewise, his request no. 18 requests emails between Plaintiff's directors and another individual who worked with them through "some arrangement" and that they "might" have discussed their copyright registrations with him. [DE 135 at 11]. "A party moving to compel production carries the initial burden of establishing, with specificity, that the requested documents are relevant." *Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB 2019 WL 6522885, at *3 (S.D. Ind. Dec. 4, 2019). It is possible that Mr. Havel can demonstrate the relevance of requests to which Plaintiff has fully objected. But the Court cannot find that he has done so yet. As such, the Court cannot compel Plaintiff to respond these requests at this stage. Accordingly, these requests are also suitable for continued discussion, and the Court encourages the parties to discuss these requests during an informal conference.

      Finally, Plaintiff has indicated that it would provide certain responsive documents in its possession once a protective order was entered. Mr. Havel has outright rejected this, making sweeping statements that "Plaintiffs have not proven that by providing Defendant[']s Requested Documents [it] would reveal confidential or proprietary information" [DE 152 at 3] and that "Plaintiffs have no 'trade' regarding any of the Heaven's Gate Intellectual Property they possess." [DE 173 at 5]. Mr. Havel's blanket objections do not assist the Court in crafting any kind of tailored relief. Plaintiff, however, did present a proposed protective order for the Court's review. So the Court will use that as the basis for its discussion.

9

When determining whether a protective order should issue, the Court must independently determine whether "good cause" exists to seal the requested information from the public record. Fed. R. Civ. P. 26(c); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). "Good cause ... generally signifies a sound basis or legitimate need to take judicial action." *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). Thus, with good cause shown, parties can "keep their trade secrets (or some other properly demarcated category of legitimately confidential information) out of the public record, provided the judge . . . satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets." *Citizens*, 178 F.3d at 946. Protective orders are commonly used in federal practice when sensitive information is sought in discovery. *Bonds v. Hollywood Casino & Hotel*, No. 122CV02279JPHTAB, 2023 WL 4493158, at *2 (S.D. Ind. June 28, 2023). They are often used when a party discloses documents or information created or received as part of its business operations. Indeed, as a general matter, this Court encourages parties to use protective orders when it is deemed necessary and has facilitated this process with a protective order template. What's more, the Court also specifically encouraged the parties to negotiate an agreed protective order in this case. Thus, the Court is not surprised by Plaintiff's desire for a protective order here. Given this, and Mr. Havel's statements that he has no desire to share Plaintiff's documents online or elsewhere, his outright refusal to discuss a protective order with Plaintiff is perplexing and unreasonable. [*See* DE 117 at 8]. It also suggests that Mr. Havel is not cooperating in good faith as ordered.

10

That said, Plaintiff's protective order, as proposed, cannot be approved because it is overbroad. The Court must not grant parties *carte blanche* to seal or protect whatever they desire. *Citizens,* 178 F.3d at 944; *see also Pierson v. Indianapolis Power & Light Co.*, 205 F.R.D. 646, 647 (S.D. Ind. 2002) ("Independent and careful evaluations of protective orders are especially important because '[t]he judge is the primary representative of the public interest in the judicial process . . . .'") (quoting *Citizens,* 178 F.3d at 945). In other words, this Court must not "rubber stamp" parties' requests to seal public records but must review all requests to seal documents in light of the public interest in the judicial process. *Citizens,* 178 F.3d at 945 (citing *Matter of Krynicki*, 983 F.2d 74 (7th Cir. 1992). The court's evaluation of proposed protective orders need not be made on a document-by-document basis. *Citizens,* 178 F.3d at 946 ("In a case with thousands of documents, such a requirement might impose an excessive burden on the district judge or magistrate judge."). Using qualifiers such as "private," "confidential," or "proprietary" to describe the protected information, without more description, fails to assure the Court that the parties know what information will be sealed, "whether and under what circumstances it may be sealed, or whether the parties will be making good faith and accurate designations of information." *Pierson,* 205 F.R.D. at 647.

When reviewing a proposed protective order seeking to seal documents produced in discovery, this Court must ensure that "(1) the information sought to be protected falls within a legitimate category of confidential information, (2) the information or category sought to be protected is properly described or demarcated, (3) the parties know the defining elements of the applicable category of confidentiality and

11

will act in good faith in deciding which information qualifies thereunder, and (4) the protective order explicitly allows any party and any interested member of the public to challenge the sealing of particular documents." *Pierson*, 205 F.R.D. at 647 (citing *Citizens,* 178 F.3d at 946).

The protective order proposed by Plaintiff cannot be granted because it fails the second prong of the above standard. Plaintiff's proposed Protective Order demonstrates a general understanding of the *Citizens* requirements as it defines a category of information to be protected as confidential and provides four examples. Plaintiff generally defines confidential information as "[n]on-public business records, the disclosure of which could result in competitive or economic harm to Plaintiff[.]" [DE 161-1 at 3]. Plaintiff follows this definition with the four examples of what it considers to be non-public business records subject to disclosure:

> a. Non-public internal Telah Foundation communications;
> b. Non-public communications received by Mark and Sarah King from The Heaven's Gate Members;
> c. Non-public court documents pertaining to Plaintiff that were sealed and have remained sealed;
> d. Non-public lists summarizing contents of copyrighted works not being asserted in this case.

[DE 161-1 at 3]. But this definition and these examples are not sufficient. First, Plaintiff's overall definition for Confidential Information uses the overbroad category of "business records" defined by the general qualifier "non-public." The term "non-public," without additional information, is insufficient. *See Purvis v. Wal-Mart Stores E., LP,* No. 117CV00102TLSSLC, 2017 WL 2391193, at *1 (N.D. Ind. June 2, 2017) (stating that if non-public "means only that the information is not available to the general public, it is

12

insufficient because the information must be kept secret from and not be readily ascertainable by potential competitors"). Although "business records" is overbroad, Plaintiff does list specific examples of protectable information. But Plaintiff continues to use "non-public" to describe these examples. The third example listed—sealed court documents—is sufficiently discrete enough despite the use of the general qualifier "non-public." However, the other categories, without more information, remain overbroad. Finally, Plaintiff's use of expansive, non-inclusive language before listing these examples ("including the following") fails to limit the scope to the examples provided in the proposed protective order. Therefore, the proposed protective order fails to assure the Court that the parties would be able to accurately designate protected information within the confines of the Order. *See Pierson*, 205 F.R.D. at 647. To satisfy the Seventh Circuit's requirements for protective orders, discrete closed categories of protected information must be explicitly delineated for every designation of protectable information.

In sum, while the Court cannot approve Plaintiff's protective order as proposed, the Court again encourages the parties to negotiate an agreed protective order that complies with the requirements outlined in this order.

### III. Conclusion

Based on the foregoing, Mr. Havel's motions must be **DENIED**. [DE 151, DE 172]. The Court again encourages the parties to resolve these disputes so that the case can proceed. To facilitate resolution of these disputes and Plaintiff's production of responsive documents, Mr. Havel is **ORDERED** to meet and confer with Plaintiff's

13

counsel if he wishes to pursue his discovery requests further. Any attempts at an informal resolution must occur before March 31, 2024. The parties must then **FILE** a joint status report no later than **April 5, 2024**, indicating the following:

    (1) whether any informal resolution conferences were held;

    (2) if the parties did meet and confer, whether the parties

        (a) were able to stipulate to the authentication of documents;

        (b) were able to stipulate to a protective order, and if so, an anticipated disclosure timeframe after a stipulated protective order is approved; and

        (c) were able to resolve other disputes raised in these filings. Any disputes that remain unresolved must be clearly delineated on the parties' status report.

Any proposed protective order—whether agreed by the parties or proposed only by Plaintiff—must also be filed for the Court's consideration no later than **April 5, 2024**.

    The deadlines in this matter remain tolled pending receipt of these filings. The toll will be lifted, as appropriate, upon receipt of a joint status report and/or a proposed protective order. Any remaining issues will be resolved through a hearing, which will be set as appropriate upon receipt of these filings.

    **SO ORDERED** this 27th day of February 2024.

                                                   s/Michael G. Gotsch, Sr.
                                                   Michael G. Gotsch, Sr.
                                                   United States Magistrate Judge