UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>Plaintiff,<br>v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

**JOINT STATUS REPORT**

Pursuant to this Court's February 27, 2024 Order (Dkt. 195), the parties met and conferred prior to March 31, 2024, and exchanged multiple emails, to discuss Mr. Havel's request for the production of certain documents and to attempt to resolve the dispute amongst themselves. Plaintiff drafted the initial two-page summary of this joint status report. Defendant Havel has added his additions beginning on page 3.

This conferral process involved initial emails, whereby Defendant Havel sent Plaintiff a 60-page document restating his requests. In response, Plaintiff requested a more manageable "few-page" summary with bucketed requests, so the requests could be discussed bucket-by-bucket. Plaintiff provided an example of what such buckets could look like. Defendant Havel responded by sending a 31-page document which utilized the exemplary buckets from Plaintiff's email.

Plaintiff and Defendant Havel also engaged in two zoom calls. The first zoom call occurred on Tuesday March 26, 2024 and the second on Thursday March 28, 2024. Each zoom call lasted approximately 40 minutes. The individuals on these two calls were Mr. Steven Havel, Defendant, and Mr. Isaac Crum, counsel for Plaintiff. On Friday, Defendant

sent a follow-up email stating his willingness to enter into a protective order so long as it was "stipulated and limited" and not "overbroad".

The results of the meet-and-confer process are as follows:

- Plaintiff has agreed to stipulate to the authenticity of court filings and letters which were sent to Plaintiff by Defendant, and which appear to be authentic.[1]
- The parties discussed the production by Plaintiff of works of art and letters which may be in Plaintiff's possession, and which Defendant would like copies of. Defendant argued that such documents were necessary to support Defendant's defense/counterclaim of religious discrimination. Plaintiff voiced its concern that (1) those works are not at issue in this case, (2) that Defendants will simply commit further acts of copyright infringement if Plaintiff is forced to provide Defendants with those documents, and (3) that the defense/counterclaim of religious freedom and religious discrimination in copyright law was unknown by Plaintiff and was unsupported by case law. Mr. Havel stated in follow-up communication that he does not intend to provide to the internet any of the documents and that he has case law to support his request for these documents to support his defense/counterclaim of religious freedom and religious discrimination but that he "[didn't] know that [he] need[ed] to provide that now as [he is] still gathering the most relevant cases."
- The parties briefly discussed agreeing to a protective order. Defendant Havel stated that he is amenable to a protective order to cover things that are trade secrets. Plaintiff explained that a narrow protective order focused on trade secrets but which that allows publication by Defendants of private or

---

[1] Plaintiff, however, reserves the right to object or move for sanctions to the extent any of these documents prove to be fabricated.

copyrighted materials would not address Plaintiff's concerns.[2]

**Defendant Havel's Additions:**

Defendant Havel adds to this report that Defendant had some 80 documents requested. Plus Defendant Havel was notified by Judge Gosch, in his Opinion and Order (Dkt. 195) that Defenant had not provided enough "reasons" to some of the Requests, so to keep it to a "few page" summary would do nothing to have a negotiation. Defendant cooperated with Plaintiffs requested shorter Bucket structure, which took Defendant a number of days to reformat.

Defendant indicated in his email just mentioned that the idea of a proposed Protective Order being "stipulated" and not "overbroad" was directly from Judge Gosch's Order (Dkt 195).

Defendant initially sent to Mr. Crum the links to the Court websites and to the 5 Case files for the two Consent Decrees' Plaintiffs received in 1999, that Mr. Crum said he could not get to work. Thus Defendant tested the links and they worked fine and then attached the actual .pdf court case files to an email to Mr. Crum.

Re: the "letters" listed in this bullet point, it is referring to Letters Defendant has had and has filed as exhibits in Defendant's Answer and Defense, but wanted to be authenticated by Plaintiff since they provide much evidence and insights to who received what Intellectual Property belonging to the Group members and what they wanted done with that Intellectual Property that shows the relevance to the Religious Freedom and Religious Discrimination part of Defendant's Defense and Counter Claims.

Defendant claims the "letters" just referred to in this section of this report are the letters sent by the Heaven's Gate Religious Group, (which is not a new definition as that is the way Plaintiff described the Group in both their Cases in 1999 that they received Consent Decrees for), to other former members of the Group, like Mark and Sarah King

---

[2] The second zoom call cut off during this discussion, so it is unclear if Defendant Havel heard this entire discussion. Defendant Havel has been adding to this report, put into red lettering.

(Mrcody/Srfody) received from the Group that inform the Court and Jury that a number of individuals received "Intellectual Property" created by the Teachers TI and DO and some of their students before any of the two Consent Decrees.

Mr. Crum and Defendant Havel also spoke about the definition of "intellectual property". Mr. Crum indicated it was a concept rather than being a specific writing or audio or video, etc.

Mr. Crum indicated that Plaintiff received in the probate Case Consent Decree and Settlement all the Intellectual Property the Group possessed that was "transferred" to them.

Defendant Havel informed Mr. Crumb that the Group had other of their Intellectual Property besides that which was in the inventory of the House where the Group members bodies died which goes to part of Defendant's Defense that the Intellectual Property needs to be defined for each Case. Which Intellectual Property was the Consent Decree and Settlement Agreements referring to. Defendant expressed to Mr. Crum that Francisco Falcon received a great deal of the same "Intellectual Property" in 1997, with a letter from the Group compelling him to give it to the media and to anyone who wanted it.

Defendant also explained to Mr. Crum that the intention of the Group was important, while he felt it was not part of the case.

Defendant explained that the Group let it's intention be known by the Common Law Copyright that is still posted as part of the Heavensgate.com website Mark and Sarah King manage.

Defendant expressed that it's my Religious right to practice my Heaven's Gate religion that calls for living up to the intentions of the teachers TI and DO evidenced by many parts of their Intellectual Property as demonstrated in part by the fact that the Group used a Common Law Copyright that lays out that Defendant has the right to copy the entire Heaven's Gate Book (Literary Work) or parts of it and give it to others as long as not for commercial purposes. Defendant explained that he had the right to make an audio book from that Heaven's Gate Book.

4

Mr. Crum expressed he understand I consider the intention of the Group but that he only is concerned with the law on behalf of his client and that making an audio book would be considered to be a "derivative work".

Defendant doesn't understand whether to qualify to receive the documents requested Defendant must use case law in this stage of discovery as Mr. Crum said Defendant hasn't done.

Defendant will provide the case law if that is what it takes to receive the requested documents.

- Defendant and Plaintiffs talked about the Settlement Agreement that Havel asked for from plaintiff and explained that it was referenced in the Judge Richard Breyer (telah vs right to know) consent decree.

Mr. Crum said he looked at that consent decree and didn't see anything in it that said telah was ordered to give any of the intellectual property to havel.

Havel agreed that language wasn't in there but that's part of why Havel wants the Settlement Agreement document because havel has evidence from jason bartel from a 2016 email to Havel who saw that document and how it said to give the intellectual property to "verified former members" (of the group).

I talked about how I might have to go to Kathyrn Morea (the daughter of rkkody - charles humphrey (right to know)) to get that settlement agreement and Mr. Crum agreed.

Mr. Crum said he didn't have the settlement agreement and that he

would ask his client if they have it. Havel expressed that they must have it as they have the consent decree they entered part of into evidence as an exhibit at some point and Mr. Crum disagreed that they ever entered it as an exhibit and said that Jason Bartel had entered that document into the case.

Havel said he didn't want to subpoena Morea but if she has the document, Mr. Crum said even if it was sealed Morea wouldn't get in trouble to provide it if we went through the court.

Mr. Crum at one point said it may have been "destroyed" to which Havel asked when and how it was destroyed and Mr. Crum had no response.

Havel expressed how that settlement agreement is mentioned 5-6 times in the consent decree for details on the part of the decree that said telah was ordered to "disseminate" rkkody's cd's that contained the 196 or so audio tapes on them.

Mr. Crum said that having possession of the audio tapes was not the same thing as disseminating them to others. Havel expressed that he never saw any instructions from the consent decree what someone could or couldn't do with the audio tapes they were disseminated to by telah.

Mr. Havel then brought up the fact that Mark and/or Sarah King had sent Havel two cases of the Heaven's Gate books and a set of the original Beyond Human video tapes with the original plastic jackets in around 2007 and yet gave no instruction what to do or not do with them. Havel expressed that he gave them away and decided not to sell them but instead would send

6

people to buy them directly from Mark and Sarah King via the Groups website they had become the webmasters of because Havel knew they had brought the book to print so they should receive the funds from the sale of any of those book.

Havel expressed that he wondered if Mark and Sarah King sent him those items that were part of the groups intellectual property because of the Breyer consent decree and settlement agreement as they knew Havel was a "verified former member" of the group.

Mr. Crum initially asked Defendant Havel to propose a Protective Order. Defendant Havel said, though Defendant was willing to have a Protective Order, the reason Defendant initially didn't want one was because Defendant felt it would be so broad and apply to publicly available court cases to where if Defendant even used the words Heaven's Gate on Defendant's youtube 3spm livestream Defendant could be found in violation of the Order. The fact that Plaintiff has no trade secrets was a secondary concern. Defendant also expressed that Defendant didn't know what the privacy concerns were but that there certainly could be a limited stipulate protective order on some of the documents requested that Plaintiff would then produce to Defendant.

Defendant expressed that over the entire history of Defendant's disseminating of the Heaven's Gate Intellectual Property Defendant has not posted onto the internet the audio tapes or video tapes. And that since this lawsuit began has not done so with even these court case files that Defendant was free to post somewhere.

In Judge Gosch's "conclusion" on page 14 of Court order (Dkt 195) re:

"(2) if the parties did meet and confer, whether the parties…

(b) were able to stipulate to a protective order, and if so, an anticipated disclosure

timeframe after a stipulated protective order is approved;"

Such Protective Order has not been stipulated. At first Mr. Crum asked Defendant Havel to generate a Protective Order. Defendant responded that since it was Plaintiff's requested action on some of Defendant's Document Requests as Judge Gosch also noted in the Opinion and Order, Defendant doesn't understand how Defendant can arrive at a Protective Order without the criteria to arrive at what Plaintiff wants protected by the court.

However, Defendant now proposes creating Bucket 4 to consist of document requests from Bucket 2 and 3 that Plaintiff won't provide without a Protective Order.

### To Start Bucket 4 – For Protective Order, for instance, in Judge Gosch's order (Dtk 195, section I, page 3) :

"Plaintiff's responses further indicated that it had responsive documents to produce, but these documents contained confidential or proprietary information such that a protective order would need to be entered first. [See DE 142 at 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, and 20]."

Therefore Defendant suggests starting Bucket 4 for those requests that need to be under a Protective Order for plaintiffs to provide to Defendants.

(This list comes from Judge Gosch list in Dkt 195)

**These Document Requests are listed to date in BUCKET 3: Non-Court Documents consisting of Correspondence with third parties, per Mr. Crum's requested reorganization of Requests into Bucket Lists Defendant cooperated with.**

**(Documents 15 and 16 are removed from this list and proposed added to the Bucket 1 authentication list, but are left listed and noted below for easy reference.)**

[See DE 142 at 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, and 20]."

**5. Document(s)** submitted to Copyright office to prove, as shown in Section 1 of the registration, that Total Overcomers Anonymous aka T.O.A., Authored as a "work for hire", Seven (7) ½" VT/D "Beyond Human – The Last Call" Video tapes, and/or **Document(s)** that legally prove Heaven's Gate employed Plaintiffs in the transfer of Authorship Copyrights (the Creators of said works automatically hold), of this Intellectual Property to Plaintiffs, as per registration number: PA 867-224 effective date of Sep 22 1997.

**Reason:** To establish the legitimacy of obtaining copyrights and/or trademarks against the will of the Decedents and before Consent Decrees. Since these copyrights and/or trademarks are in Plaintiffs Complaint the primary claim of infringement, since Plaintiffs did not file any new copyright registrations after the Consent Decrees, that Defenant knows about, (besides the recent files for audio tapes 487-498) if they were filed erroneously in the first place as Judge Lisa Guy Schall Decided (before the Settlement to not bring about lawsuits from creditors because of an appeal).

**6. Document(s)** submitted to Copyright office to prove, as shown in Section 4 of the registration, that Plaintiffs had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author Heaven's Representatives to The Telah Foundation the Book Manuscript entitled, "How and When "Heaven's Gate" (The Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials", as per registration number: TXu 817-732, effective Sept. 22, 1997.

**Reason:** To establish the legitimacy of obtaining copyrights and/or trademarks against

the will of the Decedents and before Consent Decrees

**7. Document(s)** submitted to Copyright office to prove, as shown in Section 1 of the registration, that Heaven's Representatives Authored, as a "work for hire", Book Manuscript Version, aka "Purple Book" entitled, "How and When "Heaven's Gate" (The Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials," , and/or **Document(s)** that legally prove Heaven's Gate employed Plaintiffs in the transfer of Authorship Copyrights (the Creators of said works automatically hold), of this Intellectual Property to Plaintiffs, as per registration number: TXu 817-732, effective Sept. 22, 1997.

**Reason:** To add to Defendants Freedom of Religion and Religious Discrimination Defense and Counterclaim - To establish the legitimacy of obtaining copyrights and/or trademarks against the will of the Decedents and before Consent Decrees

**8. Document(s)** from Heaven's Gate that convey to Plaintiffs any Rights to Transfer and/or to Copyright Book Manuscript Version 1 and/or 2 and to change the copyright the Group put on their original Book.

**Reason 1:** To show at least two other former members of Heaven's Gate, Rkkody aka Charles Chuck Humphrey (deceased) and Jhnody, (aka Juan, Jhn, legal name of Francisco Falcon) received Intellectual Property directly by mail from Heaven's Gate Members (DO and Crew)

**Reason 2:** To establish the legitimacy of Mark and Sarah Kings changing the Groups desired Common Law copyright for the 3rd version of the Heaven's Gate they facilitated the publishing of.

**9. Document(s)** submitted to Copyright office to prove, as shown in Section 4 of the registration, that Claimant(s) (Plaintiffs) had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author, Total Overcomers Anonymous aka T.O.A., to The Telah Foundation the C.B.E. (Celestial Being Entity) Lithographic Print as per registration number: VA 877-834 with effective date of registration 09-22-97.

**Reason**: To show Plaintiffs copyright of the CBE Lithographic Print was painted and copyrighted by Olliver Odinwood aka Ollody in 1982 so proves Plaintiffs had no legal right to copyright that CBE Lithographic Print and thus Defendant's use of that image does not infringe upon Plaintiffs false copyright, which Defendant will attempt to further prove in his Counter Claim. Plaintiffs have the burden of proof that their copyright of CBE is legal and trumps the actual Creators copyright of the same image.

(DE 142 at 10 is no longer included to be potentially under a Protective Order since Plaintiff agreed to authenticate these Letters from the Heaven's Gate Group to Plaintiffs without a Protective Order. These eliminate listing numbers 10, 11, 12, 13 from Bucket 3 of the reformatted new document requests Defendant put together for Mr. Crum).

**REMOVE from Bucket 2 and MOVE to Authentication Bucket 1**

Re: Bucket 3 - #14 (that was originally under DE 142 at 15, referred to by Judge Gosch), Defendant would like to add these document requests to the authentication Bucket 1 since Plaintiffs already acknowledged these had been in this courts public record from co-Defendant Cathy Weaver's Answer Exhibits for nearly two years so doubt they would require them to be in a Protective Order.

14.) 15. All **Emails** between Mark King and/or Sarah King in those names or from the Email Address Rep@heavensgate.com to Cathysouthwestern@gmail.com co-defendant Cathy Weaver's email address.

**Reason:** These emails show that there was no "conspiracy" among Defendants as Plaintiffs' claim in DE 1, Count VI.

**REMOVE from Protective Order Bucket 2 and MOVE to Authentication Bucket 1**

15.) **16. Documents: Cease and Desist and Proposed Legal Agreement** on Use of the Heaven's Gate Intellectual Property served on Havel and Weaver in person in November of 2021.

**Reason:** Shows Plaintiffs think of TI and DO as their "God" and of Heaven's Gate as a new Religion. Shows Plaintiffs issued Stephen Havel and Cathy Weaver with a Cease and Desist that did not detail exactly what audio tapes and/or video tapes and/or The Heaven's Gate Book and/or The Exit Videos and/or The CBE Image and/or other Intellectual Material Defendants were allegedly infringing upon.

34.) 20. Petitioners Exhibit No. 51 E-mail transcript dated October 22, 1996 from "Mrc/Srf"

**Reason:** This is Primarily for the Religious Freedom and Religious Discrimination part of Defendant's Defense and Counter Claims. These could provide evidence showing who in the Group Plaintiffs were communicating with and about what. These were all in 1996, so before the Group left their bodies. There are many inconsistencies in things Mark and Sarah King said then with what they say now that could be important to my Defense and Counter Claim.

(These Document Requests are referenced in Case No. PN022228, Document: JOINT TRIAL READINESS CONFERENCE REPORT (that starts on page 112 of the file; ROA 174 Case File Contents 2-3.pdf (link provided above)), under the Exhibit Index on pages 7-9 of the report (pages 118-120 of the ROA file).

**This concluded the Documents Defendant Requested in DE 142 that Judge Gosch listed in his Order (Dtk 195) as Documents Plaintiff indicated they would be responsive to after a Protective Order.**

## Further from Judge Gosch's "Conclusion" of the Order:

"(c) were able to resolve other disputes raised in these filings. Any disputes that remain unresolved must be clearly delineated on the parties' status report."

Defendant is not aware of any resolution to any of the Requests for Document Production from Plaintiffs besides Plaintiffs statement in this report to authenticate the Court Files and selective Letters Defendant already possessed. To list the remaining disputes would entail attaching Defendant's restructured into "buckets" Defendant, upon Mr. Crum's request provided, minus the authentication requests. However, here is a summary:

**From Buckets 2 and 3, complete with expanded detailed reasons:**

13

1) The Judge Richard Breyer – Plaintiff vs Right to Know "Settlement Agreement" part of the Consent Decree that says Plaintiffs needed to give the Intellectual Property to "verified former members" of the Group.
2) The Log files – to have a genuine account of what Rkkody had that would fall under the Right to Know Consent Decree and what exactly was sent to the copyright office in 1997 to show what if any infringement occurred and to show which parts of the Groups Intellectual Property was
3) The documents re: Ollody – Olliver Odinwood and the 14 Paintings
4) At least 4 letters from the Group to: Oscody (Wayne Parker) (2 letters/emails), the Letter to Neody (aka Rio, Richard Ford, Rio D'Angelo) and the letter to Flxody/Ablody (Lorraine and Floyd Snelson).

5) The Document Requests are shown to exist in Judge Lisa Guy Schall Probate Case shown in the provided Case File: ROA 74 Case File Contents 2-3.pdf (Plaintiffs indicated they would authenticate). Page 3 of this Case File shows CASE NO. PN022228 JOINT TRIAL READINESS CONFERENCE REPORT and the list extends over pages 3-28 of the Case File (1-28 of the Joint Trial Readiness Conference Report) and contains the specific documents requested that are not actually provided in this report. All that is in this report are the indications of the existence of these files. Defendant would like the actual files specific to the Requests and will agree to reasonably put some under a stipulated limited Scope Protective Order if need be.

6) Additional Documents in Buckets 2 and 3

A draft of this Joint Report was circulated via email between Plaintiff and Defendant Havel. Defendant Havel has reviewed this Joint Report and has granted written permission to Plaintiff to electronically sign this document on his behalf and to file this document with the Court through Plaintiff's CM/ECF account.

Respectfully Submitted April 5 2024.

**MESSNER REEVES, LLP**

By: /s/ Steven Havel (w/ permission)
    Steven Havel
    Defendant

By: */s/ Isaac S. Crum*
    MESSNER REEVES LLP
    Isaac S. Crum (AZ Bar #026510)
    (Pro Hac Vice)
    icrum@messner.com
    *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing will also be sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4051 26th Lane
Redgranite, WI 54970-7087
jason_bartel@unioncab.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

By: /s/ Isaac S. Crum