UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION, | |
| Plaintiff, | |
| v. | CASE NO. 3:22-CV-395-DRL-SJF |
| STEPHEN ROBERT HAVEL, et al., | |
| Defendants. | |

**REPORT and RECOMMENDATION**

Plaintiff, the Evolutionary Level Above Human Foundation, filed this case on May 18, 2022, alleging that *pro se* Defendants Stephen Havel, Cathy Weaver, and Jason Bartel have infringed Plaintiff's intellectual property rights. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge on October 14, 2022. [*See* DE 41]. The parties—particularly, Mr. Bartel—have filed a flurry of motions since then. Mr. Bartel's motion practice required the Court to issue multiple warnings and orders, culminating in an order to show cause on February 21, 2024. There, the Magistrate Judge ordered Mr. Bartel to show cause why his filing practices have not violated the court's prior orders and why he should not be sanctioned under Federal Rule of Civil Procedure 11(b) for his continuous filings. [*See* DE 193]. Mr. Bartel responded to the Magistrate Judge's order on March 21, 2024. [DE 197].

The prior Magistrate Judge subsequently retired on August 12, 2024, and the case was then reassigned to United States District Judge Damon R. Leichty on September 5,

2024. [DE 199]. On September 13, 2024, the District Judge referred the Court's February 21, 2024, order to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [DE 200].

For the reasons stated below, the undersigned recommends that the Court decline to sanction Mr. Bartel for his previous filing conduct.

I. Background

Mr. Bartel appeared in this case *pro se* on September 9, 2022. [DE 35]. A month later, Mr. Bartel contemporaneously filed three motions [DEs 44, 45, and 46], followed by another motion a week thereafter [DE 50]. These motions primarily sought to add Plaintiff's corporate officers as parties and to make the Court aware of previous litigation involving the corporate directors. But all these motions were stricken because Mr. Bartel failed to sign them. [*See* DE 53 striking DEs 44, 45, 46, and 50]. Mr. Bartel then contemporaneously filed motions to add signature pages for these motions on October 31, 2022 [DEs 55-58] along with another motion [DE 54].

On November 3, 2022, Mr. Bartel filed another round of contemporaneous motions seeking to add Plaintiff's corporate directors as parties and to add information about litigation concerning Plaintiff. [DEs 61-63]. In February 2023, Mr. Bartel filed additional motions [DEs 71, 72, 79, 84, and 86]. These motions again repeated arguments regarding the impact of prior litigation involving Plaintiff's corporate directors. Mr. Bartel then filed six additional motions in May 2023, which the Court struck as unsigned. [DEs 105, 106, 107, 108, 109, and 110]. Mr. Bartel then filed additional motions in June 2023 [DEs 114 and 115].

The Court addressed Mr. Bartel's motions in multiple orders. [DE 112 and DE 130]. The Court's Rule 16(b) Scheduling Order entered in June 2023 also addressed multiple of Mr. Bartel's filings. [DE 117]. The Court's Scheduling Order set the deadline to file any discovery-related nondispositive motions for October 16, 2023; the deadline for completion of all discovery for December 14, 2023; and the deadline to file dispositive motions for January 13, 2024. The parties were also advised that "they should file motions judiciously and only when action by the Court is needed." [*Id.* at 8]. But after that, Mr. Bartel filed five more motions. [DEs 124, 149, 157, 162, and 171]. These motions again raised issues with Plaintiff's corporate directors and made arguments concerning Plaintiff as a corporate entity. The Court addressed these motions in an order on February 21, 2024. [DE 193].

In sum, the Court has entered at least three orders devoted exclusively to Mr. Bartel's numerous filings [see DE 112, addressing Mr. Bartel's motions docketed at DEs 105, 106, 107, 108, 109, and 110; DE 130, addressing Mr. Bartel's motions docketed DEs 61, 62, and 102; and DE 193]. The Court also devoted a portion of another order, its Rule 16(b) Scheduling Orer, to several of Mr. Bartel's filings. [See DE 117 at 3-4, addressing Mr. Bartel's filings docketed at DEs 63, 79, 84, 85, 86, 101, 114, and 115]. As stated, the Court's most recent order on Mr. Bartel's filings was on February 21, 2024. [DE 193, addressing Mr. Bartel's filings at DEs 124, 139, 149, 157, and 171]. At the end of this order, the Court explained that Mr. Bartel's motion practice appeared to violate the Court's prior orders that the parties should litigate the case judiciously:

3

> This is now the Court's fourth order addressing Mr. Bartel's numerous motions. The frequency and substance of Mr. Bartel's motions concern the Court for several reasons. First, Mr. Bartel has chosen to file numerous, repetitive motions despite the Court's prior orders specifically advising the parties to file motions judiciously and warning the parties that motions that repeat or expand upon arguments already presented to the Court would not be viewed favorably. [DE 130 at 10; DE 117 at 8]. The Court's prior orders also specifically admonished Mr. Bartel for behaviors exhibited in the instant motions. [See DE 125 at 4 (admonishing the parties to cooperate in good faith and to comply with the court's orders); DE 117 at 7-8 (same); and DE 112 at 6 (admonishing the parties to keep their arguments limited to facts and law and to refrain from impugning on the opposing party's motivation).]

[DE 193 at 12]. The Court also found that these filings could be problematic under Fed. R. Civ. P. 11:

> Even if the Court had not previously reprimanded Mr. Bartel for his recent motion practice, the instant motions would be problematic under Federal Rule of Civil Procedure 11(b). Mr. Bartel's signature on his motions represents that the motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). Despite Rule 11's mandate, Mr. Bartel has filed multiple motions raising duplicative, unsupported arguments. Mr. Bartel has done this without even affording the Court time an opportunity to address his arguments before he raises it again. What's more, he has done so with a vituperative tone that accuses Plaintiff of filing a frivolous lawsuit when he himself has raised meritless arguments. His motions amount to no more than nitpicking any perceived error made by Plaintiff to claim that it warrants striking or sanctions— despite his and co-defendants' own claims that they are concerned with making mistakes as pro se parties or that Plaintiff is attempting to trap them or cause them to make mistakes.

[*Id.* at 12-13]. Accordingly, the Court observed that it had "no choice but to consider sanctioning Mr. Bartel for his motion practice and failure to comply with the Court's orders." [*Id.* at 14]. The Court thus ordered Mr. Bartel "to show cause why the motions addressed in this order have not violated this Court's prior orders and Federal Rule of Civil Procedure 11(b)" and why he should not be sanctioned. [*Id.*].

Mr. Bartel filed his written response to the Court's order on March 21, 2024. [DE 197]. In his response, Mr. Bartel's explains that his motions were seeking to establish

4

evidence that he could use in the case but acknowledged that he is not "very good at this." [DE 197 at 2]. Mr. Bartel also explains why he believed his motions had merit when they were filed.

The Court now addresses whether sanctions are appropriate.

## II.    Analysis

### A.    Legal Standard

Under Fed. R. Civ. P. 11(b) a party who files a written motion

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4). "Fed. R. Civ. P. 11(c) allows courts to enforce Rule 11(b) by imposing sanctions on an attorney or party for frivolous filings or filings presented for an improper purpose." *Granite State Ins. Co. v. Pulliam Enters., Inc.*, No. 3:11-CV-432-RL-CAN, 2015 WL 8904807, at *5 (N.D. Ind. Nov. 17, 2015) (collecting cases), *report and recommendation adopted,* No. 3:11-CV-432, 2015 WL 9164140 (N.D. Ind. Dec. 15, 2015).

A court may *sua sponte* impose Rule 11 sanctions, but only after issuing an order to a party to show cause why the challenged conduct does not violate Rule 11(b). *See* Fed. R. Civ. P. 11(c)(3). The Court has significant discretion in deciding whether to impose Rule 11 sanctions. *Divane v. Krull Elec. Co., Inc.,* 200 F.3d 1020, 1025 (7th Cir.

5

1999). Sanctions may be appropriate if the Court finds that a motion or other filing has been presented for an improper purpose [*see* Fed. R. Civ. P. 11(b)(1)]; if the Court finds that a party's claims or defenses are unsupported by law or by a nonfrivolous argument for an extension or a change in the law [*see* Fed. R. Civ. P. 11(b)(2)]; or if the Court finds that the allegations or other factual statements lack evidentiary support or are unlikely to have such support even after a reasonable opportunity for investigation [*see* Fed. R. Civ. P. 11(b)(3)].

    To determine whether sanctions are appropriate, the Court makes "an objective inquiry." *Cuna Mut. Ins. Soc. v. Off. & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citation and internal quotations omitted). Such an inquiry should consider "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. "When, however, the suit is objectively colorable, a court may consider subjective bad faith or malice." *Diamond v. Nicholls*, 483 F. Supp. 3d 577, 597 (N.D. Ill. 2020). Sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Importantly, though, "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct." *Id.*

**B.     Discussion**

The Court begins with consideration of its authority to order sanctions here. Nothing in the record shows that Plaintiff sought or moved for sanctions against Mr. Bartel. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed . . . if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service[.]") Rather, the Court raised the issue of sanctions on its own initiative in its February 21, 2024, order, and ordered Mr. Bartel to show cause why his conduct did not violate Rule 11(b) consistent with Fed. R. Civ. P. 11(c)(3). Thus, the Court must consider whether sanctions under Fed. R. Civ. P. 11(c)(3) are appropriate based on Mr. Bartel's conduct and response.[1]

In his response, Mr. Bartel maintains that his filings were not meant to harass Plaintiff or to delay these proceedings. Mr. Bartel explains that some of his initial filings were based on mistaken understandings and interpretations, especially because he does not have legal counsel, and this is his first time involved in litigation. [DE 197 at 1-2]. Mr. Bartel also explains why believes his prior filings had merit and were germane to this

---

[1] The Court's order to show cause listed the following two potential sanctions: "pay[ing] Plaintiff's costs and attorneys' fees incurred in responding to the repetitive and baseless motions addressed in this order and/or by restricting his ability to file any further motions in this case without first seeking leave of court." [DE 193 at 14]. But because the Court raised the issue of sanctions on its own initiative under Fed. R. Civ. P. 11(c)(3), and not in response to a motion filed by Plaintiff, it may not impose a monetary sanction like attorney fees or expenses resulting from the filings. Fed. R. Civ. P. 11(c)(5)(B); *see also Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999)("Rule 11(c)(2) allows the imposition of attorneys' fees against a party only if the sanctions were initiated by motion.").

7

case. Mr. Bartel thus explains that he "was attempting to get to some of the truths of this case rather than violating Rule 11(b) by trying to harass Plaintiff and increase the costs of litigation." [*Id.*]. In support, Mr. Bartel then puts forth several of the same arguments raised in his prior motions. [*Id.* at 2-13]. Mr. Bartel also appears to acknowledge his impatience and hastiness with the repeated filings, stating that "the strategy, presentation, and method of attempting to establish the legal name of Plaintiff has displeased the Court as per multiple Court Orders . . . ." [*Id.* at 3].

Whether Mr. Bartel's filings warrant sanctions is close. Mr. Bartel's filings were problematic—and potentially sanctionable—due to both their substance and their volume. Based on Mr. Bartel's response, the Court cannot fairly find that Mr. Bartel raised the substantive arguments underpinning his repeated motions for an improper purpose, especially considering Mr. Bartel's lack of counsel and his inexperience with litigation. *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment ("Although the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations.") Mr. Bartel's response suggests that Mr. Bartel sincerely—albeit misguidedly—believes that the arguments made in these filings were correct, had evidentiary support, and are germane.

But even finding that the substance of his motions may not violate Fed. R. Civ. P. 11(b), the Court cannot find the same to be true when considering the volume and timing of his motions. The sheer number of motions filed by Mr. Bartel appears to cross the line between zealous self-advocacy and harassment. It also suggests attempts to

8

delay the case. These concerns were compounded by the numerous procedural shortcomings Mr. Bartel made when filing the motions and by his impatience, as he filed many of the same substantive motions repeatedly, even before the Court could rule on prior motions making the same arguments. It is hard for the Court to find that Mr. Bartel sincerely believed such action was reasonable, especially when several of his later-filed motions were made in direct response to filings made by Plaintiff—motions that the prior magistrate judge aptly referred to as a game of "Whack-A-Mole." [DE 193 at 2].

The Court's order to show cause listed the following two potential sanctions: "pay[ing] Plaintiff's costs and attorneys' fees incurred in responding to the repetitive and baseless motions addressed in this order and/or by restricting his ability to file any further motions in this case without first seeking leave of court." [DE 193 at 14]. But because the Court raised the issue of sanctions on its own initiative under Fed. R. Civ. P. 11(c)(3), and not in response to a motion filed by Plaintiff, it may not impose payment of attorneys' fees against a party. Fed. R. Civ. P. 11(c)(5)(B); *see also* Divane v. Krull Elec. Co., 200 F.3d 1020, 1030 (7th Cir. 1999). Thus, the Court only considers whether it should restrict Mr. Bartel's ability to file further motions without first seeking leave of court.

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). The Court's initial show cause order was issued nearly a year and a half ago, and Mr. Bartel has refrained from filing any motions or other documents since that time. This case is also nearing its final stages, with only limited discovery issues remaining before imminent deadlines will be set for

9

dispositive motions. [*See* Court's order setting a hearing at DE 204]. Thus, the undersigned cannot find that sanctioning Mr. Bartel by requiring him to seek leave of Court before filing any further motions will have a significant deterrent effect. The undersigned thus does not recommend that the Court impose sanctions. *See, e.g.*, *Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 947 (7th Cir. 2024)(affirming the district's court opinion declining Rule 11 sanctions where the district court found that they "would be overkill" and that the case did not present "the kind of bad faith that justifies sanctions"); *1800 W. Lake St., LLC v. Am. Chartered Bank*, No. 14 C 420, 2016 WL 232423, at *1 (N.D. Ill. Jan. 20, 2016)(declining to issue Rule 11 sanctions because they would be "unnecessary to deter further violations"); *Gillo v. Gary Cmty. Sch. Corp.*, No. 2:14-CV-99-JVB-JEM, 2014 WL 3767680, at *3 (N.D. Ind. July 31, 2014)(declining to issue sanctions when no prejudice resulted from sanctionable conduct). Indeed, the Court's show cause order appears to have deterred repetition of Mr. Bartel's potentially sanctionable conduct, and given the stage of this case, the opportunity for repetition of such conduct is limited.

Even though the undersigned is not recommending sanctions, the undersigned again admonishes Mr. Bartel to file any further motions judiciously and to ensure that his motions comply with the federal rules and the Court's local rules, especially N.D. Ind. L.R. 15-1, N.D. Ind. L.R. 7-1, and N.D. Ind. L.R. 56-1. Future repetitive motion practice will not be viewed favorably by the undersigned and will invite the Court to again consider imposing sanctions.

### III.   Conclusion

For these reasons, the undersigned **RECOMMENDS** that the Court **DECLINE** to impose sanctions on Mr. Bartel for his motion practice addressed in the Court's February 21, 2024, order. The undersigned admonishes Mr. Bartel to file any further motions judiciously and to ensure that his filings comply with all applicable rules, especially those outlined above.

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 16th day of July 2025.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge