UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION



| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>        Plaintiff,<br>   v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>        Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

**DEFENDANT CATHY WEAVER'S AMENDED FIRST SET OF INTERROGATORIES**

**TO PLAINTIFF THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION**

~~MARK KING AND SARAH KING~~

~~(Officers of The Evolutionary Level Above Human Foundation dba The Telah Foundation)~~

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Cathy Weaver requests that Plaintiff The Evolutionary Level Above Human Foundation answer the following interrogatories separately and fully, in writing, under oath, as required by law, within thirty (30) days of the date of service.

## INSTRUCTIONS

1. You, (heretofore defined as Plaintiff ~~Mark King and/or Sarah King as the Officers of~~ The Evolutionary Level Above Human Foundation dba The Telah Foundation) are to answer each interrogatory separately and under oath.

2. If You object to any interrogatory contained herein, You may state the objection in the manner prescribed by the Federal Rules, but You shall answer the interrogatory subject to the objection which You have stated.

3. If You object to any interrogatory or any portion of an interrogatory on the ground that the answer would reveal the substance of any privileged information, provide all information required by Federal Rule of Civil Procedure 26(b)(5). If your objection is on the ground that the answer would reveal the substance of a privileged communication, include an identification of: (a) the nature of the privilege or protection claimed; (b) the person who made the communication, whether oral or in writing; (c) if the communication was oral, all persons present while the communication was made; (d) if the communication was written, the author, addressees, and any other recipients; (e) the date and place of the communication; and (f) the general subject matter of the communication.

4. If You are unable to answer fully any interrogatory herein, You must answer to the extent possible, provide an explanation of each reason why a full answer is not possible and provide whatever information is in Your possession, custody or control concerning any unanswered portion.

5. Whenever appropriate, the singular form of a word shall be interpreted in the plural, or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories any information that might otherwise be construed as outside their scope; and words in the masculine, feminine or neuter form include the others. Likewise, "each" shall be construed to include "every" and vice versa; "include" and "including" shall mean including without limitation; and "any" shall be construed to include "all" and vice versa.

6. Any reference to a person, corporation, association, partnership, company or joint venture shall mean that person or entity, any parents, affiliates, divisions, controlled companies, subsidiaries or otherwise related persons and entities, and all of his, her or its current or former agents, representatives, employees, attorneys, accountants, officers, directors, auditors, and consultants or other persons or entities acting or purporting to act on his, her or its behalf.

7. The obligation to produce information requested herein is of a continuing nature pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. If You receive or otherwise become aware of information responsive to any interrogatory after you have served Your responses to these interrogatories, you must promptly supplement your responses to these interrogatories to provide such information, as required by Rule 26(e).

## **DEFINITIONS**

Except as otherwise specified, all terms used in these interrogatories shall be construed in accordance with the following definitions:

a.  "You" refers to Plaintiffs The Evolutionary Level Above Human Foundation ~~Mark King and/or Sarah King~~

b.  The terms "Document" or "Documents" mean all items within the full scope of Federal Rule of Civil Procedure 34, all forms of writings, recordings and photographs defined in Federal Rule of Evidence 1001, and includes any reduction to tangible form, including any written, recorded, photographed or filmed matter and any computer, electronic, magnetic or optical memory or storage, of any communications, information or data of any kind or nature, however produced or reproduced, including originals, drafts and copies. The terms "Document" or "Documents" also include designs, CAD designs, blueprints, renderings, preconstruction drawings, construction drawings, shop drawings, and/or as-built drawings. Each draft, version or non-identical copy of a Document shall constitute a separate Document for purposes responding to these Requests. "Document" also includes any attachments or appendices to any Document. This definition applies to all records in your actual or constructive possession, custody or control (or the actual or constructive possession, custody or control of any of Your representatives, employees, agents, or attorneys), including without limitation all correspondence, letters, e-mails, text and similar messages, pamphlets, client alerts, orders, reports, calendars, daybooks, notes, journals, diaries, records, checks, receipts, invoices, estimates, transcriptions, telephone records, recordings, facsimiles, and facsimile transmittals,

memoranda, tabulations, evaluations, summaries, opinions, statistical records, literature, books, periodicals, publications, papers, tapes, flash drives, "floppy" disks, DVDs, CDs, hard drives, data files, video and audio recordings of all types, charts, drawings, sketches, photographs, and any information transmitted or stored electronically, by means of computer equipment, or by means of any electronic data processing or storage system, or by and through the Internet or any network (including without limitation storage on shared, off-site and/or "cloud" computer servers), or stored on removable magnetic or optical media. "Document" and "Documents" includes all copies of a Document that contain any additional writing, marginalia, underlining, notes, deletions, modifications, or any other markings or notations, or are otherwise not identical copies of the original. The production of electronic data shall include all metadata associated with the electronica files, and shall include the text/OCR ("optical character recognition") of each such Document. "Document" and "Documents" also include any electronically stored information ("ESI") and means any information that is stored in an electronic medium, including any ESI reflecting or constituting any text message, e-mail, or social media message or post.

c.   The term "Identify," when used in the context of identifying a Document, means providing a description of the Document, the name of the Document, the author of the Document, the recipient of the Document, and any other information necessary to request the Document in a request for production. The term "Identify," when used in the context of identifying a Person, means providing the name, address, and telephone number or other known contact information of individual or entity likely to have discoverable information, along with the subject of that information.

d.  The terms "Person" and "Persons" mean any natural person, association, partnership, corporation, joint venture, government entity, organization, trust, institution, proprietorship, or any other entity recognized as having an existence under the laws of any state, the United States, or any other nation.

e.  The term "Relate" or "Relating To" means and includes "concerning," "representing," "evidencing," "reflecting," "referring to," "memorializing," "connected with," "about," "regarding," "mentioning," "discussing," "constituting," "supporting," "refuting," "pertaining to" or "describing."

f.  The term "Communication" means the transmission of information in any form, including, without limitation, written, oral, or electronic transmissions.

g.  The term or phrase "Group" or "The Class" refers to the most current organizational name of Heaven's Gate.

h.  The name TI (pronounced "tea" or "tee") refers to Bonnie Lu Truesdale Nettles, the Co-Founder and co-Teacher from 1975 to 1985 (when her body died), of what became known as Heaven's Gate.

i.  The name DO (pronounced "doe" or "dough" refers to Marshall Herf Applewhite, the Co-Founder and Co-Teacher with TI and as of June of 1985 the sole remaining Teacher of the Heaven's Gate Group

## INTERROGATORIES

**INTERROGATORY NO. 1:** For any response to the Defendant's First Requests for Admissions, served concurrently herewith, that is anything other than an unqualified admission, set forth the bases for your denial including all witnesses and exhibits in support of your denial.

**INTERROGATORY NO. 2:**

When did you learn that the Powers of Attorney documents you received for the deceased Group Members in California were voided upon their death.

**INTERROGATORY NO. 3:**

List all the ways you have sold and plan to sell Heaven's Gate Physical or Intellectual Property and/or derivatives of Heaven's Gate physical and/or Intellectual Property

**INTERROGATORY NO. 4:**

Since you are seeking millions of dollars in damages please detail the revenue you have reported to the IRS for the entity that is suing Defendants.

**INTERROGATORY NO. 5:**

According to reported tax returns the revenue was listed as zero, so please explain how a Foundation with zero in revenue is paying for this lawsuit.

**INTERROGATORY NO. 6:**

Please detail the company you hired in case No. PN022228 to access the value of the Heaven's Gate Intellectual Property and what that value was.

7

**INTERROGATORY NO. 7:**

List the content of the handwritten and/or typed Heaven's Gate Group audio tape log files you received from The Group directly or from the Storage room San Diego County confiscated the contents of and/or you received later in the Case PN022228 Settlement and/or from what Rkkody aka Charles Chuck Humphrey and/or Oscody aka Wayne Parker retrieved from that same Storage Room or from any other source.

**INTERROGATORY NO. 8:**

Re: the Heaven's Gate Audio cassette Tapes –

1. How many do you have.

2. How are they stored?

3. How many have been digitized?

4. Who digitized them?

5. Did you pay to have them digitized?

6. Did Dave Goetzinger digitize them?

7. Why was Dave Goetzinger made an officer in the Telah Foundation or related organization?

8. Did you have water marks put on some of the digitized ones – if so how many have been done?

9. Did you have to pay to have them digitized and if so how much did it cost and who paid for it.

10. Did you have to pay to have water marks put on them and if so how much did it cost and who paid for it.

**INTERROGATORY NO. 9:**

Describe the measures you took over the years and what year, approximately, you informed Crlody (co-defendant Jason Bartel) and/or Defendant Havel that you had copyrights and trademarks.

**INTERROGATORY NO. 10:**

Explain why you allowed the Heavensgatedatabase youtube.com channel to provide the Beyond Human video Tape Series for years.

**INTERROGATORY NO. 11:**

Explain why you didn't take measures to warn co-defendant Bartel aka Crlody and/or Defendant Havel aka Sawyer or Swyody about your objection to their disseminating the audio tape files and/or video tape files and/or ollody's artwork obtained from Rkkody's CD's he received from DO directly and indirectly, for over a decade before this lawsuit.

**INTERROGATORY NO. 12:**

Explain why you wouldn't allow Havel to include short clips from TI and DO's speaking on audio tapes (he had possessed from Rkkody since 1997) with his original music.

**INTERROGATORY NO. 13:**

<u>Re:</u> COUNT I INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. SRU00298530

List your evidence that Defendant's conduct damaged the Foundation and caused economic and reputation losses as described in Plaintiffs Complaint (DE 1 and Amended Complaint DE 132 paragraph 61 below:

"61. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct"

### INTERROGATORY NO. 14:

Re: COUNT II INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. PA0000867224

Show your legal evidence of "owning…since 1997" the Video Works noted in your Complaint and Amended Complaint – DE 1 and DE 132 for paragraph 67 below:

"67. The Video Works, recorded at the U.S. Copyright Office as Copyright Registration No. PA0000867224 are owned by the Foundation and have been owned by the Foundation continuously since 1997"

### INTERROGATORY NO. 15:

Re: COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732

Explain why Mark and Sarah King of The Telah Foundation changed the copyright of the Groups Book, the name noted below in paragraph 76 from Plaintiffs Complaint, from the "Common Law Copyright" The Group included in Version one and/or Version two of Their Book, (aka The Blue

Book Rkkody and Jhnody were given multiple copies of by DO and The Group) into a copyright to the Telah Foundation that eliminated the clause for Version 3 the Telah Foundation had printed aka The Purple Book:

"© Common Law Copyright

1996 by Heaven's Representatives

Printed in the New Mexico Republic, the united States of America

ALL RIGHTS RESERVED, WITHOUT PREJUDICE,

U.C.C. 1-207, U.C.C. 1-103.6

This book is protected by Common Law copyright. Permission is hereby granted to reproduce this book, or portions thereof, as long as the content is unchanged, i.e., nothing added to it or taken away from it as long as it is for non-commercial purposes.

No part of this publication may be reproduced or transmitted in any form or by any means, now known or to be invented or adapted, for the purpose of financial gain or profit."


"76. The Literary Work entitled "How and when 'Heaven's Gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials", recorded at the U.S. Copyright Office as Copyright Registration No. TXu000817732 (the "Literary Work") is owned by the Foundation and has been owned by the Foundation continuously since 1997. (DE 1 and Amended Complaint DE 132, Paragraph 76).


**INTERROGATORY NO. 16:**

Re: COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732

Related to Interrogatory NO. 15 above explain how you can sue Defendants for doing anything with the content of the Blue Book (see paragraph 77 to 79 from Complaint and Amended Complaint – DE 1 and DE 132 below), The Group self published under a Common Law Copyright that they included in the content of their website Heavensgate.com that is still apparent today, that includes the ability at the bottom of the Book Page to download the content of the Book for free.

"77. Defendants Weaver and Havel know that the creation of a derivative work, such as an audio version, of the Literary Work without the consent of the Foundation constitutes copyright infringement.

78. Defendants Weaver and Havel know that the public performance and the recording of public performances (and subsequent dissemination of such) of the Literary Work without the consent of the Foundation constitutes copyright infringement.

79. Defendants' conduct in creating a derivative work and publicly performing and distributing copyrighted works is willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights."

**INTERROGATORY NO. 17:**

Re: COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732

Related to Interrogatory NO. 15 and 16 above:

Explain in detail and show evidence for each of the 3 points below, how Defendants' Havel and Weaver's Common Law usage of the text of the Blue Book to make an Audio Book, that is not done for profit, by your claims in paragraphs 80 from Plaintiffs Complaint and Amended Complaint (DE 1 and DE 132) causes:

1) The Foundation to be "damaged".

2) The Foundation to incur "economic losses".

3) The Foundation to incur "reputation losses".

80. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**INTERROGATORY NO. 18:**

Re: COUNT IV INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA000877834
**Explain how the mere idea of creating a plush doll gets included in a copyright infringement lawsuit** (shown in Paragraph 86 from DE 1 and DE 132 below) and how even if such a doll was even developed beyond talk alone would automatically be considered a derivative of an Acrylic Painting that Plaintiffs don't even own the original copyright for because it was copyrighted by it's creator in 1982 with 13 other paintings, who went by the pen name of Olliver Odinwood, known in The Group as Ollody **and explain** even if such a doll was developed how **in detail such an idea can claim to cause** (shown in paragraph 89 below):

1) The Foundation to be "damaged".

2) The Foundation to incur "economic losses".

3) The Foundation to incur "reputation losses".

"86. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images registered as VA000877834 entitled "The C.B.E. (Celestial Being Entity)" (the "Visual Work") which is owned by the Foundation and has been owned by the Foundation continuously since 1997."

"89. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct"

**INTERROGATORY NO. 19:**

Re: COUNT V CONTRIBUTORY INFRINGEMENT BY HAVEL AND WEAVER

Provide all your evidence that Defendant Weaver, "…actively induced, caused, and materially contributed to" co-defendant Bartel's alleged infringement, in any way, to include as you stated "by sending him stolen copies of the Audio and Video Works", as stated in your Complaint and Amended Complaint (DE 1 and DE 132 Paragraph 95 (shown below)):

"95. In particular, with respect to Defendant Bartel's direct infringement, through posting the Foundation's copyrighted material on the 4Shared website, Defendants Havel and Weaver actively

induced, caused, and materially contributed to that infringement by sending him stolen copies of the Audio and Video Works that were in the possession of Defendants Havel and Weaver.

96. Defendants Havel and Weaver sent the stolen copies of the Audio and Video Works to Defendant Bartel knowing that he would be copying and redistributing the Foundation's copyrighted material."

**INTERROGATORY NO. 20:**

Re: Plaintiffs Complaint: COUNT VI CONSPIRACY TO COMMIT COPYRIGHT INFRINGEMENT

Show all your detailed evidence to include emails, telephone calls, letters, posts or by any other forms of communication, the names (who did so with who) and times (approximately when these actions took place) pertaining to your accusations against Defendant Cathy Weaver in Paragraphs 103-109 (shown below) to include your basis to say that Defendant Weaver:

1) "engaged in a concerted action with other Defendants to reproduce and distribute the Foundation's Audio and Video Works by sending each other stolen copies of these works and then uploading these Works to the internet to be downloaded by anyone." (DE 1 and DE 132 Paragraph 103)

   (a.) When did Defendant Weaver engage in a "concerted action" to reproduce and distribute the Foundation's Audio and Video Works?

   (b.) Who did Defendant Weaver "distribute" or "send" the Foundation's Audio and Video Works to?

2) When had Defendant Weaver "constructively agreed to engage in the unlawful reproduction and distribution of Foundation's copyrighted works." as you stated in Paragraph 104

3) When had Defendant Weaver engaged in "copying the Works to distribute amongst each other and to distribute over the internet" as stated in Paragraph 105 as shown below?

103. As described above, each Defendant engaged in a concerted action with other Defendants to reproduce and distribute the Foundation's Audio and Video Works by sending each other stolen copies of these works and then uploading these Works to the internet to be downloaded by anyone.

104. By so doing, the Defendants constructively agreed to engage in the unlawful reproduction and distribution of Foundation's copyrighted works.

105. In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by copying the Works to distribute amongst each other and to distribute over the internet and were willful participants in this joint activity.

106. As a proximate result of this conspiracy, the Foundation has been damaged, as is more fully alleged in Counts I–IV, above.

**INTERROGATORY NO. 21:**

Re: COUNT VII FEDERAL TRADEMARK INFRINGEMENT

Even if it is determined by the Court that you had the legal right to Copyright and/or Trademark Ollody's (Olliver Odinwood's) paintings, (he first copyrighted in 1982), answer each question below with a detailed description of how Defendant's selling T-shirts with images from some of his paintings is being done by Defendants "in a manner that is likely to":

1) "cause confusion"

2) "cause mistake"

3) "to deceive"

4) "cause substantial injury to the public"

5) "substantial injury to... the Foundation"

6) "to continue to cause irreparable harm to the Foundation"

7) "causing the Foundation further irreparable harm".

...as stated in Paragraphs 109-111 shown below,

109. Defendants Havel and Weaver have used the Trademarks in connection with their YouTube channel and in connection with selling T-Shirts in a manner that is likely to cause confusion, to cause mistake, or to deceive, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

110. The use by Havel and Weaver is unauthorized, is likely to continue, and is likely to cause substantial injury to the public and to the Foundation, and the Foundation is entitled to injunctive relief and its attorneys fees and costs under the Lanham Act.

111. Havel and Weaver's infringement of the Trademarks, as aforesaid has caused and is likely to continue to cause irreparable harm to the Foundation. Unless restrained and enjoined by this Court, Havel and Weaver will persist in their infringement, thereby causing the Foundation further irreparable harm.

**INTERROGATORY NO. 22:**

List the evidence you have for claiming in your Complaint (DE 1 and DE 132, Paragraphs 29, 95, 96 and 103) that Defendants have "stolen audio and video tapes" and/or claiming they have

"illegally acquired" these items in Paragraph 26 as if you were the only ones who were gifted with The Groups Intellectual Property as Judge Lisa Guy Schall acknowledged.

**INTERROGATORY NO. 23:**

What evidence do you have for making up this lie about why Defendant Cathy Weaver came to physically meet Defendant Havel in Paragraph 38 (below) in your Complaint (DE 1 and DE 132)?

38. On information and belief, in September 2021 Defendant Cathy Weaver met up with Defendant Steven Havel with the intentions of continuing to engage in copyright infringement and to make the Audio and Video Works available for free download on the internet.

**INTERROGATORY NO. 24:**

What evidence do you have, to state in your Complaint (DE 1 and DE 132 at Paragraph 42 shown below) that Defendant Weaver had anything to do with Havel's decision to provide co-Defendant Bartel with copies of the Audio files Jhnody (aka Francisco Falcon) gave to Havel that Mark and Sarah King (Plaintiff) had given to Jhnody that DO and The Group had given to those who were inclined to disseminate them.

42. Upon information and belief, Defendants Havel and Weaver's decision to provide CoDefendant Bartel with copies of the Audio and Video Works was also, in part, done to prevent the Foundation from enforcing its Copyrights.

*Cathy Weaver* 9/8/2025

Cathy Weaver

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

sawcats75@gmail.com

Defendant