UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION



| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>Plaintiff,<br>v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

**DEFENDANT HAVEL'S BRIEF IN SUPPORT OF MOTION TO DETERMINE SUFFICIENCY OF PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION**

This Brief provides legal arguments and explains in detail why 15 of Plaintiff's Responses to Defendant Havel's Admissions do not comply with the requirements of Federal Rule 36(a)(6).

**ARGUMENT:**

Please find in Exhibit A attached 15 of Defendant Havel's Admissions and Plaintiff Responses to those Admissions (Numbers 3, 5, 7, 9, 10, 11, 12, 15, 16, 18, 19, 20, 23, 24, 25) that

1

Defendant asks the Court to help determine if those Responses are Insufficient and/or "inadequate and/or improper answers" that are often "vague denials", and/or "don't state in detail why the party cannot admit or deny", and/or "improperly states that the information is insufficient when a "reasonable inquiry" would provide the necessary information" and/or when "an objection is improper" because it is "not legally justified" and/or "fails to state the specific reasons for the objection".

Besides the legal arguments within Exhibit A there are further details Defendant wishes the Court to know to support these claims against Plaintiff.

All of the content of Exhibit A came from the Meet and Confer Document, Defendant sent and talked about with Mr. Isaac Crum but Defendant necessarily include all Defendants arguments during our communications as time did not permit us to do as what was talked about didn't seem to hold any weight. This has been proven by today's email from Mr. Isaac Crum, attorney for Plaintiff by his stating Plaintiff would only respond to Point Number 1 in the Exhibit list. Since Defendant must file this Motion and Brief by mail to arrive to the Court on or before the 9-26-2025 Discovery deadline, Defendant asks the court if Defendant can reserve the right to challenge Plaintiffs amended Response to that Admission Request.

Thus here is the list of argument details (starting with Point 2 in the Exhibit) that Defendant wishes to add to why Defendant believes Plaintiffs have given largely Insufficient Responses to Defendant's Admissions.:

2

A. Point No. 2 re: Admission Request No. 5: Mr. Isaac Crum during our Meet and Confer communications indicated Plaintiff did not know what was on the Rkkody CD's so was "unable to admit or deny the requested statement for want of sufficient information to form a belief as to it's truth". Plaintiff knew Rkkody was giving away CD's and that those CD's held audio tapes from the Group that Rkkody had digitized and that it contained "about half" of the 486. Plus it is easy to show that a true and very easy "reasonable inquiry" would substantiate a truthful Admission of this entire request.

Defendant will provide some details under the next Point No. 3.

B. Point Number 3 re: Admission Request No. 7: In Judge Breyer's 1999 Case No. 3:22-cv-00395-JD-MGG Consent Decree (that is a key element in Plaintiff's own case referred to in their Complaint (DE 1, 132 (amended) ) Charles Humphrey's (Rkkody) daughter Kathy Morea held from her deceased father (Rkkody) CD's containing digitized "audio tapes" created by the Group that Plaintiff was ordered to "disseminate" in accordance to the "Settlement Agreement".

Some of the additional evidence that Mark King and/or Sarah King knew there were digitized audio tapes on Rkkody's CD's is evident because of their own efforts to try to get them back from organizations Rkkody, before he had died sent them to.

3

In fact Defendant Havel was sent two sets of CDs in 1997 and 1998 that Havel still has the mailers showing postmarks from and submitted as Exhibits to the Court so presumably Plaintiffs should be aware of them. Havel's exhibit of the contents of the CD's was also part of one of Havel's Production of Document Requests that Plaintiffs refused to provide that seems to have fallen by the wayside due to the toll and Judge Gotsch's retirement and the denials of my Motions to Compel Plaintiffs to Produce them. (Without authentic lists of what were on those CD's and             which cassettes were sent to the copyright office the only way to authenticate whether any Defendants actually unknowingly infringed upon a copyright would be to have a forensic examination of the digitized audio tapes, even play them in court at trial to compare against what Plaintiff says were copyrighted. As Defendant understands it, it is Plaintiff's responsibility to prove and Plaintiff won't even admit there were any audio tapes on the CD's Rkkody gave to defendant Havel and co-defendant Bartel and that co-defendant Cathy Weaver had no hand in at all. Plaintiffs never casually nor legally detailed what they had copyrighted. Even their Cease and Desist to Havel and Weaver didn't detail that they had copyrights and of what).

Also Mark King was in communication with Havel over Rkkody's giving away the named CD's, though may not have known Havel was a recipient at that time.

(Incidentally those CD's – the second set received in 1998 included a Common Law Copyright on the contents of the CD's that mirrors the Common Law Copyright the Group

4

put on their Book, the subject of yet another of these Admission Requests that was denied by Plaintiff. That copyright was entered into the case as an Exhibit.

Additionally Mark King and/or Sarah King knew of co-defendant Bartel's posting of digitized audio tapes he received from Rkkody on 4shared.com though they falsely stated they didn't know of his doing that until Bartel posted additional audios there shortly before the lawsuit.

Havel also knows of the battle for the CD's because of Havel's communications with Kathryn Morea in 1998 over Mark Kings pursuit to get those CD's from her that turned into the lawsuit against her that Mark King tried to bring me into as a witness on his behalf which I also have documentation of happening.

Co-defendant Jason Bartel knows even better about Mark King and/or Sarah Kings attempts to get those CD's back from people and/or organizations Rkkody sent them to because he helped Rkkody with the CD dissemination task.

Also from my email and telephone calls with Dave Goetzinger in the early 2000's he knows about most of this since he told me he was a student at a university library that received one of Rkkody's CD sets.

Plus Dave Goetzinger was enlisted or employed by Mark King and/or Sarah King (or perhaps as The Telah Foundation) to digitize most all of the audio cassette tapes they

5

possessed and the Kings made him an officer in their Telah Foundation at that time, which is provable (but think he was taken off of several years ago).

C. Point No. 4 re: Admission Request No. 9. It is a fact that Plaintiff has no "legal documentation from the Group to copyright anything the Group created". Judge Gotsch verified this in his Order/Opinion (DE 194 - pages 16-17 regarding Case No. PN022228's Decision in 1999 (before a Settlement Agreement because of Plaintiffs threat of an appeal) writes:

"... The California Court observed that there was no writing signed by the deceased Group members that conveyed ownership of the Group's intellectual property to Plaintiff. Without such evidence, the California Court found that the Group's intellectual property remained vested in the decreased Group members' estates:" in which Judge Gotsch includes the exact wording of the core of that Decision:

"Although [Plaintiff] presented evidence of post-mortem registrations of the [works] . . .. there is no evidence of any writing which explicitly conveyed or transferred ownership of all this intellectual property to the [Plaintiff]. . ... Therefore, there is no evidence that a pre-mortem transfer of the intellectual property rights occurred. Since there is no written instrument transferring ownership of the intellectual property to the [Plaintiff], the estates own all intellectual property as tenants in common. [DE 63-1 at 7, ¶3; DE 81-1 at 12, ¶3.]"

Therefore, why didn't Plaintiff just Admit to this fact, which shows once again that Plaintiff has little credibility in this entire case.

D. Points 5, 6 and 7 fall under admitting to having no documentation from the group whatsoever to justify having legal "Assignments" and/or "Transfers" and for any "Work

6

for Hire" status behind their copyrights and trademarks they filed for and received in 1997, over a year before they received any Settlements or Consent Decrees from the Court cases in 1999.

To be truthful they should all be Admitted.

E. Exhibit A Point Number 8: Plaintiff denies the copyright of the Heaven's Gate Book is a "Common Law Copyright". It's posted that way on the very same Heavensgate.com website Plaintiff claims ownership to and that they have been the webmasters of since 1999. Defendant unintentionally left a loop hole in the wording of the Admission Request No. 15 by saying "…the Groups only example of their intended copyright…". Maybe Defendant should have said, "only published example" since the website the Group Created Heavensgate.com the Group posted online in 1996 without any participation from Plaintiff.

F. Point No. 9 should not be truthfully denied because the Heaven's Gate Book is provided for free by downloading it from the Heavensgate.com website Plaintiffs have been the webmasters of since 1999. That download of it was built into the website by the Group. The link to download the book that includes their common law copyright is at the bottom of the Book page link. Mark King and Sarah King as Telah Foundation Officers chose to design their own copyright when they printed version 3 of the Groups book that they had nothing at all to do with producing. They in essence stole the book when they took out that copyright and again had no documentation from the Group for doing so, though the Group did want the Book to be part of the Library of Congress. That task wasn't given to Mark

King and Sarah King but they took it over and Rkkody was beside himself when he saw them change that copyright.

G. Point No. 10 re: Admission Request No. 18 where Plaintiff failed to admit, deny or object on the grounds of their attorney client priviledge. Plaintiff should be required to Admit or deny the parts to the Admission Request that have nothing to do with "attorneyclient privilege", even though during the Discovery Hearing with Judge Frankel attorney for Plaintiffs Mr. Isaac Crum admitted he created the two lists himself.

Plus there is on record (that Defendant hasn't located yet) Mark King stating that he ordered his attorneys to create the two court ordered Lists. Defendant Havel wondered at that time why create new lists. It's been documented in the court that Plaintiff has a "master" List of the Audios and has other partial lists. All Defendant Havel asked the Court for, in the first hearing with Judge Gotsch was the Lists to know what was and was not copyrighted. At that time Mr. Isaac said they have all the audios copyrighted as he also said during the Discovery Hearing with Judge Frankel but was reminded by co-defendant Cathy Weaver that Plaintiffs didn't create any of the audio tapes.
Why not admit that Plaintiffs produced 2 Court ordered Lists of the audios that were copyrighted (registered) and not registered where they replaced the detailed descriptions with all having the same description of "Various Discussions".

I believe I recall Mr. Crum saying during our Meet and Confer time over these Admission Request disputes and during the Discovery Hearing with Judge Frankel that he created the

8

Lists because Plaintiff didn't want to give Defendants Lists that they would post on the internet.

However the facts are that Plaintiff included in their Complaint (DE 1 and amended DE 132) as Exhibit H the same List of about 900 Audio tapes with very detailed descriptions (that they later admitted initially sending to Francisco Falcon (aka Jhnody), who sent them to Defendant and that Defendant did post on the Defendant's blog which by the way Defendant Havel had no knowledge were or were not copyrighted as that was all months before the case was filed.

Here are yet more examples of how Plaintiffs have been stifling every part of Defendant's Discovery.

Once again Plaintiff is avoiding answering these Admission Requests which is all mounting evidence that their credibility is significantly in question and could be grounds to dismiss all their charges against all Defendants.

More relative evidence of this disregard for the truth of these matters, in Plaintiff's Response to this Admission Request, whoever is responding is identifying themselves as "Plaintiff" while separating themselves from their "attorneys", yet Defendant Havel and co-Defendant Weavers Requests for Interrogatories were denied them because Mr. Isaac Crum said during the Discovery Hearing with Judge Frankel that Defendants had addressed

their Requests for Interrogatories to Plaintiff **but included the names Mark King and Sarah King as "parties"**.

Then after Defendants motioned to Amend those Interrogatory titles to omit the references to Mark King and Sarah King, the Interrogatories were once again denied by Plaintiff, saying they were filed "untimely" which was a misunderstanding of the schedule by Defendants, who requested an extension to that part of the schedule, while filing, a procedure often used in the courts but that Plaintiffs and the Court also denied.

H. Point No. 11 shows two almost trite but important to Defendant's definition of terms instead of responding in "good faith" to:
   a. the exact wording of the Admission No. 19 by Plaintiff's Response using the word "disposition" in place of the Admission Request word asked about that was in the referenced Letter: "Dissemination". If this case can make it to trial this is important to Defendant Havel for the Fair Use part of Defendant's Defense that is also part of Havel's Religious Freedom Defense claiming Plaintiffs are infringing upon Havels Relgious Freedom to in person "get our information out" as explained  also as "disseminate" their information.
   b. to The Admission Requests use of "desire" said that word called for "speculation" (from what Plaintiff counsel expressed in our Meet and Confer communications). Defendant singled out that word "desire" because of the statement in Plaintiff's same Letter that again used that exact word. Again, Defendant believes this is part of

Defendant's Defense and Counter Claim to get an accurate Admission because this is Defendant's "Belief System" (definition of a Religion) to give to others TI and DO's Information they left behind, that has been proven is of no danger to anyone's self or to others and that much of is available on Plaintiffs own websites Heavengate.com and Vimeo Heavensgate, that Judge Gotsch verified in his Order/Opinion (DE 194) poses no threat to anyones life to have expressed by others including Defendant who is a personal witness to it all.

I. Point No. 12 during the Meet and Confer communications with Plaintiff's Counsel Mr. Isaac Crum, Defendant learned from talking about Admission Request No. 20, related how he was present for Plaintiff's recent, (during this case) filing for a new copyright of about 10 audio tapes, Plaintiff listed a now deceased student Steven McCarter (aka Srrody) as the author of the 10 audio meetings being registered because the copyright office said they had to put a person as the author, even though all Steven McCarter did during any of those meetings was "press the record button [of the tape recorder].

The irony with this registration is that Steven McCarter wasn't the only student who pushed that record button. Sometimes it was Defendant Havel (aka Sawyer or Swyody or Swy) who pushed the record button and Defendant Havel's voice can be heard in many of those audio tapes as Defendant Havel was present for about 800 of those meetings while Mark King and Sarah King had not been present for those meetings at all so had no way of knowing who pushed the record button. If Defendants recall accurately Mr. Crum admitted

that to him the proper author was DO (aka Applewhite) on those tapes though Defendant doesn't know if Mr. Crum actually listened to any of them. Mr. Crum simply stated that he was abiding by what the copyright office said was required for the Authors name saying that at first they tried to register that batch of audio tapes with some Group name that the copyright office wouldn't accept.

I describe this as this is one of many, many examples of the way Plaintiff has sought to get around or stretch the rules, naturally in their favor, understandably to win, that can be shown in many ways are behind the essence of every count against Defendants. For Defendants case this is important because though Plaintiffs have some legal right to register new copyrights for unregistered audio tapes, does it give them the right to file those copyrights with misleading or even dishonest information as Mark King and Sarah King know who the Authors are of those 1000+ audio tapes. It's either TI (aka Nettles) and/or DO (Applewhite).

J. Point No. 13 re: Admission Request No. 23 was denied outright. Perhaps this was because Defendant Havel at one point offered some T shirts for sale on his Youtube channel (that had never over 15 years had any revenue sharing or ads, etc.) This was totally not for profit but to both provide interesting T shirts to get TI and DO's positive words out, my religious right to do that was not interfering with Plaintiff as Plaintiff doesn't sell much of anything that I know of except the Heaven's Gate Book they printed and some of their video tapes.

It wasn't "commercial" which was the guideline we received from our teacher DO though he was in favor of selling things to be able to sustain disseminating their information. Maybe they denied it because I included co-defendant Bartel. If that was the case why not admit relative to Havel and deny relative to Bartel.

K. Point No. 14 re: Admission Request No. 24. With a little "reasonable inquiry" into the tape log Mark King and Sarah King sent to Francisco Falcon aka Jhnody, that Francisco sent to me from Venezuela where he lives, one sees that it is in audio tape 605 recorded on July 19, 1991 that DO first talks about using that name. It was never an entity and doubt it was even a dba as the Group used all kinds of names. Even on the jacket of the Beyond Human Video tape series the informal copyright was, "Copyright 1992 by Total Overcomers Anonymous Monastery".
Since the copyrights were listed as having the author "Total Overcomers Anonymous" or T.O.A. and were filed as a "work for hire", filing as Claimant The Telah Foundation with it's directors being Mark King and Sarah King implies the tapes were made for them. Maybe that's a hard avenue to prove or is moot but nevertheless why deny the truth that only TI and DO or DO (after TI's body died) were the true Authors of 99.9% of the 1000+ audio tapes.

L. Point No. 15, re: Admission Request 25 – is much the same as for Point No. 14. A student who was once sitting in the audience isn't the author of the audio tapes made by in this case

TI and/or DO. So why not admit that unless there is something to hide or Plaintiff is just being stubborn, but in any cases is more evidence of being evasive in Plaintiff's responses.

Respectfully submitted,

Dated: 9-23-2025

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

Pro Se Defendant