# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF INDIANA

## SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>     Plaintiff,<br>  v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>     Defendants. | CASE NO. 3:22 -CV-395-JD-MGG |

## DEFENDANT HAVEL'S PRE-TRIAL STATUS REPORT

Pursuant to the Courts Scheduling Order (DE 213) to promote scheduling and an efficient pretrial process and trial Pro Se Defendant responds with this Status Report informing the court of the following as outlined in the Order:

**A. status of settlement negotiations, mediation, or other alternative process;**

 1. Settlement Negotiations:

Havel has openness to good-faith settlement discussions but they are still very much at an impasse to date. Havel will notify the court immediately if a resolution is reached.

**Settlement History:** (I apologize for the length, but this is a very involved case with no real straight forward by law ways to handle it, in my opinion, that I know of and want the Court to be as objective as the Court can be to rule over what happens to Plaintiffs, Defendants and the Groups Intellectual Property.

These "Settlement" negotiations began many years before the lawsuit was filed by Plaintiff against Defendants Havel and Bartel (though Havel and Bartel never worked together). I published on my blog sawyerhg.wordpress.com the audio tape log I got from Charles "chuck" Humphrey aka Rkkody in December of 2016 that included some 196 digitized audio tapes. References in my blog to my dissemination of most all the Heaven's Gate Intellectual Property minus the audio tapes I received in 2020 is abundant.

I have emails with Mark King and Sarah King about my dissemination of Heaven's Gate audios and documents and video's from about that time but had been sharing the Heaven's Gate Intellectual Property for over 10 years before that. They are smart and very attentive to what some former members were doing with the information.

The Kings knew about what I was doing and they knew what co-defendant Jason Bartel, independent from me, was doing, his having posted these same audios files on

4shared.com, also since about 2016. Mark and Sarah King clearly wanted us to stop disseminating that information yet never once talked to me about having copyrights or trademarks and I had no knowledge of either court cases at that time. Mark King wanted me to come to Phoenix to see all the information he had that he said justified he and Sarah King being the only ones to share the Heaven's Gate IP.

A few months before the lawsuit was filed I met Cathy Weaver. She initially wanted me to work with Mark and Sarah King because she had heard me talking on my livestreams on my Youtube channel 3spm, about the audio tapes they hadn't made available to anyone and could tell it was a little heated. She had heard that I and the Kings communications were pretty much broken down and I have an email from the Kings that accused me of "killing children" and said as much in his court filings for a preliminary injunction when nothing of the sort was happening in any way shape or form and was insane for me to hear them saying to me, let alone putting such claims into the Court record. That to me is slanderous.

In 2021 Cathy Weaver was coordinating with Mark and Sarah King via emails and texts on when and where to meet. We met with them in their lawyers office in Phoenix and knowing how they were, I went in with no ID in case they might trump up some charges against me. I knew they sort of hated me because I'd follow up on the interviews they'd give to the media groups and correct anything they said that I knew from personal experience in the group wasn't true and they hated that. I had been jaded by years of

3

watching the way they went against Humphrey (aka Rkkody) and wouldn't provide any audio tapes to anyone without the very sporadic limited one at a time.

At the meeting they served us with a Cease and Desist, yet still didn't show us any copyrights and/or trademark registrations so it was still a threat without teeth to me. I didn't even know how many audio tapes there were. All I had were the 2 CD's sent to me by Rkkody in 1997 that he personally retrieved from the Storage room Mark and Sarah King (Mrc/Srf) were sent instructions to find but didn't choose to go to themselves. Rkkody took a box or two, approx. 486 audio cassettes with labels and cases and tape logs and digitized them to .rm files (real media) and put them on CD's that co-defendant Jason Bartel (Crlody) helped him disseminate and I was on their list as I had been in touch with Rkkody and knew him well from being in the Group together. Rkkody as Right to Know put a common law copyright on the CD's. He chose that copyright because that's the only copyright notice the class used for their Book they published.

The Group sent that book to a number of former members of the group including Francisco Falcon, another former member who was in touch with the Group from Venezuela. He gave me one of those books in person a year or so ago. It's gold embossed and it's oversized. Mark and Sarah King were given the Groups help to officially publish it and register it with the Library of Congress. So they copyrighted it under the Telah Foundation which would have been fine if they didn't then think it

4

belonged to them and they then had the right to stop others from disseminating it freely, the condition in the copyright notice.

So I paid no attention to the Kings copyright of anything that I only saw for the first time as part of the lawsuit. After all I was physically sitting and often times on the tape recorder task so pushed the record button sometimes. So why would I be concerned with copyrights when the Group had none though talked about the information being shared far and wide as can be heard said many times in the audio tapes themselves and in all the letters they sent to the 8 former members of the Group that indicated to them they still wanted to help with tasks.

The Cease and Desist included Cathy Weaver, though she had no part in any copyright or trademark infringement but believed the Groups information should be available to anyone who wanted it. So she sat in on some of my livestreams. I had been playing audios for years before then. We still did not have any concrete proof of copyrights and trademarks and exactly what was copyrighted or trademarked. Since we were more or less broke and wanted to share the information in various ways and wanted people to see the illustrations Havel had been sharing for years having received them from Rkkody's CD's that I watched being painted and knew they were made into prints and sold at an art gallery in Albuquerque if I recall, I had no reason to wonder if they were copyrighted. I later learned they were copyrighted in 1982 by the artist Ollody in the pen name Olliver Odinwood and some of them were published as some of the 14 images were on Rkkody's CD's.

After receiving the Cease and Desist Cathy Weaver created a detailed response and Settlement and sent it to the Kings and they rejected it outright. So Havel decided to continue with playing audios and continue with trying to sell some T shirts to pay expenses.

Still Weaver continued to email with them and arranged another meeting in Phoenix. But we were broke and living in Mishawaka and couldn't justify going back to Phoenix and asked if they could meet us somewhere and they declined and said, "See you in court" and sued us.

In the last week or so, Weaver (with Havel aware) has communicated with Plaintiff – Mark King via texts and over email with Plaintiff council Mr. Isaac Crum and the responses so far were that Mr. Crum's clients, Mark and Sarah King presented no grounds for a negotiated settlement that could be fair to either Havel or Weaver or Bartel (though I/we don't speak for Bartel at all).

Therefore, I am hopeful we can Settle and with that in mind will hopefully make my case as strong as possible to perhaps give them pause on maintaining such a hard line on being the only possessors and disseminators of the Heaven's Gate Intellectual Property.

2. Mediation - Judge Gotsch indicated a mediator would be appointed if Plaintiff and/or Defendants couldn't work together and neither proposed a mediator and then Discovery was tolled and Judge Gotsch retired so nothing proceeded in that regard.

3. I don't know of other alternative Settlement possibilities.

**B. likelihood and scope of any dispositive motion;**

1) Still considering filing a Summary Judgement but Defendant believes there are many genuine "disputes of material facts in this case". For any Summary Judgement, Defendant's understanding is that it's based upon the parties agreeing they have the evidence to have the Court decide the case and/or decide parts of the case. However, Plaintiff's provision of Discovery Defendant has requested has been dismal and even evasive and delayed. For this reason here is the brief Discovery History as Defendant recalls it:

**Discovery History**:

Defendant did not receive hardly anything in Discovery requests and Discovery period was shortened by the tolling. There is significant evidence of Plaintiff's deliberate evasion on every part of the requested Discovery process. For examples:

a) **Production of Document Requests turned into a Protective Order that Plaintiff Defendant just provided for Defendant's examination on the last day of Discovery**. From a preliminary examination of what Plaintiff sent, were included some 79 documents and over 200 video's. Maybe at most 5 of those documents were requested – a few emails and a few other communications that most of were already entered into evidence or were already public and some from Plaintiff's previous court cases that Defendant also has already.

b) **Re: Plaintiff's Protective Order of 200+ video's not having anything to do with Defendant's Production of Document Requests**. The 200+ video's - Having only a

day so far to go over some of them appear to be video livestreams from Havel's own YouTube channel 3SPM, actually what Plaintiffs consider to be some of their evidence of Defendant's alleged infringements. Defendant has no idea what those video's have to do with Defendant's Discovery and why do any of them need to be protected and/or marked confidential? Havel hasn't denied use of the material he has owned since 1997 and used on Youtube for over 15 years that Plaintiffs now wants to stop him from using.

c) Re: **Defendant's Admission Requests – Defendant just filed a Motion to "determine sufficiency" of Plaintiff's Responses** to enlist the courts help to determine if Plaintiffs abundant denials, objections, partial admit/denials and claims of "attorney/client privilege" to not respond, with claims of making a "reasonable inquiry" when the most minimal inquiry on their own Heavensgate.com website would have provided the context for the Admission. There are some denials that appear to be consciously evasive and even outright false to claim.

d) **Re: Interrogatory Requests. Defendant received none of these**. At first Plaintiff objected to filing Responses to Interrogatories because of Defendant's inclusion of the directors names of Mark King and Sarah King on the title with the word "Plaintiff" which the Court ruled as a reason to not require Plaintiffs Responses agreeing they were not "parties" in the case. Defendants corrected that mistake and filed Amended Interrogatories (which included proof from Mark Kings Declaration that he admitted he was "Plaintiff" in this case) and Plaintiff objected on other grounds, the same grounds of their being filed as untimely as they objected to the Admissions but still responded to.

8

The untimely filing was from a misunderstanding of the footnote in the Scheduling Order by Pro se Defendants followed by Judge Gotsch tolling Discovery and then his retirement that put the case on hold for over a year.

2) Defendant is still examining the possibility of filing other Dispositive Motions even a dismissal of all charges against Defendant with a Settlement Agreement that would be Fair Use but it's hard to imagine given the climate of this case so far.

**C.  need for oral argument on any dispositive motion**

Defendant doesn't know at this time of a need for an oral argument

**D.  claims to be tried absent any dispositive motion ruling**

Defendant's understanding is that "claims" would include Defenses and Counter Claims but first will list claims not yet as clearly in any of Defendant's filed Defenses and/or Counter Claims:

1. **This report may explain some of the lines of disagreement**:

    a) Defendant claims he has extensive evidence Plaintiff has illegally obtained copyrights and trademarks - this includes Court Documents and misrepresentations of who the author of the audio tapes is and includes no documentation for "work for hire" status and also other seeming misinformation in the registrations.

9

b) Defendant claims he has extensive evidence Plaintiffs knew Defendant was disseminating audio tapes, video's tapes and documents for over 10 years before the lawsuit.

c) Defendant claims he has extensive evidence of Cathy Weaver's Settlement efforts with Plaintiff and has next to nothing on her besides how she sat in on some of Havel's livestreams at times when Havel played an audio tape yet also at a time when neither Havel nor Weaver had any direct knowledge of what was copyrighted and trademarked, not even shown to us in the Cease and Desist and were also Intellectual Property being used by Havel for 10-20 years. There is evidence Weaver didn't know Havel until well after Havel received the new batch of audio tapes from Francisco Falcon aka Jhnody (who Mark and Sarah King sent the audio tapes to in the first place) and gave them to co-defendant Jason Bartel so could not have been engaged in a Conspiracy to infringe as claimed. There was never any kind of conspiracy at all and especially not to infringe upon Copyrights we had no evidence at that time existed.

d) Defendant claims he has extensive evidence of Plaintiff manipulating evidence via the two tape Lists: List 1 and List 2 ordered by the Court and made Exhibits of and that they were fabricated and riddled with errors and potentially deceit to hide certain ones that talk about them. Many tapes are listed on List 1 as being among those copyrighted that couldn't have been copyrighted because they didn't exist and we have emails that verify

Mark and Sarah personally knew those tapes did not exist yet have said nothing about how many tapes were actually copyrighted and which ones.

e) Defendant claims he has evidence of Plaintiffs lying to the court about what they had copyrighted.

f) Defendant claims he has evidence the recent copyright registrations Plaintiffs filed for audios 487 to 497 and 498 to 508 lied to the Copyright office by declaring for 487 to 497 the false author of Steven McCarter (Srrody) when they know the only authors for those tapes is DO aka Marshall Applewhite not a present student who might have pressed the record button on the tape recorder which could have also been Defendant Havel.

g) Defendant claims he has evidence that he legitimately possesses and has a registered common law copyright from 1998 for 196 audio tapes, video tapes and the website code and many images including the CBE image being (sued for using) and parts of the so called Heaven's Gate logo.

h) Defendant claims he has evidence a number of students including Francisco Falcon aka Juan or Jhnody received letters and books and master Beyond Human - The Last Call video's directly from the group in 1997 months before Mark King and Sarah King copyrighted the same video tapes so could not be included in any Consent Decrees or

Settlement Agreements and those letters asked them if they wanted to, to send them to the media, etc.

i) Defendant claims he has evidence the Court in 1999 under Judge Lisa Guy-Schall considered their copyrights and trademarks  may have been fraudulently obtained so denied their relevance in the case and they were fined for a frivolous lawsuit but upon threatening appeal in the interest of ending the case and not opening up the court for many lawsuits by the deceased members families settled and sold some of the IP to Plaintiff/claimants.

j) Defendant claims he has evidence there was a copyright on the CBE Older Member Print and part of the logo image of Saturn Rings and others in 1982 ignored by Mark and Sarah King in copyrighting some of them in 1997.

k) Plaintiffs used the word Copyright to include "everything" the Group had and that they have. They tried to change the wording to refer to Audio Works as both the registered copyrights of audios and the unregistered audios and then at other times said this case isn't about all the audios.

l) Defendant claims he has evidence the group wanted all their intellectual property disseminated freely to anyone who wanted them (except for needing to pay for their production and shipping, etc.).

m) Defendant claims he has evidence Plaintiff was instructed to give away audio tape cd's (from Rkkody), video tapes and to sell the Book by Judge Breyer Consent Decree Settlement Agreement in 1999 but did  not give Defendant Havel the Audios on Rkkody's CD's and instead is being sued for giving them to others.

n) Defendant claims he has evidence that the TELAH foundation was not the Groups company. The company name the Group had was TELAH Services and even so did not authorize Mark and Sarah King to take out copyrights or trademarks.

o) Defendant claims he has evidence total overcomers anonymous was never a legal entity - used in copyright and trademark registrations and refers to a name the group once used perhaps as a dba that didn't exist before 1992 so couldn't be used to represent the author in their copyrights and trademarks.

p) Defendant claims he has evidence the book was Common Law copyrighted by the Group so anyone could copy parts of it or in it's entirety as long as it wasn't for commercial profit purposes (though funds from it could be used to help with living expenses of those who were disseminating their information).

q) Defendant claims he has evidence there were not to be copyrights on the exit videos.

r) Defendant has much evidence written and in the audios the Creators TI and DO of the Intellectual Property wanted it given to the public and/or media.

s) Defendant claims he has evidence Plaintiffs were instructed by Judge Breyer in 1999 Consent Decree Settlement Agreement to provide the obtained Intellectual Property to "former verified members of the group" (or equivalent wording) of which Havel and Bartel and Francisco Falcon are.

t) Defendant claims he has evidence that Mark and Sarah sent Havel two cases of the HG book, a full set of beyond human video tapes and two audio tape cd's (with one audio on each one seeming to appear to satisfy the requirement by Judge Breyer to disseminate the two cd set from Rkkody. Mark and Sarah King did not send any instructions on what to do with the materials they sent Havel. They never said they were to only be used privately.

u) Defendant claims he has evidence that Cathy Weaver had nothing to do with this case except for participating in T shirt designs (not known to be copyrighted) and selling a few and sitting in on some playing of audios on Havel's 3pm Youtube livestreams not aware

of what was or was not copyrighted and that information was not provided by Mark and Sarah King until the lawsuit was filed.

v) Defendant claims he has evidence Plaintiffs have no financial damages from anything Defendant has done.

w) Defendant claims he has evidence Plaintiffs were ordered by Judge Lisa Guy-Schall to not sell anything of the groups IP they received in their Settlement Agreement so their finances are not affected by what anyone else may have and sell.

x) Defendant claims he knows Plaintiffs won the right to copyright the Groups IP but to sue someone need to register those items with the Copyright Office which they have only done for 20 audio tapes and even those used fictitious information to file and that Defendant Havel has not played any of those on his livestreams.

y) Defendant claims he has evidence that when Judge Breyer ruled Plaintiffs to have exclusive rights to the Heaven's Gate IP he didn't know of the simultaneous court case Plaintiffs had that hadn't yet ruled on the bulk of the audios and other IP so they were ruling for the same body of information. Plaintiff did not seem to inform Breyer that a number of former students also legally owned parts of the Heaven's Gate IP.

z) Defendant claims he has evidence of Plaintiffs making false statements in Court documents including in Defendant's Admissions

2. **Defenses (Affirmative) of Fair Use, Laches and Delay and Estopple for COUNTS I, II, III, IV and COUNT VII:**

**Here are Plaintiff's applicable Counts to Defend against with the Affirmative Defenses:**

(a) **COUNT I INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. SRU00298530 (Audio Works) 486 Cassettes.**

(b) **COUNT II INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. PA0000867224 (Video Works)  "Beyond Human – The Last Call video tape series of seven tapes of 12 sessions.**

(c) **COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732 (Literary Work - entitled "How and when 'Heaven's Gate' (The Door to the  Physical Kingdom Level Above Human) May Be Entered : An Anthology of Our Materials**

(d) **COUNT IV INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA000877834 (Visual Work - C.B.E.** (Celestial Being Entity) aka what an Older Member from the Kingdom of Heaven may look like

(e) **COUNT VII FEDERAL TRADEMARK INFRINGEMENT  - use of the CBE Visual Work on T shirts for sale.**

16

3. **Defense pertaining to the part of Plaintiff Complaint (DE 1, 132) COUNT 4 – Against the idea of creating plush dolls:**

This was an idea only that defendant Havel and co-defendant Weaver floated past Mark King and Sarah King. There is no evidence of this because it was just an idea in an original Settlement/Licencing Agreement that Plaintiffs refused to negotiate.

4. **Defense pertaining to Plaintiff Complaint COUNT V the Contributory Infringement claim and to COUNT VI – Conspiracy to commit copyright infringement claim is based on the fact that Defendant had no direct knowledge of any infringement and had been disseminating Heaven's Gate Intellectual Property for over 10 years and in that time could not cause any infringement to occur and all dissemination was done independent of anyone else including co-defendant Bartel and pertaining to co-defendant Weaver who Havel didn't even know during those 10 plus years.**

5. **Defense pertaining to COUNT VII - FEDERAL TRADEMARK INFRINGEMENT, CBE Image use on T shirts:**

For many years Defendant used the CBE image on Defendant's YouTube channel 3spm.

6. **Defendants Current Counter Claims against Plaintiff:**

    A.    COUNT I – COUNTER DEFENDANTS ILLEGALLY COPYRIGHTED DO AND THE CLASS' BEYOND HUMAN – THE LAST CALL VIDEO TAPE SERIES (7 TAPES) AND FOUR OTHER VIDEO TAPES; "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only

Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit, DO MADE IN 1992, 1996 AND 1997

B.   COUNT II – COUNTER DEFENDANTS ILLEGALLY COPYRIGHTED DO AND THE CLASS' 486 AUDIO CASSETTE TAPES

C.   COUNT III – COUNTER DEFENDANTS ERRONEOUSLY CLAIM THE COPYRIGHT OF AUDIO TAPE NUMBERS 487 TO 1082 WHEN ONLY THE CREATORS HAVE THE COPYRIGHT.

D.   COUNT IV –MARK KING AND SARAH KING WENT DIRECTLY AGAINST DO'S WILL WHEN THEY CHANGED THE COMMON LAW COPYRIGHT DO AND THE CLASS' PUT ON VERSION ONE OF THEIR BOOK, ENTITLED "How and When 'Heaven's Gate' (The Door to The Physical Kingdom Level Above Human) May Be Entered : An Anthology of Our Materials" (aka "Blue Book") INTO A TELAH FOUNDATION COPYRIGHT

E.   COUNT V – INTENTIONALLY AND ILLEGALLY COPYRIGHTING DO AND THE CLASS' (OLLODY AKA OLLIVER ODINWOOD'S) ACRYLIC PAINTING OF "HOW AN OLDER MEMBER OF THE KINGDOM OF HEAVEN MIGHT LOOK" AS THE C.B.E. LITHOGRAPHIC PRINT (VA 877-834 PLAINTIFF'S EXHIBIT F DE 1-6)

F.   COUNT VI COUNTER DEFENDANTS INTENTIONALLY ILLEGALLY REGISTERED TRADEMARKS ON DO AND THE CLASSES INTELLECTUAL PROPERTY, THE ARTWORK OF THOSE CREATORS WITHOUT ANY LEGAL DOCUMENTATION TO DO SO

G. COUNT VII COUNTER DEFENDANTS INTENTIONALLY MISLED NOW THREE COURTS BY CLAIMING TO OWN AND HAVE THE COPYRIGHTS FOR ALL DO AND THE CLASSES INTELLECTUAL PROPERTY WITHOUT ANY LEGAL DOCUMENTATION TO PROVE.

H. COUNT VIII FILING TWO CLAIMS IN TWO DIFFERENT CALIFORNIA COURTS IN THE SAME TIME PERIOD TO ACQUIRE MUCH OF THE SAME BODY OF INFORMATION AND NOT INFORMING BOTH COURTS OF THE OTHER ACTIONS AND THEIR NATURE

I. COUNT IX – MARK AND SARAH KING ARE INFRINGING ON HAVEL'S "WORK FOR HIRE" COPYRIGHT OF ALL OF THE HEAVEN'S GATE INTELLECTUAL PROPERTY

J. COUNT X CLAIMING IN THREE COURTS THAT DO'S HEAVEN'S GATE GROUP "TRANSFERRED" TO THE TELAH FOUNDATION ALL RIGHTS TO ALL THEIR INTELLECTUAL PROPERTY WHILE HAVING NO SUCH DOCUMENTABLE TRANSFER.

K. DENYING JUDGE BREYER'S CONSENT DECREE ORDER TO DISSEMINATE RKKODY'S CD'S CONTAINING OVER 200 DIGITIZED; AUDIO TAPES, BEYOND HUMAN – THE LAST CALL VIDEO TAPES, THE HEAVEN'S GATE BOOK (VERSION 1) AND C.B.E. IMAGE, ETC. IN PARTICULAR TO "VERIFIED FORMER MEMBERS" OF THE CLASS – CRLODY (DEFENDANT JASON BARTEL) AND SWYODY (DEFENDANT STEPHEN HAVEL) AND OTHERS WITH A COMMON LAW STIPULATION

19

**E.  need for the court to resolve any choice of law issues;**

Defendant is not aware of any applicable "choice of law issues.

**F.  duration of the anticipated trial;**

Pro Se Defendant Havel doesn't know how long the trial might be. One of the main time expenditures would be jury selection as to find objective jurors could be difficult given the very public nature of this case.

Another consideration is in the fact that Defendant's alleged infringement is not simple as there are many audio tapes that are not copyrighted unless it can be proven that having the right to copyright them via Court orders gives Plaintiff the right to prosecute their use before registration.

Plaintiff failed to produce a legitimate tape log of which tapes were exactly copyrighted. When one does an examination of the two Lists Plaintiff listed upon court order it was not evidence of what was sent to the copyright office as it was constructed by Iaasc Crum attorney for Mark King and Sarah King.  Those two constructed Lists have major errors in them. For instance, the copyright registration claims there were "486 audio cassettes" in the "deposit". In List 1 the alleged tapes that were copyrighted indicates there were other tapes in that 486 as we have a log from Rkkody from those audio tapes he retrieved from storage himself that lists up to 18 tapes as being missing which means if there were 486 tapes in the deposit we can't count on which numbers were or were not copyrighted. Also in List 2 of the tapes that were not registered there

are about a hundred tapes logged that appear to have been manipulated. For instance, two tapes are listed for the same information.

If Plaintiff provides pictures of the labels on the cassettes pictures of the original tapes and the logs the group made and included with each box of tapes, both of which we have evidence exist, then Defendant would compare those with the 13 or so audio's Defendant played on Defendant's YouTube channel 3spm.

If not then the only way to legally know which tapes were played by Defendant against which were copyrighted might be to play them a little in court, which Defendant brought up to Mr. Isaac Crum who said that could be done.

**G. unique issues that may arise for this trial, including for instance bifurcation, special verdict forms, witness accommodations, interpreters, and the like that may impact scheduling;**

Defendant is not aware of any unique issues.

**H. number of anticipated experts and a concise précis of anticipated opinion testimony limited to the proposed expert's name, specific area of expertise, and no more than five sentences summarizing anticipated opinions;**

No experts will be called by Defendant

I.   likelihood and scope of any anticipated motion under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), whether that motion may impact summary judgment, and need for any related evidentiary hearing; and

Defendant has no need for a forensic study of anything as Defendant hasn't created any new work to compare with the originals..

Defendant isn't aware of any financial negotiations in this case.

J.   any other matters that would assist the court in preparing for the conference, final scheduling, and trial.

Defendant is not aware of any other matters to assist the court in preparing for the conference.

Respectfully submitted,

Dated:   9-30-2025

*Stephen Havel*

Pro Se Defendant Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com