UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

The Evolutionary Level Above Human Foundation,       CASE NO. 3:22-CV-395-DRL-SJF

    Plaintiff

    v.

Stephen Robert Havel,
Cathy Joann Weaver,
Jason Bartel

    Pro Se Defendants

-FILED-
OCT 16 2025
At_____
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

# DEFENDANT HAVEL'S MOTION TO CLARIFY AND PRESERVE RECORD CONCERNING DISCOVERY AND AUTHENTICITY ISSUES

Defendant Stephen Havel, appearing pro se, respectfully submits this Motion to Clarify and Preserve Record Concerning Discovery and Authenticity Issues. This motion is intended solely to clarify and memorialize certain outstanding matters from discovery and related proceedings, so that the record accurately reflects the procedural posture and unresolved factual issues. Defendant does not seek further discovery, but rather a clear record in anticipation of dispositive motions.

## 1. Overview Background and Discovery History

Discovery in this matter has been complex and extended across the tenure of multiple magistrate judges. Judge Gotsch originally managed the discovery and because of many issues of lack of

1

cooperation between Plaintiff and Defendants tolled discovery prior to his retirement. Judge Frankel was subsequently assigned nearly a year later and held a discovery conference by Zoom and filed subsequent new Discovery deadlines that were reaffirmed by Judge Leichty's order that included an order for Defendants to file a new Joint status report (that stated because Defendants were Pro Se they could file independently from Plaintiff) that included a pretrial report.

2. Production of Documents and Outstanding Requests

Defendant Havel submitted two separate Requests for Production.

   a. The first included several key requests for documents referenced by Plaintiffs in their Complaint, including the '1999 Consent Decree' issued by Judge Breyer and importantly to Havel's defense and Counter Claims the "Settlement Agreement" referenced 8 times in the Consent Decree as having the details to the Settlement. Plaintiffs initially responded that if such documents existed, they would be produced under a protective order. In Havel's zoom calls and email communications with Plaintiff counsel, Mr. Crum, after Havel asked again about this Settlement Agreement, Mr. Crum at first indicated he didn't have it and at one point said something to the effect of "maybe it was destroyed". Meanwhile Judge Gotsch said in his Opinion and Order that the Court could order that document if it was filed under seal. However, when this document came up later during the Discovery hearing before Judge Frankel, Plaintiffs' counsel Mr. Crum stated that he inquired about the Settlement Agreement and was told the document could not be located. Judge Frankel stated that if the document no longer existed, he could not order its production. Plaintiffs have repeatedly said it was Defendant's responsibility to get that document. Havel has documented evidence from Co-defendant Bartel who said he learned that in that Breyer case, part of the Consent Decree included the order to provide

2

all the Intellectual Property to any "verifiable former members" of the Heaven's Gate Group which would mean Havel and Bartel both own that material and have no court instructions on what to do with it, thus a big part of vindicating Defendants of some of the Counts against them.

b. Havel's second production request mostly sought authenticated copies of the two 1999 case files that Plaintiffs cite as of late as the basis of their intellectual property rights, considering the problems authenticating their copyrights and trademarks. Although Plaintiffs did not produce these materials, Defendant later obtained the case files independently and gave them to Plaintiff documented in their Joint Status Report (although they don't include the Settlement Agreement listed in point a above). During those Joint Status Report discussions, Plaintiffs' counsel, Mr. Crum, agreed to their authenticity. Defendant includes this clarification so the record accurately reflects that the authenticity of those 1999 case files as not disputed.

c. There are other documents Defendant requested that have been blanket denied and the Court due to their untimely filing denied. However, this is also in dispute since there was two weeks left after Discovery was tolled until the first Discovery period deadline in December and the later new Discovery Scheduling was exceedingly short as well and especially if documents needed to be filed 45 days before the new deadline just passed.

## 3. Requests for Admission and Sufficiency of Responses

Defendant Havel previously filed a motion addressing Plaintiffs' insufficient responses to his Requests for Admission, as reflected in the record (DE 221). Plaintiffs' responses included denials or statements of lack of knowledge that were inconsistent with evidence produced

3

elsewhere in the case and with Plaintiffs' own prior representations. Although the Court has since closed discovery, Defendant includes this note to preserve the record concerning the sufficiency and completeness of Plaintiffs' admissions responses, which remain material to the factual issues in dispute and may bear upon any forthcoming dispositive motions.

### 4. Interrogatories and Related Discovery Communications

During the discovery hearing conducted by Judge Frankel, co-defendant Cathy Weaver raised the issue of Plaintiffs' failure to respond to both Weaver's and Havel's interrogatories and admissions. Plaintiffs' counsel, Mr. Crum, explained that they had not responded to the interrogatories because the caption identified 'Mark King and Sarah King' together with 'Plaintiff,' and he asserted that those individuals were not parties. Judge Frankel directed Plaintiffs to respond to both Defendants' admissions, and in his subsequent order confirmed that the Kings were not parties, relieving Plaintiffs of the obligation to respond to the interrogatories as originally captioned.

In response, both Weaver and Havel promptly removed the references to Mark King and Sarah King from their interrogatories and filed amended versions. Defendant Havel also noted that Mark King's own Declaration (DE 67-1) describes him as 'Plaintiff,' which raises ambiguity as to his status and participation on behalf of the TELAH Foundation, particularly since he and Sarah King are the only directors of that organization.

The amended interrogatories were filed and docketed, and Judge Frankel directed Plaintiffs to respond or decline to respond but ordered that Defendants could not file replies. Plaintiffs then objected to the interrogatories as 'untimely,' citing the forty-five-day rule before the close of discovery in December 2023. Defendant Havel had diligently worked throughout the discovery

4

period, preparing an amended answer, defenses, and counterclaim before the nondispositive-motion deadline in October 2023, and did not understand that interrogatories or admissions were considered 'motions.'

Havel had earlier filed two Requests for Production, to which Plaintiffs provided no responsive documents, prompting Havel to file one motion to compel within the dispositive motion deadline and then another to Havel's Second Request for Production, mainly for authentication of the 1999 case files Havel was given by a third party. It was filed shortly after the nondispositive-motion deadline while also requesting an extension of that deadline that Plaintiffs opposed and Judge Gotsch maintained.

Judge Gotsch had admonished Havel for not working directly with Plaintiff on Discovery Issues though Havel understood from Judge Gotsch's first Status Hearing and Discovery Scheduling that because Pro Se Defendants feared being tricked by Plaintiff into something they could send their discovery communications with Plaintiff directly to the court.

Judge Gotsch then tolled Discovery and instructed the parties to work together directly. Havel complied, working with Mr. Crum to produce a Joint Status Report that later served as the foundation for the Protective Order discussions. Mr. Crum advised that Havel's many production requests should be organized into 'buckets,' which Havel, despite that taking over 8 hours accomplished (and was never used, as Judge Frankel had a different categorization).

When Judge Frankel assumed the case and held that next resumed discovery hearing, the long lapse since prior discovery (over a year) left Defendant uncertain how to frame certain issues as they are complex to describe so several document-production requests were denied by Judge Frankel, including a request for authentication of the 1997 tape log created by former group

5

member 'Humphrey (Rkkody).' That document is relevant because Plaintiffs were ordered in the 1999 Breyer consent decree to 'disseminate' the contents of those recordings, yet in recent responses to Havel's Requests for Admission, Plaintiffs stated they did not know the contents of those Rkkody CDs that Rkkody in 1997 had sent to Havel and contained a "common law" copyright registration that led Havel to believe he could share them with people, which he did for over 10 years before he was sued by Plaintiffs and that Havel knew Mark King and/or Sarah King knew about but were now denying.

Plaintiffs have since responded to both Defendants' Requests for Admission—asserting that they were untimely—but have never responded to Havel's amended interrogatories, despite the Court's clarification and their own opportunity to do so.

In Plaintiff's responses to Havel's Admissions, at least 15 of the 25 were either denied or objected to or not denied or admitted to with claims of having performed a "reasonable inquiry" or that they called for "speculation" or were "privileged" communications all of which Havel documented by filing a motion claiming Plaintiffs blanket and evasive responses were "insufficient" which Plaintiff denied yet did give supplemental additional discoverable responses while denying things that Havel believes are material facts.

Defendant includes this history so that the record reflects both his diligence and Plaintiffs' repeated decisions not to provide substantive answers.

**5. Audio Tape Lists and Description Irregularities - issues of Material facts that question Plaintiffs proof of having a valid Deposit or chain of title**

During proceedings before Judge Gotsch the parties discussed Plaintiffs' motion for preliminary injunction and the two audio tape Lists Judge Gotsch ordered Plaintiffs to produce: List 1 of

what Plaintiff claims were the 486 audio tapes they registered copyrighted in 1997 (before any Consent Decrees pertaining to any audio tapes) and List 2 being the unregistered audio tapes.

Defendant raised objections that the lists lacked specific subject matter descriptions the Group/Creator of the tapes labeled for them in 1997. They also included numerous errors, such as non-existent tape numbers that couldn't be part of the deposit of the so called 486 audios in the Deposit registration. There were also different tape numbers with the same dates listed and there were repeated durations.

Judge Gotsch in (DE 194), didn't address all the discrepancies so described Plaintiffs' proposed verification method to identify which tapes were copyrighted as a 'reasonable solution,' suggesting that Defendant could send his own 1997 tape list to Plaintiffs for comparison and potential filing under seal. However, this was characterized as a suggestion rather than a formal order. Plaintiffs' counsel later pressed Defendant to treat it as binding, though the lists in question were created decades after the alleged copyrights and by individuals not involved in the original recordings.

When Havel Requested of Plaintiffs an Admission of ordering Plaintiff's Council, Mr. Crum to make the Lists, Plaintiff objected on privilege and didn't respond to the rest of the Admission even though it's obvious that Mr. Crum admitted creating the two Lists.

Defendant also holds correspondence showing the Kings knew even years before the lawsuit that approximately sixteen of the listed recordings were lost before registration which means they knew or should have known at least List 1 created by Mr. Isaac was not truthful.

Defendant maintains that the lists Plaintiffs rely upon are unreliable and inconsistent with the original source materials. Evidence shows that Mr. Crum personally constructed these lists using

7

information created long after the works were made, and that multiple errors in their very existence and their content and their duration and dates not lining up with tape numbers from even the Exhibit H List Plaintiffs included with their complaint (DE 1-H and Amended DE 132-H), posted publicly on Havel's sawyerhg.wordpress.com blog.

Therefore these Lists make them unsuitable as authoritative representations of the copyrighted recordings. These issues collectively raise substantial questions under 17 U.S.C. §409 and 37 C.F.R. §202.20 as to whether Plaintiffs can prove a valid deposit or chain of title.

## 6. Plaintiff's Protective Order issues

After entry of the protective order under Judge Frankel, Plaintiffs provided an online link to two file folders that they represented as production materials. One folder contained 79 document files whose filenames mimicked Bates numbering (e.g., telah_000001, telah_000004, telah_000476), apparently corresponding to page numbers rather than any logical document sequence. A second folder contained 257 video files named TELAHVIDEO_01.mp4 to TELAHVIDEO_257.mp4 seemingly all gathered from Defendant Havel's past livestreams on his Youtube 3SPM channel he has had since 2007. These generic names provided no indication of whether they were proposed for marking their content Protected/Confidential. They had no dates in the names nor to the Production of Document requests Havel had made and there was no index included.

For example, one file showed Defendants Havel and Weaver discussing and commenting on a purported copyrighted audio recording for over two hours. Plaintiffs also placed within the same protected-material set several blog files authored by co-defendant Bartel, which were never requested by Havel and are not confidential. This approach—presenting an unindexed mixture of Plaintiffs' own evidence, third-party materials, and unrelated content under the protective-order label—does not satisfy Fed. R. Civ. P. 34(b), which requires production to correspond to specific requests.

Further among the 79 files, again with no indications what among them was slated for Protection, except by examining each of them, were only 16 they marked for Protection. Of them some 4 contained nothing to protect by any of the laws to justify, so I objected. Two were emails between plaintiff and Francisco Falcon who I will ask to provide the same to me as he has been a major source of help in this lawsuit, but in the meantime approved Plaintiff marking them Protected. The

other 10 were documents that were already public, to include their complaint copyright and trademark registrations and their letters from Group members I had already included in my Answer Exhibits. They did try to respond to some of my Production Requests but it was up to me to guess which ones they replied to. Admittedly I requested a great deal. But in my defense, I am working on 3 avenues of Affirmative Defense and over 10 counts in my counter claims to substantiate.

Defendant respectfully asks the Court to clarify that the protective order was never intended to transform such unorganized or unrelated materials into proper discovery responses or to shield them from challenge or public examination.

## 7. Relief Requested

Defendant Havel respectfully requests that the Court take notice of the matters set forth herein and clarify the record to reflect that:

(1) Discovery was completed under the schedule set by Judge Leichty's Order (DE 213) and closed thereafter;

(2) Plaintiffs' production responses remain incomplete regarding the 1999 Settlement Agreement and certain discovery requests;

(3) Plaintiffs' responses to Defendant's Requests for Admission remain incomplete and inconsistent;

(4) Plaintiffs did not respond to Defendant's amended interrogatories following Judge Frankel's clarification and provision of Defendants Amended Interrogatories;

(5) The authenticity of the 1999 case files is established and undisputed;

(6) Clarify that the protective order was never intended to transform such unorganized or unrelated materials into proper discovery responses or to shield them from challenge or public examination;

(7) Material factual issues remain regarding the accuracy and provenance of the audio tape lists relied upon by Plaintiffs.

This motion is submitted solely to preserve these matters for the record and to assist the Court in its review of any forthcoming dispositive motions.

**Reservation of Rights**

Defendant does not waive and expressly reserves his right to seek such other and further relief as may be just and proper under the Federal Rules of Civil Procedure, including but not limited to relief under Rules 11, 26, and 37, and the Court's inherent authority, in the event further evidence of bad faith, discovery abuse, or other sanctionable conduct by Plaintiffs or their counsel becomes apparent.

Respectfully submitted,

Dated: 10-15-2025

*/s/ Stephen Havel*

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Pro se Defendant

Email: SawCat575@gmail.com