UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>　　　　　　Defendants. | CASE NO. 3:22-CV-395-DRL-SJF |

## OPPOSITION TO DEFENDNAT WEAVER'S "MOTION TO DISMISS CLAIMS AGAINST HER INDIVIDUALLY"

On October 2, 2025 Defendant Cathy Weaver filed motion to "dismiss all claims asserted against her individually, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 56, and the Court's inherent authority to ensure fairness and justice." [DE 230 ("Motion") at 1]. The procedural deficient Motion must be dismissed because: (1) it is untimely as a Motion under Rule 12, (2) it is procedurally deficient for a motion under Rule 56, and (3) the motion is unsupported by law. Plaintiff, therefore, respectfully request that the Court deny the Motion.

**I.　ARGUMENT**

　**A.　The Motion is Unauthorized Under Rule 12(b)(6)**

Ms. Weaver states that her "motion to dismiss" is filed pursuant to Fed. R. Civ. P. 12(b)(6). As such, it is clearly untimely. As this Court is aware and as Rule 12 makes clear, a motion "asserting any of these [Rule 12] defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

1

### B. The Motion Procedurally Fails to Follow This Court's Rules for Summary Judgment Motions

Over two years ago, this Court has repeatedly instructed the parties about the rules for filing summary judgment motions. For example, over two years ago, this Court stated,

> Although Mr. Bartel seeks summary judgment in his motion, his motion disregards the Court's procedural requirements for such motions. *See* N.D. Ind. L.R. 56-1. A party moving for summary judgment must separately file (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. N.D. Ind. L.R. 56-1(a). Mr. Bartel's instant motion meets none of these requirements. Accordingly, the Court must also STRIKE Mr. Bartel's Motion. . .

[DE 112 at 3–4]. Then, approximately a month later, this Court denied another motion stating:

> Finally, to the extent that Mr. Bartel's motion also argues that he is entitled to summary judgment, it also wholly disregards the Court's procedural requirements for such motions. *See* N.D. Ind. L.R. 56-1. As discussed in this Court's order from June 6, 2023, a party moving for summary judgment must separately file (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. N.D. Ind. L.R. 56-1(a). Mr. Bartel's instant motion meets none of the Court's requirements for such a motion. "Judges are not like pigs, hunting for truffles buried in [the record]." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (internal citation omitted).

[DE 130 at 8]. Then again, more recently, this Court reminded the parties about the requirements of the local rules for Summary Judgment motions:

> Even though the undersigned is not recommending sanctions, the undersigned again admonishes Mr. Bartel to file any further motions judiciously and to ensure that his motions comply with the federal rules and the Court's local rules, especially N.D. Ind. L.R. 15-1, N.D. Ind. L.R. 7-1, and N.D. Ind. L.R. 56-1. Future repetitive motion practice will not be

viewed favorably by the undersigned and will invite the Court to again consider imposing sanctions.

[DE 205 at 10]. Then again on September 11, 3 weeks before the filing of the instant Motion, this Court stated:

> The deadline to file any dispositive motions, including under Fed. R. Civ. P. 56, remains October 31, 2025. Briefing must be conducted in accordance with local rule. The parties also must comply with the court's instructions governing summary judgment submissions readily available on the court's website.

[DE 213 at 2]. An admonition that was re-stated in yesterday's Order which was substantially the same:

> The deadline to file any dispositive motions, including under Fed. R. Civ. P. 56, remains October 31, 2025. Briefing must be conducted in accordance with local rule. In addition to Fed. R. Civ. P. 56 and N.D. Ind. L.R. 56-1, the parties also must comply with the presider's instructions governing summary judgment filings, readily available on the court's website.

[DE 241 at 2].

As stated repeatedly by this Court, Northern District of Indiana Local Rule 56-1(a) *requires*: "A party moving for summary judgment must separately file: (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes: (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. . ." N.D. Ind. L.R. 56-1(a). The current Motion fails to comply with these rules. Ms. Weaver did not file a separate statement of material facts or a separate motion or supporting brief. Since, despite repeated warnings, Ms. Weaver chose to ignore this Court's Orders and Local Rules, this Court should deny the instant Motion. *Lundy v. Shiverdecker*, No. 1:20-CV-01764-JMS-MG, 2022 WL 17082838, at *3 (S.D. Ind. Nov. 18, 2022) (denying summary judgment motion for failing to comply with Fed. R. Civ. P. 56 and Local Rule 56-1 by not filing a "Statement of Material Facts Not in Dispute").

### C. The Motion Should Also Be Denied On the Merits

Should this Court ignore Ms. Weaver's failure to comply with the Federal Rules of Civil Procedure and this Court's Local Rules, Ms. Weaver's motion to dismiss the claims against her must *still* be denied. Ms. Weaver's Motion argues for dismissal of all claims against her based on two grounds. *First,* that her bankruptcy discharge mandates dismissal of the claims asserted in this case. And, *second*, that she is under severe emotional distress which has reached the point where she "can no longer participate in this case." Neither argument is supported by law and both should be denied.

#### 1. Ms. Weaver's Bankruptcy Does Not Require Dismissal of Claims.

Ms. Weaver first requests that this Court dismiss all claims against her, citing her bankruptcy discharge. [Motion, 1–2; *see also* DE 100 (Order of Discharge)]. The Motion, however, overstates the ramifications of the bankruptcy discharge, as it does not extinguish Plaintiff's requests for non-monetary or *post*-discharge relief. *See* First Amended Complaint [DE ] at 17. Instead, as defined by the Bankruptcy Code, a discharge under § 727 of the Bankruptcy Code only discharges all debts or "liability on a claim" that arose before bankruptcy not covered by an exception. 11 U.S.C. § 727(b). Debt is "liability on a claim." 11 U.S.C. § 101(12). A claim is either a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

In *Ohio v. Kovacs*, the Supreme Court concluded that an injunction that required the payment of money was a "claim." 469 U.S. 274, 282–83 (1985). Interpreting Kovacs, the

Seventh Circuit concluded that an equitable remedy for breach of performance is a "claim" and dischargeable if, when it turns out the equitable remedy is unobtainable, a money judgment is instead available. *United States v. Apex Oil Co.*, 579 F.3d 734, 736 (7th Cir. 2009). If payment is an alternative or a close substitute to the requested injunctive relief, it is a claim. *Matter of Udell*, 18 F.3d 403, 408 (7th Cir. 1994). **But,** if the request is for forward-looking injunctive relief, it may not be discharged if it cannot be replaced with a monetary payment. *See Apex*, 579 F.3d at 737 (holding that bankruptcy didn't discharge an injunction requiring an environmental clean-up).

In this case, Plaintiff has requested, *inter alia*, the following relief in connection with Counts I, II, III, and IV (direct copyright infringement) and Count V (contributory copyright infringement) of the First Amended Complaint:

> The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted [Audio, Video, Literary, or Visual] Works made in violation of the Foundation's copyrights.

First Amended Complaint [DE 132] at ¶¶ 64, 73, 83, 92, and 101. In addition to the injunctive relief sought, Plaintiff's complaint also seeks impoundment of the infringing copies pursuant to 17 U.S.C. § 503 and 509(a). *Id.* at 17. Finally, Plaintiff seeks an injunction to enjoin further trademark infringement (CountVII). *See Id.* at 16 and 17. This *forward looking* injunctive relief is the type the Supreme Court and the Seventh Circuit have held is not discharged by a bankruptcy, which by its own terms only applies to claims that give rise to a "right to payment". *See e.g., Justen v. Wellpath LLC*, No. 24-CV-50310, 2025 WL 2763490, at *2 (N.D. Ill. Sept. 26, 2025) (holding that request for injunction seeking future actions was not discharged by bankruptcy and is not dismissed from the action).

Further, on at least one occasion, in May of 2023—after the April 10, 2023 discharge—Ms. Weaver engaged in additional instances of copyright infringement, at a public meeting in Cincinnati, OH where she charged $10 a person, sold 100 tickets, and split the proceeds. At that meeting, Ms. Weaver (1) sold the infringing t-shirts referenced more fully below, (2) displayed Plaintiffs copyrighted images in a slide show, and played clips of Plaintiff's Video Works. Furthermore, Ms. Weaver has, *post*-discharge been engaged in and participated in numerous livestreams in which she has worn the infringing t-shirts (on air) with Plaintiff's Heaven's Gate logo.

In short, while the bankruptcy discharge may have enjoined recovery on monetary damages for pre-discharge claims, Plaintiff is still able to proceed against Ms. Weaver to recover on post-discharge infringements as well as to recover injunctive relief related to pre- and post-discharge infringement.

### 2. Ms. Weaver's Argument About Fair Use Must Also Be Denied

Ms. Weaver next argues that her use of Plaintiff's intellectual property should qualify as "fair use." [Motion at 3]. In support of her argument, Ms. Weaver argues that Plaintiff's demands that Ms. Weaver cease playing Plaintiff's copyrighted tapes and showing Plaintiff's copyrighted images on the YouTube channel she co-operates with Mr. Havel are "coercive" and "infringe upon Weaver's constitutional rights." Ms. Weaver goes on to state that "religious and expressive speech enjoys the highest level of protection" under the first amendment, and any attempts to bar Ms. Weaver's activities "amount to a prior restraint and impermissible gag order."

Ms. Weaver's motion, however, fails to in any way address or explain how her conduct satisfies the test for fair use. As such, the claim must be denied. *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 173 n. 1 (7th Cir.1996) (finding waiver when a party "failed to develop the argument in any meaningful manner"). Even if not denied for failure to develop the argument. Ms. Weaver's blatant infringement does not constitute

6

fair use because, generally, "wholesale copying of copyrighted material precludes application of the fair use doctrine." *Stern v. Does*, 978 F. Supp. 2d 1031, 1046 (C.D. Cal. 2011), *aff'd sub nom. Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013) (quoting *Marcus v. Rowley*, 695 F.2d 1171, 1176 (9th Cir. 1983)); *see also Wall Data Inc. v. L.A. County Sheriff's Dep't,* 447 F.3d 769, 780 (9th Cir. 2006) (finding that "'verbatim' copying of the entire copyrighted work . . . weighs against a finding of fair use"); *Rosemont Enters., Inc. v. Random House, Inc*., 366 F.2d 303, 310 (2d Cir.1966) ("The fair use privilege is based on the concept of reasonableness and extensive verbatim copying or paraphrasing of material set down by another cannot satisfy that standard."); *Wihtol v. Crow*, 309 F.2d 777, 780 (8th Cir.1962) ("[I]t is not conceivable to us that the copying of all, or substantially all, of a copyrighted song can be a 'fair use' merely because the infringer had no intent to infringe.").

As the Seventh Circuit has stated, "copying that is a substitute for the copyrighted work . . . or for derivative works from the copyrighted work . . is not fair use." *Ty, Inc. v. Publications Int'l Ltd*., 292 F.3d 512, 517 (7th Cir. 2002). Here, Ms. Weaver has, for example, admitted to recording audio versions of entire chapters of Plaintiff's copyrighted book:

> 48. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating an audio book version of a the Literary Work owned.
>
> ANSWER: Defendant admits recording some chapters from the Literary Work however Defendant claims Fair Use as the Literary Work is in the Public Domain and Plaintiffs offer the Literary Work free of charge via download on the website they maintain. Defendant has also marked the channel in question as private upon learning of this lawsuit so it is no longer accessible by the public.

[DE 26 (Weaver's Answer to Complaint) at ¶48 (page13).]

Similarly, Ms. Weaver's own motion *admits* to the creation and sale of T-Shirts containing Plaintiff's copyrighted works and/or which use Plaintiff's trademarks. *See*

Motion at 4–5 and Exhibit C (evidencing creation of over 35 shirts containing the Copyrighted CBE Image, and 35 shirts with Plaintiff's Heaven's Gate Trademark). The creation of T-Shirts for *sale* is incompatible with a claim of fair use. 17 U.S. Code § 107(1).

### 3. Finally, Ms. Weaver Cites No Authority For Her Proposition That Emotional Distress Requires Dismissal of Claims.

Finally, Ms. Weaver argues that the "continuation of this litigation against Weaver, despite the bankruptcy discharge and absence of personal allegations" warrants dismissal of the claims against her because they have caused her severe emotional distress. [Motion, 6–7]. First, Ms. Weaver is just incorrect that there is an absence of personal allegations against her. As clearly explained in the Complaint, Ms. Weaver co-operates the YouTube channel that is broadcasting Plaintiff's copyrighted audio and, as explained above, Ms. Weaver *admits* to creating T-Shirts and an Audio Book from Plaintiff's copyrighted material.

Ms. Weaver also incorrectly characterizes Plaintiff's settlement proposals. Plaintiff has never demanded that Ms. Weaver "sever personal relationships" and/or "refrain from religious expression". Plaintiff's goal is simply to have Ms. Weaver cease engaging in copyright infringement and to destroy copyrighted material that she received without authorization. As stated in Plaintiff's correspondence, if Ms. Weaver is going to continue to participate on the YouTube channel she shares with Mr. Havel, and will simply duck off camera when Mr. Havel is playing copyrighted material—that simply does not resolve Plaintiff's concerns.

In addition to being factually incorrect, Ms. Weaver's request is unsupported by the case law she cites in support. The first[1] case cited by Ms. Weaver is *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005). This case is clearly inapposite. This case involves

---

[1] Ms. Weaver's second cited case, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–42 (1991), also appears to only recite that courts have inherent authority to afford relief under their implied powers. *Id.*

*criminal* proceedings and an appeal where an inmate appealed from an order dismissing his petition for writ of habeas corpus for failure to prosecute. In that context, the Court, citing Fed.R.Civ.P. 17(c), stated that courts are required to "appoint a guardian ad litem for an ... incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the ... incompetent person." *Id.* That, however, is not the case here. Ms. Weaver does not even allege that she is "incompetent". And, this Court has already ruled that Ms. Weaver and the other Defendants are more than competent to litigate this case themselves. *See* DE 52 (declining to appoint attorneys for defendants and holding that "Mr. Havel and Ms. Weaver's filings thus far in this matter consist of their answers, counterclaims, various motions, and status reports [DE 14, DE 15, DE 21, DE 22, DE 24, DE 25, DE 48, and DE 49] which show that they are literate, capable of rationally expressing themselves to the court, and able to meet deadlines.").

Instead of alleging incompetency, Ms. Weaver's Motion alleges that being a defendant in this proceeding has caused her a high level of stress. While Plaintiff is empathetic to Ms. Weaver's situation, Plaintiff cannot help but respond that Ms. Weaver could (and still can) end her involvement in this matter by simply agreeing to the relief requested by Plaintiff. She has, however, voluntarily chosen the opposite path. She has chosen to continue to litigate this matter. Indeed, just two pages earlier, she argues that she should be able to continue to broadcast Plaintiff's copyrighted materials on the internet because she believes (incorrectly) that doing so is covered by the First Amendment.

As many courts have commented, "[w]While the Court empathizes that litigation can be stressful and that counterparties may appear antagonistic, such an experience is hardly exceptional." *Hightower v. S. California, Permanente Grp.*, No. 5:22-CV-00181-JWH-KKX, 2022 WL 21737757, at *1 (C.D. Cal. May 2, 2022). "Facing the court of public opinion under these conditions is sometimes stressful—but that is the nature of adversarial litigation." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 70 (1st Cir. 2022). This is not a reason to dismiss claims against a defendant.

9

## II. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Ms. Weaver's motion.

Respectfully Submitted October 24, 2025.

                                            **MESSNER REEVES, LLP**

By: */s/ Isaac S. Crum*
    MESSNER REEVES LLP
    Isaac S. Crum
    (Pro Hac Vice)
    icrum@messner.com
    *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing will also be sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4051 26th Lane
Redgranite, WI 54970-7087
jason_bartel@unioncab.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

By: /s/ *Isaac S. Crum*