## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

The Evolutionary Level Above Human
Foundation d/b/a The Telah Foundation,

Plaintiff,

v.

Stephen Robert Havel,
Cathy JoAnn Weaver,
Jason Bartel,

Defendants.

CASE NO. 3:22-CV-395-DRL-SJF

## OPPOSITION TO DEFENDANT BARTEL'S MOTION FOR SUMMARY JUDGMENT

On October 2, 2025 Defendant Jason Bartel filed a motion for summary judgment. [DE 230 ("Motion")]. The Motion must be dismissed because: (1) it is procedurally deficient for a motion under Rule 56, and (2) the motion is unsupported by law—raising for the **twenty-first time** unsupported and inaccurate arguments that have already been rejected by this Court. Plaintiff, therefore, respectfully request that the Court deny the Motion.

I.    __INTRODUCTION__

Throughout this case's history, Mr. Bartel's sole involvement has been to push the same baseless and already-rejected arguments over-and-over-and-over-and-over. This is all done despite the fact that they are unsupported by any law or legal analysis. These baseless arguments revolve around the idea that Plaintiff does not really exist and never was assigned the rights to the intellectual property being asserted. The latest regurgitation of these arguments are in Mr. Bartel's Motion for Summary Judgment. [DE 227]. Mr.

1

Bartel has raised these legally baseless arguments, and Plaintiff has had to respond to these legally baseless arguments, now on **twenty one** different occasions[1], Plaintiff has asked Mr. Bartel to withdraw this current motion (*see* DE 238 at 2), but so far Mr. Bartel has refused. Mr. Bartel's previous filings advancing these baseless arguments even encouraged the Court to *sua sponte* issue an order to show cause as to why Mr. Bartel should not be sanctioned and forced to pay Plaintiff's attorney fees. [DE 193].

Mr. Bartel's Summary Judgment Motion, re-raises these same nonsensical and wholly unsupported arguments and must be denied as explained more fully below.

---

[1] *See* Motion to Name Mark and Sarah King as Plaintiffs and Counter Defendants [DE 45]; Motion to Name Mark and Sarah King as Plaintiffs and Counter Defendants [DE 61]; Motion to Add Evidence Regarding the True and Factual 'Known Place of Business' of the Evolutionary Level Above Human, Inc. [DE 101]; Motion to Add Evidence Regarding the True and Factual 'Known Place of Business' of the Evolutionary Level Above Human, Inc. [DE 102]; Motion to Amend Counterclaim and Name Mark and Sarah King as Plaintiffs and Counter Defendants [DE 105]; Motion to Cancel all of the Telah Foundation's 1997 Registered Copyrights and Trademark Registration Number 5148959 [DE 106]; Motion to Add Evidence Regarding Plaintiff's Corporate Disclosure Statement [DE 107]; Motion to Add Evidence Regarding Plaintiff's Corporate Disclosure Statement [DE 108]; Motion to Amend Defendant's Counterclaim and Motion to Name Mark and Sarah King as Plaintiffs and Counter Defendants [DE109]; Motion to Cancel all of the Telah Foundation's 1997 Registered Copyrights and Trademark Registration Number 5148959 [DE 110]; Motion to Inform the California Superior Court, San Diego County That the Telah Foundation's Settlement Agreement in Case No. PN222228 Was Induced by Fraud Perpetuated by Mark King and Sarah King [DE 114]; Motion to Inform the United States District Court, Northern District of California of Mark King and Sarah King's Consent Decrees Induced by Fraud [DE 115]; Motion to Amend the Title of Proceedings as a Response to Plaintiff's Redacted Proposed Order For a Preliminary Injunction [DE 124]; Motion to Strike Alleged Plaintiff's Amended Corporate Disclosure statement [DE 157]; Motion to Strike the Evolutionary Level Above Human Inc.'s Redacted Proposed Order for a Preliminary Injunction [DE 162]; Emergency Motion for Required Joinder of Parties [DE 171]; Motion for Required Joinder of Parties [DE 228]; Motion for Leave to Second Amended Counterclaim [DE 229]; Motion for Required Joinder of Parties [DE 235]; and Motion for Leave to Amend Counterclaim [DE 236].

## II.    ARGUMENT

### A.    The Motion Procedurally Fails to Follow This Court's Rules for Summary Judgment Motions

This Court has repeatedly instructed the parties about the rules for filing summary judgment motions.  For example, over two years ago, this Court stated,

> Although Mr. Bartel seeks summary judgment in his motion, his motion disregards the Court's procedural requirements for such motions. *See* N.D. Ind. L.R. 56-1. A party moving for summary judgment must separately file (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. N.D. Ind. L.R. 56-1(a). Mr. Bartel's instant motion meets none of these requirements. Accordingly, the Court must also STRIKE Mr. Bartel's Motion. . .

[DE 112 at 3–4].  Then, approximately a month later, this Court denied another motion stating:

> Finally, to the extent that Mr. Bartel's motion also argues that he is entitled to summary judgment, it also wholly disregards the Court's procedural requirements for such motions. *See* N.D. Ind. L.R. 56-1. As discussed in this Court's order from June 6, 2023, a party moving for summary judgment must separately file (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. N.D. Ind. L.R. 56-1(a). Mr. Bartel's instant motion meets none of the Court's requirements for such a motion. "Judges are not like pigs, hunting for truffles buried in [the record]." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (internal citation omitted).

[DE 130 at 8].

Then again, more recently, this Court reminded the parties about the requirements of the local rules for Summary Judgment motions:

> Even though the undersigned is not recommending sanctions, the undersigned again admonishes Mr. Bartel to file any further motions judiciously and to ensure that his motions comply with the federal rules

and the Court's local rules, especially N.D. Ind. L.R. 15-1, N.D. Ind. L.R. 7-1, and N.D. Ind. L.R. 56-1. Future repetitive motion practice will not be viewed favorably by the undersigned and will invite the Court to again consider imposing sanctions.

[DE 205 at 10]. Then again on September 11, three weeks before the filing of the instant Motion, this Court stated:

The deadline to file any dispositive motions, including under Fed. R. Civ. P. 56, remains October 31, 2025. Briefing must be conducted in accordance with local rule. The parties also must comply with the court's instructions governing summary judgment submissions readily available on the court's website.

[DE 213 at 2]. An admonition that was re-stated by the Court's most recent order:

The deadline to file any dispositive motions, including under Fed. R. Civ. P. 56, remains October 31, 2025. Briefing must be conducted in accordance with local rule. In addition to Fed. R. Civ. P. 56 and N.D. Ind. L.R. 56-1, the parties also must comply with the presider's instructions governing summary judgment filings, readily available on the court's website.

[DE 241 at 2].

As stated repeatedly by this Court, Northern District of Indiana Local Rule 56-1(a) *requires* "A party moving for summary judgment must separately file: (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes: (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. . ." N.D. Ind. L.R. 56-1(a). The current Motion fails to comply with these rules. Mr. Bartel did not file a separate statement of material facts or a separate motion or supporting brief. He filed one single document. Since, despite repeated warnings, Mr. Bartel chose to ignore this Court's Orders and Local Rules, this Court should deny the instant Motion. *Lundy v. Shiverdecker*, No. 1:20-CV-01764-JMS-MG, 2022 WL 17082838, at *3 (S.D. Ind. Nov. 18, 2022) (denying summary judgment motion for failing to comply with Fed. R. Civ. P. 56 and Local Rule

56-1 by not filing a "Statement of Material Facts Not in Dispute").

## B.    The Motion Should Also Be Denied On the Merits

Should this Court ignore Ms. Bartel's failure to comply with the Federal Rules of Civil Procedure and this Court's Local Rules, Mr. Bartel's motion for summary judgment must *still* be denied as explained further below.  For the Court's convenience, Plaintiff addresses each of Mr. Bartel's arguments according to the number he has assigned the arguments in his Motion:

>    1.    Mr. Bartel is incorrect and misstates the law of the case by arguing that "Plaintiff's true name and identity was in question in the original complaint." (Motion at 2–3)

This argument, that "Plaintiff's true name and identity was in question," is simply false and has already been ruled on.  As Mr. Bartel admitted in his previous filings, "[t]he misnomer of a corporation generally will not be treated by the Courts as material if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence." DE 124 (Bartel's Motion to Amend Title of the Proceeding) (citing 19 Am Jur. 2d Corps. § 1907.)  Mr. Bartel, in the same filing admitted that he was well aware that the Plaintiff in this case was: "an Arizona Nonprofit Corporation named 'the Evolutionary Level Above Human Foundation', [i]ncorporated in the state of Arizona on September 23, 1997." *Id.* at 2.  Indeed, Mr. Bartel then goes on to state that Plaintiff's name here is "sufficiently close to the true name of 'The Evolutionary Level Above Human Foundation, Inc.'" such that it is "reasonably clear" that this is simply an immaterial misnomer.  *Id.* at 6.  This led the Court to hold, a year-and-a-half ago, as follows:

> Mr. Bartel then explains that the named Plaintiff here "The Evolutionary Level Above Human, Inc."—cannot be the owner of the copyrights and trademarks at issue. In support, Mr. Bartel points to the trademark and copyright registrations presented here, which list "the Telah Foundation" and "the Evolutionary Level Above Human Foundation." Mr. Bartel also maintains that there is no record of any Arizona nonprofit corporation by the name of "The Evolutionary Level Above Human, Inc." According to

> Mr. Bartel, because the Evolutionary Level Above Human, Inc. is not the owner of the trademarks and copyrights at issue (and is a "nonexistent entity"), it cannot be the proper Plaintiff to bring this case. [DE 124 at 4].
>
> Despite this, Mr. Bartel argues next that Plaintiff's name here is "sufficiently close to the true name of 'The Evolutionary Level Above Human Foundation, Inc.'" such that it is "reasonably clear" that this is simply an immaterial misnomer. [DE 124 at 6]. Thus, although Mr. Bartel initially appeared to request substantive determinations from the Court on this issue, he then appears to concede this issue's immateriality. This interpretation is bolstered by Mr. Bartel's relief requested—only a technical request for an order to amend the case caption or title of the proceedings to show that the Evolutionary Level Above Human Foundation, Inc. is the Plaintiff.

[DE 193 at 2–3.]

Indeed, Plaintiff offered to, and did in July 2023, amend its Complaint to cure the inadvertent omission of "Foundation" and inadvertent inclusion of "inc." in its initial complaint. *See* First Amended Complaint [DE 132]. As a result, any confusion over the name of the Plaintiff has been resolved for over two years: Plaintiff is The Evolutionary Level Above Human Foundation which does business as The TELAH Foundation.

Mr. Bartel then seems to argue—although it is not entirely clear and without any supporting law—that there is another entity called the "Telah Foundation, Inc." for which no corporate disclosure statement was filed. *See* Motion, 2. Plaintiff does not know what to make of this argument, Mr. Bartel presents no evidence that any "Telah Foundation, Inc." exists or has ever existed. All that exists is The Evolutionary Level Above Human Foundation which does business as The TELAH Foundation, which owns the intellectual property at issue in this case. *See* Decl. of Mark King [DE 67-1] at ¶¶ 2, 9. Mr. Bartel's follow-on claims about Plaintiff being "more than one entity" similarly make no sense.

To the extent Mr. Bartel is arguing that the use of a "d/b/a" in place of the full legal name of a legal entity is not permitted. That argument is just wrong. For example, in the recent Seventh Circuit case, *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 703 (7th Cir. 2022), the Court stated, "[i]n contrast to Rock Hemp's assertion that d/b/as or fictitious entities

cannot enter into a contract, Wisconsin law dictates that not only can such an entity enter into a contract, but the real actor behind the fictitious name can enforce the contract, seek remedies, and is responsible for judgments." *Id.* (citing *Howells v. Albert*, 37 Misc.2d 856, 236 N.Y.S.2d 654, 657 (N.Y. App. Div. 1962) ("The use of an assumed name, if not employed for deceitful or dishonest purposes, is legal.")). The use of assumed names or d/b/a's have been allowed in this country for over one hundred years. *See e.g., California Packing Corp. v. Kandarian*, 62 Cal. App. 729, 731, 217 P. 805, 806 (Cal. Ct. App. 1923) ("Without abandoning his real name, a person may adopt any name, style, or signature wholly different from his own name by which he may transact business, execute contracts, issue negotiable paper, and sue and be sued." (citing *Emery v. Kipp*, 154 Cal. 83, 86, 97 Pac. 17, 19 L. R. A. (N. S.) 983; *Badger Lumber Co. v. Collinson*, 97 Kan. 791, 156 Pac. 724)). The same is true under the law of Arizona. *See e.g.,* Arizona Revised Statutes § 44-1236 (establishing registration scheme for use of fictitious names); *see also Lee Dev. Co. v. Papp*, 166 Ariz. 471, 476, 803 P.2d 464, 469 (Ariz. Ct. App. 1990) ("Papp argues that the assignment is invalid because there is no 'Lee Company.' We do not agree. The record shows, and the trial court found, that 'The Lee Company' was a fictitious name used by George Lee for Lee Development Company."). Indeed, the Arizona Court of Appeals was clear in *Kitchell Corp. v. Hermansen*, 8 Ariz. App. 424, 428, 446 P.2d 934, 938 (1968) that,

> A corporation may do its business under an assumed or trade name. 6 *Fletcher Cyclopedia Corporations*, § 2442.1 (1968); 56 A.L.R. 451 (1928). It may acquire this fictitious name by either use or reputation. *B. Di Medio & Sons, Inc. v. Camden Lumber & Millwork Co.*, 23 N.J.Super 365, 93 A.2d 45 (1952). The validity of a contract entered into by a corporation under a name other than its incorporated name does not depend upon whether the name is known to be fictitious, but upon whether the name is used in good faith by the party adopting it. *William Gilligan Co. v. Casey*, 205 Mass. 26, 91 N.E. 124 (1910); 6 Fletcher, supra, § 2442.1.

*Kitchell*, 8 Ariz. App. at 428, 446 P.2d at 938.  As such, Mr. Bartel's argument that Plaintiff cannot do business using the acronym "The Telah Foundation" while being named "The Evolutionary Level Above Human Foundation" is completely wrong and unsupported.

    2.    <u>Mr. Bartel is incorrect and undermined by his own admissions that "Plaintiff's identity is in question in the amended complaint." (Motion at 3).</u>

Mr. Bartel has attached to his motion for summary judgment a certificate of good standing showing that Plaintiff is indeed an incorporated entity with the name "The Evolutionary Level Above Human Foundation".  [*See* DE 227-1 at 3].  This is exactly what was stated in the First Amended Complaint.  [DE 132 at 1].  Mr. Bartel then, paradoxically, claims that Plaintiff is "an unincorporated" entity.  He has provided no law or factual support and, indeed, the certificate of good standing disproves this claim.  Mr. Bartel then goes on to state correctly that The Evolutionary Level Above Human Foundation does business using its acronym as "The Telah foundation."  [Motion at 3.]  He then, however, states, without support, that if a company has a d/b/a, it needs to file a second corporate disclosure statement.  *Id.*  There is, however, no law that supports this claim or argument.  Indeed, as a single corporate entity, it would make no sense for Plaintiff to file a second corporate disclosure statement.

Mr. Bartel then argues that "Plaintiff cannot state that it owns intellectual Property that has been registered for copyrights in the name of The Telah Foundation nor can Plaintiff claim to own property that was sold and/or conveyed to The Telah Foundation or Telah Foundation."  [Motion at 3].  That is simply wrong.  Plaintiff ***does*** state it owns copyrights that have been registered in the name of The Telah Foundation and property conveyed to The Telah Foundation—because ***Plaintiff is The Telah Foundation.***  *See* Decl. of Mark King [DE 67-1] at ¶¶ 2, 9.  What Mr. Bartel seems to be arguing is that d/b/a's are not allowed.  As explained in the previous section, that is simply not the law. The law is the exact opposite.  *See Rock Hemp*, 51 F.4th at 703.

3.    Mr. Bartel is incorrect that "Plaintiff's corporate and/or unincorporated structure has been in question." (Motion at 3).

Here, again, Mr. Bartel seems to argue that Plaintiff is an "unincorporated" entity. That is simply wrong. Plaintiff is "The Evolutionary Level Above Human Foundation" which does business as "The TELAH Foundation" and which owns the intellectual property at issue in this case. *See* Decl. of Mark King [DE 67-1] at ¶¶ 2, 9. To the extent Mr. Bartel is arguing that the differences between Plaintiff's name in the original Complaint and the First Amended Complaint is of some import, this Court already directly addressed that issue, ordered the Clerk to amend the title of the pleadings, and Plaintiff filed a First Amended Complaint resolving the issue. [DE 193 (Order) at 11–12 and DE 132 (First Amended Complaint)].

4.    Mr. Bartel is incorrect that "Plaintiff's Attorneys have filed Corporate Disclosure Statement on behalf of both an alleged incorporated entity and an alleged unincorporated association." (Motion at 4).

Plaintiff and its attorneys have only ever filed corporate disclosure statements on behalf of the Plaintiff in this case, "The Evolutionary Level Above Human Foundation" which is an entity incorporated in Arizona and which does business as "The Telah Foundation". *See* DE 227-1 at 3; Decl. of Mark King [DE 67-1] at ¶ 2. Mr. Bartel seems to argue that Plaintiff is an unincorporated entity, but, as Exhibit A to his Motion makes clear, that is simply not true. *Id.*

5.    Mr. Bartel is ***correct*** that "The Telah Foundation has been identified by Plaintiff as a d/b/a name for Plaintiff" (Motion at 4).

On this point, Mr. Bartel is correct. The Telah Foundation is a d/b/a name for Plaintiff. Decl. of Mark King [DE 67-1] at ¶ 2. Mr. Bartel, however, goes on to state that he can find "no Court cases in which a Court of law has recognized a d/b/a name as a legal

entity unto itself that may own property in the d/b/a's name, enter into contracts in the d/b/a's name nor be a Plaintiff in a Court case in the name of the d/b/a." [Motion, 4.] Mr. Bartel must not have looked very hard because case law is replete with such cases. For example, the previously cited *Rock Hemp*, 51 F.4th at 703 where the Court stated, "In contrast to Rock Hemp's assertion that d/b/as or fictitious entities cannot enter into a contract, Wisconsin law dictates that not only can such an entity enter into a contract, but the real actor behind the fictitious name can enforce the contract, seek remedies, and is responsible for judgments." Likewise, in the Arizona case, *Lee Dev. Co.*, 166 Ariz. at 476, 803 P.2d at 469, the Court held that an assignment contract to the d/b/a was a valid assignment. Similar cases can be found across the country dating back over a hundred years. For example, in *William Gilligan Co. v. Casey,* 205 Mass. 26, 91 N.E. 124 (Mass. 1910), the court said that it is well settled that a person or corporation may assume or be known by different names, and contract accordingly, and that contracts so entered into will be valid and binding if unaffected by fraud. In *Mackie v. Schoenstadt* 307 Ill. 398, 138 N.E. 686 (Ill. 1923), the Court held where a party enters into a contract in a partnership name, and no such partnership exists, he may be bound thereby. Finally, in 1891 the Appellate Court of Indiana **rejected** Mr. Bartel's argument that "a corporation, could not contract in any but its true corporate name, and the contract sued upon, being made in an assumed or fictitious name, is not enforceable." *Hasselman v. Japanese Dev. Co.*, 2 Ind. App. 180, 27 N.E. 318, 320, *opinion as to a different point of law modified on denial of reh'g,* 2 Ind. App. 180, 28 N.E. 207 (1891). *See generally,* Construction and effect of statutes as to doing business under an assumed or fictitious name, 45 A.L.R. 198 (Originally published in 1926).

      6.    <u>Mr. Bartel is incorrect that "Plaintiff stated in the original complaint that Telah Foundation is an incorporated entity that is the Plaintiff" (Motion at 5).</u>

      Mr. Bartel incorrectly states that "Telah Foundation Inc." was Plaintiff's name in the original Complaint and argues that "No Court has recognized a d/b/a name as the true

name of a corporation that may use the term Inc. after the d/b/a's name as an identifier." [Motion, 5 (citing ¶ 4).] These arguments are misleading and illogical. The very first sentence and caption of the original Complaint identifies the Plaintiff as: "Plaintiff, The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation (the 'Foundation')". [DE 1 at 1.] Nevertheless, after Mr. Bartel raised this issue two years ago, Plaintiff filed a First Amended Complaint fixing this naming issue. As this Court is aware, filing an amended pleading renders the previous pleading of no legal effect. *Pinner v. Lake Cnty. Highway Dep't*, No. 2:09-CV-343-TS, 2010 WL 2737151, at *2 (N.D. Ind. July 8, 2010) ("[A]n amended pleading supersedes the original pleading and renders it effectively withdrawn as to all matters not restated in the amended pleading.") (citing *Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1204–05 (7th Cir.1998)). Paragraph four of the First Amended Complaint names Plaintiff as "Plaintiff, The Evolutionary Level Above Human Foundation, or The Telah Foundation (the 'Foundation') is an Arizona nonprofit corporation . . ." [DE 132 at ¶ 4].

> 7.   Mr. Bartel is ***correct*** that "Plaintiff stated in the amended complaint that The Telah Foundation is both the Plaintiff and a d/b/a name for Plaintiff" (Motion at 5).

While Plaintiff does not fully understand Mr. Bartel's argument, it is correct that Plaintiff is The Telah Foundation, that is the name it does business as. The Plaintiff in this case, "The Evolutionary Level Above Human Foundation" which is an entity incorporated in Arizona does business as "The Telah Foundation". *See* Decl. of Mark King [DE 67-1] at ¶ 2.

> 8.   Mr. Bartel's argument that "Plaintiff has provided no proof that Plaintiff exists as an entity that has the capacity to sue in this Court" is baseless (Motion at 5–6).

This argument appears to have been made in bad faith. Mr. Bartel's own motion attaches a certificate of good standing proving that Plaintiff is an entity incorporated in

Arizona. Mr. King's declaration also attests as to who Plaintiff is. *See* Decl. of Mark King [DE 67-1] at ¶ 2. To the extent this is a continuation of the argument about the typographical error in Plaintiff's original complaint, again, that was resolved with the filing of the First Amended Complaint. *Pinner*, No. 2:09-CV-343-TS, 2010 WL 2737151, at *2) ("[A]n amended pleading supersedes the original pleading and renders it effectively withdrawn as to all matters not restated in the amended pleading.") (citing *Kelley,* 135 F.3d 1204–05). Furthermore, this Court has already reviewed this argument, when presented in Mr. Bartel's Motion to Strike, and in its Order stated,

> Next, Mr. Bartel contends that Plaintiff's failure to include the term "inc." as part of Plaintiff's name in the amended disclosure amounts to an acknowledgement that Plaintiff "is not an incorporated entity and therefore 'The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation' is not a corporation with the capacity to sue in this Court." [DE 157 at 1]. He also contends that the amended corporate disclosure is "fraudulent" because it "was not filed on behalf of 'nongovernmental corporate party or a nongovernmental corporation' as per Federal Rule of Civil Procedure 7.1(a)(1)." [*Id.* at 2].
>
> Like his other motions, Mr. Bartel reaches these precipitous legal conclusions without any citing any authority in support. As Mr. Bartel has now done this repeatedly, and after being warned several times, the Court would be well within its authority to strike his motion on that basis alone. *See, e.g., Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994). But considering Mr. Bartel's insistence – albeit completely unsupported – on asserting these issues, the Court will now address the substance of these arguments.
>
> * * *
>
> Next, to the extent that Mr. Bartel is arguing an unincorporated entity does not have the capacity to bring suit, this argument fails to recognize the various types of business entities recognized by law. A corporation—which is the type of corporate entity typically designated by "incorporated," or its abbreviation "inc."—is just one type of business entity recognized by law. All business entities are subject to suit. *See, e.g.,* Fed. R. Civ. P. 4(h) ("Unless federal law provides otherwise . . . a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name . . ."). Thus, it is

> not clear why Mr. Bartel argues that Plaintiff would not be able to file suit
> if it were not a corporation.

[DE 193 at 8-10].

Finally, here, Plaintiff is an incorporated entity.  This Mr. Bartel knows this and submitted Plaintiff's certificate of good standing with his Motion.  Plaintiff's name, however, does not include "inc." because under Arizona law, unlike with for-profit companies, non-profits do not need to include "inc." in their name.  The Arizona statutory framework for for-profit corporate entities and non-profit entities diverges on this point. Arizona Revised Statutes §10-401(A), which applies to ***for-profit*** corporations, requires that the corporate name, "[s]hall contain the word "association", "bank", "company", "corporation", "limited" or "incorporated" or an abbreviation of one of these words or words or abbreviations of like import in another language."  A.R.S. § 10-401(A).  This is contrasted with Arizona Revised Statutes § 10-3401, dealing with ***non-profits***, which has no such requirement and only requires that the corporate name be distinguishable and not misleading as to its purpose. A.R.S. § 10-3401(A).

 9.    <u>Mr. Bartel's argument that "Corporate Plaintiff's true identity is The Evolutionary Level Above Human Foundation, Inc., an Arizona Nonprofit Corporation"  (Motion at 5–6).</u>

Plaintiff does not know what to make of this argument.  Two years ago, Mr. Bartel filed multiple motions bemoaning the inclusion of "inc." in Plaintiff's name in its original complaint when no "inc." existed in the Plaintiff's registration.  Plaintiff filed the First Amended Complaint to resolve this "issue".  Then Mr. Bartel complained that Plaintiff *failed* to include "inc" as part of its name in its amended complaint and its amended disclosures.  [*See* DE 193 at 8–10].   The Plaintiff in this case, "The Evolutionary Level Above Human Foundation" is an entity incorporated in Arizona does business as "The Telah Foundation".  *See* Decl. of Mark King [DE 67-1] at ¶ 2.

10.    Mr. Bartel's argument that "Plaintiff filed this case on behalf of a non-existent corporation" is made in bad faith and contradicts the law of the case  (Motion at 7).

As Mr. Bartel admitted in his previous filings, "[t]he misnomer of a corporation generally will not be treated by the Courts as material if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence."  DE 124 (Bartel's Motion to Amend Title of the Proceeding) (citing 19 Am Jur. 2d Corps. § 1907.)  Mr. Bartel, in the same filing admitted that he was well aware that the Plaintiff in this case was: "an Arizona Nonprofit Corporation named 'the Evolutionary Level Above Human Foundation', [i]ncorporated in the state of Arizona on September 23, 1997."  *Id.* at 2.  Indeed, Mr. Bartel then goes on to state that Plaintiff's name here is "sufficiently close to the true name of 'The Evolutionary Level Above Human Foundation, Inc.'" such that it is "reasonably clear" that this is simply an immaterial misnomer.  *Id.* at 6.  This led the Court to hold, a year-and-a-half ago, as follows:

> Mr. Bartel then explains that the named Plaintiff here "The Evolutionary Level Above Human, Inc."—cannot be the owner of the copyrights and trademarks at issue. In support, Mr. Bartel points to the trademark and copyright registrations presented here, which list "the Telah Foundation" and "the Evolutionary Level Above Human Foundation." Mr. Bartel also maintains that there is no record of any Arizona nonprofit corporation by the name of "The Evolutionary Level Above Human, Inc." According to Mr. Bartel, because the Evolutionary Level Above Human, Inc. is not the owner of the trademarks and copyrights at issue (and is a "nonexistent entity"), it cannot be the proper Plaintiff to bring this case. [DE 124 at 4].

> Despite this, Mr. Bartel argues next that Plaintiff's name here is "sufficiently close to the true name of 'The Evolutionary Level Above Human Foundation, Inc.'" such that that it is "reasonably clear" that this is simply an immaterial misnomer. [DE 124 at 6]. Thus, although Mr. Bartel initially appeared to request substantive determinations from the Court on this issue, he then appears to concede this issue's immateriality. This interpretation is bolstered by Mr. Bartel's relief requested—only a technical request for an order to amend the case caption or title of the proceedings to show that the Evolutionary Level Above Human Foundation, Inc. is the Plaintiff.

[DE 193 at 2–3.]

As Mr. Bartel admits, the law is clear that this is just an immaterial misnomer. "The misnomer of a corporation generally will not be treated by the Courts as material if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence." DE 124 (Bartel's Motion to Amend Title of the Proceeding) (citing 19 Am Jur. 2d Corps. § 1907.) Indeed, Plaintiff offered to, and did in July 2023, amend its Complaint to cure the inadvertent omission of "Foundation" and inadvertent inclusion of "inc." in its initial complaint. *See* First Amended Complaint [DE 132]. As a result, any confusion over the name of the Plaintiff has been resolved for over two years: Plaintiff is The Evolutionary Level Above Human Foundation which does business as The TELAH Foundation.

It is shocking that Mr. Bartel has again raised this as an issue after having read the Court's previous ruling. Mr. Bartel knows the law and cited it in his previous filings— courts ignore misnomers. Mr. Bartel's decision to re-raise this issue after it was already ruled on, cured by the Amended Complaint, and is an issue Mr. Bartel knows has no legal support, is simply shocking.

11. <u>Mr. Bartel's argument that "Plaintiff restructured itself from an incorporated entity into an unspecified unincorporated association when Plaintiff filed an amended complaint" makes no sense (Motion at 7).</u>

Plaintiff filed its amended complaint to reflect its name exactly as shown on the register of the Arizona Corporation Commission. There the registered name of Plaintiff is "The Evolutionary Level Above Human Foundation" an entity incorporated in Arizona. [DE 227-1 at 3; Decl. of Mark King [DE 67-1] at ¶ 2]. Mr. Bartel's arguments about Plaintiff being an unincorporated association are without factual or legal support.

12.    Mr. Bartel's argument that "Neither the Plaintiff in the original complaint nor the Plaintiff in the amended complaint have the same name as the copyright claimant in Plaintiff's Exhibits A, B, F and G" is wrong (Motion at 8).

Plaintiff is "The Evolutionary Level Above Human Foundation" which does business as "The Telah Foundation" and which owns the intellectual property at issue in this case.  *See* Decl. of Mark King [DE 67-1] at ¶¶ 2, 9.  Plaintiff's d/b/a, "The Telah Foundation", is the claimant listed on the copyright registrations.  Mr. Bartel disingenuously states that "No Court of Law has recognized a d/b/a name . . . as a copyright claimant that may own intellectual property in the name of the d/b/a."  Yet, as demonstrated above, d/b/a's have been used for over a hundred years and are binding on the entity going by the d/b/a.  That is the case in Arizona as it is around the country. *Kitchell Corp. v. Hermansen*, 8 Ariz. App. 424, 428, 446 P.2d 934, 938 (1968).  As yet another example, the district court for the Norther District of Iowa, stated that, it has long been the law that "[a] corporation, like an individual, may do business *and contract* in a name other than its legal name." *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 744–46 (N.D. Iowa 2005), *modified*, 411 F. Supp. 2d 1080 (N.D. Iowa 2006) (citing *Butler Mfg. Co. v. Elliott & Cox,* 211 Iowa 1068, 233 N.W. 669, 670 (Iowa 1930)).  That court went on to explain, "the practical effect of the use of the fictitious name is merely that the [] Agreement was in actuality held by Pro Edge, Ltd., not its fictitious counterpart—it has no effect on the enforceability of the [] Agreement *by Pro Edge, Ltd." Id.* (emphasis in  original).  Of course, applying that same logic here—the result of the use of d/b/a, The Telah Foundation, in filing the copyright registrations, results in the copyrights being owned by the actual entity "The Evolutionary Level Above Human Foundation" and it has no effect on their enforceability.

Even assuming, *arguendo*, that the Copyright claimant should have been listed as "The Evolutionary Level Above Human Foundation" instead of "The Telah Foundation" on the copyright registration forms, that error would have no effect on this case.  That is because the Copyright Act contains a safe harbor provision protecting registrations even if

there are errors or contain inaccurate information.  *See* 17 U.S.C.A. § 411 (West).  The United States Supreme Court affirmed this recently in *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 186, 142 S. Ct. 941, 947, 211 L. Ed. 2d 586 (2022), wherein they held that neither mistakes of law or fact on registration certificates invalidated copyrights unless the mistakes were included "with knowledge that [they were] inaccurate" *Id.* at 187 (citing 17 U.S.C. § 411(b)).  Here there is no, and can be no, such showing.

> 13.    Mr. Bartel's argument that "Plaintiff is not the alleged corporation that was involved in the litigation with San Diego Count" is wrong (Motion at 8).

Here, Mr. Bartel is simply wrong.  Plaintiff, doing business as The Telah Foundation did indeed file the creditor's claim and was assigned the intellectual property belonging to the estates as part of the litigation with San Diego.  As Mr. King states in his sworn declaration,

> 8.  Don Billings, a Public Administrator in the County of San Diego and Special Administrator of the decedents' estates, was appointed to administer "Summary Probate Proceedings provided for in [California] Probate Code § 7660 et seq." which were instituted for the decedents, and which were later consolidated into a single proceeding.

> 9. The Foundation filed a creditor's claim in connection with the consolidated and jointly administered probate proceedings for the Decedents, and a three-day trial ensued over the ownership of certain property, including the intellectual property being asserted in this case.

> 10. In February 1999, the California Superior Court, which handled the probate proceedings, held that the intellectual property was not properly gifted by the decedents, even though there were powers of attorneys provided and a clear intent to convey the property. A copy of the Superior Court of California's Statement of Decision dated February 22, 1999, is attached hereto as Exhibit 1.

> 11. The Foundation vehemently disagreed with this initial ruling by the California Superior Court since it was at odds with evidence presented during the three-day trial and the Foundation appealed.

12. After the appeal was filed, the Foundation and Mr. Billings, as Public Administrator for the County of San Diego and Personal Representative for the Combined Estates of the Decedents, entered into an agreement with Plaintiff that conveyed to Plaintiff all of the intellectual property rights.

13. The California Superior Court approved of the agreement. A copy of the Superior Court of California, County of San Diego North County Branch Order Approving Agreement to Sell Estate Property and to Convey Trust Property to Trust Beneficiaries is attached hereto as Exhibit 2.

14. The Superior Court of California's August 1999 Order confirmed the conveyance of "Intellectual Property" to Plaintiff. [Exh. 2 at 11:7-8]

[DE 81-1 (Decl. of Mark King) at 2-4 and Exhibits 1 and 2].

> 14.    Mr. Bartel's argument that the audio works in Exhibit A are not the same as those conveyed in the Settlement Agreement is also wrong (Motion at 9).

Mr. Bartel's arguments appear to simply ignore the history. As stated in the previous section, Plaintiff believed (and continues to believe) it obtained rights to all of the intellectual property of the decedents via the execution of "powers of attorneys provided and a clear intent to convey the property." [DE 81-1 (Decl. of Mark King) at 2-4 and Exhibits 1 and 2]. The probate court judge disagreed and Plaintiff appealed. *Id.* at ¶ 12. Plaintiff settled with the Public Administrator while the case was on appeal, and the probate court confirmed the settlement agreement and confirmed the conveyance of intellectual property to Plaintiff. *Id.* While Plaintiff continues to believe it would have prevailed on appeal and is the correct copyright claimant, to the extent that the original clamant should have been the Public Administrator who then assigned the copyrights to Plaintiff, this is exactly what the Safe Harbor provision under § 411 protects. Plaintiff certainly did not know that it was not a proper clamant when it filed the registrations. (It would not have hired attorneys and litigated for years with the Public Administrator if Plaintiff knew it was not the correct owner of the property.) To the extent it turned out to be a mistake as to law or fact as to who had the right to file the registration in the late 1990s, according to the probate judge's initial ruling, such mistakes are protected by *Unicolors, Inc. v. H&M*

*Hennes & Mauritz, L. P.*, 595 U.S. at 186.  Mr. Bartel's argument that there is some other set of audio works makes no sense.

> 15.   <u>Mr. Bartel's argument that The Heaven's Gate Group did not transfer all of the Group's property to Plaintiff in 1997 is incorrect and immaterial (Motion at 10-11).</u>

Mr. Bartel next wants to re-litigate an issue that has been resolved for both a-year-and-a-half and over 25 years.  He raised this exact issue two years ago, and this Court directly considered this argument. In its Order this Court stated:

> [A]s contended by Defendants here, the California Court's decision provides that the Group's estates—not Plaintiff—had ownership over the Group's intellectual property rights. Though this decision mirrors the arguments made by Defendants here, their reliance on this decision is surprising, as both Plaintiff *and* the Defendants have presented the Court with an Order Approving Settlement Agreement entered by the California Court approximately six months later, on August 11, 1999, after Plaintiff appealed the February decision. [*See* DE 63-1 at 13-24; DE 81-1 at 7-16, *in re Estates of John Michael Craig, et al.*, No. PN022228 (Cal. Super. Ct. Aug. 11, 1999)]. This order shows that Plaintiff and the Public Administrator subsequently reached an agreement regarding the disposition of the Group's intellectual property:
>
> > *Don Billings, Public Administrator . . . hereby agrees to transfer and convey to the [Plaintiff] by through and Mark King and Sarah King all right, title, and possession, of the following property, including any intellectual property rights . . .. [T]he [Plaintiff] promises to safeguard, archive and control these items thereby agreeing not to sell them.*
>
> [DE 63-1 at 17; DE 81-1 at 22]. The agreement also provides that "[t]he parties agree that this Agreement shall be binding on all the successors, heirs, administrators, assigns of each of the parties and the beneficiaries of their respective estates." [*Id.*]. The Court then approved the agreement "as to its form and content" and held that "the Parties may execute its terms forthwith." [DE 63-1 at 24; DE 81-1 at 29].
>
> Thus, despite what Defendants contend, evidence presented by both parties demonstrates that the Group's intellectual property rights were transferred to Plaintiff by operation of law, through the Public

19

> Administrator's voluntary transfer of intellectual property rights to Plaintiff as part of a settlement agreement approved by the California Court. *See Taylor Corp.*, 403 F.3d at 964 (holding that a bankruptcy court order approving an asset purchase agreement transferring intellectual property rights constituted transfer by operation of law).

[DE 194 at 17–18.] This Court then went on to address Defendants' misunderstanding of the law concerning the difference between physical property and intellectual property rights. *Id.*

As this Court has already correctly held and as detailed in Mr. King's Declaration [DE 81-1], the issue of whether the Group transferred property to Plaintiff was squarely before the probate court and raised in the creditor's claim filed by Plaintiff. Regardless of the nuances of the initial ruling and the appeal and the settlement (which are explained in more detail in Plaintiff's Reply in Support of Its Preliminary Injunction [DE 87]), the result of the probate proceeding was a settlement agreement whereby Plaintiff was deemed the owner by conveyance of all the "intellectual property" belonging to the Group.

Claim preclusion, also called res judicata, bars the relitigation of claims that were brought or could have been brought in another suit that has reached final judgment. *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.,* 934 F.3d 553, 560 (7th Cir. 2019); *McGuire v. Marthakis,* No. 3:18-CV-760-MGG, 2022 WL 2390690, at *6 (N.D. Ind. July 1, 2022). To determine the preclusive effect of a state-court judgment, a federal court must look to the law of the state where the judgment was entered. *Id*. Claim preclusion applies to final orders in proceedings under the Probate Code. *Estate of Redfield,* 193 Cal.App.4th 1526, 1531, 1534 (Cal. Ct. Appl. 2nd Dist., Div. 3, April 5, 2011) (applying claim preclusion to resolve issues barred by probate court's dismissal of prior section 850 petitions with prejudice); *In re Conservatorship of Harvey,* 3 Cal.3d 646, 651-652 (1970) (res judicata applied to bar later challenge to final Probate Code order authorizing conservator to employ attorney and pay travel expenses to locate possible heirs). This is enshrined in California Civil Procedure Code, which states:

(a) The effect of a judgment or final order in an action or special proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows:

(1) In case of a judgment or order against a specific thing, or in respect to the probate of a will, or **the administration of the estate of a decedent**, or in respect to the personal, political, or legal condition or relation of a particular person, **the judgment or order is conclusive upon the title to the thing, the will, or administration, or the condition or relation of the person**.

(2) In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

Cal. Civ. Proc. Code § 1908 (West) (emphasis added). "Although the probate court's jurisdiction under section 850 is not exclusive, a final judgment from the probate court is conclusive against "'the whole world' and not just the parties to the litigation." *Est. of Redfield,* 193 Cal. App. 4th at 1534 (*citing Heiser v. Superior Court,* 88 Cal.App.3d 276, 278, 151 Cal.Rptr. 745 (1979)). The proceeding identified by Mr. Bartel, on which he bases his claims that the Foundation does not own the group's intellectual property, was a "Summary Probate Proceedings provided for in Probate Code § 7660 et seq." [DE 81-1 at Exh. 1 to Exh. A at 3:8-10]. As such, under California law, any final judgment in the matter is conclusive against "the whole world." *Est. of Redfield*, 193 Cal. App. 4th at 1534. The Court's order providing that the Foundation is the owner of all of the intellectual property belonging to the group/Decedents, has been final for over two decades and must be given preclusive effect.

16. Mr. Bartel's Argument that Mark and Sarah King were the initial Petitioners in the Probate Case, is simply wrong.

This is simply wrong. "The Foundation filed a creditor's claim in connection with the consolidated and jointly administered probate proceedings for the Decedents, and a

three-day trial ensued over the ownership of certain property, including the intellectual property being asserted in this case." [DE 81-1 (Decl. of Mark King) at ¶ 9.]

17.    Mr. Bartel's Argument that under the law of intestate succession the intellectual property in Plaintiff's Exhibits is still part of the estates and yet to be administered, is simply wrong.

This is simply wrong.  The probate proceeding ended twenty-five years ago with a final settlement agreement which conveyed "Intellectual Property" to Plaintiff.  [DE 81-1 (Decl. of Mark King) at ¶¶ 14-17; DE 81-1 at ECF Page No. 28].  This was clear from Paragraph 3 of the agreement which states that "Don Billings, Public Administrator, as Personal Representative of the Estates . . . [transfers] the following property to the TELAH FOUNDATION, by and through Mark King and Sarah King for the sum of $2,000.00 thereby transferring all right, title and possession [to]:"

```
1   #118
    Computer; Sheriff's Evidence List, Item #119
2   Monitor; Sheriff's Evidence List, Item #120
    Box Containing Monitor, Keyboard, Mouse; Sheriff's Evidence List,
3   Item #121
    Box Containing Monitor; Sheriff's Evidence List, Item #122
4   Box Containing Computer, Mouse Manuals and Cable; Sheriff's
    Evidence List, Item #123
5   Black Carrying Case Containing Notebook Computer, Mouse,
    Cigarette Lighter Adapter; Sheriff's Evidence List, Item #124
6   Box Containing Assorted Computer Accessories and Floppy Disks;
    Sheriff's Evidence List, Item #130
7   Box Containing Sony Monitor 1055228 and Keyboard
    Any other Intellectual Property
8   Any Shrouds
```

*Id*.  As explained above, and as already found by this Court [*see* DE 194 at 17–18], Plaintiff is the owner of the intellectual property belonging to the estates via the settlement agreement in the probate proceeding.

18.    Mr. Bartel's incendiary claim that Plaintiffs and Plaintiffs' counsel are "knowingly attempted to perpetuate fraud on this Court" should be sanctioned.

As stated in Plaintiff's recent filings with respect to the four other motions filed by Mr. Bartel, Mr. Bartel continues his "vituperative tone", smearing Plaintiff, its counsel, and its officers.  Mr. Bartel's repeated baseless accusations that Plaintiff is engaged in

"fraud" should be sanctioned by the Court and Plaintiff has served on Mr. Bartel a Rule 11 Motion and intends to file the motion once the Safe Harbor period expires.

       19.   <u>Mr. Bartel's is wrong that "The Telah Foundation lost the decision in the Probate case".</u>

As stated above, the probate case ended in a settlement whereby Plaintiff dismissed its pending appeal and the Public Administrator conveyed to Plaintiff the items that Plaintiff was seeking, including the intellectual property. As this Court knows, having laid out the history well in its previous Order [DE 194]. As this Court remarked previously, Defendant's continued reliance on the February 1999 Order and decision to ignore the August 1999 settlement agreement that resolved the case is, to put it mildly "surprising". [DE 194 at 17.]

### III.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully requests that the Court deny Mr. Bartel's motion.

Respectfully Submitted October 30, 2025.

                    **MESSNER REEVES, LLP**

              By: <u>*/s/ Isaac S. Crum*</u>
               MESSNER REEVES LLP
               Isaac S. Crum
               (Pro Hac Vice)
               icrum@messner.com
               *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing will also be sent via U.S. mail and email.

Cathy Weaver                      Jason Bartel
5776 Grape Road, Ste 51           N4051 26th Lane
PMB #121                          Redgranite, WI 54970-7087
Mishawaka, IN 46545               jason_bartel@unioncab.com
sawcat575@gmail.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

By: ___/s/ *Isaac S. Crum*_____