# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation, | |
| Plaintiff, | CASE NO. 3:22-CV-395-DRL-SJF |
| v. | |
| Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel, | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

    The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation (the "Foundation" or "Plaintiff") submits this brief in support of its motion for Summary Judgment on its claims for copyright infringement (Counts I, III, IV) and contributory infringement (Count V), and on subsidiary issues of fact related thereto. Plaintiff is concurrently filing a Statement of Material Facts ("SOF") in support of this motion as well as the Notice provided for in Appendix C, pursuant to N.D. Ind. L.R. 56-1(a).

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ...................................................................................... 10

III.  ARGUMENT ................................................................................................... 10

    A.    Partial Summary Judgment ...................................................................... 11

        1.    Ownership .......................................................................................... 11

            a)    Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Audio Works. ............................................... 11

            b)    Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Video Works. .............................................. 12

            c)    Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Literary Work ............................................. 13

            d)    Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Visual Work ................................................ 13

        2.    Infringement ...................................................................................... 14

            a)    Partial Summary Judgment that Defendants Havel and Weaver Infringed Plaintiff's Copyright in the Audio Works. 15

            b)    Partial Summary Judgment that Defendant Bartel Infringed Plaintiff's Copyright in the Audio Works ............................. 19

            c)    Partial Summary Judgment that Defendant Weaver Infringed Plaintiff's Copyright in the Literary Work. ........................... 21

            d)    Partial Summary Judgment that Defendants Havel and Weaver Infringed Plaintiff's Copyright in the Visual Work .. 22

    B.    Summary Judgment on Count I, III, IV, and V ........................................ 23

        1.    Summary Judgment on Count I (Copyright Infringement of the Audio Works) as to Defendants Havel, Weaver, and Bartel. .......... 23

        2.    Summary Judgment on Count III (Copyright Infringement of the Literary Work) as to Defendant Weaver. ......................................... 24

3.      Summary Judgment on Count IV (Copyright Infringement of the Visual Work) as to Defendants Havel and Weaver...........................24

4.      Summary Judgment on Count V (Contributory Infringement) as to Defendant Havel...............................................................................25

IV.   CONCLUSION ........................................................................................25

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| Exhibit 1 | Audio Works Copyright Registration (SRu298530) |
| Exhibit 2 | Video Works Copyright Registration (PA667224) |
| Exhibit 3 | Visual Work Copyright Registration (VA877834) |
| Exhibit 4 | Literary Work Copyright Registration (TXu817732) |
| Exhibit 5-A | January 22, 2023 Declaration of Mark King [DE 67-1] |
| Exhibit 5-1 | Defendant Jason Bartel's blog post dated August 19, 2022 (https://crlody.wordpress.com/2022/08/19/tapes-1-218-on-agoogle-drive/ (last accessed on December 5, 2022)) [DE 67-1] |
| Exhibit 5-2 | Copy of the website that was linked in Defendant Jason Bartel's blog post dated August 19, 2022 (https://drive.google.com/drive/u/2/folders/11ExoXaKa_mFbm HQyhSSuVBROeOMlwse3 (last accessed November 16, 2022)) [DE 67-1] |
| Exhibit 5-3 | Defendant Jason Bartel's blog post dated October 12, 2022 (https://crlody.wordpress.com/2022/10/12/the-heavens-gate-bookon-sale-for-500-on-ebay-and-more-telah-copyrighted-merch/ (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-4 | Defendant Jason Bartel's blog post dated October 19, 2022 (https://crlody.wordpress.com/2022/10/19/to-hell-with-goingdark-this-archive-of-the-class-audio-tapes-wouldnt-be-possiblewithout-the-work-of-an-individual-who-risked-incurring-the-legalwrath-of-the-incredibly-petty-couple-mark-and/ (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-5 | The Website containing the "Heaven's Gate Audio Tapes," the link to which was within Mr. Bartel's post attached as Exhibit 3 (https://archive.org/details/HPM-HeavensGateAudio (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-6 | Screenshot of Mr. Havel and Ms. Weaver's October 7, 2022, "live stream" on YouTube reflecting transcript from 53:47 to 54:42. |

| EXHIBIT | DESCRIPTION |
|---|---|
| Exhibit 5-7 | Screenshot of Mr. Havel and Ms. Weaver's October 7, 2022, "live stream" on YouTube reflecting transcript from 1:17:16 to 1:18:06. (https://www.youtube.com/watch?v=GyR8J2D8f3g (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-8 | Defendant Jason Bartel's blog post dated October 7, 2022 (https://crlody.wordpress.com/2022/10/07/new-link-for-the-audiotapes/ (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-9 | Copy of the website that was linked in Defendant Jason Bartel's blog post dated October 7, 2022 (https://archive.org/details/HPMHeavensGateAudio (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-10 | Screenshot of Mr. Havel and Ms. Weaver's October 7, 2022, "live stream" on YouTube reflecting transcript from 2:07:35 to 2:08:52 (https://www.youtube.com/watch?v=ukk5XOCFyMU (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-11 | Defendant Jason Bartel's blog post dated November 28, 2022 (https://crlody.wordpress.com/2022/11/28/what-mark-and-sarahking-dont-want-others-to-hear-on-the-class-audio-tapes/ (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-12 | Copy of the website that was linked in Defendant Jason Bartel's blog post dated November 28, 2022 (https://archive.org/details/HPM-HeavensGateAudio (last accessed December 5, 2022)) [DE 67-1] |
| Exhibit 5-13 | Home page of Heavensgate.com (https://www.heavensgate.com (last accessed January 19, 2023)) [DE 67-1] |
| Exhibit 5-14 | Home page of Heavensgatealso.com (https://www.heavensgatealso.com (last accessed January 19, 2023)) [DE 67-1] |
| Exhibit 5-15 | Screenshot of Mr. Havel and Ms. Weaver's December 25, 2022, "live stream" on YouTube reflecting transcript from 1:04:56 to 1:06:00 (https://www.youtube.com/watch?v=D0i94iWqdiU at 1:05:08-1:05:16 (last accessed on January 19, 2023)) [DE 67-1] |
| Exhibit 5-16 | Screenshot of Mr. Havel and Ms. Weaver's December 25, 2022, "live stream" on YouTube reflecting transcript from 1:06:00 to :06:57 (https://www.youtube.com/watch?v=D0i94iWqdiU at 1:05:08-1:05:16 (last accessed on January 19, 2023)) [DE 67-1] |

| EXHIBIT | DESCRIPTION |
|---|---|
| Exhibit 5-17 | Defendant Jason Bartel's blog post dated January 15, 2023 (https://www.youtube.com/watch?v=D0i94iWqdiU at 1:05:59-1:06:50 (last accessed on January 19, 2023)) [DE 67-1] |
| Exhibit 5-18 | Copy of the website that was linked in Defendant Jason Bartel's blog post dated January 15, 2023 (https://archive.org/details/HPMHeavensGateAudio (last accessed January 19, 2023)) [DE 67-1] |
| Exhibit 5-19 | Defendant Jason Bartel's blog post dated January 16, 2023 (https://crlody.wordpress.com/2023/01/16/thanks-to-all-who-havetried-to-disseminate-the-class-information/ (last accessed January 19, 2023)) [DE 67-1] |
| Exhibit 6-A | February 13, 2023 Declaration of Mark King [DE 81-1] |
| Exhibit 6-1 | February 22, 1999 Statement of Decision in Probate Proceeding [DE 81-1] |
| Exhibit 6-2 | August 11, 1999 Order in Probate Proceeding [DE 81-1] |
| Exhibit 6-3 | July 9, 1999 Consent Decree in United States District Court for the Norther District of California in Case No. CV-98-892-CRB. |
| Exhibit 7-A | February 28, 2023 Declaration of Mark King [DE 90-1] |
| Exhibit 7-1 | Screenshot of Mr. Havel and Ms. Weaver's January 28, 2023, "live stream" on YouTube reflecting transcript from 1:59:24 to 2:00:20. (https://www.youtube.com/watch?v=ubNg4EmZg_8 (last accessed February 27, 2023)) [DE 90-1] |
| Exhibit 7-2 | Screenshot of Mr. Havel and Ms. Weaver's January 28, 2023, "live stream" on YouTube reflecting transcript from 2:19:00 to 2:19:53. (https://www.youtube.com/watch?v=ubNg4EmZg_8 (last accessed February 27, 2023)) [DE 90-1] |
| Exhibit 7-3 | Printout from the "Lodge of Sorrows" Instagram posting that promotes the "Heaven's Gate Re-Examined" event and the playing of "the Final Exit Video." [DE 90-1] |
| Exhibit 7-4 | Screenshot of live stream of the "Heaven's Gate Re-Examined" event at the 2:41:51 mark. (https://www.youtube.com/watch?v=zU2c5mcPMqg (last accessed February 28, 2023)) [DE 90-1] |

| EXHIBIT | DESCRIPTION |
|---|---|
| Exhibit 7-5 | Screenshot of live stream of the "Heaven's Gate Re-Examined" event at the 4:10:12 mark. (https://www.youtube.com/watch?v=zU2c5mcPMqg (last accessed February 28, 2023)) [DE 90-1] |
| Exhibit 7-6 | Comments on the December 17, 2022 live stream related to Mr. Havel "hoping to do more" events "all over the country." (https://www.youtube.com/watch?v=zU2c5mcPMqg (last accessed February 28, 2023)) [DE 90-1] |
| Exhibit 7-7 | Comments on the December 17, 2022 live stream related to Mr. Havel discussing playing the Beyond Human Tape. (https://www.youtube.com/watch?v=zU2c5mcPMqg (last accessed February 28, 2023)). |
| Exhibit 7-8 | YouTube video in which Mr. Havel and Ms. Weaver discuss being compensated for participating in the "Heaven's Gate Re-Examined" event. (https://www.youtube.com/watch?v=L33XdISk8I (last accessed February 28, 2023)). |

## I.    **INTRODUCTION**

Total Overcomers Anonymous, T.O.A., or Heaven's Gate ("Heaven's Gate") was a group that gained notoriety in 1997, when the majority of its members (39 members) engaged in a ritualistic mass suicide that coincided with the approach of the Hale-Bopp Comet. SOF 1. Throughout the 1980's and 1990's Heaven's Gate created a number of works, including the following:

- A series of audio tapes (the "Audio Works");
- Certain video works (the "Video Works");
- A literary work entitled "How and When Heaven's Gate' (the door to the physical kingdom level above human) may be entered: an anthology of our materials" (the "Literary Work"); and
- A visual work of "The C.B.E." (the "Visual Work")

SOF 2. Heaven's Gate also adopted and used trademarks in connection with its work (the "Trademarks"). SOF 3.

Plaintiff, The Evolutionary Level Above Human Foundation, which goes by "The Telah Foundation", is a not-for-profit organization which acquired the intellectual property rights related to these works and trademarks in the late 1990s. SOF 6. Plaintiff's director, Mr. Mark King, personally applied for the copyright registrations for the Audio Works, the Video Works, the Literary Work, and the Visual Work. SOF 7. While the County of San Diego and the individual selected to administer the decedents' estates originally contested Plaintiff's ownership of the intellectual property of the Heaven's Gate Group, after a lengthy court battle, the parties settled and it was agreed Plaintiff would own all the intellectual property related to the Heaven's Gate Group. SOF 9–19. The California Probate Court entered a final August 1999 Order approving of the settlement and confirming that Plaintiff was the owner of, *inter alia,* the intellectual property of the group. SOF 17–19. This ownership was confirmed in a related proceeding between Plaintiff and

1

a third-party in 1999, wherein the United States District Court for the Norther District of California entered a Consent Decree that states the Foundation has "exclusive rights and responsibility for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's websites, letters, other documents, names and symbols." SOF 20.

The Defendants in this case have been willfully infringing on that intellectual property. Beginning in September 2021, Defendants Havel and Weaver started broadcasting audio from the Foundation's copyrighted material on their YouTube channel. SOF 22–23. Defendants Havel and Weaver started broadcasting the audio works on the 3spm YouTube channel, which belongs to Mr. Havel but is operated by Mr. Havel and Ms. Weaver, and advertising these public performances on Havel's twitter channel. SOF 23–24. These twitter advertisements included the following:





SOF 24.

When these public performances of Plaintiff's copyrighted materials began in the Fall of 2021, Plaintiff demanded that Defendants stop infringing on Plaintiff's copyrights and Plaintiff sought to resolve this matter amicably. SOF 26. Defendants have refused all such overtures. SOF 27. Despite conversations between the Foundation and Defendants, Defendants have refused to stop airing YouTube videos incorporating the Foundation's copyrighted material. SOF 28. Furthermore, The "3spm" YouTube channel, operated by Havel and Weaver[1], repeatedly uses Plaintiff's registered copyrighted "C.B.D." image to advertise its videos, as shown here:

---

[1] While Defendants have on occasion claimed that the "3Spm" YouTube channel is only operated by Mr. Havel, that is not true. As shown above, Ms. Weaver, also has control over the channel posting, for example, an entire video without Mr. Havel titled "I Quit Again." SOF 30.



SOF 29.

Mr. Havel and Ms. Weaver have also used the 3spm YouTube channel to disseminate the URLs of the copyrighted recordings that have been impermissibly uploaded to Google drive. SOF 31. For example, on May 13, 2022's live stream, Defendant Weaver states: "There's several tapes, there are over 900-plus tapes available, audios, which we've been playing on the channel and if you email us we can give you a link to the google drive and point out specific tapes…" SOF 31–32. Ms. Weaver's comment was referencing one of the many copies of Plaintiff's copyrighted materials that Mr. Bartel had begun uploading to file sharing sites.

Beginning on or about August 2021, Defendant Bartel posted an archive of the Foundation's copyrighted audio and video works online. SOF 33. This initial posting was subsequently taken down by a DMCA request. SOF 34. Following the removal of the archive, Mr. Bartel then created two additional archives on Google Drive that allow for individuals to freely download the Foundation's copyrighted material. SOF 35. Mr. Bartel

also encourages people to contact him for access to a third cache of the Foundation's copyrighted materials, on his personal blog. SOF 36. Below is a true and accurate copy of a posting by Mr. Bartel on his blog dated April 18, 2022:

> ### The 4shared accts have been shut down by TELAH but the google drives still have Ti and Do's audio tapes
>
> Posted on April 18, 2022 by crlody
>
> Someone recently asked for access to the 4shared accts with the class' audio tapes. Mark King had them shut down for "copyright violations".
>
> All the tapes can be found here,
>
> https://drive.google.com/drive/u/2/folders/11ExoXaKa_mFbmHQvhSSuVBROeOMlwse3
>
> https://drive.google.com/drive/u/3/folders/1UpGPvvEKMKyVgZNZeW4XGKpcMxDocLpn
>
> One can send an e-mail to crlody@protonmail.com for access to a third drive.

SOF 37.

On August 19, 2022, Mr. Bartel posted tapes 1-218 on his blog. SOF 38. On October 12, 2022, Mr. Bartel wrote a comment on a post that he uploaded to his blog on October 12, 2022, that "I'm getting sued for putting [Plaintiff's] tapes on free, file sharing sites." SOF 40. On October 19, 2022, Mr. Bartel posted on his blog:

> To hell with going dark.This [sic] archive of the [Heaven's Gate] audio tapes wouldn't be possible without the work of an individual who risked incurring the "legal" wrath of the incredibly petty couple Mark and Sarah King, these tapes belong to the world, not a Corporation formed six months after the class left this world[.]

SOF 41.

Mr. Bartel's October 19, 2022, post contains a link to a website that contains an audio library of "Heaven's Gate Audio Tapes" and the website states "These files have been made available to me through an ex-member who goes by the name crlody. Here is

5

their blog about The TELAH Foundation: https://crlody.wordpress.com/." SOF 42. Defendants Havel and Weaver have stated that they are working with Defendant Bartel to spread the Foundation's copyrighted material without the Foundation's permission. SOF 43. As but one example, Havel and Weaver stated on Havel's website that:

> So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in multiple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them.

SOF 42.

The longer these files are available to download the less likely it is that the Foundation will be able to control the dissemination of its intellectual property and Defendants have made clear they have no intention of ceasing their copyright violations. SOF 53-54. For example, on November 3, 2021, Defendants Weaver and Havel stated in their livestream on the 3spm YouTube channel that they would not stop distributing the copyrighted material and stated as follows:

> Weaver: "Everyone is going to have the tapes, and they can take and duplicate them."

> Havel: "How you going to stop people from doing that?"

> . . .

> Weaver: "…what's to say that the Next Level info won't go back under lock and key for another 24 years? Well, it's not. . . because, I'm not going to let that happen.

> Havel: "And a lot of people, actually who aren't going to let that happen."

SOF 55. On January 27, 2022, in their YouTube video, Defendant Weaver stated that she would advise people to lie if asked to destroy unauthorized copies of the copyrighted material, as quoted below:

6

> "… [the files] are uploaded to a couple of different sites now actually, so, and it's great, keep them, I mean we shouldn't be saying that but… "Everybody destroy them, destroy them, wink, wink, don't really but say that you did…"

SOF 56. On March 28, 2022, in their YouTube video, Defendant Havel stated that, if forced to shut down his channel, he would defy such a shutdown by creating a new channel that he would hide, as quoted below:

> "And, uh, I don't intend to let this channel come down. And, even if it did I would start another one and then they would have to find me and, uh, you know, shut me down. This isn't the first attempt on this channel and it won't be the last."

SOF 57. On April 8, 2022, in their YouTube video, Defendant Weaver encouraged people to email them to get copies of the copyrighted material, as follows:

> "Go ahead and email us . . . email us if you don't know where the tapes are . . . please email us and we'll direct you to them."

SOF. 58. On May 1, 2022, in their YouTube video, Defendant Havel acknowledged his role in the copyright infringement scheme and stated:

> "And, uh, and technically, um, they could hold me accountable for that, so I'm not going to say how many, I'm not gonna even try to guess, 'cus I don't remember. Uh, but, um, 'cus I can take the fifth that it would tend to incriminate me. So I'll do that, uh, even thought they could probably hear this tape and say, "oh you say that." So, I dunno. If that gets used against me, that's the way it goes. **They're still not going to get any money from me and it's not going to stop the material from circulating, because we're all, [Bartel] and myself, Cathy, and [a third party], and other people are circulating the tapes."**

(Emphasis added). SOF 59. On August 25, 2022, Mr. Bartel, aka Crlody, posted online "We made copies of the audio tapes and digitized them and put them on CD-ROMs. I still give away these CDs to this day." SOF 60. On October 7, 2022, Mr. Havel and Ms. Weaver broadcast a "live stream" on YouTube, during which time Mr. Havel stated "**maybe we'll**

**lose, but that won't stop me and Kathy [Weaver] and [Mr. Bartel]** from telling the truth." (Emphasis added). SOF 61. Later in Mr. Havel and Ms. Weaver's October 7, 2022, stream, the following statements were made:

> Weaver: "Once it's done and whatever the outcome is, if it's not favorable, we're out of here."
>
> Mr. Havel: "Right, but we don't know what we're going to do exactly."
>
> Ms. Weaver: "**We're gonna share the fucking information. I know I shouldn't say that**, but like you said-"
>
> Mr. Havel: "Well, yeah, **we're going to share the information one way or the other** –"
>
> Ms. Weaver: "**And they won't be able to touch us**."
>
> Mr. Havel: "You know, I'm not saying which information and how. Maybe it's just out of our mouths from our memories because they don't use that against us –"
>
> Ms. Weaver: "They're going to use everything against us. That's why their shady, shady lawyers wanted us to call so they can trip us up but we already know that we don't have to do that so –"
>
> Mr. Havel: "Right, we talked to the clerk today –"
>
> Ms. Weaver: "-Nanny nanny poo poo."

SOF 62. On October 7, 2022, Mr. Bartel posted on his blog an entry titled "New Link for the audio tapes," which contained a link to hundreds of Heaven's Gate tapes, and stated, in part, "To hell with [Telah's Directors]." SOF 63. The website containing hundreds of Heaven's Gate Tapes that was linked in Mr. Bartel's October 7, 2022, blog post states that "These files have been made available to me through an ex-member who goes by the name crlody." SOF 64. On October 19, 2022, Mr. Bartel announced, "To hell with going dark," while simultaneously sharing Plaintiff's copyrighted materials. SOF 65. On November 28, 2022, Mr. Bartel published a blog post titled "What [Plaintiff's Directors] don't want others

to hear on the class' audio tapes," while simultaneously sharing Plaintiff's copyrighted materials. SOF 67–68.

During a YouTube "live stream" that Mr. Havel and Ms. Weaver hosted on January 28, 2023, Mr. Havel stated that he and Ms. Weaver would not "go[] away" if the YouTube channel was "taken down," that he may move the sharing of information to platforms such as Telegram or Rumble, and provided directions for the audience to "look for [Mr. Havel and Ms. Weaver]." SOF 70. At a later point during the January 28, 2023, live stream, Mr. Havel discussed his "commitment to uh doing these live streams" and "sharing" the "information." SOF 71.

The lawsuit that Plaintiff has brought against Mr. Havel and his co-Defendants has not caused Mr. Havel to stop circulating Plaintiff's copyrighted materials. SOF 73. For example, on December 17, 2022, Mr. Havel was paid to perform at a "Heaven's Gate Re-Examined" event at a venue in Georgia called the "Lodge of Sorrows," during which time he put on a public performance of Plaintiff's Final Exit Video. SOF 74. This public performance of Plaintiff's work was part of the promotion for Mr. Havel and Ms. Weaver's event, "Heaven's Gate Re-Examined". SOF 74. The "Heaven's Gate Re-Examined" event was live streamed on December 17, 2022, on the 3pm YouTube channel belonging to Mr. Havel that he and Ms. Weaver operate. SOF 77. The Final Exit Video played for approximately one and one-half hours. SOF 78.

In the December 17, 2022, live stream's comment section, Mr. Havel responded to a comment that stated "what a great event…jealous of all who attended" by saying "we are hoping to do more all over the country. This feels like the right thing to do." SOF 79. Ms. Weaver, through her username "cathysouthwestern," also replied that "We are in talks to have another one coming up next May, it will be in Chicago this time!" SOF 80. In the December 17, 2022, live stream's comment section, Mr. Havel wrote, in part, "Wish we would have livestreamed starting at the museum earlier in the day when we had a little

meeting around the Heavens Gate part of the museum with DO's voice playing and his face showing from a Beyond Human tape in the background the entire time." SOF 81. Beyond Human tape is the Video Work copyrighted and owned by Plaintiff. SOF 82. Mr. Havel and Ms. Weaver were both paid for participating in the "Heaven's Gate Re-Examined" event on December 17, 2022. SOF 84–85.

* * *

The facts of this case make it abundantly clear that Defendants are **committed** to "sharing" Plaintiff's copyrighted material. They have, through their own recorded, livestreamed words, made clear that—despite three years of litigation—they will <u>not</u> stop infringing Plaintiff's copyrighted material without Court intervention. Plaintiff respectfully asks that this Court enter summary judgment against Defendants as described below.

## II.    LEGAL STANDARD

Summary judgment is proper under Rule 56(a) "the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material only if it might affect the litigation's outcome under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

## III.    ARGUMENT

Pursuant to Federal Rule 56(a), Plaintiff hereby moves for partial summary judgment on two points: *first,* that it is the owner of the intellectual property in question (the Audio Works, the Video Works, the Literary Work, and the Visual Work); and *second,* that Defendants have infringed those copyrights. Plaintiff then moves for summary judgment on claims I, III,VI, V.

### A.    Partial Summary Judgment

    1.    Ownership

        *a)    Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Audio Works.*

A true and accurate copy of the registration for the copyright of the Audio Works[2], which was signed by and filed by Plaintiff's Director, Mark King, is attached hereto as Exhibit 1. This "constitutes prima facie evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)); *ABRO Indus., Inc. v. 1 NEW Trade, Inc.*, No. 3:14-CV-1984-TLS, 2017 WL 4954698, at *4 (N.D. Ind. Oct. 30, 2017). Plaintiff's ownership of the Copyright in the Audio Works is further shown by the Court Orders entered by the probate proceeding and in the Northern District of California proceeding. The probate proceeding resulted in a settlement whereby it was determined that Plaintiff would own the intellectual property of the Group. SOF 17–19. The Northern District of California proceeding likewise ended in a Consent Decree which stated that the Foundation has "exclusive rights and responsibility for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's websites, letters, other documents, names and symbols." SOF 20.

Based on this evidence, there can be no valid dispute regarding Plaintiff's ownership of the copyrights in the Audio Works. Indeed, the only arguments that have been raised by Defendants about Plaintiff's ownership (that the registrations were filed using Plaintiff's d/b/a and that they were filed before the resolution of the probate proceeding) are completely unsupported by any law. These arguments—which attack perceived flaws in

---

[2] "The Audiotape Library of Heaven's Gate by Ti and Do," Copyright Registration No. SRu 298-530.

the registrations—do nothing to undermine Plaintiff's actual ownership of the Copyrights, which was established by the probate court over 25 years ago. Furthermore, Defendants have cited no case law to support the claim that Copyright registrations cannot be filed under a corporation's d/b/a, and even if such a law existed, that filing error would have no effect on this case. That is because the Copyright Act contains a safe harbor provision protecting registrations even if there are errors or contain inaccurate information. *See* 17 U.S.C.A. § 411 (West). The United States Supreme Court affirmed this recently in *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 186 (2022), wherein they held that neither mistakes of law or fact on registration certificates invalidated copyrights unless the mistakes were included "with knowledge that [they were] inaccurate" *Id.* at 187 (citing 17 U.S.C. § 411(b)). Here there is no, and can be no, such showing.

Indeed, this Court already found in its Order on Plaintiff's request for a preliminary injunction that "evidence presented by both parties demonstrates that the Group's intellectual property rights were transferred to Plaintiff by operation of law, through the Public Administrator's voluntary transfer of intellectual property rights to Plaintiff as part of a settlement agreement approved by the California Court." [DE 194 at 18].

Based on this, Plaintiff respectfully requests that this Court enter partial summary judgment that it is the owner of the registered Audio Works.

   b) *Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Video Works.*

For the same reasons, Plaintiff respectfully requests that the Court enter partial summary judgment that Plaintiff is the owner of the copyright in the Video Works[3]. A true and accurate copy of the registration certificate for the video works is attached hereto as Exhibit 2. This "constitutes prima facie evidence of the validity of a copyright." *Wildlife*

---

[3] Series of videos entitled "Beyond Human – The Last Call," Copyright Registration No. PA 867-224.

12

*Express*, 18 F.3d at 507. Plaintiff's ownership was likewise confirmed by operation of law in the settlement with the Public Administrator and the Public Administrator's voluntary transfer of all intellectual property belonging to the Group to Plaintiff. SOF 17–18.

Based on this, Plaintiff respectfully requests that this Court enter partial summary judgment that it is the owner of the registered Video Works.

> c)    *Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Literary Work*

For the same reasons, Plaintiff respectfully requests that the Court enter partial summary judgment that Plaintiff is the owner of the copyright in the Literary Work[4]. A true and accurate copy of the registration certificate for the video works is attached hereto as Exhibit 3. This "constitutes prima facie evidence of the validity of a copyright." *Wildlife Express*, 18 F.3d at 507. Plaintiff's ownership was likewise confirmed by operation of law in the settlement with the Public Administrator and the Public Administrator's voluntary transfer of all intellectual property belonging to the Group to Plaintiff. SOF 17–18.

Based on this, Plaintiff respectfully requests that this Court enter partial summary judgment that it is the owner of the registered Literary Works.

> d)    *Partial Summary Judgment that Plaintiff is the Owner of the Copyright in the Visual Work*

For the same reasons, Plaintiff respectfully requests that the Court enter partial summary judgment that Plaintiff is the owner of the copyright in the Visual Work[5]. A true and accurate copy of the registration certificate for the Visual Work is attached hereto as Exhibit 4. This "constitutes prima facie evidence of the validity of a copyright." *Wildlife Express*, 18 F.3d at 507. Plaintiff's ownership was likewise confirmed by operation of law

---

[4] "How and When 'Heaven's Gate' (The Door to the Physical Kingdom Level Above Human) May be Entered – An Anthology of Our Materials," Copyright Registration No. TXu 817-732.
[5] "The C.B.E. (Celestial Being Entity), Copyright Registration No. 877-834.

in the settlement with the Public Administrator and the Public Administrator's voluntary transfer of all intellectual property belonging to the Group to Plaintiff. SOF 17–18.

Based on this, Plaintiff respectfully requests that this Court enter partial summary judgment that it is the owner of the registered Visual Work.

2.    Infringement

Plaintiff also moves for partial summary judgment that Defendants have infringed, or "cop[ied] the constituent elements of the work that are original," to Plaintiff's copyrights. *Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (citation omitted). As this Court has already held, this element "is largely undisputed":

> The Court starts with the second element because it is generally undisputed. Copying can be shown by direct and indirect evidence. Direct evidence includes "party admissions, witness accounts of the physical act of copying, and common errors in the works." *Fitzgerald v. Murray*, No. 121CV01822TWPTAB, 2021 WL 7502265, at *4 (S.D. Ind. Oct. 20, 2021)(quoting *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006)). Here, there is direct evidence of copying—Defendants concede that they engaged in the alleged infringing activity in their filings submitted to the Court. For instance, Mr. Havel has stated in his filings that he has "shar[ed] [the Group's] information with people who seek it out," that he has played the Group's audio tapes on his YouTube channel for some time, and that he sent copies of copyrighted works to Defendant Bartel. [DE 87 at 1, ¶1; DE 20 at 18, ¶40; DE 20 at 12-13, ¶¶35-36]. Likewise, Ms. Weaver explains that she participated in online videos or "live streams" where the Group's works were displayed and that these videos have now been marked as "private". [DE 39-1 at 23; DE 74 at 5]. Ms. Weaver also states that she does "not deny that we sold 9 shirts . . . that contain what [Plaintiff] state[s] they have copyrighted." [DE 74 at 9, ¶10]. Mr. Bartel has also confirmed that he disseminated the Group's work by placing it online sharing websites. [DE 35 at 12, ¶27; 13-14 at ¶¶29-31, 51-52 at ¶132]. Thus, the second element of Plaintiff's copyright infringement claim is undeniably met.

[DE 194 at 11]. Thus, Plaintiff asks the Court to enter summary judgment on infringement of the asserted copyrights, as discussed more fully below.

> a)    *Partial Summary Judgment that Defendants Havel and Weaver Infringed Plaintiff's Copyright in the Audio Works.*

Plaintiff is also entitled to partial summary judgment that Defendants Stephen Havel and Joanne Weaver have infringed the Audio Works. Beginning in September 2021, Defendants Havel and Weaver started broadcasting the audio works on the 3spm YouTube channel, which belongs to Mr. Havel but is operated by Mr. Havel and Ms. Weaver, and advertising these public performances on Mr. Havel's Twitter channel as shown here:



SOF 24.

When these public performances of Plaintiff's copyrighted materials began in the Fall of 2021, Plaintiff demanded that Defendants stop infringing on Plaintiff's copyrights

and Plaintiff sought to resolve this matter amicably. SOF 26. Defendants have refused all such overtures. SOF 27.

The "3spm" YouTube channel contains many videos that infringe on Plaintiff's copyrighted content. SOF 25. For example, Defendants Havel and Weaver have played the following audio tapes:

> Tape No. 149 - Broadcast on YouTube 3spm channel on 11/08/21
>
> Tape No. 263 - Broadcast on YouTube 3spm channel on 11/08/21
>
> Tape No. 004 - Broadcast on YouTube 3spm channel on 11/08/21
>
> Tape No. 030 - Broadcast on YouTube 3spm channel on 03/26/22
>
> Tape No. 161 - Broadcast on YouTube 3spm channel on 04/08/22
>
> Tape No. 156 - Broadcast on YouTube 3spm channel on 04/12/22
>
> Tape No. 011 - Broadcast on YouTube 3spm channel on 04/13/22
>
> Tape No. 054 - Broadcast on YouTube 3spm channel on 04/14/22
>
> Tape No. 052 - Broadcast on YouTube 3spm channel on 04/17/22
>
> Tape No. 050 - Broadcast on YouTube 3spm channel on 04/18/22
>
> Tape No. 200 - Broadcast on YouTube 3spm channel on 04/19/22
>
> Tape No. 201 - Broadcast on YouTube 3spm channel on 04/20/22
>
> Tape No. 202 - Broadcast on YouTube 3spm channel on 04/21/22
>
> Tape No. 203 - Broadcast on YouTube 3spm channel on 04/26/22
>
> Tape No. 204 - Broadcast on YouTube 3spm channel on 04/27/22

SOF 25.

That Mr. Havel infringed Plaintiff's Audio Works is not in dispute, as it was admitted to in Mr. Havel's answer:

- Mr. Havel admitted to "quickly sen[ding] [hundreds of audio cassette tapes that were registered by the foundation with the United States Copyright Office in 1997] to [Defendant Bartel] and someone else who [Havel] know[s] [he] can trust to be sure to upload them to the internet in mulitple [sic] places

so that even if [the Foundation] somehow sue [Defendants] it will be far too late to keep [Plaintiff] from being available to those who want to listen to them." SOF 43; *see also* [DE 20 at 12-13, ¶¶ 35-36]

- Mr. Havel admitted that he "sen[t] Bartel (Carlan, aka Crlody) a thumb drive containing digitized audio tapes." SOF 44; [*see also* DE 20 at 13, ¶ 35]

- Mr. Bartel's Answer confirms that "Defendant [Bartel] was provided with 929 audio works in 2021 by Defendant Havel" and confirms that at a minimum "486" of those "Audio Works have been registered according to the copyright registration provided by Plaintiff[]." SOF 45; [*see also* DE 35 at 9, ¶ 16]

- Mr. Havel avowed that he "gave [Mr. Bartel] the thumb drive because [Mr. Havel] knew [Mr. Bartel], like [Mr. Havel], wanted those tapes for our own use and to share with others."[6] SOF 46; [Doc. 20 at 20, ¶ 45 (emphasis added)]

- Mr. Havel admitted to "play[ing] audio tapes" that were registered copyrights. SOF 47; *see also* [DE 20 at 18, ¶ 40]

That Ms. Weaver infringed Plaintiff's Audio Works is likewise not in dispute, as it was admitted to in her answer and filings with the Court:

- Ms. Weaver stated "[she] began participating in [Mr. Havel's] live streams where [Ms. Weaver and Mr. Havel] played the audio tapes and we also decided to make merchandise in the form of t-shirts." SOF 49; *see also* [DE 39-1 at 23]

- Ms. Weaver confirmed that she and Mr. Havel "repeatedly play[ed] audio tapes and s[old] t-shirts." SOF 50; *see also* [DE 39-1 at 23]

---

[6] Mr. Bartel's Answer also "admits . . . that audio tapes produced by the Group were being sent to [Mr. Bartel] by Defendant Havel." SOF 48; [DE 35 at 13, ¶ 29).

- Ms. Weaver stated that she and Mr. Havel have played "15 audio tapes on the live stream and [they] sold a total of 9 shirts at 32.50." SOF 51; *see also* [DE 39-1 at 23]

- Ms. Weaver stated that she and Mr. Havel "stopped selling the two shirt designs that contain what [Plaintiff] ha[s] finally proved via the exhibits [Plaintiff] presented with this lawsuit what [Plaintiff] ha[s] trademarked/copyrighted." SOF 52; *see also* [DE 39-1 at 23]

Mr. Havel and Ms. Weaver have also used their YouTube channel to disseminate the URLs of the copyrighted recordings that have been impermissibly uploaded to Google drive and made available by Defendants. SOF 31–32. For example, on May 13, 2022's live stream, Ms. Weaver states: "There's several tapes, there are over 900-plus tapes available, audios, which we've been playing on the channel and if you email us we can give you a link to the google drive and point out specific tapes…" SOF 32.

Based on this overwhelming evidence, Plaintiff asks that the Court enter partial summary judgment that Defendants Havel and Weaver infringed on Plaintiff's Audio Works. The Copyright Act grants copyright holders the generally exclusive rights "to reproduce the copyrighted work in copies" and "to distribute copies ... of the copyrighted work to the public ...." 17 U.S.C. § 106(1), (3). When a third party reproduces or distributes a copyrighted work without authorization, they infringe on the exclusive rights of a copyright holder under 17 U.S.C. § 501; *see also Greer v. Moon*, 83 F.4th 1283, 1293 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521, 219 L. Ed. 2d 1200 (2024). There can be no question that they "cop[ied]" and shared via YouTube and thumb-drive "the constituent elements of the work that are original," to Plaintiff's copyrights and in so doing have infringed Plaintiff's copyrights. *Design Basics*, 994 F.3d at 886.

18

> b)  *Partial Summary Judgment that Defendant Bartel Infringed Plaintiff's Copyright in the Audio Works*

Plaintiff is also entitled to partial summary judgment that Defendant Bartel has infringed the Audio Works. Mr. Bartel goes by an alias of "crlody." SOF 61. Mr. Bartel's Answer confirmed that he is also known as "Crlody." SOF 61; *see also* [Doc. 35 at 4, ¶ 6]. On or about August 2021, Mr. Bartel posted an archive of the Audio and Video Works online, which was taken down by a DMCA request. SOF 33–34. Following the removal of the archive, Mr. Bartel then created two additional archives on Google Drive that allow individuals to freely download the Foundation's copyrighted material. SOF 35.

Mr. Bartel also encourages people to contact him for access to a third cache of the Foundation's copyrighted materials, on his personal blog:



SOF 36-37.

On August 19, 2022, Mr. Bartel posted tapes 1-218 on his blog. SOF 38. Mr. Bartel's Answer "admits . . . that audio tapes produced by the Group were being sent to [Mr. Bartel] by Defendant Havel." SOF 44–47. Mr. Bartel's Answer also describes his dissemination of Plaintiff's materials:

> Defendant admits that he uploaded audio works produced by the Group to multiple Google Drives and to 4shared for free download and Defendant further admits to providing the audio works produced by the Group to a College Professor on a thumb drive free of charge. Defendant further admits to placing 30 gigs of audio works produced by the Group on a private google drive and inviting many individuals, including one retired

and one active College Professor, to access said audio works of the Group

. . . .

SOF 39.

On October 12, 2022, Mr. Bartel wrote a comment on his blog that "I'm getting sued for putting [Plaintiff's] tapes on free, file sharing sites." SOF 40. On October 19, 2022, Mr. Bartel posted on his blog:

> To hell with going dark. This [sic] archive of the [Heaven's Gate] audio tapes wouldn't be possible without the work of an individual who risked incurring the "legal" wrath of the incredibly petty couple Mark and Sarah King, these tapes belong to the world, not a Corporation formed six months after the class left this world[.]

SOF 41. Mr. Bartel's October 19, 2022, post contains a link to a website that contains an audio library of "Heaven's Gate Audio Tapes" and the website states "These files have been made available to me through an ex-member who goes by the name crlody. Here is their blog about The TELAH Foundation: https://crlody.wordpress.com/." SOF 42.

Based on this overwhelming evidence, Plaintiff asks that the Court enter partial summary judgment that Defendant Bartel infringed on Plaintiff's Audio Works by uploading them to multiple file-sharing sites and distributing copies for free on such sites. This is clearly copyright infringement. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) ("if the uploaded video is copyrighted, the uploader has (depending on the terms of use) infringed the copyright. . . . [if a person uploaded a video] to the Internet and so by doing so created a copy (because the downloaded video remains in his computer), he was infringing."); *see also Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction.").

> c) *Partial Summary Judgment that Defendant Weaver Infringed Plaintiff's Copyright in the Literary Work.*

Plaintiff is also entitled to partial summary judgment that Defendant Weaver has infringed the Literary Work. Here, Ms. Weaver has, for example, admitted in her Answer, to recording audio versions of entire chapters of Plaintiff's copyrighted book:

> 48. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating an audio book version of a the Literary Work owned.
>
> **ANSWER: Defendant admits recording some chapters from the Literary Work however Defendant claims Fair Use as the Literary Work is in the Public Domain and Plaintiffs offer the Literary Work free of charge via download on the website they maintain. Defendant has also marked the channel in question as private upon learning of this lawsuit so it is no longer accessible by the public.**

SOF 86. While Ms. Weaver argues that the creation of audio-versions of the copyrighted material constitutes fair use, that is simply not the case. As the Seventh Circuit has stated, "copying that is a substitute for the copyrighted work . . . or for derivative works from the copyrighted work . . is not fair use." *Ty, Inc. v. Publications Int'l Ltd*., 292 F.3d 512, 517 (7th Cir. 2002). "Paradigmatic examples of derivative works include the translation of a novel into another language, the adaptation of a novel into a movie or a play, or the recasting of a novel as an e-book or an audiobook." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 101 (2d Cir. 2014) Here, the creation of an audio book version of the Literary Work is a quintessential example of a derivative work, the creation of which is reserved for the Copyright holder exclusively. 17 U.S.C. § 106(2) (copyright owner has the "exclusive rights" to "prepare derivative works based upon the copyrighted work").

Based on this evidence, Plaintiff asks that the Court enter partial summary judgment that Defendant Weaver infringed on Plaintiff's Literary Work through attempting to create an audio book version and recoding multiple chapters of the book verbatim.

d)      *Partial Summary Judgment that Defendants Havel and Weaver Infringed Plaintiff's Copyright in the Visual Work.*

Plaintiff is also entitled to partial summary judgment that Defendants Havel and Weaver have infringed the Visual Work. For example, Mr. Havel and Ms. Weaver have used Plaintiff's registered copyrighted "C.B.D." image repeatedly as the display artwork for their YouTube channel, as shown here:



SOF 30.

Similarly, Ms. Weaver's recent filing with this Court [DE 230] *admits* to the creation and sale of T-Shirts containing Plaintiff's copyrighted C.B.E. visual work. *SOF 50–52; see also* [DE 230 at 4–5 and Exhibit C thereto (evidencing creation of over 35 shirts containing the Copyrighted CBE Image, and 35 shirts with Plaintiff's Heaven's Gate Trademark)]. The creation of T-Shirts for **sale** is incompatible with a claim of fair use. 17 U.S. Code § 107(1). The commercial nature of a secondary use generally weighs against a finding of fair use, especially where the secondary use is only "modest[ly] transformative." *Fox News Network, LLC v. TVEyes, Inc.,* 883 F.3d 169, 178 (2d Cir. 2018).

Here, Mr. Havel and Ms. Weaver have uploaded Plaintiff's copyrighted Visual Work to YouTube for use in their videos. This copying is clearly copyright infringement. *See Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction."). The creation and sale of t-shirts with Plaintiff's copyrighted Visual Work likewise constitutes copying of Plaintiff's Visual Work, and, thus, copyright infringement. Plaintiff respectfully requests that this Court enter partial summary judgment of infringement against Defendants Havel and Weaver.

**B.**     **Summary Judgment on Count I, III, IV, and V**

1.     Summary Judgment on Count I (Copyright Infringement of the Audio Works) as to Defendants Havel, Weaver, and Bartel.

The elements of a copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (citation omitted). As explained above, both of these requirements are met as to the Audio Works. As explained above, Plaintiff is the owner of a valid copyright in the Audio Works and it is clear that Defendants Havel and Weaver have, *admittedly*, engaged in the copying and distribution of the audio works—both to Mr. Bartel (for the purpose of wider distribution on file-sharing sites) and via airing the recordings in their entirety on their YouTube channel. As explained above (and as found by this Court already [*see* DE 194 at 13], such wholesale copying is inconsistent with a claim of fair use. *Ty, Inc. v. Publications, Int'l Ltd.,* 292 F.3d 512, 517 (7th Cir. 2002) ("[C]opying that is a substitute for the copyrighted work . . . is not fair use."). Thus, Plaintiff asks that the Court enter summary judgment in its favor on Count I.

### 2. Summary Judgment on Count III (Copyright Infringement of the Literary Work) as to Defendant Weaver.

The elements of a copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Design Basics,* 994 F.3d at 886 (citation omitted). As explained above, both of these requirements are met as to the Literary Work with Defendant Weaver. As explained above, Plaintiff is the owner of a valid copyright in the Literary Works and it is clear that Defendant Weaver has, *admittedly*, engaged in the wholesale copying and creation of an audio version of that work. As explained above (and as found by this Court already [*see* DE 194 at 13], such wholesale copying is inconsistent with a claim of fair use. *Ty, Inc. v. Publications, Int'l Ltd.,* 292 F.3d 512, 517 (7th Cir. 2002) ("[C]opying that is a substitute for the copyrighted work . . . is not fair use."). Thus, Plaintiff asks that the Court enter summary judgment in its favor, with respect to Defendant Weaver, on Count III.

### 3. Summary Judgment on Count IV (Copyright Infringement of the Visual Work) as to Defendants Havel and Weaver.

The elements of a copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (citation omitted). As explained above, both of these requirements are met as to the Visual Work with Defendants Havel and Weaver. As explained above, Plaintiff is the owner of a valid copyright in the Visual Work and Defendants Havel and Weaver have repeatedly copied the Visual Work, posted it online, and used it to advertise their YouTube channel. As explained above such wholesale copying of a work, as well as its commercial use to promote YouTube videos, is copyright infringement. Thus, Plaintiff asks that the Court enter summary judgment in its favor, with respect to Defendants Havel and Weaver, on Count IV.

    4.    Summary Judgment on Count V (Contributory Infringement) as to Defendant Havel.

A claim for contributory copyright infringement requires "personal conduct that encourages or assists the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Here there can be no question that Defendant Havel has engaged in such conduct. As stated above, Mr. Bartel engaged in direct copyright infringement by uploading and distributing Plaintiff's audio tapes. Defendant Havel had both knowledge of that infringement and took actions to cause, encourage, assist, and materially contribute to the infringing conduct. As Mr. Havel admits:

> So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in mulitple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them.

SOF 43. Mr. Havel "sen[t] Bartel (Carlan, aka Crlody) a thumb drive containing digitized audio tapes." SOF 44. "Defendant [Bartel] was provided with 929 audio works in 2021 by Defendant Havel" and at a minimum "486" of those "Audio Works have been registered according to the copyright registration provided by Plaintiff[]." SOF 45. Mr. Havel "gave [Mr. Bartel] the thumb drive because [Mr. Havel] knew [Mr. Bartel], like [Mr. Havel], wanted those tapes for our own use and to share with others." SOF 46–47. Mr. Havel provided Mr. Bartel with Plaintiff's copyrighted material so that Mr. Bartel could engage in copyright infringement. These actions constitute contributory infringement and summary judgment on Count V with respect to Mr. Havel is appropriate.

## IV.   **CONCLUSION**

For the reasons stated above Plaintiff respectfully asks that the Court grant this motion.

RESPECTFULLY SUBMITTED this 31st day of October 2025.

/s/ Isaac S. Crum
MESSNER REEVES LLP
Isaac S. Crum (Pro Hac Vice)
icrum@messner.com
7250 N. 16th Street, Suite 410
Phoenix, Arizona 85020
Telephone: (602) 641-6705
Facsimile: (303) 623-0552

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of October 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing was also sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4019 Forest Drive
Hancock, WI 54943
jason_bartel@unioncab.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

*/s/ Isaac S. Crum*