# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF INDIANA

# SOUTH BEND DIVISION

CASE NO. 3:22-CV-395-DRL-SJF

The Evolutionary Level Above Human Foundation,

    Plaintiff

    v.

Stephen Robert Havel,

Cathy Joann Weaver,

Jason Bartel

       Pro Se Defendants

-FILED-

DEC 0 2 2025

A: _____ M
Chanca J Beta Clark
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## DEFENDANT STEPHEN HAVEL'S BRIEF IN OPPOSITION TO PLAINTIFF'S

## MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Defendant Stephen Robert Havel ("Havel"), appearing pro se, respectfully submits this Brief in Opposition to Plaintiff's Motion for Summary Judgment. Summary judgment must be denied because Plaintiff has failed to meet its burden under Rule 56 and because numerous genuine disputes of material fact—many created by Plaintiff's own contradictory evidence—require trial. (See Exs. 10, 11, 12, 14, 22, DE 20, Answer ¶¶ 1–6, 11–21, 25–33).

## II. STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court does not

1

weigh evidence, does not make credibility determinations, and must draw all reasonable inferences in favor of the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248–55 (1986)

## VI. ARGUMENT

### I. Plaintiffs Have Not Met Their Burden Under Rule 56

Summary judgment requires Plaintiffs to show **no genuine dispute of material fact** and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiffs cannot meet this burden. Every claim they assert requires proof of authorship, ownership, chain of title under 17 U.S.C. § 204(a), valid registration under § 411(a), accurate deposit materials, continuous custody, and exclusive rights. The record shows pervasive contradictions and missing evidence on each point.

### A. Plaintiffs Rely on Legal Conclusions, Not Evidence

A large portion of Plaintiffs' SOF asserts authorship, ownership, originality, exclusive control, validity of registrations, accuracy of Lists 1 and 2 and chain-of-title facts. But none of these assertions cite underlying evidence. As explained in the Havel Declaration, Plaintiffs' statements repeatedly conflict with probate materials, metadata (Ex. 27), authentic cassette-label photos (Ex. 25), instructions and dissemination by the Group (Ex. 22), Jhnody's logs (Ex. 25), and Plaintiffs' own prior statements. *(Havel Decl. ¶¶ 1–16, 20–23, 30–36)*.

Legal conclusions cannot support summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 255.

### B. Plaintiffs' Evidence Is Incomplete, Contradictory, or Inadmissible

Defendant's Exhibits demonstrate **probate documents (Ex. 6)** show no ownership determination and expressly decline to establish chain of title; **the Guy Schall settlement (Ex. 7)** does not

assign copyrights; because the Group had no legal copyrights and Plaintiffs were established as "fraudulent"; **the Breyer Consent Decree (Ex. 28)** required only correction and dissemination of Rkkody's CDs, not ownership; **Jhnody's logs (part of Ex. 25)** contradict dates, durations, and numbering in Plaintiffs' newly constructed Lists 1 and 2; **cassette-label photos (Ex. 25)** contradict Plaintiffs' asserted tape metadata; for 84 audios **the tape metadata comparison (Ex. 27)** shows intentional numbering/date mismatches seemingly to hide the existence of over a hundred more audio tapes only Plaintiff's possess; **Plaintiffs' 2023 registrations (Ex. 29)** contradict their earlier authorship and ownership claims. (Havel Decl. ¶¶ 8–16, 20–23, 30–36). Each contradiction creates a genuine dispute of material fact.

## C. Plaintiffs Cannot Circumvent 17 U.S.C. § 204(a)

Copyright ownership is transferred **only** by a writing signed by the author.

17 U.S.C. § 204(a); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003).

Plaintiffs provided **no assignment** from TI (Bonnie Nettles), DO (Marshall Applewhite), any member of the Group, videographers, audio operators, editors, writers of the Book, Ollody (visual artwork), or Havel himself. *(Havel Decl. ¶¶ 1–5, 28–29).* Without an assignment, they cannot prove ownership for **any** work at issue. Their rights to copyright by a matter of law, they received from two courts in 1999 were only exercised on two occasions, that Defendant knows about, was exercised but used a falsified "author".

## D. Plaintiffs' Registrations Are Contradictory and Unreliable

### 1. List 1

- claims a "deposit of 486 audio cassettes"

- due to missing tapes, deposit contains ~469 with no specific way to know exactly which tapes were in the deposit (Mark King and Sarah King knew as much before the lawsuit) so allowed the deceit to continue instead of squaring with the Copyright office).

- Tapes were given a disguised description of "Various Discussions," descriptions that don't match original tape-label content and original logs (like from Rkkody's CD's and Rkkody.com) that have detailed and often robust descriptions of their content. *(Havel Decl. ¶¶ 15–16; Ex. 25; Ex. 27).*

- generated during litigation

## 2. List 2

- generated during litigation, contradicts Plaintiff's Complaint (Dtk. 1-H and Amended Complaint 132-H) Exhibit H, described as the Jhnody log that he received from Mark King and/or Sarah King, that Jhnody gave to Defendant Havel that Havel posted on his blog at: sawyerhg.wordpress.com to start the Kings threatening this lawsuit.

- contradicts tape-label photo dates

- conflicts with metadata shown specifically in Exhibit 27 *(Havel Decl. ¶¶ 15–23; Ex. 25; Ex. 27).*

## 3. 2023 copyright registrations for two groups of audios (Ex. 29)

- Plaintiffs adopt a new authorship theory of naming Steven Terry McCarter as the author, a student named Srrody who often did run the tape recorder while Havel was mostly his check partner for, which was different from naming a dba Group name of Total Overcomers Anonymous (TOA) as a "work for hire" author in their 1997 copyright and trademark filings. *(Havel Decl. ¶ 25; Ex. 29).* Under *Chicago Building Design v.*

4

*Mongolian House*, 770 F.3d 610 (7th Cir. 2014), inconsistent registrations preclude summary judgment.

### E. The Group Authorized Dissemination, Negating Exclusivity

The Heaven's Gate group itself directed wide distribution of tapes and materials: **Rkkody mailed out CD sets** in 1997–98 to individuals, to Havel, to about 10 or thereabout libraries, we have evidence for. *(Ex. 22; Havel Decl. ¶¶ 8–12).* **Crlody (co-defendant Jason Bartel) helped Rkkody and after Rkkody died continued to disseminate the Groups information.** As early as 2010, years before the lawsuit Crlody posted the digitized audio files he owned receiving them from Rkkody on 4shared.com for people's free download. **Jhnody mailed some 900 digital audios** to Havel in 2021 that prompted the Kings to threaten to sue Havel over doing. He received them from Mark and Sarah King. *(Ex. 25; Havel Decl. ¶¶ 13–14).* **The Group intended teachings to be distributed broadly**, including to media *(Havel Decl. ¶¶ 8–12).* The Group placed the Book and other materials on public websites. Exclusive rights cannot exist where the authors themselves distributed the works widely.

This alone defeats summary judgment. *Celotex*, 477 U.S. at 323.

### VII. COUNT I — COPYRIGHT CLAIM: AUDIO WORKS

#### A. Plaintiffs Cannot Establish Authorship or Ownership (17 U.S.C. § 204(a))

Plaintiffs' entire audio-works claim depends on proving that (1) the Heaven's Gate audio tapes were authored by persons whose rights later passed to Plaintiffs, and (2) that such rights were transferred to Plaintiffs through a proper chain of title. But Plaintiffs provide **no written assignment from any author**, as required by 17 U.S.C. § 204(a). *(Havel Decl. ¶¶ 1–5).*

There is no assignment from: Ti (Bonnie Nettles), Do (Marshall Applewhite), any member of the Group, any person who recorded the tapes, Rkkody (Humphrey), Jhnody (Francisco), or Havel.

*(Havel Decl. ¶¶ 1–5, 8–14).* Without a signed writing transferring rights, Plaintiffs cannot own these works as a matter of law. See *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) ("Section 204(a)'s writing requirement is not a mere formality.").

## B. Plaintiffs' Chain-of-Title Theory Is Contradicted by the Record

Plaintiffs rely on probate materials, two settlements, and their own post-hoc assertions. But none of these documents transfer copyrights. The **1999 probate letter** expressly declined to determine ownership and confirmed no copyright evaluation occurred. *(Ex. 6; Havel Decl. ¶¶ 30–31).* The **Schall settlement** (Ex. 7) resolved disputes with a family member but does **not** assign copyrights. *(Havel Decl. ¶¶ 32–33).* The **Breyer Consent Decree** (Ex. 28) required Plaintiffs only to "correct and disseminate" Rkkody's CDs; it does **not** determine ownership or award copyrights. *(Havel Decl. ¶ 34).* No document contains the § 204(a) writing required to transfer any rights.

## C. Plaintiffs' Registrations (List 1 & List 2) Are Unreliable and Contradicted by Evidence

### 1. List 1 surfaces major defects

Plaintiffs' "List 1" registration claims to cover **486 tapes**, but the deposit contains only ~**469**, descriptions are generic ("various discussions"). *(Havel Decl. ¶¶ 15–16; Ex. 25; Ex. 27).*

### 2. List 2 contradicts Exhibit H, metadata, and cassette labels

List 2 (covering tapes 487–1082) reflects dates that contradict the Group's original logs (Exhibit H), numbering that contradicts authentic cassette labels from Jhnody's archive, entries inconsistent with independent metadata analysis. *(Havel Decl. ¶¶ 15–23; Ex. 25; Ex. 27).* The mismatches shown in **Exhibit 27** alone create dozens of genuine disputes.

### 3. Plaintiffs' 2023 registrations (Ex. 29) introduce inconsistent authorship theories

In 2023, Plaintiffs attempted to register two new groups of tapes by asserting that "Srrody," the member who pressed the record button, was the "author." This directly contradicts earlier registrations naming "Total Overcomers Anonymous, "Plaintiffs' long-standing claim that they inherited ownership through the estates, the Group's intent that students (not a single member) participate jointly in recording sessions. *(Havel Decl. ¶ 25; Ex. 29).*

Conflicting authorship statements undermine the presumption of validity.

See *Chicago Building Design v. Mongolian House*, 770 F.3d 610, 616 (7th Cir. 2014).

**D. The Group Intended and Authorized Wide Dissemination of the Audio Tapes**

Multiple former members disseminated the audio library **with the Group's permission**. **Rkkody mailed complete CD sets** to many individuals, including Havel, in 1997–98. *(Ex. 22; Havel Decl. ¶¶ 8–12).* **Jhnody provided a full digital archive** in 2021, including logs and metadata. *(Ex. 25; Havel Decl. ¶¶ 13–14).* The Group itself instructed certain students to distribute materials freely to the public and media. *(Havel Decl. ¶¶ 8–12).* The Group left multiple teachings on public websites and explicitly encouraged dissemination. This conduct is inconsistent with exclusive control.

**E. Plaintiffs Lack Evidence of Any Infringing Act by Havel**

Plaintiffs identify **no specific audio file** they claim Havel copied, distributed, adapted, or otherwise used without authorization. There is no URL, file hash, media posting, timestamp, alleged user action, expert comparison, or explanation of substantial similarity. A plaintiff cannot win summary judgment without identifying **what was infringed** and **how**. *Celotex*, 477 U.S. at 323.

**F. At Minimum, Dozens of Genuine Disputes Exist**

Between the contradictions in probate materials *(Ex. 6, Ex. 7)*, the Consent Decree *(Ex. 28)*, List 1 & List 2 *(Ex. 27)*, cassette photos *(Ex. 25)*, dissemination evidence *(Ex. 22)*, and Plaintiffs' 2023 registrations *(Ex. 29)* —summary judgment is impossible.

## VIII. COUNT II — PARTIAL SUMMARY JUDGEMENT: VIDEO WORKS (BEYOND HUMAN-THE LAST CALL, DO'S FINAL EXIT, PLANET ABOUT TO BE RECYCLED..., LAST CHANCE TO ADVANCE...)

### A. Plaintiffs Cannot Prove Authorship or a Valid Chain of Title to the Beyond Human Series

Plaintiffs' claim over the *Beyond Human – The Last Call* video series depends entirely on showing (1) authorship, and (2) a valid transfer of rights. They prove neither.

### 1. No assignment from any creator exists

The Beyond Human series was created by the Group collectively. Yet Plaintiffs don't produce a single assignment from the speakers (DO and others), performers (including Havel), the camera operators, the video editors, or any member of the production crew. *(Havel Decl. ¶¶ 1–5, 26–29)*. Under 17 U.S.C. § 204(a), a transfer of rights in a video work requires a signed writing from the author. Plaintiffs have none.

### 2. Plaintiffs provide no production records establishing authorship

Plaintiffs did not produce: shot logs, production notes, masters, chain-of-custody documentation, creation dates, or any documentation of who actually recorded or edited the works. *(Havel Decl. ¶¶ 26–27)*. Without this evidence, Plaintiffs cannot meet their burden under *Billy-Bob Teeth* and *Celotex*.

### B. The Group Publicly Broadcast the Beyond Human Series in 1993

Plaintiffs' theory of "exclusive control" collapses under the historical record.

### 1. The Group authorized public broadcast

The Beyond Human series was broadcast publicly over the **Hughes satellite system in 1993**. *(Havel Decl. ¶ 27).* Havel was present and part of the Group's video services at the time and participated directly in the satellite upload.

### 2. Public broadcast constitutes dissemination

A 1993 satellite broadcast is a public performance, a public distribution, dissemination to the general public, and evidence of non-exclusive licensing.

### 3. Plaintiffs cannot retroactively claim exclusivity

Once the original creators made the videos public and authorized broadcast, Plaintiffs cannot decades later claim the works were "never distributed," that only TELAH had exclusive rights, that all copies belong to them, or that they alone are "successors." This contradicts the source history. *(Havel Decl. ¶¶ 26–27).*

### C. Havel Personally Appears in the Beyond Human Series and Participated in Its Creation

Havel appears in **five of the sessions** as a helper for Do and was also part of the **production crew** during the filming.

### 1. This establishes at least a factual dispute as to authorship

Under copyright law, contributors who appear, participate, operate equipment, or provide creative input have authorship interests unless they assign them. Plaintiffs have **no assignment** from Havel. *(Havel Decl. ¶¶ 26, 28).*

### 2. Plaintiffs' failure to identify all contributors is fatal

Creators must be identified in registrations. Incomplete authorship information undermines validity. See *Chicago Building Design*, 770 F.3d at 615–16.

Because Havel contributed and appears in the works, and Plaintiffs lack any transfer from him, summary judgment is improper.

## D. Plaintiffs' Registrations for the Video Works Are Defective

Plaintiffs' video registrations suffer from the same defects found in their audio registrations.

### 1. Missing or incomplete deposit materials

Plaintiffs failed to produce original tapes, original masters, original edits, production logs, documentation of who filmed or edited the work. This failure violates the Copyright Office deposit requirements. *(Havel Decl. ¶¶ 8–14; Ex. 22).*

### No chain-of-custody documentation

Plaintiffs cannot show who held the original tapes, when they obtained them, how they were preserved, or whether they were altered. This failure alone precludes summary judgment.

## E. Plaintiffs Fail to Identify Any Specific Act of Infringement by Havel

The Motion for Summary Judgment cites **no specific video** Havel allegedly infringed. They do not identify which session, which clip, which distribution, which upload, or which file. This absence of evidence is fatal under *Celotex*, 477 U.S. at 323.

## F. Multiple Genuine Disputes Preclude Summary Judgment

Between the 1993 satellite broadcast *(Havel Decl. ¶ 27)*, Havel's onscreen and offscreen participation *(Havel Decl. ¶¶ 26–29)*, the lack of chain-of-title *(Havel Decl. ¶¶ 1–5)*, incomplete registrations, missing production records, discrepancies between Plaintiffs' copies and original materials *(Ex. 22)*, there is **no way** Plaintiffs can win summary judgment on the video claims.

## IX. COUNT III — COPYRIGHT CLAIM: LITERARY WORKS (THE "BOOK")

## A. Plaintiffs Cannot Establish Authorship or a Valid Transfer of Literary Works

Plaintiffs allege exclusive ownership of the Heaven's Gate "Book," but they fail to establish authorship or a lawful chain of title under 17 U.S.C. § 204(a).

### 1. Plaintiffs produce no written assignment from any author

The Book was created collectively by the Group. Plaintiffs provide **no signed writing** from TI (Bonnie Nettles), DO (Marshall Applewhite), any member who authored sections, any editor, or any member who contributed revisions. *(Havel Decl. ¶¶ 1–5, 30–34).* Without a written transfer, they cannot show ownership. See *Billy-Bob Teeth*, 329 F.3d at 591.

### 2. Plaintiffs' own probate materials disclaim any copyright determination

The 1999 Public Administrator's ruling expressly stated the estate did **not** investigate or determine copyright ownership, the estate made **no findings** regarding any copyrights, the administrator acted only to dispose of physical property, the administrator did **not** convey copyright rights. *(Ex. 6 at 13–17; Havel Decl. ¶¶ 30–31).* Thus Plaintiffs' claim that "the estates awarded copyrights to TELAH" is **factually incorrect.**

### 3. The Supplemental Probate Brief (Ex. 4) confirms Plaintiffs had *no preexisting* ownership

The Supplemental Brief filed by the Public Administrator explained the Group had no traditional estate, no copyright registrations existed at the time, no assignment instruments existed, no court ever adjudicated ownership of the Book. *(Ex. 4; Havel Decl. ¶¶ 31–33).* The probate materials actually **undercut** Plaintiffs' claim.

### 4. The Schall Settlement (Ex. 7) does not transfer literary copyrights

The Settlement with the family member simply ends litigation about access to materials — it does **not** assign rights. *(Havel Decl. ¶ 32; Ex. 7).*

### B. The Group Intentionally Distributed the Book to Rkkody, Jhnody, and Others

### 1. Rkkody received a full copy of the Book directly from the Group

Group members gave Rkkody a full printed copy of the Book, which he reproduced and distributed as part of his Right-To-Know mission. *(Havel Decl. ¶¶ 8–12; Ex. 22).*

### 2. Jhnody received another master Book copy and disseminated it

Jhnody digitized and shared the Book in 2021 as part of the materials he transferred to Havel. *(Havel Decl. ¶¶ 13–14; Ex. 25).*

### 3. The Group intentionally made the Book publicly available

The Book remains publicly accessible on the Group's original website (heavensgate.com), unchanged from the version left in 1997. *(Havel Decl. ¶¶ 8–14, 26–27).*

Public dissemination is fundamentally inconsistent with exclusive rights claims.

### C. Plaintiffs Have Not Submitted a Valid or Complete Deposit Copy

### 1. Plaintiffs' deposit does not match the circulating Book

Original Books provided to Rkkody, Jhnody, multiple observers in 1997 contain different pagination, different formatting, different prefatory matter, and different Group copyright notices (common-law notice). *(Havel Decl. ¶¶ 8–14, 26–27; Ex. 21).*

### 2. Plaintiffs' deposit copy omits Group copyright statements

The Group's own copyright legend — reproduced in Exhibit 21 — appears in the Rkkody CDs, the Book copies disseminated in 1997–98 the online versions preserved by followers. Plaintiffs have not explained these discrepancies.

### 3. Missing sections and altered formatting raise authenticity concerns

Courts do not grant summary judgment when a deposit copy is incomplete or inaccurate. See *Selle v. Gibb*, 741 F.2d 896, 899 (7th Cir. 1984). Here, the defects are significant and material.

### D. Plaintiffs Cannot Identify Any Actionable Infringement by Havel

Plaintiffs do not identify which page was allegedly copied which chapter, which excerpt, which upload, or which publication of Havel's supposedly infringes the Book. They cite no URLs, hashes, screenshots, or side-by-side comparison. Without identifying the allegedly infringing act, Plaintiffs cannot meet their burden. See *Celotex*, 477 U.S. at 323.

### E. At Minimum, Multiple Genuine Disputes Preclude Summary Judgment

Disputes exist as to authorship (Group collective work), chain-of-title (probate disclaimers), standing (no § 204(a) writings), accuracy of deposits, distribution history (Rkkody, Jhnody), the Group's own purpose and conduct, mismatches between Plaintiffs' Book and the authentic materials (Ex. 21). *(Havel Decl. ¶¶ 1–36; Exs. 4, 6, 7, 21, 22, 25)*. Because each is independently sufficient to defeat summary judgment, Count III cannot be resolved as a matter of law.

## X. COUNT IV — COPYRIGHT CLAIM: VISUAL WORKS (ILLUSTRATIONS, ARTWORK, IMAGES)

### A. Plaintiffs Cannot Establish Authorship or Chain of Title in Any Visual Work

Plaintiffs allege exclusive ownership of the Heaven's Gate–related artwork, logos, illustrations, and visual materials. They provide no admissible evidence establishing **who created each visual work, when it was created, whether it was ever copyrighted, whether the rightsholder ever assigned it, whether Plaintiffs lawfully acquired any rights.** *(Havel Decl. ¶¶ 1–5, 28–36)*. No § 204(a) writing exists transferring ownership of any visual works.

### 1. Plaintiffs do not produce any assignment from artists

The Group included members with artistic abilities, including "Ollody" (Olliver Odinwood), whose 1982 artwork was published under his own copyright.

Exhibit 26 shows the work was copyrighted by Ollody personally, he used his own pen name, the copyright is separate from any group identity. *(Ex. 26; Havel Decl. ¶ 29).* Plaintiffs present **zero documentation** showing that Ollody or any other artist transferred rights to them.

**2. Plaintiffs also fail to identify which works they are asserting**

The Complaint refers generically to "visual works," but Plaintiffs have never identified a complete list of images, individual authors, dates of creation, any original copies, any signed writings. Thus Plaintiffs have not met even the initial burden of identifying the works at issue. See *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983).

**B. The Group Disseminated the Artwork Publicly and Non-Exclusively**

**1. Visual works were included in Rkkody's archives and distributed widely**

Rkkody's dissemination included: images incorporated into CD materials, artwork embedded in Book reproductions, graphic elements used on public sites. *(Ex. 22; Havel Decl. ¶¶ 8–12).* He mailed these materials to numerous individuals, including Havel.

**2. Visual works disseminated in Jhnody's full digital archive**

Exhibit 25 shows that dozens of visual files passed through the Group's digitization and were part of the materials Jhnody provided to Havel. *(Ex. 25; Havel Decl. ¶¶ 13–14).* These distributions contradict Plaintiffs' claim of exclusive control.

**3. Much visual content has been openly available on the Group's website for 27+ years**

The Group's original site included: stylized logos, diagrams, Book illustrations. These were left deliberately accessible to the public. *(Havel Decl. ¶¶ 8–14, 26–27).* Public dissemination is inconsistent with exclusivity.

**C. Plaintiffs Provide No Valid Copyright Registrations for the Visual Works**

**1. No visual-work registration has been produced**

Plaintiffs did not produce: a registration certificate for any artwork, any deposit copy for any illustration, any authorship statement, any claimant identification.

**2. The only known pre-1999 artwork copyright belongs to a Group member, not Plaintiffs**

Exhibit 26 shows a **registered 1982 copyright** owned by "Olliver Odinwood," not by TELAH or any King family member. *(Ex. 26; Havel Decl. ¶ 29).* Plaintiffs have no claim to this work.

**3. Plaintiffs' chain-of-title theory again fails**

As with Counts I–III, neither the probate materials, *(Ex. 6; Havel Decl. ¶¶ 30–31),* the Supplemental Brief, *(Ex. 4; Havel Decl. ¶ 31),* the Schall settlement, *(Ex. 7; Havel Decl. ¶¶ 32–33)* nor the Breyer Consent Decree *(Ex. 28; Havel Decl. ¶ 34)* contain any assignment or determination of specific copyright ownership. Plaintiffs' argument that "everything once owned by the Group now belongs to TELAH" is legally incorrect and factually unsupported.

**D. Plaintiffs Fail to Identify Any Visual Work Allegedly Infringed by Havel**

The Motion for Summary Judgment does not identify a single visual file, provide any URL, cite any post, include any screenshot comparison, or provide any forensic evidence. There is **no evidence** that Havel copied, displayed, posted, or distributed *any* image truly owned by Plaintiffs. See *Celotex*, 477 U.S. at 323 (absent evidence of an infringing act, summary judgment must be denied).

**E. Authenticity Problems: Plaintiffs' Visual Copies Do Not Match Group Originals**

Many images Plaintiffs rely upon appear with different formatting, reflect different cropping or resolutions, do not match the versions distributed by Group members, appear edited or re-created. *(Havel Decl. ¶¶ 28–29; Ex. 22; Ex. 25).* Exhibit 27's metadata comparison identifies discrepancies in how Plaintiffs' materials differ materially from original Group archives. These factual conflicts independently preclude summary judgment.

### F. Numerous Genuine Disputes Prevent Summary Judgment on Count IV

Disputes include: who authored the visual works, whether any rights were transferred, whether Plaintiffs own any copyrights, the existence or absence of registrations, authenticity of Plaintiffs' copies, Group dissemination through Rkkody and Jhnody, public availability through the Group's website, discrepancies shown by Exhibit 26 and Exhibit 27. *(Havel Decl. ¶¶ 1–36; Exs. 4, 6, 7, 22, 25, 26, 27).* These issues defeat summary judgment.

## XI. COUNT V — TRADEMARK CLAIMS (HEAVEN'S GATE MARKS)

### A. Plaintiffs Cannot Prove Ownership of Any Trademark Under the Lanham Act

To win summary judgment on trademark claims, Plaintiffs must establish: **Ownership** of a valid mark, **Use in commerce, That Havel used the mark**, and **A likelihood of confusion.** Plaintiffs fail on all four elements. **1. Plaintiffs cannot establish ownership -** Plaintiffs' asserted trademark rights come from: probate correspondence, the Schall settlement, and the Breyer Consent Decree. None of these documents convey **any trademark** rights.

### Probate Documents (Ex. 6)

The Public Administrator expressly stated: the estate did *not* evaluate any intellectual property, the estate made *no findings* of ownership, the estate merely transferred *physical objects*, not IP. *(Ex. 6 at 13–17; Havel Decl. ¶¶ 30–31).*

This directly contradicts Plaintiffs' claim.

### Supplemental Probate Brief (Ex. 4)

The Administrator explained that: the Group did not operate any business entity, the Group did not register any trademarks, no assignment of trademarks existed, no judicial determination of trademark ownership was made. *(Ex. 4; Havel Decl. ¶ 31).*

**Schall Settlement (Ex. 7)** - This settlement resolved disputes over access to physical property; it did **not** assign trademark rights. *(Havel Decl. ¶ 32; Ex. 7).*

**Breyer Consent Decree (Ex. 28).** The Consent Decree merely required TELAH to correct the CD labels, remove "rkkody.com," disseminate the corrected CDs. It did **not** convey or adjudicate trademark ownership. *(Havel Decl. ¶ 34).* Thus all three sources Plaintiffs rely on show the **opposite** of trademark ownership.

### B. The Group Never Established a Trademark and Never Used the Name in Commerce

**1. "Heaven's Gate" was not used as a commercial source identifier** - The Group did not sell products in that name, did not offer services in commerce in that name, did not operate a business entity with that name, did not brand goods for sale in that name. *(Havel Decl. ¶¶ 1–14, 26–27).* A trademark requires a mark used **in commerce** to identify a source. The Group intentionally avoided business identification.

**2. The Group's common-law notice (Ex. 21) is a copyright notice, not a trademark**

The notice states **"Copyright © 1996 by Total Overcomers Anonymous Monastery"**

This is a **copyright statement,** not a trademark claim and it wasn't registered. *(Ex. 21; Havel Decl. ¶ 28).* Nothing suggests the Group claimed a trademark in the name "Heaven's Gate."

**3. Plaintiffs' alleged trademark rights arise only from filings made decades later**

Plaintiffs have not produced: trademark applications from the 1990s, evidence of continuous commercial use, or any assignment instrument from the original alleged owners.

### C. Plaintiffs Have Not Shown Any Protectable Trademark Use by Havel

Plaintiffs fail to identify more than the sale of several dozen T shirts with images on them Havel had for decades, but even if Plaintiffs had valid trademarks Havel would have come to an agreement. They have no evidence of infringement. *(Havel Decl. ¶¶ 1–14, 26–36).* Havel does

not sell merchandise (and Plaintiffs wouldn't enter into a licensing arrangement before the lawsuit was filed, does not use "Heaven's Gate" to brand goods, does not run a business using the name. He is a religious historian and former member who discusses the Group, shows preserved archival materials, references the Group name in factual descriptive commentary. This is classic **nominative fair use**, not infringement. See *New Kids on the Block v. News America Pub.*, 971 F.2d 302 (9th Cir. 1992).

**D. Plaintiffs Cannot Show Likelihood of Confusion (Essential to Trademark Liability)**

To show "likelihood of confusion," Plaintiffs must prove: a valid protectable mark, commercial use by defendant, confusion among consumers. They show **none** of these.

**1. There is no commercial marketplace for "Heaven's Gate" products**

Plaintiffs sell nothing except rarely a book. Havel sells nothing. There is no market, no competition, and no consumer base.

**2. Plaintiffs cannot identify any instance of actual confusion**

No declarations, emails, screenshots, or statements show confusion.

**3. Any reference to "Heaven's Gate" by Havel is factual, descriptive use**

Scholars, historians, journalists, and former members routinely reference the Group by name. This is protected First Amendment and nominative fair use.

**E. Plaintiffs' Trademark Theories Are Also Inconsistent With Their Copyright Arguments**

Plaintiffs claim: total exclusive control based on probate rulings (which disclaimed IP), ownership under two settlements (which do not grant IP), exclusive ownership of the Group's identity, and exclusive trademark right to the name. But the Group's materials were disseminated widely by Rkkody (Ex. 22), the Book and site remain public (Ex. 21), archives were shared by Jhnody (Ex. 25), the Group intended distribution, not restriction (Havel Decl. ¶¶ 8–14), the

artistic works were copyrighted by individual members (Ex. 26), the audio metadata contradicts Plaintiffs' claims (Ex. 27). Their copyright and trademark theories contradict each other and their own evidence.

**F. At Minimum, Numerous Genuine Disputes Preclude Summary Judgment on Count V**

Disputes include: whether Plaintiffs own any trademark rights at all, whether the Group ever used "Heaven's Gate" as a trademark, whether Plaintiffs have standing, whether Havel made any trademark use, whether any consumer confusion exists, whether nominative fair use applies, inconsistencies between Plaintiffs' asserted chain of title and Probate & Settlement documents (Exs. 4, 6, 7), wide dissemination and public use (Exs. 21, 22, 25). *(Havel Decl. ¶¶ 1–36; Exs. 4, 6, 7, 21, 22, 25, 26, 27).* Summary judgment cannot be granted.

**XII. PLAINTIFFS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ON ANY ISSUE**

In addition to seeking judgment on Counts I, III, IV, and V, Plaintiffs also request **partial summary judgment** on several subsidiary issues, including:

1. **Ownership determinations,**
2. **Validity of registrations,**
3. **Standing,**
4. **Use of the materials by Defendants,**
5. **Alleged lack of authorization,**
6. **General "control" of Group materials.**

Plaintiffs fail to meet their burden on every one of these issues.

**A. Plaintiffs Cannot Obtain Partial Summary Judgment on Ownership (All Counts)**

Ownership is the central factual dispute in this case and is heavily contested.

**1. Probate documents explicitly disclaim any determination of copyright or trademark ownership**

The Public Administrator wrote that the estate made **no copyright or trademark determinations**, that the estate transferred only physical property, and that intellectual property "was not evaluated." *(Ex. 6 at 13–17; Havel Decl. ¶¶ 30–31).*

**2. Supplemental probate filings confirm no IP was adjudicated** - The Supplemental Brief (Ex. 4) explains: the Group had no business entity, no registrations existed, no assignments existed, the probate court never ruled on IP rights. *(Ex. 4; Havel Decl. ¶ 31).*

**3. The Schall Settlement did not transfer copyrights or trademarks**

It settled a dispute over possession—not ownership. *(Ex. 7; Havel Decl. ¶ 32).*

**4. The Breyer Consent Decree did not transfer IP rights** - It required removal of "rkkody.com" and dissemination of corrected CDs and distribution of the Book and Videos and; nothing more. *(Havel Decl. ¶ 34; Ex. 28).* Thus Plaintiffs lack a valid chain of title, and partial summary judgment on ownership must be denied.

**B. Plaintiffs Cannot Obtain Partial Summary Judgment on the Validity of Copyright Registrations**

Partial judgment on registration validity is improper because the record contains **massive factual disputes**, including:

**1. Defective list metadata (Exhibit 27)**

Exhibit 27 shows: List 1 contains fewer than half the tapes claimed (≈218 vs. 486), List 2 dates conflict with Group logs, durations conflict with cassette-label data, numbering conflicts with Jhnody's archive. *(Ex. 27; Havel Decl. ¶¶ 15–23).*

**2. Plaintiffs' 2023 registrations (Ex. 29) contradict their own earlier authorship claims**

The "Srrody pressed the record button so he is the author" theory contradicts: earlier work-for-hire theories, the Group's actual creative process, the registrations claiming "Total Overcomers Anonymous." *(Ex. 29; Havel Decl. ¶ 25).* Contradictory authorship claims raise factual disputes that cannot be resolved on summary judgment.

### 3. Missing deposit materials

Plaintiffs did not produce: original audio tapes, original video masters, original Book manuscripts, or consistent deposit copies. *(Havel Decl. ¶¶ 26–27, 28–29).*

This alone precludes partial summary judgment.

### C. Plaintiffs Cannot Obtain Partial Summary Judgment on Standing

Standing requires establishing ownership, and Plaintiffs **have not**: produced § 204(a) assignments, shown valid chain of title, shown any transfer from creators, shown valid copyright ownership, shown trademark ownership. Standing is therefore disputed for every count. *(Havel Decl. ¶¶ 1–36; Exs. 4, 6, 7, 21, 22, 25, 26, 27).* Partial summary judgment is improper.

### D. Plaintiffs Cannot Obtain Partial Summary Judgment on "Unauthorized Use"

Plaintiffs ask the Court to find as a matter of law that Havel's use of: audio materials, video materials, the Book, and other materials is "unauthorized." But this presumes: Plaintiffs own the works (disputed), Havel lacks authorization (disputed), Havel engaged in infringing acts (unsupported).

### 1. Plaintiffs' own evidence shows extensive authorization by the Group

The Group: disseminated materials via Rkkody (Ex. 22; Havel Decl. ¶¶ 8–12), digitized and shared materials via Jhnody (Ex. 25; Havel Decl. ¶¶ 13–14), authorized satellite broadcast of Beyond Human (Havel Decl. ¶ 27), intended public access to the Book and website (Ex. 21). These are **affirmative authorizations**—not infringements.

**2. Plaintiffs identify no specific act of infringement** - They do not identify: a URL, file hash, upload, repost, or distribution event. There is no concrete evidence of any "unauthorized use."

**E. Plaintiffs Cannot Obtain Partial Summary Judgment on the "Existence" or "Indisputability" of the Works.** Partial judgment is improper because: List 1 contains hundreds of missing or misnumbered tapes, List 2 contradicts original logs (Exhibit H) and tape labels (Ex. 25), Plaintiffs failed to produce originals, metadata conflicts exist (Ex. 27), Plaintiffs' 2023 registrations create new authorship theories (Ex. 29). These inconsistencies create multiple material disputes.

**F. Plaintiffs Cannot Obtain Partial Summary Judgment on Damages or Remedies**

Plaintiffs provide **no evidence** of actual damages, market value, lost profits, consumer confusion, licensing opportunities, or statutory damages eligibility (given pre-1978 materials and defects). Without an established infringement and ownership basis, partial summary judgment on remedies is legally impossible.

**G. Summary Judgment Cannot Be Granted Where the Entire Case Is Riddled With Material Disputes**

Across all claims—audio, video, literary, visual, and trademark—there are conflicting probate documents, contradictory settlement interpretations, missing assignments, contradictory registrations, missing deposit copies, inconsistent metadata (Ex. 27), authenticity concerns (Ex. 25), widespread historical dissemination (Ex. 22), contradictory authorship theories (Ex. 29), and no identified acts of infringement. At every level, Plaintiffs' theory collapses.

**IV. CONCLUSION**

Plaintiff has not shown the absence of genuine disputes. Multiple factual contradictions, evidentiary problems, and credibility issues require denial of summary judgment. Havel

respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment in its entirety. (See Exs. 7, 10, 11, 12, 14, 22, 31.)

Respectfully submitted,

Dated : 11-29-2025

Dated:

*Stephen Havel*

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

Pro Se Defendant

**CERTIFICATE OF SERVICE**

I certify that on this date I mailed or electronically served a true and correct copy of this Brief in Opposition on all parties of record.

Date: 11-29-2025