UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION

CASE NO. 3:22-CV-395-DRL-SJF

The Evolutionary Level Above Human Foundation,

Plaintiff

v.

Stephen Robert Havel,

Cathy Joann Weaver,

Jason Bartel

Pro Se Defendants

-FILED-

DEC 02 2025

Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## DEFENDANT HAVEL'S STATEMENT OF GENUINE DISPUTES

Defendant Stephen Robert Havel ("Havel"), appearing pro se, submits this Statement of Genuine Disputes pursuant to Fed. R. Civ. P. 56 and N.D. Ind. L.R. 56-1(b)(2). Each numbered response corresponds to Plaintiff's Statement of Material Facts (ECF 246). Except where expressly admitted in Havel's Answer (DE 20), Havel disputes each asserted fact.

**1. Statement of Fact No. 1** - Total Overcomers Anonymous / Heaven's Gate background description.

**Response:** Undisputed for purposes of this motion. This background fact is not material to the issues of ownership, chain-of-title, or alleged infringement.

**2. Statement of Fact No. 2** - Description of works created by the group.

1

**Response:** Undisputed that the group created audio, video, written, and visual works; disputed to the extent it implies Plaintiff owns all associated intellectual property. Probate and later documentation show incomplete ownership and an inconsistent archive.

**Exhibits:** 4, 6, 7, 8, 9, 12, 22.

3. **Statement of Fact No. 3** - Heaven's Gate adopted trademarks.

**Response:** Undisputed that names and symbols were used; disputed that Plaintiff has exclusive or continuous ownership of all such marks.

**Exhibits:** 4, 6, 7, 8, 9, 28, 29.

4. **Statement of Fact No. 4** - Plaintiff "acquired" all intellectual property in 1999.

**Response:** Disputed. Probate findings held the IP was vested in the estates; later agreements did not list or convey a complete audio archive.

**Exhibits:** 4, 6, 7, 8, 9, 12, 22.

5. **Statement of Fact No. 5** - Registration certificates are accurate copies.

**Response:** Disputed in part. Certificates exist, but competing registrations, conflicting tape lists, and partial archives undercut Plaintiff's claims.

**Exhibits:** 10, 11, 12, 14, 16, 17, 22, 27, 29.

6. **Statement of Fact No. 6** - Repeat of "acquired IP in 1999."

**Response:** Disputed for reasons stated in SOF 4.

**Exhibits:** 4, 6, 7, 8, 9, 12, 22.

7. **Statement of Fact No. 7** - Mark King applied for registrations.

**Response:** Undisputed that King applied; disputed that the applications or resulting registrations are accurate or complete.

**Exhibits:** 10, 11, 12, 14, 16, 17, 22, 27, 29.

8. Statement of Fact No. 8 - Plaintiff claims ownership since 1997.

Response: Disputed. Any claim arises—if at all—from later probate processes, not 1997.

Exhibits: 4, 6, 7, 8, 9, 12, 22.

9. Statement of Fact No. 9 - "Multiple court orders confirm ownership."

Response: Disputed. Orders do not list or adjudicate ownership of all specific works or 468+ tapes; probate court found gift invalid. Exhibits: 4, 6, 7, 8, 9, 12, 22, 28, 30.

10. Statement of Fact No. 10 - Death of 39 members.

Response: Undisputed for purposes of this motion.

11. Statement of Fact No. 11 - Claim that decedents conveyed "master copies of every work."

Response: Disputed. Probate court held the gift invalid; Plaintiff has never produced a complete authenticated archive. Exhibits: 4, 6, 7, 10, 11, 12, 14, 22.

12. Statement of Fact No. 12 - Appointment of public administrator.

Response: Undisputed that probate occurred; disputed as to Plaintiff's characterization of the legal effect. Exhibits: 4, 6, 7.

13. Statement of Fact No. 13 - Trial occurred over ownership.

Response: Undisputed that a trial occurred; disputed that the outcome supports Plaintiff's ownership theory. Exhibits: 4, 6, 7.

14. Statement of Fact No. 14 - Statement of Decision dated Feb. 22, 1999.

Response: Disputed in part. The Statement of Decision found the gift invalid and IP vested in the estates. Exhibits: 4, 6, 7.

15. Statement of Fact No. 15 - Foundation disagreed and appealed.

Response: Undisputed that they disagreed; disputed that this changed ownership.

Exhibits: 4, 6, 7, 8, 9.

3

**16. Statement of Fact No. 16** - Settlement agreement "conveyed all IP."

**Response:** Disputed. Agreement does not list or describe complete audio library or full archive; limited in scope. **Exhibits:** 4, 6, 7, 10, 11, 12, 14, 22.

**17. Statement of Fact No. 17** - Court approved agreement.

**Response:** Undisputed that the court approved it; disputed that approval proves ownership of all works. **Exhibits:** 4, 6, 7.

**18. Statement of Fact No. 18** - August 1999 order confirmed conveyance of "Intellectual Property."

**Response:** Disputed. Order does not identify any complete audio archive; Plaintiff's later lists are inconsistent and incomplete. **Exhibits:** 6, 7, 10, 11, 12, 14, 22, 27.

**19. Statement of Fact No. 19** - Agreement was binding on successors.

**Response:** Disputed. Boilerplate does not resolve chain-of-title issues or establish complete archive ownership. **Exhibits:** 4, 6, 7, 10, 11, 12, 14, 22.

**20. Statement of Fact No. 20** - 1999 federal consent decree.

**Response:** Disputed in part. Consent decree settled a trademark case and is not an adjudication of full copyright ownership of all works. **Exhibits:** 8, 9, 22, 28, 30.

**21. Statement of Fact No. 21** - Plaintiff "holds various registrations."

**Response:** Undisputed that documents exist; disputed that they are accurate, complete, or match actual tapes. **Exhibits:** 10, 11, 12, 14, 16, 17, 22, 27, 29.

**22. Statement of Fact No. 22** - Havel and Weaver began broadcasting audio in 2021.

**Response:** Disputed in part. Some broadcasts occurred; disputed that the works were exclusively Plaintiff's or that broadcasts were unlawful. **Exhibits:** 4, 6, 7, 8, 9, 10, 11, 12, 14, 18, 19, 22, 31.

**23. Statement of Fact No. 23** - Broadcasts on 3spm and Twitter promotion.

4

**Response:** Disputed in part. Broadcasts occurred; disputed that Plaintiff owns exclusive rights or that activity was infringing. **Exhibits:** 10, 11, 12, 14, 18, 19, 22, 31.

**24. Statement of Fact No. 24** - Screenshots of advertisements.

**Response:** Disputed in part. Screenshots exist; disputed that underlying materials were exclusively copyrighted works of Plaintiff. **Exhibits:** 18, 19, 22, 31.

**25. Statement of Fact No. 25** - List of tapes played on YouTube.

**Response:** Admitted in part as stated in Havel's Answer; disputed that these were Plaintiff's exclusive property or that broadcasts were unlawful. **Exhibits:** 10, 11, 12, 14, 18, 19, 22, 27, 31.

**26. Statement of Fact No. 26** - Plaintiff demanded Defendants stop infringing in Fall 2021.

**Response:** Disputed in part. Plaintiff sent communications, but Defendants dispute that the materials were exclusively owned by Plaintiff or that any broadcast constituted infringement, given long-standing public distribution, prior releases by former members, and unresolved ownership questions. **Exhibits:** 4, 6, 7, 8, 9, 10, 11, 12, 14, 18, 19, 22, 31.

**27. Statement of Fact No. 27** - Defendants refused Plaintiff's overtures.

**Response:** Disputed. Defendants engaged in discussions but disputed Plaintiff's ownership assertions and believed the materials had been publicly disseminated by Rkkody and others for decades. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 31.

**28. Statement of Fact No. 28** - Defendants refused to stop airing copyrighted material.

**Response:** Disputed. Defendants dispute that the materials were exclusively copyrighted to Plaintiff and deny that airing publicly available, publicly distributed tapes constitutes infringement. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 27, 31.

**29. Statement of Fact No. 29** - 3spm "increased use" of Plaintiff's copyrighted content, including certain tapes and C.B.E. image.

**Response:** Disputed. Defendants dispute Plaintiff's exclusive ownership of either the C.B.E. image or numerous audio tapes, and note the C.B.E. image and audio materials had long been publicly distributed by former members, including Rkkody, before YouTube existed.

**Exhibits:** 10, 11, 12, 14, 16, 17, 18, 19, 22, 27, 31.

**30. Statement of Fact No. 30** - Weaver posted content demonstrating "control" of the channel.

**Response:** Disputed in part. Weaver posted independent videos, but Defendants dispute that her posting proves shared legal responsibility for alleged "infringement," or that any content belonged exclusively to Plaintiff. **Exhibits:** 18, 19, 22, 31.

**31. Statement of Fact No. 31** - Defendants disseminated URLs to copyrighted recordings on Google Drive.

**Response:** Disputed. Defendants dispute that the recordings were exclusively copyrighted works of Plaintiff, given decades of prior distribution and conflicting chain-of-title evidence; further dispute that sharing publicly accessible links constitutes unlawful conduct.

**Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 27, 31.

**32. Statement of Fact No. 32** - Weaver stated there were 900+ tapes and offered to point viewers to specific ones.

**Response:** Disputed in part. Weaver acknowledged publicly available tapes but Defendants dispute that these were Plaintiff's exclusive copyrighted works, referencing decades of prior distribution by Rkkody and other former members. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22.

**33. Statement of Fact No. 33** - Bartel posted an archive of Foundation's copyrighted works online.

**Response:** Disputed. Defendants dispute Plaintiff's ownership characterization, and dispute that the posted materials were exclusively copyrighted to Plaintiff.

**Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 27.

**34. Statement of Fact No. 34** - DMCA takedown removed Bartel's archive.

**Response:** Undisputed that a DMCA request was submitted; disputed as to any implication that this validates copyright ownership claims or proves infringement.

**Exhibits:** 9, 10, 11, 12, 14, 17, 18, 19, 22.

**35. Statement of Fact No. 35** - Bartel created two more Google Drive archives.

**Response:** Disputed in part. Bartel created Google Drives, but Defendants dispute that these contained works exclusively copyrighted to Plaintiff or that their existence proves any unlawful conduct. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 31.

**36. Statement of Fact No. 36** - Bartel encouraged people to contact him for access to more materials.

**Response:** Disputed in part. Defendants dispute Plaintiff's claim that these materials were exclusively Plaintiff's copyrighted property, and dispute any implication that Bartel's communications involved infringing conduct by Havel. **Exhibits:** 10, 11, 12, 14, 17, 18, 22.

**37. Statement of Fact No. 37** - Copy of Bartel's April 18, 2022 post.

**Response:** Undisputed that the post existed; disputed that it contained exclusively Plaintiff-owned works and disputed that the content demonstrates infringing actions by Havel.

**Exhibits:** 9, 10, 11, 12, 17, 18, 19, 22.

**38. Statement of Fact No. 38** - Bartel posted tapes 1–218 with links.

7

**Response:** Disputed in part. Post existed; Defendants dispute that these tapes were exclusively Plaintiff's copyrighted works or that their posting demonstrates infringement by Havel.

**Exhibits:** 9, 10, 11, 12, 14, 17, 18, 19, 22, 27.

39. **Statement of Fact No. 39** - Bartel's admissions in his Answer.

**Response:** Undisputed that Bartel made the admissions; Defendants dispute that Bartel's actions can be imputed to Havel or establish infringement by Havel.

**Exhibits:** 9, 10, 12, 14, 17, 18, 19, 22.

40. **Statement of Fact No. 40** - Bartel said "I'm getting sued for putting tapes on file sharing sites."

**Response:** Undisputed that Bartel made the post; disputed that the underlying tapes were exclusively Plaintiff's copyrighted works. **Exhibits:** 9, 10, 12, 17, 18, 19, 22.

41. **Statement of Fact No. 41** - Bartel criticized Telah and shared more archives.

**Response:** Undisputed that the post existed; disputed that the archived materials were exclusively copyrighted works owned by Plaintiff or that this reflects conduct by Havel.

**Exhibits:** 9, 10, 11, 12, 17, 18, 19, 22.

42. **Statement of Fact No. 42** - Audio-library website linked from Bartel's posts.

**Response:** Undisputed that the link existed; disputed that the website contained exclusively Plaintiff-owned works, as former members had publicly released many recordings in the 1990s. **Exhibits:** 10, 11, 12, 14, 18, 19, 22, 27.

43. **Statement of Fact No. 43** - Plaintiff states Havel and Weaver worked with Bartel to share materials.

**Response:** Disputed. Havel denies any coordinated scheme to distribute materials unlawfully and disputes that the referenced materials were exclusively Plaintiff-owned or protected. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 31.

44. **Statement of Fact No. 44** – Havel sent Bartel a thumb drive.

**Response:** Undisputed that Havel sent Bartel a thumb drive; disputed that the recordings were exclusively owned copyrighted works of Plaintiff or that the act was unlawful. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22.

45. **Statement of Fact No. 45** – Bartel claims Havel provided him with 929 audio works.

**Response:** Disputed. Havel disputes the accuracy of the number, the completeness of the archive, and Plaintiff's ownership characterization. Plaintiff's own tape lists show conflicting numbers. **Exhibits:** 10, 11, 12, 14, 16, 17, 22, 27.

46. **Statement of Fact No. 46** – Havel "wanted Bartel to share tapes."

**Response:** Disputed. Havel's Answer speaks for itself; Defendants dispute that the referenced tapes were exclusively copyrighted works owned by Plaintiff or that sharing publicly available materials was unlawful. **Exhibits:** 10, 11, 12, 14, 17, 18, 22.

47. **Statement of Fact No. 47** – Bartel admitted receiving tapes from Havel.

**Response:** Undisputed that Bartel made the admission; disputed that the tapes were Plaintiff's exclusive copyrighted property or that their transfer constituted infringement. **Exhibits:** 10, 11, 12, 14, 17, 22.

48. **Statement of Fact No. 48** – Havel admits to playing copyrighted tapes.

**Response:** Disputed in part. Havel played audio recordings but disputes that these were exclusively copyrighted to Plaintiff and disputes that the performances were unlawful. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22, 27.

49. **Statement of Fact No. 49** - Weaver stated she participated in streams and helped make shirts.

**Response:** Undisputed that Weaver made statements; disputed as to any implication that this demonstrates infringement or that the shirts used Plaintiff's protected marks. **Exhibits:** 18, 19, 22, 31.

50. **Statement of Fact No. 50** - Weaver confirmed she and Havel repeatedly played tapes and sold shirts.

**Response:** Disputed in part. Activities occurred; disputed that tapes were exclusively copyrighted works of Plaintiff or that occasional sale of shirts constituted trademark infringement. **Exhibits:** 18, 19, 22, 28, 29, 31.

51. **Statement of Fact No. 51** - Weaver stated she and Havel played "15 audio tapes" and sold "9 shirts."

**Response:** Undisputed that Weaver made the statement; disputed that any tapes played were exclusively copyrighted works of Plaintiff or that occasional shirt sales constituted trademark infringement. **Exhibits:** 18, 19, 22, 27, 28, 29, 31.

52. **Statement of Fact No. 52** - Weaver stated they stopped selling shirts that Plaintiff claims are trademarked/copyrighted.

**Response:** Undisputed that the statement was made; disputed that the shirts actually used any valid, enforceable, or exclusively owned trademark or copyrighted artwork. **Exhibits:** 28, 29, 31.

53. **Statement of Fact No. 53** - "The longer copyrighted audio materials are available, the less likely Plaintiff can control dissemination."

**Response:** Disputed as a legal conclusion, not a fact. Plaintiff cannot show complete chain-of-title for the archive, nor that it ever controlled all extant copies of the recordings, which were widely distributed by former members decades ago.

**Exhibits:** 10, 11, 12, 14, 16, 17, 18, 19, 22, 27, 31.

**54. Statement of Fact No. 54** - "Defendants do not appear to have any intention of ceasing violations."

**Response:** Disputed as an argumentative characterization, not a statement of fact. Defendants deny infringement and dispute Plaintiff's ownership, chain-of-title, and registration claims.

**Exhibits:** 4, 6, 7, 8, 10, 11, 12, 14, 17, 22.

**55. Statement of Fact No. 55** - Quote from Nov. 3, 2021 livestream in which Havel and Weaver stated they would not stop distribution.

**Response:** Undisputed that the recording exists; disputed that any distribution involved exclusively Plaintiff-owned works or that such activity constituted infringement.

**Exhibits:** 10, 11, 12, 14, 17, 18, 22, 31.

**56. Statement of Fact No. 56** - Weaver allegedly advised viewers to "lie" about destroying unauthorized copies.

**Response:** Undisputed the clip existed; disputed that: (a) it referred to exclusively Plaintiff-owned works; (b) any underlying conduct was unlawful; or (c) Weaver's statements reflect Havel's intent or actions. **Exhibits:** 10, 11, 12, 14, 17, 18, 22.

**57. Statement of Fact No. 57** - Havel allegedly said he would create a new channel if forced to shut down.

**Response:** Undisputed the video existed; disputed that it demonstrates infringement or relates exclusively to copyrighted works owned by Plaintiff. **Exhibits:** 10, 11, 12, 18, 22.

58. **Statement of Fact No. 58** - Weaver encouraged people to email them for tapes.

**Response:** Disputed in part. Email invitations occurred; disputed that the materials referenced were exclusively copyrighted works owned by Plaintiff. Many tapes were already public via former members. **Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22.

59. **Statement of Fact No. 59** - Havel stated in a May 1, 2022 video that he and others were circulating the tapes.

**Response:** Undisputed that the recording exists; disputed that the recordings were Plaintiff's exclusive copyrighted property or that circulation was unlawful.

**Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22.

60. **Statement of Fact No. 60** - Bartel said "We made copies… put them on CD-ROMs… I still give away these CDs."

**Response:** Undisputed that Bartel made statements; disputed that the CDs contained exclusively Plaintiff-owned copyrighted works or that Bartel's conduct is attributable to Havel.

**Exhibits:** 10, 11, 12, 14, 17, 18, 19, 22.

61. **Statement of Fact No. 61** - Havel said "maybe we'll lose… but that won't stop me… Bartel… Weaver from telling the truth."

**Response:** Undisputed that the recording exists; disputed that the statements concerned exclusively Plaintiff-owned copyrighted works or any unlawful activity. **Exhibits:** 18, 19, 22, 31.

62. **Statement of Fact No. 62** - Additional October 7, 2022 stream quotes between Havel and Weaver.

**Response:** Undisputed that statements were made; disputed that they demonstrate infringement or relate exclusively to copyrighted works Plaintiff owns. **Exhibits:** 18, 19, 22, 31.

63. **Statement of Fact No. 63** - Bartel posted "New Link for the audio tapes" on Oct. 7, 2022.

**Response:** Undisputed that Bartel posted; disputed that the linked tapes were exclusively copyrighted works owned by Plaintiff or that the posting had any connection to Havel's conduct. **Exhibits:** 9, 10, 11, 12, 14, 17, 18, 19, 22, 31.

**64. Statement of Fact No. 64** - Linked website stated tapes were obtained from "an ex-member who goes by crlody."

**Response:** Undisputed that the website stated this; disputed that the referenced tapes were exclusively owned by Plaintiff, and undisputed that former member Rkkody publicly distributed hundreds of tapes in 1997–1998. **Exhibits:** 17, 18, 19, 22, 31.

**65. Statement of Fact No. 65** - Bartel stated "To hell with going dark" while sharing materials.

**Response:** Undisputed that Bartel posted this; disputed that the underlying materials were Plaintiff's exclusive copyrighted property or that Bartel's posts show wrongdoing by Havel. **Exhibits:** 9, 10, 11, 12, 17, 18, 19, 22.

**66. Statement of Fact No. 66** - Weaver said Plaintiff "instigated this again because we sold nine shirts and played less than 13 audios."

**Response:** Undisputed that the quote exists; disputed that playing audio or selling a small number of shirts involved exclusively Plaintiff-owned works or constituted infringement. **Exhibits:** 18, 19, 22, 29, 31.

**67. Statement of Fact No. 67** - Bartel posted a blog titled "What [Plaintiff's Directors] don't want others to hear…"

**Response:** Undisputed the post existed; disputed that the materials linked were exclusively copyrighted works owned by Plaintiff. **Exhibits:** 9, 10, 11, 12, 17, 18, 19, 22.

**68. Statement of Fact No. 68** - Repeat of Mr. Bartel's November 28 post.

13

**Response:** Same as SOF 67: undisputed the post existed; disputed that the materials were Plaintiff's exclusive property. **Exhibits:** 9, 10, 11, 12, 17, 18, 19, 22.

**69. Statement of Fact No. 69** - Bartel thanked those who disseminated tapes and "stood up to" Plaintiff.

**Response:** Undisputed Bartel posted; disputed that the referenced "tapes" were exclusively copyrighted works owned by Plaintiff or that Bartel's acts reflect Havel's conduct. **Exhibits:** 9, 10, 11, 12, 17, 18, 19, 22.

**70. Statement of Fact No. 70** - Havel said he and Weaver would not "go away" if their channel was taken down, and mentioned Telegram or Rumble.

**Response:** Undisputed the statements exist; disputed that they relate to sharing exclusively Plaintiff-owned works or that they show unlawful conduct. **Exhibits:** 10, 11, 12, 18, 22, 31.

**71. Statement of Fact No. 71** - Havel expressed "commitment" to livestreams and "sharing information."

**Response:** Undisputed the quote exists; disputed that the "information" referred solely or primarily to copyrighted works owned by Plaintiff. **Exhibits:** 10, 11, 12, 18, 22.

**72. Statement of Fact No. 72** - Weaver wore a shirt with "Heaven's Gate" design Plaintiff claims is trademarked.

**Response:** Disputed. Plaintiff does not own all uses or design expressions incorporating the words "Heaven's Gate," and Defendants dispute that any shirt worn during the live stream infringed valid trademark rights. **Exhibits:** 28, 29, 31.

**73. Statement of Fact No. 73** - Plaintiff alleges that the lawsuit has not stopped Havel from circulating copyrighted material.

**Response:** Disputed. Havel denies circulating Plaintiff's copyrighted works and disputes Plaintiff's chain-of-title and ownership claims. **Exhibits:** 4, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18, 22.

**74. Statement of Fact No. 74** - Havel was paid to perform at a "Heaven's Gate Re-Examined" event and played "the Final Exit Video."

**Response:** Disputed. Havel disputes that "DO's Final Exit" Video is exclusively Plaintiff's property though they copyrighted it and Defendants dispute any implication of infringement. **Exhibits:** 4, 6, 7, 8, 9, 12, 17, 22.

**75. Statement of Fact No. 75** - Plaintiff claims ownership of the "Final Exit Video."

**Response:** Disputed. Plaintiff has not demonstrated a complete chain-of-title to DO's Final Exit Video, and earlier records contradict Plaintiff's sweeping ownership claims. It was made public in 1997.

**Exhibits:** 4, 6, 7, 8, 9, 12, 17, 22.

**76. Statement of Fact No. 76** - Plaintiff attaches a printout from the "Lodge of Sorrows" Instagram promoting the event and the playing of "the Final Exit Video."

**Response:** Undisputed that the printout exists; disputed that "the Final Exit Video" belongs to Plaintiff as many people received it from DO and his Crew in 1997. Anyone could play it off of Plaintiffs Vimeo Heavensgate channel so playing it doesn't constitute infringement. Plaintiff has not produced chain-of-title documents establishing exclusive ownership. Playing that tape at that event wasn't Havel's choice as it was not Havel's venue and any funds received from being a primary speaker at that event wasn't advertised as playing any of DO's or TI's tapes.

**Exhibits:** 4, 6, 7, 8, 9, 12, 17, 22.

**77. Statement of Fact No. 77** The "Heaven's Gate Re-Examined" event was livestreamed on Havel's 3spm channel.

**Response:** Undisputed that an event stream occurred; disputed that the content streamed was exclusively copyrighted property of Plaintiff or that Havel's participation was unlawful. **Exhibits:** 10, 11, 12, 17, 18, 22, 31.

**78. Statement of Fact No. 78** - The Final Exit Video was played for approximately 1.5 hours; screenshots attached.

**Response:** Undisputed that screenshots exist; disputed that the video is Plaintiff's exclusive copyrighted property or that its display constituted infringement absent proof of chain-of-title and lawful fixation.

**Exhibits:** 4, 6, 7, 8, 9, 12, 17, 22.

**79. Statement of Fact No. 79** - Havel responded in the livestream comments about doing more events.

**Response:** Undisputed that Havel made general comments about future events; disputed that comments relate to sharing copyrighted materials or support any claim of infringement.

**Exhibits:** 18, 19, 22, 31.

**80. Statement of Fact No. 80** - Weaver, under the username "cathysouthwestern," commented that another event may occur in Chicago.

**Response:** Undisputed the comment was posted; disputed that it involved copyrighted content or demonstrates infringement. **Exhibits:** 18, 19, 22, 31.

**81. Statement of Fact No. 81** - Havel commented about livestreaming at a museum with "DO's voice" from a Beyond Human tape playing in the background.

**Response:** Undisputed that a comment was posted; disputed that the referenced content was exclusively copyrighted property of Plaintiff or that any display was unlawful given long-standing public distribution by former members. **Exhibits:** 10, 11, 12, 14, 17, 18, 22, 27.

82. **Statement of Fact No. 82** - "Beyond Human" is a copyrighted work allegedly owned by Plaintiff.

**Response:** Disputed. Plaintiff has not shown a complete chain-of-title establishing exclusive ownership of all Beyond Human materials. Multiple earlier registrations, scattered distribution, missing originals, and conflicting logs undermine Plaintiff's claim.

**Exhibits:** 4, 6, 7, 8, 9, 10, 11, 12, 14, 17, 22.

83. **Statement of Fact No. 83** - Weaver stated that she and Havel "are looking at doing another one in Chicago."

**Response:** Undisputed that the statement was made; disputed that it relates to copyrighted content or infringement. **Exhibits:** 18, 19, 22, 31.

84. **Statement of Fact No. 84** - Havel and Weaver were paid for participating in the December 17, 2022 event.

**Response:** Disputed in part. Defendants do not dispute being compensated for appearing, but dispute that the event involved any unlawful use of copyrighted materials or that Plaintiff owns exclusive rights to the works referenced.

**Exhibits:** 4, 6, 7, 8, 9, 12, 17, 22.

85. **Statement of Fact No. 85** - Havel and Weaver said the December 17 event was their "first paid event."

**Response:** Undisputed that the interview exists; disputed that the event included any unlawful displays of copyrighted works, and disputed that Plaintiffs own any exclusive rights to the content streamed.

**Exhibits:** 18, 19, 22, 31.

**86. Statement of Fact No. 86** – Weaver admitted to recording chapters from the Literary Work to create an audiobook.

**Response:** Disputed in part. Weaver stated she read or recorded from the Literary Work, but Defendants dispute that the Literary Work is Plaintiff's exclusive copyrighted property or that any recording constituted infringement, given chain-of-title gaps, decades of dissemination, and the absence of proof that Plaintiff owns all versions and derivative rights.

**Exhibits:** 4, 6, 7, 8, 9, 12, 17, 22, 27.

Respectfully submitted,

Dated: 11/28/2025

*Stephen Havel* (signature)

Stephen Havel

5776 Grape Rd.

Suite 51

PMB# 121

Mishawaka, IN. 46545

Sawcat575@gmail.com

Pro Se Defendant

**CERTIFICATE OF SERVICE**

I certify that on this date I mailed or otherwise served a true and correct copy of this Statement of Genuine Disputes upon all parties of record.

Date: 11-28-2025