UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation, <br><br> Plaintiff, <br><br> v. <br><br> Stephen Robert Havel, <br> Cathy JoAnn Weaver, <br> Jason Bartel, <br><br> Defendants. | CASE NO. 3:22-CV-395-DRL-SJF |

**PLAINTIFF'S REPLY TO DEFENDANTS HAVEL AND WEAVER'S RESPONSE [DE 268 AND 270] TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation (the "Foundation" or "Plaintiff") submits this reply brief to Mr. Havel and Ms. Weaver's Responses (DE 268 and 270) to Plaintiff's motion for Summary Judgment on its claims for copyright infringement (Counts I, III, IV) and contributory infringement (Count V), and on subsidiary issues of fact related thereto. Mr. Havel and Ms. Weaver's Response Briefs were filed on December 2, 2025.[1] This reply, filed 14 days later, is timely pursuant to Local Rule 56-1(c).

---

[1] As explained in the next section, Plaintiff did not receive copies of Defendants' filings until the next day, December 3, 2025.

**I.       DEFENDANTS' OPPOSITIONS SHOULD BE DISREGARDED AS UNTIMELY**

Mr. Havel's Response Brief [DE 270] contains a signature page signed which states that Mr. Havel "certifies that" on November 29 he "mailed or electronically served a true and correct copy of this Brief in Opposition on all parties of record." [DE 270 at 23.] This statement is false. Undersigned was never served by Mr. Havel with a copy of Mr. Havel's Response Brief either electronically or via mail. Plaintiff only received Mr. Havel's filing after the clerk of the Court filed the documents in the case docket on December 3, 2025.

Mr. Havel's "Statement of Genuine Disputes" [DE 271] contains a signature page signed which states that Mr. Havel "certifies that" on November 28 (a day earlier) he "mailed or electronically served a true and correct copy of this Statement of Genuine Disputes on all parties of record." [DE 271 at 18.] This statement is false. Undersigned was never served by Mr. Havel with a copy of Mr. Havel's Statement of Genuine Disputes either electronically or via mail. Plaintiff only received Mr. Havel's filing after the clerk of the Court filed the documents in the case docket on December 3, 2025.

Ms. Weaver's Response Brief [DE 268] contains a signature page signed which states that Ms. Weaver "certifies that" on November 29 she "mailed or electronically served a true and correct copy of this Statement of Genuine Disputes [sic] on all parties of record." [DE 268 at 4.] This statement is false. The document was her opposition brief, not her "statement of genuine disputes." Further, undersigned was never served by Ms. Weaver with a copy of Ms. Weaver's Response Brief either electronically or via mail. Plaintiff only received Mr. Havel's filing after the clerk of the Court filed the documents in the case docket on December 3, 2025.

Ms. Weaver's "Statement of Genuine Disputes" [DE 269] contains a signature page signed which states that Ms. Weaver "certifies that" on November 29 she "mailed or electronically served a true and correct copy of this Statement of Genuine Disputes on all parties of record." [DE 269 at 8.] This statement is false. Undersigned was never served by Ms. Weaver with a copy of Ms. Weaver's Statement of Genuine Disputes either electronically or via mail. Plaintiff only received

2

Mr. Havel's filing after the clerk of the Court filed the documents in the case docket on December 3, 2025.

District courts are entitled to compliance with Local Rules. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir.2004) (citations omitted)). In *Raymond,* the plaintiff asked for, and received, an extension of time to respond to defendant's motion for summary judgment. *Id.* Three days before plaintiff's extended time to respond to the summary judgement was due, plaintiff asked for a second extension. *Id*. That request was denied by the Court. *Id.* Plaintiff ultimately mailed its response brief on the day it was due, causing it to arrive at the Court a day later. *Id.* The court ultimately stamped the brief as "filed" two days after that. *Id.* Finding that the brief was not filed timely, the district court ruled on the summary judgment motion on the merits and disregarded the response brief. *Id.* On appeal, the Seventh Circuit found that the filing was late and that the district court had not abused its discretion in deciding not to consider the late filing. *Id.* at 606. This finding is echoed by the Seventh Circuit in other cases. *See McNair v. Bonaventura*, 46 F. App'x 849, 851 (7th Cir. 2002); *See Jovanovic v. In–Sink–Erator Div. of Emerson Electric Co.*, 201 F.3d 894, 897 (7th Cir.2000) (no abuse of discretion in denying untimely response when party was given repeated extensions and missed deadlines); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir.1996) (same); *see also Lac du Flambeau Indians v. Stop Treaty Abuse–Wis.*, 991 F.2d 1249, 1257 (7th Cir.1993) ("[A] 'decision to disregard all materials submitted after a reasonable filing deadline is certainly not an abuse of discretion ....'" (emphasis added) (quoting *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir.1985))).

Defendants Havel and Weaver filed their responses late. The response brief was mailed on the day it was due and was not received by the Court until the next day. This is true, even though Defendants Havel and Weaver were granted an extension of time. As explained above in *Raymond*, this fact pattern clearly justifies a finding that their filings should be disregarded. This is especially true where the stated reason for requesting the original extension was to allow time

for mailing[2]—a rationale which was entirely undercut by their ultimate decision to wait to mail their responses the day they were due—guaranteeing that they would arrive after this Court's deadline. Defendants Weaver and Havel's responses should be disregarded and Plaintiff's motion for summary judgment granted.

## II.     RESPONSE TO MS. WEAVER'S AND MR. HAVEL'S OPPOSITION

### A.     Ms. Weaver's Opposition

Ms. Weaver argues that Summary Judgment should be denied for the following reasons: (1) Ownership of the "audio materials" is disputed; (2) alleged tape log issues (i.e., "whether Plaintiffs [sic] possess a complete, authenticated, and accurate tape library," and "authenticity and completeness of tape logs"); (3) "Plaintiffs [sic] fail to show volitional copying attributable to Weaver and fail to identify any protected work properly within Plaintiffs' [sic] copyright registrations."; and (4) Damages and causation. [DE 268 at 2]. Ms. Weaver additionally argues, (5) that Plaintiff's submitted evidence is inadmissible. [DE 268 at 2–3]. Finally, Ms. Weaver argues that Plaintiff's Motion ignores "facts" such as (6) "Audio tapes were distributed broadly"; (7) Plaintiff allegedly provided links to Weaver for streaming tapes; (8) Plaintiff's allegedly "contradict[ed] their claim of a complete copyright deposit"; and (9) Plaintiff's trademark/copyright rights "were unclear." [DE 268 at 3.]

Plaintiff addresses the first two arguments later, as they are also raised by Mr. Havel. With respect to her other arguments, Plaintiff responds as follows:

---

[2] *See* DE 262 and 261 (Requesting an extension because "Defendant faces logistical constraints—including limited post-holiday business hours and potential postal delays—that create a meaningful risk of an untimely filing despite diligent efforts."); DE 265 (granting requested extension due to defendants' "citing the Thanksgiving holiday and potential postal delays").

1. "Plaintiffs [sic] fail to show volitional copying attributable to Weaver and fail to identify any protected work properly within Plaintiffs' [sic] copyright registrations."

This is simply not true. As detailed in the motion for summary judgment, Ms. Weaver has *admitted* copying and making derivative works of Plaintiff's Audio Works and the Literary Work. *See* Motion (DE 245) at 17–18, 21 (citing SOF 31–32, 49–52, 86). In her response to these statements of fact, Ms. Weaver has not presented any controverting evidence or facts, despite being informed that failure to do so may result in considering the facts undisputed. [*See* DE 247 (Notice to Pro Se Litigants) at 132.] Indeed, rather than respond by presenting controverting facts, Ms. Weaver's responses merely object to the Plaintiff's "characterization" of the relevant facts. [*See* DE 269 at 4–5.] Such a response is insufficient to oppose summary judgment where the burden is on the non-movant to present evidence of material facts in dispute. [*See* DE 247 explaining that "A party asserting a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record. . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute."]. Here, there are no material facts in dispute. The facts showing copying and the creation of a derivative work are from Ms. Weaver's own pleadings and other filings in this case.

2. Damages and causation.

Ms. Weaver does not explain how "damages and causation" is a reason for this Court to not enter summary judgment as to liability, which is what Plaintiff's Motion seeks. [*See* Motion (DE 245), 1]. As this Court has already remarked, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))]. Nevertheless, to the extent Ms. Weaver is arguing that damages must be proven to succeed on a claim for copyright infringement, that is simply not the law. "The existence of damages suffered is not an essential element of a claim for copyright infringement." *Bell v. Taylor,* 791 F.3d 745, 748 (7th Cir. 2015) (*quoting Davis v. Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001)).

5

3. <u>That Plaintiff's submitted evidence is inadmissible (DE 268 at 2–3)</u>

Ms. Wever does not identify a single piece of evidence that would be inadmissible. Again, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))].

4. <u>"Audio tapes were distributed broadly"</u>

Ms. Wever does not explain how this argument impacts summary judgment. Again, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))]. Plaintiff disputes this statement—it has controlled dissemination of the tapes to the best of its ability—nevertheless, it is irrelevant to Plaintiff's Motion. Ms. Weaver continues to misunderstand the difference between physical property and intellectual property rights, despite this Court's clear Order explaining the difference. [DE 194 at 19–20]. Ownership or distribution of physical copies by a copyright owner *does not* authorize non-owners to make and distribute their own copies. As Section 202 explains:

> Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.

17 U.S.C. § 202 (*see also* DE 194 at 19). The existence of copies of audio tapes distributed by Plaintiff has no bearing on Ms. Weaver's infringement.

5. <u>Plaintiff allegedly provided links to Weaver for streaming tapes</u>

The same is true with respect to any links sent by Plaintiff to Ms. Weaver for "personal use" as she alleges. Being provided a copy of a copyrighted work—in physical or digital format—does not authorize someone to make copies and further distribute that work.

6. Plaintiff's allegedly "contradict[ed] their claim of a complete copyright deposit"

Ms. Wever does not explain—and Plaintiff does not understand—how this argument impacts summary judgment. Again, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))].

7. Plaintiff's trademark/copyright rights "were unclear."

Ms. Wever does not explain how this argument impacts summary judgment. Again, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))]. If Ms. Weaver is implying that there is an "intent" requirement for copyright infringement and liability can only be found if she knew of Plaintiff's rights, that argument is simply incorrect. Like all intellectual property infringement, copyright infringement is a strict liability offense: a defendant is liable for infringement regardless of whether he intended to infringe. *Toksvig v. Bruce Pub. Co*., 181 F.2d 664, 666 (7th Cir.1950) ( "Intention is immaterial if infringement appears.") "Copyright infringement is a strict liability offense." Design Basics, LLC v. Big C Lumber Co. Inc., No. 3:16-CV-53-HAB, 2019 WL 3285958, at *9 (N.D. Ind. July 22, 2019) (citing *Boehm v. Zimprich*, 68 F. Supp. 3d 969, 977 (W.D. Wisc. 2014)).

\* \* \*

As shown in Plaintiff's Motion, Ms. Weaver, by her own admissions, has (1) created audio copies of the Literary Work; (2) participated in broadcasting copies of the Audio Works, (3) used the Visual Work to promote her YouTube channel, and (4) has encouraged others to download copies of the Audio Works. Summary judgment is appropriate with respects to Counts I (copyright infringement of Audio Works), III (copyright infringement of Literary Work), and IV (copyright infringement of the Visual Work) with respect to Ms. Weaver.

B. **Mr. Havel's Opposition**

Mr. Havel's Opposition argues: (1) that Plaintiff is not the owner of the copyrights being asserted in this case [DE 270 at 2, 5, 8, 10, 13]; (2) that discrepancies in logs somehow preclude

7

summary judgment [DE 270 at 2–4, 6–7]; (3) that under 17 U.S.C. § 204(a) copyrights can only be transferred by writing and not by law [DE 3, 8, 11, 13, 15]; (4) that a 2023 unasserted copyright registration is somehow relevant to this case; (5) that the group or "Rkkody" or "Jhnody" authorized distribution [DE 270 at 5, 7, 9, 12, 14]; (6) that there is a lack of any evidence of any infringing act by Mr. Havel [DE 270 at 7, 10, 13, 15]; (7) that Mr. Havel's appearance in a video "establishes a dispute as to authorship" [DE 270 at 8]; and (8) that Plaintiff's registrations are defective and, thus, the copyrights unenforceable [DE 270 at 9–10, 12].[3]  As explained below, none of these arguments are availing.

1. Evidence of Ownership is Unrebutted

Mr. Havel's Opposition largely continues in the same vein as Mr. Bartel's earlier Opposition (DE 260-1 at ECF p. 22–25), arguing that Platiniff is not the true owner of the intellectual property being asserted in this case.  [*See* DE 270 at 2–3.]  This argument is being made **without any controverting or admissible evidence establishing that Plaintiff is not the owner.**  Indeed, all of the evidence that would be presented at trial firmly establishes that Plaintiff is the owner of the copyrights in the IP at issue in this case.

There appears to be no dispute that true and correct copies of the registrations for the copyrights of the Audio Works[4], Video Works[5], Visual Work[6], and Literary Work[7], which were

---

[3] On pages 16–19 of his brief, Mr. Havel also opposes summary judgment on Plaintiff's trademark claims; however, Plaintiff has not moved for summary judgment on those claims.
[4] "The Audiotape Library of Heaven's Gate by Ti and Do," Copyright Registration No. SRu 298-530 (Exhibit 1 to Plaintiff's Motion for Summary Judgment).
[5] "Beyond Human – The Last Call," Copyright Registration No. PA667224 (Exhibit 2 to Plaintiff's Motion for Summary Judgment).
[6] "The C. B. E. (Celestial Being Entity)," Copyright Registration No. VA877834 (Exhibit 3 to Plaintiff's Motion for Summary Judgment).  Mr. Havel also argues that Plaintiff has failed to identify what visual work is being asserted [DE 270 at 14], but this information and the relevant copyright registration is clear in both the original Complaint and in the First Amended Complaint.
[7] "How and When 'Heaven's Gate' (The Door to the Physical Kingdom Level Above Human) May be Entered – An Anthology of Our Materials," Copyright Registration No. TXu817732 (Exhibit 4 to Plaintiff's Motion for Summary Judgment).

8

signed by and filed by Plaintiff's Director, Mark King, and were attached to the Motion for Summary Judgment as Exhibits 1–4. [*See* SOF (ECF 245) at No. 5; Response to SOF (DE 271) at No. 5 (undisputed)]. Mr. Havel likewise does not dispute, as it is the law, that this "constitutes prima facie evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)); *ABRO Indus., Inc. v. 1 NEW Trade, Inc.*, No. 3:14-CV-1984-TLS, 2017 WL 4954698, at *4 (N.D. Ind. Oct. 30, 2017).

Even, *arguendo*, setting aside the existence of the copyright registrations, the evidence is overwhelming that Plaintiff is the owner, by operation of law, of all intellectual property—such as the Audio Works, Video Works, Visual Work, and Literary Work—that belonged originally to the Group. As has been explained exhaustively, and as recited in this Court's previous order, the probate proceeding ended in a consent decree which made clear that Plaintiff was the owner of the intellectual property. As stated in response to Mr. Bartel and now in response to Mr. Havel,

> [Defendants'] arguments appear to simply ignore the history. . . . Plaintiff believed (and continues to believe) it obtained rights to all of the intellectual property of the decedents via the execution of "powers of attorneys provided and a clear intent to convey the property." [DE 81-1 (Decl. of Mark King) at 2-4 and Exhibits 1 and 2]. The probate court judge disagreed and Plaintiff appealed. *Id.* at ¶ 12. Plaintiff settled with the Public Administrator while the case was on appeal, and the probate court confirmed the settlement agreement and confirmed the conveyance of intellectual property to Plaintiff. *Id.*

[DE 243 at 18–19]. Further, like Mr. Bartel, Mr. Havel appears to want to "re-litigate an issue that has been resolved for both a-year-and-a-half and over 25 years. . . . this exact issue [was raised] two years ago, and this Court directly considered this argument. In its Order this Court stated:

> [A]s contended by Defendants here, the California Court's decision provides that the Group's estates—not Plaintiff—had ownership over the Group's intellectual property rights. Though this decision mirrors the arguments made by Defendants here, their reliance on this decision is surprising, as both Plaintiff *and* the Defendants have presented the Court with an Order Approving Settlement Agreement entered by the California Court approximately six months later, on August 11, 1999, after Plaintiff appealed the February decision. [*See* DE 63-1 at 13-24; DE 81-1 at 7-16, *in re Estates of John Michael Craig, et al.*, No. PN022228 (Cal. Super. Ct.

9

> Aug. 11, 1999)]. This order shows that Plaintiff and the Public Administrator subsequently reached an agreement regarding the disposition of the Group's intellectual property:
>
>> *Don Billings, Public Administrator . . . hereby agrees to transfer and convey to the [Plaintiff] by through and Mark King and Sarah King all right, title, and possession, of the following property, including any intellectual property rights . . .. [T]he [Plaintiff] promises to safeguard, archive and control these items thereby agreeing not to sell them.*
>
> [DE 63-1 at 17; DE 81-1 at 22]. The agreement also provides that "[t]he parties agree that this Agreement shall be binding on all the successors, heirs, administrators, assigns of each of the parties and the beneficiaries of their respective estates." [*Id.*]. The Court then approved the agreement "as to its form and content" and held that "the Parties may execute its terms forthwith." [DE 63-1 at 24; DE 81-1 at 29].
>
> Thus, despite what Defendants contend, evidence presented by both parties demonstrates that the Group's intellectual property rights were transferred to Plaintiff by operation of law, through the Public Administrator's voluntary transfer of intellectual property rights to Plaintiff as part of a settlement agreement approved by the California Court. *See Taylor Corp.*, 403 F.3d at 964 (holding that a bankruptcy court order approving an asset purchase agreement transferring intellectual property rights constituted transfer by operation of law).

[DE 194 at 17–18; *see also* DE 243 at 19–20]

> As this Court has already correctly held and as detailed in Mr. King's Declaration [DE 81-1], the issue of whether the Group transferred property to Plaintiff was squarely before the probate court and raised in the creditor's claim filed by Plaintiff. Regardless of the nuances of the initial ruling and the appeal and the settlement (which are explained in more detail in Plaintiff's Reply in Support of Its Preliminary Injunction [DE 87]), the result of the probate proceeding was a settlement agreement whereby Plaintiff was deemed the owner by conveyance of all the "intellectual property" belonging to the Group.

[DE 243 at 19–20].

Mr. Bartel's attempt to re-litigate ownership of the Group's intellectual property is entirely inappropriate. The probate proceeding was the final word on ownership of all property belonging to the Group.

        2.      <u>That discrepancies in logs are somehow material [DE 270 at 2–4, 6–7]</u>

Mr. Havel next argues that discrepancies between logs of the audio tapes produced in this case and those created by third parties somehow creates a genuine dispute of material fact. Mr. Havel never explains how or why that is material to this case. All that is relevant is that Mr. Havel played the following tapes on his YouTube channel: 149, 263, 4, 30, 161, 156, 11, 54, 52, 50, 200, 201, 202, 203, and 204 (SOF 25) and that he has admitted to playing those tapes. SOF 47; *see* [DE 20 at 18, ¶ 40]. Mr. Havel has not explained **at all** how any alleged discrepancy between logs of the audio tapes is material to the issue before this Court on summary judgment. As this Court has already remarked, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))].

        3.      <u>That under 17 U.S.C. § 204(a) copyrights can only be transferred by writing and not by law [DE 270 at 3, 8, 11, 13, 15]</u>

Mr. Bartel next argues that since there was no "written" transfer, Plaintiff cannot own the copyrights at issue. Again, this is an argument that this Court has already considered and ***rejected:***

> Copyright ownership can be transferred "in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d). Courts have found that, except for a transfer by operation of law: "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003). The Copyright Act does not define transfers by operation of law. But courts have found that such transfers occur in circumstances such as "transfers by bequest, bankruptcy, mortgage foreclosures, and the like." *Taylor Corp. v. Four Seasons Greetings*, LLC, 403 F.3d 958, 963 (8th Cir. 2005) (citing *Brooks v. Bates,* 781 F. Supp. 202, 205 (S.D.N.Y.1991)); *see also Software For Moving, Inc. v. La Rosa Del Monte Exp., Inc.*, No. 07 C 1839, 2007 WL 4365363, at *3 (N.D. Ill. Dec. 7, 2007) (relying on the court's analysis in *Brooks*). To determine whether a copyright was transferred by operation of law, courts look to "whether the author of the transfer provided express or implied consent to such change of ownership." *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 41 (1st Cir. 2012).

* * *

11

> Thus, despite what Defendants contend, evidence presented by both parties demonstrates that the Group's intellectual property rights were transferred to Plaintiff by operation of law, through the Public Administrator's voluntary transfer of intellectual property rights to Plaintiff as part of a settlement agreement approved by the California Court.

[DE 194 at 15–18]. In short, copyright ownership may be transferred by Court order and Mr. Havel's reliance on Section 204 of the Copyright Act for support that Plaintiff is not the owner of the intellectual property must fail.

> 4. That a 2023 unasserted copyright registration is somehow relevant to this case [DE 270 at 6–7]

Mr. Havel also argues that a 2023 copyright registration, filed after this case was instituted and not part of the copyrights alleged in this case, somehow has some bearing on the summary judgment motion before the Court. [DE 270 at 6–7]. Other than stating that the author of those tapes is different than the author of the tapes at issue in this case, Mr. Bartel does not make any reasoned argument. It is not at all clear how having different tapes with a different author would have any relevance to the issues before the Court on summary judgment. As this Court has already remarked, "[j]udges are not like pigs, hunting for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))].

> 5. That the group or "Rkkody" or "Jhnody" authorized distribution [DE 270 at 5, 7, 9, 12, 14].

A large portion of Mr. Bartel's brief is dedicated to arguments that because other people circulated copies of the intellectual property at issue in this case, he also is free to do the same. *E.g.,* DE 270 at 7 ("Multiple former members disseminated the audio library with the Group's permission"); *id.* ("Rkkody mailed complete CD sets to many individuals"); *id.* ("Jhnody provided a full digital archive in 2021"). That is simply not true and not supported by the law and, indeed, Mr. Havel has cited no law supporting these arguments. To the contrary, Mr. Havel is well aware that the owner of the intellectual property for the past 25 years, Plaintiff, has **not** authorized his distribution of these materials by Mr. Havel. Mr. Havel's subjective belief of what the "group"

may or may not have wanted is irrelevant 25-years later to the owner of the intellectual property at issue. The same is true with respect to Mr. Havel's argument that because a video tape was broadcast in 1993 over Hughes satellite it is now in the public domain. [DE 270 at 9.] That simply is unsupported by any law and, if it were true, Walt Disney would cease to exist.

      6.     <u>Lack of any evidence of any infringing act by Mr. Havel [DE 270 at 7, 10, 13, 15]</u>.

Mr. Havel copies and pastes throughout his brief sections stating that Plaintiff has not identified any infringing act by Mr. Havel. For example, he argues that "Plaintiffs identify no specific audio file they claim Havel copied, distributed, adapted, or otherwise used without authorization." [DE 270 at 7]. This is simply not true. The Complaint, First Amended Complaint, and Motion for Summary Judgement all list the exact audio tapes he played and when he played them. *See* SOF 25 (identifying tapes 149, 263, 4, 30, 161, 156, 11, 54, 52, 50, 200, 201, 202, 203, and 204 and the dates on which they were played). Indeed, Mr. Bartel, in response to Statements of Fact 25 and 48 (as well as in his pleading), admits to having played those tapes. Plaintiff has detailed exactly "what was infringed and how."

      7.     <u>Mr. Havel's appearance in a video "establishes a dispute as to authorship" [DE 270 at 8]</u>

Mr. Havel admits that the Video Works like the Beyond Human series were "created by the Group". [DE 270 at 8.] Mr. Havel then argues that because there is no written assignment from "speakers. . ., performers (including Havel), the camera operators, video editors, or any member of the production crew," then no rights to the intellectual property have been transferred to Plaintiff. Again, Mr. Havel cites no law supporting this claim. Nor does he present any law supporting the claim that a person appearing in a video becomes a creator of that video. Mr. Havel appears to want this Court to piece together a cogent argument for him. This Court should decline the invitation. The intellectual property rights of the group were transferred 25 years ago by court order and operation of law. As this Court has already remarked, "[j]udges are not like pigs, hunting

13

for truffles buried in briefs." [DE 194 at 40 (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))].

> 8. That Plaintiff's registrations are defective and, thus, the copyrights unenforceable [DE 270 at 9–10, 12].

Finally, Mr. Havel makes numerous arguments arguing that there are procedural defects or errors in the copyright registrations. For example, he states "Plaintiffs' [sic] failure to identify all contributors is fatal" citing pages 615–616 of *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610 (7th Cir. 2014). [DE 270 at 9]. That section of *Chicago Bldg. Design*, however, does not stand for that proposition at all. On pages 615 and 616 of its opinion (and indeed throughout the entirety of the opinion), the Seventh Circuit discusses the concept of "inquiry notice" as it relates to "actual or constructive discovery" and whether a copyright infringement claim is within the statute of limitations. *Id.* This cited case simply says nothing that could in any way support the argument that "incomplete authorship information undermines validity" as Mr. Havel claims. Mr. Havel goes on to claim, again without citation to any supporting law, that the "Copyright Office deposit requirements" were somehow violated because "production logs," "original masters," "original edits," and "documentation of who filmed or edited the work" was not provided. There is no statute or case law that requires the submission of such materials at the copyright office and Mr. Havel has failed to explain or cite a single case that supports his argument that these things somehow make Plaintiff's registrations "defective."

Furthermore, to the extent there are any inconsistencies or inaccuracies in Plaintiff's registrations, the Copyright Act has an explicit safe harbor provision: 17 U.S.C. § 411(b). That Section makes clear that even if there is inaccurate information in the certificate, it does not undermine the legitimacy of the copyright registration. This has been upheld by the Supreme Court in *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 186 (2022). In *Unicolors*, the Court made clear that neither mistakes of law or fact on registration certificates invalidated

copyrights unless the mistakes were included "with knowledge that [they were] inaccurate" *Id.* at 187 (citing 17 U.S.C. § 411(b)). Here there is no, and can be no, such showing.

### III. CONCLUSION

As shown in Plaintiff's Motion, Ms. Weaver, by her own admissions, has (1) created audio copies of the Literary Work; (2) participated in broadcasting copies of the Audio Works, (3) used the Visual Work to promote her YouTube channel, and (4) has encouraged others to download copies of the Audio Works. Summary judgment is appropriate with respects to Counts I (copyright infringement of Audio Works), III (copyright infringement of Literary Work), and IV (copyright infringement of the Visual Work) with respect to Ms. Weaver.

As shown in Plaintiff's Motion, Mr. Havel, by his own admissions, has (1) participated in broadcasting copies of the Audio Works, (2) used the Visual Work to promote his YouTube channel, (3) has encouraged others to download copies of the Audio Works, and (4) coordinated with Defendant Bartel to upload Plaintiff's copyrighted material to the internet for free download. Summary judgment is appropriate with respects to Counts I (copyright infringement of Audio Works), IV (copyright infringement of the Visual Work), and V (contributory infringement) with respect to Mr. Havel.

RESPECTFULLY SUBMITTED this 16th day of December 2025.

    /s/ Isaac S. Crum
MESSNER REEVES LLP
Isaac S. Crum (Pro Hac Vice)
icrum@messner.com
7250 N. 16th Street, Suite 410
Phoenix, Arizona 85020
Telephone: (602) 641-6705
Facsimile: (303) 623-0552

## CERTIFICATE OF SERVICE

     I hereby certify that on the 16th day of December 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing was also sent via U.S. mail and email to the following:

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4019 Forest Drive
Hancock, WI 54943
jason_bartel@unioncab.com

                                                                        /s/ Isaac S. Crum