UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION D/B/A THE TELAH FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN ROBERT HAVEL, CATHY JOANN WEAVER, AND JASON BARTEL,<br><br>Defendants. | CAUSE NO. 3:22cv395 DRL-SJF |

OPINION AND ORDER

The Evolutionary Level Above Human Foundation (TELAH) sued *pro se* defendants Stephen Havel, Jason Bartel, and Cathy Joann Weaver, alleging they infringed on copyrights and trademarks held by TELAH. This opinion addresses several pending motions.

SUMMARY JUDGMENT

A dispositive motion sometimes winnows the work of other motions, so the court begins here. On October 2, 2025, Mr. Bartel filed for summary judgment, limited to TELAH's claims against him. On October 31, 2025, TELAH requested partial summary judgment on some of its claims against all defendants. The court denies Mr. Bartel's summary judgment motion and grants TELAH summary judgment on certain claims.

A. *Background.*

A summary judgment record matters. The three respective responses to TELAH's statement of undisputed material facts fail to comply with Local Rule 56-1. Each defendant was provided with a notice consistent with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), and

provided a copy of this local rule. Each defendant was required to respond to TELAH's facts with correspondingly numbered responses and citations to evidence supporting each dispute; the rule further provides that the court may find a fact unsupported when the citation lacks a page or paragraph number. N.D. Ind. L.R. 56-1(b)(2), (b)(3), (e).

Ms. Weaver's response groups responses by ranges of facts; offers narrative disputes; and often cites no evidence at all. Many of Mr. Havel's responses cite only long exhibit lists—such as "Exhibits: 4, 6, 7, 8, 9, 12, 22"—without page or paragraph citations, a problem compounded because all his exhibits were filed together as one long document. Mr. Bartel's filing blends factual assertions with legal argument. The court thus treats TELAH's properly supported facts as undisputed where they have not been properly controverted. *Cady v. Sheahan*, 467 F.3d 1057, 1060-61 (7th Cir. 2006) (affirming use of movant's facts where a *pro se* litigant's submission failed to cite the record adequately and was filled with irrelevant information, legal arguments, and conjecture); *1st Source Bank v. Vill. of Stevensville*, 947 F. Supp.2d 934, 937 (N.D. Ind. 2013) ("The purpose of Rule 56-1 is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments.").

From there, the summary judgment record establishes the following facts, as viewed in the light most favorable to the defendants. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 710 (7th Cir. 2017). Total Overcomers Anonymous, also known as TOA or Heaven's Gate, was a group that gained notoriety in 1997 when a majority of its members (39 members) died by suicide in conjunction with the approach of the Hale-Bopp comet [246-5 ¶ 5]. Throughout the 1980s and 1990s, the group created a number of works, including a series of audio tapes; certain video works; a literary work entitled "How and when 'Heaven's Gate' (the door to the physical kingdom

level above human) may be entered: an anthology of our materials;" and a visual work called "The C.B.E." [*id.* ¶ 6].

The record identifies the copyrighted works at issue. The audio works were registered as "The Audiotape Library of Heaven's Gate by Ti and Do," Copyright Registration No. SRu 298-530 [246-1]. TELAH also identifies registration for the video works, "Beyond Human—The Last Call," Copyright Registration No. PA667224 [246-2]; the visual work, "The C.B.E. (Celestial Being Entity)," Copyright Registration No. VA877834 [246-3]; and the literary work, "How and When 'Heaven's Gate' (the door to the physical kingdom level above human) may be entered—an anthology of our materials," Copyright Registration No. TXu817732 [246-4].

The ownership history centers on California probate proceedings after the deaths of the Heaven's Gate members. According to Mark King, TELAH's president and director, before the members passed, many sent to him and his wife (Sarah King, another TELAH director) powers of attorney, codes to storage units, maps, and the intellectual property of Heaven's Gate [81-1 at 2-3]. Probate proceedings began for the decedents, and the court appointed a public representative to administer "Summary Probate Proceedings" as provided under California law [*id.* 2]. TELAH then filed a creditor's claim in connection with the probate proceedings [227-1 at 19], and a three-day trial ensued over the ownership of certain intellectual property, including the property at issue here [*see* 246-6 Exhibit 1].

On February 22, 1999, the probate court held that no gift of the intellectual property had been made by the decedents [*id.* 17]. TELAH appealed that decision; and, while the appeal was pending, TELAH and the public administrator reached an agreement that conveyed to TELAH all the intellectual property rights [*id.* Exhibit 2]. The presiding judge approved the settlement

agreement on August 11, 1999 [*id.* 30]. The settlement agreement stated that it would bind the successors, heirs, administrators, and assigns of each of the parties and beneficiaries of the respective estates [*id.* 23]. And in July 1999, the United States District Court for the Northern District of California entered a consent decree in a trademark dispute case stating that TELAH has "exclusive rights and responsibility for ownership and management of the intellectual property of The Class/the Heaven's Gate group (including the numerous other names used by the group), including copyrights and trademarks to books, videotapes, audiotapes, CD's websites, letters, other documents, names, and symbols." [*id.* Exhibit 3].

In his summary judgment response, Mr. Havel doesn't dispute that probate occurred, that a trial occurred over ownership, that the probate court issued a February 22, 1999 statement of decision, that TELAH disagreed and appealed, or that the California court later approved a settlement. He instead asserts that the outcome of that proceeding doesn't support TELAH's theory. Ms. Weaver's response says that the probate and settlement documents don't identify or inventory the audio tapes, TELAH's logs show missing or unavailable tapes, TELAH never produced a complete master-copy list, and that the registrations are broad "group" registrations. Mr. Bartel's response asserts that TELAH wasn't a party to any of the underlying litigation regarding ownership of the intellectual property.

The parties also dispute the completeness and consistency of the audio archive. Mr. Havel says that TELAH's records are incomplete and unreliable, and Ms. Weaver similarly asserts that TELAH's logs show gaps, missing tapes, and discrepancies inconsistent with a complete copyright deposit, though it is unclear how this bears on infringement liability.

The record concerning the defendants' alleged infringement is more concrete. In September 2021, Mr. Havel and Ms. Weaver began broadcasting the audio works from TELAH's copyrighted material on their YouTube channel [246-5 ¶ 10-11]. TELAH identifies tapes 149, 263, 4, 30, 161, 156, 11, 54, 52, 50, 200, 201, 202, 203, and 204 as tapes Mr. Havel and Ms. Weaver played on Mr. Havel's YouTube channel between November 2021 and April 2022 [132 ¶ 51]. Mr. Havel admitted that he "played audio tapes over the years" on his YouTube channel but claims he did not know they were copyrighted. Ms. Weaver also doesn't dispute that she participated in certain livestream discussions in 2021-2022. Both, though, continue to contest TELAH's ownership of this intellectual property.

When these public performances began, TELAH attempted to resolve the matter amicably, but Mr. Havel and Ms. Weaver declined to stop airing YouTube videos incorporating TELAH's copyrighted material [246-5 ¶ 13-15]. Through the YouTube channel, Mr. Havel and Ms. Weaver played copies of numerous audio tapes, used the copyrighted C.B.E. image (the visual work), and also disseminated the URLs of copyrighted recordings that were impermissibly uploaded to Google Drive and made available by the defendants [*id.* ¶ 16-17]. In fact, Mr. King stated in an affidavit that in one video, Ms. Weaver stated that "there's several tapes, there are over 900-plus tapes available, audios, which we've been playing on the channel if you email us we can give you a link to the Google Drive and point out specific tapes" [*id.* ¶ 18]. Ms. Weaver also admitted in a letter written to TELAH's counsel that she and Mr. Havel (who is also referred to at times as "Sawyer") played the audio works and also sold t-shirts using a trademarked logo [35-1 at 24]. She also encouraged people to email her and Mr. Havel to receive copies of the audio works [246-5 ¶ 35].

Mr. Havel admitted in his answer to the original complaint that he gave Mr. Bartel a thumb drive with audio works because he knew that Mr. Bartel wanted to share the tapes with others, and he admitted to playing the copyrighted audio works on the YouTube channel [20 at 18, 20]. And in his response to TELAH's summary judgment motion, Mr. Havel doesn't dispute that he sent Mr. Bartel a thumb drive; instead he once more raises the ownership issue [271 at 9]. In a March 28, 2022 video, Mr. Havel said that if he was forced to shut down his channel, he would create a new hidden one [246-5 ¶ 34]. Next, in a May 1, 2022 YouTube video, Mr. Havel acknowledged his role, stating that he and others were circulating the copyrighted audio works [*id.* ¶ 36]. Then, on December 17, 2022, Mr. Havel was paid to perform at an event called "Heaven's Gate Re-Examined," where he played a copyrighted video for one and a half hours [246-7 ¶ 10, Exhibit 3]. This event was also livestreamed on the YouTube channel [*id.* Exhibits 7, 8]. In the comments of that livestream, Mr. Havel expressed that he wished they had livestreamed an earlier part of the event in which they streamed a video work entitled "Beyond Human," which is also a copyrighted work owned by TELAH (the video work) [*id.* ¶ 13-18; 1-2]. Mr. King swore in an affidavit that both Mr. Havel and Ms. Weaver were paid for their participation in this event [*id.* ¶ 20; *see id.* Exhibit 8].

The livestreams continued into 2023 after this lawsuit was originally filed. In the livestreams, Mr. Havel and Ms. Weaver reiterated their commitment to streaming the audio works and sharing the information [246-7 ¶ 6-7, Exhibits 1, 2]. Mr. Havel and Ms. Weaver say the materials that they uploaded and streamed had long been publicly distributed by former group members, thus negating any infringement argument from TELAH. Finally, TELAH says Ms. Weaver recorded chapters from the literary work entitled "How and When 'Heaven's Gate' (the

door to the physical level above human) may be entered: an anthology of our materials" into an audiobook [*see* 132 ¶ 48]. Ms. Weaver claims fair use because, she says, the literary work is in the public domain and because TELAH offers it as a free download on its website.

Mr. Bartel's alleged conduct concerns online posting and downloading. Sometime in August 2021, Mr. Bartel posted an archive of the audio and video works online [246-5 ¶ 19]. And though the works were originally taken down after a DMCA (Digital Millennium Copyright Act) takedown request, Mr. Bartel created two additional archives on Google Drive that allowed others to download the copyrighted material and also encouraged people via his blog to contact him to access a third repository of copyrighted material [*id.* ¶ 23, Exhibit 1]. An October 19, 2022 blog post from Mr. Bartel contained a link to a website with a library of audio tapes [*id.* ¶ 27, Exhibit 5]. On October 7, 2022, Mr. Bartel (who goes by the name "Crlody" on his blog) posted an entry entitled "New Link for the audio tapes," providing a link to hundreds of copyrighted audio works and stated, in part, "To hell with Mark and Sarah King and their shady lawyers. How do these people sleep at night?" [*id.* Exhibit 8]. Mr. King swore in an affidavit that this web link contained "hundreds of Heaven's Gate's Tapes" [*id.* ¶ 41]. Mr. Bartel once more shared a link containing links to the audio works on his blog on November 28, 2022 [*id.* Exhibit 11]. Mr. Bartel doesn't deny this conduct; he instead disputes TELAH's ownership of the intellectual property at issue.

On October 31, 2025, TELAH filed a summary judgment motion as to liability on certain claims asserted in its amended complaint—infringement of Copyright Registration No. SRu00298530 against all defendants (count one), infringement of Copyright Registration No. TXU000817732 against Ms. Weaver (count three), infringement of Copyright Registration No.

VA000877834 against Mr. Havel and Ms. Weaver (count four), and contributory infringement against Mr. Havel (count five). After a *Faulkner* notice [247], Mr. Bartel responded to the motion on November 17, 2025 [260-1], and Mr. Havel and Ms. Weaver each responded on December 2, 2025 [268; 270]. TELAH replied to each response [267; 273].[1]

B. *Standard.*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The

[1] Ms. Weaver filed an "emergency notice of privacy violation and motion to strike" TELAH's summary judgment filings, saying that it violated Rule 5.2 by not redacting the last four digits of her social security number and a former address found on her bankruptcy petition [251]. This request will be denied, as Rule 5.2 explicitly allows filings to include the last four digits of a social security number and says nothing about former addresses. This information is also publicly available via Ms. Weaver's own bankruptcy petition.

court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

C. Discussion.

1. *Mr. Bartel's Summary Judgment Motion.*

Mr. Bartel's summary judgment motion violates the rules of both this district and this presider. By local rule, a "party moving for summary judgment must separately file: (1) a motion; (2) a supporting brief; (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes: (A) a short statement of each fact; and (B) a citation to evidence supporting each fact[.]" N.D. Ind. L.R. 56-1. This presider also provides instructions governing summary judgment practice, readily available on the court's website, that aid the requirements of both Fed. R. Civ. P. 56 and N.D. Ind. L.R. 56-1.

Mr. Bartel's summary judgment filing fails in several respects. First, he didn't file a separate statement of material facts or a separate motion or supporting brief. *See* N.D. Ind. L.R. 56-1. Second, the "statement of material facts not in dispute" contained in his filing mixes factual assertions with the legal arguments made elsewhere in his filing, and lacks citations to supporting evidence on several occasions. *See* N.D. Ind. L.R. 56-1(a); *1st Source Bank*, 947 F. Supp.2d at 937 (citing *Cady*, 467 F.3d at 1060 ("The purpose of Rule 56-1 is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments.")). He asks for the court to excuse the obligation to meet and confer, and the court does so only in that respect.

Mr. Bartel was made well aware of what was required of him otherwise should he choose to move for summary judgment. In June 2023, the court informed Mr. Bartel of the rules that governed such a filing, including by citing the applicable rules [112]. The court once more laid

out the requirements to him a month later [130]. The court reminded the parties two additional times more recently about the requirements of both the local rules and this presider, including a reminder just three weeks before Mr. Bartel filed his motion [205; 213].

District courts may strictly enforce local rules even against *pro se* parties, including local summary judgment rules. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019); *see Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")). The court does so here, especially considering the repeated reminders provided to the parties of what was expected of them. Mr. Bartel's motion for summary judgment [227] is stricken for failure to comply with Local Rule 56-1. The court now addresses TELAH's summary judgment motion.[2]

2. *Infringement Claims.*

a. *Ownership.*

To prove infringement, TELAH must establish ownership of a valid copyright and copying of protected expression. *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 886 (7th Cir. 2021). Briefing makes ownership the central dispute in large measure.

[2] In its consolidated reply to the responses from Ms. Weaver and Mr. Havel, TELAH requests that the court disregard the two responses as untimely. TELAH says Mr. Havel and Ms. Weaver certified service even though TELAH never received the filings by mail or by electronic means and only obtained them after the court's clerk docketed them. TELAH says Mr. Havel and Ms. Weaver mailed their responses on the due date, despite having received extensions of time based on mail delay concerns. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 606-08 (7th Cir. 2006) (affirming district court's disregard of summary judgment response brief mailed on its due date and received by the court two days later). Though this argument has merit, even considering the two filings, the result of TELAH's motion is the same.

Mr. Bartel argues that TELAH was not the corporation that participated in the California probate case, that "The Telah Foundation" was only a "d/b/a" (an assumed name), that the San Diego litigation didn't convey all intellectual property rights to TELAH, that TELAH doesn't own the intellectual property reflected in its exhibits, and that Mark King signed documents using an allegedly nonexistent corporate name [227]. Mr. Havel similarly argues that TELAH must prove authorship, ownership, chain of title under 17 U.S.C. § 204(a), valid registration, accurate deposit materials, custody, and exclusive rights, and he says that TELAH relies on legal conclusions and that the probate materials, metadata, cassette label photos, logs, and TELAH's prior statements create genuine disputes [270 at 2-3, 6]. Ms. Weaver likewise disputes ownership and chain of title to the audio materials, the completeness and authenticity of the tape library, and the relationship between TELAH's registrations and the works allegedly filed [268 at 2].

These arguments don't create a genuine dispute of material fact. First, the registration evidence establishes *prima facie* validity. 17 U.S.C. § 410(c). By law, a registration certificate made between or within five years after first publication constitutes *prima facie* evidence of the copyright's validity and of the facts stated in the certificate. 17 U.S.C. § 410(c); *see Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) (certificate of registration establishes rebuttable presumption of validity). TELAH cites the audio works registration, "The Audiotape Library of Heaven's Gate by Ti and Do," Copyright Registration No. SRu 298-530 [246-1], the video works registration, "Beyond Human—The Last Call," Copyright Registration No. PA 867-224 [246-2], the literary work registration, "How and When 'Heaven's Gate' (The door to the physical kingdom level above human) may be entered—an anthology of our

materials," Copyright Registration No. TXu 817-732 [246-4], and the visual work registration, "The C.B.E. (Celestial Being Entity)," Copyright Registration No. VA 877-834 [246-3].

No defendant disputes the registrations as true and accurate copies. *See Wildlife Express Corp.*, 18 F.3d at 507. Mr. Havel and Ms. Weaver point generally to alleged discrepancies in tape logs, tape numbering, metadata, or deposit descriptions, but none of these arguments establishes that any inaccurate information was contained on the application for copyright registration, nor do Mr. Havel or Ms. Weaver explain how these disputes undermine ownership of the specific registered works. *See* 17 U.S.C. § 411(b); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 186-87 (2022) (certificate of registration valid even though it contains inaccurate information so long as copyright holder didn't know of inaccuracies). Such generalized disputes about logging inconsistencies aren't enough to defeat summary judgment, as they don't affect the outcome under the applicable law. *See Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986).

Second, the § 204(a) argument fails because it ignores transfer by operation of law.[3] Mr. Havel argues that TELAH can't prove ownership because it hasn't produced written assignments from the original authors or contributors. He says copyright ownership may be transferred only by a writing signed by the author under § 204(a), and TELAH identifies no assignment from Ti, Do, any member of the group, the people who recorded the tapes, Rkkody, Jhnody, or others involved in the works.

[3] This also is an argument the court has rejected earlier in the case. *See Evolutionary Level Above Hum. Found., Inc. v. Havel et al.*, 2024 U.S. Dist. LEXIS 34173, 21-26 (N.D. Ind. Feb. 27, 2024) (Gotsch, M.J.). Today, Mr. Havel offers no new evidence or controlling law that would justify revisiting the sound earlier ruling. *See Boyer v. BNSF Ry.*, 824 F.3d 694, 710-11 (7th Cir. 2016) ("For purposes of consistency, finality, and judicial economy, the [law of the case] doctrine presumes that once a court has decided a particular issue in a case, the issue should not be reopened without good cause.").

Copyright initially vests in a work's author or authors, but copyright ownership is transferable. 17 U.S.C. § 201. Transfer may occur by "any means of conveyance or by operation of law," or "bequeathed by will or pass as personal property by the applicable laws of intestate succession." 17 U.S.C. § 201(d)(1). Section 204(a), on which Mr. Havel relies, contains the writing requirement, but only for transfers "other than by operation of law." 17 U.S.C. § 204(a). It provides that "[a] transfer of copyright ownership, other than by operation of law," is invalid unless memorialized in a writing signed by the owner or an authorized agent. 17 U.S.C. § 204(a). Accordingly, it doesn't impose a writing requirement for all transfers. Nor does Mr. Havel seem to have standing to raise such an argument under the statute. *See Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003) (rejecting an accused infringer's argument under § 204 because the "statute is in the nature of a statute of frauds and is designed to resolve disputes among copyright owners and transferees…where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement") (quotations omitted).

The evidence establishes that the intellectual property passed through the California probate proceeding and then to TELAH through the public administrator's court-approved settlement [63-1 at 17; 81-1 at 22]. And a transfer of intellectual property as part of a probate settlement agreement fits neatly as a transfer "by operation of law" for purposes of the statute. 17 U.S.C §§ 201(d)(1), 204(a); *Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 821 (9th Cir. 2025) (copyrights "properly bequeathed and distributed" and ownership transferred through a will and probate process, citing § 201(d)(1)); *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 963

(8th Cir. 2005) (transfers by operation of law include "transfers by bequest, bankruptcy, mortgage foreclosures, and the like.").

Third, Mr. Bartel's assumed-versus-corporate-name argument doesn't undermine ownership. He argues that TELAH can't own the asserted copyrights because the California probate creditor's claim was filed by "The Telah Foundation," not by "The Evolutionary Level Above Human Foundation," and because "The Telah Foundation" was only a d/b/a and not a separate legal entity. He also argues that some filings or signatures used imperfect corporate names, including "The Evolutionary Level Above Human, Inc." which he says was a nonexistent corporation. In response, TELAH points out that these are recycled arguments; that it filed the creditor's claim after its incorporation while doing business as "The Telah Foundation;" and that any variation in the plaintiff's name was a mere inadvertent misnomer.

An assumed name (or "d/b/a") isn't a separate legal entity; it is just a name used by a person or entity doing business. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 703 (7th Cir. 2022) ("The use of an assumed name, if not employed for deceitful or dishonest purposes, is legal.") (citation omitted). And the undisputed evidence establishes that The Evolutionary Level Above Human Foundation was incorporated in Arizona on September 23, 1997 [227-1 at 3] and that the creditor's claim, as petitioner in the California probate proceeding, was filed the next day by "The Telah Foundation" [227-1 at 19]. Mr. Bartel identifies no competing entity, claimant, or evidence that any entity other than TELAH was acting through that assumed name. And misnaming a corporation generally isn't material when the corporation's identity is reasonably clear. *See Athmer v. C.E.I. Equip. Co.*, 121 F.3d 294, 296 (7th Cir. 1997) (distinguishing a mere misnomer from a case of mistaken identity). TELAH amended its complaint in 2023 to cure the

inadvertent confusion in the initial complaint regarding its name [*see* 132]. Finally, as TELAH points out, Mr. Bartel's corporate name arguments have been raised and ruled on by the court already [*see* 193]. *See Boyer*, 824 F.3d at 710-11; *see also supra*.

Fourth and finally, Ms. Weaver and Mr. Havel seem to argue that the audio works were being broadly disseminated, which somehow negates exclusivity [270 at 5; 268 at 3]. The Copyright Act distinguishes ownership of a copyright from possession of a copy. 17 U.S.C § 202. And transfer of a copy "does not of itself convey any rights in the copyrighted work embodied in the object." 17 U.S.C. § 202. Thus, even if members of the group or the public possessed copies of copyrighted works, such possession didn't transfer copyright ownership or any right to reproduce, upload, stream, broadcast, or distribute new copies. 17 U.S.C. § 202; *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) ("Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying."); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (users who upload files for others to copy violate distribution rights). Accordingly, that copies of the copyrighted material may have circulated doesn't alone show that any copyright ownership rights left TELAH or that any of the defendants' subsequent copying and distribution was authorized. TELAH, as a matter of law and this record, thus owns this intellectual property.

With the ownership arguments now resolved, the court turns to each defendant's conduct. *See Richardson v. Kharbouch*, 156 F.4th 849, 856 (7th Cir. 2025) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To make out a copyright infringement claim, a plaintiff must show: (1) 'ownership of a valid copyright,' and (2) 'copying of constituent elements of the work that are original.'")).

b. *Count One—Infringement of Copyright Registration No. SRu00298530 Against All Defendants.*

Count one concerns infringement of the audio works. TELAH seeks summary judgment on this count against all three defendants. The court addresses each defendant separately.

As to Mr. Bartel, TELAH points to undisputed evidence that he uploaded copyrighted audio works online, reuploaded copyrighted materials after prior copies had been removed through the DMCA takedown, and that he encouraged others to download those materials [246-5 ¶ 19-28, Exhibits 1, 3, 4; 9-1 ¶ 9-13, Exhibit 1]. Mr. Bartel doesn't put this evidence in dispute. Instead, he responds that he has already proven that TELAH didn't own the materials. Mere argument doesn't create a genuine dispute about the copying element. Uploading and reuploading copyrighted materials for others to access or download implicates the copyright owner's exclusive rights to reproduction and distribution. 17 U.S.C. §§ 106(1), (3). The court grants TELAH summary judgment on count one as to Mr. Bartel.

TELAH is also entitled to summary judgment on count one as to Mr. Havel. Mr. Havel argues that TELAH hasn't identified any specific audio work that he copied, distributed, adapted, or otherwise used without authorization; but the record clearly shows otherwise. TELAH's evidence undisputably establishes the exact audio tapes Mr. Havel played over the YouTube channel and when he and Ms. Weaver played them [246-5 ¶ 16, 43]. Mr. Havel's response doesn't meaningfully dispute his conduct. He questions the completeness of certain tape logs and the legal effect of prior circulation of the audio works, but he doesn't argue how any alleged discrepancies in tape logs are material or change the fact he played them on his YouTube channel, no less when TELAH identifies the specific tapes Mr. Havel played. Nor does any purported

prior circulation authorize his later broadcasts or distribution; possession or receipt of copies isn't permission to make or distribute additional copies. *See* 17 U.S.C. § 202 (distinguishing ownership of a copyright from ownership of an embodiment of the work and that transfer of a copy doesn't transfer any exclusivity rights). The record thus establishes that Mr. Havel used the audio works, and he hasn't shown authorization to do so or a genuine factual dispute over his conduct. The court grants summary judgment against Mr. Havel on count one.

Finally, TELAH is entitled to summary judgment against Ms. Weaver on count one too. Ms. Weaver argues that TELAH hasn't shown volitional copying attributable to her nor protected works within its registrations. In response, TELAH points to evidence that Ms. Weaver admitted to participating in broadcasting the audio works and encouraged others to download copies of them [246-5 ¶ 12, 35]. Ms. Weaver's opposition doesn't create a material dispute. She says TELAH's rights weren't clear, but the court has already resolved the ownership discrepancies. She says she didn't knowingly infringe, but copyright infringement doesn't require proof that the defendant knew her conduct violated a copyright. *See Muhammad-Ali v. Final Call, Inc.*, 832 F3d 755, 762 (7th Cir. 2016) (once plaintiff provided ownership and copying, he "was required to do no more than that to prove a prima facie case").[4] Ms. Weaver also makes a reference to damages and causation, though this argument isn't clear or developed, nor must damages be proven to establish her liability on a copyright infringement claim. *Bell v. Taylor*, 791 F.3d 745, 748 (7th Cir. 2015) ("the existence of damages suffered is not an essential element of a claim for copyright

[4] So-called "innocent infringement" is a mitigating factor with regard to damages, but it isn't an affirmative defense to an infringement allegation. 17 U.S.C. § 504(c)(2); *see Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2003 U.S. Dist. LEXIS 4964, 13-14 (N.D. Ill. Mar. 28, 2003) (Guzman, J.) ("It is well-accepted law that innocent infringement is actionable and will not constitute a defense to liability, though it may bear upon the remedies available against such a defendant.").

infringement"). And, finally, her argument that the audio works had previously been broadly distributed fails because possession or receipt of copies isn't permission to make or distribute additional copies. *See* 17 U.S.C. § 202. Because TELAH has shown that Ms. Weaver participated in broadcasting, copying, derivative use, or encouragement of downloads of the audio works, and because Ms. Weaver hasn't answered that showing with any contrary evidence, the court grants summary judgment on count one as to Ms. Weaver.

c. *Count Three—Infringement of Copyright Registration No. TXU000817732 Against Ms. Weaver.*

Count three concerns infringement of the literary work entitled "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May be Entered—An Anthology of Our Materials." TELAH asserts the claim against Ms. Weaver only. With ownership resolved, the only remaining question is whether Ms. Weaver copied or prepared derivative copies of this intellectual property.

The record establishes that she did. TELAH points to evidence that shows Ms. Weaver admitted copying and making derivative copies of the literary work; in her response to TELAH's original complaint, Ms. Weaver said, "Defendant admits recording some chapters from the Literary Work" [26 ¶ 48]. Creating audio copies of a written work implicates the copyright owner's exclusive right to reproduce the work and prepare derivative works. 17 U.S.C. §§ 106(1), (2); *see* 17 U.S.C. § 101 (defining "derivative work" as one based upon one or more preexisting works, such as a sound recording).

Ms. Weaver doesn't point to any evidence that she didn't create the audio copies. Instead, she says her admission in her answer acknowledged only that she read from a "public-domain text available worldwide for decades by third parties," and that TELAH hasn't shown that the

version referenced is identical to any registered version TELAH owns. Construed generously, this is both a public domain and fair use argument.

First, the public domain argument fails because the court has already resolved the copyright ownership issue. Her assertion that a certain text was available doesn't show that it was in the public domain; public availability doesn't change that a copyright owner "has the exclusive rights to do and authorize" acts like reproduction and distribution. 17 U.S.C. § 106. And "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by Section 106…is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501.

Second, Ms. Weaver hasn't carried her burden on fair use. Fair use is an affirmative defense to copyright infringement for purposes such as criticism, comment, news reporting, teaching, scholarship or research, and the burden rests on the alleged infringer. 17 U.S.C. § 107; *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985) ("fair use is a mixed question of law and fact."). Section 107 requires consideration of four factors: the purpose and character of the use, the nature of the copyrighted work, the amount and substantiality used, and the effect on the use on the potential market for or value of the work. 17 U.S.C. § 107. Ms. Weaver provides no support for any assertion she is entitled to the affirmative fair use defense, and "in the context of summary judgment, a district court need not, even for pro se plaintiffs, 'scour the record looking for factual disputes,' and a pro se party cannot avoid summary judgment without demonstrating a material dispute of fact." *Ledford v. Hahn*, 2019 U.S. Dist. LEXIS 130998, 2 (N.D. Ind. Aug. 6, 2019) (Brady, J.) (quoting *Greer v. Bd. of Ed. of the City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). Because

TELAH has established that Ms. Weaver infringed on the literary work, the court grants summary judgment against Ms. Weaver on count three as to liability.

d. *Count Four—Infringement of Copyright Registration No. VA000877834 Against Mr. Havel and Ms. Weaver.*

Count four concerns the visual work, an infringement claim against Mr. Havel and Ms. Weaver. TELAH identifies the visual work as "The C.B.E. (Celestial Being Entity)," Copyright Registration No. VA 000877834. Again, with ownership disputes resolved, the remaining question is whether Mr. Havel and Ms. Weaver used the visual work without TELAH's authorization.

As to Mr. Havel, TELAH points to evidence that Mr. Havel used the visual work to promote his YouTube channel [267-5 ¶ 16]. Mr. Havel doesn't materially dispute the alleged use of the image; his response instead folds the visual work into the same ownership and authorship arguments made elsewhere. He argues that TELAH lacks written assignments and that his own appearance in the videos creates an authorship issue.

Such arguments don't create a genuine triable dispute. First, the asserted visual work is neither Mr. Havel's likeness nor a video in which he appears; it is the registered image. His appearance in the YouTube video that utilizes the image thus doesn't absolve him of unauthorized use of the image. *See Feist*, 499 U.S. at 361 (necessary elements of claim are (1) ownership and (2) copying of original elements). Second, Mr. Havel cites no authority for the proposition that appearing in a video makes one an author of that video, much less the author or owner of a separate copyrighted work used in connection with that video. *See Garcia v. Google, Inc.*, 786 F.3d 733, 743-44 (9th Cir. 2015) (*en banc*) (rejecting co-ownership claim of an actress who

appeared in a movie because "[h]owever one might characterize her performance, she played no role in fixation.").

Nor do Mr. Havel's separate prior dissemination and authorization arguments help him. Receiving or possessing a physical or digital copy doesn't give the recipient the right to reproduce or further disseminate the work. 17 U.S.C. § 202. And though receipt of an implied license is an affirmative defense to a claim of copyright infringement, *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996), to the extent Mr. Havel posits he received such a license, there is no evidence of such. *See Muhammad-Ali*, 832 F.3d at 762 (quoting *Shaver*, 74 F.3d at 776 ("To establish an implied license, a party must show that '(1) the person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute [its] work.'")). Because TELAH has identified the visual work, pointed to undisputed evidence of Mr. Havel's use of it for promoting his YouTube channel, and Mr. Havel hasn't identified any evidence he didn't use the visual work or that TELAH authorized the use, the court grants summary judgment against Mr. Havel.

For many of the same reasons, summary judgment is also proper against Ms. Weaver on count four. TELAH says Ms. Weaver also used the visual work to promote her YouTube channel [267-5 ¶ 16]. Ms. Weaver doesn't point to anything contrary in the record that shows she didn't use the image. Her opposition instead focuses on the same general ownership, distribution, and lack of intent arguments raised elsewhere too.

These objections don't create a material dispute over the visual work. Ownership has already been resolved. Ms. Weaver also mentions a generalized admissibility objection, though

the argument is underdeveloped because she doesn't identify any particular piece of evidence that couldn't be presented in admissible form at trial. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (when *pro se* party fails to develop an argument, "[the court] cannot fill the void by crafting arguments and performing the necessary legal research."). Her argument that the work had been broadly distributed fails because, once more, even if copies of the materials circulated, possession or access to a copy doesn't authorize further copying, posting, display, or distribution. 17 U.S.C. § 202. The record thus establishes Ms. Weaver's use of the visual work, and the court grants summary judgment against Ms. Weaver on count four as to liability.

e. *Count Five—Contributory Infringement Against Mr. Havel.*

In count five, TELAH asserts a claim of contributory infringement against Mr. Havel. TELAH says Mr. Havel contributed to others' infringement, mainly Mr. Bartel's online uploading and distribution of TELAH's copyrighted works.

Contributory liability for another's infringement "attaches when a party materially contributes in some way to another's infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 597 (2026); *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement[.]"). "A defendant is liable for contributory infringement when [he] 'with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another.'" *Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F. Supp.2d 877, 883 (N.D. Ill. 2005) (St. Eve, J.) (quoting *In re Aimster Copyright Litig.*, 252 F. Supp.2d 634, 649 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003); *see Flava Works, Inc. v. Gunter*, 689 F.3d 754, 754 (7th Cir. 2012) (such a claim requires "personal conduct that encourages or assists the infringement."). A claim for contributory

infringement has three elements: "(1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement." *Monotype Imaging*, 376 F. Supp.2d at 883. As discussed, TELAH has established Mr. Bartel's infringement of the audio works. The remaining question regards Mr. Havel's contribution to that infringement.

On this record, no reasonable jury could find that Mr. Havel lacked knowledge of Mr. Bartel's infringement. "Knowledge, for purposes of contributory copyright infringement, encompasses both actual and constructive knowledge." *Flava Works*, 2011 U.S. Dist. LEXIS 50067 at 8-9 (Grady, J.) (citing *Aimster*, 334 F.3d at 650). TELAH says Mr. Havel coordinated with Mr. Bartel to upload TELAH's copyrighted material to the internet for others to download. Specifically, Mr. Havel said on his blog that he sent the audio works to Mr. Bartel and another person "who [he] know[s] [he] can trust to be sure to upload them to the internet in multiple places so that even if [Mr. and Mrs. King] somehow sue [them] it will be far too late to keep [the audio works] from being available to those who want to listen to them" [132-8 at 4].[5] Mr. Havel also admitted in his answer to the amended complaint to giving Mr. Bartel a thumb drive containing the audio works because he knew Mr. Bartel "wanted those tapes for [his] own use and to share with others" [153 at 30]. Thus, Mr. Havel wasn't merely aware, in some abstract sense, that Mr. Bartel posted the infringing material online; Mr. Havel personally used the same works, participated in the same online distribution campaign, and worked alongside Mr. Bartel in making the works available.

[5] This blog post references that the audio files were sent to a "Crlody" [132-8 at 4]. TELAH seems to assert that "Crlody" is another name that Mr. Bartel goes by, a proposition no defendant counters.

The third element, regarding material contribution, is met for the same reason. "Material contribution turns on whether the activity in question substantially assists direct infringement." *Louis Vuitton Maletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011). TELAH points to undisputed evidence that Mr. Havel encouraged online downloads of the audio works and coordinated with Mr. Bartel to make the copyrighted works available online [246-5 ¶ 28-29; 132-8 at 4; 153 at 20-21]. Mr. Havel's conduct substantially assisted Mr. Bartel because it promoted access to the infringing files, increased distribution, and helped place TELAH's copyrighted works where others could obtain them without authorization. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996) (operators of a swap meet materially contributed to vendors' sales of counterfeit recordings by providing support like space, utilities, and advertising, and allegedly knew about the sales at issue).

Accordingly, the record establishes each element of the contributory infringement claim. Mr. Bartel directly infringed by uploading, reuploading, and encouraging downloads of TELAH's copyrighted works. Mr. Havel knew of that infringement because he participated in the same dissemination activity and because he coordinated it with Mr. Bartel. Finally, Mr. Havel materially contributed to Mr. Bartel's infringement by encouraging downloads and helping make the works available online. Because no reasonable jury could find otherwise, summary judgment is granted against Mr. Havel on count five as to liability.

3. *Summary Judgment Conclusion.*

For these reasons, the court will deny Ms. Weaver's motion to strike [251], grant Mr. Bartel's motion for an extension of time to respond to TELAH's summary judgment motion [260], strike Mr. Bartel's summary judgment motion [227], and grant TELAH's motion for partial

summary judgment [244]. The court will order the parties to file status reports or proposals (not to exceed three pages each) for the court's consideration on how to proceed with the issue of damages on these counts as well as resolution of any other count, as well as to proceed as to Mr. Havel's and Mr. Bartel's counterclaims against TELAH.

DISCOVERY MOTIONS

The parties consented to the exercise of jurisdiction by a United States Magistrate Judge on October 14, 2022. While the case was still before the previous Magistrate Judge, on February 27, 2024, the court tolled discovery and other case deadlines in response to several discovery disputes. On August 26, 2025, the current Magistrate Judge held a hearing on the outstanding disputes so the case could proceed to its final stages. The presiding Magistrate Judge retired in August 2024, at which time the case was reassigned to this judge for dispositive proceedings. At that hearing, the Magistrate Judge set a deadline of September 9, 2025 for TELAH to respond to the defense's outstanding discovery requests; a deadline of September 26, 2025 for completion of all discovery; and a deadline of October 31, 2025 for the parties to file dispositive motions. Mr. Havel and Mr. Bartel have filed several discovery motions since then.

A. *Mr. Havel's Motion to Determine the Sufficiency of TELAH's Answers to Requests for Admission.*

On September 25, 2025, Mr. Havel filed a motion under Rule 36(a)(6) requesting that the court determine the sufficiency of several requests for admission he propounded on TELAH on November 20, 2023 [221]. He says TELAH's responses are insufficient. TELAH responds, in part, that the motion should be denied because the requests for admission were untimely served and also because the motion too is untimely. TELAH responded just so on October 9, 2025, and Mr. Havel filed no reply.

The deadline for the parties to file any discovery-related nondispositive motions was October 16, 2023 [117]. Mr. Havel propounded requests for admission on November 20, 2023 [177]. At the time, the deadline for completing all discovery was December 14, 2023 [117]. Accordingly, based on that deadline, the last day to initiate discovery was 45 days before December 14, 2023, or October 30, 2023 [*see* 117 at 9]. Not only is Mr. Havel's instant motion nearly two years tardy, but his requests for admission were also untimely from the get-go. This untimeliness warrants denial.

B. *Mr. Havel's Motion to Clarify and Preserve Record Concerning Discovery and Authenticity Issues.*

On October 16, 2025, Mr. Havel filed what he called a motion to clarify and preserve the record concerning discovery and authenticity issues [240]. Mr. Havel says he doesn't seek any further discovery and intended to only clarify and memorialize what he views as certain outstanding matters. TELAH didn't respond to this motion. Mr. Havel isn't requesting any ruling from the court, so there's nothing for the court to do. These being merely his musings, the motion will be denied.

C. *Mr. Bartel's Motion for an Extension to File a Status Report.*

On October 2, 2025, Mr. Bartel filed a motion requesting an extension of time to file a status report ahead of a previously-scheduled Zoom scheduling conference [226]. He said he didn't receive the scheduling order in the mail. The court denies this motion as moot because that scheduling conference was ultimately vacated.

D. *Mr. Bartel's Motions for Leave to File an Amended Counterclaim and Motions for Required Joinder of Parties.*[6]

In these motions, Mr. Bartel contends that TELAH doesn't actually exist, and that TELAH's corporate directors, Mark and Sarah King, must be enjoined as parties to this case. As to the motion to amend his counterclaim, it isn't at all clear what claims Mr. Bartel is attempting to bring against TELAH, apart from stating this lawsuit was brought solely to "harass and intimidate" him [236-2 ¶ 13]. Mr. Bartel also makes vague and undeveloped references to "false copyright registration numbers" in TELAH's complaint. Mr. Bartel's deadline for amending his pleading was September 15, 2023—more than two years before he filed his motion [117 at 5]. He says he has "uncovered new facts and evidence and has had new understandings since [he] filed an amended counterclaim over two years ago in this court," but this falls short of establishing cause, let alone good cause. Fed. R. Civ. P. 16(b)(4); *Sumerall v. LeSEA, Inc.*, 104 F.4th 622, 630 (7th Cir. 2024) (finding no good cause to permit a defendant to amend a counterclaim two years past its deadline to do so when the party didn't present any explanation of its diligence).

As to the motion requesting joinder of Mark and Sarah King [235], this is an argument Mr. Bartel has twice presented to previous presiders and twice been rejected [130; 193]. And Mr. Bartel has already been warned that filings raising or seeking to expand upon previously rejected arguments "will not be viewed favorably" [130 at 10]. In this third request, Mr. Bartel again fails to cite any legal authority in support of his position. Accordingly, the court denies the request.

---

[6] Mr. Bartel's first motion for required joinder [228] and first motion for leave to file an amended counterclaim [229] are summarily denied as moot. Mr. Bartel recognized his first motion for required joinder wasn't signed, which he rectified in his second filing [235]. And Mr. Bartel's first motion requesting leave to file an amended counterclaim didn't include the required proposed amendment, also rectified in his second filing [236].

E. *Discovery Motions Conclusion.*

Accordingly, the court will deny Mr. Havel's motion to determine the sufficiency of answers to requests for admission [221], deny Mr. Havel's motion to clarify and preserve the record [240], deny as moot Mr. Bartel's motion for an extension to file a status report ahead of the previously vacated scheduling conference [226], deny Mr. Bartel's motions for joinder of parties [228; 235] and deny Mr. Bartel's motions for leave to file an amended counterclaim, the earlier of both types deemed moot [229; 236].

MOTION TO DISMISS

On October 3, 2025, Ms. Weaver moved to dismiss the amended complaint's claims against her. She says the claims are barred by a previous bankruptcy proceeding, dismissal is warranted because of fair use and the First Amendment, TELAH lacks evidence of anything more than *de minimis* involvement on her part, and that the litigation has caused her severe emotional and mental distress. The court denies the motion.

A. *Background.*

As it must, the court accepts the well-pleaded facts in the amended complaint as true for purposes of this motion and draws all reasonable inferences in TELAH's favor. The court won't belabor the facts and allegations in the amended complaint, which are laid out in greater detail in discussing summary judgment, but the court here stays within the four corners of the amended complaint in deciding this motion.

As alleged, on several occasions, Ms. Weaver and Mr. Havel engaged in public performances of copyrighted audio works and live streamed discussions on the internet providing instructions for how others can obtain copies of the audio and video works [132 ¶ 39-40]. Ms.

Weaver and Mr. Havel also allegedly engaged in public performance of TELAH's literary works, recorded the performances, and disseminated them through their YouTube channel [*id.* ¶ 49]. The amended complaint alleges that the three defendants are engaged in a conspiracy to commit infringement of TELAH's copyrights and will continue to illegally copy and disseminate TELAH's property in violation of TELAH's copyrights unless enjoined by this court [*id.* ¶ 45-46]. The amended complaint also alleges that Mr. Havel and Ms. Weaver advertised and plan to sell or have sold shirts containing TELAH's trademarked designs and words and plush dolls based on images owned by TELAH [*id.* ¶ 52-54].

TELAH asserts seven claims in total: four claims of copyright infringement against all three defendants, one claim of contributory infringement by Mr. Havel and Ms. Weaver with respect to Mr. Bartel's direct infringement, one count of conspiracy to commit copyright infringement against each defendant, and one claim of trademark infringement against Mr. Havel and Ms. Weaver. TELAH requests damages, injunctive relief, impoundment of all infringing copies of works, attorney fees, and an order declaring liability against the defendants. Ms. Weaver filed this motion on October 3, 2025 [230]. TELAH responded to the motion on October 24, 2025 [242] and Ms. Weaver replied on October 31, 2025 [250].

B. *Standard.*

Ms. Weaver says her motion is brought under Rule 12(b)(6), Rule 56, and "the Court's inherent authority to ensure fairness and justice." In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

Generally, if a party attaches evidence outside the pleadings in a motion to dismiss, "the court must either convert [the motion] into a motion for summary judgment under Rule 56…or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted). There is a narrow exception: a dismissal motion can rest on critical documents, central to the claim and referred to in the complaint. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *188 LLC*, 300 F.3d at 735. Ms. Weaver attached several pages of emails and text messages to her motion, though the exhibits prove unnecessary to the court's resolution of the motion. Accordingly, the court treats the motion as one under Rule 12(b)(6), not Rule 56.

C. *Discussion.*

1. *Procedural Issues.*

At the start, TELAH says the motion is untimely because any Rule 12 defenses "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). But a review of the docket reveals that Ms. Weaver never answered or otherwise filed a responsive pleading to

TELAH's amended complaint. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) (once a plaintiff files an amended complaint, it "supersedes an original complaint and renders the original complaint void").[7] Rule 15(a)(3) required Ms. Weaver to respond to the amended complaint within the time frame remaining to respond to the original pleading, or within 14 days after service of the amended pleading. Fed. R. Civ. P 15(a)(3). Her present motion, filed over two years after TELAH filed its amended complaint, is thus untimely as a response to the amended complaint. The court nonetheless considers the motion on its merits—in the interest of fairness—as it fails on the merits anyway.

2. *Bankruptcy Discharge.*

Ms. Weaver says she filed a Chapter 7 bankruptcy case on October 27, 2022; TELAH had notice of that proceeding but didn't file an adversary proceeding to contest dischargability; and that the bankruptcy court entered a discharge order in April 2023.[8] Accordingly, she says, TELAH's pre-discharge allegations are barred. TELAH doesn't seem to dispute that the discharge may enjoin recovery of monetary damages for discharged pre-bankruptcy claims. Instead, TELAH argues that it may still proceed on alleged post-bankruptcy infringement and on prospective injunctive relief related to both pre-bankruptcy and post-bankruptcy infringement.

[7] TELAH never requested an entry of default against Ms. Weaver. As an aside, the court doesn't construe the motion as one under Rule 12(c), as that rule applies only after the pleadings are closed, and Ms. Weaver hasn't answered the amended complaint. Fed. R. Civ. P. 12(c). Nor will the court treat the motion as a proper summary judgment motion because Ms. Weaver hasn't complied with Rule 56 or N.D. Ind. L.R. 56-1 in ways TELAH identified in its response brief; nor is it necessary to resolve the motion under Rule 12(b)(6).

[8] The court takes judicial notice of the bankruptcy court proceedings in *In re Cathy Jo Ann Weaver*, Cause No. 22-31102 (Bankr. N.D. Ind. filed Oct. 27, 2022). *See J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021).

A Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief," except as provided in 11 U.S.C § 523. 11 U.S.C. § 727(b).[9] In a voluntary bankruptcy case, such as this, the filing of the petition constitutes the order for relief. 11 U.S.C. § 301(b). The discharge then operates as an injunction against acts to collect or recover a discharged debt as the debtor's personal liability. 11 U.S.C. § 524(a)(2). "Under Fed. R. Civ. P. 8(c) a party must plead as an affirmative defense 'discharge in bankruptcy.'" *Bauers v. Bd. of Regents of the Univ. of Wis.*, 33 Fed. Appx. 812, 817 (7th Cir. 2002) (plaintiff who waited to alert the court and defendant of discharge in bankruptcy after judgment had been entered waived that defense). Thus, as TELAH acknowledges, the discharge may bear on the scope of relief it may ultimately recover from Ms. Weaver personally, particularly to the extent TELAH seeks monetary relief based on a discharged pre-bankruptcy debt. *See* 11 U.S.C. § 101(12) ("The term 'debt' means liability on a claim."). But that isn't the same as dismissing Ms. Weaver from the case. At the pleading stage, a Rule 12 motion isn't a vehicle for piecemeal dismissal of particular theories. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The question at this stage is whether TELAH has alleged plausible claims against Ms. Weaver, not whether every requested remedy will ultimately be available.

Accordingly, Ms. Weaver hasn't shown that the bankruptcy discharge defeats TELAH's claims against her as a matter of law. First, the discharge doesn't bar claims based on conduct after the bankruptcy discharge. *See* 11 U.S.C. § 727(b). The amended complaint—filed after Ms. Weaver's bankruptcy discharge—alleges that, at the time of filing, the defendants (including Ms.

---

[9] None of the exceptions to discharge in § 523, which range from taxes and customs to student loans to domestic support obligations seem applicable here.

Weaver) were "still engaged in the conspiracy to commit further infringement of [TELAH's] copyrights and will continue to illegally copy and disseminate the property of [TELAH]" [132 ¶ 46]. These allegations of ongoing conduct are sufficient to prevent dismissal based on the bankruptcy discharge. Though Ms. Weaver disputes the allegations, minimizes her role, and says the amended complaint mainly concerns pre-bankruptcy conduct, these arguments raise issues not properly resolved today on the mere pleading.

Second, the discharge doesn't necessarily bar injunctive relief. The Bankruptcy Code defines a "claim" to include right to payment and right to an equitable remedy for a breach of performance if that breach gives rise to a right to payment. 11 U.S.C. § 101(5); *Ohio v. Kovacs*, 469 U.S. 274, 282-83 (1985) (an injunction requiring payment of money is a "claim."). And an equitable remedy for a breach can be dischargeable if, when it turns out that the equitable remedy is unobtainable, a money judgment is instead available. *United States v. Apex Oil Co.*, 579 F.3d 734, 736 (7th Cir. 2009). But, critically, a request for forward looking injunctive relief can't be discharged if it can't be replaced with a monetary payment. *Id.* at 737 (bankruptcy proceeding didn't discharge an injunction requiring an environmental cleanup).

Here, TELAH seeks prospective injunctive relief under the Copyright Act and the Lanham Act to prevent future infringement along with destruction or impoundment of allegedly infringing copies [132 ¶ 64; *id.* at 16-17].[10] Accordingly, the bankruptcy discharge may be relevant

[10] Both the Copyright Act and the Lanham Act authorize monetary remedies, but Ms. Weaver hasn't attempted to show that these remedies are substitutes for the injunctive relief that TELAH seeks. The Copyright Act separately authorizes injunctions to prevent or restrain infringement, 17 U.S.C. § 502, impoundment and disposition of infringing articles, 17 U.S.C. § 503, and damages or profits, 17 U.S.C. § 504. Likewise, the Lanham Act separately authorizes injunctions, 15 U.S.C. § 1116, monetary recovery, 15 U.S.C. § 1117, and delivery up and destruction of infringing articles, 15 U.S.C. § 1118. These provisions don't appear to give TELAH a right to accept monetary payment in lieu of an injunction against future infringement. *See Matter of Udell*, 18 F.3d 403, 408-10 (7th Cir. 1994).

at a later stage of litigation, but it doesn't require dismissal now. Ms. Weaver may raise discharge in bankruptcy as an affirmative defense in her answer to the amended complaint and may advance any properly supported arguments concerning scope of available relief at the proper juncture.

3. *Allegations against Ms. Weaver Individually.*

Ms. Weaver also says that TELAH improperly groups her and her codefendants together in the amended complaint's allegations and fails to identify actionable conduct by her individually. Pleading against several individuals or a group is permissible so long as each defendant is properly on notice of the "contours" of the claim against her. *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009). The amended complaint provides ample well-pleaded allegations of wrongdoing against Ms. Weaver. TELAH alleges, among other things, that Ms. Weaver participated in livestreams or videos involving TELAH's copyrighted works, created or distributed recordings of TELAH's literary works, and created or sold t-shirts bearing images of which TELAH was the copyright or trademark owner [*see* 132 ¶ 39-55]. And because Ms. Weaver's filing wasn't a procedurally proper summary judgment motion either, the court need not decide whether the present record would support judgment on any particular count, except as found already.

4. *Fair Use and the First Amendment.*

Ms. Weaver's fair use and First Amendment arguments also don't support dismissal either. Fair use is an affirmative defense. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). But "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses." *Id.* This is because such defenses "typically turn on facts not before the court at that stage in the proceedings." *Id.* Though fair use may be resolved early on in the appropriate circumstance, *see id.* at 690-92, this is not such a case, as Ms. Weaver says only that her use of the

material in question was "in limited ways for discussion, education, and preservation," which falls under the protection of fair use. *See* 17 U.S.C. § 107. This argument is underdeveloped and fails to engage with the statutory factors in § 107, nor can the court say that the factual allegations in the amended complaint unambiguously establish all the elements of the defense, such that dismissal is appropriate. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Indeed, in deciding summary judgment, the court has found no reasonable basis for a jury to find fair use.

The First Amendment argument—that TELAH is attempting to "silence [Ms.] Weaver's protected religious expression and academic commentary"—isn't suitable for resolution at this stage either. "The general rule against deciding an affirmative defense at the Rule 12(b)(6) stage applies with full force to a First Amendment defense, which sometimes, perhaps often, turns on disputed facts, facts outside the complaint, or both." *Am. All. For Equal Rts. v. A.B.A.*, 2026 U.S. Dist. LEXIS 10904, 25 (N.D. Ill. Jan. 21, 2026) (Gottschall, J.).

5. *Limited Damages.*

Ms. Weaver next says the claims against her should be dismissed because, to the extent she was involved in infringement at all, it was *de minimis*. She points out that the revenue she generated from the production of the t-shirts was limited. But nowhere does Ms. Weaver point to any case law or statute stating that minimal profits defeats liability for copyright or trademark infringement actions as a matter of law.

6. *Emotional Distress and Requested Protective Relief.*

Finally, Ms. Weaver requests dismissal of the claims against her because the litigation has caused her emotional and mental distress. The court understands that lawsuits can be distressing, but emotional distress from litigation isn't a merits defense and doesn't justify dismissal of

otherwise viable claims. "Facing the court of public opinion under these conditions is sometimes stressful—but that is the nature of adversarial litigation." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 70 (1st Cir. 2022). This isn't a reason to dismiss any claims.

For these reasons, the court will deny Ms. Weaver's motion to dismiss [230] and order her to answer the amended complaint [132] by September 16, 2026.

MOTION FOR SANCTIONS

TELAH requests monetary sanctions against Mr. Bartel for, in its words, his "abusive pattern of filing repeated, duplicative motions voicing the same baseless arguments" that the court—across various presiders—has rejected time and time again. TELAH says it has spent approximately $20,000 responding to "nonsensical" arguments that Mr. Bartel continues to advance, and requests an award of its attorney fees.

After TELAH filed this lawsuit, Mr. Bartel appeared *pro se* on September 9, 2022 [35]. A month later, he contemporaneously filed three motions [44; 45; 46] and a fourth motion a week later [50], all seeking to add TELAH's corporate directors as parties here and to inform the court of earlier litigation involving the corporate directors. The filings were stricken by the magistrate judge as unsigned, with leave to refile [53].[11] Mr. Bartel then requested leave to add signature pages to the stricken motions [55; 56; 57; 58] and he filed another motion, asking the court to deny TELAH's request for a preliminary injunction hearing [54]. On November 3, 2022, Mr. Bartel filed another three motions requesting the court add TELAH's corporate directors as parties to this case [61; 62; 63]. Mr. Bartel filed several more motions in February 2023, including

[11] On October 14, 2022, the case was reassigned to the magistrate judge after all parties consented to the exercise of the jurisdiction [41]. *See* 28 U.S.C. § 636(c). When that magistrate judge retired, the case was reassigned to the undersigned presider.

a motion to cancel all of TELAH's copyright and trademark registrations because TELAH does not exist as a corporate entity [71], a motion in opposition to TELAH's request for a preliminary injunction [72], a motion to add an exhibit to his defense that shows TELAH's corporate directors were involved in a federal lawsuit in 1998 and 1999 [79], and an unsigned motion to add a trial brief from one of the previous lawsuits to his defense here [84]. The substance of these motions repeated his earlier assertions regarding earlier litigation involving TELAH's corporate directors.

More motions followed soon after. In April 2023, Mr. Bartel filed an unsigned motion seeking to again advance his argument regarding the corporate directors [101]. Then, in May 2023, Mr. Bartel filed six additional unsigned motions that repeated his earlier asserted arguments regarding the corporate directors and requesting cancellation of TELAH's copyrights and trademarks [105; 106; 107; 108; 109; 110]. Mr. Bartel filed two additional unsigned motions in June 2023 discussing TELAH's corporate directors [114; 115]. The magistrate judge ordered the unsigned filings stricken and warned the parties to stop filing frivolous motions [112; 117]. In ruling on several of the case's pending motions, the magistrate judge prohibited all parties from filing any additional motions without the court's permission until further notice [112]. That order was discharged ten days later [117]. Mr. Bartel then filed five more motions again raising issues with TELAH's corporate directors and TELAH as a corporate entity [124; 149; 157; 162; 171].

On July 17, 2023, the magistrate judge denied Mr. Bartel's request to add TELAH's corporate directors as parties to the case because corporations are considered distinct and separate legal entities with their own legal identities, and Mr. Bartel didn't sufficiently show that the court should disregard the corporate entity and pierce the corporate veil [130]. That order

also warned Mr. Bartel that "any future filings that raise or seek to expand upon arguments already presented to the Court or contain multiple motions within a single filing will not be viewed favorably" [*id.*].

The magistrate judge addressed another set of motions from Mr. Bartel on February 21, 2024, once more rejecting his arguments that TELAH isn't a legal entity or the proper entity to file this case and that TELAH's corporate directors should be joined as plaintiffs [193]. There, the court noted that "[l]ike in his other motions, Mr. Bartel reaches these precipitous legal conclusions without citing any legal authority in support." The magistrate judge once more rejected all Mr. Bartel's contentions, noted that "[t]his is now the Court's fourth order addressing Mr. Bartel's numerous motions," and ordered Mr. Bartel to show cause why he shouldn't be sanctioned for his motion practice and failure to comply with the court's orders.

After this case was reassigned, the court referred Mr. Bartel's response to the court's order to show cause to the current magistrate judge [200]. In recommending that the court not impose any sanction on Mr. Bartel, the magistrate judge noted that the issue was "close," as Mr. Bartel's conduct was problematic, both in substance and volume [205]. The magistrate judge noted that Mr. Bartel, as a *pro se* litigant, perhaps sincerely—albeit misguidedly—believed that his arguments had merit, but the sheer volume of his filings appeared "to cross the line between zealous self-advocacy and harassment," along with appearing to be a delay tactic. But, concluded the magistrate judge, a future filing restriction wasn't warranted, because the court's initial show cause order issued nearly a year and a half ago and Mr. Bartel had refrained from filing any motions or documents since then. The magistrate judge once more warned Mr. Bartel to file further motions judiciously and in compliance with the court's rules. The undersigned adopted this

recommendation on August 5, 2025 after no party objected, reminding Mr. Bartel of the magistrate judge's admonition [206].

Unfortunately, Mr. Bartel did not heed this warning. In October 2025, Mr. Bartel filed five more motions that rehash already-rejected arguments that TELAH's corporate directors must be added as parties to the case and that TELAH doesn't exist as a proper entity [227; 228; 229; 235; 236]. His filings this time even implicated TELAH's counsel, for example by stating that counsel "aided and abetted" TELAH's corporate directors in a "fraudulent scheme to obscure the identity of [TELAH] from this Court and the Defendants" [228]. On October 16, 2025, TELAH stated that it intended to file a motion for sanctions against Mr. Bartel after the expiration of the safe harbor period [238]. On November 13, 2025, TELAH filed its motion requesting an award of attorney fees as a sanction, citing both Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.[12] Mr. Bartel responded to the motion on November 24, 2025 [263] and TELAH replied on December 4, 2025 [272]. *See* Fed. R. Civ. P. 11(c)(1) (notice and opportunity to be heard requirement).

"The purpose of Federal Rule of Civil Procedure 11 sanctions is to deter baseless filings in the district court." *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024). Sanctions may be appropriate if the court finds that a motion or other filing has been presented for an improper purpose, if a party's claims or defenses are unsupported by the law or by a nonfrivolous argument for a change in the law, or if the allegations or other factual statements lack evidentiary support

[12] The Seventh Circuit hasn't weighed in on whether 28 U.S.C. § 1927 permits imposing sanction on a *pro se* party. The statute permits levying costs or fees for excessive costs on "[a]ny attorney or other person admitted to conduct cases in any court of the United States[.]" 28 U.S.C. § 1927; *see Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997). The court need not decide whether § 1927 applies to *pro se* parties today, for reasons clear in this order, but would follow the plain language of this statute in concluding that it does not.

or are unlikely to have such support even after a reasonable opportunity for investigation. Fed. R. Civ. P. 11(b)(1)-(3). Determining whether sanctions are appropriate requires an "objective inquiry into whether the party [] should have known that his position [wa]s groundless." *Cuna Mut. Ins. Soc'y v. Off. & Prof'l Emps. Int'l Union Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). "[F]or Rule 11 purposes a frivolous argument is simply one that is baseless or made without a reasonable and competent inquiry[.]" *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000) (quotations omitted). And *pro se* parties are subject to sanctions under Rule 11. *See Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 970-71 (7th Cir. 2026); *see also Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 n.4 (7th Cir. 1989) ("[T]he district court is authorized to impose sanctions against a pro se plaintiff who successively seeks to press a wholly frivolous claim.").

If the court so chooses to impose a sanction, it "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P 11(c)(4). Sanctions can be in the form of a nonmonetary directive, payment to the court, or, "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

To put it bluntly, enough is enough. Over the course of multiple years—and now across the chambers of multiple judges—Mr. Bartel has inundated both the court and TELAH with a flood of repetitive, frivolous, vexatious, and at times vituperative filings. Mr. Bartel has been instructed on multiple occasions that the arguments he has advanced, and continues to insist on advancing even after being decided, are without merit. *See Cuna Mut. Ins. Soc'y*, 443 F.3d at 560. His conduct has impeded the efficient administration of this case, burdened opposing counsel

with unnecessary time and expense, and diverted the court's attention from other matters properly before it. Despite his prior assurances that his filings weren't intended to harass TELAH or delay proceedings, their continued volume and tenor suggest otherwise. Indeed, in a recent filing, Mr. Bartel has resorted to personal attacks, in a filing labeling TELAH's counsel "unethical and unscrupulous" [235 at 6]. The court must conclude that Mr. Bartel's tactics at this point are designed to harass TELAH. *See* Fed. R. Civ. P. 11(b)(1).

Mr. Bartel also continues to advance his positions with a complete lack of legal support too, despite previous warnings from the court to cease doing so. *See Berwick Grain Co.*, 217 F.3d at 504 ("legally unreasonable arguments…may incur penalty."). On August 5, 2025, the court narrowly declined to impose sanctions on Mr. Bartel, instead reminding him—for what can only be described as the umpteenth time—to "file future motions judiciously and in compliance with the applicable rules" [206]. Yet his conduct since then demonstrates either a persistent inability or a willful refusal to heed the court's repeated instructions. Even in his response to TELAH's motion requesting sanctions, Mr. Bartel once more rehashes the same arguments. It is regrettable that Mr. Bartel seems to think the court's orders and procedural rules don't apply to him, but his conduct will be tolerated no more. *See Eberhardt*, 122 F.4th at 686-87 (affirming district court's imposition of monetary sanctions on attorney who, in a *pro se* proceeding, "filed over a dozen motions—including three motions for a preliminary injunction and two motions for a temporary restraining order—which were almost entirely denied" because district court reasonably determined that his tactics were designed to harass).

The court remains mindful of Mr. Bartel's *pro se* status. To inform the court's assessment of reasonable attorney fees and expenses, the court will order TELAH to file, by September 16,

2026 an itemized bill of costs and fees associated with responding to or defending against Mr. Bartel's arguments regarding TELAH's corporate structure or existence, albeit TELAH would be well advised to smartly choose that period of time or moments in which it believes the filings became frivolous. Mr. Bartel will have until September 30, 2026 to respond. No other filings will be accepted related to this motion for sanctions.

CONCLUSION

For these reasons, as to summary judgment, the court DENIES Ms. Weaver's motion to strike [251], GRANTS Mr. Bartel's motion for an extension of time to reply to his own summary judgment motion and to respond to TELAH's summary judgment motion [260], GRANTS Mr. Bartel's motion to excuse the confer requirement [248], STRIKES Mr. Bartel's summary judgment motion [227], GRANTS TELAH's motion for partial summary judgment as to copyright ownership and liability of the named defendants for counts 1, 3, 4, and 5 [244], and ORDERS the parties to file status reports or proposals (not to exceed three pages each), no later than September 16, 2026, on how they propose to proceed with the issue of damages or other remedies on these counts as well as resolution of any other count, as well as to proceed with Mr. Havel's and Mr. Bartel's counterclaims.

As to discovery motions, the court DENIES Mr. Havel's motion to determine the sufficiency of answers to requests for admission [221], DENIES Mr. Havel's motion to clarify and preserve the record [240], DENIES AS MOOT Mr. Bartel's motion for an extension to file a status report ahead of the previously vacated scheduling conference [226], and DENIES AS MOOT Mr. Bartel's original motions for leave to file an amended counterclaim [229] and motion

for joinder [228], and DENIES Mr. Bartel's subsequent motion for leave to file an amended counterclaim [236] and motion for joinder of parties [235].

As to the remaining motions, the court DENIES Ms. Weaver's motion to dismiss [230], ORDERS Ms. Weaver to answer the amended complaint [132] by September 16, 2026, GRANTS TELAH's motion for sanctions [258], ORDERS TELAH to file, by September 16, 2026, an itemized bill of costs and fees consistent with this opinion, and AFFORDS Mr. Bartel until September 30, 2026 to respond.

SO ORDERED.

August 26, 2026

*s/ Damon R. Leichty*
Judge, United States District Court