FILED
SEP 16 2026
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

SOUTH BEND DIVISION

THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC.
d/b/a THE TELAH FOUNDATION,
Plaintiff,
v.
STEPHEN ROBERT HAVEL;
CATHY JOANN WEAVER; and JASON BARTEL,
Defendants.
CAUSE NO. 3:22-CV-00395-DRL-SJF

**DEFENDANT STEPHEN ROBERT HAVEL'S MOTION TO RECONSIDER AND REVISE THE AUGUST 26, 2026 INTERLOCUTORY ORDER UNDER FED. R. CIV. P. 54(b)**

Defendant Stephen Robert Havel, appearing pro se, respectfully moves under Federal Rule of Civil Procedure 54(b) for reconsideration and revision of the Court's August 26, 2026 Opinion and Order, Dkt. 276, to the extent it adjudicated ownership and liability against him on Counts I, IV, and V. The motion does not ask the Court to revisit the settled distinction between physical possession and copyright ownership. Instead, it asks the Court to reconsider whether the present record establishes, as a matter of law, the identity and ownership of the particular works Plaintiff alleges Mr. Havel infringed and whether the factual disputes identified by the Court can be separated from the resulting liability and remedy determinations. Mr. Havel also asks the Court to clarify the status of Count II, the Video Works claim, which was not adjudicated in Dkt. 276, because newly emphasized contemporaneous evidence concerning the Beyond Human—The Last Call video series bears directly on provenance, attribution, notice, and the parties' remaining factual disputes concerning that work.

The Court expressly recognized that Mr. Havel contends TELAH's audio records are incomplete and unreliable; that TELAH's logs contain gaps and unavailable tapes; that TELAH has not produced a complete master-copy list; and that the probate and settlement documents do not identify or inventory the individual audio tapes. Dkt. 276 at 5–6. The Court concluded that it was unclear how those disputes bore on infringement liability. Id. Mr. Havel respectfully submits that, for the numbered recordings Plaintiff itself places at issue, the connection is direct: a plaintiff must identify the protected work allegedly infringed and establish the ownership interest it seeks to enforce in that work.

## I. RULE 54(b) AUTHORIZES REVISION OF THE NONFINAL ORDER

The August 26, 2026 order is interlocutory because the Court has not entered a final judgment resolving all claims and all parties' rights and liabilities. The Court expressly ordered further proceedings concerning damages and other remedies, resolution of other counts, and the remaining counterclaims. Dkt. 276 at 38, 65. Rule 54(b) permits revision of an interlocutory order before final judgment. See Galvan v. Norberg, 678 F.3d 581, 587 (7th Cir. 2012).

The Seventh Circuit has also recognized reconsideration where a court has misunderstood a party, decided outside the adversarial issues presented, or made an error of reasoning or apprehension, and where controlling or significant facts or law warrant revision. See Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). Mr. Havel does not ask the Court merely to change its mind. He asks the Court to reconsider the legal consequence of factual distinctions that the Opinion itself identifies but does not resolve.

## II. COUNT I SHOULD BE RECONSIDERED OR CLARIFIED BECAUSE THE RECORD DOES NOT IDENTIFY EACH PARTICULAR AUDIO WORK

The First Amended Complaint identifies particular recordings by number: 149, 263, 004, 030, 161, 156, 011, 054, 052, 050, and 200 through 204. Dkt. 132 ¶ 51. The Court relied on those allegations in finding the infringement record sufficiently concrete. Dkt. 276 at 7, 24–26. But identifying a tape number as something allegedly played is not the same proposition as establishing that the numbered tape is one of the protected works owned by Plaintiff.

The record contains tape-number gaps, entries identifying tapes as unavailable, differing archive lists, and uncertainty concerning the completeness of the material deposited or otherwise relied upon for the registrations. The Court expressly recognized the dispute concerning missing or unavailable tapes and the absence of a complete master-copy list. Dkt. 276 at 5–6. Those are not merely collateral bookkeeping issues when Plaintiff's theory depends on particular numbered recordings.

A copyright plaintiff must establish ownership of a valid copyright and copying of protected expression. See Dkt. 276 at 16 (citing Design Basics, LLC v. Signature Constr., Inc., 994 F.3d 879, 886 (7th Cir. 2021)). Where Plaintiff identifies individual recordings as the allegedly infringed works, the evidentiary chain should connect those recordings to the registered works and to Plaintiff's ownership rights.

Mr. Havel does not argue that possession of a physical cassette defeats copyright ownership. The issue is different. A general probate settlement may transfer intellectual-property interests, but the existence of that general transfer does not automatically establish, without further factual connection, that every later-numbered recording in a disputed archive is one of the

particular registered works Plaintiff claims was infringed. The Court should therefore reconsider the Count I liability ruling or, at minimum, clarify that work identification and the related ownership chain remain open for factual determination and review.

## III. THE RECORD SHOWS THAT PLAINTIFF ITSELF DISTINGUISHED REGISTERED AND UNREGISTERED WORKS

Plaintiff's own June 30, 2023 proposed preliminary-injunction order draws an express distinction between the 486 audio recordings covered by Registration No. SRu298530 and later-numbered recordings that Plaintiff described as unregistered. The proposed order identified the recordings covered by SRu298530 as the "Registered Works," then separately identified tapes 487 through 1082 as "Unregistered Works," and then defined the Registered and Unregistered Works collectively as the "Copyrighted Works." Dkt. 120 at 1–2. Plaintiff likewise sought preliminary-injunction relief concerning both the recordings registered under SRu298530 and the separate "Unregistered Works." Dkt. 194 at 10.

That distinction is important to the particular-work issue presented here. Registration of the 486-recording library does not itself establish that every later-numbered recording in Plaintiff's larger archive is one of the works covered by that registration. Nor does this argument depend on the proposition that an unregistered work cannot be copyrighted. Unregistered copyrights may exist. The narrower point is that, when Plaintiff identifies particular numbered recordings as the works allegedly infringed, the record must connect each identified recording to the particular registered work or other asserted copyright and to the intellectual-property rights Plaintiff acquired through the probate proceedings.

The later registration history reinforces why the archive cannot be treated as a single undifferentiated body of works for purposes of ownership and infringement. Plaintiff subsequently registered a group including Tapes 487–498, identifying Steven Terry McCarter (Srrody) as author and Plaintiff as claimant by transfer "by operation of law." Plaintiff separately registered Tapes 528–538, identifying Total Overcomers Anonymous as author and claimant and stating that the works were made for hire. These registrations present different authorship and ownership theories for different portions of the numbered archive. They therefore underscore the need for work-specific identification and proof rather than treating the existence of SRu298530 as establishing ownership of every later-numbered recording.

The Court's August 26, 2026 Opinion recognized disputes concerning missing tapes, incomplete logs, archive consistency, and the absence of a complete master-copy list. Dkt. 276 at 5–6. Plaintiff's own prior description of "Registered Works," "Unregistered Works," and the collective "Copyrighted Works" shows why those disputes bear directly on identification of the particular copyrighted work allegedly infringed.

## IV. THE 1999 PROBATE SETTLEMENT DOES NOT ELIMINATE THE PARTICULAR-WORK IDENTIFICATION QUESTION

The February 22, 1999 probate Statement of Decision found no writing expressly conveying or transferring ownership of all intellectual property to the petitioners and found no evidence of a pre-mortem transfer. The later August 11, 1999 settlement approved by the probate court transferred specified property and intellectual-property rights held by the Public Administrator. The settlement property schedule, however, describes boxes and categories of

materials rather than providing an individual inventory matching the numbered recordings now alleged in this case.

The point is not that the settlement was ineffective. The point is that the settlement and the later copyright registrations are different evidentiary links in a chain of title. Plaintiff still must connect the particular work alleged to have been infringed to the particular intellectual-property interest it claims to own. The Court should not treat the general settlement language as resolving every factual question concerning the identity of every later-numbered recording in a disputed archive.

## V. COUNT III SHOULD BE RECONSIDERED OR CLARIFIED BECAUSE THE PUBLIC REPRODUCTION NOTICE BEARS DIRECTLY ON AUTHORIZATION, GOOD FAITH, AND WILLFULNESS

Count III concerns the Book. The Book and the Group's Heaven's Gate website displayed a reproduction notice stating: "Permission is hereby granted to reproduce this book, or portions thereof," subject to unchanged content and noncommercial use. Exhibit 17 reproduces the notice displayed at heavensgate.com/book/02.htm. Mr. Havel participated in pre-suit, noncommercial recordings of portions of the Book and, with Ms. Weaver, ceased the challenged recording activity after Plaintiff commenced this action.

The notice does not necessarily resolve the legal scope of authorization as to an audiobook or other derivative use. It does, however, create a concrete factual issue concerning the reasonableness of Mr. Havel's understanding, authorization or implied license, fair use, willfulness, and damages. Plaintiff's ownership ruling does not by itself establish that Mr. Havel acted willfully in the face of a public reproduction notice issued by the Group itself.

## VI. COUNT IV SHOULD BE RECONSIDERED OR CLARIFIED BECAUSE C.B.E. PROVENANCE AND PRIOR DISSEMINATION BEAR ON THE RECORD

Count IV concerns the C.B.E. visual work. The February 22, 1999 probate Statement of Decision specifically addressed the C.B.E. painting and found no evidence that the intellectual-property rights in the physical painting had been transferred to the petitioners. The later settlement should therefore be read together with the particular property and rights it transferred. Mr. Havel does not contend that physical ownership of the painting alone determines copyright ownership; he contends that the provenance finding is part of the factual record bearing on the asserted chain of title.

The particular provenance issue is more specific than a generalized challenge to the registration. Plaintiff's own discovery response admits that the "Older Member artwork" was created by David Cabot Van Sinderen. See Dkt. 233 at 7. The record also contains a Copyright Office catalog entry for "The Meeting," Registration No. VAu000041610, dated November 18, 1982, identifying Olliver Odinwood as the copyright claimant and identifying fourteen full-color acrylic illustrations by Olliver Odinwood, with a 1980 creation date. See Exhibit 26. That registration predates Plaintiff's 1997 C.B.E. registration by approximately fifteen years.

The probate record further documents that the Public Administrator marshaled a certificate of copyright registration for artwork for the screenplay "The Meeting" in the name of decedent Olliver Odinwood and that the certificate was recovered from the decedent's residence. See Exhibit 26. The same probate decision found, as to the C.B.E. painting, that there was no evidence that the decedents gave the petitioners the intellectual-property rights in the painting. See id. These records do not, standing alone, establish that Plaintiff could never own a later lithographic or derivative version. They do establish a concrete authorship and chain-of-title

question concerning what preexisting artwork was incorporated into the 1997 C.B.E. work and what rights, if any, Plaintiff acquired in that preexisting material.

The record also reflects that the C.B.E. image was publicly disseminated before TELAH's present enforcement activity. Plaintiffs discovery responses identify David Cabot Van Sinderen as the creator of the older-member artwork. The historical provenance and dissemination bear on notice, knowledge, good faith, willfulness, damages, and the scope of extraordinary equitable relief.

Mr. Havel also states that he had been publicly using the Older Member image on his 3SPM YouTube channel since approximately 2007, including in connection with other Group paintings and MP3/audio materials. He further states that when he and Ms. Weaver later used the Older Member image on T-shirts, they obtained the image from Right to Know/Rkkody, where the image had already been publicly disseminated, and the image was also available on the Group's former Heaven's Gate website. Those T-shirt sales occurred before this lawsuit was filed. Mr. Havel states that neither he nor Ms. Weaver had seen Plaintiffs asserted 1997 C.B.E. registration before being sued, and that they stopped selling T-shirts using the Older Member/C.B.E. image and the other logo image after the litigation began. This chronology is relevant to notice and willfulness: whatever Plaintiffs registration may establish concerning ownership, it does not establish that Mr. Havel or Ms. Weaver knew of that registration or intentionally infringed it before suit. The longstanding public availability and prior dissemination of the image also warrant factual development concerning Plaintiffs knowledge, course of dealing, and the reasonableness of Defendants' understanding of the image's status.

Plaintiff's own discovery production, TELAH_000045, is also relevant. In communications addressing Havel and Bartel together, Plaintiff's representatives stated, concerning the original 200-tape CD and "the videotapes the Group left," that "we let that slide for two decades" before later demanding removal. Mr. Havel does not ask the Court to construe that statement as an express license to the C.B.E. image. Rather, it is evidence concerning Plaintiff's prior knowledge and course of dealing with Havel and Bartel and therefore bears on whether later conduct should be characterized as willful and whether enhanced statutory damages or extraordinary equitable relief is warranted.

At minimum, the Court should clarify that ownership of the registration does not itself resolve these state-of-mind and remedy questions. Those factual issues should remain available for development in the damages and remedies proceedings the Court has already ordered.

## VII. LONGSTANDING DISSEMINATION AND TELAH'S KNOWLEDGE ARE RELEVANT TO WILLFULNESS AND REMEDIES

The Court's liability ruling should not be understood to resolve willfulness merely because the Court found copyright ownership and liability on the claims identified in Dkt. 276. Willfulness is a separate factual issue concerning the defendant's state of mind. The historical record shows that Group audiovisual and visual materials were disseminated publicly for years before this lawsuit and that TELAH's representatives were aware of Havel's and Bartel's dissemination activity.

TELAH_000045 is particularly relevant because it addresses Havel and Bartel together and expressly describes a period of approximately two decades during which Plaintiff says it "let that slide" before demanding removal. Mr. Havel does not assert that this communication is an

express license to every work. Its significance is narrower and concrete: it is evidence of Plaintiff's knowledge, prior non-enforcement, notice, and course of dealing, and therefore bears on Havel's state of mind and the propriety of enhanced damages, attorneys' fees, and extraordinary equitable relief.

The same history includes Group videotapes and other materials that Plaintiff later treated as protected works, including the Beyond Human materials and Do's Final Exit video. Exhibit 18 provides additional contemporaneous evidence of the Beyond Human series' 1992 copyright attribution. Plaintiff's reliance on historical dissemination while also treating those materials as protected works makes the course-of-dealing evidence relevant to notice, willfulness, damages, and the resolution of the remaining Video Works claim.

## VII.A. NEW CONTEMPORANEOUS EVIDENCE CONCERNING THE BEYOND HUMAN VIDEO WORK

Exhibit 18 is a contemporaneous reproduction of the front and back jacket of a Beyond Human—The Last Call videotape. The jacket identifies the series as "Copyright @ 1992 by Total Overcomers Anonymous Monastery" and gives P.O. Box 6592, Anaheim, California. See Exhibit 18. This attribution predates TELAH's September 22, 1997 registration of the Video Works under PA0000867224 by approximately five years.

That evidence does not, by itself, establish that Mr. Havel owns the video copyright or that the 1992 jacket created a legal transfer of copyright. It does, however, materially sharpen the provenance and notice issue. The First Amended Complaint alleges that TELAH has owned the Video Works continuously since 1997 and that each Defendant knew or should have known that reproduction and distribution without TELAH's consent was infringement. Dkt. 132 ¶¶ 67–69.

The 1992 jacket is earlier contemporaneous evidence of how the Group itself publicly attributed copyright in the Beyond Human series, before TELAH's September 1997 registration. The Court should therefore distinguish the question of who ultimately acquired copyright through the 1999 probate settlement from the separate factual questions of what work was registered, what the registration claimed, what the original creators or Group entities represented before the registration, and what Mark and Sarah King knew or reasonably should have known when the Video Works were registered.

Mr. Havel's personal participation in several of the Beyond Human sessions is relevant to his firsthand knowledge of the provenance and circumstances of the recordings, but he does not rely on his appearance alone as proof that he is a co-author. The Court stated in Dkt. 276 that Mr. Havel's appearance in a video does not, standing alone, make him an author of the video or of a separate copyrighted work. Dkt. 276 at 31–32. Mr. Havel accepts that distinction. His point is narrower: his firsthand participation, combined with the 1992 jacket attribution, supplies evidence concerning the identity, historical provenance, and dissemination of the particular Video Works that should not be collapsed into the registration presumption without allowing the remaining factual record to be developed.

The significance is especially clear because Count II of the First Amended Complaint expressly asserts infringement of PA0000867224 against all Defendants. Dkt. 132 ¶¶ 65–73. Dkt. 276 granted summary judgment on Counts I, III, IV, and V, but did not adjudicate Count II. The Court should therefore preserve Count II for work-specific factual development, including the relationship between the 1992 attribution, the particular videotapes included in PA0000867224, the registration materials, the 1999 transfer, and Plaintiff's claimed knowledge and notice concerning the Video Works.

## VIII. COUNT V SHOULD BE RECONSIDERED OR, AT MINIMUM, CLARIFIED AS TO ITS UNDERLYING WORKS AND CONDUCT

The Court's detailed ruling grants judgment against Mr. Havel on Count V for contributory infringement. Dkt. 276. Mr. Havel therefore does not present Count V as wholly unresolved. He requests reconsideration or clarification because the Count V ruling rests on alleged underlying direct infringement and on findings concerning knowledge and material contribution. If the particular underlying works remain subject to the work-identification dispute described above, the Court should clarify the precise works and acts that support the Count V determination.

This request is not an attempt to relitigate the general elements of contributory infringement. It is intended to ensure that any final judgment and damages award identify the particular copyrighted works and particular conduct for which Mr. Havel is liable, rather than relying on a generalized theory concerning an entire archive.

## IX. REMEDIES SHOULD NOT BE CALCULATED ON AN UNDIFFERENTIATED LIBRARY-WIDE BASIS

If the Court does not revise the liability rulings, damages and remedies should nevertheless proceed on a work-specific record. Plaintiff should identify: (1) the specific work; (2) the registration and deposit material relied upon; (3) the particular act attributed to Mr. Havel; (4) the period of alleged infringement; (5) the damages theory—actual damages, profits, or statutory damages; (6) the amount sought; and (7) the evidence supporting the amount. Judge Gotsch's Dkt. 194 ruling supports this structure: Plaintiff's claimed difficulty in quantifying actual damages was rejected on the evidence, and the Court found actual damages readily

determinable as de minimis because Plaintiff had agreed to safeguard, archive, and control the materials rather than sell them. Dkt. 194 at 32–33. The Court also found the magnitude of possible statutory damages speculative where Plaintiff had not addressed the applicable factors. Id. at 38. Dkt. 194 was not a final damages ruling, but it supports requiring particularized proof before an aggregate or extraordinary remedy is considered.

Mr. Havel disputes actual economic damages, unsupported lost licensing revenue or lost sales, willfulness, enhanced or maximum statutory damages, profits not attributable to his conduct, the necessity or scope of permanent injunctive relief, and attorney fees or costs not authorized by law. The Court should not permit a damages proceeding to transform disputed historical archive material into an undifferentiated measure of damages.

## X. THE 1999 BREYER SETTLEMENT AGREEMENT AND AN UNRESOLVED MATERIAL EVIDENTIARY GAP

Accordingly, Defendant respectfully requests that the Court reconsider the summary-judgment rulings to the extent they depend upon an assumption that the 1999 Breyer materials conclusively resolve all questions concerning the particular works, their provenance, dissemination, or Plaintiff's asserted rights. At minimum, the Court should clarify that the contents and legal effect of the referenced Settlement Agreement, the circumstances surrounding its absence, and the relationship between the materials contemplated for dissemination and the particular recordings alleged in this case remain factual matters that cannot simply be resolved against Defendant on the present record. Defendant further requests narrowly targeted relief sufficient to permit the Court to determine whether the Settlement Agreement can be obtained

from the court file or another appropriate source, and, if it cannot, what admissible secondary evidence may establish its contents.

The subsequent course of dissemination provides additional context without requiring the Court to treat possession of a copy as copyright ownership. Plaintiff's own discovery production, TELAH_000045, (see Exhibit 32) contains the Kings' statement that, concerning the original 200-tape CD and "the videotapes the Group left," "we let that slide for two decades" before demanding removal. Exhibit 32. Defendant also possesses documentation of two CDs received from TELAH that contain three audio files each, with 2008 creation dates and "Everyone" shown in the file properties as owner. Exhibit 33. Defendant does not contend that these facts alone establish a license. They are evidence of the historical dissemination course surrounding the materials that the Breyer decree expressly contemplated disseminating and are relevant to notice, authorization, good faith, willfulness, and the factual development necessary to identify the particular works at issue.

This evidence matters because the Court's August 26, 2026 Opinion recognizes that the parties dispute the completeness and consistency of the audio archive, including missing or unavailable tapes and the absence of a complete master-copy list. The Court also recognized that Defendant contends the probate and settlement documents do not identify or inventory the individual audio tapes. Dkt. 276 at 5–6. Those issues are material when Plaintiff's claims depend upon identifying particular numbered recordings as particular protected works and establishing the ownership interest Plaintiff seeks to enforce.

The discovery record continued to document the absence of the agreement. Plaintiff's September 9, 2025 response to Request for Admission No. 6 admits that the quoted

dissemination provision is in a 1999 consent decree, while disputing that Judge Breyer signed it and disputing that the Moreas provided the CDs. Plaintiff's response to Request No. 7 denies the proposition concerning distribution to "verified former members," but also states that Plaintiff does not have a copy of the referenced Settlement Agreement and therefore cannot admit or deny what it says. Exhibit 29. Plaintiff's response to the motion concerning the RFAs likewise states that Plaintiff does not have a copy of the Settlement Agreement. Exhibit 30.

The April 5, 2024 Joint Status Report makes the discovery history part of the federal record. Defendant reported that he and Plaintiff's counsel discussed the Settlement Agreement, that counsel had reviewed the Consent Decree but did not see language directing Plaintiff to give intellectual property to Defendant, and that Defendant therefore sought the separate Settlement Agreement. The report records counsel's statement that he did not have the Settlement Agreement and would ask his client whether it had it. It further records discussion that the agreement might have been "destroyed," followed by Defendant's request for information about when and how it was destroyed, to which the report records no response. The report identifies the Settlement Agreement as the first of the remaining unresolved disputes. Exhibit 28.

The critical language is not merely historical background. The Consent Decree itself directs that dissemination be conducted "as set forth in the Settlement Agreement." Thus, the Settlement Agreement is identified by the federal decree as the document containing the terms governing the dissemination contemplated by that decree. Defendant sought that document because independent evidence from former member Jason Bartel indicates that the settlement required certain Group intellectual property to be made available to "verifiable former Class members." Defendant does not ask the Court to assume that Bartel's description is conclusively

correct; it is evidence explaining why the missing agreement was material and why Defendant sought it.

The 1999 Consent Decree in The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation v. Right to Know, No. CV-98-00892-CRB, expressly addressed dissemination of the Humphrey audio materials. The docket reflects the July 9, 1999 Consent Decree entered by Judge Charles R. Breyer. Plaintiff later admitted that the quoted provision appears in a 1999 consent decree: "The Moreas will provide TELAH with one copy of the two CD set of CD's created by Humphrey containing copies of audiotapes of classroom sessions by The Class ('the Audiotape CD Set'). From this copy, TELAH will make a new revised Audiotape CD Set and will disseminate it as set forth in the Settlement Agreement." Exhibit 27; Exhibit 29.

The record warrants reconsideration because the August 26, 2026 Opinion treats the 1999 federal consent decree and the later California probate settlement as establishing the relevant ownership framework, while the record also contains a separate, expressly referenced Settlement Agreement whose contents were never produced despite Defendant's repeated request. Defendant does not contend that the missing agreement automatically proves that Plaintiff authorized Defendant's conduct. The narrower point is that the agreement was expressly incorporated by reference for purposes of dissemination, and its absence leaves a material factual and evidentiary question unresolved.

## XI. RELIEF REQUESTED

- reconsider and revise the Count I ownership/liability ruling, or alternatively clarify that the identity of each particular audio work alleged to have been infringed and its connection to Plaintiff's registered work and chain of title remain subject to factual determination;

- reconsider and revise the Count IV ruling, or alternatively clarify that C.B.E. provenance, historical dissemination, Plaintiff's prior knowledge, notice, willfulness, and remedy-related factual issues remain open;

- reconsider and revise or clarify the Count III ruling so that the public reproduction notice, authorization, good-faith reliance, lack of willfulness, and damages-related factual issues remain available for determination;

- reconsider or clarify Count V so that any liability and damages determination is tied to the particular underlying works and conduct actually established against Mr. Havel;

- direct Plaintiff to provide a work-specific damages and remedies statement before substantial damages discovery proceeds;

- permit narrowly targeted factual development concerning work identification, damages, notice, willfulness, and remedies;

- clarify that Count II remains unresolved and permit targeted discovery concerning the provenance, registration, and attribution of the Beyond Human—The Last Call Video Works; and

- grant such other relief as the Court deems just and proper.

Respectfully submitted,

STEVEN ROBERT HAVEL

Defendant, pro se

Date: September 16, 2026