EXHIBIT INDEX

Defendant Stephen Robert Havel's Motion to Reconsider and Revise

the August 26, 2026 Interlocutory Order

**Exhibit 17 — Heaven's Gate Book Copyright and Reproduction-Permission Notice**

Copyright/reproduction-permission notice displayed with the Heaven's Gate Book on the Group's website.

**Exhibit 18 — Beyond Human — The Last Call: 1992 Copyright Attribution**

Video-tape jacket showing the 1992 copyright attribution to Total Overcomers Anonymous Monastery.

**Exhibit 26 — Copyright Office Record for "The Meeting" and Related 1999 Probate Record**

Copyright Office/probate materials concerning Olliver Odinwood, the 1982 registration, and the C.B.E. provenance issue.

**Exhibit 27 — 1999 Case No. 3:98-cv-00892-CRB — TELAH v. Right to Know Civil Docket**

Federal docket reflecting the 1999 TELAH v. Right to Know proceeding and Consent Decree.

**Exhibit 28 — April 5, 2024 Joint Status Report, Dkt. 198**

Joint status report documenting the parties' discussion of the Breyer Settlement Agreement and the unresolved discovery issue.

**Exhibit 29 — Plaintiff's Response to Havel's Requests for Admission, Dkt. 209**

Responses concerning the 1999 Consent Decree, Humphrey CDs, the Settlement Agreement, and related admissions/denials.

**Exhibit 30 — Plaintiff's Response to Havel's Motion to Determine Sufficiency of RFAs, Dkt. 233**

Plaintiff's response concerning the Settlement Agreement and its stated inability to produce or admit its contents.

**Exhibit 31 — Carlan Doti (Crlody) Email to Havel — September 11, 2008**

Email stating that, as part of the settlement, Mark was supposed to make the CDs RKK and Doti made available to verifiable former Class members.

**Exhibit 32 — TELAH_000045 — Mark and Sarah King Communication to Havel**

Plaintiff discovery production containing the Kings' statement concerning the original 200-tape CD and "the videotapes the Group left."

**Exhibit 33 — Documentation of TELAH's Two-CD Set Containing Six Audio Files**

Documentation of two CDs received from TELAH, including labels, copyright notices, file dates, and file-property information.

The exhibits listed above are supplied as separate exhibit files and are also preceded by individual cover pages in the exhibit packet.

**Exhibit 17**

Exhibit 17

Heaven's Gate Book Copyright and Reproduction-Permission Notice

Copyright/reproduction-permission notice displayed with the Heaven's Gate Book on the Group's website.

EXHIBIT 17

HEAVEN'S GATE BOOK COPYRIGHT AND REPRODUCTION-PERMISSION NOTICE

Copyright notice displayed with the Heaven's Gate Book on the Group's website

**Source:** Heaven's Gate website, heavensgate.com/book/02.htm

**Document shown:** Copyright page for the Book, displaying "© Common Law Copyright 1996 by Heaven's Representatives."

**Reproduction language:** The notice states that permission is granted to reproduce the Book, or portions thereof, so long as the content is unchanged and the reproduction is for non-commercial purposes.

**Purpose of exhibit:** This exhibit is offered as evidence of the publicly displayed copyright and reproduction-permission notice relied upon by Defendant Cathy JoAnn Weaver in connection with her good-faith understanding of the Group's stated conditions for noncommercial reproduction of the Book.

heavensgate.com/book/02.htm

# Copyright

© Common Law Copyright
1996 by Heaven's Representatives
Printed in the New Mexico Republic, the united States of America

ALL RIGHTS RESERVED, WITHOUT PREJUDICE,
U.C.C. 1-207, U.C.C. 1-103.6

This book is protected by Common Law copyright. Permission is hereby granted to reproduce this book, or portions thereof, as long as the content is unchanged, i.e., nothing added to it or taken away from it as long as it is for non-commercial purposes.

No part of this publication may be reproduced or transmitted in any form or by any means, now known or to be invented or adapted, for the purpose of financial gain or profit.

*Website screenshot showing the copyright and reproduction-permission notice.*

**Exhibit 18**

Beyond Human — The Last Call: 1992 Copyright Attribution

Video-tape jacket showing the 1992 copyright attribution to Total Overcomers Anonymous Monastery.

# EXHIBIT 18

## Beyond Human — The Last Call

### 1992 Copyright Attribution on Video Tape Jacket

Source document supplied by Defendant Stephen Robert Havel

The jacket states: "Copyright @ 1992 by Total Overcomers Anonymous Monastery"

and identifies P.O. Box 6592, Anaheim, CA 92816.

**Exhibit 18 — Page 2**



# Beyond Human
## – The Last Call

### Te, Do, and Students

This series of tapes explains simply, clearly, and understandably how we get to "Heaven." DON'T STOP! READ ON! It explains how Heaven is not where we go after we die "if we were good," but it is a physical Kingdom Level above the human kingdom that can only be entered while we are very alive and well, after having broken all ties and licked all addictions of the human condition. This can be done only under the supervision of *representatives* of the "Heavenly" Kingdom (as Jesus was to His disciples) and at a time when that representative is incarnate in a human "vehicle" (or body). This is happening again – now – at the close of this Age as it was promised.

"Headquarters" in the literal physical Heavens sent two members from the Level Above Human (the Kingdom of God), who took over, or incarnated into, two human vehicles (bodies) in the early 1970's. After they *awakened* in those vehicles (realized that they had been sent from the Kingdom of God), they also realized that their "task" or mission was to restore the Truth of how a soul may literally make the transition from the human kingdom into the true Heavenly Kingdom after having *overcome* humanness. As they held meetings, telling their story in 1975-76, even though the media made many attempts to "strike them down," about a hundred individuals began to study with these two representatives. Within a short time, the numbers had reduced to around fifty, for the lessons were difficult and included overcoming such things as all sexuality or gender identification as well as breaking all self-limiting and restricting habits in order to become flexible – to become "crew minded" crew members. This small classroom, which became even smaller, was literally "lifted out" of the world into seclusion for a number of years.

*(Continued on back cover)*

**Tape VI *(Session II)* of VI**

2

Ti, the older representative (not speaking of the age of the body but of experience in the Heavenly Kingdom), did not need to experience the remaining lessons, and returned to Headquarters in 1985. This adjustment afforded even more difficult and advanced lessons for the class (as well as for Do, the remaining representative). That small classroom of now two dozen has satisfactorily completed its overcoming (they will not need to return to the human condition again and their minds – souls – will be entering physical bodies belonging to our *Heavenly Father's Kingdom*). Hence, it is time for them to participate in offering what they have experienced to others, those who find themselves *here now* for the express purpose of attempting that transition. The members of the class feel that, because of what they have gone through and now understand, the "transition time" will be significantly reduced for this final prospective "crop" or "harvest" of *overcomers*. In 1975, the information was publicly offered for less than a year. This time it will be offered for even a shorter time. We are at the close of an Age, and this possible *second* transitional or *overcomers'* classroom must be completed well ahead of many other events that must take place prior to this century's end.

Another description of what is happening at this time might be:

An Older Member in "God's House" (Headquarters in the literal physical Heavens) uses a younger member from God's House, assisted by new "graduates" from the human kingdom, to share the astounding yet perceivable "picture" of how any last remaining potential "heirs" to that "Kingdom" might become members in that household if they act quickly now at the end of this Age.

Original Definition of Terms is one of the topics clarified in these tapes (language (tongues) came from the Kingdom of God and was taught to humans; however, opposing forces have successfully, through the centuries, sold man on wrong definitions of terms in order to hold man in darkness or separation from God).

A few examples are:

***Death** is separation from God.*

***Life** is possessed by one who knows the truth* concerning the Kingdom of God. (These terms apply to the soul and have nothing to do with the body. A body which is shed through old age, disease, accident, or murder merely forces a soul into a sleep state until it is replanted in the human perennial vine or household to which it is still bound.)

***Resurrection*** occurs when a soul returns from misinformation (darkness, death) to Truth (life) concerning God and man.

***Heaven*** is the place, in all that is, where the Most High God resides (even though some salvageable souls are taken there at times for their dormancy before replanting for another chance at overcoming death).

* * * * *

Like we said at the beginning, these tapes tell us how to get to Heaven. If you want to go – you've found your classroom. Good luck! – It's tough! – We'll help you.

* * * * *

Rev. 3:21 *To him that overcometh will I grant to sit with Me in My throne, even as I also overcame, and am set down with My Father in His throne.*

Copyright 1993 by Total Overcomers Anonymous Monastery
P.O. Box 6892, Anaheim, CA 92816

copyright notice

Exhibit 18 — Page 1

**Exhibit 26**

Copyright Office Record for "The Meeting" and Related 1999 Probate Record

Copyright Office/probate materials concerning Olliver Odinwood, the 1982 registration, and the C.B.E. provenance issue.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

**THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC.**
**d/b/a THE TELAH FOUNDATION,**
**Plaintiff,**

**v.**

**STEVEN ROBERT HAVEL;**
**CATHY JOANN WEAVER; and JASON BARTEL,**
**Defendants.**

**CAUSE NO. 3:22-CV-00395-DRL-SJF**

# EXHIBIT 26

## Copyright Office Record for "The Meeting" and Related 1999 Probate Record

Copyright Office/probate materials concerning Olliver Odinwood, the 1982 registration, and the C.B.E. provenance issue.

*Submitted in support of Defendant Stephen Robert Havel's*
*Motion to Reconsider and Revise the August 26, 2026 Interlocutory Order*

**Exhibit 26 – Prior Copyright by Original Artist (Ollody)**

Exhibit 26 contains illustrations created by "Ollody," a former member of the Heaven's Gate group who produced artwork for the classroom and copyrighted his work under the pen name **Olliver Odinwood in 1982**. The exhibit includes copies of the original illustrations and references to the 1982 registration, which predates Plaintiffs' 1997 copyright application by fifteen years. Plaintiffs admitted in discovery that they have no written assignment from Ollody and no documentation showing that his copyrights were ever transferred to them. This prior copyright ownership conclusively defeats Plaintiffs' claim to exclusive rights over the visual artworks in Count IV and demonstrates that Plaintiffs' 1997 filing omitted required information about preexisting copyrighted work.

The origin and use of the Image Plaintiffs call the "Celestial Being Entity" aka C.B.E. Image – what a member of the Kingdom of Heaven May Look Like.

https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=1&ti=1,1&SAB1=

Labeled View

***The Meeting.***

**Type of Work:** Visual Material
**Registration Number / Date:** VAu000041610 / 1982-11-18
**Title:** The Meeting.
**Notes:** Cataloged from appl. only.
**Copyright Claimant:** Olliver ***Odinwood***
**Date of Creation:** 1980
**Authorship on Application:** 14 full color acrylic ill.: Olliver ***Odinwood***.
**Previous Registration:** Motion picture screenplay prev. reg.
**Copyright Note:** C.O. correspondence.
**Names:** *Odinwood*, Olliver, 1948-

**Figure 1a – Copyright Registration filed by Olliver Odinwood, aka Ollody, Oll, Oliver, legally David Cabot Van Sinderen's of 14 Acrylic paintings he created around 1980 to 1982** that Havel (Swyody) and Mrcody and Srfody and many other classmembers witnessed him paintin then.

**Here is the text of the Copyright registration shown above**:

The Meeting.

*Type of Work: Visual Material

Registration Number / Date: VAu000041610 / 1982-11-18

Title: The Meeting.

Notes: Cataloged from appl. only.

Copyright Claimant: Olliver Odinwood

Date of Creation: 1980

Authorship on Application: 14 full color acrylic ill.: Olliver Odinwood.

Previous Registration: Motion picture screenplay prev. reg.

Copyright Note: C.O. correspondence.

Names: Odinwood, Olliver, 1948-

**Figure 1b – Probate Court document segments showing Olliver Odinwoods Artwork and registered copyrights were known about by Plaintiffs back in 1999**. Since Mark King and Sarah King as the only Officers of the Telah Foundation in 1997 copyrighted the framed lithographic print in October of 1997, when they learned it had already been copyrighted in 1982 they should have updated the copyright office. Then to bring litigation against Havel's use of the same image based on their fraudulent copyright is yet another act that may rise to criminal.

The following are segments from the 1997-1999 San Diego Probate Case Files for the:

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO

Case No. PNO22228 STATEMENT OF DECISION, JOHN MICHAEL CRAIG, also known as

LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased.

In section: Statement of Facts, page 4: Olliver Odinwood (aka Ollody) was documented to have had a "Copyright Registration for Artwork for a screenplay entitled, "The Meeting". Here is the full text of that statement:

"The Public Administrator marshaled a Certificate of Trade Name Registration for Higher Source Contract Enterprises (Trial Exhibit Number 211), and an application for Registration for Trade Name for Telah Services (Trial Exhibit Number 212), which are in the name of decedent Logan Lahson, aka John Craig.

In addition, he marshaled a Certificate of Copyright Registration for Artwork for a screen play entitled, "The Meeting," in the name of decedent Olliver Odinwood and a Certificate of Copyright Registration for a motion picture screenplay entitled, "The Meeting," In the name of Individual decedent David Codody, a pseudonym (Trial Exhibit Number 59,60). These certificates were recovered from the decedent's residence"

By Information and belief, the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO in Case No. PNO22228 between Petitioners, The Telah Foundation (Mark King and Sarah King) vs the Public Administrator of the estate of JOHN MICHAEL CRAIG, also known as LOGAN M. LAWSON, aka LOGAN LAHSON, Deceased,having consolodated all the estates of the 39 deceased, that concluded on January 13, 1999 with a STATEMENT OF DECISION by Judge Lisa Guy-Schall, under the section: FINDINGS OF FACT AND DECISION, paragraph 3 concluded:

"As for the painting, "C.B.E.,"it was delivered to Petitioners In February of 1977, with words of gratitude, according to Sarah King. Yet, there is no evidence that decedents gave Intellectual propertv rights in the painting to the Petitioners as well."



Figure 1c – Framed Lithographic Print of what an Older Member of the Kingdom of Heaven may look like. This was from Rkkody.com and shows that Mark King and Sarah King were not the only former students or people who received this framed picture from the Group as Rkkody was offering these for sale.



Figure 1d – Another of DO's Images of how a Member of the Next Level may look



Figure 1e - Images on Rkkody.com Rkkody received from The Class to post and use of how a Member of the Next Level may look



Figure 1f - Images on Rkkody.com Rkkody received from The Class to post and use of how a Member of the Next Level may look, giving the person white hair as DO had when he came public by himself in the 1990's as seen on the Beyond Human Video tape series.

**Figure 2a. Admissions Responses that show Plaintiffs deceit:**

From Dtk. 233 page 7 of RESPONSE TO MOTION TO DETERMINE SUFFICIENCY OF PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMSISION (DE 221 AND 222):

(Note Plaintiffs admits that Ollody is the artist that painted (created) a number of paintings and among them the "Older Member artwork" and that such artwork was made into the "Lithographic Print Plaintiffs, as The Telah Foundation copyrighted in 1997 as the C.B.E. Celestial Being Entity".)

REQUEST FOR ADMISSION NO. 3: Admit that Ollody, (aka David Cabot Van Sinderen, OLL, Olliver Odin wood) was the Artist who painted the 14 original Acrylic Paintings he copyrighted in 1982 that included the Older Member picture made into a Lithographic Print Plaintiffs, as The Telah Foundation copyrighted in 1997 as the C.B.E. Celestial Being Entity

RESPONSE TO REQUEST FOR ADMSSION NO. 3: Plaintiff admits that the Older Member artwork was created by David Cabot Van Sinderen. Plaintiff is without knowledge as to the number of paintings he copyrighted in 1982 and, thus, denies the remainder of this request on that basis.

**Figure 2b - Admissions Responses that show Plaintiffs deceit:**

From document: PLAINTIFF'S RESPONSES TO DEFENDANT HAVEL'S REQUEST FOR PRODUCTION OF DOCUMENTS (Dtk. 209):

Note: When Defendant Havel saw this response and checked his Admission Requests he saw that Plaintiffs had somehow copy/pasted another Admission text into the end of this Request. They corrected it but they could have responded to the Admission and recognized they had made a mistake.

REQUEST FOR ADMISSION NO. 3: Admit that Ollody, ( aka David Cabot Van Sinderen, OLL, Olliver Odin wood) was the Artist who painted the 14 original Acrylic Paintings he copyrighted in 1982 that included the Older Member picture made into a Lithographic Print Plaintiffs, as The Telah Foundation copyrighted in 1997 as the C.B.E. Celestial Being EntityDocument(s) submitted to Copyright office to prove, as shown in Section 4 of the registration, that Plaintiffs had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author, Total Overcomers Anonymous aka T.O.A., to The Telah Foundation the Deposit of 486 Audio tapes, referred to as "The Audiotape Library of Heaven's Gate by TI and DO as per copyright registration number: SRu 298-530 effective date of Oct 27, 1997. RESPONSE TO

REQUEST FOR ADMSSION NO. 3: Plaintiff does not understand this Request for Admission and on that basis it is denied.

**Figure 2c - Admissions Responses that show Plaintiffs deceit**

From document: PLAINTIFF'S RESPONSES TO DEFENDANT WEAVER'S REQUESTS FOR ADMISSION (Dtk. 210):

REQUEST FOR ADMISSION NO. 15: Admit that Defendant Stephen Havel's use of the Older Member Image painted and copyrighted in 1982 by Ollody (aka Olliver Odinwood, legally David Cabot Van Sinderen) on T shirts wasn't from the Lithographic Print you said you were gifted and called the Celestial Being Entity, aka C.B.E. Lithographic Print you copyrighted in 1997.

RESPONSE TO REQUEST FOR ADMSSION NO. 15: Denied. Plaintiff is the owner of all of the intellectual property, including the intellectual property refenced in this request and all versions of the CBE.

**Figure 2d - Admissions Responses that show Plaintiffs deceit**

REQUEST FOR ADMISSION NO. 21: Re: REQUEST FOR ADMISSION NO. 17, 18, 19 and 20: Admit you presented to the Judge Breyer Court and the Judge Lisa Guy Schall Court statements that accused Rkkody (aka Charles Chuck Humphrey, "third party") of doing things

against The Classes wishes by his attempting to sell T shirts, mugs, mouse pads, Away Team Patches, etc. (with Ollody's image art) to support his being able to afford to give away CD's (part of the Classes dissemination project) containing much of the Groups Intellectual Property on them.

RESPONSE TO REQUEST FOR ADMSSION NO. 21: Plaintiff admits its counsel informed the Court in connection with the probate proceeding that:

"The TELAH Foundation became aware of commercial misappropriation of intellectual property associated with the religion of The Evolutionary Level Above Human. Specifically, Mr. Chuck Humphrey had made revisions to the religious group's website and was selling T-shirts, coffee mugs, mouse pads and other paraphernalia in an obvious effort to exploit the Heaven's Gate organization, name and ideas. This was directly contrary to the beliefs and purposes of The TELAH Foundation, as expressed to [counsel for the TELAH Foundation] by Mark King. Sarah King and Wayne Parker. The TELAH Foundation instead believed that the organization's intellectual property should be maintained in exactly the manner that the deceased persons requested and specified, and always should be treated with dignity and respect."

Defendant's Note: Shows Plaintiffs did not deny that what they were referring to as "commercial misappropriation of **intellectual property** associated with the religion of The Evolutionary Level Above Human" by "Mr. Chuck Humphrey" who is Rkkody, also admitting by their response that Rkkody was managing the "religious group's website" which at that time was Heavensgate.com per DO (known in the media by Marshall Applewhite, Jr.), as shown in Letters sent to Rkkody he chose to make changes to. They are also admitting to Rkkody's provision of T shirts, mugs, mouse pads, Away Team Patches, etc. (with Ollody's image art). This leads to the evidence that the "Celestial Being Entity" aka C.B.E. belonged to Ollody and Defendant Havel has witness testimony Plaintiffs knew before, during and especially after their 1999 Probate Settlement that Ollody had copyrighted that Image and was also the creator of the HG Logo and another dozen or so images used in the screen play of "The Meeting" as illustrations shopped to Hollywood's Producer Gary Kirsch and Stanley Kubeck.


18. After Do and The Class departed, plaintiffs attempted to carry out the wishes of Heaven's Gate and its followers. Plaintiffs incorporated the non-profit corporation known as TELAH for this purpose. TELAH has applied for and received registration of the copyrights for works prepared by the organization. Attached hereto as Exhibits A through E are the copyright registration relating to works authored by the organization under the names Total Overcomers Annonymous and Heaven's Representatives assigned to plaintiffs. Attached hereto as Exhibit F is the copyright application association with The Celestial Being Entity lithographic print created by Total Overcomers Annonymous and assigned to plaintiffs. Attached hereto as Exhibit G is the copyright application associated with the Heaven's Gate Away Team Patch created by Total Overcomers Annonymous and assigned to plaintiffs. The works described in this paragraph are referred to hereinafter as the Subject Works.

DEFENDANTS' ACTIVITIES

Figure 2e – From Plaintiffs Complaint Dtk. 1 and Amended 132, paragraph 18 states in line 11-13 "Attached hereto as Exhibit F is the copyright application association with The Celestial Being Entity lithographic print created by Total Overcomers Anonymous and assigned to plaintiffs." In figure 1b at the bottom of the figure, Judge Lisa Guy Schall says about the C.B.E.:

"As for the painting, "C.B.E.,"it was delivered to Petitioners In February of 1977, with words of gratitude, according to Sarah King. Yet, there is no evidence that decedents gave Intellectual propertv rights in the painting to the Petitioners as well."

Plaintiffs knew when they filed this lawsuit that Judge Lisa Guy Schall entered that decision and that they had no "assignment" from the Group to give them any intellectual rights to any of the Groups Property, though they like anyone could use it.

**Figure F - In Plaintiffs Exhibit F – Dkt. 1-F and in Amended Dkt. 132-F Complaints – the Celestial Being Entity – C.B.E. they give the copyright office misinformation they knew was not true.**

3 **AUTHOR'S NATIONALITY OR DOMICILE:** Citizen of ................ (Name of Country) or Domiciled in ................ (Name of Country)

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:** Anonymous? Yes No; Pseudonymous? Yes No. If the answer to either of these questions is "Yes," see detailed instructions attached.

**(3) Creation and Publication**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:** Year 1992 (This information must be given in all cases.)

**DATE AND NATION OF FIRST PUBLICATION:** Date March 31, 1997 (Month) (Day) (Year); Nation United States of America (Name of Country) (Complete this block ONLY if this work has been published.)

**(4) Claimant(s)**

**NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):**
The Telah Foundation
4757 E. Greenway Road, #103
Phoenix, AZ 85032

**TRANSFER:** (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

pursuant to assignments

Figure 2f1:

(1) In Section 3 it states that the year in which creation of this work was completed was 1992 yet Plaintiffs Mark King and Sarah King were present when Ollody, Olliver Odinwood was painting the CBE image and others in the early 1980's while they were still in the Class.

(2) Also in Section 3 it states the Date and Nation of First Publication as March 31, 1997 yet Mark King and Sarah King knew or should have known that the CBE Image was used on the Groups website Heavensgate.com (where it still is) as early as December of 1996 or so. They also knew that Prints were made and framed and hung in Astrologics in Amarillo, Texas where they worked everyday in around 1982. I was there as well.

(3) There were no legal "assignments" to transfer them the rights to the Image

USDC IN/ND case 3:22-cv-00395-JD-MGG document 1-6 filed 05/18/22 page 3 of 4

EXAMINED BY / CHECKED BY

APPLICATION RECEIVED SEP 22 1997

CORRESPONDENCE: ☐ Yes

DEPOSIT RECEIVED SEP 22 1997

DEPOSIT ACCOUNT FUNDS USED ☐

REMITTANCE NUMBER AND DATE:

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM VA/CON)**

**PREVIOUS REGISTRATION:** **(5) Previous Registration**

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes ....... No . X ....
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☐ This is a changed version of the work, as shown by line 6 of the application.
- If your answer is "Yes," give: Previous Registration Number.......................... Year of Registration........................

Figure 2f2 – Mark King and Sarah King checked "no" to the question, "Has registration for this work or for an earlier version of this work been made in the Copyright Office?" They knew this was not true.

* If your answer is "Yes," give: Previous Registration Number.............. Year of Registration..............

**COMPILATION OR DERIVATIVE WORK:** (See Instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that this work is based on or incorporates.)
N/A

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)
N/A

6 Compilation or Derivative Work

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)
Name: Jerome E. Weinstein, Esq.

7

Figure 2f3 –Plaintiffs knew there was a preexisting work as they knew they had a print thus an original existed to make into prints.

Figuire 2f-1 –

In HAVEL'S FIRST AMENDED ANSWER, DEFENSE (Page 81+) AND COUNTERCLAIM (Page 128+) TO PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL in Section III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE: Paragraph 52:

52. Since Mark King and Sarah King, Plaintiffs, copyrighted the CBE Lithographic Print in 1997 knowing it was Ollody's (aka Olliver Odinwood, legally David Cabot Van Sinderen, Oll) artwork, yet in the registration did not check the box yes or no on whether that work was a work for hire and didn't respond honestly regarding that image being copyrighted before they did when it had been in 1982, and they learned about that as late as 1999 but probably much earlier and could have corrected it with the copyright office, their copyright of said artwork should be ruled invalid and I should receive relief according to my loss of revenue for stopping using the image on T shirts and according to my Counter Claim. (See Exhibit 16 Copyright vau000041610 by olliver odinwood of 14 paintings including the CBE Older Member and Saturn Rings on 11-18-1982)

**Exhibit 27**

1999 Case No. 3:98-cv-00892-CRB — TELAH v. Right to Know Civil Docket

Federal docket reflecting the 1999 TELAH v. Right to Know proceeding and Consent Decree.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

**THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC.**
**d/b/a THE TELAH FOUNDATION,**
**Plaintiff,**

v.

**STEVEN ROBERT HAVEL;**
**CATHY JOANN WEAVER; and JASON BARTEL,**
**Defendants.**

**CAUSE NO. 3:22-CV-00395-DRL-SJF**

# EXHIBIT 27

## 1999 Case No. 3:98-cv-00892-CRB — TELAH v. Right to Know Civil Docket

Federal docket reflecting the 1999 TELAH v. Right to Know proceeding and Consent Decree.

*Submitted in support of Defendant Stephen Robert Havel's*
*Motion to Reconsider and Revise the August 26, 2026 Interlocutory Order*

AO279,CLOSED,MEDIATION,ProSe

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:98-cv-00892-CRB**

Evolutionary Level, et al v. Right To Know, et al
Assigned to: Judge Charles R. Breyer
Demand: $0
Cause: 28:1331 Fed. Question: Trademark

Date Filed: 03/06/1998
Date Terminated: 05/11/1999
Jury Demand: Plaintiff
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

**The Evolutionary Level Above Human Foundation, Inc.**
*doing business as*
Telah Foundation

represented by **David James Miclean**
Miclean Gleason LLP
1301 Shoreway Road
Suite 290
Belmont, CA 94002
(650) 684-1181
Fax: (650) 684-1182
Email: DMiclean@MicleanGleason.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Ann Donovan**
GCA Law Partners, LLP
2570 W. El Camino Real, Suite 400
Mountain View, CA 94040
650-428-3900
Fax: 650-428-3901
Email: kdonovan@gcalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark King**

represented by **David James Miclean**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Ann Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sarah King**

represented by **David James Miclean**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Ann Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wayne Parker**

represented by **David James Miclean**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

(2) (0)

**Kimberly Ann Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Right To Know**
*TERMINATED: 07/20/1999*

**Defendant**

**Charles Humphrey**
*The Executor of the Estate*
*TERMINATED: 09/14/1998*
*also known as*
Chuck Humphrey

**Defendant**

**Kathryn Morea** represented by **Kathryn Morea**
1802 9th St
Santa Monica, CA 90404
PRO SE

**Defendant**

**Lanminds**

**Defendant**

**Impsat Mexico**
*TERMINATED: 09/14/1998*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/1998 | 1 | COMPLAINT (no process) Fee status pd entered on 3/6/98 in the amount of $ 150.00 ( Receipt No. 130620); jury demand [3:98–cv–00892] (ga, COURT STAFF) (Entered: 03/06/1998) |
| 03/06/1998 | 2 | ORDER RE COURT PROCEDURE and SCHEDULE by Judge Charles R. Breyer : Proof of service to be filed by 4/20/98 ; counsels' case management statement to be filed by 6/30/98 ; initial case management conference will be held 8:30 7/10/98 . (cc: all counsel) (ga, COURT STAFF) (Entered: 03/06/1998) |
| 03/06/1998 | | Docket Modification (Administrative) to for referral to Early Neutral Evaluation (ADR L.R.5) [3:98–cv–00892] (ga, COURT STAFF) (Entered: 03/06/1998) |
| 03/06/1998 | | REPORT on the filing of an action regarding Trademark (cc: form mailed to register) [3:98–cv–00892] (ga, COURT STAFF) (Entered: 03/06/1998) |
| 03/09/1998 | | SUMMONS issued as to defendant Right To Know [3:98–cv–00892] (ga, COURT STAFF) (Entered: 03/10/1998) |
| 04/09/1998 | 3 | RETURN OF SERVICE executed upon defendant Right To Know on 3/30/98 [3:98–cv–00892] (ga, COURT STAFF) (Entered: 04/10/1998) |
| 04/09/1998 | 4 | RETURN OF SERVICE executed upon defendant Kathryn Morea on 3/30/98 [3:98–cv–00892] (ga, COURT STAFF) (Entered: 04/10/1998) |
| 04/09/1998 | 5 | RETURN OF SERVICE executed upon defendant Charles Humphrey on 3/30/98 [3:98–cv–00892] (ga, COURT STAFF) (Entered: 04/10/1998) |
| 04/23/1998 | 6 | REQUEST by Evolutionary Level, Mark King, Sarah King, Wayne Parker for Entry of Default against defendants, Right to Know; Estate of Humphery and Kathryn Morea [3:98–cv–00892] (ga, COURT STAFF) (Entered: 04/28/1998) |

| | | |
|---|---|---|
| 04/27/1998 | 7 | REQUEST by defendant Kathryn Morea that No Default be Granted [3:98–cv–00892] (ga, COURT STAFF) (Entered: 04/28/1998) |
| 05/19/1998 | 8 | RETURN OF SERVICE by Evolutionary Level, Mark King, Sarah King, Wayne Parker of original summons [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/19/1998) |
| 05/19/1998 | | DEFAULT ENTERED as to defendant Right To Know, Estate of Charles Humphrey, defendant Kathryn Morea (cc: all counsel) [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/19/1998) |
| 05/22/1998 | 9 | MOTION before Judge Charles R. Breyer by defendant Kathryn Morea to set aside default [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/26/1998) |
| 05/22/1998 | 10 | NOTICE by defendant Kathryn Morea to set aside default [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/26/1998) |
| 05/22/1998 | 11 | DECLARATION by Kathryn Morea re motion to set aside default [9–1] [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/26/1998) |
| 05/22/1998 | 12 | ANSWER by defendant Kathryn Morea to complaint [1–1] [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/26/1998) |
| 05/27/1998 | 13 | NOTICE by Plaintiff Evolutionary Level of Entry of Default [3:98–cv–00892] (ga, COURT STAFF) (Entered: 05/28/1998) |
| 06/05/1998 | 14 | PROOF OF SERVICE of motion to set aside default [9–1] [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/08/1998) |
| 06/05/1998 | 15 | OPPOSITION by Plaintiff Evolutionary Level to motion to set aside default [9–1] [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/09/1998) |
| 06/05/1998 | 16 | DECLARATION by Kimberly A. Donovan on behalf of Plaintiff Evolutionary Level re opposition [15–1] [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/09/1998) |
| 06/25/1998 | 17 | CERTIFICATION of discussion of ADR options by Plaintiff Mark King, Plaintiff Sarah King, Plaintiff Wayne Parker . [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/26/1998) |
| 06/26/1998 | 18 | MINUTES: ( C/R Diane Skillman) ( Hearing Date: 6/26/98) granting motion to set aside default [9–1] and denying request for sanctions; [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/29/1998) |
| 06/26/1998 | 19 | ORDER by Judge Charles R. Breyer to set aside default , Case Management Conference set for 8:30 7/10/98 ; ( Date Entered: 6/29/98) (cc: all counsel) [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/29/1998) |
| 06/30/1998 | 20 | CASE MANAGEMENT STATEMENT and PROPOSED ORDER filed. [3:98–cv–00892] (ga, COURT STAFF) (Entered: 06/30/1998) |
| 07/10/1998 | 21 | MINUTES: ( C/R none) INITIAL CASE MANAGEMENT CONFERENCE HELD. Further case management conference set for 8:30 9/11/98 ; , administratively removed from ENE (ADR LR 5) , for referral to mediation (ADR L.R.6) ; and get someone with experience in copyright/intellectual property issues; [3:98–cv–00892] (ga, COURT STAFF) (Entered: 07/15/1998) |
| 07/17/1998 | 22 | ADR CLERK'S NOTICE of Removal from ENE and Referral to MED. [3:98–cv–00892] (kq, COURT STAFF) (Entered: 07/17/1998) |
| 08/03/1998 | | Telephone conference with ADR director :HAH [3:98–cv–00892] (hh, COURT STAFF) (Entered: 08/03/1998) |
| 08/12/1998 | 23 | CLERK'S NOTICE of appointment of mediator, Ellen J. Beilock [3:98–cv–00892] (kq, COURT STAFF) (Entered: 08/12/1998) |
| 08/14/1998 | 24 | NOTICE by defendant Kathryn Morea of change of address to 1802 – 9th Street, Santa Monica, CA 90404 [3:98–cv–00892] (ga, COURT STAFF) (Entered: 08/18/1998) |

40

| | | |
|---|---|---|
| 09/11/1998 | 25 | MINUTES: ( C/R none) INITIAL CASE MANAGEMENT CONFERENCE HELD. Status conference set for 8:30 11/13/98 ; court orders counsel to contact Mediator ASAP [3:98–cv–00892] (ga, COURT STAFF) (Entered: 09/15/1998) |
| 09/11/1998 | 26 | CONSENT DECREE: between plaintiffs and defendant Lanminds; by Judge Charles R. Breyer (cc: all counsel) ( Date Entered: 9/15/98) [3:98–cv–00892] (ga, COURT STAFF) (Entered: 09/15/1998) |
| 09/14/1998 | 27 | STIPULATION and ORDER by Judge Charles R. Breyer : dismissing party Impsat Mexico, party Charles Humphrey without prejudice (cc: all counsel) [3:98–cv–00892] (ga, COURT STAFF) (Entered: 09/15/1998) |
| 10/01/1998 | 28 | MEDIATOR'S Letter to Counsel MED hearing will be held 10:00 10/9/98 ; [3:98–cv–00892] (kq, COURT STAFF) (Entered: 10/01/1998) |
| 10/21/1998 | | Docket Modification (Administrative) to terminating party Ellen J. Beilock [3:98–cv–00892] (kq, COURT STAFF) (Entered: 10/21/1998) |
| 10/21/1998 | | Docket Modification (Administrative) to of appointment of mediator, Howard A. Herman [3:98–cv–00892] (kq, COURT STAFF) (Entered: 10/21/1998) |
| 10/21/1998 | 29 | CERTIFICATION OF ADR SESSION MEDIATION process COMPLETE; CASE SETTLED. filed by neutral Mediator Howard A. Herman. Session held on 10/09/98. (kq, COURT STAFF) (Entered: 10/21/1998) |
| 05/11/1999 | 30 | ORDER by Judge Charles R. Breyer dismissing case without prejudice ; 30–day conditional dismissal ( Date Entered: 5/18/99) (cc: all counsel) [3:98–cv–00892] (mcl, COURT STAFF) (Entered: 05/18/1999) |
| 07/09/1999 | 31 | CONSENT DECREE BETWEEN PLAINTIFFS AND KATHRYN AND CESAR MOREA by Judge Charles R. Breyer : TELAH will distribute the "How and When Heaven's Gate May Be Entered" book ... Kathryn and Cesar Morea will provide TELAH with copies of the Humphrey verson ... TELAH will have exclusive rights and responsibility for ownership and management of the intellectual property of The Class/the Heaven's Gate group ... (see document) (cc: all counsel) ( Date Entered: 7/14/99) [3:98–cv–00892] (mcl, COURT STAFF) (Entered: 07/14/1999) |
| 07/20/1999 | 32 | ORDER by Judge Charles R. Breyer dismissing defendants Right To Know, Impsat Mexico. As to all other defendants to this action, consent decrees have been filed, thus effectively terminating the case except that the court shall retain jurisdiction pursuant to the consent decrees entered in the case ( Date Entered: 7/21/99) (cc: all counsel) [3:98–cv–00892] (mcl, COURT STAFF) (Entered: 07/21/1999) |

5 (6)

**Exhibit 28**

April 5, 2024 Joint Status Report, Dkt. 198

Joint status report documenting the parties' discussion of the Breyer Settlement Agreement and the unresolved discovery issue.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

**THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC.**
**d/b/a THE TELAH FOUNDATION,**
**Plaintiff,**

**v.**

**STEVEN ROBERT HAVEL;**
**CATHY JOANN WEAVER; and JASON BARTEL,**
**Defendants.**

**CAUSE NO. 3:22-CV-00395-DRL-SJF**

# EXHIBIT 28

## April 5, 2024 Joint Status Report, Dkt. 198

Joint status report documenting the parties' discussion of the Breyer Settlement Agreement and the unresolved discovery issue.

*Submitted in support of Defendant Stephen Robert Havel's*
*Motion to Reconsider and Revise the August 26, 2026 Interlocutory Order*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA SOUTH**
**BEND DIVISION**

The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation

Plaintiff,

v.

Stephen Robert Havel,
Cathy JoAnn Weaver,
Jason Bartel,

Defendants.

CASE NO. 3:22-CV-395-JD-MGG

**JOINT STATUS REPORT**

Pursuant to this Court's February 27, 2024 Order (Dkt. 195), the parties met and conferred prior to March 31, 2024, and exchanged multiple emails, to discuss Mr. Havel's request for the production of certain documents and to attempt to resolve the dispute amongst themselves. Plaintiff drafted the initial two-page summary of this joint status report. Defendant Havel has added his additions beginning on page 3.

This conferral process involved initial emails, whereby Defendant Havel sent Plaintiff a 60-page document restating his requests. In response, Plaintiff requested a more manageable "few-page" summary with bucketed requests, so the requests could be discussed bucket-by-bucket. Plaintiff provided an example of what such buckets could look like. Defendant Havel responded by sending a 31-page document which utilized the exemplary buckets from Plaintiff's email.

Plaintiff and Defendant Havel also engaged in two zoom calls. The first zoom call occurred on Tuesday March 26, 2024 and the second on Thursday March 28, 2024. Each zoom call lasted approximately 40 minutes. The individuals on these two calls were Mr.

Steven Havel, Defendant, and Mr. Isaac Crum, counsel for Plaintiff. On Friday, Defendant sent a follow-up email stating his willingness to enter into a protective order so long as it was "stipulated and limited" and not "overbroad".

The results of the meet-and-confer process are as follows:

- Plaintiff has agreed to stipulate to the authenticity of court filings and letters which were sent to Plaintiff by Defendant, and which appear to be authentic.[1]
- The parties discussed the production by Plaintiff of works of art and letters which may be in Plaintiff's possession, and which Defendant would like copies of. Defendant argued that such documents were necessary to support Defendant's defense/counterclaim of religious discrimination. Plaintiff voiced its concern that (1) those works are not at issue in this case, (2) that Defendants will simply commit further acts of copyright infringement if Plaintiff is forced to provide Defendants with those documents, and (3) that the defense/counterclaim of religious freedom and religious discrimination in copyright law was unknown by Plaintiff and was unsupported by case law. Mr. Havel stated in follow-up communication that he does not intend to provide to the internet any of the documents and that he has case law to support his request for these documents to support his defense/counterclaim of religious freedom and religious discrimination but that he "[didn't] know that [he] need[ed] to provide that now as [he is] still gathering the most relevant cases."
- The parties briefly discussed agreeing to a protective order. Defendant Havel stated that he is amenable to a protective order to cover things that are trade secrets. Plaintiff explained that a narrow protective order focused on trade secrets but which that allows publication by Defendants of private or

1 Plaintiff, however, reserves the right to object or move for sanctions to the extent any of these documents prove to be fabricated.

copyrighted materials would not address Plaintiff's concerns.[2]

**Defendant Havel's Additions:**

Defendant Havel adds to this report that Defendant had some 80 documents requested. Plus Defendant Havel was notified by Judge Gosch, in his Opinion and Order (Dkt. 195) that Defenant had not provided enough "reasons" to some of the Requests, so to keep it to a "few page" summary would do nothing to have a negotiation. Defendant cooperated with Plaintiffs requested shorter Bucket structure, which took Defendant a number of days to reformat.

Defendant indicated in his email just mentioned that the idea of a proposed Protective Order being "stipulated" and not "overbroad" was directly from Judge Gosch's Order (Dkt 195).

Defendant initially sent to Mr. Crum the links to the Court websites and to the 5 Case files for the two Consent Decrees' Plaintiffs received in 1999, that Mr. Crum said he could not get to work. Thus Defendant tested the links and they worked fine and then attached the actual .pdf court case files to an email to Mr. Crum.

Re: the "letters" listed in this bullet point, it is referring to Letters Defendant has had and has filed as exhibits in Defendant's Answer and Defense, but wanted to be authenticated by Plaintiff since they provide much evidence and insights to who received what Intellectual Property belonging to the Group members and what they wanted done with that Intellectual Property that shows the relevance to the Religious Freedom and Religious Discrimination part of Defendant's Defense and Counter Claims.

2 The second zoom call cut off during this discussion, so it is unclear if Defendant Havel heard this entire discussion. Defendant Havel has been adding to this report, put into red lettering.

Defendant claims the "letters" just referred to in this section of this report are the letters sent by the Heaven's Gate Religious Group, (which is not a new definition as that is the way Plaintiff described the Group in both their Cases in 1999 that they received Consent Decrees for), to other former members of the Group, like Mark and Sarah King (Mrcody/Srfody) received from the Group that inform the Court and Jury that a number of individuals received "Intellectual Property" created by the Teachers TI and DO and some of their students before any of the two Consent Decrees.

Mr. Crum and Defendant Havel also spoke about the definition of "intellectual property". Mr. Crum indicated it was a concept rather than being a specific writing or audio or video, etc.

Mr. Crum indicated that Plaintiff received in the probate Case Consent Decree and Settlement all the Intellectual Property the Group possessed that was "transferred" to them.

Defendant Havel informed Mr. Crumb that the Group had other of their Intellectual Property besides that which was in the inventory of the House where the Group members bodies died which goes to part of Defendant's Defense that the Intellectual Property needs to be defined for each Case. Which Intellectual Property was the Consent Decree and Settlement Agreements referring to. Defendant expressed to Mr. Crum that Francisco Falcon received a great deal of the same "Intellectual Property" in 1997, with a letter from the Group compelling him to give it to the media and to anyone who wanted it.

Defendant also explained to Mr. Crum that the intention of the Group was important, while he felt it was not part of the case.

Defendant explained that the Group let it's intention be known by the Common Law Copyright that is still posted as part of the Heavensgate.com website Mark and Sarah King manage.

Defendant expressed that it's my Religious right to practice my Heaven's Gate religion that calls for living up to the intentions of the teachers TI and DO evidenced by many parts of their Intellectual Property as demonstrated in part by the fact that the Group

used a Common Law Copyright that lays out that Defendant has the right to copy the entire Heaven's Gate Book (Literary Work) or parts of it and give it to others as long as not for commercial purposes. Defendant explained that he had the right to make an audio book from that Heaven's Gate Book.

Mr. Crum expressed he understand I consider the intention of the Group but that he only is concerned with the law on behalf of his client and that making an audio book would be considered to be a "derivative work".

Defendant doesn't understand whether to qualify to receive the documents requested Defendant must use case law in this stage of discovery as Mr. Crum said Defendant hasn't done.

Defendant will provide the case law if that is what it takes to receive the requested documents.

- Defendant and Plaintiffs talked about the Settlement Agreement that Havel asked for from plaintiff and explained that it was referenced in the Judge Richard Breyer (telah vs right to know) consent decree.

Mr. Crum said he looked at that consent decree and didn't see anything in it that said telah was ordered to give any of the intellectual property to havel.

Havel agreed that language wasn't in there but that's part of why Havel wants the Settlement Agreement document because havel has evidence from jason bartel from a 2016 email to Havel who saw that document and how it said to give the intellectual property to "verified former members" (of the group).

I talked about how I might have to go to Kathyrn Morea (the daughter of rkkody - charles humphrey (right to know)) to get that settlement agreement and Mr. Crum agreed.

Mr. Crum said he didn't have the settlement agreement and that he would ask his client if they have it. Havel expressed that they must have it as they have the consent decree they entered part of into evidence as an exhibit at some point and Mr. Crum disagreed that they ever entered it as an exhibit and said that Jason Bartel had entered that document into the case.

Havel said he didn't want to subpoena Morea but if she has the document, Mr. Crum said even if it was sealed Morea wouldn't get in trouble to provide it if we went through the court.

Mr. Crum at one point said it may have been "destroyed" to which Havel asked when and how it was destroyed and Mr. Crum had no response.

Havel expressed how that settlement agreement is mentioned 5-6 times in the consent decree for details on the part of the decree that said telah was ordered to "disseminate" rkkody's cd's that contained the 196 or so audio tapes on them.

Mr. Crum said that having possession of the audio tapes was not the same thing as disseminating them to others. Havel expressed that he never saw any instructions from the consent decree what someone could or couldn't do with the audio tapes they were disseminated to by telah.

Mr. Havel then brought up the fact that Mark and/or Sarah King had sent Havel two cases of the Heaven's Gate books and a set of the original Beyond Human video tapes with the original plastic jackets in around 2007 and yet gave no instruction what to do or not do with them. Havel expressed that he gave them away and decided not to sell them but instead would send people to buy them directly from Mark and Sarah King via the Groups website they had become the webmasters of because Havel knew they had brought the book to print so they should receive the funds from the sale of any of those book.

Havel expressed that he wondered if Mark and Sarah King sent him those items that were part of the groups intellectual property because of the Breyer consent decree and settlement agreement as they knew Havel was a "verified former member" of the group.

Mr. Crum initially asked Defendant Havel to propose a Protective Order. Defendant Havel said, though Defendant was willing to have a Protective Order, the reason Defendant initially didn't want one was because Defendant felt it would be so broad and apply to publicly available court cases to where if Defendant even used the words Heaven's Gate on Defendant's youtube 3spm livestream Defendant could be found in violation of the Order. The fact that Plaintiff has no trade secrets was a secondary concern. Defendant also expressed that Defendant didn't know what the privacy concerns were but that there certainly could be a limited stipulate protective order on some of the documents requested that Plaintiff would then produce to Defendant.

Defendant expressed that over the entire history of Defendant's disseminating of the Heaven's Gate Intellectual Property Defendant has not posted onto the internet the audio

tapes or video tapes. And that since this lawsuit began has not done so with even these court case files that Defendant was free to post somewhere.

In Judge Gosch's "conclusion" on page 14 of Court order (Dkt 195) re:

> "(2) if the parties did meet and confer, whether the parties…
>
> (b) were able to stipulate to a protective order, and if so, an anticipated disclosure timeframe after a stipulated protective order is approved;"

Such Protective Order has not been stipulated. At first Mr. Crum asked Defendant Havel to generate a Protective Order. Defendant responded that since it was Plaintiff's requested action on some of Defendant's Document Requests as Judge Gosch also noted in the Opinion and Order, Defendant doesn't understand how Defendant can arrive at a Protective Order without the criteria to arrive at what Plaintiff wants protected by the court.

However, Defendant now proposes creating Bucket 4 to consist of document requests from Bucket 2 and 3 that Plaintiff won't provide without a Protective Order.

**To Start Bucket 4 – For Protective Order, for instance, in Judge Gosch's order (Dtk 195, section I, page 3) :**

"Plaintiff's responses further indicated that it had responsive documents to produce, but these documents contained confidential or proprietary information such that a protective order would need to be entered first. [See DE 142 at 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, and 20]."

Therefore Defendant suggests starting Bucket 4 for those requests that need to be under a Protective Order for plaintiffs to provide to Defendants.

(This list comes from Judge Gosch list in Dkt 195)

**These Document Requests are listed to date in BUCKET 3: Non-Court Documents consisting of Correspondence with third parties, per Mr. Crum's requested reorganization of Requests into Bucket Lists Defendant cooperated with.**

**(Documents 15 and 16 are removed from this list and proposed added to the Bucket 1 authentication list, but are left listed and noted below for easy reference.)**

[See DE 142 at 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, and 20]."

**5. Document(s)** submitted to Copyright office to prove, as shown in Section 1 of the registration, that Total Overcomers Anonymous aka T.O.A., Authored as a "work for hire", Seven (7) ½" VT/D "Beyond Human – The Last Call" Video tapes, and/or **Document(s)** that legally prove Heaven's Gate employed Plaintiffs in the transfer of Authorship Copyrights (the Creators of said works automatically hold), of this Intellectual Property to Plaintiffs, as per registration number: PA 867-224 effective date of Sep 22 1997.

**Reason:** To establish the legitimacy of obtaining copyrights and/or trademarks against the will of the Decedents and before Consent Decrees. Since these copyrights and/or trademarks are in Plaintiffs Complaint the primary claim of infringement, since Plaintiffs did not file any new copyright registrations after the Consent Decrees, that Defenant knows about, (besides the recent files for audio tapes 487-498) if they were filed erroneously in the first place as Judge Lisa Guy Schall Decided (before the Settlement to not bring about lawsuits from creditors because of an appeal).

**6. Document(s)** submitted to Copyright office to prove, as shown in Section 4 of the registration, that Plaintiffs had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author Heaven's Representatives to The Telah Foundation the Book Manuscript entitled, "How and When "Heaven's Gate" (The

Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials", as per registration number: TXu 817-732, effective Sept. 22, 1997.

**Reason:** To establish the legitimacy of obtaining copyrights and/or trademarks against the will of the Decedents and before Consent Decrees

**7. Document(s)** submitted to Copyright office to prove, as shown in Section 1 of the registration, that Heaven's Representatives Authored, as a "work for hire", Book Manuscript Version, aka "Purple Book" entitled, "How and When "Heaven's Gate" (The Door to the Physical Kingdom Level Above Human) May Be Entered – An Anthology of Our Materials," , and/or **Document(s)** that legally prove Heaven's Gate employed Plaintiffs in the transfer of Authorship Copyrights (the Creators of said works automatically hold), of this Intellectual Property to Plaintiffs, as per registration number: TXu 817-732, effective Sept. 22, 1997.

**Reason:** To add to Defendants Freedom of Religion and Religious Discrimination Defense and Counterclaim - To establish the legitimacy of obtaining copyrights and/or trademarks against the will of the Decedents and before Consent Decrees

**8. Document(s)** from Heaven's Gate that convey to Plaintiffs any Rights to Transfer and/or to Copyright Book Manuscript Version 1 and/or 2 and to change the copyright the Group put on their original Book.

**Reason 1:** To show at least two other former members of Heaven's Gate, Rkkody aka Charles Chuck Humphrey (deceased) and Jhnody, (aka Juan, Jhn, legal name of Francisco Falcon) received Intellectual Property directly by mail from Heaven's Gate

Members (DO and Crew)

**Reason 2:** To establish the legitimacy of Mark and Sarah Kings changing the Groups desired Common Law copyright for the 3rd version of the Heaven's Gate they facilitated the publishing of.

**9. Document(s)** submitted to Copyright office to prove, as shown in Section 4 of the registration, that Claimant(s) (Plaintiffs) had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author, Total Overcomers Anonymous aka T.O.A., to The Telah Foundation the C.B.E. (Celestial Being Entity) Lithographic Print as per registration number: VA 877-834 with effective date of registration 09-22-97.

**Reason:** To show Plaintiffs copyright of the CBE Lithographic Print was painted and copyrighted by Olliver Odinwood aka Ollody in 1982 so proves Plaintiffs had no legal right to copyright that CBE Lithographic Print and thus Defendant's use of that image does not infringe upon Plaintiffs false copyright, which Defendant will attempt to further prove in his Counter Claim. Plaintiffs have the burden of proof that their copyright of CBE is legal and trumps the actual Creators copyright of the same image.

(DE 142 at 10 is no longer included to be potentially under a Protective Order since Plaintiff agreed to authenticate these Letters from the Heaven's Gate Group to Plaintiffs without a Protective Order. These eliminate listing numbers 10, 11, 12, 13

from Bucket 3 of the reformatted new document requests Defendant put together for Mr. Crum).

**REMOVE from Bucket 2 and MOVE to Authentication Bucket 1**

Re: Bucket 3 - #14 (that was originally under DE 142 at 15, referred to by Judge Gosch), Defendant would like to add these document requests to the authentication Bucket 1 since Plaintiffs already acknowledged these had been in this courts public record from co-Defendant Cathy Weaver's Answer Exhibits for nearly two years so doubt they would require them to be in a Protective Order.

14.) 15. All **Emails** between Mark King and/or Sarah King in those names or from the Email Address Rep@heavensgate.com to Cathysouthwestern@gmail.com codefendant Cathy Weaver's email address.

**Reason:** These emails show that there was no "conspiracy" among Defendants as Plaintiffs' claim in DE 1, Count VI.

**REMOVE from Protective Order Bucket 2 and MOVE to Authentication Bucket 1**

15.) **16. Documents: Cease and Desist and Proposed Legal Agreement** on Use of the Heaven's Gate Intellectual Property served on Havel and Weaver in person in November of 2021.

**Reason:** Shows Plaintiffs think of TI and DO as their "God" and of Heaven's Gate as a new Religion. Shows Plaintiffs issued Stephen Havel and Cathy Weaver with a

Cease and Desist that did not detail exactly what audio tapes and/or video tapes and/or The Heaven's Gate Book and/or The Exit Videos and/or The CBE Image and/or other Intellectual Material Defendants were allegedly infringing upon.

34.) 20. Petitioners Exhibit No. 51 E-mail transcript dated October 22, 1996 from "Mrc/Srf"

**Reason:** This is Primarily for the Religious Freedom and Religious Discrimination part of Defendant's Defense and Counter Claims. These could provide evidence showing who in the Group Plaintiffs were communicating with and about what. These were all in 1996, so before the Group left their bodies. There are many inconsistencies in things Mark and Sarah King said then with what they say now that could be important to my Defense and Counter Claim.

(These Document Requests are referenced in Case No. PN022228, Document: JOINT TRIAL READINESS CONFERENCE REPORT (that starts on page 112 of the file; ROA 174 Case File Contents 2-3.pdf (link provided above)), under the Exhibit Index on pages 7-9 of the report (pages 118-120 of the ROA file).

**This concluded the Documents Defendant Requested in DE 142 that Judge Gosch listed in his Order (Dtk 195) as Documents Plaintiff indicated they would be responsive to after a Protective Order.**

**Further from Judge Gosch's "Conclusion" of the Order:**

"(c) were able to resolve other disputes raised in these filings. Any disputes that remain unresolved must be clearly delineated on the parties' status report."

Defendant is not aware of any resolution to any of the Requests for Document Production from Plaintiffs besides Plaintiffs statement in this report to authenticate the Court Files and selective Letters Defendant already possessed. To list the remaining disputes would entail attaching Defendant's restructured into "buckets" Defendant, upon Mr. Crum's request provided, minus the authentication requests. However, here is a summary:

**From Buckets 2 and 3, complete with expanded detailed reasons:**

1) The Judge Richard Breyer – Plaintiff vs Right to Know "Settlement Agreement" part of the Consent Decree that says Plaintiffs needed to give the Intellectual Property to "verified former members" of the Group.
2) The Log files – to have a genuine account of what Rkkody had that would fall under the Right to Know Consent Decree and what exactly was sent to the copyright office in 1997 to show what if any infringement occurred and to show which parts of the Groups Intellectual Property was
3) The documents re: Ollody – Olliver Odinwood and the 14 Paintings
4) At least 4 letters from the Group to: Oscody (Wayne Parker) (2 letters/emails), the Letter to Neody (aka Rio, Richard Ford, Rio D'Angelo) and the letter to Flxody/Ablody (Lorraine and Floyd Snelson).

5) The Document Requests are shown to exist in Judge Lisa Guy Schall Probate Case shown in the provided Case File: ROA 74 Case File Contents 2-3.pdf (Plaintiffs indicated they would authenticate). Page 3 of this Case File shows CASE NO. PN022228 JOINT TRIAL READINESS CONFERENCE REPORT and the list extends over pages 3-28 of the Case File (1-28 of the Joint Trial Readiness Conference Report) and contains the specific documents requested that are not actually provided in this report. All that is in this report are the indications of the

existence of these files. Defendant would like the actual files specific to the Requests and will agree to reasonably put some under a stipulated limited Scope Protective Order if need be.

6) Additional Documents in Buckets 2 and 3

---

A draft of this Joint Report was circulated via email between Plaintiff and Defendant Havel. Defendant Havel has reviewed this Joint Report and has granted written permission to Plaintiff to electronically sign this document on his behalf and to file this document with the Court through Plaintiff's CM/ECF account.

Respectfully Submitted April 5 2024.

**MESSNER REEVES, LLP**

By: /s/ Steven Havel (w/ permission)
Steven Havel
Defendant

By: *~~/s/ Isaac S. Crum~~*
MESSNER REEVES LLP
Isaac S. Crum (AZ Bar #026510)
(Pro Hac Vice)
icrum@messner.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing will also be sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4051 26th Lane
Redgranite, WI 54970-7087
jason_bartel@unioncab.com

Steven Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

By: */s/ Isaac S. Crum*

**Exhibit 29**

Plaintiff's Response to Havel's Requests for Admission, Dkt. 209

Responses concerning the 1999 Consent Decree, Humphrey CDs, the Settlement Agreement, and related admissions/denials.

**EXHIBIT 1 – Plaintiffs Response to Havels RFA's**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>Plaintiff,<br><br>v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-JD-MGG |

PLAINTIFF'S RESPONSES TO DEFENDANT HAVEL'S REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff The Evolutionary Level Above Human, Inc. ("Plaintiff") submit these objections and responses ("Responses") to the Requests for Admission ("Requests" or "RFAs") propounded by Defendant Stephen Havel ("Defendant") (ECF No. 183).

GENERAL OBJECTION

Plaintiff objects to the Requests as they are all clearly untimely and in violation of the Court's Scheduling Order (ECF 117). The close of discovery was set by this Court as December 14, 2023. (ECF 117 at 6.) The Court made clear in the Scheduling Order that:

> A. Discovery.
> 1. Time limit for discovery requests. All discovery other than depositions must be initiated at least forty-five days before the discovery deadline. A deposition commenced at least five days before the discovery deadline may continue beyond the discovery deadline. Notices of deposition shall be served on opposing counsel at least fifteen days before the deposition date.

See ECF 117 at 9.

As a result, the last date to serve any discovery requests was 45 days before December 14, 2023 which calculates to Monday, October 30, 2023. The Requests for

Admission at issue were served a full 21 days later, on November 20, 2023. As such they are untimely and in violation of the Court's Scheduling Order.

The law in the Court regarding such untimely served discovery is clear. See Shadle v. First Fin. Bank, N.A., No. 1:09–cv–37, 2009 WL 3787006, at *2 (N.D.Ind. Nov.10, 2009) (citing several cases from this circuit holding that defendants had no obligation to answer discovery from pro se plaintiff on the eve of deadline, and concluding even pro se plaintiffs should have known that they need to serve discovery requests at least thirty days prior to the close of discovery). See also Westbrook v. Archey, No. 1:05– CV–00057, 2006 WL 545008, at *1 (N.D.Ind. Mar.3, 2006) (holding that defendants had no obligation to answer interrogatories served on the eve of the discovery deadline by pro se plaintiff); Shroyer v. Vaughn, No. 1:00–CV–256, 2002 WL 32144316, at *1 (N.D.Ind. July 10, 2002) (denying discovery as untimely where it was served by pro se plaintiff just before the discovery deadline and called for responses after the close of discovery). As in Westbrook, Shroyer, and Shadle, Mr. Havel's service of discovery at a date which called for responses after the close of discovery and after the time set by the Court were clearly untimely and do not require any response by Plaintiff. Id.

RESPONSES TO DEFENDANT HAVEL'S REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1: Admit that Mark King ( aka Mrc or Mrcody) and Sarah King are Officers and Founders of The Evolutionary Level Above Human Foundation ( or when it was named differently) aka The Telah Foundation.

RESPONSE TO REQUEST FOR ADMSSION NO. 1:

Admitted.

REQUEST FOR ADMISSION NO. 2: Admit Mrcody ( aka Mark King) and Srfody were members of the Group, now referred to as Heaven's Gate from 1975 to 1987.

RESPONSE TO REQUEST FOR ADMSSION NO. 2:

Admitted.

REQUEST FOR ADMISSION NO. 3: Admit that Ollody, ( aka David Cabot Van Sinderen, OLL, Olliver Odin wood) was the Artist who painted the 14 original Acrylic Paintings he copyrighted in 1982 that included the Older Member picture made into a Lithographic Print Plaintiffs, as The Telah Foundation copyrighted in 1997 as the C.B.E. Celestial Being EntityDocument(s) submitted to Copyright office to prove, as shown in Section 4 of the registration, that Plaintiffs had "obtained ownership of the copyright" as "pursuant to assignments" to legally Transfer from Author, Total Overcomers Anonymous aka T.O.A., to The Telah Foundation the Deposit of 486 Audio tapes, referred to as "The Audiotape Library of Heaven's Gate by TI and DO as per copyright registration number: SRu 298-530 effective date of Oct 27, 1997.

RESPONSE TO REQUEST FOR ADMSSION NO. 3: Plaintiff does not understand this Request for Admission and on that basis it is denied.

REQUEST FOR ADMISSION NO. 4: Admit Rkkody ( aka RKK, Charles "Chuck" Humphrey) and Oscody ( aka OSC, Wayne Parker) on or about March 27, 1997 retrieved from the Storage Room, (described in the Letter from DO's Class to Mrc and Srf (aka Mark King and Sarah King)) at one of two units #241 and #147 located at Private Storage Systems, 2421 Barham, Escondido, CA), 486 Audio Tape Cassettes of internal meetings that TI and/or DO and The Class had recorded since the 1980's.

RESPONSE TO REQUEST FOR ADMSSION NO. 4:

Admitted.

REQUEST FOR ADMISSION NO. 5: Admit that Rkkody (aka Charles Chuck Humphrey) gave away CD's with about half of those 486 Audio Tapes he digitized in 1997 on the CD's.



RESPONSE TO REQUEST FOR ADMSSION NO. 5: Upon reasonable inquiry,

Plaintiff is unable to admit or deny the requested statement for want of sufficient information to form a belief as to its truth.

REQUEST FOR ADMISSION NO. 6: Admit that in Case No. CV-98-00892 CRB Judge Richard Breyer's Consent Decree you received this order: "3. The Moreas will provide TELAH with one copy of the two CD set of CD's created by Humphrey containing copies of audiotapes of classroom sessions by The Class ("the Audiotape CD Set"). From this copy, TELAH will make a new revised Audiotape CD Set and will disseminate it as set forth in the Settlement Agreement."

RESPONSE TO REQUEST FOR ADMSSION NO. 6:

Plaintiff admits that the quoted language is found in a consent decree from 1999. Plaintiff denies that the consent decree was signed by Judge Richard Breyer. Plaintiff further denies that the Moreas ever provided Plaintiff with any CDs as was contemplated by the document.

REQUEST FOR ADMISSION NO. 7: Admit that in the Settlement Agreement referenced in Admission Request NO. 6, parts of the orders were for you to distribute and/or disseminate specific Intellectual Property like the Audio Tapes that were on Rkkody's CD's to "verified former members" of the Group or was said in some equivalent wording.

RESPONSE TO REQUEST FOR ADMSSION NO. 7:

Denied.

REQUEST FOR ADMISSION NO. 8: Admit that Defendant Stephen Havel (aka Sawyer, Swyody, Swy) is a "verified former member" of what became known as the Heaven's Gate Group, verified especially by Defendant's audio and visual participation



with DO in 4-5 Beyond Human - The Last Call Video tape Sessions the Group made in about 1991 for the public to see.

RESPONSE TO REQUEST FOR ADMSSION NO. 8: Plaintiff does not know what "verified former member" means and on that basis denies this request. Plaintiff, however, admits that Mr. Havel was a former member.

REQUEST FOR ADMISSION NO. 9: Admit you do not have any legal documentation from the Group to Copyright anything the Group Created.

RESPONSE TO REQUEST FOR ADMSSION NO. 9:

Denied.

REQUEST FOR ADMISSION NO. 10: Admit you do not have any legal or implied "Transfers" of any of the Groups unregistered Copyrights or Trademarks to Plaintiffs under any name.

RESPONSE TO REQUEST FOR ADMSSION NO. 10:

Denied.

REQUEST FOR ADMISSION NO. 11: Admit you do not have any legal or implied "Assignments" of any of the Groups unregistered or registered Copyrights or Trademarks to Plaintiffs under any name.

RESPONSE TO REQUEST FOR ADMSSION NO. 11:

Denied.

REQUEST FOR ADMISSION NO. 12: Admit that when you registered for Copyrights for any of the Heaven's Gate Intellectual Property in 1997 it was not lawful.

RESPONSE TO REQUEST FOR ADMSSION NO. 12:

Denied.



REQUEST FOR ADMISSION NO. 13: Admit you stated that You were given the task by DO's Class of fulfilling the wishes of the Group re: the disposition of their Intellectual Property.

RESPONSE TO REQUEST FOR ADMSSION NO. 13:

Admitted.

REQUEST FOR ADMISSION NO. 14: Admit that in the Letter from DO's "The Class" addressed to Mrc/Srf (Mark King and Sarah King), regarding the content of the Storage Rooms listed in

Request for Admission No. 4, you received The Group's wishes for the dissemination of their Intellectual Property you would find in those Storage rooms as, "It is our desire that any items of value that are retrievable by you be divided among those who feel inclined to disseminate our information."

RESPONSE TO REQUEST FOR ADMSSION NO. 14:

Plaintiff admits that the quoted language is found in letters from the Class and Plaintiff admits that such division was accomplished and finalized in 1997–1999.

REQUEST FOR ADMISSION NO. 15: Admit that the Groups only example of their intended copyright, they put on their first and/or second version of their Book that they also posted on their website Heavens gate.com you still maintain that reads:

© Common Law Copyright
1996 by Heaven's Representatives
Printed in the New Mexico Republic, the United States of America
ALL RIGHTS RESERVED, WITHOUT PREJUDICE,
U.C.C. 1-207, U.C.C. 1-103.6 This book is protected by Common Law copyright.
Permission is hereby granted to reproduce this book, or portions thereof, as long as the content is unchanged, i.e., nothing added to it or taken away from it as long as it is for noncommercial purposes.
No part of this publication may be reproduced or transmitted in any form or by any means, now known or to be invented or adapted, for the purpose of financial gain or profit.



RESPONSE TO REQUEST FOR ADMSSION NO. 15:

Denied.

REQUEST FOR ADMISSION NO. 16 : Admit that per Admission No. 15, Defendant has the right to make available to the public (like on Defendants 3spm Youtube.com Channel) any part of the Heaven's Gate Book since doing so is not for the purpose of financial gain or profit.

RESPONSE TO REQUEST FOR ADMSSION NO. 16:

Denied.

8

REQUEST FOR ADMISSION NO. 17: Admit that you gave Jhnody (aka Francisco Falcon) an Audio tape log of the Heaven's Gate Audios that included detailed descriptions of the content of each audio tape numbering from 1 to 930.

RESPONSE TO REQUEST FOR ADMSSION NO. 17:

Admitted.

REQUEST FOR ADMISSION NO. 18: Admit that you ordered your lawyers to construct 2 Court Ordered Audio Tape Logs that replaced the descriptions shown in the log you gave Jhnody as described in Request for Admission No. 17 with the description, "Various Discussions".

RESPONSE TO REQUEST FOR ADMSSION NO. 18:

Any communications between Plaintiff and its attorneys are protected by the attorneyclient privilege and Plaintiff will not respond to this request.

REQUEST FOR ADMISSION NO. 19: Admit that in the Letters from The Class ( or other ways Group Members signed Letters) sent to former Class members (like you, Rkkody, Oscody, Jhnody, Neody, Flxody and Ablody) it was DO and The Classes "desire"



that these former members would want to participate in the Dissemination of their Intellectual Property.

RESPONSE TO REQUEST FOR ADMSSION NO. 19:

Plaintiff admits that former Class members were involved in the disposition of property in 1997–1999. Plaintiff objects to this request as calling for speculation.

REQUEST FOR ADMISSION NO. 20: Admit that a deceased Student Member of the Heaven's Gate Group known as Srrody, (aka legally Steven Terry Mccarter) is not a legitimate Author of any of the Groups audio tapes, the way you have claimed by registering a copyright on July 7, 2023 using a new claimant name of "The Evolutionary Above Human Foundation d.b.a. The Telah Foundation" for the following registration details from the U.S. Copyright office:

Type of Work: Sound Recording

Registration Number / Date: SRu001552631 / 2023-07-07 Application Title: Tape 487 and 9 Other Unpublished Works.
Title: Tape 487 and 9 Other Unpublished Works.
Description: Electronic file (eService)
Copyright Claimant: The Evolutionary Above Human Foundation d.b.a. The Telah Foundation, Transfer: by operation of law. Address: 4757 E. Greenway Road, #103, Phoenix, AZ, 85032, United States.
Date of Creation: 1990
Authorship on Application: Steven Terry Mccarter, 1956- ; Citizenship: United States. Authorship: Sound Recordings.
Rights and Permissions: Rowan Smith, Messner Reeves LLP, 7250 N 16th Street, Suite
410, Phoenix, AZ, 85020, United States, rsmith@messner.com Copyright Note: C.O. correspondence.
Regarding group registration: A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization. Contents:



Tape 487.
Tape 488.
Tape 489-490.
Tape 491.
Tape 492.
Tape 493.
Tape 494.
Tape 495.
Tape 496.
Tape 497-498.
Names: Mccarter, Steven Terry
Evolutionary Above Human Foundation Telah Foundation

<u>RESPONSE TO REQUEST FOR ADMSSION NO. 20:</u>

Denied.

<u>REQUEST FOR ADMISSION NO. 21:</u> Admit that you sent Francisco Falcon, (aka Jhnody) approximately 80 of the Heaven's Gate audio cassette tapes (copies or originals) that you received

from the Judge Lisa Guy-Schall Settlement (that San Diego County had confiscated from the same Storage Room(s) referenced in Request for Admission No. 4.

RESPONSE TO REQUEST FOR ADMSSION NO. 21:

Plaintiffs admit Mr. Falcon was handed 80 audio cassettes tape copies.

REQUEST FOR ADMISSION NO. 22: Admit that you sent Francisco Falcon (aka Jhnody) approximately 930 of the digitized audio tapes you possess.

RESPONSE TO REQUEST FOR ADMSSION NO. 22:

Admitted.

REQUEST FOR ADMISSION NO. 23: Admit that Defendant Stephen Havel and co-Defendant Jason Bartel have never shown any evidence they provided or displayed or performed or disseminated or distributed any of the Heaven's Gate Intellectual Property to make a profit or for any commercial purposes for over 25 years.

RESPONSE TO REQUEST FOR ADMSSION NO. 23:

Denied.

REQUEST FOR ADMISSION NO. 24: Admit that the organizational name; Total Overcomers Anonymous aka T.O.A. that the Group used didn't exist much at all before 1992, (as evidenced on the video tape jackets The Group had made on the original Beyond Human - The Last Call video tape Series), thus could not be a legal Authors name for the Tel ah Foundations copyright registration of the 486 Audio Tapes that were created by The Group from 1982 to 1989 or so.

RESPONSE TO REQUEST FOR ADMSSION NO. 24:

Denied.

REQUEST FOR ADMISSION NO. 25: Admit since TI (aka Bonnie Lu Truesdale Nettles) and DO (aka Marshall Herf Applewhite) or DO alone are the only true Authors of the 1061 or 1082 or so Heaven's Gate Audio Tapes and/or Video Tapes to include; the Beyond Human - The Last Call Video Tape Series and/or the 4 Video tapes; Last Chance to Evacuate Earth Before Recycling, Planet About to be Recycled - Your Only Chance to
Survive is to Leave With Us, DO's Final Exit and Students Expressing Themselves Before Exit, thus using any other Authors name or entity as the Author or as a Work For Hire
"Author" in all your Copyright registrations is not legal.

RESPONSE TO REQUEST FOR ADMSSION NO. 25:

Denied.

DATED this 9th day of September 2025.

MESSNER REEVES, LLP

By: /s/ Isaac S. Crum
MESSNER REEVES LLP
Isaac S. Crum (Pro Hac Vice)

**Exhibit 30**

Plaintiff's Response to Havel's Motion to Determine Sufficiency of RFAs, Dkt. 233

Plaintiff's response concerning the Settlement Agreement and its stated inability to produce or admit its contents.

**EXHIBIT 3 – PLAINTIFFS RESPONSE TO MOTION TO DETERMINE SUFFICIENCY OF PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMSISION (DE 221 AND 222)**



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA SOUTH BEND DIVISION

| | |
|---|---|
| The Evolutionary Level Above Human Foundation d/b/a The Telah Foundation,<br><br>Plaintiff,<br>v.<br><br>Stephen Robert Havel,<br>Cathy JoAnn Weaver,<br>Jason Bartel,<br><br>Defendants. | CASE NO. 3:22-CV-395-DRL-SJF |

RESPONSE TO MOTION TO DETERMINE SUFFICIENCY OF PLAINTIFF'S
RESPONSES TO REQUESTS FOR ADMSISION (DE 221 AND 222)

Plaintiff submits this response to Defendant Stephen Havel's Motion to Determine the Sufficiency of Plaintiff's Responses to Requests for Admission. (DE 221 and 222; hereafter "Motion"). The underlying requests and Plaintiffs responses thereto may be found at DE 219 ("Plaintiff's Amended Responses to Defendant Havel's Requests for Admission") referred to hereinafter as the "Requests."

I. INTRODUCTION

Plaintiff's counsel cannot make heads or tails of Defendant Havel's multiple filings grouped under the guise of a Motion to Determine the Sufficiency of Plaintiff's Responses to Requests for Admission. Nevertheless, as Defendant Havel states, the Plaintiff's counsel did meet

and confer with Mr. Havel over a Zoom call prior to him filing this Motion. See DE 222-1 at 1. During that Zoom call, Plaintiff's counsel explained to Mr. Havel why each of the Requests for Admission were denied (or admitted) as shown in Plaintiff's responses. Rather than accept these answers (For example, that Plaintiffs do not have a copy of the



"Settlement Agreement" (see RFA No. 7) and, therefore, cannot admit to what it says or does not say.), Defendant Havel has filed the instant motion to fight the factual veracity of Plaintiff's responses. This is, of course, improper. Mayes v. City of Hammond, Indiana, No. 2:03-CV-379-PRC, 2006 WL 2251877, at *2 (N.D. Ind. Aug. 1, 2006) ("A motion to determine sufficiency is not an appropriate vehicle to litigate the correctness of a response as Rule 36 does not permit the court to determine whether a response is supported by evidence before trial. If a party believes a response to a request to admit is incorrect, the appropriate remedy under Rule 26 is to prove the matter at trial, and then apply to the court for reasonable expenses, including reasonable attorney fees, in making that proof.")

As explained further below, in addition to being properly responded to, these request were served in an untimely manner, which was objected to by Plaintiff and which should resolve Defendant Havel's entire motion. Furthermore, this very Motion is untimely and filed well after the October 16, 2023 deadline for the parties to file any discovery-related nondispositive motions. Plaintiff, thus, requests that the Court deny Defendant Havel's Motion and award Plaintiff its fees pursuant to Fed. R. Civ. P. 36(a)(6) and 37(a)(5)(B).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure states, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

This Court further explained what is required for a Rule 36(a) Motion in Mayes v. City of Hammond, Indiana, No. 2:03-CV-379-PRC, 2006 WL 2251877, at *2 (N.D. Ind.



Aug. 1, 2006), wherein the Court stated:

> The party challenging the sufficiency of a response to a request for admission has the burden of persuasion to demonstrate that the response is insufficient.
>
> > Typically, the ability to prove sufficiency hinges on the specificity of the response; not the response's accuracy. A motion to determine sufficiency is not an appropriate vehicle to litigate the correctness of a response as Rule 36 does not permit the court to determine whether a response is supported by evidence before trial. If a party believes a response to a request to admit is incorrect, the appropriate remedy under Rule 26 is to prove the matter at trial, and then apply to the court for reasonable expenses, including reasonable attorney fees, in making that proof.
>
> Climco Coils Co. v. Siemens Energy & Automation, Inc., 2006 WL 850969, *1 (N.D.Ill. Mar.28, 2006) (citing Wanke v. Lynn's Transp. Co., 836 F.Supp. 587, 598 (N.D.Ind.1993)).

Id.

## III. ARGUMENT

Defendant's Motion should be denied for three independent reasons. First, this motion is untimely given the October 16, 2023 deadline for the parties to file any discoveryrelated nondispositive motions. As a result the Motion must be denied. Second, the Requests at issue were untimely served in violation of this Court's Scheduling Order, and were correctly objected to on that basis. Indeed, this Court has already held that interrogatories served that same day were untimely served. (See DE 220 at 2–3.) Finally, Plaintiff properly responded to the Requests. Defendant Havel's issue appears to stem from his dislike of the answers, not a concern that his requests went unanswered—since they were all answered. Indeed, the Federal Rules expressly permit denials of requests for admission where appropriate, and expressly state that the recourse, if a request is factually disputed, is to prove the matter at trial and then seek relief under Rule 37(c)(2). That is Defendant Havel's relief for the disputed factual issues his Motion is raising. This is not

something to be resolved on pre-trial motion practice and Defendant Havel's Motion should be denied.

A. This Motion is Untimely

The Court's Scheduling Order made clear that October 16, 2023 was the deadline for the parties to file any discovery-related nondispositive motions. This Court's recent ruling confirmed that the October 16, 2023 deadline was still operative. September 22, 2025 Order (DE 220) at 3 (finding certain interrogatories, and motion to amend interrogatories, untimely and stating "the Court did not set a new deadline for nondispositive motions"). Defendant's Motion comes almost two years after the nondispositive motion deadline. As such, it should be denied.

B. Defendant's Motion Should Be Denied Pursuant to Plaintiff's Objection to the Requests for Admission

As stated in its Response, Plaintiff objected to the Requests as they are all clearly untimely and in violation of the Court's Scheduling Order (ECF 117). The close of discovery was set by this Court as December 14, 2023. (ECF 117 at 6.) The Court made clear in the Scheduling Order that:

> A. Discovery.
> 1. Time limit for discovery requests. All discovery other than depositions must be initiated at least forty-five days before the discovery deadline. A deposition commenced at least five days before the discovery deadline may continue beyond the discovery deadline. Notices of deposition shall be served on opposing counsel at least fifteen days before the deposition date.

See ECF 117 at 9.

As a result, the last date to serve any discovery requests was 45 days before December 14, 2023 which calculates to Monday, October 30, 2023. The Requests for Admission at issue were served a full 21 days later, on November 20, 2023. As such they are untimely and in violation of the Court's Scheduling Order.



The law in the Court regarding such untimely served discovery is clear. See Shadle v. First Fin. Bank, N.A., No. 1:09–cv–37, 2009 WL 3787006, at *2 (N.D.Ind. Nov.10, 2009) (citing several

cases from this circuit holding that defendants had no obligation to answer discovery from pro se plaintiff on the eve of deadline, and concluding even pro se plaintiffs should have known that they need to serve discovery requests at

least thirty days prior to the close of discovery). See also Westbrook v. Archey, No. 1:05– CV–00057, 2006 WL 545008, at *1 (N.D.Ind. Mar.3, 2006) (holding that defendants had no obligation to answer interrogatories served on the eve of the discovery deadline by pro se plaintiff); Shroyer v. Vaughn, No. 1:00–CV–256, 2002 WL 32144316, at *1 (N.D.Ind. July 10, 2002) (denying discovery as untimely where it was served by pro se plaintiff just before the discovery deadline and called for responses after the close of discovery).

As in Westbrook, Shroyer, and Shadle, Mr. Havel's service of discovery at a date which called for responses after the close of discovery and after the time set by the Court were clearly untimely and do not require any response by Plaintiff. Id.

Indeed, this Court's September 22, 2025 Order (DE 220) regarding similarly untimely served interrogatories—which were served the same day as these Requests for Admission, November 20, 2023—covers the situation of the Requests for Admission at issue in this motion:

> Regarding timeliness, the Court's Rule 16(b) Scheduling Order set December 14, 2023, as the deadline for completion of all discovery and October 16, 2023, as the deadline for the parties to file any discovery-related nondispositive motions. As to the latter, the Court's order stated that "no motion to extend discovery or to continue other pretrial deadlines will be approved after this nondispositive motion deadline, except for excusable neglect or other extraordinary reasons." [DE 117 at 6]. The Court's order also stated that the "parties are thus advised to complete timely discovery," including an explanation at the end of the order that "[a]ll discovery other than depositions must be initiated at least forty-five days before the discovery deadline." [Id. at 9].
>
> Defendants propounded multiple discovery requests, including these interrogatories, on November 20, 2023—only 24 days before the original discovery deadline, and 35 days after the deadline to file any discovery-
>
> USDC IN/ND case 3:22-cv-00395-DRL-SJF document 233 filed 10/09/25 page 6 of 18
>
> related nondispositive motions. Moreover, a party responding to interrogatories must serve its answers and any objections within 30 days of being served with interrogatories. Fed. R. Civ. P. 33(a), (b)(2). Thus, Plaintiff's deadline to respond to these interrogatories would have been after the close of the original discovery deadline. Accordingly, the Court agrees that, in addition to being improperly propounded to nonparties, the interrogatories were also untimely on multiple fronts when originally propounded. The interrogatories remain untimely now as the Court

> did not set a new deadline for nondispositive motions, and the interrogatories were proposed only 15 days before the close of the current discovery period. Such untimeliness warrants denial.

DE 220 at 2–3. Like with interrogatories, requests for admission are not due until 30 days after they are served. Fed. R. Civ. P. 36(a)(4). Thus, responses to these Requests were not due until after the close of discovery and the Requests were untimely. As a result, and consistent with this Court's clear warning in its scheduling order, and ruling in its previous Order, the instant non-dispositive motion must be denied.

C. Defendants Motion Should Be Denied Since the Requests Were Properly Answered

Assuming, arguendo, that the Requests were timely served and that the Court overrules Plaintiff's timeliness objection articulated above, Defendant's Motion should still be denied because Plaintiff has adequately responded to each of the Requests for Admission. Plaintiff confesses that it had trouble following Defendant Havel's Motion documents. Nevertheless, in an attempt to respond to Defendant Havel, Plaintiff has taken the below list of Requests at issue from "Exhibit A" to Defendant Havel's filing (DE 2221): Request Nos. 3, 5, 7, 9, 10, 11, 12, 15 ,16, 18, 19, 20, 23, 24, and 25. Plaintiff responds to each complaint in turn.

1. Request for Admission No. 3.[1]

Request for Admission No. 3 states and was responded to as follows:



> REQUEST FOR ADMISSION NO. 3: Admit that Ollody, (aka David Cabot Van Sinderen, OLL, Olliver Odin wood) was the Artist who painted the 14 original Acrylic Paintings he copyrighted in 1982 that included the Older Member picture made into a Lithographic Print Plaintiffs, as The Telah Foundation copyrighted in 1997 as the C.B.E. Celestial Being Entity

1 The response to Request for Admission NO. 3 was amended in Plaintiff's Amended Response (DE 219) to correct a copy-and-paste typographical misprint of Request No. 3 and to provide the substantive response shown above.

RESPONSE TO REQUEST FOR ADMSSION NO. 3: Plaintiff admits that the Older Member artwork was created by David Cabot Van Sinderen. Plaintiff is without knowledge as to the number of paintings he copyrighted in 1982 and, thus, denies the remainder of this request on that basis.

Defendant Havel makes no clear argument as to what is wrong with this response and, indeed, it appears that Defendant Havel ignored Plaintiff's Amended Response (DE 219), which was filed before Defendant Havel's Motion and which resolved Defendant Havel's issue with Plaintiff's original response.[2]

2. Request for Admission No. 5.

Request for Admission No. 5 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 5: Admit that Rkkody (aka Charles Chuck Humphrey) gave away CD's with about half of those 486 Audio Tapes he digitized in 1997 on the CD's.<br>RESPONSE TO REQUEST FOR ADMSSION NO. 5: Upon reasonable inquiry, Plaintiff is unable to admit or deny the requested statement for want of sufficient information to form a belief as to its truth. |

As explained to Defendant Havel (see DE 222 at 3) during the Zoom meet-andconfer, Plaintiff does not have a copy of Mr. Humphrey's CDs. Thus, Plaintiff responded as it did. It is unclear how else Plaintiff could have responded.

---

USDC IN/ND case 3:22-cv-00395-DRL-SJF document 233 filed 10/09/25 page 8 of 18

3. Request for Admission No. 7.

Request for Admission No. 7 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 7: Admit that in the Settlement |

---

2 There was a copy-and-paste error in the original response which made Request for Admission No. 3 unintelligible, and Plaintiff responded that it did not understand the request. (*See* DE 209.)

| |
|---|
| Agreement referenced in Admission Request NO. 6, parts of the orders were for you to distribute and/or disseminate specific Intellectual Property like the Audio Tapes that were on Rkkody's CD's to "verified former members" of the Group or was said in some equivalent wording. |
| RESPONSE TO REQUEST FOR ADMSSION NO. 7: |
| Denied. |

As Plaintiff has repeatedly stated (see DE 208 at 3), Plaintiff does not have a copy of the referenced settlement agreement and cannot admit or deny what was stated therein. As this Judge Gotsch stated over two years ago, Defendants could have obtained that agreement from the Court in that case. Defendants chose not to do so.

4. Request for Admission No. 9.

Request for Admission No. 9 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 9: Admit you do not have any legal documentation from the Group to Copyright anything the Group Created. |
| RESPONSE TO REQUEST FOR ADMSSION NO. 9: |
| Denied. |

This was denied as it is factually inaccurate, indeed the Court's Order in the California probate proceeding vests in Plaintiff all rights to all intellectual property from the Group. (See DE 90 at 2–4.) Furthermore, even before that ruling, Plaintiff had rights to the intellectual property via the express wishes of the Group that Plaintiff own and control everything belonging to the Group. As Defendant Havel points out, and as Judge Gotsch restated in his ruling (DE 194 at 16–17), there was California probate decision that held that the Statutory Durable Powers of Attorney executed and notarized by the decedents were incapable of transferring rights in intellectual property. That ruling was being appealed, and Plaintiff maintains that it would have prevailed on appeal. Nevertheless, in order to resolve the matter and rather than defend the ruling on appeal, the estates of the



decedents (represented by Public Administrator Don Billings), settled the matter and executed a consent decree with the Court, making clear that Plaintiff owns the intellectual property by transferring all rights the estates would otherwise have in the intellectual property to Plaintiff. (See

DE 194 at 17–18.) Again, Plaintiffs argument seems to be a denial is not a permitted response to a request for admission. That is simply not true. "[Plaintiff] responded to each of [Defendant's] request for admissions with a denial, an admission, or a partial admission or partial denial, thereby complying with Rule 36(a)." Wilson v. Kautex, Inc., No. 1:07-CV-00060, 2007 WL 2406917, at *1 (N.D. Ind. Aug. 20, 2007). Furthermore, a party cannot be asked to admit a legal conclusion. Whole Woman's Health All. v. Hill, 2020 WL 1028040, at *3 (S.D. Ind. Mar. 2, 2020); Hanley v. Como Inn, Inc., No. 99-C-1486, 2003 WL 1989607, at *3 (N.D. Ill. Apr. 28, 2003).

5. Request for Admission No. 10.

Request for Admission No. 10 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 10: Admit you do not have any legal or implied "Transfers" of any of the Groups unregistered Copyrights or Trademarks to Plaintiffs under any name.<br>RESPONSE TO REQUEST FOR ADMSSION NO. 10:<br>Denied. |

Plaintiffs response is the same as for the previous Request for Admission No. 9.

6. Request for Admission No. 11.

Request for Admission No. 11 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 11: Admit you do not have any legal or implied "Assignments" of any of the Groups unregistered or registered Copyrights or Trademarks to Plaintiffs under any name.<br>RESPONSE TO REQUEST FOR ADMSSION NO. 11:<br>Denied. |

Plaintiffs response is the same as for the previous Request for Admission Nos. 9–10.

7. Request for Admission No. 12.

Request for Admission No. 12 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 12: Admit that when you registered for Copyrights for any of the Heaven's Gate Intellectual Property in 1997 it was not lawful.<br>RESPONSE TO REQUEST FOR ADMSSION NO. 12:<br>Denied. |

Plaintiffs response is the same as for the previous Request for Admission Nos. 9–11.

8. Request for Admission No. 15.

Request for Admission No. 15 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 15: Admit that the Groups only example of their intended copyright, they put on their first and/or second version of their Book that they also posted on their website Heavens gate.com you still maintain that reads:<br>© Common Law Copyright<br>1996 by Heaven's Representatives<br>Printed in the New Mexico Republic, the United States of America<br>ALL RIGHTS RESERVED, WITHOUT PREJUDICE,<br>U.C.C. 1-207, U.C.C. 1-103.6 This book is protected by Common Law copyright. Permission is hereby granted to reproduce this book, or portions thereof, as long as the content is unchanged, i.e., nothing added to it or taken away from it as long as it is for noncommercial purposes. No part of this publication may be reproduced or transmitted in any form or by any means, now known or to be invented or adapted, for the purpose of financial gain or profit.<br>RESPONSE TO REQUEST FOR ADMSSION NO. 15:<br>Denied. |

Plaintiff believes that the Group published other works with different copyrights and, thus, have denied this request. Again, Plaintiffs argument seems to be a denial is not

a permitted response to a request for admission. That is simply not true. "[Plaintiff] responded to each of [Defendant's] request for admissions with a denial, an admission, or a partial admission or partial denial, thereby complying with Rule 36(a)." Wilson v.
Kautex, Inc., No. 1:07-CV-00060, 2007 WL 2406917, at *1 (N.D. Ind. Aug. 20, 2007).

9. Request for Admission No. 16.

Request for Admission No. 16 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 16 : Admit that per Admission No. 15, Defendant has the right to make available to the public (like on Defendants 3spm Youtube.com Channel) any part of the Heaven's Gate Book since doing so is not for the purpose of financial gain or profit.<br>RESPONSE TO REQUEST FOR ADMSSION NO. 16:<br>Denied. |

This is an incorrect assertion of law. Regardless of what earlier printings of the book state, individuals are not permitted to freely make copies of any of Plaintiff's intellectual property. Furthermore, a party cannot be asked to admit a legal conclusion.
Whole Woman's Health All. v. Hill, 2020 WL 1028040, at *3 (S.D. Ind. Mar. 2, 2020); Hanley v. Como Inn, Inc., No. 99-C-1486, 2003 WL 1989607, at *3 (N.D. Ill. Apr. 28, 2003).

10. Request for Admission No. 18.

Request for Admission No. 18 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 18: Admit that you ordered your lawyers to construct 2 Court Ordered Audio Tape Logs that replaced the descriptions shown in the log you gave Jhnody as described in Request for Admission No. 17 with the description, "Various Discussions".<br>RESPONSE TO REQUEST FOR ADMSSION NO. 18:<br>Any communications between Plaintiff and its attorneys are protected by the attorney-client privilege and Plaintiff will not respond to this request. |

This request clearly calls for the content of communications between Plaintiff and

its counsel related to this litigation. Such information is protected by both the attorneyclient privilege as well as the work product doctrine.

11. Request for Admission No. 19.

Request for Admission No. 19 states and was responded to as follows:

> REQUEST FOR ADMISSION NO. 19: Admit that in the Letters from The Class ( or other ways Group Members signed Letters) sent to former Class members (like you, Rkkody, Oscody, Jhnody, Neody, Flxody and Ablody) it was DO and The Classes "desire" that these former members would want to participate in the Dissemination of their Intellectual Property.
> RESPONSE TO REQUEST FOR ADMSSION NO. 19:
> Plaintiff admits that former Class members were involved in the disposition of property in 1997–1999. Plaintiff objects to this request as calling for speculation.

Plaintiff fairly admitted that between 1997 and 1999, Plaintiff did consult with former "Class members" as to how property related to the "Class" should be distributed. Plaintiff objected to the remainder to the extent that it sought for the personal desires of a large number of people who have been deceased for over 25 years.

12. Request for Admission No. 20.

Request for Admission No. 20 states and was responded to as follows:

> REQUEST FOR ADMISSION NO. 20: Admit that a deceased Student Member of the Heaven's Gate Group known as Srrody, (aka legally Steven Terry Mccarter) is not a legitimate Author of any of the Groups audio tapes, the way you have claimed by registering a copyright on July 7, 2023 using a new claimant name of "The Evolutionary Above Human Foundation d.b.a. The Telah Foundation" for the following registration details from the U.S.
> Copyright office:
> Type of Work: Sound Recording
> Registration Number / Date: SRu001552631 / 2023-07-07 Application Title:
> Tape 487 and 9 Other Unpublished Works.
> Title: Tape 487 and 9 Other Unpublished Works.
> Description: Electronic file (eService)
> Copyright Claimant: The Evolutionary Above Human Foundation d.b.a. The Telah



> Foundation, Transfer: by operation of law. Address: 4757 E. Greenway Road, #103, Phoenix, AZ, 85032, United States.
> Date of Creation: 1990
> Authorship on Application: Steven Terry Mccarter, 1956- ; Citizenship: United

States. Authorship: Sound Recordings.
Rights and Permissions: Rowan Smith, Messner Reeves LLP, 7250 N 16th Street, Suite
410, Phoenix, AZ, 85020, United States, rsmith@messner.com Copyright Note: C.O. correspondence.
Regarding group registration: A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization. Contents:
Tape 487.
Tape 488.
Tape 489-490.
Tape 491.
Tape 492.
Tape 493.
Tape 494.
Tape 495.
Tape 496.
Tape 497-498.
Names: Mccarter, Steven Terry
Evolutionary Above Human Foundation Telah Foundation

RESPONSE TO REQUEST FOR ADMSSION NO. 20:
Denied.

Plaintiff denied this request. As explained to Mr. Havel on the Zoom call, the Copyright office has instructed that the person "who captured" the sounds that appear on a final recording may be the "author." See https://www.copyright.gov/eco/gramsr/author.html. Again, Plaintiffs argument seems to be a denial is not a permitted response to a request for admission. That is simply not true. "[Plaintiff] responded to each of

[Defendant's] request for admissions with a denial, an admission, or a partial admission or



partial denial, thereby complying with Rule 36(a)." Wilson v. Kautex, Inc., No. 1:07-CV00060, 2007 WL 2406917, at *1 (N.D. Ind. Aug. 20, 2007). Furthermore, a party cannot be asked to admit a legal conclusion. Whole Woman's Health All. v. Hill, 2020 WL

1028040, at *3 (S.D. Ind. Mar. 2, 2020); Hanley v. Como Inn, Inc., No. 99-C-1486, 2003 WL 1989607, at *3 (N.D. Ill. Apr. 28, 2003).

13. Request for Admission No. 23.

Request for Admission No. 23 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 23: Admit that Defendant Stephen Havel and co-Defendant Jason Bartel have never shown any evidence they provided or displayed or performed or disseminated or distributed any of the Heaven's Gate Intellectual Property to make a profit or for any commercial purposes for over 25 years. |
| RESPONSE TO REQUEST FOR ADMSSION NO. 23: Denied. |

This was denied because, as Mr. Havel well knows, it is not true. As stated in Plaintiff's Reply to its Motion for a Preliminary Injunction (DE 90 and 90-1):

> For example, on December 17, 2022, Mr. Havel was paid to perform at a "Heaven's Gate Re-Examined" event at a venue in Georgia called the "Lodge of Sorrows," during which time he played "the Final Exit Video." [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 10, 12; Exh. 3 to Exh. A] Plaintiff is the owner of "the Final Exit Video." [Declaration of Mark King, attached hereto as Exh. A, at 11; Doc. 81-1 at 27:16; id. at 28:7]
>
> The "Heaven's Gate Re-Examined" event was live streamed on December 17, 2022, on the 3spm YouTube channel belonging to Mr. Havel that he and Ms. Weaver operate. [Declaration of Mark King, attached hereto as Exh. A, at ¶ 13] The Final Exit Video played for approximately one and one-half hours. [Id. at ¶ 14; Exhibits 5-6 to Exh. A]
> In the December 17, 2022, live stream's comment section, Mr. Havel responded to a comment that stated "what a great event…jealous of all who attended" by saying "we are hoping to do more all over the country. This feels like the right thing to do." [Declaration of Mark King, attached hereto as Exh. A, at ¶ 15] Ms. Weaver, through her username "cathysouthwestern,"

USDC IN/ND case 3:22-cv-00395-DRL-SJF document 233 filed 10/09/25 page 15 of 18

> also replied that "We are in talks to have another one coming up next May, it will be in Chicago this time!" [Id. at ¶ 16]
>
> In the December 17, 2022, live stream's comment section, Mr. Havel wrote, in part, "Wish we would have livestreamed starting at the museum earlier in the day when we had a little meeting around the Heavens Gate part of the museum with DO's voice playing and his face showing from a Beyond Human tape in the background

the entire time." [Id. at ¶ 17] Beyond Human is a copyrighted work owned by Plaintiff. [id. at ¶ 18; see Doc. 1-2]

Mr. Havel and Ms. Weaver were both paid for participating in the "Heaven's Gate Re- Examined" event on December 17, 2021. [Declaration of Mark King, attached hereto as Exh. A, at ¶¶ 20-21; Exh. 8 to Exh. A] DE 90 at 9–10.

14. Request for Admission No. 24.

Request for Admission No. 24 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 24: Admit that the organizational name; Total Overcomers Anonymous aka T.O.A. that the Group used didn't exist much at all before 1992, (as evidenced on the video tape jackets The Group had made on the original Beyond Human - The Last Call video tape Series), thus could not be a legal Authors name for the Telah Foundations copyright registration of the 486 Audio Tapes that were created by The Group from 1982 to 1989 or so. |
| RESPONSE TO REQUEST FOR ADMSSION NO. 24: |
| Denied. |

Plaintiff denied this request because Total Overcomers Anonymous aka T.O.A. was/is a legitimate author name in connection with the group's intellectual property. Again, Plaintiffs argument seems to be a denial is not a permitted response to a request for admission. That is simply not true. "[Plaintiff] responded to each of [Defendant's] request for admissions with a denial, an admission, or a partial admission or partial denial, thereby complying with Rule 36(a)." Wilson v. Kautex, Inc., No. 1:07-CV-00060, 2007 WL 2406917, at *1 (N.D. Ind. Aug. 20, 2007). Furthermore, a party cannot be asked to admit a legal conclusion. Whole Woman's Health All. v. Hill, 2020 WL 1028040, at *3 (S.D. Ind.



Mar. 2, 2020); Hanley v. Como Inn, Inc., No. 99-C-1486, 2003 WL 1989607, at *3 (N.D. Ill. Apr. 28, 2003).

15. Request for Admission No. 25.

Request for Admission No. 25 states and was responded to as follows:

| |
|---|
| REQUEST FOR ADMISSION NO. 25: Admit since TI (aka Bonnie Lu Truesdale Nettles) and DO (aka Marshall Herf Applewhite) or DO alone are the only true Authors of the 1061 or 1082 or so Heaven's Gate Audio Tapes and/or Video Tapes to |

15

| |
|---|
| include; the Beyond Human - The Last Call Video Tape Series and/or the 4 Video tapes; Last Chance to Evacuate Earth Before Recycling, Planet About to be Recycled - Your Only Chance to Survive is to Leave With Us, DO's Final Exit and Students Expressing Themselves Before Exit, thus using any other Authors name or entity as the Author or as a Work For Hire "Author" in all your Copyright registrations is not legal. |
| RESPONSE TO REQUEST FOR ADMSSION NO. 25: |
| Denied. |

This was denied for the same reason as the previous requests regarding authorship and the legal conclusion that the Copyright registrations are "not legal". This all has no basis in law. Again, Plaintiffs argument seems to be a denial is not a permitted response to a request for admission. That is simply not true. "[Plaintiff] responded to each of [Defendant's] request for admissions with a denial, an admission, or a partial admission or partial denial, thereby complying with Rule 36(a)." Wilson v. Kautex, Inc., No. 1:07-CV00060, 2007 WL 2406917, at *1 (N.D. Ind. Aug. 20, 2007). Furthermore, a party cannot be asked to admit a legal conclusion. Whole Woman's Health All. v. Hill, 2020 WL 1028040, at *3 (S.D. Ind. Mar. 2, 2020); Hanley v. Como Inn, Inc., No. 99-C-1486, 2003 WL 1989607, at *3 (N.D. Ill. Apr. 28, 2003).

## IV. CONCLUSION

For the reasons stated above, Defendant Havel's Motion should be denied. His



decision to file the instant—untimely—motion to fight over factual issues that are unsupported on his end, and equally unsupported legal conclusions, is not the proper use of Requests for Admission and, in any event, were properly responded to by Plaintiff. Plaintiff, thus, requests that the Court deny Defendant Havel's Motion and award Plaintiff its fees pursuant to Fed. R. Civ. P. 36(a)(6) and 37(a)(5)(B).

Submitted October 9, 2025.

MESSNER REEVES, LLP

By: /s/ Isaac S. Crum
MESSNER REEVES LLP

**Exhibit 31**

Bartel aka Carlan Doti (Crlody) Email to Havel — September 11, 2008

Email stating that, as part of the settlement, Mark was supposed to make the CDs RKK and Doti made available to verifiable former Class members.

## RE: HG site email working again

From: Carlan Doti (crlody@hotmail.com)

To: sawyerhg@yahoo.com

Date:Thursday, September 11, 2008 at 12:42 PM EDT

Of course it is possible that he didn't know but I still find it rather strange that the e-mail has been disabled for over two years and the timing of when it went down. It could be the lower forces though and maybe they had not been receiving many e-mails.

As part of the settlement Mark is supposed to provide the CDs RKK and I made (with the RKKody.com website removed) available to "verifiable former Class members". As far as I know this has never been done probably because no one has asked for them Mark was also supposed to get all the Books Kathy Morea had but he never made any effort to. To me it seems like his motivation was NOT to provide information but rather to prevent anyone else from doing so. The lawsuit claimed that all the Class' info (The Book, the videos, the audio tapes etc) was "assigned to plaintiffs(m and S). This is another flat out lie and it was also claimed that the EBE picture and the Away Team patch were "assigned" to them.

It was also claimed that "defendants' (Kathy and by proxy RKK and I) acts of infringemnet have been committed with the intent to cause confusion and mistake and deceive". I feel this is another example of the Kings accusing others of the very things they have done. Like claiming they received "other" instructions from the Class regarding the distribution of the materials and deliberately lying in the lawsuit to bolster their position.

"Defendants have deprived plaintiffs of the ability to control the publication and/or reproduction of the Subject works, thereby causing severe and irreparable damage to plaintiffs' reputation and goodwill". I don't even know where to begin with dissecting how ludicrous that claim is.

"Plaintiffs are informed and believe and on that basis allege that defendants have profited from the Subject Works, thereby depriving plaintiffs of potential revenue". So that's what it's about , Mark and Sarah's precious "revenue". The Next Level knows that all of this is pure garbage. Mark and Sarah know deep down that we didn't profit off of anything. If we were trying to we were doing it all wrong by lowering the Book price from $45 to $25 and by gving away the tapes and CDs and the Book and videos to any library who requested it. The Class asked that any of the funds that M and S retrieved be given to those who still supported the Class and who wanted to get the info out. This was never done. The Class specifically stated that any funds could be used for the "living expenses" of those trying to distribute the info. Mark claimed on Art Bell that "no one is to make a living off of this".

Avtions speak louder than words and Mark and Sarah's actions have done nothing except hide Ti and Do's info away and legally prevent anyone else from distributing it. Mark is a liar and his arrogance will be his undoing. I have no interest in being diplomatic with him as he has demonstrated time and again that he cannot admit when he's wrong. He has lied and twisted the Class' instructions to suit his own ends. I know that he cannot hurt the NL or Ti and Do's mission but that does not excuse his actions. He has slandered RKK and told lies about him. I do not see Ti and Do in him AT ALL. I do not trust ANYTHING he says or Rio for that matter. At a certain point I had to abandon taking the higher side with these individuals because we aren't in the Class and we don't share the same goals.

The away team is a good topic as I feel it is a very advanced paper. I'll talk to you tonight.

---

Date: Thu, 11 Sep 2008 07:56:14 -0700
From: sawyerhg@yahoo.com
Subject: Re: HG site email working again
To: crlody@hotmail.com

interesting but it's what we have and i don't think it needs to hinder us. I have ideas for a new letter but then kept feeling to hold back on it. He at least communicated to me and seems to genuinely be thankful for the information of the email not working. The influences don't tell us when they are working on us and how so we are at any point going to get one or the other or a mix of course. Rkk and osc are not here and he and sarah were given the main control of the site and thus it seems natural for him to consider it his baby. People still have access to the information on the site and he will have an interest in providign books and perhaps tapes (beyond human perhaps) if for no other reason than to recoop some of his expenditures thus, that situation will continue to work for the Next Level I imagine.

Tonight I was wondering about focusing on the document Jwnody wrote: away team from deep space

surfaces before departure not with the entire 2 hours though alot can be spoken of surrounding it.

What do you think about that. sawyer

----- Original Message ----
From: Carlan Doti <crlody@hotmail.com>
To: Sawyer heavensgate <sawyerhg@yahoo.com>
Sent: Thursday, September 11, 2008 12:59:04 AM
Subject: RE: HG site email working again

That's a little strange as the e-mail hasn't worked for at least two years and I think it stopped working about the time that I started corresponding with Stenwick (the "new follower" who eventually left the vehicle) and he and others started e-mailng Mark asking for more info.

I'm not sure why Mark thinks he should control the site as RKK was asked to upload the Final Statements and the Intenet acct. info was sent to RKK and OSC as well. And there's the whole thing where the Kings asked RKK to take the TELAH address off of the site and they gave everything to RKK. Mark was never told that the site belonged to him but he seems to think so just because the TELAH address was at their postnet and on the site beginning in 1996 but I'm fairly certain it was the Class answering any e-mails in 1996 and not Mark. It seems like the Class was hoping that RKK, OSC and the Kings could work together on things but we know what happened. I doubt Mark will ever relinquish control of any of this unless the human legal system forces him to. I think it's a serious embarassment that he runs the site since he's never publicly acknowledged the Class (except using a fake name on Art BEll and that was mostly to attack RKK's efforts at distributing the info). I honestly do not see much, if any, NL mind there but I of course could be wrong.

---

Date: Wed, 10 Sep 2008 20:55:21 -0700
From: sawyerhg@yahoo.com
Subject: HG site email working again
To: goet1410@yahoo.com
CC: crlody@hotmail.com

Hi - I emailed Mark and as it turned out he didn't know the email was not working. He said there was a "denial of service attack" on the site recently but now it's fixed. I took the opportunity to volunteer to handle the site - I guess I copied you on that, to which he thanked me but said they'd handle any inquiries from the documentary, etc. per 1996 instructions from Do, whatever those were.

I mentioned the tapes again but no response from that.

Now that I know he is seeing emails at that address I may draft another letter to him, but Dave, I think you were initially seeking to contact him which is why you learned of the email malfunction.

So, if you are still going to send that I'll hold off, until I hear if you get any response.

sawyer

---

See how Windows connects the people, information, and fun that are part of your life. See Now

---

Get more out of the Web. Learn 10 hidden secrets of Windows Live. Learn Now

**Exhibit 32**

TELAH_000045 — Mark and Sarah King Communication to Havel

Plaintiff discovery production containing the Kings' statement concerning the original 200-tape CD and "the videotapes the Group left."

**From:** **Sawyer heavensgate** sawyerhg@yahoo.com
**Subject:** Re: HG
**Date:** September 1, 2021 at 3:23 PM
**To:** rep@heavensgate.com

So what is the Next Level way in which you will allow me to keep my youtube channel?

Why 2022 for the provision of the audio tapes?

Please explain why it's so important that you do things "legally" when we all know that TI and DO knew that the entire human kingdom's legal system was the work of Lucifer and his associates lording over and riding herd over humans that had risen to positions of power in the human kingdom.

Maybe I don't understand. Is the web site domain threatened? For instance are you being pressured by human authorities to reign in rogue disseminators of TI and DO's information.

You apparently don't know that I have never encouraged or even insinuated that committing suicide was what TI and DO would have anyone do at this time so accusing me of killing teenagers is a lie and I can't believe you believe that. Show me some examples of a teenager who killed themselves because of something I said. Sure someone may have because of what DO said. DO's the one you are finding fault with when he said in DO's Final Exit that someone could have never known him but could feel they missed the bus. Even with his saying that he also said they should first study their information. He never put a time limit on that so you are wrong about that accusation about me.

I'm not saying I wouldn't work with you, so make your proposal and I'll talk to TI and DO about it and see what I feel. I am not without options. There are many alternatives to youtube and google and facebook.

On Wednesday, September 1, 2021, 01:49:04 AM EDT, rep@heavensgate.com <rep@heavensgate.com> wrote:

Hi Sawyer,

1. We replied to your email in late March. We don't know why you didn't get it but in short, no, you or your production people do not have rights to do that. You do not have permission.

2. Yes, we took down Jason Bartel's illegal, stolen audio tapes. He took down the Google drive but Google will be shutting down that drive and everything on it soon. Please be careful about encouraging that friend of yours. You may have cost him his Google privileges and possibly being added to the lawsuit. Please be careful about asking others (Geoff Barnes, Jeremy Gilley, Abby Rose, Jason Pollack Anon, etc, etc, etc) about performing illegal acts of storing, transcribing, disseminating and keep tapes hidden from us. This illegal activity may hurt them more than you know. Some of these people are young and impressionable and your advice may unintentionally hurt them.

3. Yes, we want to have Ti and Do's information go out to the world. We thought you may even help us with that but it must be done legally. What you have done over the past few months is not legal. We know that you and Bartel think that getting these tapes out, your way, is fine and correct, but it is not. Did you wonder why the entities we have contacted take down the information so quickly? Did you think it was because we tricked them or presented our case better? No, it is not. We thought you knew we had copyrights on everything (yes, even the 1061 individual audiotapes). The Telah Foundation has full ownership, full copyrights and trademarks on everything the Group owned. Not because we got to the the rights first but because we have a full federal court order from a judge in 1999 giving us every bit of intellectual property. When those entities see that document, they cut and run. The Federal Copyright and Trademark office has determined a total of 917 illegal downloads of infringed material. At $100,000 per download it is currently sitting at over $91 million in fines to you and Bartel (and who ever is added). Google Drive, 4Share, Wordpress, Youtube are all getting clear as soon as possible. Both Bartel's and your sites are all coming down. We are meeting on Youtube later this week to give final instruction's on that one. Do you want that site to stay up, then please, cooperate with us. It ironic that your activity may set back the release of all the audiotapes on March 24th, 2022 (25 anniversary). Yes, we want the information out but it must be done in a legal and orderly method. Please help us with this, not hinder us.

4. You know that Bartel had said many unfounded things about you for over two decades. You

4. You know that Bartel had said many unfounded things about you for over two decades. You know what he said is just incorrect. Multiply that many times for us. When he doesn't know, he just makes things up. It goes from the silly about "saying it worth millions of dollars (last time it was 10 million-it's like a fish story). In April 1997, we were with Chuck Humphrey at a Mexican restaurant called Carlos O'Brien's. We told him how our attorney, Jerry Weinstein, had said this information may be worth a million dollars. We laughed at him and said it would not be worth a cent. Chuck laughed with us and reframed the story for Bartel. Another of his tales is that we lost the case with San Diego. Not true, that was the judge who signed the order of intellectual property release to us. We have never spoken to or met Bartel but he has a whole trove of these made-up stories to make himself feel that he was a part of things. He never has been but he may get up front and personal with a judge very soon.

5. Stop telling people to kill themselves! When our attorneys see what you and Bartel say it isn't interpreted as allowing choice (or other euphemisms you use). It is taken as aiding and abetting a death. In the past few months you have even changed your wording to "needing you body for lessons". We thought you had finally had an enlightened moment. Obviously not. Both you and Bartel have killed teenagers and others who Ti and Do would have never allow a brief encounter with the information to ever do. How can someone who get a fraction of information over a short period of time make an informed decision? Ti and Do taught people for over 20 years before this even came up.

6. You leave out a key piece. We were given all the intellectual and physical property by Ti, Do and the Class. Read the letters. We were to determine what was of value and what to do with it. We determined and still determine who can do this. If you care to ask, we can work with you. Bartel and Falcon are out. They lost that ability to do anything for the Group unless they have a serious change of heart to really help Ti and Do instead of hurting them.

7. No, they deliberately did not mention you. Bartel was never even thought about because he is not a part of this. All he know is bitterness, hatred and lies. He even stated such in his postings. He really has to expose that influence for what it really is.

8. Keeping the website up and disseminating the information is our task. We only found out about the 4Share location on May 1st, 2021. We immediately went to 4Share to take it down. They didn't want to until they saw the legal ramifications. As far as letting both of you have the original 200 tape CD or using the videotapes the Group left, we let that slide for two decades but you went too far. Everything must come down now. You blew it. You damaged Ti and Do and the Group.

9. As far as brand or logo, we have ownership of them for 75 years. What this means is that you can no longer use the logo on the website, the website or the term "Heaven's Gate" from now on (without permission).

10. Yes, you and Bartel are the classic keyboard cowards.

11. You and Bartel take what is in articles or documents as coming straight from us. You keep quoting things we have never said. These authors or documentarians change things all the time. Why have you never checked with us before making accusations?

12. We believe everything that Ti, Do and the Next Level taught us. Always have. Your past statements make it clear that you want to follow the ways of the Next Level but have trouble doing that.

13. Finally, our international attorney indicates we can get to Francis Falcon, even in Venezuela. He is not out of reach. We have all international copyrights too.

We recommend that you do not send this out to others (like you do a lot). Take time to have along breathe and really think things over. We want to work with you but we have to see some cooperation on your part. Please communicate your feelings to us first so we can come to an agreement. We need to know before the Youtube meeting occurs. We don't want to stop you

TELAH_000046

agreement. We need to know before the Youtube meeting occurs. We don't want to stop you expressing your views but we have to have it occur in a Next Level way.

Mrc/Srf

> On Aug 31, 2021, at 7:03 PM, Sawyer heavensgate <sawyerhg@yahoo.com> wrote:
>
> Thank you for getting in touch.
>
> I sent you an email a few months ago and asked you about allowing me to use ollody's digital pictures in video's I want to make and you didn't respond or I missed it and only learned of your negative response from Jhnody so I knew you got it.
>
> Did you take down Crlody's 4shared account by claiming he breached a copyright?
>
> Do you want people to have TI and DO's information or not?
>
> Who cares that you have a bone to pick with Crlody because of some of his vulgar ways. It's about fulfilling what TI and Do intended and you know from audio tape 149 that they intended for people to have a chance to hear all the audio tapes after they left.
>
> And why are you telling people the gate is closed in some many words and the only thing to do is to study the information for a future incarnation? Didn't DO say that people could follow him. I know that's not popular but it's not that hard to explain what he meant by using the many things He and Jwnody wrote and said to not give a false impression that suicide doesn't get one anywhere. In the Away team document Jwnody wrote in the Book it was clear that the task souls are taking vehicles to do AFTER their exit especially is to disseminate their information and "Stand in Defense" of all they stood for and taught.
>
> And in the letter they sent to you, they said they hoped people would have the opportunity to learn more in depth about them and they wrote that knowing that their book was posted on the internet way before then so what does that say about the "items of value" in storage that they instructed you or whoever did the task to divide among those who want to do the task.
>
> Just because they didn't mention me or crlody is no excuse to not provide the audio tapes to us and whoever wanted to participate in the task.
>
> We have to take our lumps when it comes to why we each left which was nice to see, though painful, in the audio tape where DO talked about swyody leaving. And I know now that they also said things about you two.
>
> I know you are both under pressure from the lower forces who want to do away with the website and all of us who believe in and stand for TI and Do in any way. That's the price we have to pay in our current service. That doesn't mean to me to throw caution to the wind. Maybe you see Crlody as doing that but that doesn't make sense to me either as surely you knew he had that 4shared account for years with the 196 audio's available for download to anyone who searched for it.
>
> Maybe it wasn't you who claimed copyright infringement of the audios on 4shared. I hope you will let me know if that's the case.
>
> If it isn't you then who else would have the copyrights or perhaps 4shared doesn't look for proof before cancelling an account because crlody doesn't have to pay for the space so they just turn him off.
>
> I saw on the log file that you claimed to hold the copyrights to the audios. Is that true? Did you file

for every tape. That to me seems to be an extreme to do to protect intellectual property in this case when the 196 tapes have already been sent far and wide and even if that was not the case, holding them back from people, fearing they would be tampered with as I believe Srfody first said to me was her concern, or used in some sexual way I believe she said also doesn't make any sense since as I told her then that's going to happen no matter what we do.

I am glad you challenged Lil Uzi Vert's, but mostly it was the words he replaced that I disliked.

I don't think we need to preserve some brand name or logo. It's going to run it's course and in a sense of course even bad publicity reaches that one or two people who look into the details and potentially become students of TI and DO.

So I'm glad you wrote as all these things have built up in my craw so to speak and I was a bit of a coward to approach you on them.

I'm sure you know of the critiques I've written on my blog re: email interviews you gave to various small media groups. I have been critical of you for being so brief about explaining some things while other things you were as best I could tell making up entirely. I won't hash over all those things and I know I'm trusting that those who printed your email responses didn't doctor things or take them out of context as why would they in most cases.

I'm not sure if you believe in everything TI and DO taught and did as being their instruction and of course it doesn't matter to me personally that I know about what you believe, except that I have to field the many questions people have about things they have reported that you have said to them in emails. There has been some consistency in some of what they have reported to me which leads me to believe they are accurately reporting and sometimes they send me the copy of the exact emails.

So I do think it's important to maintain communication and I look forward to what you might say about what I've said here.

In a sense you may have had a harder task but we all get what we need so I'm willing to put it all behind us and move forward if it's about TI and DO's full teachings getting to more people.

sawyer

On Tuesday, August 31, 2021, 01:01:05 PM EDT, rep@heavensgate.com <rep@heavensgate.com> wrote:

Sawyer,

You tell people we don't communicate with you, even though you know that is not true.

Are you going to turn down our ability to communicate with you at this important time?

Mrc & Srf

> On Aug 30, 2021, at 10:24 AM, rep@heavensgate.com wrote:
>
> Did you want to converse with us before more misunderstandings arise?
>
> MRC

TELAH_000048

**Exhibit 33**

Documentation of TELAH's Two-CD Set Containing Six Audio Files

Documentation of two CDs received from TELAH, including labels, copyright notices, file dates, and file-property information.

EXHIBIT 24 - Telah Foundation's 2 CD's containing total of 6 Audio files Havel received

**Introductory Narrative**

This Exhibit contains true and accurate images documenting Defendant Havel's receipt from the Telah Foundation of 2 CD's, he received sometime in the early 2000's in the mail. They show the CD's that describe containing 3 audio files each that appear to have been created by the Telah Foundation's Mark King and Sarah King around 2008 with Ownership listed as "Everyone" that seem to be token CD creations to in part appear to abide by the 1999 Judge Breyer Consent Decree to "disseminate" the about 200 audio file content of Rkkody's two CD's (he had sent to Defendant Havel in 1997-1998 and to co-Defendant Jason Bartel and to many Libraries (as shown on Rkkody.com)).

A. Screenshots of Telah Foundations First of two CD Labels, Copyright notices, Content 3 of the Heaven's Gate audio meeting files, Date of 2008 and Properties as Owner as "Everyone" that Defendant Havel received in the early 2000's:


Listing Our Task-1984
Programming Specifics-1984
Re-Establishing The Committal-1985
Audio CD
TI & DO

Figure 24-1: Telah Foundation 3 Audio CD 1 - Label – Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's ~200 Audios


TI & DO
Copyright 1997 TELAH Foundation

Figure 24-2: Telah Foundation 3 Audio CD 1 – "Copyright 1997 Telah Foundation" closeup – Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's containing about 200 Audios.



Figure 24-3: Telah Foundation 3 Audio CD 1 – directory content – showing creation date of 2008 - Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's containing about 200 Audios.




Figure 24-4: Telah Foundation 3 Audio CD 1 – Properties showing Owner as "Everyone" – Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's containing about 200 Audios.

B. Screenshots of Telah Foundations Second of two CD Labels, Copyright notices, Content 3 of the Heaven's Gate audio meeting files, Date of 2008 and Properties as Owner as "Everyone" that Defendant Havel received in the early 2000's:


Inverness
2nd Meeting
May 24 1994
Audio CD
DŌ

Figure 24-5: Telah Foundation 3 Audio CD 2 - Label – Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's ~200 Audios


Inverness
2nd Meeting
May 24 1994
Audio CD
Copyright 1997 TELAH Foundation

Figure 24-6: Telah Foundation 3 Audio CD 2 – "Copyright 1997 Telah Foundation" closeup – Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's containing about 200 Audios.




Figure 24-7: Telah Foundation 3 Audio CD 2 – directory content – showing creation date of 2008 - Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's containing about 200 Audios.



Figure 24-8: Telah Foundation 3 Audio CD 2 – Properties showing Owner as "Everyone" – Post Breyer Consent Decree 1999 Order to Disseminate Rkkody's CD's containing about 200 Audios.