UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION
d/b/a THE TELAH FOUNDATION

Plaintiff,
v.

STEPHEN ROBERT HAVEL;
CATHY JOANN WEAVER;
and JASON BARTEL,

Defendants.

-FILED-
SEP 16 2026
At ____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

CAUSE NO. 3:22-CV-00395-DRL-SJF

**DEFENDANT CATHY JOANN WEAVER'S MOTION TO RECONSIDER AND REVISE THE AUGUST 26, 2026 INTERLOCUTORY ORDER UNDER FED. R. CIV. P. 54(b)**

**INTRODUCTION**

Defendant Cathy JoAnn Weaver, appearing pro se, respectfully moves under Federal Rule of Civil Procedure 54(b) for reconsideration and revision of the Court's August 26, 2026 Opinion and Order, Dkt. 276, to the extent it granted Plaintiff partial summary judgment on copyright ownership and liability as to Ms. Weaver on Counts I, III, and IV. The motion is directed to the interlocutory ownership determination and the resulting liability determinations before final judgment. Rule 54(b) permits a district court to revise a nonfinal order at any time before entry of a judgment adjudicating all claims and all parties' rights and liabilities. See Galvan v. Norberg, 678 F.3d 581, 587 (7th Cir. 2012).

This motion is not an attempt to relitigate whether possession of a physical cassette transfers copyright. Defendant agrees that physical possession and copyright ownership are distinct under

17 U.S.C. § 202. The narrower issue is whether the existing record establishes, as a matter of law and without a genuine factual dispute, that the particular numbered recordings Plaintiff alleges Ms. Weaver used are the particular protected works within Registration No. SRu00298530 and are among the intellectual-property interests Plaintiff acquired through the 1999 probate settlement.

The Court's own Opinion identifies the unresolved evidentiary problem: Ms. Weaver asserted that the probate and settlement documents do not identify or inventory the audio tapes; Plaintiff's logs contain missing or unavailable tapes; Plaintiff has not produced a complete master-copy list; the registrations are broad group registrations; and the parties dispute the completeness and consistency of the audio archive. Dkt. 276 at 5–6. The Court concluded that these disputes did not defeat summary judgment because their relationship to infringement liability was unclear. Id. at 6. Defendant respectfully submits that, for the particular numbered recordings placed at issue by Plaintiff, that relationship is direct: identification of the protected work is part of establishing the work Plaintiff owns and the work allegedly infringed.

## I. RULE 54(b) AUTHORIZES REVISION OF THIS NONFINAL ORDER

The August 26, 2026 order is interlocutory because the Court has not entered a final judgment resolving all claims and all parties' rights and liabilities. The Court expressly ordered further proceedings concerning damages and other remedies, resolution of other counts, and the remaining counterclaims. Dkt. 276 at 38, 65. Rule 54(b) therefore permits revision before final judgment. Galvan, 678 F.3d at 587.

The Seventh Circuit has recognized that reconsideration may be appropriate where the court has misunderstood a party, decided outside the adversarial issues presented, or made an error of reasoning or apprehension, and where there has been a controlling or significant change in law or

facts. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). Defendant does not ask the Court merely to change its mind. She asks the Court to reconsider the legal consequence of factual distinctions that the Opinion itself identifies but does not resolve.

## II. THE OWNERSHIP DETERMINATION SHOULD BE REVISED BECAUSE THE RECORD DOES NOT IDENTIFY EACH PARTICULAR AUDIO WORK AT ISSUE

Plaintiff's First Amended Complaint identifies particular recordings by number: 149, 263, 004, 030, 161, 156, 011, 054, 052, 050, and 200 through 204. Dkt. 132 ¶ 51. The Court relied on those identifications in finding the infringement record sufficiently concrete. Dkt. 276 at 7, 24–26. But identifying a tape number as something allegedly played is not the same proposition as establishing that the numbered tape is one of the protected works owned by Plaintiff. The record contains tape-number gaps, missing or unavailable entries, differing archive lists, and uncertainty concerning the completeness of the deposit. The Court expressly recognized those disputes. Dkt. 276 at 5–6, 16–18.

A copyright plaintiff must establish ownership of a valid copyright and copying of protected expression. Dkt. 276 at 16 (citing Design Basics, LLC v. Signature Constr., Inc., 994 F.3d 879, 886 (7th Cir. 2021)). Where Plaintiff identifies individual recordings as the allegedly infringed works, the evidentiary chain must connect those recordings to the registered works and to Plaintiff's ownership rights. A registration certificate may establish a rebuttable presumption under 17 U.S.C. § 410(c), but that presumption does not itself resolve factual questions about which later-numbered recordings correspond to the registered deposit or which specific property was transferred in the probate settlement.

The present record is therefore materially different from a case in which a plaintiff identifies a single work by title, supplies the registration covering that exact work, and establishes an undisputed chain of title. Here, the archive itself is disputed. The Court should not convert a

general registration for an audio library into an adjudication that every later-numbered tape in a disputed archive is necessarily owned by Plaintiff.

## III. THE 1999 PROBATE SETTLEMENT DOES NOT, WITHOUT MORE, IDENTIFY EVERY NUMBERED RECORDING NOW ASSERTED

The Court correctly recognized that the ownership history centers on the California probate proceedings. Dkt. 276 at 4–6. The February 22, 1999 probate decision found no sufficient gift of the intellectual property by the decedents. Id. at 5. Plaintiff appealed, and while that appeal was pending Plaintiff and the Public Administrator reached a settlement that the probate court approved on August 11, 1999. Id.

Defendant does not ask the Court to disregard the settlement or to hold that § 204(a) requires a separate assignment for every work despite a transfer by operation of law. The Court's ruling that a probate transfer can qualify as a transfer by operation of law is therefore not the issue presented here. See Dkt. 276 at 18–20; 17 U.S.C. §§ 201(d)(1), 204(a).

Instead, the issue is the scope and identification of the property to which the settlement applies. The settlement schedules use general descriptions of boxes containing audio cassettes and other materials rather than a complete list of individual tape numbers. The absence of individual tape identification is significant when Plaintiff later identifies particular numbers as the works allegedly infringed.

Historical evidence also indicates that a substantial portion of the audio archive was removed before San Diego authorities took custody of the remaining storage contents, and that Rkkody/Right to Know retained and distributed a substantial subset. This evidence does not establish that Rkkody owned all copyrights merely because it possessed tapes. It does, however, create a factual issue concerning custody, provenance, numbering, and the relationship between

the tapes later asserted by Plaintiff and the property actually administered and transferred in probate.

The Court should therefore revise the ownership determination, or at minimum clarify that summary judgment does not adjudicate ownership of any particular recording unless Plaintiff can establish the necessary evidentiary connection between that recording, the registered work, and the rights conveyed through the probate proceeding.

## IV. THE REGISTRATION PRESUMPTION DOES NOT RESOLVE THE PARTICULAR-WORK DISPUTE

The Court held that Plaintiff's registrations establish prima facie validity and that Ms. Weaver's generalized disputes concerning logs, numbering, metadata, and deposits did not establish an inaccurate registration. Dkt. 276 at 17–18. Defendant respectfully submits that her argument is narrower.

Defendant is not asserting that every discrepancy in a registration defeats registration under 17 U.S.C. § 410(c), nor is she relying solely on alleged inaccuracies to invalidate the certificate. The issue is whether the certificate proves that the specific numbered recordings identified in paragraph 51 are the same protected works covered by the certificate. That is a factual identification question.

The historical log contains entries for individual numbered tapes and expressly marks some tapes as "tape not available." Those entries are relevant to whether tape numbering can safely be treated as a complete and continuous inventory. The existence of a registration for an "Audiotape Library" does not answer that question by itself.

The Court also recognized that Plaintiff's records do not contain a complete master-copy list and that the parties dispute the completeness and consistency of the archive. Dkt. 276 at 6. Those facts bear directly on whether Plaintiff has identified the copyrighted work allegedly infringed.

## V. COUNT III SHOULD BE RECONSIDERED BECAUSE OWNERSHIP OF VERSION 3 DOES NOT RESOLVE AUTHORIZATION, NOTICE, OR WILLFULNESS

The Court's August 26, 2026 Opinion resolved ownership and liability on Count III, but the record now identified above shows that ownership is not the only issue relevant to the defense. The Court should revise the interlocutory ruling to permit factual development concerning the version used, the exact material recorded, the scope and conditions of the Group's reproduction authorization, Defendant's lack of notice of the 1999 decree, and the parties' dissemination history.

The particular conduct alleged in Count III was also limited. Defendant participated in pre-suit, noncommercial recordings of portions of Student-written documents contained in the Book. Defendant ceased the challenged recording activity after Plaintiff commenced this action. These facts bear directly on willfulness, damages, and the propriety of statutory or enhanced damages and attorneys' fees.

The dissemination history further supports the reasonableness of Defendant's understanding. Defendant states that Mark and Sarah later praised Jhnody for translating the same Book material into Spanish. Defendant does not offer that communication as proof that Mark and Sarah expressly authorized the precise recordings at issue; she offers it as evidence bearing on whether her understanding that Group materials were intended for dissemination was reasonable.

Those facts matter independently of ultimate ownership. A defendant's knowledge and state of mind are relevant to an allegation of willfulness and to the extraordinary remedies Plaintiff seeks. Defendant's reliance on the reproduction notice appearing in the Book itself and on the Group's public website, combined with her lack of knowledge of the later 1999 decree and her

cessation of the challenged activity after suit, creates at minimum a factual issue concerning whether her conduct was undertaken with the requisite culpable state of mind.

Defendant did not know of the 1999 Breyer Consent Decree when she made the recordings. The Consent Decree, entered in the Northern District of California case, placed TELAH in charge of ownership and management of the Group's intellectual property and expressly addressed dissemination of the Book. Defendant's state of mind must be evaluated in light of the information and authorization actually communicated to her at the time.

The Group's Book contained a reproduction notice that permitted reproduction of the Book or portions of it subject to stated conditions, including preservation of the content and noncommercial use. Exhibit 17 reproduces the notice displayed at heavensgate.com/book/02.htm. Defendant relied upon this publicly displayed notice in good faith before suit. The notice is evidence relevant to authorization, implied license, good faith, willfulness, and damages, even though the precise legal scope of the notice remains a question for the Court.

The Book existed in multiple versions. The Group created and formatted earlier versions, including Versions 1 and 2, in or about 1996. Defendant used a Group-distributed copy rather than obtaining the Book from TELAH's later Version 3 publication. Plaintiff's registration of Version 3 therefore does not by itself resolve the provenance of every underlying document incorporated into that version or the scope of permissions previously communicated concerning those materials.

The unresolved issue is different: whether that ownership determination establishes, as a matter of law, that Defendant's particular pre-suit use of portions of Student-written material from an earlier Group-distributed version of the Book was unauthorized and willful.

Plaintiff's Count III concerns Registration No. TXu000817732 and the Literary Work entitled "How and when 'Heaven's Gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials." Defendant now more precisely identifies the issue presented. She does not need to dispute, for purposes of this motion, that TELAH acquired and claims ownership and management rights concerning Version 3 through the 1999 proceedings and subsequent publication.

**V.A. CONTEMPORANEOUS 2021 NEGOTIATIONS IDENTIFIED SPECIFIC MATERIALS AND PROPOSED CONDITIONS FOR THEIR DISSEMINATION**

Because the proposal arose in the course of efforts to resolve the dispute, Defendant does not rely on it as an admission that Plaintiff's claims were valid or invalid, or as proof of the amount of any claim. Defendant relies on the document for the limited factual context described above, including the particular materials identified and the communications concerning proposed uses and authorization.

The proposal did not itself become a completed license, and Defendant does not contend otherwise. Its significance for present purposes is the contemporaneous factual record concerning what materials were being identified, what methods of dissemination were being discussed, and what authorization was being sought before the parties' later negotiations broke down. The proposal therefore bears on the factual issues concerning identification of the works, notice, the circumstances surrounding Defendant's conduct, and the parties' contemporaneous communications.

The written proposal also carried forward the March 25, 2022 date that Defendant's Answer describes as having been stated by Mark King during the September 3, 2021 livestream discussion concerning public availability of the Audio Works. Defendant's Answer states that

Mark King said he would upload the Audio Works to Vimeo by March 25, 2022, provided that Havel agreed to stop playing the Audio Works on his livestream, and that Havel agreed. The later November 14 proposal therefore followed an earlier discussion concerning the proposed public availability of the Audio Works and placed that timing and the requested uses into a written proposal. See Defendant's Answer, pp. 46–49; Exhibit 18.

The proposal was specific about the materials and uses being discussed. Among other things, it requested that all audio tapes and logs known and unknown be made available through the proposed Vimeo site; requested permission to play every audio and log on social-media platforms and in person, subject to any watermark or disclaimer required by TELAH; requested permission to transcribe every audio and submit the transcripts to TELAH for posting; and separately identified particular video works, including the twelve-part Beyond Human series, Last Chance to Evacuate Planet Earth, Planet Earth About to Be Recycled, and Do's Final Exit, for which permission to play them online and in person was requested. See Exhibit 18.

The record also contains a contemporaneous written proposal exchanged during the parties' 2021 efforts to resolve the dispute over dissemination of the Group's materials. On November 14, 2021, Defendant Weaver transmitted a written "Legal Agreement" to rep@heavensgate.com. The responding message confirmed receipt and stated that the proposal would be passed to Plaintiff's attorneys. See Exhibit 18.

## VI. THE COUNT IV C.B.E. RULING SHOULD BE RECONSIDERED OR CLARIFIED BECAUSE PROVENANCE, PRIOR DISSEMINATION, AND PLAINTIFF'S OWN KNOWLEDGE BEAR DIRECTLY ON WILLFULNESS AND REMEDIES

The C.B.E. issue is not limited to whether Plaintiff possesses a registration. The February 22, 1999 probate Statement of Decision specifically addressed the C.B.E. painting and found no evidence that the decedents transferred the intellectual-property rights in the painting to the

petitioners. The same decision recorded that several Group audiovisual works, including Do's Final Exit and Beyond Human, had been given to Mark and Sarah for the express purpose of distributing copies and receiving returned copies, and characterized them as agents or distributors, but no more. These historical findings are relevant to the provenance and dissemination history that underlies Plaintiff's present claims.

The provenance issue is also supported by Plaintiff's own discovery response. In response to Request for Admission No. 3, Plaintiff admitted that the Older Member artwork was created by David Cabot Van Sinderen, while stating that it lacked knowledge concerning the number of paintings he copyrighted in 1982. See Dkt. 233 at 7. The record contains a Copyright Office catalog entry for "The Meeting," Registration No. VAu000041610, dated November 18, 1982, identifying Olliver Odinwood as copyright claimant and identifying fourteen full-color acrylic illustrations by Olliver Odinwood, with a 1980 creation date. See Exhibit 26. This registration predates Plaintiff's 1997 C.B.E. registration by approximately fifteen years.

The probate record also documents that a certificate of copyright registration for artwork for "The Meeting" in the name of Olliver Odinwood was among certificates recovered from the decedent's residence. See Exhibit 26. The same probate decision found no evidence that the decedents gave the petitioners intellectual-property rights in the C.B.E. painting. See id. This evidence does not by itself establish that Plaintiff could never own a later lithographic or derivative version. It does, however, create a concrete factual issue concerning authorship, the preexisting artwork incorporated into the registered C.B.E. work, and the chain connecting that material to the rights Plaintiff claims to have acquired through the probate proceedings.

The record also presents a substantial issue concerning Plaintiff's knowledge of longstanding public dissemination of Group materials before Defendant's challenged conduct. Defendant had

observed that the C.B.E. image and other Group materials were publicly available before this action. That history bears directly on whether Defendant could reasonably have understood her later participation to constitute willful infringement.

The chronology of Defendants' use is also material. Mr. Havel states that he had publicly used the Older Member image on his 3SPM YouTube channel since approximately 2007, including with other Group paintings and MP3/audio materials. He states that when he and Ms. Weaver later created T-shirts using the Older Member image, they obtained the image from Right to Know/Rkkody, where it had already been publicly disseminated, and the image was also available on the Group's former Heaven's Gate website. The T-shirt activity occurred before this action was filed. Mr. Havel and Ms. Weaver state that they had not seen Plaintiff's asserted C.B.E. registration before being sued and that they stopped selling T-shirts using the Older Member/C.B.E. image and the other logo image after the litigation began. That chronology does not resolve ownership, but it directly bears on whether the conduct was willful, on Defendants' state of mind, and on the propriety of enhanced damages or extraordinary equitable relief. It also supports limited discovery concerning when Plaintiff knew of Defendants' longstanding public use and what Plaintiff communicated about the status of the image before suit.

Most significantly, Plaintiff's own discovery production, Bates No. TELAH_000045, contains a September 2021 communication from Mark King and Sarah King addressing Havel and Bartel together. Plaintiff's representatives stated that, concerning the original 200-tape CD and use of "the videotapes the Group left," "we let that slide for two decades but you went too far," before demanding that the material be removed. Plaintiff's representatives thereby acknowledged longstanding knowledge of Havel's and Bartel's dissemination of Group materials and an extended period of prior non-enforcement.

That admission is especially significant because the videotapes involved in Plaintiff's infringement allegations and related proceedings include Group works such as the Beyond Human videos and Do's Final Exit video. Plaintiff later relied upon alleged use of such videotapes, including at the Graveface Museum meeting, as evidence of infringement while maintaining that Plaintiff held the copyrights in those works. The Court need not determine on this motion that TELAH_000045 granted an express license. Rather, the communication is evidence concerning Plaintiff's knowledge, course of dealing, prior acquiescence, and the reasonableness of Weaver's understanding, and it is directly relevant to willfulness and extraordinary remedies.

The Court should therefore reconsider or clarify the Count IV ruling to the extent the ruling is understood to resolve willfulness or other remedy-related questions arising from the C.B.E. claim. Ownership of a registration does not itself establish that a defendant acted willfully, nor does it resolve factual questions concerning Plaintiff's prior knowledge and conduct. At minimum, those questions should remain open for factual development in the damages and remedies proceedings the Court has already ordered.

## VI.A. SUBSEQUENT COMMUNICATIONS WITH SARAH KING FURTHER DOCUMENT THE CONTINUING DIRECT COMMUNICATIONS BETWEEN WEAVER AND THE KINGS

The screenshots should be considered together with the earlier documentary record of direct communications between Weaver and the Kings, including the September 2021 livestream discussion, the September–October 2021 emails and text communications, and the November 2021 written proposal concerning dissemination of the Group's materials. That chronology is relevant to the Court's consideration of the parties' knowledge, communications, and conduct

during the period preceding and surrounding the challenged activity. Defendant does not contend that the screenshots, standing alone, establish the content of every underlying communication; their purpose is to preserve the contemporaneous statements and the fact of the continuing direct communications.

Defendant submits these screenshots to preserve the occurrence and content of the communications, not as evidence concerning any personal relationship between the participants. The screenshots themselves document Sarah King's participation in the livestream chat and her statements concerning communications with Weaver and Mark King.

The record also contains later contemporaneous evidence concerning Defendant Weaver's continuing direct communications with Mark and Sarah King. During a later livestream conducted by Defendant Weaver, Sarah King participated in the chat through the account identified as @sarah.king20. The screenshots preserve several statements by that account, including "I have done nothing wrong," "I'm waiting for my apology," "I deserve some respect," "I will appreciate if you can refrain from texting my man," and "can I get an apology?" See Exhibit 19.

## VII. THIS MOTION DOES NOT RELY ON PHYSICAL POSSESSION AS A SUBSTITUTE FOR COPYRIGHT OWNERSHIP

Judge Gotsch previously held that the probate settlement transferred the relevant intellectual property to TELAH and rejected an argument that physical copies remaining with defendants were outside TELAH's copyright rights. See Evolutionary Level Above Human Foundation, Inc. v. Havel, No. 3:22-CV-00395, Dkt. 194. Defendant does not ask this Court to revisit that holding merely because other people possessed copies.

The present motion instead asks the Court to distinguish two propositions: (1) possession of a copy does not itself transfer copyright, which Defendant accepts; and (2) the existence of a

general settlement transferring intellectual-property interests does not necessarily establish, without further factual proof, that every later-numbered recording in a disputed archive is one of the particular works Plaintiff owns and claims was infringed.

That distinction preserves the force of the Court's prior ownership ruling while recognizing the factual identification problem the Court itself described. It also avoids turning § 202 into a rule that eliminates the plaintiff's burden to identify the protected work actually infringed.

Judge Gotsch's Dkt. 194 ruling supports a work-specific damages inquiry. Plaintiff argued actual damages were difficult to quantify because it did not widely distribute or sell the materials for profit, but the Court found actual damages readily determinable as de minimis because Plaintiff had agreed to safeguard, archive, and control the materials rather than sell them. Dkt. 194 at 32–33. The Court also found the magnitude of possible statutory damages speculative where Plaintiff had not addressed the applicable factors. Id. at 38. That preliminary ruling did not finally adjudicate Ms. Weaver's damages, but it supports requiring particularized proof of the work, conduct, damages theory, amount, and supporting evidence.

## VIII. REVISION BEFORE FINAL JUDGMENT WILL PROMOTE AN ACCURATE REMEDIES PROCEEDING

The Court's August 26 Order is expressly partial. It resolved ownership and liability on specified counts but left damages, other counts, and counterclaims for further proceedings. Dkt. 276 at 38, 65. Because no final judgment has been entered, Rule 54(b) provides the appropriate procedural mechanism for the Court to correct or refine an interlocutory determination.

The requested revision would promote an orderly damages proceeding. If ownership and liability are deemed established for an undifferentiated audio library, the parties could proceed to damages without knowing which particular works are within the adjudication. Clarifying the

scope now avoids that problem and permits remaining damages or remedy issues to be addressed on an accurate work-by-work record.

Defendant recognizes that reconsideration is not a vehicle for rehashing arguments merely because a party is dissatisfied with a ruling. See Bank of Waunakee, 906 F.2d at 1191. This motion is directed to the specific factual-legal connection between individual tape numbers, the registered deposit, and the property transferred in probate—a connection the existing order recognizes as disputed but does not expressly resolve.

**IX. REQUEST FOR RELIEF**

A. GRANT this Motion under Fed. R. Civ. P. 54(b);

B. RECONSIDER and REVISE the portion of Dkt. 276 determining that Plaintiff established ownership of the particular audio recordings identified in the First Amended Complaint and granting summary judgment against Ms. Weaver on Count I to that extent;

C. VACATE or limit the summary-judgment ruling on Count I as to Ms. Weaver to only those particular works for which Plaintiff can establish the connection between the alleged recording, the registered work, and Plaintiff's ownership rights;

D. Reconsider the resulting liability determination on Count III to the extent it depends upon unresolved questions concerning the version of the Book used, the particular material recorded, the scope of the Group's reproduction authorization, Defendant's notice of the 1999 Consent Decree, and willfulness;

E. Alternatively, clarify that the August 26 Order does not adjudicate the absence of any authorization, license, fair-use defense, or willfulness defense as to Count III and that those issues remain available for factual determination;

F. Reconsider or clarify the portion of Dkt. 276 concerning Count IV so that C.B.E. authorship, provenance, Plaintiff's prior knowledge, longstanding non-enforcement, authorization/acquiescence issues, lack of willfulness, and remedy-related factual disputes concerning the C.B.E. image remain available for determination;

G. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Cathy JoAnn Weaver

Defendant, pro se

Date: 9-15-2026 Cathy Weaver

Cathy Weaver