UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

The Evolutionary Level Above Human, Inc. d/b/a The Telah Foundation,
an Arizona nonprofit corporation,
Civil Action No. 3:22-cv-00395
Plaintiff,
v.
Steven Robert Havel;
Cathy JoAnn Weaver;
Jason Bartel,
Defendants.

-FILED-
SEP 16 2026
AT ______ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES (pg 45+, Paragraphs 134-169), DEMAND FOR JURY TRIAL, AND COUNTERCLAIM (page 62+)**

Defendant Cathy JoAnn Weaver ("Defendant" or "Ms. Weaver"), appearing pro se, responds to Plaintiff The Evolutionary Level Above Human Foundation d/b/a The TELAH Foundation ("TELAH" or "Plaintiff") and the First Amended Complaint filed at Dkt. 132. Defendant answers each allegation as follows and denies all allegations not expressly admitted. Defendant responds in her individual capacity and only as to her own conduct, knowledge, rights, defenses, and claims. Defendant does not adopt, assert, or speak for any co-defendant, including Stephen Havel, except where the First Amended Complaint itself alleges conduct jointly undertaken and Defendant expressly responds to that allegation. Any claim, defense, or factual position belonging personally to another defendant is not asserted by Defendant through this Answer.

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act (15 U.S.C. § 1051, et seq.) and the Copyright Act (17 U.S.C. § 101, et seq.), and pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b).

**ANSWER**: Defendant admits this Court has subject matter jurisdiction over claims brought under the Lanham Act, Copyright Act and pursuant to 28 U.S.C 1331 and 1338. However, Defendant denies committing any violation of the above due to Plaintiffs not providing proof of claims of Copyright prior to this current lawsuit.

2. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, since there is complete diversity. The Foundation is an Arizona nonprofit corporation, no defendant is a citizen of the state of Arizona, and the matter in controversy is over $75,000.

**ANSWER**: Upon information and belief Defendant doesn't have enough information to Admit or Deny this point number 2. It is Admitted that Defendant Weaver is not a citizen of Arizona. Defendant lacks sufficient information to admit or deny the citizenship of Defendant Jason Bartel and therefore denies that allegation. Defendant denies that the allegation that the matter in controversy exceeds $75,000 establishes or proves that Plaintiff has sustained $75,000 or more in actual damages, lost profits, or other compensable economic injury. Defendant further denies any implication that Plaintiff is entitled to any particular amount of damages or other relief.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)–(c), and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants is engaged in actions which directly targets and harms the Foundation.

**ANSWER**: Defendant is without sufficient information to admit or deny that this Court is the proper venue and that this court has personal jurisdiction. However Defendant denies being engaged in actions which targets or harms Mark Kingf &/or Sarah King or their Foundation.

**PARTIES**

4. Plaintiff, The Evolutionary Level Above Human, or Telah Foundation, Inc. (the "Foundation") is an Arizona 501(C)(3), Nonprofit Corporation with its principal place of business located at P.O. Box 25098, Scottsdale, AZ 85255.

**ANSWER**: Defendant is without sufficient information to admit or deny and requests that the TELAH Foundation be hereafter referred to as Mark & Sarah King.

5. Upon information and belief, Defendants Steven Robert Havel (a/k/a Sawyer, Swyody, and Swy) and Cathy Joann Weaver are currently believed to be residing at 111 Campbell St. Mishawaka, IN 46544.

**ANSWER**: Defendant denies residing at 111 Campbell St Mishawaka, IN 46544 as Plaintiff making defendants residence known has resulted in Defendant moving. Defendant has updated the Court with a mailbox address.

6. Upon information and belief, Defendant Jason Bartel (a/k/a Crlody, Carlan, and Crl) is currently residing at in Madison, WI.

**ANSWER**: Defendant is without sufficient information to admit or deny the allegation contained in paragraph 6 of Plaintiff's complaint.

7. Steven Havel, Cathy Weaver, and Jason Bartel are collectively referred to herein as the Defendants.

**ANSWER**: Defendant acknowledges that Stephen Havel is separately named as a defendant. Defendant responds only as to herself and does not adopt or speak for Mr. Havel. Defendant

denies that Jason Bartel has any relationship with Defendant that would justify treating him as Defendant's co-defendant for purposes of Defendant's own conduct.

**INTRODUCTION**

8. In 1994 the directors of the Foundation renewed a long-standing relationship with a group known as "Total Overcomers Anonymous", "TOA", or "Heaven's Gate" (the "Group"). Three years later, in 1997, all the physical property and intellectual property belonging to the Group (collectively the "Property") was transferred to representatives of the Foundation or was placed, to be obtained, from a storage locker in San Diego County.

**ANSWER:** Upon information and belief it is **DENIED**. What the Court may not be fully aware of was that Mark King and Sarah King, in late 1997 only possessed a very small amount of the Groups Intellectual Property ("GIP") and that there was no "written" legal "transfer" or "assignment" from the Group to Mark King and Sarah King or to any of the other 6 former members who received packets. In fact in the Billings Supplement to Judge Lisa Guy Schall's initial decision the word "fraudulently" was recorded pertaining to how Mark King and Sarah King got copyrights and trademarks.

Evidence in the record of who had what of the GIP shows Rkkody got a great deal of that GIP directly from DO and his Crew as a part of his couple packets His letter lists SVHS Beyond Human video tapes to use to make copies to give to people. Jhnody received, The Beyond Human Original Masters, the complete web site with instructions to put it up if the one Rkkody was first given didn't stay up. A Romanian ISP was also given instructions to put up the Website code and data for the same reason. Four other individuals received GIP directly from DO and Crew that arrived to all 8 individuals on or about the last day when some died. Their names were

Flxody, Ablody, Neody (known as Rio D'Angelo in the People magazine article), Oscody Oscar, legally Wayne Parker who was given the Heaven's Gate Book to prepare to file with the Library of Congress, There are documents in the records that show all this. Rkkody and Jhnody with Mrcody (Mark King) and Srfody (Sarah King) that adds up to 8 who directly received packets of the GIP.

The current records show that Mark King and Sarah King settled with Rkkody's daughter Kathryn Morea and Rkkody's Right to Know dba in 1999 before they reached a settlement in the San Diego Probate case where they won a great deal of GIP. Over 400 of their audio tapes weren't part of the Probate Settlement nor the Judge Breyer Consent Decree and Settlement because Rkkody and Oscody who retrieved some number like that split them up between them and Oscody gave his share to Mark King and Sarah King to divide among those who wanted to disseminate their content. Rkkody copied the other 200 or so audio tapes and digitized them in 1997 and made CD's and with Crlody (Jason Bartel's) help sent them to libraries and a set was sent to me from Rkkody and that has been entered into the record showing postmarks in December of 1997 and January of 1998 that he put a common law copyright on and Morea registered after he died in early 1998. Rkkody constructed a website called "Rkkody.com" where he posted some the C.B.E. Image where he was selling a framed one that looks like the same print that Sarah King testified at the Probate trial they possessed and copyrighted. Their copyright was in about October of 1997, so the pictures on the website were given to Rkkody and Jhnody to possess, take care of, give away to others that want that information and to use some to help support those who want to do that dissemination task of all their materials they left behind.

9. Prior to being able to obtain all of the property in the storage locker, the locker was seized by officials from San Diego County.

**ANSWER**: Defendant admits that due to Plaintiff's negligence the items from the storage locker were seized by San Diego County.

10. From 1997–1999 the Foundation was involved in litigation with San Diego County (who represented both the County and the estates of members in the Group) over ownership of the Property. That litigation ended with the entry of a consent decree in 1999, which conveyed to the Foundation not only a large amount of physical property, but also all of the intellectual property rights belonging to the Group.

**ANSWER**: Upon information and belief it is DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof.

11. A second lawsuit, filed in 1998 also ended in a 1999 consent decree which likewise confirmed the Foundation's ownership of, inter alia, the intellectual property of the Group.

**ANSWER**: Upon information and belief it is DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof.

For the sake of this Court it seems the term Intellectual Property is a general phrase as it never addressed how widespread the Groups IP had already traveled between 1997 and 1999 and also doesn't take into account all the GIP the Group had been sending to people all over the world especially since the late 1980's and early 1990's to include the internet posts in usergroups in 1995, 1996 and 1997 and includes all of what they sent out and/or put in USA Today and sent to

UFO groups and sent to others, the evidence of which is documented by the Group in two listings of all the public meetings they gave in 1975-6 and then again in 1994 all over the U.S.

12. The Foundation has been the owner of the Property from 1997 to the present.

**ANSWER**: Upon information and belief it is DENIED for the reasons above in Answer 8 and 1

13. Included in the Property transferred to the Foundation is a number of audio cassettes, audiovisual works, fabric designs, lithographic prints, and literary works.

**ANSWER:** Upon information and belief it is DENIED as Defendant has repeatedly asked the Plaintiffs for proof of such claim and Plaintiffs have not provided such proof. However upon information and belief it is Admitted that Plaintiffs were handed some GIP from a number of sources to include the Courts – in the Probate case that was inventoried.

14. In particular, the Property transferred included the intellectual property rights to hundreds of audio cassettes and video tapes which the County of San Diego and the estates represented by the County of San Diego, transferred to the Foundation.

**ANSWER**: Upon information and belief it is Admitted that Plaintiffs received IP rights to what was inventoried in the Probate settlement but there is no specific inventory of how many audio cassettes were included in the inventory list. It is recorded that the inventory states there were cases of audio cassettes without seeing any labels or tape logs or whether some were blanks. Upon information and belief it is Admitted that Plaintiffs received some GIP rights but that first court action didn't include the Items inventoried in the Probate Case that were awarded Plaintiffs.

15. The hundreds of audio cassettes (hereafter the "Audio Works") were registered (by the Foundation) with the United States Copyright Office on October 27, 1997 as Reg. No. SRu00298530.

**ANSWER**: Defendant denies that the registration, standing alone, establishes ownership of every numbered audio recording Plaintiff now identifies. Defendant further states that Plaintiff has used different totals for the audio archive and that the record contains disputes concerning which particular tapes were included in the registration and later identified as infringing works. For instance there were no cassette tape logs or tape numbers in the inventory of what Plaintiffs were awarded from the Probate case. In the Breyer case, Plaintiffs have not produced a tape log of what tape numbers were on the two CD's Rkkody made. The court record indicates that Plaintiffs refused to provide Discovery of the Rkkody tape log even though a log has been filed with the Court.

16. A true and correct copy of the Audio Works registration is attached hereto as Exhibit A.

**ANSWER**: Defendant admits only that a copy of the registration is attached to the First Amended Complaint. Defendant denies that the registration by itself establishes Plaintiff's ownership of every particular tape alleged in this action and disputes the scope, identification, and evidentiary basis for the registered deposit.

17. The video tapes (hereafter the "Video Works") were registered (by the Foundation) with the United States Copyright Office on September 22, 1997 as Reg. Nos. PA0000867224.

**ANSWER**: Defendant denies the validity of the Video Works copyright registration and the circumstances under which the Video Works were copyrighted. There are no writing of transfer and/or Assignments from the Group and no Work for Hire writings either.

18. A true and correct copy of the Video Works registrations are attached hereto as Exhibit B.

**ANSWER**: Defendant admits a copy of the Video Works registration is attached. However Defendant denies the validity of the copyright registration and the circumstances under which the copyright was obtained. There are no writing of transfer and/or Assignments from the Group and no Work for Hire writings either.

19. The Foundation is also the owner of trademarks related to the Group.

**ANSWER**: Defendant denies the ownership and the validity of the trademarks obtained by Mark & Sarah King and the circumstances under which the trademarks were obtained.

20. The Trademarks (hereafter the "Trademarks") were registered (by the Foundation) with the United States Trademark Office on July 27, 2010, July 13, 2010, and February 28, 2017 as Trademark Reg. Nos. 3824482, 3816596 and 5,148,959.

ANSWER: Defendant denies the validity of the trademarks obtained by Mark & Sarah King and the circumstances they obtained them under.

21. A true and correct copy of the Trademarks registrations are attached hereto as Exhibit C–E.

ANSWER: Defendant admits a copy of the Trademarks registrations is attached. However, Defendant denies the validity of the registrations and the circumstances under which the registrations were obtained.

22. The lithographic prints include artwork (hereafter the "Visual Work") which was registered by the Foundation as VA000877834 entitled "The C.B.E. (Celestial Being Entity)."

**ANSWER**: Defendant denies the validity of the registered Visual Work and the circumstances under which the registrations were obtained. Upon information and belief, the Probate cases addresses the C.B.E print in possession of Mark King and Sarah King was a gift to them and nothing more as no rights were passed to them to it. Additionally upon information and belief Plaintiffs both knew that Group member Ollody painted the original Older Member (CBE) and that his legal name was David Cabot Van Sinderen and that he painted it and a number of others Plaintiffs said in an Admission record they didn't know how many paintings there were.

23. A true and correct copy of the Art Work is attached hereto as Exhibit F.

**ANSWER**: Defendant admits a copy of the art work is attached.

24. The literary works include a book owned by the Foundation and registered as TXu 000817732 entitled "How and when 'Heaven's gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials" (the "Literary Work").

**ANSWER**: Defendant denies that Mark & Sarah King referred to as the Foundation solely possess and/or own the book and Defendant denies the validity of the registration and the circumstances under which the registration was obtained. Upon information and belief Books

were given to a number of former class members by the Group before they died. Rkkody had some copies, when he died he left to his daughter. Rkkody and Jhnody were separately given the heavensgate.com website code and data that includes the Book's text and the website also provides a free download of the Book via a zip file containing the text files of the Book. As Rkkody, Jhnody (Francisco Falcon) was also given some copies of the finished Version 1 or 2 Book bound with a cover that has silver embossed lettering.

25. A true and correct copy of the registration for the Literary Work is attached hereto as Exhibit G.

**ANSWER**: Defendant admits a copy of the registration for the Literary Work is attached however Defendant denies the validity of the registration and the circumstances under which the registration was obtained.

**DEFENDANTS' UNLAWFUL CONDUCT**

26. Defendants have knowingly and willfully have illegally acquired, transported and disseminated copies of the audio tapes and other intellectual property belonging to the Foundation.

**ANSWER**: DENIED.

27. On or about May 1, 2021 the Foundation first learned that Defendant, Jason Bartel had put the Foundation's registered copyrighted Audio Works and Video Works on a free online file sharing and storage site called "4Shared.com."

**ANSWER**: Defendant can neither admit nor deny as Defendant has no relationship with Jason Bartel. Upon Information and belief there is evidence before the court that indicates Plaintiffs did

know of the existence of Bartel's 4shared.com posting of audio tapes even years before the May 1, 2021 date. In a document called Telah_000045 Plaintiffs admit they "let it slide" the use of 200 audio tapes by Bartel and Havel for two decades before this May date. (See Exhibit 18).

28. Over the summer of 2021, the Foundation sent Digital Millennium Copyright Act (DMCA) takedown notices to 4Shared to get those illegally posted Audio and Video Works taken off the site.

**ANSWER**: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.

29. On or about June 20, 2021 Defendant Bartel announced that more stolen audio tapes were on being sent to him by Co-Defendant Havel and that Defendant Bartel would post those additional tapes for free download on the 4Shared website.

**ANSWER**: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.

30. On or about June 30, after receiving additional tapes from Co-Defendant Havel, Defendant Bartel put up the entirety of the Audio Works on his Wordpress blog for free download.

**ANSWER**: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.

31. On or about July 9, 2021, Defendant Bartel announced on Wordpress that 15 gigabytes of the Audio Works and Video Works had been uploaded to either Google Drive or to the 4Shared and were available for download.

**ANSWER**: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.

32. The uploading of this material to 4Shared or Google Drive, and the subsequent availability for download, was done without the permission or authorization of the Foundation.

**ANSWER**: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.

33. On or about July 9, 2021, Defendant Bartel thanked Co-Defendant Havel for assisting him in obtaining the Audio Works and helping him make the Audio Works available for download.

**ANSWER**: Defendant can neither admit nor deny as Defendant has no knowledge of this allegation.

34. Upon information and belief, Defendants Havel and Weaver knowingly intend to infringe the Foundation's copyrights in the Audio Works and to take active steps to continue infringing, despite their knowing infringement.

**ANSWER**: Defendant denies this allegation as Defendant repeatedly asked Mark & Sarah King to provide proof of their copyrights and Plaintiff's refused to do so. The Cease and Desist letter Plaintiffs served on Defendant and co-defendant Havel stated that:

"The Telah Foundation ("Telah"), an organization that is the legal owner for copyright title regarding audio and video recordings of Heaven's Gate ("Content") and Mr. Mark King ("Mr. King") who is the managing director for Telah. Telah and Mr. King are the recipients of an assignment of copyright for that content and it dates back to the late 1990s. That assignment was a result of a court agreement and was approved by a judge in California."

Upon information and belief, this was very vague and there never were any "assignments" behind their copyrights and trademarks, which was verified by the Billings Supplemental Report and by Judge Lisa Guy Schall's initial decision. Billings used the word "fraudulently" to describe how the Kings registered copyrights and trademarks.

Plus when Defendant was sued, and Plaintiffs showed their copyrights anything Defendant was doing before that Plaintiffs considered to be an infringement ceased and has remained ceased for over four years waiting for a case settlement.

35. For example, on or about July 12, 2021, Defendant Havel posted to his website a log of the Audio Works with the following commentary:

So just weeks ago, [a third party] who I had been in contact with on and off for years sent me the digitized audios, all in .mp3 format and I quickly sent them to [Defendant Bartel] and someone else who I know I can trust to be sure to upload them to the internet in mulitple [sic] places so that even if [the Foundation] somehow sue us it will be far too late to keep them from being available to those who want to listen to them.

**ANSWER**: Defendant can neither admit nor deny this allegation as it does not pertain to Defendant.

36. A true and correct copy of this post is attached hereto as Exhibit H.

**ANSWER**: Defendant can neither admit nor deny this allegation as it does not pertain to Defendant.

37. Through use of the DMCA, the Foundation was able to, over a month later, get the materials taken down and on or about August 29, 2021, Defendant Bartel announced on Wordpress that the 4Shared archive of the Audio Works and Video Works had been taken down due to "Copyright Infringement action by the legal owners, the Telah Foundation."

**ANSWER**: Defendant can neither admit nor deny this allegation as it does not pertain to Defendant.

38. On information and belief, in September 2021 Defendant Cathy Weaver met up with Defendant Steven Havel with the intentions of continuing to engage in copyright infringement and to make the Audio and Video Works available for free download on the internet.

**ANSWER**: DENIED

39. On information and belief, in October and November, 2021, at various locations, Defendants Havel and Weaver live streamed discussions on the internet providing instructions to others regarding how individuals could obtain copies of the Audio and Video Works owned by the Foundation.

**ANSWER**: Defendant denies this allegation and states that the Video Works have been available for over 9 years on YouTube for anyone to search and access, the public doesn't need Defendant

to tell them as it is readily available and at no cost to the public. Indeed the Plaintiff's have posted the Video Works on their Vimeo site free of charge for the public to access.

40. Defendants Havel and Weaver have also repeatedly engaged in public performances of the Audio Works, streaming them directly over their YouTube channel, and advertising this infringement via their twitter account:

**ANSWER**: Defendant admits participating in some of Stephen Havel's livestreams, but Defendant denies having anything at all to do with Havel's 3spm channel except as a guest. Upon information and belief Havel had been doing livesstreams and making video's about his experience in the Heaven's Gate group for 19 years and sometimes Havel played audio tapes he didn't know were copyrighted. Havel advertised on his Twitter account. Defendant had been watching some of Havel's livestreams for over a year before meeting in person. Mark King and Sarah King admitted in an email that they "let it slide" the use of 200 audio tapes and video tapes for "two decades".

41. Upon information and belief, Defendants Havel and Weaver sent copies of the Audio and Video Works to a third-party during the summer and fall of 2021 to make sure they were transferred into another country, in order to prevent the Foundation from enforcing its Copyrights.

**ANSWER**: Defendant denies this allegation as Defendant has not been involved in sending Audios to anyone nor does Defendant possess any copies of the audios.

42. Upon information and belief, Defendants Havel and Weaver's decision to provide CoDefendant Bartel with copies of the Audio and Video Works was also, in part, done to prevent the Foundation from enforcing its Copyrights.

**ANSWER**: Defendant denies this allegation as Defendant did not send any audios to Bartel and has no relationship with Bartel.

43. Indeed, Defendants Havel and Weaver repeatedly stated in YouTube videos that they continue to want to disseminate the copyrighted material and that the Foundation is "not going to stop us."

**ANSWER**: Defendant admits to making statements in a YouTube video that Defendant does wish to share the information with the public. Defendant denies the validity of Mark & Sarah Kings the Plaintiffs copyrighting of the material, the circumstances under which they obtained the copyrights and the ownership they claim over the material.

44. At the same time Defendant Havel expressly concedes that the Foundation owns the Property at issue in this case.

**ANSWER**: DENIED.

45. Upon information and belief, Co-Defendants Steven Havel, Cathy Weaver, and Jason Bartel are all working in a conspiracy to disseminate the Audio Works and/or Video Works in a manner that violates the Foundation's United States copyrights and in a manner designed to thwart the Foundation's ability to assert and enforce its copyrights.

**ANSWER**: DENIED

46. Upon information and belief, at the time of filing, each of the Co-Defendants are still engaged in the conspiracy to commit further infringement of the Foundation's copyrights and will continue to illegally copy and disseminate the property of the Foundation in violation of the Foundation's copyrights unless enjoined by this Court.

**ANSWER**: DENIED

47. Further, upon information and belief Co-Defendants Steven Havel and Cathy Weaver have prepared and are preparing a number of derivative works of copyrights owned by the Foundation in violation of the Foundation's copyrights.

**ANSWER**: DENIED

48. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating an audio book version of a the Literary Work owned.

**ANSWER**: Defendant admits recording some parts from the Literary Work however Defendant claims Fair Use as it was purely for educational purposes and the Literary Work is in the Public Domain and Plaintiffs offer the Literary Work free of charge via download on the website they maintain. Defendant has also marked the channel in question as private upon learning of this lawsuit so it is no longer accessible by the public.

49. Co-Defendants Steven Havel and Cathy Weaver are also engaging in public performances of the Literary Work and recording them and disseminating the public performances through Co-Defendants Steven Havel and Cathy Weaver's YouTube channel:

https://www.youtube.com/3spm, and advertising such performances on their twitter account:

**ANSWER**: Defendant admits reading sections of the Literary Work on Stephen Havel's Livestream however such use is permitted under the Fair Use Act. Defendant denies that she has anything to do with Havel's 3spm channel besides being a guest sometimes. Plus Defendant was never informed what Plaintiffs had copyrighted and when sued ceased such rare performances that might have occurred.

50. Over the past few months this behavior has escalated exponentially, with Co-Defendants Steven Havel and Cathy Weaver posting now fewer than thirteen recordings containing the Foundation's copyrighted Audio Works and other material.

**ANSWER**: Defendant is without sufficient information to admit or deny the allegations contained in paragraph 50 of Plaintiff's Complaint.

51. This includes the following YouTube videos and Audio Works:

Tape No. 149 - Broadcast on YouTube 3spm channel on 11/08/2021

Tape No. 263 - Broadcast on YouTube 3spm channel on 11/08/2021

Tape No. 004 - Broadcast on YouTube 3spm channel on 11/08/2021

Tape No. 030 - Broadcast on YouTube 3spm channel on 3/26/22

Tape No. 161 - Broadcast on YouTube 3spm channel on 4/08/22

Tape No. 156 - Broadcast on YouTube 3spm channel on 4/12/22

Tape No. 011 - Broadcast on YouTube 3spm channel on 4/13/22

Tape No. 054 - Broadcast on YouTube 3spm channel on 4/14/22

Tape No. 052 - Broadcast on YouTube 3spm channel on 4/17/22

Tape No. 050 - Broadcast on YouTube 3spm channel on 4/18/22

Tape No. 200 - Broadcast on YouTube 3spm channel on 4/19/22

Tape No. 201 - Broadcast on YouTube 3spm channel on 4/20/22

Tape No. 202 - Broadcast on YouTube 3spm channel on 4/21/22

Tape No. 203 - Broadcast on YouTube 3spm channel on 4/26/22

Tape No. 204 - Broadcast on YouTube 3spm channel on 4/27/22

**ANSWER**: Defendant is without sufficient information to admit or deny the allegations concerning the identity, contents, provenance, copyright status, and ownership of the particular recordings listed in paragraph 51. Defendant specifically disputes that the numbering of a tape establishes that the tape was among the particular works transferred through the 1999 probate settlement or that it corresponds to the registered deposit. Defendant further states that the three broadcasts identified as occurring on November 8, 2021 are inaccurate; Defendant did not conduct three broadcasts on that date.

52. In addition, Co-Defendants Steven Havel and Cathy Weaver have advertised and plan to sell or have sold t-shirts containing the Foundation's Trademarks including the trademarked design and word marks.

**ANSWER**: Defendant questions the validity of Mark & Sarah Kings trademarks and the circumstances under which they obtained them and therefore denies the allegations contained in paragraph 52 of the Plaintiffs Complaint.

53. The sales of material containing the Foundation's Trademarks is likely to cause confusion that these t-shirts are affiliated with the Foundation.

ANSWER: DENIED.

54. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images owned by the including "The C.B.E. (Celestial Being Entity)" and routinely use this image in on their YouTube channel and on t-shirts being sold by Co-Defendants Steven Havel and Cathy Weaver.

**ANSWER**: DENIED.

55. The creation of such derivative works and use in videos and on t-shirts constitutes copyright infringement of the Foundation's copyrights in its Art Work.

**ANSWER**: Defendant questions the validity of Mark & Sarah Kings copyrights and the circumstances under which they obtained them and therefore denies the allegations contained in paragraph 55 of the Plaintiffs Complaint.

**COUNT I INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. SRU00298530**

56. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

57. Defendants' conduct infringes upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER**: Defendant is without sufficient information to admit or deny any allegation in paragraph 57 of Plaintiff's Complaint.

58. The Audio Works, recorded at the U.S. Copyright Office as Copyright Registration No. SRu00298530 are owned by the Foundation and have been owned by the Foundation continuously since 1997.

**ANSWER**: Defendant denies that Plaintiff has established, for each particular recording alleged, the necessary connection between the recording, the registered deposit, the author and asserted owner, and the property or intellectual-property interests transferred through the 1999 probate settlement. Defendant further disputes the completeness and reliability of Plaintiff's later tape lists and the proposition that the registration establishes ownership of every numbered tape Plaintiff now identifies.

Furthermore, in Case No. PN022228 Statement of Decision by Judge Lisa Guy Schall on behalf of the Superior Court of the State of California concluded on January 13, 1999 that "…although Petitioners Mark King and Sarah King presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestlal Being Entltv"); the trade name Heaven's Gate; and **the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and DO."**

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually Signed by the decedents except the Durable Power of Attorney, which became void upon their deaths."**

59. Each Defendant knew or had constructive knowledge that the reproduction and distribution of the Audio Works without the consent of the Foundation constituted copyright infringement.

**ANSWER**: Defendant questions the validity of the copyright registration and the circumstances under which the copyrights were obtained (as shown in the Answer to Point No. 58 and therefore denies the allegations in paragraph 59 of the Plaintiff's Complaint.

60. Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER**: DENIED. Defendant denies willfulness and states that Plaintiff's own representatives acknowledged in TELAH_000045 that, as to Havel and Bartel, Plaintiff had knowingly allowed use of the Group's original 200-tape CD and Group videotapes to continue for approximately two decades, stating that "we let that slide for two decades." Defendant further states that the videotapes at issue in Plaintiff's infringement allegations included Group videotapes such as the Beyond Human videos and Do's Final Exit video that Plaintiff later relied upon in connection with the Graveface Museum meeting. Defendant contends that Plaintiff's longstanding knowledge and prior non-enforcement are directly relevant to Defendant's good-faith understanding and lack of willfulness.

See Answer for Point No. 58.

61. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER**: DENIED. Defendant denies that Plaintiff has established economic, reputational, market, or other compensable injury caused by Defendant's alleged conduct. Defendant further denies that Plaintiff has established entitlement to the requested damages or other relief.

62. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER**: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims.

63. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER**: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims. Defendant denies the allegations contained in paragraph 63 of the Plaintiff's complaint.

64. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER**: Defendant denies any implication that Plaintiff's are entitled to any relief under any of their claims. Defendant denies the allegations contained in paragraph 63 of the Plaintiff's complaint.

**COUNT II INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. PA0000867224**

65. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

66. Defendants' conduct infringes upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER**: Defendant questions the validity of the Plaintiff's copyright registrations and the circumstances under which they obtained them and therefore denies the allegations in paragraph 66 of the Plaintiff's Complaint.

67. The Video Works, recorded at the U.S. Copyright Office as Copyright Registration No. PA0000867224 are owned by the Foundation and have been owned by the Foundation continuously since 1997.

**ANSWER**: Defendant denies the validity of the copyright registration for the Video Works: In Case No. PN022228 Statement of Decision by Judge Lisa Guy Schall on behalf of the Superior Court of the State of California concluded on January 13, 1999 that although Petitioners Mark King and Sarah King presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It'S Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With US," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," **"Beyond Human - The Last Call,"** "The C.B.E. (Celestlal Being Entltv"); the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and DO." Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. **There was no writing actually Signed by the decedents except the Durable Power of Attorney, which became void upon their deaths.**

68. Each Defendant knew or had constructive knowledge that the reproduction and distribution of the Video Works without the consent of the Foundation constituted copyright infringement.

**ANSWER**: DENIED. Defendant states that the historical dissemination of the Group's videotapes, Plaintiff's own prior conduct, and Plaintiff's later admission in TELAH_000045 that

it had "let that slide for two decades" are relevant to whether Defendant had constructive or actual knowledge that Plaintiff regarded the particular use as unauthorized.

69. Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER**: DENIED. Defendant denies willfulness. Plaintiff's own representatives acknowledged in TELAH_000045 that, as to Havel and Bartel, Plaintiff had allowed use of the original 200-tape CD and "the videotapes the Group left" to continue for approximately two decades, stating that "we let that slide for two decades." Defendant contends that this admission, together with the longstanding public dissemination of the Group's videotapes, is directly relevant to Defendant's good-faith understanding and lack of willfulness.

70. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct

**ANSWER**: DENIED. Defendant denies that Plaintiff has established economic, reputational, market, or other compensable injury caused by Defendant's pre-suit, noncommercial recording of portions of the Book. Defendant and Havel ceased the challenged recording activity after this action was commenced.

71. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER**: DENIED

72. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER**: DENIED

73. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyright and ordering that each Defendant destroy all copies of Copyrighted Video Works made in violation of the Foundation's copyrights.

**ANSWER**: DENIED – Mark and Sarah King have no valid copyright of the Video Works as shown in Point No. 67's Answer.

**COUNT III INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. TXU000817732**

74. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

75. Defendants' conduct infringes upon the Foundation's exclusive rights of creating derivative works that are protected under the Copyright Act.

**ANSWER**: DENIED. Defendant denies creating an unauthorized derivative work of the Literary Work. Defendant did not know of the 1999 Consent Decree or any restriction asserted by Plaintiff when the recordings were made. Defendant relied upon the reproduction authorization communicated by the Group through the Book and its website. Defendant further preserves defenses concerning authorization, implied license, fair use, lack of willfulness, and damages.

76. The Literary Work entitled "How and when 'Heaven's Gate' (the door to the physical kingdom level above human) may be entered : an anthology of our materials", recorded at the U.S. Copyright Office as Copyright Registration No. TXu000817732 (the "Literary Work") is owned by the Foundation and has been owned by the Foundation continuously since 1997.

**ANSWER**: Defendant admits only that Plaintiff claims ownership of the Literary Work identified in this paragraph and that Plaintiff's registration concerns Version 3 of the Book. Defendant does not dispute for purposes of this Answer that the 1999 proceedings resulted in TELAH receiving ownership and management rights concerning the Group's intellectual property, including the Book. Defendant denies, however, that Plaintiff's registration of Version 3 alone establishes that every underlying Student-written document or other preexisting material contained in earlier Group versions was newly created by Plaintiff or that every use of such material by Defendant was unauthorized.

Furthermore, in Case No. PN022228 Statement of Decision by Judge Lisa Guy Schall on behalf of the Superior Court of the State of California concluded on January 13, 1999 that "…**although Petitioners Mark King and Sarah King presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;"** the

audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and DO."

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually Signed by the decedents except the Durable Power of Attorney, which became void upon their deaths."**

Therefore, Mark King and Sarah King have no authority over the Literary Work from their copyrights listed above.

77. Defendants Weaver and Havel know that the creation of a derivative work, such as an audio version, of the Literary Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER**: DENIED. Defendant did not know of the 1999 Consent Decree or the scope of rights awarded or recognized through those proceedings when she made the recordings. Defendant relied instead upon the reproduction authorization appearing in the Book and published on the Group's Heaven's Gate website, reproduced in Exhibit 17.

78. Defendants Weaver and Havel know that the public performance and the recording of public performances (and subsequent dissemination of such) of the Literary Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER**: DENIED. Defendant did not undertake the recordings with knowledge that her conduct was prohibited by Plaintiff. The conduct attributed to Defendant consisted of reading portions of Student-written documents contained in the Book, before suit was filed, and was undertaken on a noncommercial basis.

79. Defendants' conduct in creating a derivative work and publicly performing and distributing copyrighted works is willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER**: DENIED. Defendant acted in good faith and without knowledge of the 1999 Consent Decree or any restriction arising from it. Defendant relied upon the reproduction notice communicated by the Group through the Book and its website, reproduced in Exhibit 17. Defendant ceased the challenged recording activity after Plaintiff commenced this action.

80. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER**: DENIED. Defendant denies that Plaintiff has established economic, reputational, market, or other compensable injury caused by Defendant's pre-suit, noncommercial recording of portions of the Book. Defendant ceased the challenged recording activity after this action was commenced.

81. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER**: DENIED. Defendant denies that Plaintiff is entitled to statutory damages and relies upon her good-faith reliance on the Group's stated reproduction authorization, the noncommercial nature of the conduct, and the absence of willfulness.

82. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER**: DENIED. Defendant denies willful infringement and denies that this case is exceptional as to her. Defendant acted in good faith, did not know of the 1999 Consent Decree when the recordings were made, and ceased the challenged activity after suit.

83. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER**: DENIED. Defendant denies that her pre-suit conduct is continuing and denies that Plaintiff has established entitlement to the requested injunction or destruction of copies. Defendant ceased the challenged recording activity after this action was commenced.

**COUNT IV INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA000877834**

84. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

85. Defendants' conduct infringes upon the Foundation's exclusive rights of creating derivative works that are protected under the Copyright Act.

**ANSWER**: DENIED. Defendant denies creating a derivative work of the C.B.E. Visual Work and denies that Plaintiff has established such conduct. Defendant further disputes Plaintiff's characterization of the historical provenance and ownership of the C.B.E. image and preserves all defenses concerning authorship, ownership, chain of title, authorization, acquiescence, lack of willfulness, and fair use to the extent applicable. Plaintiff's discovery response admits that the Older Member artwork was created by David Cabot Van Sinderen (Dkt. 233 at 7; see Exhibit 16), and the record contains a 1982 Copyright Office registration for "The Meeting" identifying Olliver Odinwood as claimant and author of fourteen acrylic illustrations, together with the related 1999 probate record (see Exhibit 15). Defendant disputes that Plaintiff's 1997 registration alone establishes ownership of all preexisting material incorporated into the C.B.E. image.

Furthermore, in Case No. PN022228 Statement of Decision by Judge Lisa Guy Schall on behalf of the Superior Court of the State of California concluded on January 13, 1999 that "…**although Petitioners Mark King and Sarah King presented evidence of post-mortem registrations of** the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom

Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," **"The C.B.E. (Celestial Being Entity")**; the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and DO."

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually Signed by the decedents except the Durable Power of Attorney, which became void upon their deaths."**

Therefore, Mark King and Sarah King have no authority over **The C.B.E. (Celestial Being Entity)"** from their copyrights listed above.

86. Upon information and belief, Co-Defendants Steven Havel and Cathy Weaver have created or are creating plush dolls based on images registered as VA000877834 entitled "The C.B.E. (Celestial Being Entity)" (the "Visual Work") which is owned by the Foundation and has been owned by the Foundation continuously since 1997.

**ANSWER**: DENIED. Defendant has not created a plush doll. It was proposed to Mark King and Sarah King as part of a licensing agreement Defendant and Havel attempted to agree upon.

87. Defendants Weaver and Havel know that the creation of a derivative work, such as an these commercial dolls, of the Visual Work without the consent of the Foundation constitutes copyright infringement.

**ANSWER**: DENIED – there is no doll.

88. Defendants' conduct in creating a derivative work is willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER**: DENIED. Defendant denies willful infringement. Defendant acted in good faith and had not seen Plaintiff's asserted registration before the challenged use. Defendant ceased the challenged use after this action was commenced. Defendant further states that Plaintiff's own discovery production, TELAH_000045, records Mark King and Sarah King stating that, concerning Havel and Bartel and the original 200-tape CD and "the videotapes the Group left," "we let that slide for two decades." Defendant contends that this evidence is relevant to Plaintiff's knowledge, acquiescence, and the absence of willfulness. The communication does not expressly authorize the C.B.E. image, and Defendant does not characterize it as such; rather, it is evidence concerning Plaintiff's longstanding knowledge of and response to Havel's public dissemination of Group materials generally.

89. The Foundation has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses, and the loss of control of its copyrighted material. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER**: DENIED. Defendant denies that Plaintiff has established economic, reputational, market, or other compensable injury caused by Defendant's alleged use of the C.B.E. Visual

Work. Defendant further denies that Plaintiff has established any damages attributable to Defendant's conduct.

90. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER**: DENIED. Defendant denies that Plaintiff is entitled to statutory damages against her and denies that Plaintiff has established a basis for such an award.

91. As Defendants' infringement was intentional and willful and as Defendants' conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER**: DENIED. Defendant denies willful infringement and denies that this case is exceptional as to her. Defendant acted in good faith and denies that Plaintiff has established entitlement to exemplary damages, attorneys' fees, or costs based on willful infringement.

92. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting each Defendant from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio Works made in violation of the Foundation's copyrights.

**ANSWER**: DENIED. Defendant denies that her challenged conduct is continuing and denies that Plaintiff has established entitlement to injunctive relief or destruction of copies as to her.

**COUNT V CONTRIBUTORY INFRINGEMENT BY HAVEL AND WEAVER**

93. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

94. Defendants' conduct constitutes contributory infringement upon the Foundation's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

**ANSWER**: DENIED. Defendant questions the validity of Mark & Sarah's copyrights and the circumstances they obtained them under.

Furthermore, in Case No. PN022228 Statement of Decision by Judge Lisa Guy Schall on behalf of the Superior Court of the State of California concluded on January 13, 1999 that "…**although Petitioners Mark King and Sarah King presented evidence of post-mortem registrations of** the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;" the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and DO."

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually Signed by the decedents except the Durable Power of Attorney, which became void upon their deaths."**

Therefore, Mark King and Sarah King have no authority over any of the Groups IP from their copyrights listed above.

95. In particular, with respect to Defendant Bartel's direct infringement, through posting the Foundation's copyrighted material on the 4Shared website, Defendants Havel and Weaver actively induced, caused, and materially contributed to that infringement by sending him stolen copies of the Audio and Video Works that were in the possession of Defendants Havel and Weaver.

**ANSWER**: DENIED. Defendant has no relationship with Bartel and denies sending Bartel any Audio and Video Works.

96. Defendants Havel and Weaver sent the stolen copies of the Audio and Video Works to Defendant Bartel knowing that he would be copying and redistributing the Foundation's copyrighted material.

**ANSWER**: DENIED. Defendant has no relationship with Bartel and denies sending Bartel any Audio and Video Works.

97. Defendants Havel and Weaver's conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Foundation's rights.

**ANSWER**: DENIED – as shown Mark King and Sarah King's companies have no rights based on the copyrights they now have submitted to three courts since 1997 and 1998.

98. The Foundation has been damaged by Defendants Havel and Weaver's conduct, including, but not limited to, economic and reputation losses. The Foundation continues to be damaged by such conduct and has no adequate remedy at law to compensate the Foundation for all of the possible damages stemming from the Defendants' conduct.

**ANSWER**: DENIED

99. The Foundation hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

**ANSWER**: Defendant denies that Plaintiff is entitled to statutory damages against her and denies that Plaintiff has established a basis for such an award.

100. As Defendants Havel and Weaver's infringement was intentional and willful and as Defendants Havel and Weaver's conduct make this case exceptional, the Foundation is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**ANSWER**: DENIED. Defendant denies willful infringement and denies that this case is exceptional as to her. Defendant denies that Plaintiff is entitled to statutory damages, exemplary damages, attorneys' fees, or costs based on the allegations in this paragraph.

101. The conduct of each Defendants Havel and Weaver is causing and, unless enjoined and restrained by this Court, will continue to cause the Foundation great and irreparable injury that cannot fully be compensated or measured in money. The Foundation has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Foundation is entitled to injunctive relief prohibiting Defendants Havel and Weaver from further infringing the Foundation's copyrights and ordering that each Defendant destroy all copies of Copyrighted Audio and Video Works made in violation of the Foundation's copyrights.

**ANSWER**: DENIED – As stated above to each Count, Mark King and Sarah King and their companies have no valid copyrights according to Judge Lisa Guy Schall's Statement of Decision.

**COUNT VI CONSPIRACY TO COMMIT COPYRIGHT INFRINGEMENT**

102. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

103. As described above, each Defendant engaged in a concerted action with other Defendants to reproduce and distribute the Foundation's Audio and Video Works by sending each other stolen copies of these works and then uploading these Works to the internet to be downloaded by anyone.

**ANSWER**: DENIED. Defendant has no copies of the Audio and Video Works.

104. By so doing, the Defendants constructively agreed to engage in the unlawful reproduction and distribution of Foundation's copyrighted works.

**ANSWER**: DENIED

105. In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by copying the Works to distribute amongst each other and to distribute over the internet and were willful participants in this joint activity.

**ANSWER**: DENIED

106. As a proximate result of this conspiracy, the Foundation has been damaged, as is more fully alleged in Counts I–IV, above.

**ANSWER**: DENIED

**COUNT VII FEDERAL TRADEMARK INFRINGEMENT**

107. The Foundation hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER**: As are the Answers thereto.

108. The Foundation is the owner of all rights in the Trademarks.

**ANSWER**: DENIED. Defendant questions the validity of the trademarks and the circumstances under which the Plaintiff's obtained them.

109. Defendants Havel and Weaver have used the Trademarks in connection with their YouTube channel and in connection with selling T-Shirts in a manner that is likely to cause confusion, to cause mistake, or to deceive, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER**: DENIED. To the extent Defendant used any of the referenced logo or related imagery on T-shirts before suit, such use was pre-suit and Defendant stopped selling T-shirts using the imagery after litigation began. Defendant denies that such historical use establishes likely confusion, willfulness, continuing infringement, or entitlement to damages, profits, enhanced damages, or injunctive relief.

110. The use by Havel and Weaver is unauthorized, is likely to continue, and is likely to cause substantial injury to the public and to the Foundation, and the Foundation is entitled to injunctive relief and its attorneys fees and costs under the Lanham Act.

**ANSWER**: DENIED

111. Havel and Weaver's infringement of the Trademarks, as aforesaid has caused and is likely to continue to cause irreparable harm to the Foundation. Unless restrained and enjoined by this Court, Havel and Weaver will persist in their infringement, thereby causing the Foundation further irreparable harm.

**ANSWER**: DENIED

112. The Foundation is entitled to, among other relief, injunctive relief and an award of actual damages, Havel and Weaver's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under sections 34, 35, 43 of the Lanham Act, 15 U.S.C. § 1116, 1117, 1125 together with prejudgment and post-judgment interest.

**ANSWER**: DENIED. Defendant denies any implication that the Plaintiff's are entitled to any relief under any of their claims.

113. The Foundation has no adequate remedy at law.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the allegation contained in paragraph 113 and therefore deny the same.

**DEMAND FOR JURY TRIAL**

The Foundation requests a trial by jury on all issues so triable.

**ANSWER**: Defendant also requests a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, the Foundation prays for judgment against the Defendants, and each of them, as follows:

For entry of a preliminary injunctions, temporary restraining orders, and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing the Foundation's rights in the Video and Audio Works, the Literary Work, and the Visual Work including without limitation by using the internet to reproduce or copy the Video and Audio Works, to distribute the Video and Audio Works, or to make the Video and Audio Works available for distribution to the public, or to publicly perform the Video and Audio Works or the Literary Work, or to create derivative works of the Literary Work or the Visual Work except pursuant to a lawful license or with the express authority of the Foundation. Each Defendant also shall destroy all copies of the Video and Audio Works that Defendant have in their possession, any and derivative of the Literary Work or Visual Work created, and shall destroy all copies of those downloaded audiovisual works transferred onto any physical medium or device in each Defendant's possession, custody, or control;

For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Foundation;

For an order of impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of the Foundation's Video and Audio works, Literary Work, Visual Work, or derivatives thereof, photographs or other materials that are in Defendants' possession or under their control;

For actual damages and profits of Defendants along with the costs of this action, pursuant to 15 U.S.C. § 1117;

A trebling of all damages pursuant to 15 U.S.C. § 1117;

A finding that this case is exceptional under 15 U.S.C. § 1117 and an award of attorneys fees;

For an order that Defendants are jointly and severally liable to the Foundation in the full amount of the Judgment on the basis of a common law claim for civil conspiracy to commit copyright infringement;

For an award of compensatory damages in favor of the Foundation and against Defendants, jointly and severally, in an amount to be determined at trial;

For the Foundation's costs;

For the Foundation's reasonable attorneys' fees;

An award of pre- and post-judgment interest on each and every monetary award; and

For such other and further relief as the Court deems proper.

**RESPONSE**: Defendant denies any allegations or premises contained in the numbered paragraphs entitled "Prayer for Relief" and deny that Plaintiff's are entitled to any relief from this Court. Defendant specifically denies the requested relief would make this an "exceptional

case" for which it should be awarded its reasonable attorney's fees pursuant to 15 U.S.C. 1117(a). Defendant also specifically denies the Plaintiff's request for injunctive relief.

**Wherefore Defendant respectfully request the Court to enter judgment in favor of the Defendant and against the Plaintiff's on Plaintiff's Complaint and awarding to Defendant its cost and expenses and reasonable damages in this action and such other relief as the Court may deem just in the premises.**

## Weaver's Affirmative Defenses

Here follows Defendant Cathy Weaver's affirmative defenses. Defendant identifies the following defenses upon which she may rely. Defendant respectfully requests leave to amend, supplement, restate, or withdraw defenses as permitted by the Federal Rules of Civil Procedure and this Court's orders. By asserting a defense, Defendant does not concede that she bears the burden of proof on any issue for which Plaintiff bears the burden under applicable law.

Affirmative Defenses to the Allegations of the Complaint Based Upon Conduct of the Parties: Background of the Events Between the Parties Leading to the Lawsuit

Throughout the years 2018, 2019, 2020 Defendant had become interested in the information left behind by the group Heaven's Gate and had done extensive research learning about their beliefs and behaviors. This research led Defendant to Co-Defendant Stephen Havel a.k.a. Sawyer, to his YouTube channel and also his Facebook page.

On April 13, 2020 Defendant Cathy Weaver emailed rep@heavensgate.com and asked for access to the Audio Works as Defendant wished to study them. Defendant learned via the responding email that Mark & Sarah King, the Plaintiff's were the former class members manning the Heavens Gate website and also sending out on a tape-by-tape basis the Audio Works. See Exhibit 1.

While researching the group and engaging with both Sawyer, Mark & Sarah King, the Plaintiffs and Jason Bartel a.k.a. Crlody (very briefly) Defendant learned of an ongoing dispute between all parties concerning the distribution and dissemination of the works left behind by the group. This dispute had been ongoing for decades.

Defendant began planning a trip in late August 2021 to meet with Sawyer the Co-Defendant and another researcher of the Heaven's Gate group. Plaintiff has stated the false allegation in paragraph 38 in their complaint that Defendant met up with Sawyer to infringe on their copyrights and that couldn't be further from the truth. Defendant can provide additional pages from her journal if this Court would like to see further proof of the reason for the Defendants visit to the Co-Defendant Sawyer and the events that transpired during and after that visit. See Exhibit 2

Before Defendant went to visit with the Co-Defendant, Sawyer, Defendant was watching on her cell phone Co-Defendant Stephen Havel a.k.a Sawyers YouTube channel livestream on September 3rd 2021 that Mark King, the Plaintiff joined in on. Defendant engaged Mark King in a lengthy discussion about the dissemination of the group's materials. Mark King stated many

lies in that livestream and Sawyer was quick to take him to task about his lies. Defendant also questioned Mark King's retelling of the leader of the group DO and the classes instructions to other members left behind and Plaintiff's and how they were to disseminate their information. Mark King, the Plaintiff stated in that livestream that he would upload all the Audio Works to the public site Vimeo by March 25th, 2022, as long as Sawyer agreed to stop playing the Audio Works on his livestream. After much arguing Sawyer agreed to do so. That livestream has since been marked private and is not viewable by the public but if allowed we will play the relevant parts in this Court. See Exhibit 3

On September 4th, 2021, the Plaintiff, Mark King initiated an email conversation with the Defendant, Cathy Weaver that transpired over the months of September and October with both parties trying to come to a mutual understanding of each other and each other's goals as it related to dissemination of the Heaven's Gate groups materials. Defendant initiated the process of trying to mediate a face-to-face meeting between the Co-Defendant Sawyer and the Plaintiff's so they could come to an agreement in regards to the task put forth by DO, the leader of the Heaven's Gate group to disseminate the materials the group left behind. The Plaintiff's allegation that the Defendant was indifferent that has been stated several times in the Plaintiff's Complaint is a false misrepresentation presented to this Court. Defendant asked repeatedly to see proof of the Plaintiff's claims of Copyright and Trademarks and also proof that DO and the group had given them all their materials and Plaintiff repeatedly declined to do so. As a result of the Plaintiff not providing proof Defendant did not know exactly what materials, if any, were in fact Copyrighted or Trademarked by the Plaintiff's. See Exhibit 4

Plaintiff has stated that the Defendant was involved in a conspiracy with Co-Defendant Jason Bartel and that couldn't be further from the truth. In fact Defendant has no relationship with Jason Bartel and only a few emails exchanged between the two as Jason Bartel has been antagonistic towards the other Co-Defendant Stephen Havel, a.k.a. Sawyer who Defendant does have a relationship with. See Exhibit 5

On October 20th, 2021 Defendant emailed Mark & Sarah, the Plaintiff's and based on their prior negative responses of working with Sawyer, Defendant asked to have permission to disseminate the materials herself without Sawyer. This proves that Defendant was not indifferent and not intentional in Plaintiff's allegations of inflicting harm on their foundation or using their alleged Copyrighted and Trademarked materials. See Exhibit 6

Defendant Cathy Weaver and Co-Defendant Stephen Havel, Sawyer had begun a physical relationship after meeting back in September 2021 and at the end of October and throughout the month of November embarked on a road trip to discuss with like minded people Ti and Do, the leaders of the Heaven's Gate group and the materials and instructions they and the group had left behind. On that road trip Defendant Cathy Weaver was in contact with the Plaintiff's trying to still set up a face-to-face meeting and get all differences resolved via text messages and emails. See Exhibit 7

Defendant was finally successful in getting the Plaintiff's to agree and to set up a face-to-face meeting at which they, the Plaintiff's wished to have the Defendants Cathy Weaver and Stephen Havel sign a "simple license agreement" to that end Defendant Cathy Weaver worked out an

agreement stating what materials she and Co-Defendant Havel wished to disseminate and what that would consist of. Plaintiffs via email acknowledged receipt of the agreement as did their attorney. See Exhibit 8

On November 17th, 2021, Defendant Cathy Weaver and Co-Defendant Stephen Havel met with the Plaintiff's Mark and Sarah King and also their attorney was present which the Plaintiff's had not made clear was going to be present to the Defendants. At that meeting Defendants were presented with a "Legal Agreement between the TELAH Foundation and Stephen Havel A.K.A. Sawyer and Cathy Weaver and to provide a settlement of the Cease and Desist of 11/17/2021". Defendants were taken aback by being tricked into a meeting that they thought was going to be signing a "simple licensure agreement" to being served with a Cease and Desist. See Exhibit 9. The Cease and Desist consisted of several statements the Defendants had been previously unaware of. Defendants asked verbally for proof of the statements of consent decrees the Plaintiff's claimed they had and were told by the Plaintiff's that they didn't need to provide that to Defendants that we just needed to take them at their word.

At the meeting on November 17, 2021 Defendants only had two hours with the Plaintiff's and their attorney and several statements were made by all parties. The Legal Agreement presented to the Defendants was over 13 pages long and Defendants did not sign it at that meeting, instead they took it back to their hotel room and carefully looked it over. Meanwhile throughout this time Defendant Cathy Weaver was participating in livestreaming with Co-Defendant Sawyer on his YouTube channel and discussing what was taking place once it became clear that the Plaintiff's were making outrageous demands Sawyer began playing audio tapes again. The

Plaintiff claiming in paragraph 51 that Defendants livestreamed 3 separate shows on 11/08/2021 is a false misrepresentation to this Court and a downright lie. Co-Defendant Stephen Havel has proof of the exact dates of those livestreams, and they occurred after the meeting on 11/17/2021. Indeed an email from the Plaintiff's lists the dates of those livestreams as 11/20, 11/21 and 11/23 respectively. Please see Exhibit 10. Also in Exhibit 10 string of emails on December 3rd, 2021 Plaintiff's admit to having the meeting we held with them recorded even though Defendant Cathy Weaver and Co-Defendant Stephen Havel were not informed of such. See Exhibit 10

Defendant Cathy Weaver emailed the Plaintiff's an annotated version of their legal agreement stating the major grievances with it and Plaintiff confirmed receipt of such. Please see Exhibit 11 and refer to Exhibit 10 string of emails for receipt confirmation of annotated legal agreement.

After much back and forth between Defendant and Plaintiff's no reasonable agreement could be reached and Plaintiff's severed communications with an email stating "See you in Court". See Exhibit 10

Defendant Cathy Weaver and Co-Defendant Stephen Havel, Sawyer, had no proof of the Plaintiff's claims of Copyright, Trademarks or consent decrees despite repeatedly asking for such and therefor proceeded with the task set forth by Do, the leader of the Heaven's Gate group to disseminate their information by anyone who feels called to do so. There are numerous audio recordings of the meetings Do held with the class, titled in the Plaintiff's Complaint as the Audio Works and literally hundreds of times Do speaks of what he wishes to happen with their information upon their exit from this world. With this Courts permission we would like to be

able to submit those recordings to prove Do and the groups specific wishes in regards to their materials. Co-Defendant Stephen Havel is providing extensive proof in his defense of the classes wishes and as he was in the group for 19 years and sitting there while most of the Audio Works and Video Works were recorded, Defendant feels he is well versed in such. The Literary Work also contains numerous details on what the groups mission was and their desire to get their information out to the public. We would like to submit those references as well with this Courts permission. Indeed the Video Works, entitled Beyond Human The Last Call sessions 1-12 also discuss what Do and the group wanted in getting their information out to the public and were broadcast for all the world to see in 1992 on satellite T.V as were Last Chance to Evacuate Planet Earth broadcast in 1996, Planet Earth About to be Recycled broadcast in 1996 and Do's Final Exit broadcast in 1997. We ask this Court to allow us permission to submit those statements as evidence as well. All of those Video Works have been uploaded numerous times by numerous individuals over the years and are available to the public at no charge and have been for years without the Plaintiff's going after any of these sites to have the content removed. Defendant has provided just a small portion of them here as they are too numerous to document all of them. See Exhibit 12. Indeed there are numerous individuals offering the Audio Works and the Video Works for hundreds of dollars but yet the Plaintiff's have brought no action to stop them or harass them as they have done with the Defendant Cathy Weaver and the Co-Defendant Stephen Havel who have only provided the live streams of the Audio Works for free and with over 2 hours of commentary in several instances. Defendant claims Fair Use in participating in those Audio Works being played on Co-Defendant Stephen Havel's livestreams. In fact the Plaintiff's had their attorney issue strikes against Co-Defendant Stephen Havel's YouTube channel in an effort to have the channel that Co-Defendant had spent over 8 years

building up removed from YouTube, despite saying in the meeting that they would take no such action against Co-Defendant Havel. **YouTube sided with Co-Defendant Havel in those instances and accepted the Fair Usage of those Audio Works and let the channel and those videos remain.**

Defendants repeated attempts to gain proof from the Plaintiff's to no avail of their alleged Copyrights and Trademarks resulted in Defendant moving ahead with the brief selling of T-Shirts that contained derivatives of the alleged Copyrighted material. Defendant sold a total of 5 shirts containing a derivative of the Plaintiff's alleged Trademarked logo and 4 shirts containing a derivative of the alleged Copyrighted image of the C.B.E. for a total of 9 shirts sold. Upon finally receiving proof of the Plaintiff's alleged Copyrights and Trademarks via this lawsuit the Defendant immediately pulled all advertising and cancelled the one standing order Defendant had for a t-shirt containing the alleged Copyrighted logo. The Defendant is not an Intellectual Property Rights attorney and doesn't understand the verbiage of the Trademarked logo which states that the logo be used in Video, does that not make it Fair Use to use on a shirt? Regardless Defendant has stopped selling the alleged Trademarked logo and alleged Copyrighted C.B.E. image on t-shirts even though Defendant questions the validity of the Plaintiff's copyrights and the manner in which they were granted them.

On April 6, 2022 Defendant initiated an email making another attempt to resolve our grievances and have another face-to-face meeting this time with no lawyers present and just Defendant Cathy Weaver and Co-Defendant Stephen Havel with the Plaintiff's Mark and Sarah King. They were in the class together for 12 years and Defendant felt if we could all just sit down and talk

things could be worked out. Unfortunately after a meeting was agreed too Defendant had to cancel a face-to-face meeting as finances did not allow a trip to Phoenix from South Bend, nor could Defendant afford to take such amount of time off from work as that would have necessitated. See Exhibit 13.

Plaintiffs Mark and Sarah King upon learning of Defendant not able to afford a trip to Phoenix proceeded with this lawsuit and in the Plaintiffs Complaint decided to include Defendant Cathy Weaver and Co-Defendant Stephen Havel's residential address. Defendant had just worked out with the property management company a renewal of the lease for another year and was about to sign it, however due to the disclosing of Defendants address Defendant felt it necessary to move as soon as possible. This resulted in Defendant having to secure a residence in her soon to be 18 year old's name and paying the property owner of that residence 6 months in advance so they would agree to such terms and also because the rental market is so sparse here and the property owner stated he had over 50 potential applicants in just 2 days of posting the property. Co-Defendant Stephen Havel had to take out a loan to pay for this. Defendant Cathy Weaver and Co-Defendant Stephen Havel will now be living out of a vehicle and having a post mailbox so we can not be found by the media or those curious or those who may wish to do us harm due to the controversy of the Heaven's Gate group and our belief and support of them. Co-Defendant Stephen Havel reached out to Mark and Sarah via email to plead with them to remove our address from the proceedings and was ignored. See Exhibit 14

Defendant has stopped all alleged infringement upon learning of the lawsuit via Pacer so is no longer in non-compliance with the Plaintiff's demands.

Defendant calls into question the manner in which she was served with the Process Server providing an incomplete copy of the exhibits and the ink clearly running out making some of the sentences unreadable, if not for obtaining from Pacer the entire complaint and exhibits Defendant would not have a true copy of this lawsuit. In addition the Process Server served Defendant on June 2nd 2021 and didn't get around to filing such serving until over 30 days later potentially making Defendant miss a key filing of a motion/answer to the summons.

Here in concludes the Affirmative Defenses of the Defendant Cathy Weaver.

**ADDITIONAL AFFIRMATIVE DEFENSES REGARDING IDENTIFICATION, CHAIN OF TITLE, AND THE AUDIO WORKS**

**134.** Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot establish that each particular work alleged to have been infringed is a valid copyrighted work owned by Plaintiff and that the particular work falls within the rights Plaintiff acquired and may enforce.

**135.** The February 22, 1999 Statement of Decision in the California probate proceeding found no sufficient gift or transfer of the intellectual property at issue to Mark and Sarah King before the decedents' deaths. Plaintiff appealed that decision.

**136.** While that appeal was pending, Plaintiff and the Public Administrator entered into a settlement approved on August 11, 1999. Defendant does not contend that physical possession of a cassette automatically determines copyright ownership. Defendant contends instead that Plaintiff must identify the particular works at issue and establish the evidentiary link between

each work, the interests held by the estates, and the rights actually conveyed by the court-approved settlement.

**137.** The settlement materials relied upon by Plaintiff do not identify every audio recording by the individual tape numbers later used in Plaintiff's infringement allegations. The property schedules use general descriptions of boxes containing audio cassettes and other materials. Thus, the settlement documents do not, without additional proof, establish that every later-numbered recording asserted by Plaintiff was among the specific intellectual-property interests or physical materials transferred through the settlement.

**138.** The record contains evidence concerning missing or unavailable tapes, gaps in tape logs, and disputes over the completeness and consistency of the audio archive. Plaintiff has acknowledged possession or dissemination of large numbers of digitized and physical copies while the parties continue to dispute the relationship between those copies, the registered deposit, and the particular works Plaintiff identifies in this case.

**139.** Plaintiff's First Amended Complaint identifies specific tapes, including Nos. 149, 263, 004, 030, 161, 156, 011, 054, 052, 050, and 200 through 204. Defendant denies that Plaintiff has established that each such number corresponds to a specific protected work within Registration No. SRu00298530 and within the rights transferred to Plaintiff through the probate settlement.

**140.** Defendant further states that historical archive records contain individual tape numbers and entries identifying some tapes as unavailable. Those records create factual questions concerning the identity, custody, completeness, and provenance of particular recordings. Defendant relies on those facts not to argue that possession of a copy transfers copyright, but to dispute whether Plaintiff has established the identity and chain of title of the particular works alleged to have been infringed.

**141.** To the extent Plaintiff relies on a registration as prima facie evidence under 17 U.S.C. § 410(c), Defendant disputes the application of that presumption to factual propositions not established by the certificate, including the identity of later-numbered recordings, the completeness of the deposited works, and the connection between particular recordings and the estate property transferred in 1999.

**142.** Defendant preserves and reasserts her defenses based on fair use, public-domain status where applicable, lack of authorization or volitional conduct attributable to Defendant, lack of willfulness, failure to prove damages and entitlement to statutory damages, and all other defenses stated in this Answer.

**143.** Defendant states that Plaintiff's claims for monetary relief may also be affected by Defendant's discharge in bankruptcy. Defendant pleads the discharge in bankruptcy as an affirmative defense to the extent Plaintiff seeks to enforce a pre-bankruptcy debt or other liability subject to the discharge injunction. Defendant does not contend that the discharge bars claims based on post-discharge conduct except to the extent applicable by law.

**COUNT III — HEAVEN'S GATE BOOK: VERSION, AUTHORIZATION, GOOD-FAITH RELIANCE, AND FAIR USE**

**144.** Defendant states that the Book existed in multiple versions. The Group created and formatted earlier versions, including Versions 1 and 2, in or about 1996. Plaintiff's present registration identified in Count III concerns Version 3.

**145.** Defendant states that the Group sent Oscody instructions concerning publication of Version 3 and its submission to the Library of Congress, with Mark and Sarah identified as check partners. Oscody died in 2000. Defendant therefore does not dispute, for purposes of this defense, that the 1999 proceedings and subsequent publication of Version 3 resulted in TELAH's claimed ownership and management rights in Version 3.

**146**. Defendant did not know of Judge Breyer's 1999 Consent Decree or of the rights and obligations arising from it when she made the recordings challenged in Count III. Her conduct must therefore be evaluated in light of the information and authorization actually communicated to her at the time.

**147**. The Book contents used by Defendant to begin an audio book came from the same material that was and still is posted on the Heavensgate.com website the Group made in 1996, available for free download from the Book page and can also be found in Version 1 or 2 of the Book, that was a Group-distributed copy obtained through Jhnody, a former member who had received copies from the Group in 1997.

**148**. The Group's reproduction notice appeared in the Book from Jhnody and was also made available on the Group's Heaven's Gate website. Exhibit 17 reproduces the notice displayed at heavensgate.com/book/02.htm. The notice communicated permission to reproduce the Book or portions of it subject to stated conditions, including that the content remain unchanged and that the reproduction not be made for financial or commercial gain.

**149.** Defendant relied upon that publicly communicated authorization in good faith. Defendant took part in recording herself reading portions of Student-written documents contained in the Book. The recordings were made before Plaintiff commenced this action and were not made for commercial profit.

**150.** The 1999 Consent Decree is also relevant to the parties' dissemination history. The decree placed upon TELAH obligations concerning dissemination of the Book and required TELAH to create and disseminate a revised Audiotape CD Set from the Humphrey classroom-session materials pursuant to a separate document referred to in the Consent Decree as "The Settlement Agreement" (that Plaintiffs have refused to provide despite many requests by Defendant and by

co-defendant Havel). The docket reflects that the Consent Decree provided for TELAH to distribute the Book and addressed TELAH's ownership and management responsibility for the Group's intellectual property. Defendant did not know of those proceedings when she made the recordings.

**151.** Defendant further states that Mark and Sarah King later praised Jhnody for translating Book material into Spanish. Defendant relies upon that communication as evidence bearing on the reasonableness of her understanding that the Group's materials were intended to be disseminated, not as an admission that Mark and Sarah King personally authorized the precise recordings at issue.

**152.** Defendant asserts, in the alternative, that the circumstances establish an express authorization or nonexclusive license, or otherwise support a defense based upon fair use. Defendant further denies that Plaintiff has established that the particular Student-written material read by Defendant is protected by Plaintiff's Version 3 copyright to the exclusion of the authorization applicable to the underlying material.

**153.** Defendant denies willfulness. She had no knowledge of the 1999 Consent Decree when the recordings were made, relied on the Book's reproduction notice and the Group's public website, acted noncommercially, and ceased the challenged recording activity after Plaintiff commenced this action.

**154.** Defendant denies entitlement to statutory damages, enhanced damages, attorneys' fees, or other extraordinary relief to the extent such relief depends upon willfulness, unreasonable conduct, or an unauthorized commercial exploitation. Defendant further denies that Plaintiff has established actual damages attributable to her conduct.

**ADDITIONAL AFFIRMATIVE DEFENSES REGARDING THE C.B.E. VISUAL WORK, PLAINTIFF'S KNOWLEDGE, AND WILLFULNESS**

**155.** Defendant denies that Plaintiff has established that the particular C.B.E. image used by Defendants is an original work owned by Plaintiff in the manner alleged, and Defendant relies upon the historical provenance and copyright record concerning the image.

**156.** The February 22, 1999 California probate Statement of Decision addressed the C.B.E. print of the painting specifically. The court noted that the print of the painting had been delivered to the petitioners, but found no evidence that the decedents had transferred the intellectual-property rights in the painting to the petitioners. The same decision found no evidence of a pre-mortem transfer of the intellectual-property rights at issue. Defendant relies on these findings as part of the factual history of the C.B.E. work.

**157.** The probate decision also recorded Sarah King's testimony that several Group audiovisual works, including Do's Final Exit and Beyond Human, had been given to the petitioners for the express purpose of distributing copies and receiving returned copies, and characterized Mark and Sarah King as agents or distributors, but no more. Defendant relies on this historical record in evaluating the provenance and dissemination history of the Group's works and Plaintiff's later claims of exclusive control.

**158.** The C.B.E. image and other Group materials were publicly disseminated before Plaintiff's present enforcement efforts. Defendant had observed public dissemination of the C.B.E. image and other Group materials, including dissemination by other persons, before Plaintiff commenced this action. Defendant relies on that longstanding public dissemination as relevant to notice, good faith, and willfulness.

**159.** Before Defendant participated in certain livestreams, she had observed longstanding public dissemination of Group materials by persons other than Plaintiff, including audio and visual materials made available through public channels. Defendant relies on that history only as

context bearing on her own state of mind and notice; she does not adopt or assert any separate claim or defense belonging to another defendant.

**160.** Defendant did not enter the case as a person who independently devised a new scheme to exploit Plaintiff's works. Her conduct arose in the context of longstanding public dissemination of Group materials that predated her participation and that was publicly observable before this action.

**161.** Plaintiff's own discovery production, Bates No. TELAH_000045, contains a September 2021 communication from Mark King and Sarah King addressing Havel and Bartel together. Plaintiff's representatives stated that, concerning "the original 200-tape CD" and "use of the videotapes the Group left," "we let that slide for two decades but you went too far," and then demanded that the material come down. Defendant relies upon this admission as evidence of Plaintiff's longstanding knowledge and prior non-enforcement concerning Havel's and Bartel's dissemination of Group materials over two decades that they knew about because both Havel and Bartel were very forthcoming on their respective blogs; sawyerhg.wordpress.com and crlody.wordpress.com. In fact it was on Havel's blog that Plaintiffs extracted what became Exhibit H of Plaintiffs Complaint and Amended Complaint that was the tape log of over 900 audios that Jhnody sent to Havel in 2020 that Jhnody testified he received from Mark King and Sarah King.

**162.** The videotapes identified in Plaintiff's claims and related proceedings include Group works such as the Beyond Human videos and Do's Final Exit video. Defendant contends that Plaintiff's own acknowledgment that it had allowed Havel and Bartel's use of Group videotapes to continue for approximately two decades is relevant to Plaintiff's knowledge, acquiescence, authorization,

and the absence of willfulness, including with respect to conduct later characterized by Plaintiff as infringing.

**163.** Defendant does not contend that TELAH_000045 expressly grants permission to use the C.B.E. image. Defendant relies upon that communication instead as evidence bearing on Plaintiff's knowledge of Havel's longstanding dissemination of Group materials, the parties' course of dealing, and Defendant's good-faith understanding of Plaintiff's claimed rights.

**164.** Defendant pleads lack of willfulness and good-faith conduct. The circumstances known to Defendant included longstanding public dissemination, Plaintiff's historical failure to enforce against at least some of that dissemination, and Defendant's lack of notice that Plaintiff would characterize her later participation as willful infringement.

**165.** Defendant pleads authorization, acquiescence, nonexclusive license, equitable estoppel, and related defenses to the extent supported by the evidence and applicable law. Defendant does not rely on any one of these defenses as established merely by the TELAH_000045 communication, but preserves them for factual development.

**166.** Defendant denies that Plaintiff is entitled to enhanced statutory damages, exemplary damages, attorneys' fees, or other extraordinary relief where such relief depends upon willfulness or culpable conduct, and Defendant denies that Plaintiff has established actual damages caused by the alleged C.B.E. conduct.

**167. DAMAGES AND ECONOMIC INJURY NOT ESTABLISHED**. Plaintiff's allegation that the amount in controversy exceeds $75,000 does not itself establish actual economic damages. Judge Gotsch's Dkt. 194 preliminary-injunction ruling considered Plaintiff's contention that actual damages would be difficult to calculate and found on the evidence before him that **Plaintiff's actual damages could be readily determined as de minimis**, in part

because Plaintiff had agreed to safeguard, archive, and control the Group's materials rather than sell them. Dkt. 194 at 32–33. The same ruling found the magnitude of possible statutory damages speculative where Plaintiff had not addressed the applicable statutory-damages factors. Id. at 38. Defendant does not contend that Dkt. 194 finally adjudicated her damages; she preserves the point that any damages or extraordinary remedy must be supported by a defendant-specific and work-specific evidentiary record.

**168.** Defendant states that the allegation that Defendants created or were creating plush dolls is false. No plush doll was designed, created, manufactured, sold, or distributed by Defendant. Any discussion concerning a possible plush representation of the C.B.E. image was exploratory only and did not result in a completed derivative work or commercial distribution.

**169.** Defendant reserves all additional defenses and objections revealed by discovery, including defenses concerning ownership, provenance, registration, authorization, fair use, damages, willfulness, and the scope of any rights Plaintiff acquired through the probate proceedings and subsequent settlement.

**COUNTERCLAIM**

Defendant Cathy Weaver asserts the following counterclaim in her individual capacity. Defendant does not assert, adopt, or purport to represent any claim, defense, or right belonging personally to co-defendant Stephen Havel or any other person.

1. Defendant relies on the historical record concerning the Heaven's Gate Group's authorship, dissemination, and treatment of its Video Works, Audio Works, and Literary Work because Plaintiff now asserts exclusive rights in those materials. Defendant seeks declaratory relief concerning the scope and enforceability of Plaintiff's asserted rights as they are applied to Defendant.

2. The record concerning the Beyond Human Series, the Audio Works, and the Group's distribution practices presents factual issues concerning authorship, provenance, custody, registration scope, and the relationship between Plaintiff's registrations and the particular works Plaintiff alleges Defendant infringed.

3. The Group's Literary Work was distributed with a reproduction notice permitting reproduction of the Book or portions thereof subject to stated conditions, including unchanged content and noncommercial use. Defendant relied upon that publicly communicated notice in good faith when she participated in the challenged noncommercial recording activity. The notice is reproduced in Exhibit 17.

4. Defendant seeks a declaration concerning whether and to what extent the publicly displayed reproduction notice, other authorization communicated by the Group, implied license, fair use, or other defenses limit Plaintiff's ability to impose liability or enhanced remedies against Defendant for the conduct alleged in Count III.

5. The record also contains references to FedEx packages, faxes, emails, and telephone calls concerning the disposition and dissemination of Group materials. Defendant requests production of such records to the extent they are relevant and discoverable because they may bear on provenance, authorization, Plaintiff's knowledge, and the scope of Plaintiff's asserted rights.

6. To the extent an asserted trademark registration is subject to cancellation or other relief under the Lanham Act, Defendant requests that the Court apply the remedies authorized by 15 U.S.C. §§ 1064 and 1119. Defendant does not ask the Court to use trademark-cancellation provisions as a mechanism for cancelling copyright registrations.

7. Defendant seeks declaratory relief concerning the scope, ownership, validity, and enforceability of Plaintiff's asserted copyright and trademark rights as applied to Defendant's

conduct and the particular works at issue. Defendant does not seek to represent any other defendant through this counterclaim.

WHEREFORE, Counterclaim Plaintiff Cathy Weaver respectfully requests: (a) declaratory relief concerning the scope, ownership, validity, and enforceability of Plaintiff's asserted intellectual-property rights as applied to Defendant; (b) if applicable, cancellation or other appropriate relief concerning an asserted trademark registration pursuant to the Lanham Act, including 15 U.S.C. §§ 1064 and 1119; (c) a declaration concerning Defendant's rights and defenses with respect to intellectual property she contends was created, distributed, or authorized by the Heaven's Gate Group, to the extent supported by the evidence and law; (d) attorney's fees if authorized by law; (e) damages, interest, and costs to the extent authorized by law; and (f) such other relief as the Court deems just and proper.

Dated: 9-15 __________, 2026

Cathy Weaver

Cathy Weaver

5776 Grape Rd.

Suite 51

PMB# 121
Mishawaka, IN. 46545

Sawcat575@gmail.com

Defendant