**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF INDIANA**

**SOUTH BEND DIVISION**

THE EVOLUTIONARY LEVEL ABOVE HUMAN, INC.
d/b/a THE TELAH FOUNDATION,

FILED - OCT 05, 2026 - PM12:23
US DISTRICT COURT
Northern District of Indiana
Chanda J. Berta - Clerk

Plaintiff,

v.

STEPHEN HAVEL; CATHY WEAVER; and JASON BARTEL,

Defendants.

CAUSE NO. 3:22-CV-395-DRL-SJF

**DEFENDANT WEAVER'S REPLY IN SUPPORT OF MOTION TO RECONSIDER AND REVISE THE AUG 26, 2026 INTERLOCUTORY ORDER UNDER FED. R. CIV. P. 54(b)**

Defendant Cathy Weaver, proceeding pro se, respectfully submits this reply to Plaintiff's Opposition to Defendants' Rule 54(b) motions, Dkt. 287.

PLAINTIFF's opposition is presented as a response to all three Defendants collectively, but several arguments in the opposition do not address the particular arguments raised in Weaver's motion. Weaver's motion does not ask the Court to reconsider matters applicable only to another Defendant, nor does it contend that possession of an .mp3 audio tape necessarily defeats copyright ownership.

The issues relevant to Weaver are narrower. They include facts surrounding this case for 4 years that aren't new to the Summary Judgement Motion Plaintiffs just filed or to Defendant's response:

**1.)** **Re: Count I** – Alleged Audio Works infringement - whether the particular recordings alleged to have been used can be connected to the particular registered works on which PLAINTIFF relies and whether the probate materials identify those particular works;

The facts are that there are no legal documents from the copyright registration nor from the Judge Guy-Schall Probate case and also not from the Judge Breyer Settlement that includes actual audio tape cassette numbers. So it's a guess what specific tape numbers were Copyright registered and what Plaintiffs received from the Probate case.

The "deposit" from the first complaint Audio Works registration shows no tape numbers and the evidence we have from an email from Plaintiffs (Mark King and Sarah King) shows when their Attorney Isacc Crum said, in the court record that he constructed a list of what audio cassette tapes were in the Deposit, the List included some 20 tape numbers that they agreed never existed. This was known by Mark and Sarah King which was well before the lawsuit was filed as they expressed in an email to Falcon (JHNODY). They never explained what Mr. Crum used to construct that List 1 of what was allegedly copyrighted via that registration.

Also, since Plaintiffs base much of their case on the alleged audio tapes they obtained from the Probate Case, that were not inventoried by San Diego County, except as boxes of cassette tapes, again there is no evidence of exactly what audio cassette numbers were awarded them in the Probate Settlement in 1999. The boxes inventoried could have been blanks.

Even so, the Copyright registration Plaintiffs filed into the Probate case was proven by Judge Lisa Guy Schall and her team to have no supportive documentation, assignments, "work for hire" from the Group to legitimize them. Judge Guy-Schall wrote about the documents giving Mark King Power of Attorney that expired upon the death's of the decedents that Members of the

Group referenced in a letter to Mark and Sarah King (Mrc/Srf) explaining was to hopefully help them recover some of the funds due some of the Group members from their employment that they didn't receive prior to their decision to leave this world by their own hands in March of 1997. That document "letter" is part of this courts record as well.

These two salient points alone form a huge "**dispute**" of Plaintiffs Statement of Facts in their Summary Judgement Motion concerning Count I of their Complaint.

Plaintiffs argue that these things should have been brought up in Defendant's Summary Judgement reply, which they were but **are not being brought up new** because they have been recorded in many court documents in this case over the last 4 years but it wasn't time to rule on them then.

Defendant apologizes for not being able to present this Dispute to the court in the correct manner in response to Plaintiffs Summary Judgment. Defendant became very ill mentally and physically because of the huge stresses associated with this Case and that continues.

2.) **Defendant's separate arguments concerning Count III:**

There is also much of what Plaintiffs have said that is very disputable, thus hoping for a redress by the Court. The facts are that the literal tiny bit that Defendant used the Groups Heaven's Gate Book (posted on the Heaven's Gate website since 1998 or so), was pre-lawsuit and Plaintiffs, by then kept hundreds of audio tapes they digitized away from Havel and Bartel for dozens of years and never revealed they had copyrights and trademarks for some which has been shown in the court recorded Cease and Desist Letter they gave to Defendant and Havel that said they had "Assignments" of **all** the Group's Intellectual Property while certain former members of the

Group like Havel knew they didn't have everything copyrighted. That was proven to be a false statement as for one Jhnody (Falcon), who is still alive, received a great deal of the Groups Intellectual Property in 1997 from the Group that has been documented in this Court record. And Havel knew what he had received from Rkkody in 1997 and 1998, CD's holding most of the Groups Intellectual Property.

The Heaven's Gate Book's material had been publicly available for years for free download from the Heavensgate.com website Plaintiffs became the webmasters of in 1999 or so, that included a Common Law copyright notice to authorize anyone to copy the material in part or in it's entirety as long as not for commercial profit. This notice is still posted on the website under the Book tab on the Copyright page. Defendant was studying that information to learn about it for years and was communicating with Mark King and Sarah King via email and texts during part of that time and Defendant had been watching co-defendant Havel's (Sawyer) Livestreams on his 3spm YouTube channel (never monetized) for years as well and observed the material being talked about and shown to others for over two decades that is on record in the court with Mark King and Sarah King saying they "let it slide" that included "200 audios" and video's Havel and Bartel used over that two decade time frame. So why would anyone think there would be something wrong with making a free audio book so people could listen to the information while they are doing other things? It was educational regarding history. Even so, Defendant stopped constructing those audio recordings as soon as the lawsuit was filed, in case that was a problem thereafter.

3.) **Count IV** – Plaintiffs state in their Amended Complaint that "Upon information and belief, Co-Defendants **Stephen Havel and Cathy Weaver have created or are creating plush dolls based on images** registered as VA000877834 entitled "The C.B.E. (Celestial Being Entity)" (the

"Visual Work") which is owned by the Foundation and has been owned by the Foundation continuously since 1997. "

There never were any Plush Dolls designed or made. In fact Defendant Weaver brought up the idea to Mark King and Sarah King in a face to face meeting with them, with Havel present as well, in their past Lawyers office in Phoenix, well before that lawsuit was filed, as something Defendant and Havel might like to do. Weaver designed an agreement to use.

Therefore this is yet another huge **Dispute** of what Plaintiffs claim are "facts" about Defendant's alleged (imagined) infringement. Incidentally, this idea was months before the lawsuit was filed so is another of many demonstrations of Weaver trying to cooperate with Plaintiffs by not proceeding with anything that could be misconstrued as an infringement even though co-defendant Havel had been observed using the CBE image on his not for profit YouTube channel 3spm for years, even since 2008 and Mark King and Sarah King, according to Havel never complained about the images usage.

Additionally Plaintiffs copyright registration of the C.B.E. lithographic print wasn't the first copyright of that image. The first was by the artist David Cabot Van Sinderen in 1982 and there happen to be several important wrong information on Plaintiffs 1997 Copyright registration. One being they didn't say the "transfer" happened by a "work for hire" or not. And they didn't reveal knowing that there was a previous copyright registration, while Havel is witness to both Mark and Sarah King being in the Group in 1987 when that image and others was displayed for sale at the Groups little Astrologics business/center. All this has been added to the Court a number of times in filings well before the Summary Judgement.

## I. PLAINTIFF DOES NOT ANSWER THE PARTICULAR-WORK IDENTIFICATION ISSUE RAISED BY WEAVER

PLAINTIFF's opposition repeatedly emphasizes that the Complaint identified particular tape numbers and that the Court found evidence concerning recordings associated with Weaver.

That does not resolve the issue presented in Weaver's Rule 54(b) motion. Weaver's argument is not that PLAINTIFF failed to identify **any** tape numbers. The Complaint did identify numbers, including numbers appearing in the allegations concerning the recordings allegedly used by Defendants. See Dkt. 132 ¶ 51. The question is what those numbers establish.

There are at least three separate evidentiary propositions: 1) that a particular physical tape or recording bears a particular number; 2) that the recording associated with that number is one of the particular copyrighted works covered by the registration on which PLAINTIFF relies; and 3) that the copyright interest in that particular work is one of the intellectual-property interests conveyed through the probate proceedings and settlement on which PLAINTIFF relies. PLAINTIFF's opposition largely establishes only the first proposition.

The distinction matters because PLAINTIFF has itself described a set of **486 registered recordings**, while elsewhere distinguishing those recordings from additional numbered recordings it characterized as unregistered works. In its proposed preliminary-injunction materials, PLAINTIFF identified recordings associated with Registration No. SRu298530 as "Registered Works" and distinguished recordings numbered 487 through 1082 as "Unregistered Works." See Dkt. 120 at 1–2.

Thus, the existence of a tape number is not equivalent to establishing that the particular recording bearing that number is one of the 486 registered works. That is the evidentiary connection Weaver asked the Court to examine.

## II. THE 486-RECORDING REGISTRATION DOES NOT BY ITSELF IDENTIFY THE NUMBERED TAPES ALLEGED IN THE COMPLAINT

Plaintiff's don't identify a Copyright Office deposit inventory that maps the particular tape numbers alleged in the Complaint to the 486 recordings deposited in connection with the registration. (There is in the court record evidence Plaintiffs knew about 20 of that number never existed). This should have been revealed in Plaintiffs provision of Discovery but it finally surfaced via Havel's Production of Document Requests talked about later re: TELAH_000045.

That missing connection is significant. The existence of a registration may establish important presumptions concerning the registered work. But the registration does not, without more, establish that every physical recording bearing a number used in the Complaint is necessarily one of the works included in that registration. The distinction is especially important here because the record contains evidence concerning multiple sets of recordings, incomplete or unavailable tapes, differing archival materials, and the absence of a complete master-copy list though Plaintiffs have talked about in emails having a "master tape log". The Court's August 26 order itself recognized evidentiary gaps concerning the recordings and the archival record. See Dkt. 276 at 5–6.

Weaver's Rule 54(b) motion therefore did not ask the Court to disregard the copyright registrations. It asked the Court to apply the registrations to the **particular works actually alleged to have been infringed**. PLAINTIFF's response does not identify the missing evidentiary bridge. In particular, PLAINTIFF has not pointed to: 1) a Copyright Office deposit inventory identifying the Complaint's individual tape numbers; 2) a probate inventory identifying those same tape numbers; 3) a document establishing that the particular numbered recordings

alleged against Weaver were among the specific works transferred through the probate settlement; or 4) another evidentiary record that makes those connections.

The absence of such identification does not necessarily invalidate PLAINTIFF's registrations. It does, however, leave unresolved the separate question of whether the particular recordings alleged against Weaver are the particular registered and transferred works on which PLAINTIFF's infringement claim depends.

## III. UNICOLORS DOES NOT ELIMINATE THE PARTICULAR-WORK IDENTIFICATION QUESTION

PLAINTIFF's reliance on *Unicolors* does not answer this issue. Weaver's argument does not depend upon a contention that an inaccurate registration is automatically invalid. Nor does Weaver ask the Court to decide that the registration must be disregarded because of an alleged registration error. The question here is different. Before a registration can be used as the basis for an infringement judgment concerning a particular work, the record must identify the work that the registration protects and connect that work to the work allegedly infringed. The particular-work issue therefore remains separate from the question addressed in *Unicolors* concerning inaccuracies in copyright applications and the effect of those inaccuracies under the Copyright Act. PLAINTIFF's response does not demonstrate that *Unicolors* supplies the missing tape-number-to-registered-work connection.

## IV. THE 1999 PROBATE SETTLEMENT DOES NOT SUPPLY THE MISSING TAPE-BY-TAPE CONNECTION

PLAINTIFF also relies heavily upon the 1999 probate proceedings and settlement. Weaver does not dispute that those proceedings are relevant to PLAINTIFF's asserted chain of title. The

problem is more specific: the probate materials do not provide a tape-by-tape identification of the recordings alleged against Weaver. The probate record contains broad descriptions concerning intellectual property and tangible property. The settlement and related orders concern property administered through the probate proceedings. But Weaver's Rule 54(b) argument concerns the particular recordings that PLAINTIFF claims were infringed. The question remains:

**Where is the record identifying the particular tape numbers alleged against Weaver as the same particular works that were registered and/or whose intellectual-property rights were conveyed through the probate settlement?**

PLAINTIFF's opposition does not provide that identification. This distinction is not an attempt to relitigate whether the probate settlement had legal significance. It is an attempt to determine precisely what the settlement transferred and whether the particular works alleged in this case fall within that transfer.

The Court's August 26 order itself recognized limitations in the archival and identification record. See Dkt. 276 at 5–6. Rule 54(b) reconsideration can therefore address the legal consequence of those acknowledged limitations without requiring the Court to pretend that the probate record contains a tape-number inventory that it does not contain.

## V. THE PARTICULAR-WORK ISSUE WAS RAISED BEFORE SUMMARY JUDGMENT; IT IS NOT A NEW THEORY

PLAINTIFF argues that Weaver is attempting to raise issues that should have been raised earlier. The record does not support that characterization. Weaver raised particular-work identification in her Answer and in her summary-judgment response. Those filings addressed the relationship among: 1) the individual tape numbers identified by PLAINTIFF; 2) PLAINTIFF's copyright

registrations; 3) the larger collection of tapes and recordings; 4) the probate proceedings; 5) the absence of complete tape identification in the probate materials; and 6) the question whether the recordings allegedly used by Defendants corresponded to the works for which PLAINTIFF claimed ownership.

Weaver is not presenting a new factual theory in this reply. Instead, the Rule 54(b) motion asked the Court to reconsider or clarify the legal significance of evidence already before it.

That distinction matters. The fact that evidence was previously presented does not make Rule 54(b) unavailable where a nonfinal order can be revised before final judgment. Rule 54(b) expressly permits revision of an interlocutory order before entry of judgment adjudicating all claims and all parties' rights and liabilities. Weaver's request is therefore not based on newly discovered evidence. It is based upon the relationship between the evidence already in the record and the particular-work requirement of the infringement claims.

## VI. PLAINTIFF'S OMNIBUS RESPONSE SHOULD NOT BE TREATED AS RESOLVING ISSUES THAT BELONG ONLY TO OTHER DEFENDANTS

PLAINTIFF's Dkt. 287 response repeatedly refers to "Defendants" collectively.

That presentation obscures material differences among the three Rule 54(b) motions. Weaver's motion is not identical to Havel's motion, and neither is identical to Bartel's.

For Weaver, the relevant issues include the particular recordings allegedly used by Weaver (though in reality were played by Havel on his 3spm Youtube channel he had since 2008, while Weaver was sitting next to Havel. The recordings that were played by Havel were owned legally by Havel, having received most of them from Rkkody via CD's sent to Havel in 1997 and 1998

and pictures of these recordings and the postmarks have been provided to the Court) and the evidence concerning authorization, public reproduction notices, provenance, prior dissemination, and PLAINTIFF's knowledge. Accordingly, an assertion that "Defendants" previously received or possessed particular materials does not necessarily answer the legal question presented by Weaver. Likewise, an argument directed at Havel's conduct should not automatically be treated as an adjudication of Weaver's separate conduct.

## VII. COUNT III: OWNERSHIP DOES NOT RESOLVE AUTHORIZATION, NOTICE, GOOD FAITH, OR WILLFULNESS

Weaver's Rule 54(b) motion also addressed Count III and the evidence concerning the copyright/reproduction notice associated with the Heaven's Gate book material. PLAINTIFF's response largely treats ownership as resolving the issue. It does not. The existence of a copyright and the question whether a particular defendant's conduct was authorized, undertaken with knowledge, or willful are distinct inquiries. Weaver's evidence includes a reproduction notice stating: **"Permission is hereby granted to reproduce this book, or portions thereof"** subject to the conditions stated in the notice. The notice does not necessarily establish an unlimited license to reproduce everything PLAINTIFF now claims. Weaver does not ask the Court to make that conclusion. Rather, the notice is evidence bearing on what a person encountering the material could reasonably understand concerning reproduction. That evidence is relevant to the circumstances of Weaver's conduct, including good faith, knowledge, willfulness, and the appropriate consequences of the conduct.

The August 26 order should therefore be reconsidered or clarified to the extent it treated ownership as resolving those separate questions.

## VIII. COUNT IV: C.B.E. PROVENANCE AND PRIOR DISSEMINATION REMAIN RELEVANT

Weaver's Rule 54(b) motion also raised evidence concerning the provenance and prior dissemination of the materials at issue. That evidence does not depend upon an assertion that prior possession automatically transferred copyright ownership. To the contrary, Weaver recognizes the distinction between ownership of a physical object and ownership of copyright.

The evidence is relevant for a different reason: it bears on how the materials came into circulation, what individuals could reasonably understand concerning their status, and what PLAINTIFF and persons associated with it knew about their dissemination. Those circumstances can be relevant to the issues of notice, good faith, willfulness, and equitable relief. PLAINTIFF's opposition does not eliminate that relevance merely by asserting ownership.

## IX. PLAINTIFF'S OWN COMMUNICATIONS ARE RELEVANT TO KNOWLEDGE AND PRIOR NON-ENFORCEMENT

The evidence designated as TELAH_000045 also has a narrower significance than the one PLAINTIFF attributes to it. The communication includes a statement that PLAINTIFF had "let that slide for two decades" concerning the original approximately 200-tape CD and references to videotapes left by the Group. Weaver does not contend that this statement, standing alone, creates an express copyright license. The point is different. A party's own contemporaneous statement concerning its knowledge of longstanding dissemination can be relevant to what the party knew; when it knew it; whether the conduct was historically tolerated; the circumstances surrounding the alleged infringement; willfulness; and the appropriate scope of equitable relief. The evidence therefore should not be treated as irrelevant merely because Weaver does not claim that it independently constitutes a license.

## X. WEAVER DOES NOT CONTEND THAT PHYSICAL POSSESSION DEFEATS COPYRIGHT OWNERSHIP

To avoid any possible misunderstanding created by PLAINTIFF's omnibus response, Weaver does not contend that possession of a physical copy automatically defeats PLAINTIFF's copyright claim. Section 202 of the Copyright Act distinguishes ownership of a copyright from ownership of the material object in which a copyrighted work is embodied. Weaver's argument is instead that the Court must identify the **copyrighted work** and determine whether the particular work allegedly infringed is one in which PLAINTIFF possesses the asserted exclusive right. The provenance of a physical copy is relevant evidence, but Weaver does not rely on physical possession alone as a transfer of copyright. This distinction is important because PLAINTIFF's response sometimes appears to answer an argument Weaver did not make.

## XI. CLARIFICATION OF THE PARTICULAR WORKS IS IMPORTANT BEFORE LIBRARY-WIDE EQUITABLE RELIEF IS CONSIDERED

PLAINTIFF's opposition should not be read as establishing that part of the Group's Intellectual Property obtained from legitimate sources Plaintiffs have provided people over many years necessarily constitutes works covered by the particular copyrights at issue in this case. The record contains evidence of multiple collections, different numbering systems, historical dissemination, and incomplete archival identification. That evidence makes particular-work identification important not only to liability but also to the scope of any later remedy.

A judgment concerning specifically identified copyrighted works is materially different from an order requiring surrender or impoundment of an undifferentiated collection of historical materials merely because those materials are associated with Heaven's Gate.

The Court's August 26 order recognized that the record contains gaps concerning the recordings and archival materials. Dkt. 276 at 5–6.

Weaver therefore respectfully requests clarification before the case proceeds to a remedy stage, as to the particular works underlying the adjudicated infringement claims.

## XII. CONCLUSION

For these reasons, Defendant Weaver respectfully requests that the Court grant her Rule 54(b) motion, or alternatively revise or clarify the August 26, 2026 interlocutory order so that:

1. the particular copyrighted works underlying the adjudicated claims are identified with sufficient specificity;
2. the Court distinguishes identification of a physical tape number from identification of the registered copyrighted work allegedly embodied in that tape;
3. the Court does not treat the 486-recording registration, standing alone, as establishing that every numbered recording alleged in the Complaint is among those registered works;
4. the Court recognizes that the probate materials do not themselves provide a tape-by-tape identification connecting the particular recordings alleged against Weaver to the particular intellectual-property interests transferred through the probate proceedings;
5. Weaver's evidence concerning reproduction notices (the Groups chosen Common law copyright notice that gives a type of license to copy parts of the book or the entire book as long as it’s not for commercial profit purposes, that is still posted on the Book tab, Copyright page on the Heavensgate.com website as the Group left it that Plaintiffs are the current webmasters of and remains available for consideration concerning authorization, good faith, willfulness, and remedies.

6. Weaver's evidence of provenance - the origin of the audio tape .mp3 files Havel had been playing on his Youtube channel 3spm livestreams for much of two decades (that Plaintiffs have been proven to know a great deal about what Havel was doing but chose to "let it slide" while for a few of those livestreams Weaver sat in on some of those recent streams having no evidence of any infringement for doing so as it was pre-lawsuit and this includes learning that Havel received the digitized audio files he played from former Member of the Group Rkkody (deceased) (that he received by taking them out of storage and digitizing them and sending CD's to Havel in 1997 and 1998), remains available for consideration concerning authorization, good faith, willfulness, and remedies.
7. Weaver's evidence of years of prior dissemination of the C.B.E. Image by Havel and by Rkkody in 1997, his having received the Heavensgate.com website (and two others) that came with the images had been occurring for many years evidenced on Havel's non-profit YouTube 3spm channel with Plaintiffs knowledge remains available for consideration concerning authorization, good faith, willfulness, and remedies.
8. Any subsequent equitable relief be limited to particular works and particular claimed infringing copies or conduct established in the record, rather than being imposed on an undifferentiated collection of historical materials.

Respectfully submitted,

Date: 10/5/2026

Cathy Weaver

**Cathy Weaver,** Defendant, Pro Se