UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION D/B/A THE TELAH FOUNDATION,

Plaintiff,

v.

STEPHEN ROBERT HAVEL, CATHY JOANN WEAVER, AND JASON BARTEL

Defendants.

CAUSE NO. 3:22cv395 DRL-SJF

PLAINTIFF'S MOTION FOR JUDGMENT ON COUNTERCLAIMS AND FOR EQUITABLE RELIEF

Plaintiff, The Evolutionary Level Above Human Foundation d/b/a The TELAH Foundation ("TELAH"), by counsel, moves under Federal Rules of Civil Procedure 12(c) and/or Rule 54 for judgment on the pleadings as to Defendants' counterclaims and for immediate entry of a permanent injunction, impoundment, and attorneys' fees after the Court's August 26, 2026 Opinion and Order [DE 276]. In support, TELAH states as follows:

## I. BACKGROUND

1. On August 26, 2026, the Court granted TELAH partial summary judgment as to copyright ownership and Defendants' liability on Counts I, III, IV, and V of the Amended Complaint [DE 276].

2. The Court held, as a matter of law, that TELAH owns the intellectual property at issue. [DE 276 at 15 ("TELAH, as a matter of law and this record, thus owns this intellectual property."]. The Court found that TELAH's registrations established prima facie validity (*id.* at 11), the intellectual property passed through the California probate proceedings (*id.* at 13) and then to TELAH through the

court-approved settlement (*id.*), and prior possession or circulation of copies did not authorize Defendants to reproduce, upload, perform, or distribute the works. (*Id.* at 15.)

3. The Court also determined that Defendant Jason Bartel infringed TELAH's audio works by uploading and reuploading them for others to access or download (*id.* at 24); Defendant Stephen Havel infringed those works by playing and distributing them without authorization (*id.* 16-21); and Defendant Cathy Weaver infringed by participating in broadcasts and encouraging downloads (*id.*).

4. The Court further entered summary judgment against Ms. Weaver for infringement of TELAH's literary work, against Mr. Havel and Ms. Weaver for infringement of TELAH's visual work, and against Mr. Havel for contributory infringement arising from his assistance to Mr. Bartel's distribution campaign. *Id.*

5. The Court directed the parties to submit proposals concerning damages, other remedies, unresolved counts, and Defendants' counterclaims. *Id.* at 42.

6. TELAH timely proposed resolving the remaining issues without trial. Specifically, TELAH offered to forgo monetary damages at law and dismiss its remaining unadjudicated claims if the Court awards appropriate equitable relief. [DE 281]

7. TELAH requested a permanent injunction under 17 U.S.C. § 502, impoundment under 17 U.S.C. § 503, removal of Defendants' infringing uploads from third-party platforms, and reasonable attorneys' fees and costs under 17 U.S.C. § 505. *Id.*

8. Defendants thereafter sought reconsideration by repeating ownership, chain-of-title, registration, archive, authorization, and dissemination arguments that the Court had already considered and rejected. [DE 279, 284, 285]

9. Recent events now require prompt action.

10. Mr. Bartel, who uses the name "Crlody" online[1], has continued publishing posts directed at TELAH and its counsel, Isaac S. Crum. Those posts go beyond criticism of the litigation and target counsel personally.

11. On October 11, 2026, Mr. Bartel published a baseless post accusing Mr. Crum of dishonesty, fraud, unethical conduct, and receiving "illicit money." Exhibit B (Oct. 11 Post), at 1. The post identified Mr. Crum's law practice and discussed his professional information. *Id.* The post declared that "Isaac Crum at Crum IP" will "take your money and lie, lie, lie, for you" that he knows "every dirty trick in the book." *Id.* He also write that Isaac will "tak[e] illicit money for years . . . [and] will write a completely fraudulent lawsuit to cover up fraud in multiple previous court cases." *Id.* And, states that "Isaac has ZERO ethics and will do whatever his equally unethical shell corporate client wants him to do as long as the illicit money keeps flowing." *Id.* Concluding, that "[i]f you want a completely amoral individual representing your litigation shell . . . then look no further than the litigation shell that is Crum IP LLC, complete with none of that pesky professional liability insurance that bogs down the big firms." *Id.*

12. In another post, Mr. Bartel discussed Mr. Crum's telephone number, the alleged registration of that number, his office location, a former residence, and the home he shares with his wife. Ex. G (October 12, 2026 Post).

13. On October 17, 2026, in a post Mr. Bartel appears to have later taken down, Mr. Bartel published a post identifying Mr. Crum's wife, discussing the purchase and approximate value of their home, and asserting that the home was financed with "dirty money." Exhibit F (October 17, 2026 Post). He further stated that Mr. Crum and TELAH's directors had "messed with the wrong" person, that they "need[] to pay," and that they "will go down". *Id.*

---

[1] *See* DE 276 at 7 ("Mr. Bartel (who goes by the name 'Crlody' on his blog)").

14. Mr. Bartel has also used escalating, dehumanizing, and death-associated rhetoric concerning TELAH and its counsel. He stated that TELAH should be put "down for good," referred to a coming "day of reckoning," (Exhibit A at 2) called Mr. Crum a "waste[] of DNA," (Exhibit E at 1) expressed hatred for Mr. Crum and TELAH's directors "with every fiber" (*id.* at 1) of his being, and commented on a "dead look" in Mr. Crum's eyes and wondering if "lawyers have souls". Exhibit C at 1.

15. Indeed, in an October 13, 2026 post titled, "Crum IP LLC's real address," Mr. Bartel states, while commenting on a statutory agent address, "one could KILL two birds with one stone," with the "birds" being Plaintiff and Plaintiff's counsel:

> It's actually the address for Northwest Registered Agent but it's a physical address where legal documents can be served on the LLC. It's also the physical address for the statutory agent for The Evolutionary Level Above Human Foundation, Inc. so one could KILL two birds with one stone. If anything needs to be killed in this world it's Isaac's litigation shell LLC and the King's litigation shell nonprofit corporation. May they both die long, slow, painful deaths very soon.

Exhibit D at 1 (highlighting and underline added).

16. These statements must also be considered against Mr. Bartel's declaration that TELAH had celebrated its "last" birthday and had hired its "last" lawyer. Exhibit H at 1. Taken together, the posts reasonably convey escalating intimidation and language suggestive of death or violent harm directed toward TELAH, its directors, and undersigned counsel.

17. At the same time, Mr. Bartel has continued the infringement already adjudicated by this Court. First, on October 8, he encouraged his readers to go to an online archive containing the copyrighted materials. (Ex. A at 2.) Then, on October 15, 2026 (Exhibit E), he published a new link to a repository containing TELAH audio recordings and expressed his hope that the files would be available to everyone, despite the intervention of Plaintiff's "scumbag" lawyer:

> I'm hoping that this link to a Google drive with tapes 1-279 will be viewable by everyone
>
> Oct 15, 2026 Uncategorized
>
> https://drive.google.com/drive/folders/1CnpnWjkd5NsGWML-h6hhFRAW3r8f3gQ2
>
> Many of the tapes from 1-100 aren't on the Internet archive.
>
> The evil Mark and Sarah King had their scumbag lawyer Isaac S. Crum put dozens of DMCA takedown requests on the files I put up. Hopefully these three wastes of DNA will get thrown in prison where they won't be able to persecute anyone who wants to listen to Ti and Do. I truly hate these three pieces of garbage with every fiber of my being. Have a nice day.

Exhibit E.

18. That conduct materially confirms the need for immediate relief. The Court previously found Mr. Bartel liable for uploading, reuploading, and encouraging downloads of the same copyrighted works. [DE 276 at 16.] His October 15 post shows that the adjudicated conduct continues after the Court's liability ruling.

19. The Court has already found that Mr. Bartel's repetitive and vituperative filings were designed to harass TELAH, burdened counsel with unnecessary expense, and impeded the administration of this case. [DE 276 at 38-39; DE 193 at 12-13.] The new posts escalate that established pattern from attacks in court filings to publication of counsel's personal and family information, menacing rhetoric, and renewed infringement.

20. TELAH therefore cannot safely await an ordinary status conference while adjudicated infringement continues and the public targeting of counsel escalates. TELAH asks the Court to resolve Defendants' ownership-based counterclaims, award TELAH final equitable relief, and enter such interim relief as the Court determines necessary to protect Plaintiff and its counsel, and to preserve the effectiveness of its final judgment.

21. For these reasons, TELAH requests an order:

a. Entering judgment for TELAH on Defendants' Counterclaims challenging TELAH's ownership or the validity and enforceability of the rights resolved by the August 26, 2026 Order;

b. Enter a permanent injunction and impoundment orders related to all of TELAH's intellectual property in Defendants' possession;

c. Enter an order instructing third-party hosting sites to take down uploaded copies of TELAH's intellectual property;

d. Enter an order awarding TELAH its attorneys' fees and costs; and

e. Enter final judgment under Rule 58.

## II. <u>INTRODUCTION</u>

Defendants' infringement has been established. The Court has adjudicated TELAH's ownership and Defendants' liability on Counts I, III, IV, and V. It found that Mr. Bartel uploaded and reuploaded TELAH's audio works, encouraged others to download them, and failed to dispute that conduct with evidence. It likewise resolved Defendants' renewed ownership, authorization, and prior-dissemination arguments.

TELAH initially proposed an orderly, briefing-based process to conclude the case without a damages trial. It offered to waive monetary damages and dismiss the remaining unadjudicated claims in exchange for permanent injunctive relief, impoundment, third-party removal of infringing materials, and an award of fees and costs. [DE 281]

Events after that proposal require acceleration. Mr. Bartel has again distributed TELAH's copyrighted recordings. (*See* Exhibits A and E.) At the same time, he has published information concerning counsel's practice, telephone, residence, wife, and home while using increasingly menacing

and dehumanizing language. (*See* Exhibits A-H.) Immediate judicial management is now necessary to prevent the final-relief process from being overtaken by the very conduct that relief is intended to stop.

## III. <u>STATEMENT OF FACTS</u>

### A. <u>The Court Has Adjudicated Ownership and Liability.</u>

The Court held that TELAH owns the copyrighted works and rejected Defendants' challenges to TELAH's registrations, chain of title, corporate identity, and authority to enforce its rights. [DE 276 at 15.]

The Court entered summary judgment against all Defendants on Count I. *Id* at 17-18. It found that Mr. Bartel uploaded and reuploaded the audio works, that Mr. Havel publicly played identified recordings, and that Ms. Weaver participated in broadcasts and encouraged downloads. *Id.*

The Court also entered judgment on liability against Ms. Weaver on Count III (*id.* at 18-19), against Mr. Havel and Ms. Weaver on Count IV (*id.* at 21-22), and against Mr. Havel on Count V (*id*. at 24-25).

### B. <u>Defendants' Counterclaims Are No Longer Viable</u>

As an initial matter, given their pleading style, it is unclear what—if anything—the defendants are asserting by way of counterclaims in this matter. Nevertheless, Plaintiff attempts to summarize them below:

#### 1. *Ms. Weaver's Counterclaim*

It appears that Ms. Weaver has asserted a single counterclaim. [*See e.g.,* DE 268 at 62 ("Defendant Cathy Weaver asserts the following counterclaim…").] That counterclaim appears to be a request for "declaratory relief concerning the scope and enforceability of Plaintiff's asserted rights as they are applied to Defendant." *Id.*[2] Later on, she restates this demand for declaratory relief concerning "the scope,

[2] Ms. Weaver also purports to seek a "a declaration concerning whether' and to what extent the publicly displayed reproduction notice, other authorization communicated by the Group, implied license, fair

ownership, validity, and enforceability of Plaintiff's asserted copyright and trademark rights as applied to Defendant's conduct." *Id.* at 63-64. The Court has already resolved this counterclaim. This requested relief has already been directly resolved by the Court in its Summary Judgment Order, wherein the Court ruled on the ownership, validity, enforceability of the intellectual property at issue in this case. [DE 276.] In addition to that requested relief, the only other relief Ms. Weaver mentions is a vague request to cancel Plaintiff's trademarks. Ms. Weaver's pleading, however, has failed to state any claim or viable basis for trademark cancellation. [DE 268 at 63.]

2. *Mr. Bartel's Counterclaims*

Mr. Bartel's pleading and counterclaims are no less convoluted. [*See* DE 150 at 62-72.] Mr. Bartel's counterclaims first argue that Plaintiff is "not a legal entity." *Id.* at 62-64. This claim was resolved by the Court in its Summary Judgment Order and in its earlier Order. [DE 276 at 14-15; DE 193.] Mr. Bartel's counterclaims also appear to argue that Plaintiff is not the owner of the intellectual property at issue in this case. [DE 150 at 65-68.] Again, this matter was already resolved by the Court in its Summary Judgment Order. [DE 276 at 10-15.] Mr. Bartel then argues that the Visual Work's copyright registration and the copyright registrations for the Audio Works should be canceled because they have never been sold or "use[d] in commerce." [DE 150 at 68-69.] In support, Mr. Bartel cites to the Lanham Act. The Lanham Act (15 U.S.C. § 1051 *et seq*.), however, applies to **Trademarks** and not to copyrights. The "use in commerce" requirement for trademarks does not apply to copyrights registered under the Copyright Act. Indeed, to the contrary, the Copyright Act clearly allows for the registration of entirely

---

use, or other defenses limit Plaintiff's ability to impose liability or enhanced remedies against Defendant for the conduct alleged in Count III." This is not a counterclaim, but instead an affirmative defense which was argued, and which the Court ruled against Ms. Weaver on in the Summary Judgment Order. [*See* DE 276 at 18-19 ("Construed generously, this is both a public domain and fair use argument. First, the public domain argument fails . . . . Second, Ms. Weaver hasn't carried her burden on fair use. Fair use is an affirmative defense to copyright infringement. . .").] In addition, setting aside any implied license to reproduce the book, there is no evidence that *anyone* authorized Ms. Weaver to create the derivative audio versions which Count III addresses.

"unpublished works." *See* 17 U.S.C. § 101 (describing what constitutes a "United States work" "in the case of an unpublished work.").

Mr. Bartel goes on to request invalidity, enforceability, "and if applicable, cancellation" of the asserted trademark and copyright registration and requests a declaration that this case was "a frivolous lawsuit with malicious intent that is wholly without merit." *Id.* at 70. These issues have likewise been resolved on summary judgment. With the Court finding that Plaintiff owns the intellectual property and, rather than a frivolous filing, Plaintiff was entitled to summary judgment on most of its claims.

### 3. *Mr. Havel's Counterclaims*

Mr. Havel's counterclaims are likewise difficult to follow. His first counterclaim appears to be a request for a declaratory judgment that "Counter Defendants Illegally Copyrighted Do and the Class' Beyond Human – The Last Call Video Tape Series (7 Tapes) and Four Other Video Tapes." [DE 153-1 at 128.] The basis behind this claim is that "there is no evidence of any writing which explicitly conveyed or transferred ownership of all this intellectual property to [Plaintiff]." This Counterclaim fails to cite any provision of law whereby the Court can hold that a copyright was "illegally" obtained. Furthermore, this Court has already ruled to the contrary in its Summary Judgment Order—Plaintiff does own the copyrights at for works created by the Group. [DE 276 at 15.]

The same is true for Mr. Havel's 2nd[3], 3rd[4], 5th[5], and 6th[6] counterclaims which all fail to cite any provision of law whereby the Court can hold that a copyright or trademark was "illegally" obtained. Furthermore, they are foreclosed and resolved by this Court's Summary Judgment Order wherein this

[3] "Count II – Counter Defendants Illegally Copyrighted Do and The Class 486 Audio Cassette Tapes." [DE 153-1 at 132.]

[4] "Count III – Counter Defendants Erroneously Claim the Copyright of Audio Tape Numbers 487 to 1082 When Only the Creators Have the Copyright." [DE 153-1 at 137]

[5] "Count V – Intentionally and Illegally Copyrighting Do and the Class' . . . Acrylic Painting. . ." [DE 153-1 at 145.]

[6] Count VI – Counter Defendants Intentionally Illegally Registered Trademarks on Do and the Classes Intellectual Property. . ." [DE 153-1 at 148.]

Court has already held that Plaintiffs are the owners of the Class's intellectual property and had, *inter alia*, valid copyrights in the audio tapes. [DE 276 at 15.]

Mr. Havel's 4th[7] and 9th[8] Counterclaims must be dismissed for failing to state claims for which relief can be granted as they are directed against non-parties Mark and Sarah King.

In addition, Mr. Havel's 7th[9], 8th[10], and 10th[11] all allege impropriety by Plaintiff asserting its ownership of the intellectual property in other courts. As an initial matter, Mr. Havel likely has no standing to raise these claims and, furthermore, to the extent anything was improper in Plaintiff's filings in other cases, Mr. Havel's claims would have to be raised in those other courts. Nevertheless, this Court, in its Summary Judgment Order, has agreed with those other courts that Plaintiff is the owner of the intellectual property at issue and, as a result, these counterclaims must be dismissed. Likewise, Mr. Havel's 11th[12] Counterclaim (alleging violation of a Consent Decree), to the extent he has standing to raise it, is properly raised before the Court that entered the consent decree. Not in this matter.

C. Mr. Bartel Has Continued the Adjudicated Infringement and Escalated His Targeting of Counsel.

On October 15, 2026, Mr. Bartel published a link to a digital repository containing recordings numbered 1 through 279 and stated that he hoped the link would be viewable by everyone. Exhibit E.

---

[7] "Count IV-Mark and Sarah King Went Directly Against Do's Will When They Changed the Common Law Copyright . . Into A TELAH Foundation Copyright." [DE 153-1 at 143.]

8 "Count IX – Mark and Sarah King are Infringing on Havel's 'Work for Hire' Copyright of All of the Heaven's Gate Intellectual Property." [DE 153-1 at 152.]

9 "Count VII – Counter Defendants Intentionally Misled Now Three Courts by Claiming to Own and Have the Copyrights For All . . . The Classes Intellectual Property. . . " [DE 153-1 at 148.]

[10] "Count VIII Filing Two Claims in Two Different California Courts In the Same Time Period To Acquire Much the Same Body of Information And Not Informing Both Courts . . ." [DE 153-1 at 151.]

[11] "Count X Claiming in Three Courts that Do's Heaven's Gate Group 'Transferred' to the Telah Foundation All Rights to Their Intellectual Property. . ." [DE 153-1 at 154.]

[12] "Count XI – Denying Judge Breyer's Consent Decree Order to Disseminate RKKody's CD'S [sic] Containing Over 200 Digitized; Audio Tapes . . ." ." [DE 153-1 at 156.]

This is the same kind of uploading, reuploading, and encouragement of downloads for which the Court has already found him liable. [DE 276 at 17-18.]

Mr. Bartel has also published counsel's professional and personal information. (Exhibits C-F.) His posts discuss Mr. Crum's telephone number and its alleged registration, his office location, his former residence, his wife, and the purchase and approximate value of their home. (Exhibits C-F.)

The rhetoric accompanying those disclosures has escalated. Mr. Bartel stated that Mr. Crum and TELAH's directors "messed with the wrong" person, "need[] to pay," and "will go down". He has called for TELAH to be put "down for good," announced a coming "day of reckoning," described counsel and TELAH's directors as "wastes of DNA," and expressed hatred for them "with every fiber" of his being. *Id.* Those posts follow an earlier statement that TELAH had celebrated its "last" birthday and hired its "last" lawyer. (Exhibit H.) The pattern now combines renewed infringement, disclosure of counsel's personal and family information, and language reasonably understood as suggesting death or violent harm.

## IV. <u>LEGAL STANDARD</u>

Rule 12(c) permits a party to seek judgment on the pleadings after the complaint and answer have been filed. *Brunt v. Seiu*, 284 F.3d 715, 718-719 (7th Cir. 2002). A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved. *Id.* (citing *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). In ruling on a 12(c) Motion, the Seventh Circuit has stated that the Court may take judicial notice of the following without converting a motion to dismiss to a summary judgment notion: "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *General Elec. Capital Corp.*, 128 F.3d at 1080 to 128 F.3d 1074, 1081 (7th Cir. 1997) (citing 5A Wright & Miller, *Fed. Prac.*

*& Proc.* § 1357, at 299 (2d ed. 1990)). In order to dismiss the counterclaims, Plaintiff asks the Court to, if necessary, take judicial notice of its previous Summary Judgment Order.

If the Court concludes that Rule 12(c) does not provide the appropriate procedural mechanism for any portion of the requested relief, TELAH asks the Court to adjudicate this motion according to its substance under Rule 54, or any other rule the Court deems proper. Rule 54 provides that a nonfinal order adjudicating fewer than all claims or parties may be revised before entry of a judgment resolving all claims and rights, and that a final judgment should grant the relief to which a party is entitled. Fed. R. Civ. P. 54. The Copyright Act authorizes temporary and final injunctions on reasonable terms to prevent or restrain infringement.17 USC § 502. The Copyright Act also authorizes impoundment, while an infringement action remains pending, of infringing copies, materials used to reproduce them, and qualifying records documenting their manufacture, sale, or receipt.17 USC § 503. And, the Copyright Act authorizes the award of attorneys' fees. 17 USC § 505.

## V. ARGUMENT

### A. Judgment Should Be Entered Against Defendants on Their Counterclaims, Which Dispute Ownership.

Defendants' counterclaims (outlined above) challenge TELAH's ownership and seek declarations that its copyright and trademark registrations are invalid, unenforceable, or subject to cancellation. The Court's August 26 Order resolved the predicate ownership issues as a matter of law. The Court held that TELAH's registrations established prima facie validity; Defendants identified no registration inaccuracy that undermined ownership; the intellectual property passed to TELAH through the California probate proceedings and court-approved settlement; and the use of an assumed name did not defeat TELAH's ownership. Defendants' counterclaims cannot produce a contrary judgment on those same ownership issues. No trial is needed to decide whether TELAH owns the rights that the Court has already determined it owns. Judgment should therefore be entered for TELAH on the ownership-based counterclaims.

B. The Court Should Proceed Immediately to Final Equitable Relief.

TELAH's proposal narrows the remaining proceedings. TELAH will waive monetary damages and dismiss the remaining unadjudicated claims upon entry of appropriate equitable relief. The remaining matters can therefore be decided through expedited submissions concerning the form and scope of the injunction, impoundment and removal provisions, and TELAH's attorneys' fee application.

Federal Rule of Civil Procedure 16 authorizes proceedings designed to expedite disposition and prevent delay. Fed. R. Civ. P. 16. Rule 54 permits the Court to complete the adjudication of the parties' rights and enter the relief to which TELAH is entitled. Fed. R. Civ. P. 54**. The need for expedited treatment is concrete. Mr. Bartel has published a new repository of TELAH's recordings after the Court held him liable for uploading and reuploading those works.** Exhibit E. Waiting through an ordinary status process would permit the adjudicated infringement to continue and spread while the parties and Court debate scheduling.

C. The Record Supports Prompt Injunctive Relief and Impoundment.

The Copyright Act authorizes an injunction to prevent or restrain infringement. 17 USCS § 502. It also authorizes impoundment during the pendency of the action. 17 USCS § 503. The current record supports immediate consideration of that relief. First, Mr. Bartel has resumed the same distribution conduct adjudicated in the August 26 Order by posting a new link to hundreds of TELAH's recordings. Exhibit E. Second, monetary relief clearly would not stop the Defendants' from continuing their unauthorized distribution. They have said as much. [DE 276 at 5 (citing 246-5, ¶¶ 13-15); *see also* DE 246 at 13, ¶¶ 55-58.] And, done as much. *See* Exhibit E. TELAH has offered to waive monetary damages, in favor of equitable relief. Third, an order requiring Defendants to stop infringing imposes no legitimate hardship arising from authorized conduct because the Court has already determined that the relevant reproduction and distribution were unauthorized. Fourth, the requested relief is directed to preventing further infringement and preserving the Court's ability to enter an effective final judgment.

Such relief is authorized by the Copyright Act. Indeed, pursuant to the Copyright Act, the Court may grant injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In this case "monetary damages are insufficient to compensate" TELAH because "monetary damages will not prohibit future infringement." *Bell v. Turner*, No. 1:15-cv-00931-TWP-DKL, 2016 U.S. Dist. LEXIS 43868, at *9 (S.D. Ind. Mar. 31, 2016). Whereas, the only hardship the Defendants "will suffer from the imposition of an injunction is the inability to engage in unlawful activity through unauthorized use of" Plaintiff's intellectual property. *Id.* "An injunction will serve the public interest by protecting copyrighted material and encouraging compliance with federal law." *Id.* Further, the Court should also order impoundment. *See* 17 U.S.C. § 503(b) ("[a]s part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights"). Impoundment is necessary because the Defendants have stated and shown that they will continue to infringe so long as they have the copyrighted materials in their possession.

TELAH accordingly requests an expedited schedule for proposed permanent-injunction and impoundment orders and, pending final adjudication, an immediate directive that Defendants cease further uploading, reuploading, distribution, or facilitation of access to TELAH's works.

D. <u>The Record Supports an Award of Attorneys' Fees.</u>

The Copyright Act allows that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. District courts consider the four non-exhaustive *Fogerty* factors when evaluating such requests: "(1) the frivolousness of the suit; (2) the losing party's motivation for bringing or defending against a suit; (3) the objective unreasonableness of the claims advanced by the losing party; and (4) the need to advance considerations of compensation and deterrence." *Richardson v. Kharbouch*, 156 F.4th 849, 859-60 (7th Cir. 2025) (citing *Live Face on Web*, 77 F.4th at 631 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Indeed, "there is a strong

presumption in favor of granting fees in copyright infringement cases." *Id.* citing *Live Face*, 77 F.4th at 632 ("[P]revailing defendants in copyright cases are presumptively entitled (and strongly so) to recover attorney fees." (quoting *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005))). The same strong presumption true for prevailing plaintiffs. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) ("Thus we reject [] the 'dual standard' adopted by several of the Courts of Appeals . . . Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.").

As shown in the Summary Judgment Order: (1) this case was not frivolous and, indeed, was resolved on summary judgment, (2) the losing party's (Defendants') basis for defending the suit boiled down to a desire to re-litigate the California Probate court's decision from 25 years ago, (3) as such, all of Defendants' arguments were unreasonable—and in many cases bordered on incomprehensible, and (4) the Defendants have stated that if left to their own devices they would (and are) continue to infringe. Meanwhile, Plaintiff's non-profit has been forced to spend over $100,000 to prosecute this case—money that was taken from the non-profit executives' own savings and retirement accounts. These facts all support applying the strong presumption and awarding attorneys' fees.

E. <u>The Recent Posts Establish Why TELAH Cannot Await a Routine Status Conference.</u>

TELAH does not offer the recent posts to relitigate liability. The Court has already adjudicated liability. The posts establish urgency and demonstrate that the conduct requiring final relief continues. Mr. Bartel's October 15 post provides a new distribution link and expressly seeks broad public access to TELAH's recordings. His other posts identify counsel's wife, home purchase, home value, telephone information, office location, and former residence. They pair those disclosures with statements that counsel and TELAH's directors "need[] to pay," "will go down," should be put "down for good," and face a "day of reckoning".

This escalation follows the Court's finding that Mr. Bartel's conduct had already crossed into harassment and burdened both TELAH and the orderly administration of the case. [DE 276 at 41.] It also follows his earlier statement that TELAH had celebrated its "last" birthday and hired its "last" lawyer. Exhibit H. TELAH therefore was compelled to seek immediate Court action rather than await an unscheduled status conference. At minimum, the Court should establish an expedited schedule, direct preservation of relevant materials, and prohibit further dissemination of TELAH's copyrighted works while the Court determines final relief.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, TELAH respectfully requests that the Court:

1. For these reasons, TELAH requests an order:
    a. Entering judgment for TELAH on Defendants' Counterclaims challenging TELAH's ownership or the validity and enforceability of the rights resolved by the August 26, 2026 Order;
    b. Enter a permanent injunction and impoundment orders related to all of TELAH's intellectual property in Defendants' possession;
    c. Enter an order instructing third-party hosting sites to take down uploaded copies of TELAH's intellectual property;
    d. Enter an order awarding TELAH its attorneys' fees and costs; and
    e. Enter final judgment under Rule 58.

Respectfully submitted this 2nd day of November 2026,

/s/ Isaac S. Crum
Isaac S. Crum
Crum IP, LLC
111 E. Dunlap Ave.
Ste. 1-258

Phoenix, AZ 85020
isaac@crumip.com
(602) 888-3383

*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the parties listed below. A copy of this filing was also sent via U.S. mail and email.

Cathy Weaver
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

Jason Bartel
N4019 Forest Drive
Hancock, WI 54943
jason_bartel@unioncab.com

Stephen Robert Havel
5776 Grape Road, Ste 51
PMB #121
Mishawaka, IN 46545
sawcat575@gmail.com

*/s/ Isaac S. Crum*