Weaver Response

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

-FILED-
NOV 16 2026
At ___ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION
d/b/a THE TELAH FOUNDATION,

Plaintiff,

v.

STEPHEN HAVEL;
CATHY WEAVER; and
JASON BARTEL,

Defendants.

CAUSE NO. 3:22-cv-00395-DRL-SJF

**WEAVER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON COUNTERCLAIMS AND FOR EQUITABLE RELIEF [DE 297]**

Weaver, appearing pro se, responds to Plaintiff's Motion for Judgment on Counterclaims and for Equitable Relief [DE 297]. Weaver respectfully asks the Court to deny the motion to the extent it seeks judgment on her entire counterclaim, a blanket permanent injunction, blanket impoundment, third-party takedown relief, attorney's fees, and final judgment. Alternatively, Weaver requests that any dismissal be limited to the particular relief actually foreclosed by prior rulings, without extinguishing her remaining defenses or remedy-related issues, and that she be given leave to amend any portion of her counterclaim the Court finds insufficiently pleaded.

**I. INTRODUCTION** - Dkt. 297 treats Weaver's counterclaim as though the August 26, 2026 Opinion and Order [DE 276] had already adjudicated every issue she raised. That is too broad.

DE 276 granted partial summary judgment on specified copyright claims. It did not enter final judgment on all claims, remedies, and counterclaims. The Court's conclusion specifically

directed further proceedings concerning the counterclaims of Havel and Bartel and ordered Weaver to answer the First Amended Complaint by September 16, 2026. Weaver's counterclaim is contained in her later answer and is limited to her own individual rights and the scope of Plaintiff's asserted rights as applied to her conduct.

Weaver recognizes that DE 276 decided important ownership issues concerning the registered copyrights. She does not ask the Court to disregard that order. She has separately filed a motion under Rule 54(b) seeking reconsideration and clarification of the portions affecting her on Counts I, III, and IV. The Court should consider that pending motion before entering a broader judgment that treats every ownership-related or remedy-related question as finally resolved.

Dkt. 297 also relies heavily on allegations about Mr. Bartel's October 2026 blog posts, personal-information disclosures, and repository link. Weaver did not author those posts, publish the information about Plaintiff's counsel, or post the repository link. Those allegations cannot be attributed to Weaver.

Finally, the motion seeks an injunction and impoundment concerning all TELAH intellectual property in defendants' possession. That request is substantially broader than the specific conduct and works adjudicated against Weaver. The Copyright Act and Rule 65 require a reasoned, particularized order, not a blanket seizure or prohibition.

## II. RELEVANT PROCEDURAL BACKGROUND

1. On August 26, 2026, the Court granted TELAH partial summary judgment on copyright ownership and liability on Counts I, III, IV, and V of the First Amended Complaint. [DE 276.]

2. The Court's conclusion directed the parties to address damages and other remedies, unresolved claims, and the counterclaims of Havel and Bartel. The Court separately ordered Weaver to answer the First Amended Complaint by September 16, 2026. [DE 276 at 64–65.]

3. Weaver thereafter filed her Answer, Affirmative Defenses, and Counterclaim. Her counterclaim expressly states that she asserts it in her individual capacity and does not purport to assert any claim belonging personally to Havel or another person. [DE 286 at 62–64.]

4. Weaver's counterclaim seeks declaratory relief concerning the scope, ownership, validity, and enforceability of Plaintiff's asserted rights as applied to Weaver. It also raises the Book's reproduction notice and other authorization issues, requests relevant records to the extent discoverable, and seeks trademark relief only to the extent authorized by the Lanham Act. [DE 286 at 63–64.]

5. Weaver filed a separate Rule 54(b) motion seeking reconsideration and clarification of the August 26 order as it applies to her on Counts I, III, and IV. That motion addresses the identification of the particular audio recordings, the Book's reproduction notice and authorization history, and the C.B.E. image's provenance and Plaintiff's prior knowledge. [DE 285]

6. Dkt. 297 characterizes Weaver's counterclaim as a single request for declaratory relief and asserts that DE 276 already resolved it. [DE 297 at 7–8.] It also characterizes the trademark-cancellation request as vague. Id.

7. Dkt. 297 relies on October 2026 posts attributed to Bartel. [DE 297 at 3–5, 10–11, 15–16.] It does not allege that Weaver authored those posts or engaged in the conduct described in them.

8. Dtk. 297 at 3 suggests Weaver "infringed by participating in broadcasts and encouraging downloads" but the facts are that Weaver had been watching Havel on his Youtube 3spm livestreams for about 2 years while he had been playing audios and showing many images to include the CBE Image and there was no talk from the Kings that there was anything illegal about doing that. Weaver was keenly aware that Havel had been arguing for years with the Kings and Bartel because they were withholding audio tapes from them and the public. Weaver actually was in communication with the Kings via email and she received several links to several audios that would expire. Weaver was frustrated that the expiration would occur before she had a chance to listen to them or she would have to change her cell phone and would lose the link and would have to re-ask for that same audio again. Weaver was also watching the Beyond Human video series on a Youtube channel called Heavensgatedatabase. And Weaver was reading the Heaven's Gate Book off the Heavensgate.com website the Kings were webmasters of. Weaver was also aware that Bartel, aka Crlody had been verbally arguing with Sawyer (Havel) on a variety of subjects. One time Weaver came into Sawyer's 3spm livestream chat when Mark King was also in the chat and she tried to get Havel and King to agree on releasing the audio tapes. Mark King said that Havel and Bartel would have to cease talking badly about them online and would need to agree not to put the audios on the internet. Weaver at the time didn't know there were copyrights on some of the audios. Weaver knew Havel possessed audio tapes. Mark King said at that time that he and Sarah had determined they would release the audio tapes to the public in some way by the 25th anniversary of the Groups decease in 1997. Havel had been talking about how one could download the Books content off the Heavensgate.com website because the Group who constructed the website wanted anyone to have free access to the Book so provided a link to download it as a zip file that would open up to the files that make up the

pages of the Book. At that time prior to 2021 there was no talk of copyrighted material and Weaver learned from Havel that he had been operating that way for well over a decade.

When Weaver met Havel in 2021 it was learned that Havel had received hundreds of audio tapes from Francisco Falcon, aka Jhnody who received them from the Kings. Havel by then had only digitized audio tapes Rkkody sent him in 1997, which was about 200 but now he had over 900. The Kings were furious with Falcon. They gave those 900+ audio files to Falcon for storage outside the U.S. but he started listening to them and noticed that TI and DO hoped people would have a chance to listen to the audios so Falcon couldn't understand leaving them in a closet. When the Kings learned that Havel had the audios they demanded them be returned to them. But Havel despite his arguing for years gave them to Bartel knowing for years that he wanted them as well, not for profit but to listen to and give to others to listen to if they wanted.

Weaver wanted to help Havel and the Kings and Bartel work together so she convinced Havel to try and Weaver continued to email the Kings to set up a meeting to hash things out in person. As it turned out Weaver and Havel got to Phoenix and met with the Kings in their old lawyers office and were served with a Cease and Desist letter that stated:

## III. GOVERNING LEGAL STANDARDS

**A. Rule 12(c) requires a plausible legal claim and does not permit resolution of disputed facts -** Rule 12(c) permits judgment on the pleadings after the pleadings are closed. The Seventh Circuit applies the same plausibility standard used under Rule 12(b)(6). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in favor of the nonmoving

party. *Citizens Insurance Co. of America v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 994 (7th Cir. 2023).

In *Wolf v. Riverport Insurance Co.*, No. 24-2010, slip op. at 4–5 (7th Cir. Mar. 20, 2025), the Seventh Circuit clarified that the older "beyond a doubt" and "no set of facts" formulations are no longer the governing Rule 12(c) standard after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Dkt. 297 relies on the older formulation from *Brunt v. SEIU*, 284 F.3d 715, 718–19 (7th Cir. 2002). [DE 297 at 11.] The Court should apply the clarified standard in *Wolf* and *Wynndalco*.

A Rule 12(c) motion is not a vehicle for resolving disputed evidence or deciding matters outside the pleadings. If the Court considers matters outside the pleadings and does not exclude them, Rule 12(d) requires conversion to a Rule 56 motion and a reasonable opportunity for the parties to present pertinent material.

**B. Rule 54(b) permits revision of an interlocutory order before final judgment -** Rule 54(b) provides that an order adjudicating fewer than all claims or the rights and liabilities of fewer than all parties may be revised at any time before entry of a judgment resolving all claims and all parties' rights and liabilities.

DE 276 was a partial summary-judgment order. The Court expressly contemplated further proceedings concerning remedies and remaining claims. Weaver's pending Rule 54(b) motion asks the Court to reconsider or clarify specified portions of that interlocutory order.

Rule 54(b) should not be used as a substitute for the legal standards governing judgment on the pleadings or summary judgment. The Court should resolve Weaver's pending reconsideration motion before entering a broader judgment on issues that overlap with it.

**C. A permanent injunction requires the traditional equitable findings -** Under 17 U.S.C. § 502(a), a court may grant an injunction on reasonable terms to prevent or restrain copyright infringement. An injunction does not automatically follow from a finding of infringement.

A plaintiff seeking a permanent injunction must demonstrate irreparable injury, inadequacy of remedies at law, a balance of hardships favoring equitable relief, and consistency with the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006).

The Seventh Circuit has held that there is no presumption of irreparable harm merely because copyright infringement has been shown. *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012).

**D. Impoundment must be tied to the articles identified by the statute -** Section 503(a) identifies categories of articles that may be impounded, including copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights and articles used to reproduce them. Section 503(b) addresses disposition of copies or phonorecords found to have been made or used in violation of those rights. 17 U.S.C. § 503(a)–(b).

Rule 65(d)(1) also requires an injunction to state its terms specifically and describe in reasonable detail the acts restrained or required.

**E. Attorney's fees under § 505 remain discretionary** - Section 505 provides that a court may award a reasonable attorney's fee to a prevailing party. 17 U.S.C. § 505. The Court considers the nonexclusive factors identified in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), including frivolousness, motivation, objective unreasonableness, compensation, and deterrence.

The Seventh Circuit requires a fact-specific, case-by-case assessment. *Richardson v. Kharbouch*, 156 F.4th 849, 859–60 (7th Cir. 2025). A merits ruling does not automatically establish that every defense advanced by a defendant was frivolous or objectively unreasonable.

## IV. ARGUMENT

**A. DE 276 did not enter a final judgment on Weaver's later-filed counterclaim.** Dkt. 297 asserts that the Court already resolved Weaver's counterclaim through DE 276. But DE 276's conclusion expressly directed further proceedings concerning Havel's and Bartel's counterclaims and separately ordered Weaver to answer the First Amended Complaint by September 16, 2026. [DE 276 at 64–65.]

Weaver's counterclaim is contained in her answer filed pursuant to that order. The Court should not treat the counterclaim as though it had been separately adjudicated before it was presented in that pleading.

Weaver recognizes that DE 276 decided copyright ownership issues that overlap with parts of her requested declaratory relief. But the Court should identify precisely which issues were decided and which requests remain, rather than enter judgment on the entire counterclaim without addressing its actual language.

Weaver's pending Rule 54(b) motion seeks reconsideration or clarification of the ownership and liability determinations as applied to her on Counts I, III, and IV. The Court should resolve that motion first, or defer the overlapping portions of the counterclaim until it does so.

**B. Weaver's counterclaim seeks relief concerning the scope of rights as applied to her, not relief on behalf of Havel or other persons -** Weaver's counterclaim expressly states that she asserts it in her individual capacity. It does not purport to represent Havel, Bartel, or any other person. [DE 286 at 63.]

The counterclaim seeks a declaration concerning the scope and enforceability of Plaintiff's asserted rights as applied to Weaver's own conduct. It also seeks clarification concerning the Book's reproduction notice, other authorization communicated by the Group, implied license, fair use, and the effect of those matters on liability and remedies.

Weaver recognizes that some of these matters overlap with affirmative defenses and with issues addressed in DE 276. She does not ask the Court to decide the same ownership question twice. But the Court should distinguish the ownership determinations from the separate questions concerning the application of those rights to Weaver's conduct and the remedies available against her.

If the Court concludes that a particular declaratory request is duplicative of an affirmative defense or has already been resolved, Weaver asks that the Court limit its ruling to that particular request and expressly preserve any defenses and remedy-related issues not finally adjudicated.

**C. The Book reproduction notice, limited audiobook readings, and authorization issues overlap with Weaver's pending Rule 54(b) motion.**

Weaver's counterclaim and affirmative defenses raise issues concerning the Book's publicly displayed reproduction notice, other authorization communicated by the Group, implied license, and fair use. These matters bear on the scope of Plaintiff's asserted rights as applied to Weaver's conduct, her understanding at the time, and the remedies Plaintiff now seeks.

Weaver acknowledges that DE 276 rejected her public-domain and fair-use arguments as presented in the summary-judgment record. [DE 276 at 18–19.] Her pending Rule 54(b) motion asks the Court to reconsider or clarify that ruling in light of the specific reproduction notice, the version of the Book used, the noncommercial nature of the readings, and Weaver's understanding of the permission stated on the Heaven's Gate website.

The actual reproduction notice printed in the Book and still displayed on the Heaven's Gate website states:

**"Common Law Copyright**

**1996 by Heaven's Representatives**

**This book is protected by Common Law copyright. Permission is hereby granted to reproduce this book, or portions thereof, as long as the content is unchanged, i.e., nothing added to it or taken away from it as long as it is for non-commercial purposes.**

**No part of this publication may be reproduced or transmitted in any form or by any means, now known or to be invented or adapted, for the purpose of financial gain or profit."**

Weaver relies on the actual language of this notice. It expressly grants permission to reproduce the Book or portions of it, provided the content remains unchanged and the reproduction is noncommercial. The notice does not expressly limit permission to written copies. Its reference to reproduction or transmission "in any form or by any means" is relevant to Weaver's understanding that noncommercial audio readings were permitted.

The readings involved a limited portion of the Book. Weaver read approximately 10% of the Book aloud. Havel separately read approximately another 10%. They took turns reading portions aloud, so the combined amount read by both defendants was approximately 20%. The entire 20% should not be attributed to Weaver when evaluating her individual conduct. Weaver's own reading was approximately 10%.

The readings were intended to make the Book's material available in audio form to people who preferred listening rather than reading. According to Weaver's understanding, only seven people viewed the readings. Neither Weaver nor Havel sold the recordings or received revenue from them. The readings were not undertaken as a commercial audiobook business or for financial gain.

Weaver also stopped recording when this lawsuit was filed. She did not continue making recordings or retain them for continued use after the lawsuit began. This cessation is relevant to the limited nature of her conduct, her understanding of the website notice, whether there is a present likelihood of future infringement, and the necessity and scope of any requested injunction or impoundment.

Weaver contends that she reasonably understood her readings to fall within the permission stated in the Book itself: she read only a portion of the Book, did not alter its content, did not sell the recordings, received no financial benefit, and stopped recording when this litigation began. The Court should consider this express-permission or license issue separately from fair use. If the notice constituted authorization applicable to the readings, that authorization is independently relevant to whether Weaver's conduct was infringing.

Alternatively, the limited amount Weaver personally read, the very small audience, the absence of sales or revenue, the noncommercial listening purpose, the reproduction notice, and the cessation of recording are circumstances relevant to the statutory fair-use analysis under 17 U.S.C. § 107. Those circumstances bear on the purpose and character of the use, the amount used, and the effect on the potential market. Weaver does not contend that noncommercial purpose alone establishes fair use. She asks that her actual conduct and all relevant circumstances be considered together.

These circumstances are also relevant to Weaver's state of mind, willfulness, and the remedies Plaintiff seeks. The Court should distinguish Weaver's individual conduct from Havel's separate reading and should not treat a limited, noncommercial activity that ceased when litigation began as though it were an ongoing commercial audiobook operation.

Weaver does not contend that the reproduction notice automatically resolves every copyright issue in her favor. She asks the Court to consider the notice's actual language, its availability on the website, the limited readings, and her understanding of the permission when deciding the pending Rule 54(b) motion and any remaining issues concerning remedies. At minimum, the Court should clarify that the ownership determinations in DE 276 do not themselves resolve

every separate question concerning authorization, Weaver's state of mind, or the appropriate scope of equitable relief.

**D. The trademark-cancellation request was not adjudicated by the partial summary-judgment ruling and should not be dismissed with prejudice on the present record -**

Weaver's counterclaim does not ask the Court to use trademark law to cancel copyright registrations. It asks for relief concerning an asserted trademark registration only to the extent the Lanham Act authorizes it. [DE 286 at 64.]

The Lanham Act provides procedures for cancellation of a registered mark and authorizes a district court, in an action involving a registered mark, to order cancellation or otherwise rectify the register. 15 U.S.C. §§ 1064, 1119.

DE 276 granted summary judgment on specified copyright claims. It did not grant summary judgment on TELAH's separate federal trademark-infringement claim, Count VII. [DE 276 at 64.] The Court should therefore not assume that every issue concerning the asserted trademarks was adjudicated by the August 26 order.

Weaver recognizes that the present counterclaim does not identify each asserted trademark registration, the specific goods or services, and the particular facts supporting cancellation with the detail that may be required. The statement that a mark was not sold is not, standing alone, sufficient to establish abandonment. The relevant statutory inquiry includes whether the mark was discontinued with intent not to resume use, and the statute provides a presumption after three consecutive years of nonuse. 15 U.S.C. § 1127.

If the Court finds the trademark portion insufficiently pleaded, Weaver requests leave to amend under Rule 15(a)(2) to identify the specific registration or registrations, the goods or services at issue, and the factual grounds for any requested relief. Any dismissal should be without prejudice and should not be treated as a merits finding that the registrations are valid in all respects.

**E. The request for production of historical records is not an independent basis for judgment on the counterclaim** - Paragraph 5 of Weaver's counterclaim identifies FedEx packages, faxes, emails, and telephone records concerning the disposition and dissemination of Group materials. Weaver believes such records may bear on provenance, authorization, Plaintiff's knowledge, and the scope of the rights asserted.

Weaver recognizes that a counterclaim is not a substitute for a discovery request and does not independently entitle her to production of documents. She does not ask the Court to order production merely because paragraph 5 appears in the counterclaim.

Instead, Weaver asks the Court to recognize that the historical subject matter identified there is relevant to the issues raised in her pending Rule 54(b) motion and to any remaining remedy proceedings, to the extent the evidence is properly before the Court and may be considered under the applicable rules and prior discovery orders.

The Court should not convert the fact that paragraph 5 is not an independent cause of action into a merits determination that the historical facts concerning authorization, provenance, and Plaintiff's knowledge are irrelevant.

**F. Bartel's October 2026 posts do not establish a basis for a blanket injunction against Weaver** - Dkt. 297 relies on Bartel's October 2026 posts, including his alleged publication of

personal information concerning Plaintiff's counsel, hostile statements, and a repository link. [DE 297 at 3–5, 10–11, 15–16.]

Weaver did not author those posts, publish the personal information, or post the repository link. She does not defend or adopt those statements. The allegations concerning Bartel cannot automatically be attributed to Weaver merely because they are co-defendants.

Weaver acknowledges that DE 276 found liability against her on specified copyright claims. That finding is relevant to the equitable analysis. It does not eliminate the requirement that TELAH establish irreparable injury, inadequacy of legal remedies, a favorable balance of hardships, and consistency with the public interest as to Weaver.

The Court should require TELAH to identify evidence of Weaver's own conduct that establishes a present likelihood of future infringement. The Court should not infer that Weaver will repeat Bartel's alleged conduct or that the October posts establish an urgent need for relief against her.

Weaver's answer and affirmative defenses state that she ceased the challenged conduct after learning of the lawsuit, stopped the challenged T-shirt sales, and did not create or distribute any plush doll. [DE 286 at 52–54, 62.] In addition, Weaver stopped participating in the Book readings and stopped recording when this lawsuit was filed. Only seven people viewed the readings, according to Weaver's understanding, and she did not retain the recordings for continued use after the lawsuit began. These circumstances do not undo the liability ruling in DE 276, but they are relevant to whether there is a present likelihood of future conduct, whether an injunction is necessary, and how narrowly any equitable relief should be tailored to Weaver's individual conduct.

**G. Weaver's limited individual role, documented efforts to resolve the dispute, and the extraordinary relief threatened and now requested warrant individualized consideration.**

Weaver respectfully asks the Court to consider her actual individual role in the events underlying this lawsuit, rather than treating her as though she jointly controlled every activity conducted through Havel's YouTube channel or shared responsibility for every act attributed to him.

The YouTube channel identified in the Complaint was Havel's channel. Havel alone controlled the channel and made the decisions concerning its content and operation. Weaver did not own or jointly operate the channel and did not make its programming decisions. Although Weaver appeared with Havel on some livestreams, her participation did not make her a co-owner or manager of the channel or establish that she directed every recording Havel played.

Weaver's communications with the Kings also demonstrate that she was not simply acting in concert with Havel to oppose Plaintiff. She made repeated efforts to communicate with the Kings, understand their objections, and find a way to resolve the dispute. On October 20, 2021, she specifically asked the Kings for permission to disseminate materials herself, apart from Havel. She also attempted to arrange a meeting and prepared a proposed agreement identifying the materials and activities for which she and Havel sought an understanding. The Kings acknowledged receipt of that proposal. These efforts are documented in Weaver's Answer and its exhibits.

The November 17, 2021 Cease and Desist letter nevertheless addressed both Havel and Weaver and threatened damages beginning at approximately $100,000 for each alleged violation, potentially totaling millions of dollars. It also warned that failure to obey injunctions and court

orders could result in contempt and incarceration. Weaver recognizes that the letter was a demand from Plaintiff's counsel and not a court order. Nevertheless, the severity of the threatened consequences is relevant to understanding the circumstances in which Weaver attempted to resolve the dispute and the substantial pressure placed upon her.

The present request for relief should also be considered in light of Plaintiff's subsequent position. In its September 16, 2026 Status Report [DE 281], Plaintiff stated that it was willing to forgo monetary damages and dismiss the remaining unadjudicated claims if the Court awarded the requested equitable relief. Plaintiff nevertheless continues to seek attorney's fees and costs, as well as a permanent injunction, impoundment, and third-party takedown relief.

Weaver does not contend that Plaintiff's decision to waive damages automatically defeats its request for attorney's fees. Rather, she asks the Court to consider the contrast between the extraordinary monetary threats made at the outset of the dispute and the relief Plaintiff now proposes, together with the limited nature of Weaver's own conduct. The Court should not assume that the scope of relief appropriate against Havel is automatically appropriate against Weaver.

Weaver also asks the Court to consider her documented efforts to resolve the dispute before and during this litigation, including her attempts to communicate with the Kings, her proposal for an agreement, and her efforts to obtain permission to proceed independently. These facts are relevant to her motivation, state of mind, willfulness, the equities of the requested relief, and the reasonableness of any attorney's fee award attributable to her.

Weaver therefore requests that any determination concerning an injunction, impoundment, attorney's fees, or other relief be based on her own conduct and circumstances, not merely her personal relationship with Havel or her presence on some of his livestreams. Any fee application should separately identify the work reasonably attributable to Weaver and should not charge her for work caused by conduct in which she did not participate.

**H. The requested injunction is overbroad and must be tailored to Weaver's conduct -** TELAH requests an injunction concerning all of its intellectual property in defendants' possession. [DE 297 at 6, 16.] That request does not identify the particular works, copies, phonorecords, or acts that Weaver must refrain from.

Any injunction against Weaver should identify the specific works and prohibited conduct. It should distinguish unauthorized reproduction or distribution from mere possession, preservation of evidence, compliance with court orders, and lawful conduct. It should not prohibit Weaver from retaining records needed to defend herself or from complying with court requirements.

If the Court is inclined to grant any injunction, Weaver requests that TELAH first submit a proposed order identifying the particular works, the acts to be restrained, the evidence supporting restrictions against Weaver, and any necessary exceptions. Weaver should be permitted to respond to that proposed language before an injunction is entered.

**I. Blanket impoundment and third-party takedown relief are not justified -** TELAH requests impoundment of all its intellectual property in defendants' possession. [DE 297 at 6, 16.] Section 503 identifies specific categories of articles that may be impounded. It does not authorize a general seizure of every item that may relate to TELAH's intellectual property.

The motion does not identify the particular articles Weaver possesses, establish that each item is an infringing copy or phonorecord, or explain why a narrower remedy would be inadequate. Weaver requests that the Court deny blanket impoundment. Any renewed request should identify each specific item and its relationship to a work and infringing act adjudicated against Weaver.

The request for an order directing third-party hosting sites to remove materials is also insufficiently particularized. Rule 65(d)(2) identifies the persons bound by an injunction, including parties and persons acting in active concert or participation with them who receive actual notice. Any order directed to nonparties must comply with those limits and identify the conduct and persons covered.

**J. The attorney-fee request should be deferred until a proper, itemized application is submitted** - Dkt. 297 requests attorney's fees and costs but does not provide a verified fee application identifying the amount sought against Weaver, the hours and rates claimed, or the work attributable to her conduct and claims.

TELAH's September 16 status report proposed a verified fee application with supporting documentation and an opportunity for defendants to respond. [DE 281.] Weaver requests that the Court follow a fair process and allow her to examine and respond to any such application before considering an award.

Any fee award under § 505 is discretionary. The Court should consider the *Fogerty* factors and the fact-specific inquiry required by *Richardson v. Kharbouch*, 156 F.4th 849, 859–60 (7th Cir. 2025). The fact that Weaver lost on specified claims does not establish that every defense she advanced was frivolous or objectively unreasonable.

Any application should identify the work attributable to Weaver, distinguish work attributable to Havel or Bartel, separate work on claims and issues on which TELAH prevailed from other work, and explain why the hours and rates are reasonable. The Court should also consider Weaver's pleaded bankruptcy discharge to the extent TELAH seeks to collect a monetary obligation based on a pre-bankruptcy claim, consistent with DE 276's discussion of the discharge.

Weaver requests that the present fee request be denied without prejudice to a properly supported application and a reasonable opportunity to respond.

**K. Final judgment under Rule 58 is premature** - DE 276 was a partial summary-judgment order. It contemplated further proceedings concerning remedies, unresolved claims, and counterclaims. Weaver's Rule 54(b) motion remains pending, and the Court has not yet resolved every claim and remedy.

TELAH's proposal to waive damages and dismiss remaining claims in exchange for equitable relief does not itself dispose of Weaver's counterclaim or establish that a final judgment should be entered immediately. The Court should resolve the pending matters and determine the precise scope of any remaining claims and remedies before entering final judgment under Rule 58.

## V. PRESERVATION OF DEFENDANT WEAVER'S OBJECTIONS AND APPELLATE RIGHTS

Weaver expressly preserves her objections to the Court's August 26, 2026 interlocutory Order (Dkt. 276), including the factual and legal determinations challenged in her pending Motion to Reconsider and Revise that Order under Federal Rule of Civil Procedure 54(b). Weaver relies on

the arguments and grounds stated in her motion and does not intend this Response to Plaintiff's Motion for Judgment on Counterclaims and Equitable Relief (Dkt. 297), or any position taken in this Response, to waive, withdraw, or abandon those objections.

Weaver's objections include, among other matters, the issues raised in her pending motion concerning the identification of particular audio recordings and their connection to the copyright registrations asserted by Plaintiff; the reproduction notice and circumstances surrounding the Book; the history and scope of any authorization or permission; the nature and extent of Weaver's own conduct; and the relevance of those matters to liability, willfulness, and remedies. Weaver preserves these objections as they relate to her own conduct and circumstances and does not adopt or concede factual allegations concerning other defendants merely because Plaintiff refers to the defendants collectively.

Weaver also preserves her objections to any ruling on Dkt. 297 that would dispose of her counterclaim, defenses, or requested relief without addressing the operative pleadings and the matters that remain pending. She does not concede that the August 26, 2026 Order resolved every claim, counterclaim, defense, or issue involving her. She asks the Court to identify expressly which claims, counterclaims, and requested forms of relief have been adjudicated and which remain pending before entering any judgment intended to dispose of the action.

Weaver's response to Plaintiff's requests for judgment, injunctive relief, impoundment, attorney's fees, or other relief should not be construed as consent to those requests or as a waiver of her objections to the underlying findings and rulings. She continues to dispute the factual and legal bases for the relief Plaintiff seeks, including whether the evidence establishes the required grounds for the particular relief requested against her individually.

Weaver does not request immediate entry of a partial final judgment or certification for an immediate appeal under Rule 54(b). She requests that the Court resolve the pending matters in the ordinary course, address her pending objections, and refrain from treating this Response as a waiver of any objection or appellate issue. Weaver seeks to preserve, to the extent permitted by applicable law and procedure, her right to seek appellate review of adverse rulings after entry of an appealable final judgment, or of any independently appealable order.

**VI. REQUESTED DISPOSITION -** Weaver respectfully requests that the Court:

1. DENY Dkt. 297 insofar as it seeks judgment on the entirety of Weaver's counterclaim based on the assertion that DE 276 already adjudicated every issue raised in it;

2. Resolve Weaver's pending Rule 54(b) motion before deciding overlapping portions of the counterclaim, or defer those portions until the reconsideration motion is decided;

3. Identify precisely which ownership issues were decided in DE 276 and limit any judgment to those issues, without extinguishing separate defenses or remedy-related matters not finally adjudicated;

4. If the Court finds the trademark-cancellation portion insufficiently pleaded, grant Weaver leave to amend under Rule 15(a)(2), or dismiss that portion without prejudice;

5. DENY a blanket permanent injunction against Weaver absent individualized findings under the traditional equitable factors, and require any injunction to identify the specific works and conduct covered;

6. DENY blanket impoundment and require any renewed request to identify the specific articles and statutory basis for impoundment;

7. DENY or defer third-party takedown relief unless the proposed order complies with Rule 65(d) and identifies the persons and conduct covered;

8. DENY the present attorney-fee request without prejudice to a properly supported, itemized application and a reasonable opportunity for Weaver to respond; and

9. DENY entry of final judgment under Rule 58 until all claims, counterclaims, and remedies have been resolved.

Weaver requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

Cathy Weaver

Cathy Weaver, Defendant, pro se
5776 Grape Road, Suite 51, PMB #121
Mishawaka, Indiana 46545
Email: sawcat575@gmail.com

Date: 11/12/2026