HAvel's
Responce

Exhibit Index
+
4 Exhibits

FILED
NOV 16 2026
At ____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

THE EVOLUTIONARY LEVEL ABOVE HUMAN FOUNDATION d/b/a THE TELAH FOUNDATION,

Plaintiff,

v.

STEPHEN HAVEL,
CATHY WEAVER, and
JASON BARTEL,

Defendants.

CAUSE NO.
3:22-cv-00395-DRL-SJF

**HAVEL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON COUNTERCLAIMS AND FOR EQUITABLE RELIEF [DE 297]**

Havel, proceeding pro se, responds to Plaintiff The Evolutionary Level Above Human Foundation d/b/a The TELAH Foundation's motion [DE 297]. Havel asks the Court to deny the motion insofar as it seeks immediate judgment on all counterclaims, a blanket permanent injunction, blanket impoundment, attorney's fees, and final judgment. At minimum, the Court should defer any ruling on counterclaims that overlap with Havel's pending motion to reconsider the August 26, 2026 interlocutory order, and should require any request for injunctive or monetary relief to be supported by evidence and tailored to Havel's own conduct.

**I. INTRODUCTION** - Dkt. 297 combines several distinct requests: (1) judgment on the defendants' counterclaims under Rule 12(c) or Rule 54; (2) a permanent injunction; (3) impoundment of intellectual property in the defendants' possession; (4) removal of materials from third-party platforms; (5) attorney's fees and costs; and (6) final judgment under Rule 58. Those requests require different legal standards and cannot be granted merely because the Court entered partial summary judgment on specified alleged infringement counts.

Havel does not ask the Court to disregard its August 26, 2026 Opinion and Order [DE 276]. That order decided ownership and liability on specified claims, and Havel has separately asked the Court to reconsider and revise the interlocutory order under Rule 54(b). Havel respectfully asks the Court to resolve that pending request before treating the same ownership determinations as an unchangeable basis to dispose of every overlapping counterclaim.

Dkt. 297 also relies heavily on October 2026 blog posts attributed to Mr. Bartel. The motion does not allege that Havel wrote those posts, disclosed counsel's personal information, made the statements quoted in the motion, or posted the October 15 repository link. The conduct alleged against Bartel cannot, without evidence and individualized findings, establish that Havel requires the same injunction or impoundment.

Finally, the relief requested is substantially broader than the specific works and conduct adjudicated in DE 276. The motion asks for an injunction and impoundment concerning "all" TELAH intellectual property in defendants' possession, without identifying the specific copies, phonorecords, devices, or materials to be seized or restrained. Sections 502 and 503 of the Copyright Act do not eliminate the requirements of traditional equitable analysis or the need to tailor an injunction to proven infringement.

## II. RELEVANT PROCEDURAL BACKGROUND

1. On August 26, 2026, the Court granted TELAH partial summary judgment as to ownership and liability on Counts I, III, IV, and V of the Amended Complaint. [DE 276.] The order did not enter final judgment resolving every claim, remedy, and counterclaim in the action. It directed the parties to address damages and remedies, unresolved counts, and defendants' counterclaims.

2. Havel filed a motion under Rule 54(b) seeking reconsideration and revision of specified portions of DE 276. That motion challenges, among other matters, the evidentiary basis for identifying particular audio recordings and connecting them to the alleged registered works and the ownership record. Havel relies on that pending motion only to explain why the Court should not treat the challenged interlocutory determinations as beyond reconsideration while deciding the overlapping portions of DE 297.

3. For example, Plaintiffs statements in DE 297 under I. BACKGROUND, Plaintiffs write: "2. The Court held, as a matter of law, that TELAH owns the intellectual property at issue. [DE 276 at 15 ("TELAH, as a matter of law and this record, thus owns this intellectual property."]."

Havel has proven to the Court that he also owns some of the Groups Intellectual Property at issue. Rkkody's cd's he sent to Havel in 1997 and 1998 contained close to 200 audios he digitized and gave to many people and that was before the Kings had copyrights and before the Judge Breyer Settlement Agreement of 1999 (they got after threatening Rkkody's daughter with the loss of her house) and before the Judge Guy-Schall Probate Settlement of 1999, they got because Judge Guy-Schall didn't want to delay getting funds for burial of their loved ones [Exhibit 4 - 1999 Case PN022228 - Billings' supplemental trial brief, Page 6; "As to paying

claims, that is exactly what the PUBLIC ADMINISTRATOR is trying to do, pay legitimate priority claims for funeral and burial expenses.] by going through an appeal from the Kings after deciding that the Kings were to be fined for a frivolous lawsuit.

The big question not being answered is which audio tapes are included as a matter of law and which intellectual property is proven to be "the intellectual property at issue"? Those needed detail remain completely undefined because there are no audio tape numbers listed in the registration's "deposit" and no audio tape numbers listed from what Plaintiffs received from the Probate Settlement Agreement. (See Exhibit T – Segments from the Probate Inventory.

4. Re: Plaintiffs Copyright Registration, they go on to state:

"The Court found that TELAH's registrations established prima facie validity (id. at 11), the intellectual property passed through the California probate proceedings (id. at 13) and then to TELAH through the court-approved settlement (id.), and prior possession or circulation of copies did not authorize Defendants to reproduce, upload, perform, or distribute the works. (Id. at 15.) " (DE 297, Section I. BACKGROUND, Paragraph 2.)"

Anyone (like Weaver) who reads the Heaven's Gate Book off the Heavensgate.com website will see that the Authors (DO and his Class) of the Intellectual Property themselves authorized the reproduction (copying in part or totally of the entire book – **See Books Common Law Copyright page at: [ https://heavensgate.com/book/02.htm ] and authorized "performance" and/or to "distribute the works" (See https://heavensgate.com/book/a20.htm - "Away Team" from Deep Space Surfaces Before Departure *By Jwnody*, Paragraph 25 "by getting this information out")**

Plaintiffs write, for Count I, the intellectual property at issue is laid out by Judge Leichty's Order and Opinion DE 276 writing:

"The record concerning the defendants' alleged infringement is more concrete. In September 2021, Mr. Havel and Ms. Weaver began broadcasting the audio works from TELAH's copyrighted material on their YouTube channel [246-5 ¶ 10-11]."

One can not infringe on something they know doesn't legally exist as Havel was in the Group and knew that DO didn't want to copyright the audios or video's or their Book in such a way to keep people from having access to them.

I had no idea they would sue me for doing exactly what I'd been doing for two decades (they said) that Telah_000045 shows and where they say they let "slide" that they said was regarding "200 audios and videos" Havel (and Bartel) had been sharing publicly. (See Exhibit T3 - TELAH_000045 - mark sarah email to havel sawyer, Page 1, Section 1 under Introduction) Havel had no real idea that the Kings would sue me. In 2021 before I met Cathy Weaver, after I had posted that I had received digitized audio tapes I didn't have before from Francisco Falcon (Jhnody), who lives in Venezuela, Mark and/or Sarah King sent me an email warning me that I could be sued. Some of that can be seen in the document Telah_000045, one of the only documents supplied me from Discovery requests where they warned me and a number of "friends" on my Facebook page Sawyer Heavensgate they could be sued for infringement too. When Weaver and I met, she wanted to help me work with Mark and Sarah King, knowing from my YouTube channel 3spm she had been listening to for years, that there were hundreds of audio tapes they refused to give me access to, mostly tapes I was present to hear. Weaver

wanted to work it out so she arranged with them a meeting at their previous lawyers office in Phoenix where they served us with a Cease and Desist they applied to any of the Groups information I had been sharing for two decades and threatened us with jail and fines our children would have to pay if we didn't abide by. They said they had copyrights to all the Heaven's Gate Intellectual property and I didn't believe it. Weaver worked hard on a compromise document and the Kings rejected it and said, "see you in court". So I continued to play some audio tapes on my channel and they sued both of us. They have said that they worked with us and that's not true at all, except for meeting with us in their lawyers office which was completely one sided.

Plaintiffs continue to write that Judge Leichty continued to write:

"TELAH identifies tapes 149, 263, 4, 30, 161, 156, 11, 54, 52, 50, 200, 201, 202, 203, and 204 as tapes Mr. Havel and Ms. Weaver played on Mr. Havel's YouTube channel between November 2021 and April 2022 [132 ¶ 51]." (DE 276 at 5) "

The fact that those audio tape numbers are not found in the Copyright registration "deposit" and not found in the Probate Settlement Inventory means Counts I (alleged audio infringement) and Count V (alleged contributory audio infringement) are moot. (See Exhibit T)

5. In DE 246, Page 16, Judge Leichty references case law (*Richardson v. Kharbouch*, 156 F.4th 849, 856 (7th Cir. 2025) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)) for the criteria Plaintiff had to show to make a copyright infringement claim being: (1) 'ownership of a valid copyright,' and (2) 'copying of constituent elements of the work that are original.

Here is a summary of the evidence that Plaintiffs Copyrights don't hold up to scrutiny as "prima facie" evidence of Valid Copyrights:

a) There is no documentation that those audio tape numbers Havel admitted to playing some of on his YouTube channel 3spm, that were listed in Plaintiffs Complaint and Amended Complaint (DE 1-1 and DE 131-1) were copyrighted as the copyright registration Plaintiffs provided in their Complaints said the "Deposit includes 486 audio cassettes containing text and sound recordings". How can the Court or anyone know which tape numbers were in that Deposit and what information was on any of the tapes in that deposit? For all I know there was nothing or something else or only some of the original content submitted to the copyright office. That's not necessarily far fetched if one knows Mark and Sarah King's thinking as I do, as I doubt they wanted to give the copyright office those materials, especially given that they knew DO and Crew made no effort to copyright them (and I witnessed them considering doing so as shown in an audio tape), and they were and continue to claim they are following the instructions they were given by DO and the Group through letters and conversations they had before their departure. Why else would Mark and Sarah King and/or their Attorney's refuse to fulfill my Requests for log files I know exist? Why else would Mark and Sarah King and/or their Attorney Mr. Crum create a list from scratch with fake descriptions of "Various Discussions," - LIST 1 of alleged Copyrighted Audios, some 9 months after they instigated the lawsuit, and do so only because I asked Judge Gotsch for them in the zoom Hearing [DE 64]? Why have Mark King and Sarah King allowed that LIST 1 to contain audio tape numbers that there is email evidence from before the lawsuit (that I have submitted to the Court), where they state that a number of those audios included in that LIST1 were **not** in the Deposit they registered? **That means there are probably not 486 audio cassette tapes in that Deposit**

**that evidence shows they didn't know about until around 2021.** And why did LIST 2 of alleged unregistered audios (Judge Gotsch also ordered them to construct when Mr. Crum said in the hearing there were "over 1000" audios and they were all copyrighted when they were not, but they were in the habit of thinking about them all as copyrighted, as shown in a number of their filings in now three courts) change the number of Audios that existed? I have Mark King on record stating there were more audios he wasn't going to send to Francisco Falcon after Falcon sent me the thumb drive with the largest number being 1082 that LIST 2 then made into the last number?

b) When the Copyright registrations were filed, there were no Assignments by law or from the authors of the audio tapes (TI and/or DO) or from any member of the Group to justify legally their Transfer to the Telah Foundation and/or to Mark King. The Audio Tapes were never published so the five year rule doesn't apply. [Exhibit 4 - 1999 Case PN022228 - Billings' supplemental trial brief refers to Kings copyrights as fraud Absent the requisite signed written instrument, physical transfer of a registration certificate cannot work an assignment of the copyright referred to therein (Kings row Enters., Inc. v. Metromedia, Inc., (S.D.N.Y. 1975) 397 F. Supp. 879) ]

c) When the Copyright registration was filed there were no documents to legally show the unnamed audios were transferred to The Telah Foundation via a "work for hire" as the registration indicates occurred. [Exhibit 4 - 1999 Case PN022228 - Billings' supplemental trial brief , Page 2 – "A person claiming copyright must either be the author, or must have succeeded to the rights of the author (Epoch Producing Corp. v. Killiam Shows, Inc. (2nd Cir. 1975) 522 F2d. 737, citing Nimmer on Copyright, § 5.01)."]

d) In Case No. PNO22228 on January 13, 1999 Judge Lisa Guy-Schall wrote in her STATEMENT OF DECESION [Exhibit 6 - 1999 Case PN022228 – Statement of Decision 1999 by Judge Lisa Guy Schall ] under the section: FINDINGS OF FACT AND DECESION, paragraph 3:

"3. Regarding the ownership of Intellectual property, this Court determines that the estates own all Intellectual property interests together with the tangible assets from which those Interests are derived. This determination is based upon the following findings of fact: **Although Petitioners presented evidence of post-mortem registrations of the literary work entitled, "How and When Heaven's Gate (The Door to the Physical Kingdom Level Above Human) May Be Entered - An Anthology of Our Materials;"** the audiovisual works entitled, "Last Chance to Evacuate Earth Before It's Recycled," "Plant About to Be Recycled - Your Only Chance to Survive - Leave With Us," "Do's Final Exit - Students of Heaven's Gate

Expressing Their Thoughts Before Exit," "Beyond Human - The Last Call," "The C.B.E. (Celestial Being Entity"); the trade name Heaven's Gate; **and the sound recordings entitled, "The Audiotape Library of Heaven's Gate by TI and Do."**

**Nevertheless, there is no evidence of any writing which explicitly conveyed or transferred ownership of all this Intellectual property to the Petitioners. There was no writing actually signed by the decedents except the Durable Power of Attorney, which became void upon their deaths".** [Havel Answer, Defense and Counterclaim - DE 153, Section B – Count II - Page 121].

e) In the document filed by JOHN J SANSONE, County Counsel, By Cheryl K. Carter, Deputy in the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO Case No. PN 022228 - OBJECTION TO PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY Sansone files his teams evaluation of whether Mark King and Sarah King as Petitioners had valid copyrights they provided and says they don't so **don't have prima facia evidence of legal (valid) copyrights** and refer to Petitioners obtaining of those copyrights as "**obtained fraudulently**": [Exhibit 4 - 1999 Case PN022228 - Billings' supplemental trial brief, Page 4 line 9]

i. "Petitioners make much of their copyright registrations after Decedents' deaths, stating in their applications that the Telah Foundation was copyright claimant "pursuant to assignments".

ii. "It is clear that the Decedent's Intellectual Property included common law trademarks/trade names, including Domain names and several unregistered copyrights. **No assignments accompany the petition** and several questions arise, were these pre-death assignments? Were the DPOA's used to execute these assignments? Was this a result of undue influence? On the other hand if they were post-death assignments, what authority did they have to so execute? **All of these queries and issues rebut the so-called "prima facie" validity of their copyrights."** [DE 153 Havel's Answer, Defense and Counterclaim Section E.2. Page 136]

iii. "While it is true that a presumption arises upon issuance of a copyright registration certificate, that presumption is rebuttable and evidence that the **registration certificate was obtained fraudulently overcomes the presumption** (Seiler v. Lucasfilm Ltd. (9th Cir., 1986) 808 F2d. 111316, footnote 5 at p. 1322; Eckes v. Card Prices Update (2nd

Cir.,1984) 736 F2d. 859). (Exhibit 19 – San Diego County – Attorney Sansone's Objection to Petition to Determine Ownership of Estate Property ROA 74 Case File Contents 2-3 [173-179]- Section II re: No evidence of legitimate copyrights provided. [DE 153 Havel's Answer, Defense and Counterclaim Section J.2.e page 145]

f) The Probate Case No. PN 022228 Settlement in 1999 did not give the Kings rights to audio tapes that were not in the Courts possession and there is no evidence what tape numbers were received by the Kings via that settlement as the inventory document listed 4, "Box Containing Audio Cassettes" with no tape numbers listed. (See Exhibit T)

6. **Havel's right to have his counterclaims addressed** [DE 153-1, contains 11 separately numbered counts. They do not all seek the same relief or assert the same theory. (Exhibit T2)

7. Dkt. 297 itself recognizes these distinctions. It argues that Counts IV and IX are directed against nonparties; that Counts VII, VIII, and X concern conduct in other courts; and that Count XI should be pursued in the court that entered the consent decree. [DE 297 at 9–10.] Those arguments do not support entry of a single merits judgment for TELAH on every count.

8. TELAH's September 16, 2026 status report proposed an orderly schedule: the parties would submit proposed injunction forms within 21 days; TELAH would submit a verified fee application with supporting documentation within 30 days; defendants would respond; and TELAH would reply. [DE 281 at 3.] Dkt. 297 now seeks immediate equitable relief and fees. The Court should follow a fair process that permits Havel to address the actual proposed injunction language and any verified fee application before entering final relief.

9. Dkt. 297 also relies on new allegations about Mr. Bartel's October 2026 online posts and a repository link. [DE 297 at 3–5, 10–11, 15–16.] Those allegations concern Bartel only.

## III. GOVERNING LEGAL STANDARDS

**A. Rule 12(c) is a pleadings-based merits test, not a summary-judgment shortcut** - Rule 12(c) permits judgment on the pleadings only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The Seventh Circuit applies the Rule 12(b)(6) plausibility standard. The Court accepts well-pleaded factual allegations as true, draws reasonable inferences in favor of the nonmoving party, and asks whether the pleaded facts state a legally recognizable claim. Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC, 70 F.4th 987, 994 (7th Cir. 2023); Wolf v. Riverport Ins. Co., No. 24-2010, slip op. at 4–5 (7th Cir. Mar. 20, 2025).

In Wolf, the Seventh Circuit expressly explained that the older "beyond doubt" formulation is no longer the governing Rule 12(c) standard after Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Wolf, slip op. at 4–5. Dkt. 297 quotes the older formulation from Brunt v. SEIU, 284 F.3d 715, 718–19 (7th Cir. 2002), stating that judgment is proper only when the nonmoving party cannot prove facts "beyond a doubt." [DE 297 at 11.] That is not the current formulation. The Court should apply Wynndalco and Wolf.

A Rule 12(c) motion is limited to the pleadings and materials properly considered with them. If the Court considers matters outside the pleadings and does not exclude them, Rule 12(d) requires treatment as a Rule 56 motion and a reasonable opportunity for all parties to present pertinent material. Fed. R. Civ. P. 12(d).

To the extent TELAH has not answered the operative Havel counterclaim, the pleadings are not closed as to that counterclaim and Rule 12(c) is premature. Havel asks the Court to confirm that the pleadings were closed before reaching the Rule 12(c) request.

**B. Rule 54(b) does not make an interlocutory order immutable -** Rule 54(b) provides an order adjudicating fewer than all claims or the rights and liabilities of fewer than all parties may be revised at any time before entry of a judgment adjudicating all claims and all parties' rights and liabilities. Fed. R. Civ. P. 54(b). Aug. 26 order remains interlocutory while claims and remedies remain unresolved. Havel's motion to reconsider invokes the Court's authority under that rule. TELAH may ask the Court to apply DE 276 to overlapping counterclaim issues, but it should not describe the order as immune from revision while Havel's Rule 54(b) motion is pending. The orderly course is to resolve the pending reconsideration motion first, or to defer the overlapping counterclaim issues until that motion is decided. The Court can then determine what, if anything, remains for decision on the counterclaims.

**C. Permanent injunctive relief requires proof of the traditional equitable factors** - Section 502(a) authorizes a court to grant a copyright injunction on reasonable terms to prevent or restrain infringement. It does not make an injunction automatic upon a finding of infringement. 17 U.S.C. § 502(a). The Supreme Court requires a plaintiff seeking a permanent injunction to demonstrate: (1) irreparable injury; (2) inadequacy of remedies at law; (3) that the balance of hardships favors equitable relief; and (4) that the public interest would not be disserved. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391–94 (2006).

The Seventh Circuit has applied eBay in copyright cases and rejected a presumption of irreparable harm based solely on infringement. Flava Works, Inc. v. Gunter, 689 F.3d 754, 755 (7th Cir. 2012). The Court therefore must make findings based on the evidence and the circumstances of the particular defendant and the particular works.

**D. Impoundment must be tied to specified infringing articles -** Section 503(a) authorizes impoundment of copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights; articles by means of which those copies or phonorecords may be reproduced; and certain records documenting manufacture, sale, or receipt. 17 U.S.C. § 503(a)(1). Section 503(b) addresses the disposition of copies or phonorecords found to have been made or used in violation of the owner's rights. The statute does not authorize an undifferentiated seizure of every item that may contain or relate to TELAH intellectual property. Any injunction must also state its terms specifically and describe in reasonable detail the acts restrained or required. Fed. R. Civ. P. 65(d)(1).

**E. Attorney's fees under § 505 are discretionary and require a particularized assessment -** Section 505 provides that a court "may" award a reasonable attorney's fee to a prevailing party. 17 U.S.C. § 505. A fee award is not automatic. Fogerty v. Fantasy, Inc., 510 U.S. 517, 533–35 (1994). The Court should give substantial weight to objective reasonableness while considering all relevant circumstances, including frivolousness, motivation, compensation, and deterrence. Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202–03 (2016). Liability and the reasonableness of a litigating position are separate questions.

## IV. ARGUMENT

**A. The Court should not enter a blanket judgment on all 11 Havel counterclaim counts -** Dkt. 297 groups Havel's counterclaims into broad categories and then requests judgment on all counterclaims challenging ownership or validity. [DE 297 at 9–10, 12.] But the counterclaim contains 11 counts with different factual allegations, different targets, and different requested relief. The motion itself acknowledges that Counts IV and IX are directed against the Kings, Counts VII, VIII, and X concern other proceedings, and Count XI concerns the Northern District of California consent decree. [DE 297 at 9–10.] The Court should decide each category separately rather than enter a blanket judgment.

Havel recognizes that DE 276 decided TELAH's ownership as to the works and claims addressed in that order. To the extent Counts I, II, III, V, and VI seek a declaration inconsistent with the ownership determinations in DE 276, those portions overlap with the pending Rule 54(b) motion. Havel asks the Court to defer those overlapping issues until it rules on reconsideration. If reconsideration is denied, the Court can then determine the precise effect of DE 276 on each remaining requested declaration.

That approach respects the August 26 order without treating an interlocutory ruling as unreviewable. It also avoids entering an unnecessarily broad judgment that might be read to resolve issues or remedies that were not actually decided in DE 276.

**B. Counts IV and IX should not be adjudicated as merits claims in TELAH's favor merely because they name individuals who are not parties -** TELAH argues that Counts IV and IX must be dismissed because they are directed against Mark and Sarah King, who are not parties. [DE 297 at 10.] Havel recognizes the procedural problem identified by TELAH: claims seeking affirmative relief against individuals who have not been joined as parties cannot simply be adjudicated as though those individuals were already before the Court.

But that point does not establish that TELAH is entitled to a merits judgment on every Havel counterclaim. If the Court concludes that Counts IV and IX cannot proceed against the nonparty individuals in this action, Havel requests that any dismissal be expressly limited to those counts and be without prejudice to whatever separate relief may be available in a properly constituted action, subject to all jurisdictional, service, limitations, and other defenses. The Court should not use that procedural ruling to extinguish Havel's separate defenses or to decide unrelated counts.

**C. Counts VII, VIII, and X should not be treated as a single, final merits adjudication of all factual issues concerning the other proceedings** - TELAH characterizes Counts VII, VIII, and X as allegations of impropriety in other courts and argues that any such relief must be sought in those proceedings. [DE 297 at 10.] Havel understands that this Court is not an appellate tribunal for the California probate proceeding or the Northern District of California action, and he does not ask this Court in this response to vacate an order entered by another court.

That procedural limitation should be stated narrowly. If the Court concludes that any requested relief in Counts VII or VIII would require this Court to review, revise, or set aside orders entered in another proceeding, Havel requests dismissal without prejudice to seeking relief through the procedures available in the court that entered the relevant order. That should not be converted into a finding that every factual allegation about the history of the intellectual property, the claimed transfer, or the communications among the relevant persons is false or irrelevant for every purpose in this case.

Count X also alleges that TELAH and the Kings asserted in multiple courts that the Group transferred all rights in its intellectual property, while Havel alleges there is no signed transfer instrument from the creators. The Court's ownership ruling in DE 276 is relevant to that issue and is the subject of Havel's pending Rule 54(b) motion. The Court should not enter a broader judgment on Count X until it resolves that motion and identifies exactly which issues were decided and which remain.

**D. Count XI concerns a consent decree entered by another court and should, at most, be dismissed without prejudice to seeking relief there -** Count XI alleges that the 1999 consent decree entered in TELAH v. Morea, N.D. Cal. Case No. 3:98-cv-00892-CRB, presided over by Judge Richard Breyer, **required distribution of specified materials, including audio and video materials, under terms set out in a separate Settlement Agreement.** Plaintiffs have indicated in Judge Frankels Zoom video hearing [DE 204] that they don't have this highly revealing and relative to this case, separate document named some 10 times in Judge Breyer's Consent Decree, as the "Settlement Agreement," despite Havel making a number of Discovery Requests for that document. Havel alleges that he did not receive certain materials and that TELAH and the Kings have not complied with the distribution provisions he quotes. [DE 153-1, Count XI.] TELAH argues that enforcement belongs in the court that entered the consent decree. [DE 297 at 10.] Havel does not ask this Court to enforce or modify that decree in this response. If the Court determines that Count XI must be brought in the issuing court, Havel requests that dismissal be without prejudice and expressly leave open any right he may have to seek relief in that court, subject to that court's determination of standing, interpretation of the decree, and the Settlement Agreement. A dismissal without prejudice on forum or enforcement grounds is different from a merits determination that the quoted distribution provisions do not exist or were satisfied. The Court should make that distinction clear.

**E. The new allegations about Bartel do not establish grounds for an injunction against Havel -**

The motion devotes substantial space to alleged posts by Bartel concerning TELAH and its counsel, including references to counsel's personal and family information, hostile rhetoric, and a repository link. [DE 297 at 3–5, 10–11, 15–16.] Havel does not defend or adopt those statements. But Dkt. 297 does not allege that Havel authored those posts, disclosed the information, made the quoted statements, or posted the October 15 repository link.

The Court must assess relief against Havel based on Havel's own conduct and the evidence applicable to him. Bartel's alleged online statements cannot automatically be attributed to Havel merely because they are co-defendants. Nor do those statements establish that Havel currently possesses particular infringing copies or is likely to commit future infringement. If TELAH seeks relief based on Havel's own conduct, it should identify the specific conduct and evidence on which it relies. Havel acknowledges that DE 276 found liability against him on specified claims. That adjudication is relevant to the merits factor. It does not eliminate the remaining equitable factors or establish that the broadest possible injunction is necessary. The Court must still determine whether TELAH has shown irreparable injury, inadequacy of legal remedies, a favorable balance of hardships, and consistency with the public interest as to Havel.

The prior preliminary-injunction proceedings are also part of the procedural history. The earlier denial of preliminary relief does not categorically bar a later permanent injunction, particularly if materially new evidence is presented. But the Court should consider the prior findings and require TELAH to identify what has changed with respect to Havel. The new events emphasized in Dkt. 297 are attributed to Bartel, not Havel.

**F. The requested injunction is overbroad and must identify the works and conduct it actually restrains** - TELAH asks for a permanent injunction and impoundment relating to "all of TELAH's intellectual property in Defendants' possession," as well as an order directing third-party hosting sites to remove uploaded copies. [DE 297 at 6, 16.] That request is not sufficiently particularized. It does not identify each work, registration, copy, phonorecord, or specific act that Havel must stop. It also risks sweeping in physical materials or copies whose origin, possession, or authorized distribution may be distinct from the conduct adjudicated in DE 276. Section 502 authorizes only reasonable terms to prevent or restrain infringement. Rule 65(d)(1) requires the injunction to state its terms specifically and describe in reasonable detail the acts restrained or required. The Court should not issue an order that leaves Havel to guess which items he may retain, which materials he may possess for personal use, what conduct constitutes prohibited access or dissemination, or what third-party platforms are being directed to do.

If the Court is inclined to grant any injunction, Havel requests that TELAH first submit a proposed order identifying, work by work, the precise copyrighted materials at issue; the specific conduct to be restrained; the basis for applying each restriction to Havel; and any exceptions necessary to avoid restraining lawful possession, preservation of evidence, compliance with court orders, or use of materials not shown to be infringing. Havel should be allowed to respond to that proposed language before entry. The Court should also distinguish a prohibition on unauthorized reproduction or distribution from a blanket prohibition on possession. The fact that a particular act of playing or distributing a work was adjudicated does not, without more, establish that every copy or item in Havel's possession was made or used in violation of TELAH's exclusive rights.

**G. The request for blanket impoundment is not supported by § 503** - TELAH seeks impoundment of all its intellectual property in defendants' possession. [DE 297 at 6, 16.] Section 503(a) instead identifies the categories of articles that may be impounded: copies or phonorecords claimed to have been made or used in violation of the owner's exclusive rights; articles by which such copies may be reproduced; and specified records. 17 U.S.C. § 503(a)(1). The statute requires identification of the articles claimed to be infringing. It does not authorize a general seizure of every item associated with a copyright owner. The motion does not identify what specific physical materials Havel possesses, whether each item is a copy or phonorecord found to have been made or used in violation of an exclusive right, or why less restrictive relief would be inadequate. Nor does it explain how a blanket seizure would preserve evidence without interfering with Havel's ability to retain records necessary to defend this case or pursue his pending Rule 54(b) motion. The Court should deny blanket impoundment. If TELAH renews a narrower request, it should be required to identify each specific item, its relationship to an adjudicated work, the infringing act allegedly involving that item, and the statutory basis for impoundment. Any impoundment should include procedures for inventory, notice, preservation, access to evidence, and return of items not ultimately found to be infringing.

**H. The attorney-fee request is premature and does not establish a reasonable amount attributable to Havel** - Dkt. 297 requests attorney's fees and costs but does not include a verified fee application or identify the amount TELAH asks the Court to award against Havel. TELAH previously filed billing materials at DE 280-1, but its own status report proposed that it would submit a verified fee application with supporting documentation within 30 days, followed by a response from defendants and a reply. [DE 281 at 3.] Havel should be allowed to examine and respond to that application before any fee award is considered. The Court should require TELAH to identify the specific fees claimed against Havel, explain the allocation of common or mixed entries among defendants, identify work attributable to Bartel or Weaver, exclude unrelated work, and reconcile any differences between individual time entries and invoice subtotals. Section 505 is discretionary. Fogerty rejected automatic fee awards and requires a case-specific assessment. Kirtsaeng requires substantial weight for objective reasonableness but also requires consideration of all relevant circumstances. The fact that Havel lost on specified claims does not by itself establish that every defense he raised was frivolous or objectively unreasonable. The Court must distinguish the merits outcome from the reasonableness of the positions taken.

The motion also relies on Bartel's alleged October posts to support deterrence. Those allegations concern Bartel and should not be used to impose fees on Any fee award against Havel must be based on the claims and conduct for which he is legally responsible, not on another defendant's independent online statements. Havel therefore asks the Court to deny the present fee request without prejudice as premature and unsupported. If TELAH later files a proper application, it should provide contemporaneous billing records, identify the rates and hours claimed, separate

work attributable to Havel from work attributable to other defendants and other claims, identify any fees already awarded or requested under the Court's sanctions order, and explain why the requested work was reasonably necessary.

**I. Final judgment under Rule 58 is premature while claims, counterclaims, and remedies remain unresolved -** TELAH asks for final judgment under Rule 58. [DE 297 at 6, 16.] But DE 276 was a partial summary-judgment order, and the Court directed further proceedings concerning remedies, unresolved counts, and counterclaims. Entry of final judgment should follow only after all claims and the rights and liabilities of all parties have been resolved or properly disposed of. The Court should not enter final judgment while Havel's pending Rule 54(b) motion and the remaining counterclaim and remedy issues remain unresolved.

If TELAH elects to waive damages and dismiss its remaining claims, it should state precisely which claims it seeks to dismiss and on what terms. The Court should not infer that TELAH's proposal in its status report automatically disposes of claims or counterclaims, or that it authorizes a final judgment broader than the relief actually adjudicated.

## V. PRESERVATION OF HAVEL'S OBJECTIONS AND APPELLATE RIGHTS

Defendant Stephen Robert Havel, also known as Sawyer, expressly preserves his objections to the Court's August 26, 2026 interlocutory Order (Dkt. 276), including the factual and legal determinations challenged in his pending Motion to Reconsider and Revise that Order under Federal Rule of Civil Procedure 54(b). Havel relies on the arguments and grounds stated in that motion and does not intend this Response to Plaintiff's Motion for Judgment on Counterclaims and Equitable Relief (Dkt. 297), or any position taken in this Response, to waive, withdraw, or abandon those objections.

Havel also preserves his objections to any ruling on Dkt. 297 that would resolve claims, counterclaims, defenses, remedies, or issues without properly considering the matters that remain pending before the Court. In particular, Havel does not concede that the August 26, 2026 Order resolved every claim and issue in this action, or that Plaintiff is entitled to entry of a final judgment while unresolved matters remain. Havel asks the Court to identify expressly which claims, counterclaims, and requested forms of relief have been adjudicated and which remain pending before entering any judgment intended to dispose of the action.

Havel's response to Plaintiff's requests for judgment, injunctive relief, impoundment, attorney's fees, or other relief should not be construed as consent to those requests or as a waiver of his objections to the underlying findings and rulings. He continues to dispute the factual and legal bases for the relief Plaintiff seeks, including the issues raised in his pending motion concerning the identification of particular recordings, the evidence connecting those recordings to the asserted copyright registrations, and the ownership and scope of the rights Plaintiff claims.

Havel does not request immediate entry of a partial final judgment or certification for an immediate appeal under Rule 54(b). He requests that the Court resolve the pending matters in the ordinary course, address his pending objections, and refrain from treating this Response as a waiver of any objection or appellate issue. Havel seeks to preserve, to the extent permitted by applicable law and procedure, his right to seek appellate review of adverse rulings after entry of an appealable final judgment, or of any independently appealable order.

**VI. REQUESTED DISPOSITION - Havel respectfully requests that the Court:**

1. DENY Dkt. 297 insofar as it seeks blanket judgment on all of Havel's counterclaims;

2. DEFER any ruling on counterclaim issues overlapping with Havel's pending Rule 54(b) motion until that motion is resolved, or otherwise identify with precision which issues in each count were already adjudicated by DE 276;
3. if Counts IV and IX cannot proceed against nonparty individuals in this action, dismiss those counts without prejudice and limit that ruling to those counts;
4. if Counts VII, VIII, or X seek relief that must be pursued in another proceeding, dismiss only that relief without prejudice and clarify that the ruling does not decide unrelated factual matters or defenses in this action;
5. if Count XI must be pursued in the Northern District of California, dismiss it without prejudice to Havel seeking such relief in the issuing court, subject to that court's rules;
6. DENY request for a permanent injunction against Havel absent individualized findings on all required equitable factors, and in all events deny the requested blanket injunction as overbroad;
7. DENY blanket impoundment under § 503, without prejudice to a particularized request identifying specific infringing articles and explaining the statutory basis for seizing each item;
8. DENY the present attorney-fee request without prejudice to a properly supported application under § 505, with allocation and itemization; and
9. DENY entry of final judgment under Rule 58 until all claims, counterclaims, and remedies have been resolved.

Havel further requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

Stephen Havel

Stephen Havel, Defendant pro se
5776 Grape Road, Suite 51, PMB #121, Mishawaka, Indiana 46545
Email: sawcat575@gmail.com

Date: 11-12-2026